# EXHIBIT A

## Part 1 of 2

 **Illinois Department of Insurance**

**JB PRITZKER**
Governor

**ANN GILLESPIE**
Director

January 27, 2026

Philadelphia Indemnity Insurance Company
Three Bala Plaza East – Suite 400
Bala Cynwyd, PA 19004

Case Number: 2026CH00528

To whom it may concern,

Enclosed please find a copy of a summons and complaint mailed to me as your agent for service of process and received in my Springfield Office on January 27, 2026 in the case of *Remedial Environmental Manpower, Inc. v. your company et al.*

Sincerely,

Ann Gillespie
Director of Insurance

AG:MS:KS
Encl.

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**Springfield Office**
320 W. Washington Street
Springfield, Illinois 62767
(217) 782-4515

**Chicago Office**
115 S. LaSalle Street, 13th Floor
Chicago, Illinois 60603
(312) 814-2420

This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.
**Forms are free at ilcourts.info/forms.**

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | *For Court Use Only* |
|---|---|---|
| Cook _____ COUNTY | | Hearing Date: No hearing scheduled<br>Location: <<CourtRoomNumber>><br>Judge: Calendar, 1 |

| Instructions ▼ | | FILED |
|---|---|---|
| Enter above the county name where the case was filed. | Remedial Environmental Manpower, Inc.,<br>**Plaintiff / Petitioner** *(First, middle, last name)* | 1/21/2026 10:13 AM<br>Mariyana T. Spyropoulos<br>CIRCUIT CLERK<br>COOK COUNTY, IL |
| Enter your name as Plaintiff/Petitioner. | v. | 2026CH00528<br>Calendar, 1<br>36277712 |
| Below "Defendants/ Respondents," enter the names of all people you are suing. | **Defendants / Respondents** *(First, middle, last name)*<br>Philadelphia Indemnity Insurance Company | 2026CH00528 _____<br>**Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |

---

## IMPORTANT: You have been sued.

- Read all documents attached to this *Summons*.

- You MUST file an official document with the court within the time stated on this *Summons* called an *Appearance* and a document called an *Answer/Response*. If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.

- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees*.

- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org. All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

---

### Plaintiff/Petitioner:

**Do not use this form** in these types of cases:

- All criminal cases
- Detinue
- Order of protection
- Divorce

- Administrative review cases
- Eviction
- Stalking no contact orders
- Paternity

- Adult guardianship
- Foreclosure
- Civil no contact orders
- Small Claims

For eviction, small claims, divorce, and orders of protection, use the forms available at ilcourts.info/forms. If your case is a detinue, visit illinoislegalaid.org for help.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

SU-S 1503.6 Page 1 of 5 (03/24)

Enter the Case Number given by the Circuit Clerk: 2026CH00528

FILED DATE: 1/21/2026 10:13 AM    2026CH00528

| | |
|---|---|
| In **1a**, enter the name and address of the first Defendant/ Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** **Defendant/Respondent's address and service information:**<br><br>a. Defendant/Respondent's primary address/information for service:<br>Name *(First, Middle, Last)*:  Philadelphia Indemnity Insurance Company<br>Registered Agent's name, if any:  _____<br>Street Address, Unit #:  One Bala Plaza - Suite 100<br>City, State, ZIP:  Bala Cynwyd, PA 19004-1403<br>Telephone: _____ Email: _____ |
| In **1b**, enter a second address for the first Defendant/ Respondent, if you have one. | b. If you have more than one address where Defendant/Respondent might be found, list that here:<br>Name *(First, Middle, Last)*: _____<br>Street Address, Unit #: _____<br>City, State, ZIP: _____<br>Telephone: _____ Email: _____ |
| In **1c**, check how you are sending your documents to this Defendant/ Respondent. | c. Method of service on Defendant/Respondent:<br>☐ Sheriff   ☐ Sheriff outside Illinois: _____<br>*County & State*<br><br>☐ Special process server   ☐ Licensed private detective |

☐ **I am serving more than 1 Defendant/Respondent.**

I have attached _____ *Additional Defendant/Respondent Address*
                     *Number*

*and Service Information* forms.

| | |
|---|---|
| Check here if you are serving more than 1 Defendant/ Respondent. Attach an *Additional Defendant/ Respondent Address and Service Information* form for each additional Defendant/Respondent and write the number of forms you attached. | **2.** **Information about the lawsuit:**<br>a. Amount claimed:  $ _____<br>☐ b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession). |
| In **2a**, enter the amount of money owed to you. Check **2b** if you are asking for the return of tangible personal property. | **3.** **Contact information for the Plaintiff/Petitioner:**<br>Name *(First, Middle, Last)*: Peter G. Syregelas, Lindsay, Pickett & Postel, LLC<br>Street Address, Unit #:  200 W. Madison St., Suite 3850<br>City, State, ZIP:  Chicago, IL 60606 |
| In **3**, enter your complete address, telephone number, and email address, if you have one. | Telephone:  (312) 970-5661     Email:  psyregelas@lpplawfirm.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| | |
|---|---|
| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: ilcourts.info/forms. |

| | |
|---|---|
| Check **4a** or **4b**. If Defendant/ Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** **Instructions for person receiving this *Summons* (Defendant):**<br>☐ a. To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served *(not counting the day of service)* by e-filing or at:<br>Address: _____<br>City, State, ZIP: _____ |

FILED DATE: 1/21/2026 10:13 AM  2026CH00528

<table>
<tr><td>

In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.*

</td></tr>
<tr><td>

In **4b**, fill out:
- The court date and time the clerk gave you.
- The courtroom and address of the court building.
- The call-in or video information for remote appearances (if applicable).
- The clerk's phone number and website.

All of this information is available from the Circuit Clerk.

</td></tr>
</table>

☐  b.  Attend court:

On: _____ at _____ ☐ a.m. ☐ p.m. in _____
        *Date*              *Time*                         *Courtroom*

**In-person at:**

_____
*Courthouse Address*       *City*                    *State*     *ZIP*

OR

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):

       By telephone: _____
                           *Call-in number for telephone remote appearance*

       By video conference: _____
                              *Video conference website*

       _____
       *Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk _____ or visit their website
                      *Circuit Clerk's phone number*

at: _____ to find out more about how to do this.
    *Website*

<table>
<tr><td>

**STOP!**

The Circuit Clerk will fill in this section.

</td></tr>
</table>

**Witness this Date:** _____

                         1/21/2026 10:13 AM Mariyana T. Spyropoulos

**Clerk of the Court:** _____

                                                   of Court

---

**STOP! The officer or process server will fill in the Date of Service**

**Note to officer or process server:**

- If 4a is checked, this *Summons* must be served within 30 days of the witness date.
- If 4b is checked, this *Summons* must be served at least 21 days before the court date, unless 2b is also checked.
  - If 4b and 2b are checked, the *Summons* must be served at least 3 days before the court date.

Date of Service: _____
                *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

Enter the Case Number given by the Circuit Clerk: 2026CH00528

**This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.**
**Forms are free at <u>ilcourts.info/forms</u>.**

<table>
<tr>
<td colspan="2" rowspan="2"><b>STATE OF ILLINOIS,<br>CIRCUIT COURT</b><br><br>Cook      COUNTY</td>
<td rowspan="2"><b>PROOF OF SERVICE OF<br>SUMMONS AND<br>COMPLAINT/PETITION</b></td>
<td><i>For Court Use Only</i></td>
</tr>
<tr>
<td rowspan="3"></td>
</tr>
<tr>
<td><b>Instructions</b></td>
<td rowspan="2">Remedial Environmental Manpower, Inc.,<br><hr><b>Plaintiff / Petitioner</b> <i>(First, middle, last name)</i></td>
</tr>
<tr>
<td>Enter above the county name where the case was filed.</td>
</tr>
<tr>
<td>Enter your name as Plaintiff/Petitioner.</td>
<td rowspan="3">v.<br><br>Philadelphia Indemnity Insurance Company<br><hr><b>Defendant / Respondent</b> <i>(First, middle, last name)</i></td>
<td rowspan="3"></td>
</tr>
<tr>
<td>Enter the names of all people you are suing as Defendants/Respondents.</td>
</tr>
<tr>
<td rowspan="2">Enter the Case Number given by the Circuit Clerk.</td>
</tr>
<tr>
<td>☐ <b>Alias Summons</b> <i>(Check this box if this is not the 1st Summons issued for this Defendant.)</i></td>
<td>2026CH00528<br><hr><b>Case Number</b></td>
</tr>
</table>

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form. Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent.\*\***

My name is _____ and I state
       *First, Middle, Last*

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent

_____ as follows:
*First, Middle, Last*

    ☐ Personally on the Defendant/Respondent:
        ☐ Male    ☐ Female    ☐ Non-Binary     Approx. Age: _____   Race: _____
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address, Unit#: _____
        City, State, ZIP: _____

    ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family
        member or lives there:
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address, Unit#: _____
        City, State, ZIP: _____
        And left it with: _____
                       *First, Middle, Last*
        ☐ Male    ☐ Female    ☐ Non-Binary     Approx. Age: _____   Race: _____
        and by sending a copy to this defendant in a postage-paid, sealed envelope to the
        above address on this date: _____ .

    ☐ On the Corporation's agent, _____
                               *First, Middle, Last*
        ☐ Male    ☐ Female    ☐ Non-Binary     Approx. Age: _____   Race: _____
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address: _____
        City, State, ZIP: _____

FILED DATE: 1/21/2026 10:13 AM   2026CH00528

☐ **I was not able to serve the** *Summons* **and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1.   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
     Address: _____
     City, State, ZIP: _____
     Other information about service attempt: _____
     _____
     _____
     _____

2.   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
     Address: _____
     City, State, ZIP: _____
     Other information about service attempt: _____
     _____
     _____
     _____

3.   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
     Address: _____
     City, State, ZIP: _____
     Other information about service attempt: _____
     _____
     _____
     _____

| | |
|---|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

**By:**                          **FEES**

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

_____

*Signature by:*   ☐ Sheriff            Service and Return:  $ _____
                ☐ Sheriff outside Illinois:   Miles _____  $ _____
                                              Total          $ _____

_____
*County and State*

☐ Special process server
☐ Licensed private detective

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

FILED DATE: 1/21/2026 10:13 AM   2026CH00528

Hearing Date: 3/23/2026 10:00 AM
Location: Richard J Daley Center
Judge: Wilson, Thaddeus 20.5721

FILED
1/20/2026 8:44 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00528
Calendar, 1
36250461

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

Remedial Environmental Manpower, Inc. )
)
*Plaintiff,* )      2026CH00528
)
v. )
)
Philadelphia Indemnity Insurance Company, )
)
*Defendant.*

For updated information about your case, including hearings, subsequent filings and other case information, please visit our Online Case Search and search for your case: https://casesearch.cookcountyclerkofcourt.org

### COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

NOW COMES the Plaintiff, REMEDIAL ENVIRONMENTAL MANPOWER, INC. ("Remedial"), by and through its attorneys, LINDSAY, PICKETT & POSTEL, LLC, and for its Complaint for Declaratory Judgment against the Defendant, PHILADELPHIA INDEMNITY INSURANCE COMPANY ("PIIC"), and alleges as follows:

### INTRODUCTION

This is an insurance dispute between Remedial and its insurer, PIIC, arising out of PIIC's breach of its contractual obligations under a Commercial Lines Policy issued to Remedial in connection with an underlying class action lawsuit. Remedial seeks a declaration that PIIC owes a defense and indemnity for the underlying lawsuit, that PIIC violated Section 155 of the Illinois Insurance Code for its conduct during its claims-handling process, and that PIIC is estopped from asserting any coverage defenses.

### THE PARTIES

1.     Remedial is an Illinois Corporation with its principal place of business located in Forest Park, Cook County, Illinois.

2.     PIIC is an insurance company authorized to issue policies in the State of Illinois.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

## THE UNDERLYING LAWSUIT

3.     On May 27, 2025, David Ruffin and Leo Mondy III ("underlying plaintiffs") filed a class action complaint ("the complaint") against Remedial and its co-defendant, JCG Industries, Inc. ("JCG") in the Circuit Court of Cook County, Case No. 2025CH03287. A true and correct copy of the complaint in the underlying lawsuit is attached hereto as **Exhibit A.**

4.     On June 27, 2025, the underlying lawsuit was removed from the Court of Cook County to the Northern District of Illinois, Case No. 1:25-cv-07257.

5.     The complaint was not amended upon removal to federal court.

6.     The underlying plaintiffs allege that Remedial is an industrial staffing agency providing temporary and permanent staffing to warehouses and manufacturing facilities. *Id.* at ¶ 31.

7.     The underlying plaintiffs allege that between March 21, 2022, and the present, Remedial supplied workers, including the underlying plaintiffs, to work for JCG's various poultry processing and distributing facilities across Illinois. *Id.* at ¶ 32-33.

8.     The underlying plaintiffs allege that Remedial and JCG failed to pay overtime wages in violation of the Illinois Minimum Wage Law. *Id.* at ¶ 116-128.

9.     The underlying plaintiffs further allege that Remedial and JCG improperly deducted the cost of necessary protective and sanitary gear from employees' pay in violation of the Illinois Wage Payment and Collection Act. *Id.* at ¶ 129-133.

## REMEDIAL'S TENDERS TO PIIC

10.     On May 12, 2025, Remedial, through its broker, Marsh McLennan Agency ("Marsh") tendered the complaint to PIIC under its Commercial Lines Policy.

11.    On June 20, 2025, PIIC denied coverage under Remedial's Employment Practices Liability ("EPL") coverage part in the Commercial Lines Policy. A true and correct copy of the EPL denial is attached hereto as **Exhibit B**.

12.    The denial stated, falsely, that the "Policy provides only Coverage Part 2, Employment Practices Liability." *Id.*

13.    PIIC's denial did not evaluate coverage under any other potentially applicable coverage parts in the Commercial Lines Policy.

14.    On September 16, 2025, Marsh again tendered the complaint to PIIC, specifically requesting it evaluate under "GL [commercial general liability] and PL [professional liability] portions of the policy." A true and correct copy of Marsh's second tender is attached hereto as **Exhibit C**.

15.    On October 1, 2025, PIIC denied coverage under the Commercial General Liability ("CGL") coverage part of the Commercial Lines Policy. A true and correct copy of the PIIC's second denial is attached hereto as **Exhibit D**.

16.    PIIC's second denial only evaluated coverage under the standard CGL form and did not consider any other forms or coverage parts contained in the Commercial Lines Policy. *Id.*

17.    On October 9, 2025, Remedial's coverage counsel sent a follow-up letter to adjuster Raymond Motley of PIIC requesting that it evaluate coverage under all potentially applicable coverage parts of the Commercial Lines Policy "including but not limited to the Staffing Service Professional Liability Coverage Form." A true and correct copy of coverage counsel's correspondence to PIIC is attached hereto as **Exhibit E**.

18.    Mr. Motley did not respond to or acknowledge coverage counsel's correspondence.

3

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

19. On October 29, 2025, coverage counsel emailed Mr. Motley requesting an acknowledgement of its October 9, 2025 letter. A true and correct copy of coverage counsel's email correspondence is attached hereto as **Exhibit F.**

20. Mr. Motley did not respond to or acknowledge coverage counsel's email.

21. On November 3, 2025, coverage counsel emailed Mr. Motley requesting an acknowledgement of its October 9, 2025 letter and seeking clarification on whether the letter should be directed elsewhere. *Id.*

22. Mr. Motley did not respond to or acknowledge coverage counsel's email.

23. On November 6, 2025, coverage counsel emailed Mr. Motley's supervisor, Anne Barnett, requesting an acknowledgement of its October 9, 2025 letter and seeking clarification on whether the letter should be directed elsewhere. *Id.*

24. Ms. Barnett did not respond to or acknowledge coverage counsel's email.

25. On December 2, 2025, coverage counsel again emailed Mr. Motley and Ms. Barnett, requesting an acknowledgement of its October 9, 2025 letter. *Id.*

26. That same day, coverage counsel also emailed a separate PIIC supervisor, Jim McColgan, seeking an acknowledgment that its October 9, 2025 letter was received. A true and correct copy of coverage counsel's email correspondence to Mr. McColgan is attached hereto as **Exhibit G.**

27. Mr. McColgan finally acknowledged receipt stating that "[a]s requested, we will be revisiting under the Staffing Service Professional Liability Coverage Form, and updating our earlier coverage letter." *Id.*

4

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

28.     On December 15, 2025, PIIC denied coverage for a third time, and again under only its EPL coverage part. A true and correct copy of the PIIC's third denial is attached hereto as **Exhibit H.**

29.     PIIC's denial again stated, falsely, that Remedial's policy "only provides Coverage Part 2, Employment Practices Liability." *Id.*

30.     PIIC completely neglected to evaluate coverage under the Staffing Service Professional Liability Coverage Form in the Commercial Lines Policy as requested numerous times by Remedial.

## THE PIIC POLICY

31.     PIIC issued a Commercial Lines Policy to Remedial effective September 1, 2021, through September 1, 2022. The PIIC policy was subsequently renewed on an annual basis until September 1, 2025.  True and correct copies of the PIIC's Commercial Lines Policies are attached hereto as **Exhibits I - L**, respectively.

32.     All policy periods contain a Staffing Service Professional Liability Coverage Form, with limits of $1,000,000 per wrongful act.

33.     The Staffing Service Professional Liability Coverage Form provides as follows:

**STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM**

**SECTION I - COVERAGE**

**STAFFING SERVICE PROFESSIONAL LIABILITY**

**A. Insuring Agreement**

1. We will pay those sums that the insured becomes legally obligated to pay as "damages" to which this insurance applies. Subject to **SECTION IV - CONDITIONS**, Paragraph **K. Settlement**, we, in your name and on your behalf, shall have the right and duty to investigate, defend, and conduct settlement negotiations, including selection of defense counsel, in any suit seeking those damages.

5

\*\*\*

2. This insurance applies to "damages" only if:

a. The "damages" result from a "wrongful act" that takes place in the "coverage territory";

\*\*\*

## SECTION V – DEFINITIONS

\*\*\*

H. "Damages" means a monetary:

1. Judgment;
2. Award; or
3. Settlement,

but does not include fines, sanctions, penalties, punitive or exemplary damages or the multiple portion of any damages.

\*\*\*

X. "Wrongful act" means a negligent act, error, or omission committed or alleged to have been committed by you or any person for whom you are legally responsible in the rendering of "staffing services."\*\*\*

## COUNT I

### DECLARATORY JUDGMENT RE: DUTY TO DEFEND AND INDEMNIFY REMEDIAL

34. Remedial restates and incorporates the allegations in paragraphs 1 through 33 above, as if fully set forth herein.

35. PIIC owes a duty to defend and indemnify Remedial under its Staffing Service Professional Liability Coverage Form.

36. Remedial reserves its right to plead additional bases for coverage in the future.

37. The above allegations are, on information and belief, denied by PIIC, which in turn, contends that it does not owe coverage for the allegations of the complaint in the underlying lawsuit. Remedial, in turn, denies contrary contentions of PIIC and each of them.

38. By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms of section 2-701 of Civil Procedure, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of

6

insurance referred to herein and to adjudicate the final rights of all parties, and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, the Plaintiff, REMEDIAL ENVIRONMENTAL MANPOWER, INC., prays that this Honorable Court enter an order finding and declaring that PHILADELPHIA INDEMNITY INSURANCE COMPANY owes it a defense and indemnity against the underlying lawsuit, and for such other and further relief as this Court deems fair and just under the circumstances.

<u>COUNT II</u>

VIOLATION OF SECTION 155 OF THE ILLINOIS INSURANCE CODE

39. Remedial restates and incorporates the allegations in paragraphs 1 through 33 above, as if fully set forth herein.

40. There was at all times a certain statute known as 215 ILCS 5/155 which provides as follows:

> 5/155. Attorney fees
>
> § 155. Attorney fees.
>
> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed anyone of the following amounts:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $60,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs,

7

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

41. Based on its conduct, PIIC has and is acting in an unreasonable and vexatious manner, including unreasonable delay, failure to evaluate the entirety of its Commercial Lines Policy despite Remedial's multiple requests to do so, and disregarding its insured's various requests.

42. Remedial is entitled to compensatory, consequential, and statutory damages, costs, attorneys' fees, and all other relief permitted by Section 155 of the Illinois Insurance Code from PIIC which has forced Remedial to unnecessarily to bring this suit and devote its resources to recover policy coverage to which it is entitled.

43. As a result of this vexatious and unreasonable conduct, PIIC is subject to penalties under Section 155 of the Illinois.

WHEREFORE, the Plaintiff, REMEDIAL ENVIRONMENTAL MANPOWER, INC., prays that this Honorable Court enter an order finding and declaring that PHILADELPHIA INDEMNITY INSURANCE COMPANY's actions were vexatious and unreasonable in violation of Section 155 of the Illinois Insurance Code, and for such other and further relief as this Court deems fair and just under the circumstances.

## COUNT III

### ESTOPPEL

44. Remedial restates and incorporates the allegations in paragraphs 1 through 33 above, as if fully set forth herein.

45. PIIC owes Remedial a duty to defend in the underlying lawsuit.

8

46.     PIIC has been on notice of Remedial's tender under its Commercial Lines Policy since May 12, 2025, yet PIIC did not file a declaratory judgment addressing its obligations owed to Remedial.

47.     Based on its failure to seek a declaration, PIIC has breached its duty to defend and is estopped from asserting any defense to coverage owed to Remedial.

WHEREFORE, the Plaintiff, REMEDIAL ENVIRONMENTAL MANPOWER, INC., prays that this Honorable Court enter an order finding and declaring that PHILADELPHIA INDEMNITY INSURANCE COMPANY is estopped from asserting any coverage defenses, and for such other and further relief as this Court deems fair and just under the circumstances.

## COUNT IV

### WAIVER IN THE ALTERNATIVE

48.     Remedial restates and incorporates the allegations in paragraphs 1 through 33 above, as if fully set forth herein.

49.     PIIC owes Remedial a duty to defend in the underlying lawsuit.

50.     PIIC has been on notice of Remedial's tender under its Commercial Lines Policy since May 12, 2025, yet PIIC did not file a declaratory judgment addressing its obligations owed to Remedial.

51.     PIIC's delay in filing a declaratory judgment action to determine its obligations under the Commercial Lines Policy was a relinquishment of its right to disclaim coverage.

52.     PIIC's delay in filing a declaratory judgment action to determine its obligations under the Commercial Lines Policy is unjust.

53.     PIIC's delay in filing a declaratory judgment action to determine its obligations under the Commercial Lines Policy results in a waiver of any defenses to coverage.

9

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

WHEREFORE, the Plaintiff, REMEDIAL ENVIRONMENTAL MANPOWER, INC., prays that this Honorable Court enter an order finding and declaring that PHILADELPHIA INDEMNITY INSURANCE COMPANY has waived any coverage defenses, and for such other and further relief as this Court deems fair and just under the circumstances.

Respectfully submitted,
LINDSAY, PICKETT & POSTEL, LLC

By: /s/ *Peter G. Syregelas*
One of the Attorneys for Plaintiff

Peter G. Syregelas
psyregelas@lpplawfirm.com
312.970.5661
Haley M. Loutfy
hloutfy@lpplawfirm.com
312.995.7903
**LINDSAY, PICKETT & POSTEL, LLC**
200 W. Madison St., Suite 3850
Chicago, Illinois 60606
*Attorneys for Plaintiff Remedial*
*Environmental Manpower, Inc.*

10

Hearing Date: 3/23/2026 10:00 AM
Location: Richard J Daley Center
Judge: Wilson, Thaddeus L

2026CH00528

FILED
1/20/2026 8:44 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00528
Calendar, 1
36250461

# Exhibit A

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 10

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
5/27/2025 12:07 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH03287
Calendar, 10
32866839

|  |  |  |
|---|---|---|
| DAVID RUFFIN and LEO MONDY III, on behalf of themselves and other individuals similarly situated, known and unknown, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2025CH03287 |
| JCG INDUSTRIES, INC. and REMEDIAL ENVIRONMENTAL MANPOWER, INC., | ) ) ) ) | Judge Caroline Kate Moreland |
| Defendants. | ) ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs David Ruffin and Leo Mondy III ("Plaintiffs"), on behalf of themselves and other individuals similarly situated, known and unknown, for their First Amended Class Action Complaint against Defendants JCG Industries, Inc. ("JCG") and Remedial Environmental Manpower, Inc. ("REM") (collectively, "Defendants") state as follows:

**NATURE OF PLAINTIFFS' CLAIMS**

1.      Plaintiffs bring this class action lawsuit against Defendants seeking all available relief under the Illinois Minimum Wage Law, 820 ILCS §§ 105/1 *et seq.* ("IMWL"), for Defendants' failure to pay all overtime wages for time they were required to spend on the work premises at the beginning and end of the workday. Such time is compensable work time under the IMWL.

2.      Plaintiffs also bring this class action seeking relief under the IWPCA from Defendants' policy and practice of improperly deducting the cost of necessary protective and sanitary gear from employees' pay.

3.      Defendants' failure to pay all earned overtime wages to their employees, violates

the Illinois Minimum Wage Law, 820 ILCS §§ 105/1 *et seq.*

4.      Defendants' practice of deducting the cost of necessary protective and sanitary gear from employees' pay violates the Illinois Wage Payment and Collection Act, 820 ILCS § 115/9.

## JURISDICTION AND VENUE

5.      Jurisdiction in this Court is proper pursuant to 735 ILCS 5/2-209(a)(1) because Defendants committed the at-issue violations of the IMWL in Illinois, and pursuant to 735 ILCS 5/2-209(b)(3) and (4) because Defendants are both corporations organized under the laws of Illinois and Defendants conduct business within the State of Illinois.

6.      Venue is proper in this judicial district pursuant to 735 ILCS 5/2-101 because Plaintiffs and other Class Members performed work for Defendants within Cook County, Illinois, a substantial number of the acts complained of herein occurred within Cook County, Illinois, and Defendants have maintained offices and transacted business at all relevant times herein within Cook County, Illinois.

## THE PARTIES

7.      Plaintiff David Ruffin is an individual residing in Franklin Park, Illinois. At all relevant times, Plaintiff has been domiciled in and is a resident of the State of Illinois.

8.      Plaintiff Leo Mondy III is an individual residing in Chicago, Illinois. At all relevant times, Plaintiff has been domiciled in and is a resident of the State of Illinois.

9.      The "Class Members," as further defined below, are current and former hourly paid employees of Defendants who have worked at the Poultry Processing Plants and who are required to wear protective or sanitary gear to perform their job duties.

10.      Defendant JCG is a corporation headquartered in Park Ridge, Illinois.

2

FILED DATE: 1/20/2026 8:44 AM   2026CH00528
FILED DATE: 5/27/2025 12:07 PM   2025CH03287

11. JCG is registered to do business in Illinois.

12. At all material times, JCG was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this First Amended Complaint, as the employer of Plaintiffs and Class Members. *See* Illinois Minimum Wage Law, 820 ILCS § 105/3(c).

13. Defendant REM is a corporation headquartered in Forest Park, Illinois.

14. REM is registered to do business in Illinois.

15. At all material times, REM was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this First Amended Complaint, as the employer of Plaintiffs and Class Members who it paid for the work they performed at the Poultry Processing Plants. *See* Illinois Minimum Wage Law, 820 ILCS § 105/3(c).

16. Plaintiff Ruffin was an employee of Defendant REM within the meaning of the Illinois Minimum Wage Law. 820 ILCS § 105/3.

17. Plaintiff Ruffin was an employee of Defendant JCG within the meaning of the Illinois Minimum Wage Law. 820 ILCS § 105/3.

18. Plaintiff Mondy was an employee of Defendant REM within the meaning of the Illinois Minimum Wage Law. 820 ILCS § 105/3.

19. Plaintiff Mondy was an employee of Defendant JCG within the meaning of the Illinois Minimum Wage Law. 820 ILCS § 105/3.

## FACTUAL BACKGROUND

20. Defendant JCG does business under the name Koch Foods.

3

FILED DATE: 1/20/2026 8:44 AM 2026CH00528
FILED DATE: 5/27/2025 12:07 PM 2025CH03287

21. Defendant JCG does business under the name Koch Poultry Co Inc.

22. Defendant JCG formerly did business under the name Koch Poultry, Inc.

23. Koch Meat Co., Inc. also does business in Illinois under the name Koch Foods.

24. Koch Foods is a poultry processer and distributor to retail and grocery stores.

25. In order to support its operations, Koch Foods operates poultry processing facilities in Illinois and across the country.

26. Defendant JCG operates a poultry processing plant located at 2219-2199 25th Avenue, Franklin Park, Illinois 60131 (herein referred to as the "Franklin Park Poultry Plant").

27. Defendant JCG also operates a poultry processing plant located at 4404 W. Berteau Avenue, Chicago, IL 60641 (herein referred to as the "Chicago Poultry Plant").

28. The Franklin Park Poultry Plant and the Chicago Poultry Plant are herein referred to in this Complaint as the Poultry Processing Plants.

29. Upon information and belief, Koch Meat Co., Inc. also operates the Frankin Park Poultry Plant.

30. Upon information and belief, Koch Meat Co., Inc. also operates the Chicago Poultry Plant.

31. REM is an industrial staffing agency that provides temporary and permanent staffing to warehouses and manufacturing facilities.

32. Defendant REM has supplied workers to work at the Franklin Park Poultry Plant in workweeks between March 21, 2022 and the present.

33. Upon information and belief, Defendant REM has also supplied workers to work at the Chicago Poultry Plant in workweeks between March 21, 2022 and the present.

4

FILED DATE: 1/20/2026 8:44 AM 2026CH00528
FILED DATE: 5/27/2025 12:07 PM 2025CH03287

34. Plaintiff Ruffin worked as an hourly, non-exempt employee at the Franklin Park Poultry Plant.

35. Plaintiff Ruffin worked at the Franklin Park Poultry Plant between approximately March 2020 to February 2023.

36. REM paid Plaintiff Ruffin for the work he performed at the Franklin Park Poultry Plant.

37. Plaintiff Ruffin primarily worked a schedule at the Franklin Park Poultry Plant from Monday through Friday between 6:00 a.m. to 2:30 p.m. or 3:30 p.m. Plaintiff Ruffin also occasionally performed work for Defendants on Saturdays.

38. In one or more individual workweeks in the three (3) years prior to the date this Complaint was filed, Plaintiff Ruffin worked 40 or more hours at the Franklin Park Poultry Plant.

39. Plaintiff Mondy worked as an hourly, non-exempt employee at the Franklin Park Poultry Plant.

40. Plaintiff Mondy worked at the Franklin Park Poultry Plant between approximately August 2019 to November 2023.

41. REM paid Plaintiff Mondy for the work he performed at the Frankin Park Poultry Plant from approximately August 2019 to November 2019. JCG paid Plaintiff Mondy for the work he performed at the Franklin Park Poultry Plant from approximately November 2019 to November 2023.

42. Plaintiff Mondy primarily worked a schedule from Monday through Friday between 2:00 p.m. to 11:30 p.m. or 12:00 a.m. At times, Plaintiff Mondy also worked Saturdays.

43. In one or more individual workweeks in the three (3) years prior to the date this

5

FILED DATE: 1/20/2026 8:44 AM 2026CH00528
FILED DATE: 5/27/2025 12:07 PM 2025CH03287

Complaint was filed, Plaintiff Mondy worked 40 or more hours at the Franklin Park Poultry Plant.

44. At all relevant times, in performing their job duties, Plaintiffs reported to and were supervised by JCG employees.

45. At all relevant times, JCG supplied Plaintiffs with personal protective equipment, tools, and other equipment necessary to perform their job duties.

46. At all relevant times, Plaintiffs attended meetings scheduled and conducted by JCG.

47. JCG paid REM for the work Plaintiff Ruffin performed for JCG.

48. JCG paid REM for the work Plaintiff Mondy performed for JCG from approximately August 2019 to November 2019.

49. JCG hires workers, either directly or through third-party entities like REM who are paid on an hourly basis. When these workers, like Plaintiffs, work for JCG at the Poultry Processing Plants, JCG and the third-party entities co-determine and share control over the terms and conditions of employment.

50. When these workers work for JCG through third-party entities like REM, the third-party entities jointly hire and fire, supervise and control, set pay, determine hours, and approve the hours worked with respect to these workers.

51. When these workers work for JCG through third-party entities, JCG is an employer, and/or a joint employer, of the individuals working for JCG through third-party entities.

52. For example, JCG and REM shared substantial control of Plaintiff Ruffin's working conditions, and over the unlawful policies and practices alleged herein.

53. As a joint employer, at all relevant times, JCG maintained control, oversight, and

6

FILED DATE: 1/20/2026 8:44 AM   2026CH00528
FILED DATE: 5/27/2025 12:07 PM   2025CH03287

direction over Plaintiffs and other Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, and other employment practices.

54.     On information and belief, JCG exercises control over REM's payment of wages, including the contractual amounts paid and the hours worked by REM employees each week.

55.     JCG applies the same employment policies, practices, and procedures to all Class Members at its Poultry Processing Plants, regardless of whether they are employed directly by JCG.

56.     Plaintiffs Ruffin and Mondy worked with dozens of other hourly paid workers at the Poultry Processing Plants.

57.     At the beginning of the workday, Defendants required Plaintiffs and other Class Members to scan an ID badge to enter the Poultry Processing Plants.

58.     During the winter, the locks on the Franklin Park Poultry Plant would malfunction frequently so Plaintiffs and other Class Members would have to call Human Resources to ask someone to open the door and wait outside until a manager came to open the door.

59.     After entering the Franklin Park Poultry Plant, Plaintiffs and other Class Members scanned their ID badges a second time at a turnstile located directly in front of the Human Resources office.

60.     Once through the turnstile, Plaintiffs and other Class Members next walked to the cafeteria to store their lunch, jacket, and other personal belongings either on a picnic table or in a locker if one was available.

61.     After storing their personal belongings in the cafeteria, Plaintiffs walked past the Human Resources and Quality Assurance offices approximately 100 feet to the area where the

7

FILED DATE: 1/20/2026 8:44 AM   2026CH00528
FILED DATE: 5/27/2025 12:07 PM   2025CH03287

protective gear table and time clocks were located.

62. Plaintiffs had to wait in line to pick up their assigned protective gear for the day. On Mondays, Plaintiffs would also be issued their gloves for the week.

63. The protective gear that Plaintiffs and other Class Members were required to wear included, but is not limited to, slip resistant work boots, helmets, hats, hairnets, beard covers, earplugs, glasses, frocks, and gloves.

64. Plaintiffs and other Class Members were not permitted on the Poultry Processing Plants' floors before donning protective gear.

65. Plaintiffs estimate that they and other Class Members spent approximately three to fifteen minutes waiting for and donning protective gear before each shift.

66. Plaintiffs and other Class Members were required to don protective gear prior to clocking in for their shift, except on rare occasions when Defendants temporarily ran out of protective gear and a manager instructed Plaintiffs and other Class Members to clock in and then wait for protective gear to become available.

67. After donning protective gear, Defendants required Plaintiffs and other Class Members to wait in line to clock in at the time clock station across from the protective gear table.

68. Defendants required Plaintiffs and other Class Members to wait until a manager told them to clock in before they could scan their ID badge or undergo a biometric scan to clock in at the time clock.

69. Because Defendants did not allow Plaintiffs and Other Class Members to clock in until one to two minutes before the start of their scheduled shift, Plaintiffs and Other Class Members routinely waited in a line of other employees to be able to clock in. As a result of this

8

FILED DATE: 1/20/2026 8:44 AM   2026CH00528
FILED DATE: 5/27/2025 12:07 PM   2025CH03287

practice, Plaintiffs and other Class Members often had to wait until several minutes after the start of their scheduled shift to be able to clock in.

70.     After Plaintiffs and other Class Members clocked in on the time clock, they then had to walk to their assigned work locations.

71.     Defendants did not begin to pay Plaintiffs and other Class Members until they clocked in at the time clock station.

72.     Defendants did not pay Plaintiffs and other Class Members for the time they were required to be on the Poultry Processing Plants' premises prior to the start time of their scheduled shift, including but not limited to the time they spent waiting to be let into the building, waiting to pick up and don protective gear, and walking within the poultry processing plant, and waiting to clock in on the time clock.

73.     At the end of the workday, Defendants required Plaintiffs and other Class Members to "clock out," and then walk through the Poultry Processing Plant and remove their protective gear before exiting. Defendants did not pay Plaintiffs and other Class Members for the time they were required to be in the Poultry Processing Plants after they clocked out on the time clock.

74.     Defendants did not pay Plaintiffs and other Class Members for all time they were required to be on the Poultry Processing Plants' premises before they were permitted to exit.

75.     Plaintiff Ruffin was a full-time employee generally scheduled to work 40 to 48 hours per week. As such, his paid time combined with his unpaid time generally totaled over 40 hours per week.

76.     Plaintiff Mondy was a full-time employee generally scheduled to work 40 to 48 hours per week. As such, his paid time combined with his unpaid time generally totaled over 40

9

FILED DATE: 1/20/2026 8:44 AM    2026CH00528
FILED DATE: 5/27/2025 12:07 PM    2025CH03287

hours per week.

77.    The unpaid overtime hours should have been paid by Defendants because they constitute compensable time worked under the IMWL.

78.    Under the IMWL, "hours worked" includes "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110.

79.    The time Defendants required its hourly employees to be on the premises of the Poultry Processing Plants constitutes "hours worked" under the IMWL.

80.    The pre-shift time Defendants required its hourly employees to be on the Poultry Processing Plants' premises, including but not necessarily limited to the time Defendants required hourly employees to wait in line to receive and don protective gear, to walk within the Poultry Processing Plants to the time clock, and to wait to clock in on the time clock constitutes "hours worked" under the IMWL.

81.    The time Defendants required its hourly employees to walk within the Poultry Processing Plants after they clocked out and to doff protective gear constitutes "hours worked" under the IMWL.

82.    In light of Defendants' conduct in not compensating Plaintiffs and Class Members for all overtime hours worked under the IMWL, Plaintiffs and Class Members are owed significant unpaid overtime wages and penalties.

83.    Defendants provided protective and sanitary gear, including, but not limited to, gloves, hairnets, beard covers, plastic frocks, glasses, and earplugs to workers at the Poultry

10

FILED DATE: 1/20/2026 8:44 AM 2026CH00528
FILED DATE: 5/27/2025 12:07 PM 2025CH03287

Processing Plants who engaged in the processing of poultry products at the beginning of their shift each Monday.

84. If Plaintiffs and other Class Members required additional gloves, glasses, or similar protective or sanitary items before the following Monday, Defendants deducted the cost of those items from Plaintiffs and other Class Members' pay.

85. Due to the nature of the work they performed at the Poultry Processing Plants, Plaintiffs and other Class Members frequently needed more than one hairnet, and one set of gloves and earplugs per week because the items would become soiled and were no longer sanitary.

86. Plaintiffs needed at least two pairs of gloves during most workweeks. Defendants deducted $5.00 from Plaintiffs' pay for each set of additional gloves they required each week.

87. On the occasions that Plaintiffs needed an extra set of glasses during a single workweek, Defendants deducted $8.00 from Plaintiffs' pay for each set of extra glasses.

88. Gloves, hairnets, beard covers, plastic frocks, glasses, earplugs, and similar protective and sanitary gear are necessary for Plaintiffs and other Class Members to perform their job duties because Plaintiffs and other Class Members handled poultry products when performing their job duties.

89. The operations at the Poultry Processing Plants are subject to the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 9, *et seq*, and the Good Manufacturing Practices set forth in 21 C.F.R. § 110, *et seq*.

90. Pursuant to 21 C.F.R § 110.10(b), "[a]ll persons working in direct contact with food, food-contact surfaces, and food-packaging materials shall conform to hygienic practices

11

FILED DATE: 1/20/2026 8:44 AM   2026CH00528
FILED DATE: 5/27/2025 12:07 PM   2025CH03287

while on duty to the extent necessary to protect against contamination of food. The methods for maintaining cleanliness include, but are not limited to:

i. Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials.

ii. Maintaining adequate personal cleanliness.

iii. Washing hands thoroughly (and sanitizing if necessary to protect against contamination with undesirable microorganisms) in an adequate hand-washing facility before starting work, after each absence from the work station, and at any other time when the hands may have become soiled or contaminated.

iv. Removing all unsecured jewelry and other objects that might fall into food, equipment, or containers, and removing hand jewelry that cannot be adequately sanitized during periods in which food is manipulated by hand. If such hand jewelry cannot be removed, it may be covered by material which can be maintained in an intact, clean, and sanitary condition and which effectively protects against the contamination by these objects of the food, food-contact surfaces, or food-packaging materials.

v. Maintaining gloves, if they are used in food handling, in an intact, clean, and sanitary condition. The gloves should be of an impermeable material.

vi. Wearing, where appropriate, in an effective manner, hair nets, headbands, caps, beard covers, or other effective hair restraints.

vii. Storing clothing or other personal belongings in areas other than where food is

12

FILED DATE: 1/20/2026 8:44 AM 2026CH00528
FILED DATE: 5/27/2025 12:07 PM 2025CH03287

exposed or where equipment or utensils are washed.

viii. Confining the following to areas other than where food may be exposed or where equipment or utensils are washed: eating food, chewing gum, drinking beverages, or using tobacco.

ix. Taking any other necessary precautions to protect against contamination of food, food-contact surfaces, or food-packaging materials with microorganisms or foreign substances including, but not limited to, perspiration, hair, cosmetics, tobacco, chemicals, and medicines applied to the skin.

91. Deductions from Plaintiffs' and other Class Members' wages for the provision of additional sanitary and protective gear were made for Defendants' benefit. Without gloves, hairnets, earplugs and similar sanitary and protective items, Plaintiffs and the Class Members would be unable to perform poultry processing work for Defendants.

92. The deductions Defendants took from Plaintiffs' and other Class Members' pay were made without prior and contemporaneous consent.

## CLASS ACTION ALLEGATIONS

93. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed classes, which are comprised of:

**Illinois Minimum Wage Law Class**

> **All current and former hourly employees of REM and/or JCG (whether directly or through third-party entities) who worked at one or more of the Poultry Processing Plants and who were paid for working at least 39 hours in at least one week between March 21, 2022 and the final resolution of this Action.**

13

FILED DATE: 1/20/2026 8:44 AM  2026CH00528
FILED DATE: 5/27/2025 12:07 PM  2025CH03287

### Illinois Wage Payment and Collection Act Class

> **All current and former hourly employees of REM and/or JCG (whether directly or through third-party entities) who worked at one or more of the Poultry Processing Plants and who had deductions taken from their wages to pay for sanitary and/or protective gear between March 21, 2015 and the final resolution of this Action.**

94.　Plaintiffs and Class Members are not exempt from the IMWL.

95.　Plaintiffs and Class Members are not exempt from the IWPCA.

96.　Under the IWPCA, Plaintiffs and Class Members are entitled to be paid wages that are free of deductions for sanitary and protective items that are used by Plaintiffs and Class Members for Defendants' benefit to which Plaintiffs and Class Members did not provide written consent.

97.　Under the IMWL, Plaintiffs and Class Members who work more than forty (40) hours in an individual workweek are entitled to receive one and one-half times their regular rate of pay for all overtime hours they worked.

98.　Plaintiffs' regular rates of pay are identified on their pay stubs.

99.　Class Members' regular rates of pay are identified on their pay stubs.

100.　The deductions Defendants took from Plaintiffs' wages are identified on their pay stubs.

101.　The deductions Defendants took from Class Members' wages are identified on their pay stubs.

102.　Plaintiffs and the Classes are similar to one another because they were all subject to the same allegedly illegal practices: (1) failing to pay overtime wages under the IMWL for time associated with various required activities arising on the Poultry Processing Plants' premises

14

FILED DATE: 1/20/2026 8:44 AM   2026CH00528
FILED DATE: 5/27/2025 12:07 PM   2025CH03287

at the beginning and end of the workday; and (2) having the cost of necessary sanitary and protective gear deducted from their wages in violation of the IWPCA.

103.    Defendant JCG employed more than 100 hourly paid workers at the Poultry Processing Plants in the prior three (3) years.

104.    Defendant REM employed more than 100 hourly paid workers at the Poultry Processing Plants in the prior three (3) years.

105.    As a result, the Class is so numerous that joining all Class Members in one lawsuit is not practical.

106.    Plaintiffs' claims are typical of the Class Members' claims because as a result of Defendants' uniform policies, Plaintiffs and Class Members were not paid for all overtime wages earned in individual workweeks under the IMWL and are owed significant unpaid overtime wages.

107.    Plaintiffs' claims are also typical of the Class Members' claims because, as a result of Defendants' uniform policies, Defendants made improper deductions from Plaintiffs' and the Class Members' pay in violation of the IWPCA.

108.    Plaintiffs and their counsel will fairly and adequately protect the interests of the Classes.

109.    Plaintiffs retained counsel experienced in wage and hour class action litigation.

110.    Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

    a.    Whether Defendants' practice of failing to pay for all time associated with various required activities arising on JCG's premises at the beginning and end of the

15

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

FILED DATE: 5/27/2025 12:07 PM    2025CH03287

workday violates the IMWL;

b. Whether Defendant's practice of deducting the cost of necessary protective gear from Plaintiffs' and IWPCA Class Members' wages violates the IWPCA;

c. Whether Defendants failed to pay Plaintiffs and the IMWL Class wages for all overtime hours worked; and

d. The proper measure of damages sustained by Plaintiffs and the Classes.

111. These common questions of law and fact predominate over the variations that may exist between Plaintiffs and the members of the Classes, if any.

112. Plaintiffs, the Class Members, and Defendants have a commonality of interest in the subject matter of the lawsuit and the remedy sought.

113. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The damages suffered by the individual class members are small compared to the expense and burden of individual prosecutions of this litigation. Prosecuting hundreds of identical, individual lawsuits would not promote judicial efficiency or equity. Class certification will eliminate the need for duplicate litigation.

114. The prosecution of this matter in hundreds of identical, individual lawsuits would create a risk of inconsistent results and would establish incompatible standards of conduct for Defendants.

115. The identities of the Class Members are readily identifiable from Defendants' records.

16

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

FILED DATE: 5/27/2025 12:07 PM  2025CH03287

## COUNT I

### Violation of the Illinois Minimum Wage Law

116.    Plaintiffs hereby incorporate and reallege the foregoing paragraphs as though set forth herein.

117.    The IMWL entitles covered employees to overtime compensation of not less than one and one-half (1 1/2) times the employees' regular rate of pay for all hours worked in excess of forty (40) in one workweek. *See* 820 Ill. Comp. Stat § 105/4a(1).

118.    Defendants are subject to the IMWL's overtime requirements because Defendants are employers under 820 Ill. Comp. Stat § 105/3(c).

119.    During all relevant times, Plaintiffs and the IMWL Class Members were covered employees entitled to the above-described IMWL protections. *See* 820 Ill. Comp. Stat. § 105/3(d).

120.    Plaintiff Ruffin worked in excess of forty hours at the Franklin Park Poultry Plant in at least one individual work week in the prior three years.

121.    Plaintiff Mondy worked in excess of forty hours at the Franklin Park Poultry Plant in at least one individual work week in the prior three years.

122.    At least 100 hourly paid employees of REM worked in excess of 40 hours in at least one individual work week in the prior three years at the Franklin Park Poultry Plant.

123.    At least 100 hourly paid employees of JCG worked in excess of 40 hours in at least one individual work week in the prior three years at the Franklin Park Poultry Plant.

17

124. Upon information and belief, at least 100 hourly paid employees of REM worked in excess of 40 hours in at least one individual work week in the prior three years at the Chicago Poultry Plant.

125. Upon information and belief, at least 100 hourly paid employees of JCG worked in excess of 40 hours in at least one individual work week in the prior three years at the Chicago Poultry Plant.

126. As described in the foregoing paragraphs, Defendants' policy and practice of not paying for time associated with various required activities arising on the Poultry Processing Plants' premises at the beginning and end of the workday are in violation of the IMWL. *See* 820 ILCS §§ 115/1 *et seq.*

127. Defendants knowingly failed to compensate Plaintiffs and the IMWL Class Members for hours worked in excess of forty (40) hours in a workweek, in violation of the IMWL.

128. Pursuant to 820 Ill. Comp. Stat. § 105/12(a), Defendants are liable to Plaintiffs and IMWL Class Members for, *inter alia*, unpaid overtime wages for three years prior to the filing of the lawsuit, treble damages, statutory penalties in the amount of five percent (5%) per month of the amount of underpayment, and reasonable attorneys' fees and costs.

## COUNT II

**Violation of the Illinois Wage Payment and Collection Act – Unauthorized Deductions**

129. Plaintiffs hereby incorporate and reallege the foregoing paragraphs as though set forth herein.

18

130. The IWPCA prohibits employers from making deductions from employees' wages or final compensation unless the deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; (4) made with written consent of the employee, given freely at the time the deduction is made; or (5) made by certain governmental employers. 820 Ill. Comp. Stat. § 115/9.

131. Defendants' actions, policies and/or practices as described above violate the IWPCA by deducting the cost of certain sanitary and protective items from Plaintiffs' and the IWPCA Class Members' wages.

132. As a direct and proximate result of this practice, Plaintiffs and the IWPCA Class Members have suffered loss of income and other damages to be determined at trial.

133. As such, Defendants are liable to Plaintiffs and IWPCA Class Members in an amount equal to the improper deductions, damages in the amount of five percent (5%) per month of the amount of the underpayment, and reasonable attorneys' fees and costs. *See* 820 Ill. Comp. Stat. § 115/14.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and on behalf of all Class Members, pray that the Court:

1. Certify that this action may proceed as a class action;

2. Appoint Plaintiffs as Representatives of the Class, and appoint their counsel as Class Counsel;

3. Find and declare that Defendants' policies and/or practices described above violate the IMWL and IWPCA;

4. Award all unpaid overtime wages, treble damages, statutory penalties, interest,

19

FILED DATE: 1/20/2026 8:44 AM   2026CH00528
FILED DATE: 5/27/2025 12:07 PM   2025CH03287

and/or restitution to be paid by Defendants for the causes of action alleged herein;

5. Award costs, and expenses, including reasonable attorneys' fees and expert fees;

6. Award pre-judgment and post-judgment interest, as provided by law; and

7. Order such other and further legal and equitable relief the Court deems just, necessary and proper.

Dated: May 27, 2025

Respectfully submitted,

s/Maureen A. Salas

Douglas M. Werman
Maureen A. Salas
WERMAN SALAS P.C.
Firm Code: 42031
77 W. Washington St., Ste 1402
Chicago, IL 60602
Tel: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com

20

2026CH00528

Hearing Date: 3/23/2026 10:00 AM
Location: Richard J Daley Center
Judge: Wilson, Thaddeus L

FILED
1/20/2026 8:44 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00528
Calendar, 1
36250461

# Exhibit B

FILED DATE: 1/20/2026 8:44 AM   2026CH00528



# PHILADELPHIA
## INSURANCE COMPANIES

June 20, 2025

Mr. Jim Duff
Remedial Environment Manpower, Inc.
7239 Roosevelt Rd.
Forest Park, IL 60130
jimduff@remlabor.com

RE: Policyholder:  Remedial Environmental Manpower, Inc.
   Policy Type :   Private Company Protection Plus
   Policy Number :  PPK2598271-003
   Policy Period :   09/01/2024 – 09/01/2025
   Claimant :    David Ruffin
   Our File Number : 1713531

**SENT VIA DOCUSIGN**

Dear Mr. Duff:

Tokio Marine Specialty Insurance Company ("Tokio") provides Employment Practices Liability Insurance to Remedial Environmental Manpower, Inc. under Private Company Protection Plus policy PPK2598271-003. The above captioned matter was submitted to us on or about May 12, 2025 for coverage consideration under the afore-mentioned policy. This letter follows our email of May 14, 2025, wherein we advised that this policy will not afford coverage of any kind for this Claim.

## THE CLAIM

Tokio received a copy of a class action wage and hour complaint entitled: "*David Ruff, on behalf of himself and other individuals similarly situated, known and unknown v. Koch Meat Co., Inc.*" filed on March 21, 2025, in the Circuit Court of Cook County, Illinois (the "Complaint"). In the Complaint, David Ruffin (the "Claimant") alleges that he, and others similarly situated, were not paid all overtimes wages and other earned compensation for all time worked.

Accompanying the complaint is a May 7, 2025, authored by Steven J. Siegel on behalf of Koch Meat Co., Inc. addressed to Remedial Environmental Manpower, Inc. (the "Tender Letter"). In the Tender Letter, Koch Meat Co., Inc. seeks defense and indemnity from Remedial Environmental Manpower, Inc. pursuant to an agreement.

Please note that by stating the aforementioned allegations we do not accept them to be true but state them as pled/alleged as a basis for our coverage evaluation.

---

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

## POLICY OVERVIEW

This matter is submitted for consideration under Tokio's claims made Private Company Protection Plus Policy, Policy number PPK2598271-003, effective September 1, 2024 to September 1, 2025 (the "Policy"). The Policy provides only Coverage Part 2, Employment Practices Liability, which is written with a limit of liability of $5,000,000, a retention of $25,000 each Claim and a Prior and Pending Date of September 1, 2021. The aggregate for all Claims is $5,000,000.

## THE POLICY WILL NOT AFFORD COVERAGE

The purpose of this letter is to advise you that upon a review of the allegations currently pled/stated, there is NO coverage available under the Policy. Part 2 **Exclusion B**, as revised by the **AMENDMENT OF EXCLUSIONS** endorsement attached to the policy bars coverage for Claims involving an Insured's actual or alleged failure to pay wages of any kind.

## RELEVANT POLICY SECTIONS

The Policy includes the provisions reproduced below. By identifying and quoting portions of the Policy below, Tokio does not waive any other provisions that the Policy might contain. Tokio invites you to review the Policy, in its entirety.

Private Company Protection Plus

EMPLOYMENT PRACTICES LIABILITY INSURANCE

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THIS POLICY IS WRITTEN ON A CLAIMS MADE BASIS AND COVERS ONLY THOSE CLAIMS FIRST MADE DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. THE AMOUNTS INCURRED FOR DEFENSE COST SHALL BE APPLIED AGAINST THE RETENTION.**

In consideration of the premium paid and in reliance upon all statements made and information furnished to the Underwriter, including all statements made in the Application, the Underwriter agrees to provide coverage as shown in the Declarations and described as follows:

## PART 2
## EMPLOYMENT PRACTICES LIABILITY INSURANCE

(To be read in conjunction with the Common Policy Definitions, Exclusions and Conditions Sections, Part 4, 5, 6 below)

I. INSURING AGREEMENT

The **Underwriter** will pay on behalf of the **Insured**, **Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for an **Employment Practice Act.**

II. DEFINITIONS

2

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

A.  **Employment Practice Act**[1] means any actual or alleged:

1.  wrongful dismissal, discharge, or termination of employment;

2.  breach of a written or oral employment contract or implied employment contract;

3.  employment related misrepresentation;

4.  wrongful failure to promote;

5.  violation of employment discrimination laws (including harassment);

6.  wrongful deprivation of a career opportunity;

7.  employment related wrongful discipline;

8.  negligent employee evaluation, training or supervision;

9.  employment related invasion of privacy

10. employment related defamation (including libel and slander);

11. workplace harassment of any kind, including sexual;

12. hostile work environment;

13. constructive discharge of employment;

14. employment related **Retaliation**

15. employment related humiliation;

16.  wrongful demotion;

17. negligent reassignment;

18. negligent hiring or retention;

19. failure to grant tenure;

20. failure to provide or enforce consistent employment policies and procedures;

21. failure to employ;

22. workplace bullying

---

[1] As amended by Endorsement PI-PRD 126 (04/19), Private Company Enhancement Endorsement.

3

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

23. violation of any federal, state or local civil rights laws; and

24. acts described in 1. through 23. above arising from the use of the **Private Company's** internet, e-mail, telecommunications or similar system, including communications on social media networks and committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured** or by the **Private Company**.

Solely with respect to any **Claim** brought by or on behalf of any **Third Party**, **Employment Practice Act** means any actual or alleged wrongful failure to employ, discrimination, harassment or violation of such **Third Party's** civil rights in relation to such wrongful failure to employ, discrimination or harassment, whether direct, indirect, or unintentional, committed by an **Individual Insured** in his/her capacity as an **Individual Insured** or by the **Private Company**.

## PART 4
## COMMON POLICY DEFINITIONS

B. **Claim**[2] means:

1. a written demand for monetary or non-monetary **Damages**;

2. a judicial or civil proceeding commenced by the service of a complaint or similar pleading;

3. a criminal proceeding commenced by a return of an indictment;

4. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigation order or similar document, including, but not limited to, proceedings before the Equal Employment Opportunity Commission or any similar governmental agency;

5. an arbitration or mediation or other alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the **Underwriter's** written consent, such consent not to be unreasonably withheld;

6. solely with respect to Part 3 (**Fiduciary Liability Insurance**), a written notice of commencement of an investigation by the Department of Labor or the Pension Benefit Guaranty Corporation;

   against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

7. a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Claim** as described above.

---

[2] As amended by Endorsement PI-PRD 126 (04/19), Private Company Enhancement Endorsement.

4

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

8. an official request for **Extradition**;

However, **Claim** shall not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

A **Claim** shall be considered made when an **Insured** first receives notice of the **Claim**.

C. **Damages** means any monetary judgment (including any pre- and post- judgment interest thereon) or monetary settlement, including the punitive, exemplary or multiple portion of any judgment (to the extent such damage is insurable under law of any jurisdiction which has a substantial relationship to the **Insured** or to the **Claim** seeking such damage and which is most favorable to the insurability of such damage).

D. **Defense Costs** means:

1. any reasonable and necessary legal fees and expenses incurred in the defense of a **Claim,** whether by the **Insured** with the **Underwriter's** consent or directly by the **Underwriter,** in the investigation, adjustment, defense and appeal of a **Claim,** Except that **Defense Costs** shall not include:

   a. any amounts incurred in defense of any **Claim** for which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty; or

E. **Employee**[3] means any natural person whose labor or service is engaged by and directed by the **Private Company**, including part-time, seasonal, leased and temporary employed persons as well as volunteers, but only while that natural person is acting in his or her capacity as such. **Employee** shall include **Independent Contractor**.

G. **Individual Insured**[4] means:

1. any individual who has been, now is or shall become a director, officer, governor, trustee, **Employee**, volunteer, management committee member, risk manager, in-house counselor member of the Board of Managers of the **Private Company**, including foreign equivalents;

2. employees of the **Client Company**.

J. **Loss**[5] means:

---

[3] As amended by Endorsement PI-PRD 126 (04/19), Private Company Enhancement Endorsement.

[4] As amended by Endorsement PI-PRD 126 (04/19), Private Company Enhancement Endorsement.

[5] As amended by Endorsement PI-PRD 126 (04/19), Private Company Enhancement Endorsement.

5

1. **Damages**;

2. **Defense Costs**;

However, **Loss** does not include:

1. fines or penalties imposed by law except fines and penalties assessed against an **Insured** pursuant to 15 U.S.C. 78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act); provided that such violation is neither intentional or willful and such fines and penalties are insurable under the law of jurisdiction in which such fines or penalties are assessed; or

2. taxes; or

3. matters deemed uninsurable under the law to which this Policy shall be construed; or

4. any amounts other than **Defense Costs**, which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress in any form other than monetary damages; or

5. any costs other than **Defense Costs** associated with any accommodation required pursuant to the American With Disabilities Act (removed Civil Rights Act of 1964) and the rules or regulations promulgated thereunder, amendments thereto, or similar provisions of any federal, state or local law or common law.

S. **Underwriter** means the stock insurance company check marked on the Declarations Page of this Policy.

T. **Wrongful Act** means :

1. with respect to Part 2, any **Employment Practices Act.**

\* \* \* \* \*

Now we direct your attention to the **AMENDMENT OF EXCLUSIONS** endorsement attached to your policy:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDMENT OF EXCLUSIONS**

This endorsement modifies insurance provided under the following:

PRIVATE COMPANY PROTECTION PLUS

Part 2 (**EMPLOYMENT PRACTICES LIABILITY INSURANCE**), section III (EXCLUSIONS), item B. is replaced by:

6

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

B.  for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation**; provided, further, however, there is no coverage provided under this policy for any **Claim** related to, arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured(s)** to pay **Earned Wages** (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**, including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay **Earned Wages**, or (ii) any **Claim** seeking **Earned Wages** because any **Employee(s)** or purported **Employee(s)** were improperly classified or mislabeled as "exempt."

Part 4 (**COMMON POLICY DEFINITIONS**), is supplemented by:

**Earned Wages** means wages or overtime pay for services rendered.

## CONCLUSION

This Claim involves a lawsuit brought by a former employee against your client company, Koch Meat Co., Inc. over allegations of failing to pay overtime wages and other compensation for all hours worked. As outlined above, pursuant to Part 2 Exclusion B, as revised by the **Amendment of Exclusions Endorsement**, the Private Company Protection Plus Policy bars coverage of any kind (indemnity or defense) for this Claim.

This correspondence is not intended, nor shall it be construed, as an exhaustive listing of all of the Policy terms, conditions or exclusions which might preclude coverage. Tokio does not waive any of the other provisions, conditions, terms, exclusions or portions of the insurance policy described in this or our earlier letter, nor should any of the acts or positions described herein be construed in any way as a waiver or an estoppel with respect to other matters of which Tokio does not have present knowledge, or which have not been raised by you.

We trust your understanding of the above stated no coverage position is clear. However, should you disagree with our position, please promptly communicate your notice of disagreement to the undersigned in writing. Having adequately considered the detailed reasoning for our no coverage position, we request you describe the basis for your disagreement so we can provide to you an adequate reply and/or reevaluation of that position. Additionally, should you have any questions concerning this matter you may call our claims professional, Daniel Valore, at 610-538-2813.

Very truly yours,

Anne Barnett
Professional Liability

7

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Sr. Claims Supervisor

Cc:   Ms. Colleen Hobday
Marsh & McLennan Agency LLC
Colleen.Hobday@MarshMMA.com
(*via e-mail only*)

8

Hearing Date: 3/23/2026 10:00 AM
Location: Richard J Daley Center
Judge: Wilson, Thaddeus L

2026CH00528

FILED
1/20/2026 8:44 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00528
Calendar, 1
36250461

# Exhibit C

TCONNER

## GENERAL LIABILITY NOTICE OF OCCURRENCE / CLAIM

ACORD®

DATE (MM/DD/YYYY)
9/16/2025

| AGENCY<br>Marsh & McLennan Agency, LLC<br>20 N Martingale Road<br>Schaumburg, IL 60173 | INSURED LOCATION CODE | DATE OF LOSS AND TIME<br>05/07/2025 | | AM<br>PM |
|---|---|---|---|---|
| | CARRIER<br>Tokio Marine Specialty Insurance Company | | NAIC CODE<br>23850 | |
| CONTACT NAME: | POLICY NUMBER<br>PPK2598271003 | | | |

CONTACT
NAME:

PHONE (A/C, No, Ext): **(888) 429-0999**

FAX (A/C, No):

E-MAIL ADDRESS:

CODE: **97135300**          SUBCODE:

AGENCY CUSTOMER ID: **REMEENV-01**

### INSURED

| NAME OF INSURED (First, Middle, Last)<br>**Remedial Environmental Manpower, Inc.** | INSURED'S MAILING ADDRESS<br>7239 W. Roosevelt Rd.<br>Forest Park, IL 60130 |
|---|---|

| DATE OF BIRTH | FEIN (If applicable)<br>36-3580586 | |
|---|---|---|

PRIMARY PHONE # ☐ HOME ☒ BUS ☐ CELL   SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL
**(708) 366-3022**

PRIMARY E-MAIL ADDRESS: **jimduff@remlabor.com**
SECONDARY E-MAIL ADDRESS:

### CONTACT          CONTACT INSURED

| NAME OF CONTACT (First, Middle, Last)<br>**Jim Duff** | CONTACT'S MAILING ADDRESS<br>7239 W. Roosevelt Rd.<br>Forest Park, IL 60130 |
|---|---|

PRIMARY PHONE # ☐ HOME ☒ BUS ☐ CELL   SECONDARY PHONE # ☐ HOME ☐ BUS ☒ CELL
**(708) 366-3022**          **(630) 730-6036**

WHEN TO CONTACT

PRIMARY E-MAIL ADDRESS: **jimduff@remlabor.com**
SECONDARY E-MAIL ADDRESS:

### OCCURRENCE

| LOCATION OF OCCURRENCE | POLICE OR FIRE DEPARTMENT CONTACTED |
|---|---|
| STREET: **2219-2199 25th Ave** | |
| CITY, STATE, ZIP: **Franklin Park, IL 60131** | REPORT NUMBER |
| COUNTRY: **United States of America** | |

DESCRIBE LOCATION OF OCCURRENCE IF NOT AT SPECIFIC STREET ADDRESS:

DESCRIPTION OF OCCURRENCE (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
**David Ruffin: Complaint filed in The Circuit Court of Cook County, Illinois County Department, Chancery Division- see attached.
Please review under GL and PL portions of the policy.**

**Note: Insured requests Gen Lefevour of Buchalter as defense counsel.**

### TYPE OF LIABILITY

| PREMISES: INSURED IS | | OWNER | TENANT | | | TYPE OF PREMISES |
|---|---|---|---|---|---|---|

OWNER'S NAME & ADDRESS (If not insured)

PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL   SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL

PRIMARY E-MAIL ADDRESS:
SECONDARY E-MAIL ADDRESS:

| PRODUCTS: INSURED IS | | MANUFACTURER | VENDOR | | | TYPE OF PRODUCT |
|---|---|---|---|---|---|---|

MANUFACTURER'S NAME & ADDRESS (If not insured)

PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL   SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL

PRIMARY E-MAIL ADDRESS:
SECONDARY E-MAIL ADDRESS:

WHERE CAN PRODUCT BE SEEN?

ACORD 3 (2013/01)          Page 1 of 4          © 1986-2013 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: <u>REMEENV-01</u>    TCONNER

**INJURED / PROPERTY DAMAGED**

| NAME & ADDRESS (Injured/Owner) | EMPLOYER'S NAME & ADDRESS |
|---|---|

| PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|---|---|---|---|

PRIMARY E-MAIL ADDRESS:                    PRIMARY E-MAIL ADDRESS:

SECONDARY E-MAIL ADDRESS:                  SECONDARY E-MAIL ADDRESS:

| AGE | SEX | OCCUPATION | DESCRIBE INJURY |
|---|---|---|---|

| WHERE TAKEN | WHAT WAS INJURED DOING? |
|---|---|

| DESCRIBE PROPERTY (Type, model, etc.) | ESTIMATE AMOUNT | WHERE CAN PROPERTY BE SEEN? |
|---|---|---|

**WITNESSES**

| NAME AND ADDRESS | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|---|

PRIMARY E-MAIL ADDRESS:

SECONDARY E-MAIL ADDRESS:

| NAME AND ADDRESS | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|---|

PRIMARY E-MAIL ADDRESS:

SECONDARY E-MAIL ADDRESS:

| NAME AND ADDRESS | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|---|

PRIMARY E-MAIL ADDRESS:

SECONDARY E-MAIL ADDRESS:

**REMARKS (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

| REPORTED BY | REPORTED TO |
|---|---|
| Jim Duff | Tamika Conner |

ACORD 3 (2013/01)                    Page 2 of 4

## APPLICABLE IN ALABAMA

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

## APPLICABLE IN ALASKA

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

## APPLICABLE IN ARIZONA

For your protection, Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

## APPLICABLE IN ARKANSAS, DELAWARE, KENTUCKY, LOUISIANA, MAINE, MICHIGAN, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH DAKOTA, PENNSYLVANIA, RHODE ISLAND, SOUTH DAKOTA, TENNESSEE, TEXAS, VIRGINIA, AND WEST VIRGINIA

Any person who knowingly and with intent to defraud any insurance company or another person, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and [NY: substantial] civil penalties. In LA, ME, TN, and VA, insurance benefits may also be denied.

## APPLICABLE IN CALIFORNIA

For your protection, California law requires the following to appear on this form:   Any person who knowingly presents a false or fraudulent claim for payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

## APPLICABLE IN COLORADO

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

## APPLICABLE IN THE DISTRICT OF COLUMBIA

Warning:   It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person.   Penalties include imprisonment and/or fines.   In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

## APPLICABLE IN FLORIDA

Pursuant to S. 817.234, Florida Statutes, any person who, with the intent to injure, defraud, or deceive any insurer or insured, prepares, presents, or causes to be presented a proof of loss or estimate of cost or repair of damaged property in support of a claim under an insurance policy knowing that the proof of loss or estimate of claim or repairs contains any false, incomplete, or misleading information concerning any fact or thing material to the claim commits a felony of the third degree, punishable as provided in S. 775.082, S. 775.083, or S. 775.084, Florida Statutes.

## APPLICABLE IN HAWAII

For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

## APPLICABLE IN IDAHO

Any person who knowingly and with the intent to injure, defraud, or deceive any insurance company files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

## APPLICABLE IN INDIANA

A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

ACORD 3 (2013/01)          Page 3 of 4

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

## APPLICABLE IN KANSAS

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

## APPLICABLE IN MARYLAND

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

## APPLICABLE IN MINNESOTA

A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

## APPLICABLE IN NEVADA

Pursuant to NRS 686A.291, any person who knowingly and willfully files a statement of claim that contains any false, incomplete or misleading information concerning a material fact is guilty of a felony.

## APPLICABLE IN NEW HAMPSHIRE

Any person who, with purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

## APPLICABLE IN OHIO

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

## APPLICABLE IN OKLAHOMA

WARNING: Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## APPLICABLE IN WASHINGTON

It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

Hearing Date: 3/23/2026 10:00 AM
Location: Richard J Daley Center
Judge: Wilson, Thaddeus L

2026CH00528

FILED
1/20/2026 8:44 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00528
Calendar, 1
36250461

# Exhibit D



# PHILADELPHIA
## INSURANCE COMPANIES

A Member of the Tokio Marine Group

P.O. Box 950, Bala Cynwyd, Pennsylvania 19004-0950
800.765.9749 • Fax 800.685.9238 • PHLY.com

Philadelphia Consolidated Holding Corp.
Philadelphia Indemnity Insurance Company
Philadelphia Insurance Company
Maguire Insurance Agency, Inc.

October 1, 2025

Remedial Environmental Manpower, Inc.
7239 Roosevelt Rd
Forest Park, IL 60130-2471

**VIA EMAIL READ RECEIPT** to: jimduff@remlabor.com

Re:  Claim number    :    1737229
     Our insured     :    Remedial Environmental Manpower, Inc.
     D/L             :    5/7/2025
     Claimant        :    David Ruffin

Dear Policy Holder,

Philadelphia Indemnity Insurance Company (P.I.I.C) issued a Commercial General Liability Policy, policy number PHPK2598271 with effective dates of 9/1/2024 to 9/1/2025 to the above named insured.

We are in receipt of a class action complaint filed in the Circuit Court of Cook County, Illinois County Department, Chancery Division alleging improper deducting the cost of necessary protective and sanitary gear from employees pay and failure to pay all time worked by its Illinois employees. The complaint also alleges violation of the Illinois minimum wage law, violations of the Illinois wage payment and collection act, violation of the Illinois wage payment and collection act – unauthorized deductions, quantum merit. The complaint also seeks an award of unpaid wages, treble damages, statutory penalties, interest and or restitution to be paid as well as reasonable attorney's fees.

After a careful review of the claim, as well as the terms and conditions of your Commercial General Liability Policy, it is the position of P.I.I.C. that there is no coverage for this claim under the above policy. P.I.I.C. has no duty to defend or pay damages for the above matter as there is no "occurrence" resulting in "Bodily Injury" or "Property Damage". The basis for this decision will be discussed in more detail below.

We refer your attention to the Commercial General Liability form CG 00 01 04 13 which provides the following:

> SECTION I – COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period

Please note that beginning on page 13 of 16 of the above referenced coverage form under SECTION V-DEFINITIONS

3. "Bodily Injury" means bodily injury, sicknesss or disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and Advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses.

a. False arrest, detention or imprisonment.
b. Malicious prosecution;
c. The Wrongful eviction from , wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that  a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement" or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

17. "Property Damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

As previously indicated, this claim alleges improper deduction of the cost of necessary protective and sanitary gear from employees pay and failure to pay all time worked by its Illinois employees. The complaint also alleges violation of the Illinois minimum wage law, violations of the Illinois wage payment and collection act, violation of the Illinois wage payment and collection act – unauthorized deductions, quantum merit.

These acts would not trigger coverage as there is no "occurrence resulting in "bodily injury" or "property damage" and no "Personal and Advertising Injury"" as defined by the policy and/or excluded under the policy.

Additionally, the Employee Benefits Administration Errors and Omissions Insurance form would not apply as the allegations in the complaint do not arise out the administration of the insured's employee benefits program.

Because we believe this matter is so clearly outside the scope of the policy, we have not raised other defenses to coverage which may be applicable and therefore, reserve our right to raise other policy terms, conditions and exclusions as defenses to coverage should you choose to challenge Philadelphia Indemnity Insurance Company's position.

Please promptly advise if you believe we have misconstrued any of the facts or circumstances, or if you are aware of any additional facts or circumstances relating to this matter that may impact our position herein.

Nothing in this letter should be construed to waive our rights under the policy(ies) or the law. On the contrary, to the greatest extent permitted by law, all such rights are expressly reserved, including the right to disclaim coverage on additional grounds not set forth in this letter. This coverage analysis is not intended to be exhaustive or exclusive. By mentioning specific grounds that may limit or preclude coverage, Philadelphia Indemnity Insurance Company does not intend to waive any other grounds which may currently exist or exist in the future. We specifically reserve all rights whether arising under the policy(ies), applicable law and / or in equity, including without limitation, the right to supplement this coverage analysis as circumstances warrant.

Having carefully reviewed this matter to conclude that coverage does not apply, we trust your understanding is clear. However, should you disagree with our no coverage position, we request that you notify us in writing of that disagreement along with the reasonable basis for your disagreement, so that we may give this matter prompt reconsideration. Should you need clarification of any issues raised in this letter, and/or have any questions concerning this matter, please feel free to contact the claims examiner, Raymond Motley at (610) 617-7783.

Claim: # 1737229
Page **4** of **4**

There is a separate review of coverage under the professional liability policy by our professional liability department, and they will communicate with you on their coverage opinion.

Very Truly Yours,

James McColgan
Claims Supervisor

CC: colleen.hobday@marshmma.com

Hearing Date: 3/23/2026 10:00 AM
Location: Richard J Daley Center
Judge: Wilson, Thaddeus L

2026CH00528

FILED
1/20/2026 8:44 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00528
Calendar, 1
36250461

# Exhibit E



**LINDSAY, PICKETT & POSTEL, LLC**
———— ATTORNEYS AT LAW ————

| CHICAGO | MILWAUKEE | HAMMOND |
|---|---|---|
| 200 W. Madison Street | 250 E. Wisconsin Ave | 2901 Carlson Drive |
| Suite 3850 | 18th Floor | Suite 375 |
| Chicago, IL 60606 | Milwaukee, WI 53202 | Hammond, IN 46323 |
| (312) 629-0208 | (414) 223-5708 | (219) 230-4415 |

October 9, 2025

Raymond Motley
Sr. Claims Examiner
Philadelphia Insurance Companies
Raymond.Motley@phly.com

| | |
|---|---|
| **Insured:** | **Remedial Environmental Manpower, Inc.** |
| **Claim No.:** | 1737229 |
| **Case Name:** | *David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al.* |
| **Case No.:** | **1:25-cv-07257 (Northern District of Illinois)** |
| **Policy Nos.:** | PHPK2321444; PHUB783970 |
| **LPP File No.:** | 20.5721 |

Mr. Motley:

Please be advised that we are coverage counsel for Remedial Environmental Manpower, Inc. ("REM"). As you are aware, REM tendered the above captioned lawsuit to Philadelphia Insurance Companies ("Philadelphia") under its Commercial Lines Policies. On October 1, 2025, Philadelphia denied coverage under its Commercial General Liability ("CGL") Coverage Part. REM's Commercial Lines Policies are not limited to CGL coverage and contain other coverage parts, **including but not limited to the Staffing Service Professional Liability Coverage Form.** We ask that Philadelphia complete its evaluation under all potentially applicable coverage parts, including the Staffing Service Professional Liability Coverage Form. Please direct all future correspondences to our attention. Thank you.

Very truly yours,
LINDSAY, PICKETT & POSTEL, LLC

Peter G. Syregelas
Haley M. Loutfy

Hearing Date: 3/23/2026 10:00 AM
Location: Richard J Daley Center
Judge: Wilson, Thaddeus L

2026CH00528

FILED
1/20/2026 8:44 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00528
Calendar, 1
36250461

# Exhibit F

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

| From: | Peter Syregelas |
|---|---|
| To: | anne.barnett@phly.com; raymond.motley@phly.com |
| Cc: | Haley Loutfy |
| Subject: | RE: David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229 (20.5721) |
| Date: | Tuesday, December 2, 2025 11:21:31 AM |
| Attachments: | 2025-10-09 Letter to Philidelphia.pdf |
| | image001.jpg |
| | image002.png |

Morning Anne and Raymond –

Please acknowledge that Philadelphia is in receipt of our letter dated 10.09.25, and that it is addressing our request to reconsider its position on coverage for this claim including but not limited to the Staffing Service Professional Liability Coverage Form.

Thank you.



www.lpplawfirm.com

IL | WI | IN

**Peter G. Syregelas**

Partner

Lindsay, Pickett & Postel, LLC

200 W Madison St., Suite 3850 | Chicago, IL 60606

312-970-5661 | psyregelas@lpplawfirm.com



This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. Thank you.

**From:** Haley Loutfy <hloutfy@lpplawfirm.com>
**Sent:** Thursday, November 6, 2025 8:51 AM
**To:** anne.barnett@phly.com
**Cc:** Peter Syregelas <PSyregelas@lpplawfirm.com>
**Subject:** FW: David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229 (20.5721)

Good morning, Anne –

We sent the following letter to Raymond Motley on October 9th. We are simply looking for confirmation that Philadelphia has received this correspondence but have yet to hear. Please let us know if we should be directing this to someone else and provide that contact. Thank you very much.

**Haley M. Loutfy**
Senior Associate

FILED DATE: 1/20/2026 8:44 AM   2026CH00528



www.lpplawfirm.com

LINDSAY, PICKETT & POSTEL, LLC
200 W Madison St., Suite 3850 | Chicago, IL 60606
312-995-7903 | hloutfy@lpplawfirm.com

This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law.  If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. Thank you.

**From:** Haley Loutfy
**Sent:** Monday, November 3, 2025 8:32 AM
**To:** raymond.motley@phly.com
**Cc:** Peter Syregelas <PSyregelas@lpplawfirm.com>
**Subject:** FW: David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229 (20.5721)

Raymond –

Please confirm you received the attached correspondence. If this should be directed to someone else's attention, please let us know.



www.lpplawfirm.com

**Haley M. Loutfy**
Senior Associate
LINDSAY, PICKETT & POSTEL, LLC
200 W Madison St., Suite 3850 | Chicago, IL 60606
312-995-7903 | hloutfy@lpplawfirm.com

This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law.  If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. Thank you.

**From:** Haley Loutfy
**Sent:** Wednesday, October 29, 2025 1:44 PM
**To:** Raymond.Motley@phly.com
**Cc:** Peter Syregelas <PSyregelas@lpplawfirm.com>
**Subject:** FW: David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229

(20.5721)

Hi Raymond,

Please confirm receipt of the following correspondence sent to your attention on October 9th. Thank you.



www.lpplawfirm.com

**Haley M. Loutfy**
Senior Associate
LINDSAY, PICKETT & POSTEL, LLC
200 W Madison St., Suite 3850 | Chicago, IL 60606
312-995-7903 | hloutfy@lpplawfirm.com


This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. Thank you.

**From:** Nina Barba <Nbarba@lpplawfirm.com>
**Sent:** Thursday, October 9, 2025 12:21 PM
**To:** Raymond.Motley@phly.com
**Cc:** Peter Syregelas <PSyregelas@lpplawfirm.com>; Haley Loutfy <hloutfy@lpplawfirm.com>
**Subject:** David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229 (20.5721)

Good afternoon,

Please see attached regarding the above-referenced matter.

Thank you,



www.lpplawfirm.com
IL | WI | IN

**Nina Barba**
Legal Assistant
LINDSAY, PICKETT & POSTEL, LLC
200 W Madison St., Suite 3850 | Chicago, IL 60606
312-794-8343 | nbarba@lpplawfirm.com

This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. Thank you.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528



Hearing Date: 3/23/2026 10:00 AM
Location: Richard J Daley Center
Judge: Wilson, Thaddeus L

2026CH00528

FILED
1/20/2026 8:44 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00528
Calendar, 1
36250461

# Exhibit G

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

| | |
|---|---|
| **From:** | McColgan, James |
| **To:** | Haley Loutfy |
| **Cc:** | Peter Syregelas; Motley, Raymond |
| **Subject:** | RE: David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229 (20.5721) |
| **Date:** | Wednesday, December 3, 2025 8:27:36 AM |
| **Attachments:** | image002.png |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Receipt is acknowledged.

As requested, we will be revisiting under the Staffing Service Professional Liability Coverage Form, and updating our earlier coverage letter.

**Jim McColgan, CPCU, AIC, CCLA**
Claims Supervisor
Philadelphia Insurance Companies
A Member of the Tokio Marine Group

PO Box 950
Bala Cynwyd, PA 19004
**Direct Dial:** 610. 538.2565  **Fax:** 800-865 9238
**ThinkPHLY.com** – Find out why you should **ThinkPHLY** first

**From:** Haley Loutfy <hloutfy@lpplawfirm.com>
**Sent:** Tuesday, December 2, 2025 5:58 PM
**To:** McColgan, James <James.McColgan@phly.com>
**Cc:** Peter Syregelas <PSyregelas@lpplawfirm.com>
**Subject:** FW: David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229 (20.5721)

You don't often get email from hloutfy@lpplawfirm.com. Learn why this is important
**CAUTION:** Be mindful prior to opening non-TMNA attachments and/or links.

Hi James –

My firm represents Remedial Environmental Manpower, Inc. For the past several months we have tried contacting various Philadelphia personnel involved in the above-referenced claim but have yet to hear back. We are simply seeking an acknowledgement and receipt of this correspondence. Please let us know as soon as possible if we should be communicating with someone else. Thank you very much.

**Haley M. Loutfy**
Senior Associate

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

www.lpplawfirm.com

LINDSAY, PICKETT & POSTEL, LLC
200 W Madison St., Suite 3850 | Chicago, IL 60606
312-995-7903 | hloutfy@lpplawfirm.com

This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. Thank you.

**From:** Peter Syregelas <PSyregelas@lpplawfirm.com>
**Sent:** Tuesday, December 2, 2025 11:21 AM
**To:** anne.barnett@phly.com; raymond.motley@phly.com
**Cc:** Haley Loutfy <hloutfy@lpplawfirm.com>
**Subject:** RE: David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229 (20.5721)

Morning Anne and Raymond –

Please acknowledge that Philadelphia is in receipt of our letter dated 10.09.25, and that it is addressing our request to reconsider its position on coverage for this claim including but not limited to the Staffing Service Professional Liability Coverage Form.

Thank you.



www.lpplawfirm.com
IL | WI | IN

**Peter G. Syregelas**
Partner
LINDSAY, PICKETT & POSTEL, LLC
200 W Madison St., Suite 3850 | Chicago, IL 60606
312-970-5661 | psyregelas@lpplawfirm.com

This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. Thank you.

**From:** Haley Loutfy <hloutfy@lpplawfirm.com>
**Sent:** Thursday, November 6, 2025 8:51 AM
**To:** anne.barnett@phly.com

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**Cc:** Peter Syregelas <PSyregelas@lpplawfirm.com>
**Subject:** FW: David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229 (20.5721)

Good morning, Anne —

We sent the following letter to Raymond Motley on October 9th. We are simply looking for confirmation that Philadelphia has received this correspondence but have yet to hear. Please let us know if we should be directing this to someone else and provide that contact. Thank you very much.



www.lpplawfirm.com

**Haley M. Loutfy**
Senior Associate
Lindsay, Pickett & Postel, LLC
200 W Madison St., Suite 3850 | Chicago, IL 60606
312-995-7903 | hloutfy@lpplawfirm.com


This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. Thank you.

**From:** Haley Loutfy
**Sent:** Monday, November 3, 2025 8:32 AM
**To:** raymond.motley@phly.com
**Cc:** Peter Syregelas <PSyregelas@lpplawfirm.com>
**Subject:** FW: David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229 (20.5721)

Raymond —

Please confirm you received the attached correspondence. If this should be directed to someone else's attention, please let us know.



www.lpplawfirm.com

**Haley M. Loutfy**
Senior Associate
Lindsay, Pickett & Postel, LLC
200 W Madison St., Suite 3850 | Chicago, IL 60606
312-995-7903 | hloutfy@lpplawfirm.com


This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this email is not the

intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. Thank you.

**From:** Haley Loutfy
**Sent:** Wednesday, October 29, 2025 1:44 PM
**To:** Raymond.Motley@phly.com
**Cc:** Peter Syregelas <PSyregelas@lpplawfirm.com>
**Subject:** FW: David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229 (20.5721)

Hi Raymond,

Please confirm receipt of the following correspondence sent to your attention on October 9th. Thank you.



www.lpplawfirm.com

**Haley M. Loutfy**
Senior Associate
Lindsay, Pickett & Postel, LLC
200 W Madison St., Suite 3850 | Chicago, IL 60606
312-995-7903 | hloutfy@lpplawfirm.com



This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. Thank you.

**From:** Nina Barba <Nbarba@lpplawfirm.com>
**Sent:** Thursday, October 9, 2025 12:21 PM
**To:** Raymond.Motley@phly.com
**Cc:** Peter Syregelas <PSyregelas@lpplawfirm.com>; Haley Loutfy <hloutfy@lpplawfirm.com>
**Subject:** David Ruffin and Leo Mondy III v. JCG Industries, Inc. et al., Claim No. 1737229 (20.5721)

Good afternoon,

Please see attached regarding the above-referenced matter.

Thank you,

FILED DATE: 1/20/2026 8:44 AM   2026CH00528



www.lpplawfirm.com
IL | WI | IN

**Nina Barba**
Legal Assistant
LINDSAY, PICKETT & POSTEL, LLC
200 W Madison St., Suite 3850 | Chicago, IL 60606
312-794-8343 | nbarba@lpplawfirm.com

This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. Thank you.

Please consider the environment before printing this email. ******************* Internet Email Confidentiality ****************** The information contained in this message (including any attachments) may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that it is strictly prohibited (a) to disseminate, distribute or copy this communication or any of the information contained in it, or (b) to take any action based on the information in it. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.
************************************************************************

Hearing Date: 3/23/2026 10:00 AM
Location: Richard J Daley Center
Judge: Wilson, Thaddeus L

2026CH00528

FILED
1/20/2026 8:44 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00528
Calendar, 1
36250461

# Exhibit H

Docusign Envelope ID: 426EA4CB-2790-4D75-85F7-078ABFAB5539



# PHILADELPHIA
## INSURANCE COMPANIES

December 15, 2025

Mr. Jim Duff
Remedial Environment Manpower, Inc.
7239 Roosevelt Rd.
Forest Park, IL 60130
jimduff@remlabor.com

| RE: | Policyholder: | Remedial Environmental Manpower, Inc. |
|---|---|---|
| | Policy Type : | Private Company Protection Plus |
| | Policy Number : | PPK2598271-003 |
| | Policy Period : | 09/01/2024 – 09/01/2025 |
| | Claimant : | David Ruffin |
| | Our File Number : | 1713531 |

**SENT VIA DOCUSIGN AND REGULAR EMAIL**

Dear Mr. Duff:

Tokio Marine Specialty Insurance Company ("Tokio") provides Employment Practices Liability Insurance to Remedial Environmental Manpower, Inc. under a Private Company Protection Plus policy which is part of a Staffing Services package policy, PPK2598271-003. The above captioned matter was submitted to us on or about May 12, 2025 for coverage consideration under the aforementioned policy. This letter follows our email of May 14, 2025, wherein we advised that this policy will not afford coverage of any kind for this Claim.

**THE CLAIM**

Tokio received a copy of a class action wage and hour complaint entitled: "*David Ruffin, on behalf of himself and other individuals similarly situated, known and unknown v. Koch Meat Co., Inc.*" filed on March 21, 2025, in the Circuit Court of Cook County, Illinois (the "Complaint"). In the Complaint, David Ruffin (the "Claimant") alleges that he, and others similarly situated, were not paid all overtimes wages and other earned compensation for all time worked.

Accompanying the complaint is a May 7, 2025, authored by Steven J. Siegel on behalf of Koch Meat Co., Inc. addressed to Remedial Environmental Manpower, Inc. (the "Tender Letter"). In the Tender Letter, Koch Meat Co., Inc. seeks defense and indemnity from Remedial Environmental Manpower, Inc. pursuant to an agreement.

Please note that by stating the aforementioned allegations we do not accept them to be true but state them as pled/alleged as a basis for our coverage evaluation.

---

Philadelphia Consolidated Holding Corp. ▪ Philadelphia Indemnity Insurance Company ▪Philadelphia Insurance Company ▪ Maguire Insurance Agency, Inc

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

Docusign Envelope ID: 426EA4CB-2790-4D75-85F7-078ABFAB5539

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

## POLICY OVERVIEW

This matter is submitted for consideration under Tokio's claims made Private Company Protection Plus Policy, Policy number PPK2598271-003, effective September 1, 2024 to September 1, 2025 (the "Policy"). The Policy provides only Coverage Part 2, Employment Practices Liability, which is written with a limit of liability of $5,000,000, a retention of $25,000 each Claim and a Prior and Pending Date of September 1, 2021. The aggregate for all Claims is $5,000,000.

## THE POLICY WILL NOT AFFORD COVERAGE

The purpose of this letter is to advise you that upon a review of the allegations currently pled/stated, there is NO coverage available under the Policy. Part 2 **Exclusion B**, as revised by the **AMENDMENT OF EXCLUSIONS** endorsement attached to the policy bars coverage for Claims involving an Insured's actual or alleged failure to pay wages of any kind.

## RELEVANT POLICY SECTIONS

The Policy includes the provisions reproduced below. By identifying and quoting portions of the Policy below, Tokio does not waive any other provisions that the Policy might contain. Tokio invites you to review the Policy, in its entirety.

Private Company Protection Plus

EMPLOYMENT PRACTICES LIABILITY INSURANCE

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THIS POLICY IS WRITTEN ON A CLAIMS MADE BASIS AND COVERS ONLY THOSE CLAIMS FIRST MADE DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. THE AMOUNTS INCURRED FOR DEFENSE COST SHALL BE APPLIED AGAINST THE RETENTION.**

In consideration of the premium paid and in reliance upon all statements made and information furnished to the Underwriter, including all statements made in the Application, the Underwriter agrees to provide coverage as shown in the Declarations and described as follows:

### PART 2
### EMPLOYMENT PRACTICES LIABILITY INSURANCE

(To be read in conjunction with the Common Policy Definitions, Exclusions and Conditions Sections, Part 4, 5, 6 below)

I. INSURING AGREEMENT

The **Underwriter** will pay on behalf of the **Insured, Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for an **Employment Practice Act**.

II. DEFINITIONS

2

Docusign Envelope ID: 426EA4CB-2790-4D75-85F7-078ABFAB5539

A. **Employment Practice Act**[1] means any actual or alleged:

1. wrongful dismissal, discharge, or termination of employment;

2. breach of a written or oral employment contract or implied employment contract;

3. employment related misrepresentation;

4. wrongful failure to promote;

5. violation of employment discrimination laws (including harassment);

6. wrongful deprivation of a career opportunity;

7. employment related wrongful discipline;

8. negligent employee evaluation, training or supervision;

9. employment related invasion of privacy

10. employment related defamation (including libel and slander);

11. workplace harassment of any kind, including sexual;

12. hostile work environment;

13. constructive discharge of employment;

14. employment related **Retaliation**

15. employment related humiliation;

16. wrongful demotion;

17. negligent reassignment;

18. negligent hiring or retention;

19. failure to grant tenure;

20. failure to provide or enforce consistent employment policies and procedures;

21. failure to employ;

22. workplace bullying

---

[1] As amended by Endorsement PI-PRD 126 (04/19), Private Company Enhancement Endorsement.

3

Docusign Envelope ID: 426EA4CB-2790-4D75-85F7-078ABFAB5539

23. violation of any federal, state or local civil rights laws; and

24. acts described in 1. through 23. above arising from the use of the **Private Company's** internet, e-mail, telecommunications or similar system, including communications on social media networks and committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured** or by the **Private Company**.

Solely with respect to any **Claim** brought by or on behalf of any **Third Party, Employment Practice Act** means any actual or alleged wrongful failure to employ, discrimination, harassment or violation of such **Third Party's** civil rights in relation to such wrongful failure to employ, discrimination or harassment, whether direct, indirect, or unintentional, committed by an **Individual Insured** in his/her capacity as an **Individual Insured** or by the **Private Company**.

### PART 4
### COMMON POLICY DEFINITIONS

B. **Claim**[2] means:

1. a written demand for monetary or non-monetary **Damages**;

2. a judicial or civil proceeding commenced by the service of a complaint or similar pleading;

3. a criminal proceeding commenced by a return of an indictment;

4. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigation order or similar document, including, but not limited to, proceedings before the Equal Employment Opportunity Commission or any similar governmental agency;

5. an arbitration or mediation or other alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the **Underwriter's** written consent, such consent not to be unreasonably withheld;

6. solely with respect to Part 3 (**Fiduciary Liability Insurance**), a written notice of commencement of an investigation by the Department of Labor or the Pension Benefit Guaranty Corporation;

    against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

7. a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Claim** as described above.

---

[2] As amended by Endorsement PI-PRD 126 (04/19), Private Company Enhancement Endorsement.

4

Docusign Envelope ID: 426EA4CB-2790-4D75-85F7-078ABFAB5539

8. an official request for **Extradition**;

However, **Claim** shall not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

A **Claim** shall be considered made when an **Insured** first receives notice of the **Claim**.

C. **Damages** means any monetary judgment (including any pre- and post- judgment interest thereon) or monetary settlement, including the punitive, exemplary or multiple portion of any judgment (to the extent such damage is insurable under law of any jurisdiction which has a substantial relationship to the **Insured** or to the **Claim** seeking such damage and which is most favorable to the insurability of such damage).

D. **Defense Costs** means:

1. any reasonable and necessary legal fees and expenses incurred in the defense of a **Claim,** whether by the **Insured** with the **Underwriter's** consent or directly by the **Underwriter,** in the investigation, adjustment, defense and appeal of a **Claim,** Except that **Defense Costs** shall not include:

a. any amounts incurred in defense of any **Claim** for which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty; or

E. **Employee**[3] means any natural person whose labor or service is engaged by and directed by the **Private Company**, including part-time, seasonal, leased and temporary employed persons as well as volunteers, but only while that natural person is acting in his or her capacity as such. **Employee** shall include **Independent Contractor**.

G. **Individual Insured**[4] means:

1. any individual who has been, now is or shall become a director, officer, governor, trustee, **Employee**, volunteer, management committee member, risk manager, in-house counselor member of the Board of Managers of the **Private Company,** including foreign equivalents;

2. employees of the **Client Company**.

J. **Loss**[5] means:

---

[3] As amended by Endorsement PI-PRD 126 (04/19), Private Company Enhancement Endorsement.

[4] As amended by Endorsement PI-PRD 126 (04/19), Private Company Enhancement Endorsement.

[5] As amended by Endorsement PI-PRD 126 (04/19), Private Company Enhancement Endorsement.

5

Docusign Envelope ID: 426EA4CB-2790-4D75-85F7-078ABFAB5539

1. **Damages**;

2. **Defense Costs**;

However, **Loss** does not include:

1. fines or penalties imposed by law except fines and penalties assessed against an **Insured** pursuant to 15 U.S.C. 78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act); provided that such violation is neither intentional or willful and such fines and penalties are insurable under the law of jurisdiction in which such fines or penalties are assessed; or

2. taxes; or

3. matters deemed uninsurable under the law to which this Policy shall be construed; or

4. any amounts other than **Defense Costs**, which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress in any form other than monetary damages; or

5. any costs other than **Defense Costs** associated with any accommodation required pursuant to the American With Disabilities Act (removed Civil Rights Act of 1964) and the rules or regulations promulgated thereunder, amendments thereto, or similar provisions of any federal, state or local law or common law.

S. **Underwriter** means the stock insurance company check marked on the Declarations Page of this Policy.

T. **Wrongful Act** means :

1. with respect to Part 2, any **Employment Practices Act.**

\* \* \* \* \*

Now we direct your attention to the **AMENDMENT OF EXCLUSIONS** endorsement attached to your policy:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDMENT OF EXCLUSIONS**

This endorsement modifies insurance provided under the following:

PRIVATE COMPANY PROTECTION PLUS

Part 2 (**EMPLOYMENT PRACTICES LIABILITY INSURANCE**), section III (EXCLUSIONS), item B. is replaced by:

6

Docusign Envelope ID: 426EA4CB-2790-4D75-85F7-078ABFAB5539

B. for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation**; provided, further, however, there is no coverage provided under this policy for any **Claim** related to, arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured(s)** to pay **Earned Wages** (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**, including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay **Earned Wages**, or (ii) any **Claim** seeking **Earned Wages** because any **Employee(s)** or purported **Employee(s)** were improperly classified or mislabeled as "exempt."

Part 4 (**COMMON POLICY DEFINITIONS**), is supplemented by:

**Earned Wages** means wages or overtime pay for services rendered.

This exclusion applies to claims against ALL insureds. Pursuant to endorsement PI-PV-113, Temporary Staffing Amendatory Endorsement excluding PEO Workers, your CLIENT COMPANY (here, Koch Meat) is an insured where certain conditions are met.

These terms include:

Solely with respect to coverage provided by Part 2, Employment Practice Liability Insurance, the PRIVATE COMPANY PROTECTION PLUS policy is amended as follows:

Your **Client Company** is an **Insured** under this policy only for the following **Claims**:

1. **Claims** against the **Client Company** arising from **Employment Practices Acts** committed by your **Employee**, and/or;

2. **Claims** against the **Client Company** arising from **Employment Practices Acts** committed against your **Employee**.

This coverage extension applies only if the following conditions are met:

1. there is a written agreement in place between you and the **Client Company** wherein you expressly agree to defend and / or indemnify the **Client Company**, and

2. The aforementioned written agreement existed prior to the date of the **Employment Practices Acts** which are the subject of the **Claim**. ...

**All other terms of the policy remain unchanged.**

7

Docusign Envelope ID: 426EA4CB-2790-4D75-85F7-078ABFAB5539

Though it may be an insured under the policy, neither Koch nor Remedial Environmental Manpower is afforded coverage for claims seeking solely earned wages under the EPL policy. Thus, this letter should be construed as applying to any party which is an insured hereunder.

## CONCLUSION

This Claim involves a lawsuit brought by a former employee against your client company, Koch Meat Co., Inc. over allegations of failing to pay overtime wages and other compensation for all hours worked. As outlined above, pursuant to Part 2 Exclusion B, as revised by the **Amendment of Exclusions Endorsement**, the Private Company Protection Plus Policy bars coverage of any kind (indemnity or defense) for this Claim.

This correspondence is not intended, nor shall it be construed, as an exhaustive listing of all of the Policy terms, conditions or exclusions which might preclude coverage. Tokio does not waive any of the other provisions, conditions, terms, exclusions or portions of the insurance policy described in this or our earlier letter, nor should any of the acts or positions described herein be construed in any way as a waiver or an estoppel with respect to other matters of which Tokio does not have present knowledge, or which have not been raised by you.

We trust your understanding of the above stated no coverage position is clear. However, should you disagree with our position, please promptly communicate your notice of disagreement to the undersigned in writing. Having adequately considered the detailed reasoning for our no coverage position, we request you describe the basis for your disagreement so we can provide to you an adequate reply and/or reevaluation of that position. Additionally, should you have any questions concerning this matter you may call our claims professional, Daniel Valore, at 610-538-2813.

Very truly yours,

*Anne Barnett*

Anne Barnett
Sr. Claims Supervisor, Management & Professional Lines

Cc:    Ms. Colleen Hobday
       Marsh & McLennan Agency LLC
       Colleen.Hobday@MarshMMA.com
       (*via e-mail only*)

8

Hearing Date: 3/23/2026 10:00 AM
Location: Richard J Daley Center
Judge: Wilson, Thaddeus L

2026CH00528

FILED
1/20/2026 8:44 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00528
Calendar, 1
36250461

# Exhibit I

**PHILADELPHIA**
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

## Philadelphia Indemnity Insurance Company

# Commercial Lines Policy

THIS POLICY CONSISTS OF:

- DECLARATIONS
- COMMON POLICY CONDITIONS
- ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
- ONE OR MORE COVERAGE FORMS
- APPLICABLE FORMS AND ENDORSEMENTS

BJP-190-1 (12-98)

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless signed by our authorized representative.

John W. Glomb, Jr.
President & CEO

Secretary

BJP-190-1 (12-98)

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

POLICY NUMBER:  PHPK2321444

**IL 12 04 12 98**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ILLINOIS POLICY CHANGES

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

Effective Date of Change:   11/30/2021
Change Endorsement No.: 1                     Revision No.: 1
Named Insured:  Remedial Environmental Manpower, Inc.

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Insured's Mailing Address |
| ☐ | Policy Number | ☒ | Company |
| ☐ | Effective/Expiration Date | ☐ | Insured's Legal Status/Business of Insured |
| ☐ | Payment Plan | ☐ | Premium Determination |
| ☐ | Additional Interested Parties | ☐ | Coverage Forms and Endorsements |
| ☐ | Limits/Exposures | ☐ | Deductibles |
| ☐ | Covered Property/Located Description | ☐ | Classification/Class Codes |
| ☐ | Rates | ☐ | Underlying Insurance |

is (are) changed to read **{See Additional Page(s)}**:

Path ID  15238283

The above amendments result in a change in the premium as follows:

| ☒ | NO CHANGES | ☐ | TO BE ADJUSTED AT AUDIT | ADDITIONAL PREMIUM | RETURN PREMIUM |
|---|---|---|---|---|---|
| | | | | $ | $ |

Countersigned By:
Issue Date:        11/30/2021

(Authorized Agent)

IL 12 04 12 98                          Copyright, Insurance Services Office, Inc., 1998                          **Page 1**        ☐

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

## POLICY CHANGES ENDORSEMENT DESCRIPTION

In consideration of the premium reflected, the policy is amended as indicated below:

Amended:

Agency to Read:
#4369
Marsh & McLennan Agency LLC
20 N Martingale Rd Ste 100
Schaumburg, IL  60173

IL 12 04 12 98          Copyright, Insurance Services Office, Inc., 1998          **Page 2**          □

**ILLINOIS COMPLAINT NOTICE**

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

1.  You may call Philadelphia Indemnity Insurance Company's toll-free telephone number for information or to make a complaint at:

    **1-877-438-7459**

2.  You may also write to Philadelphia Indemnity Insurance Company at:

    One Bala Plaza, Suite 100
    Bala Cynwyd, PA 19004
    FAX # (610) 617-7940

3.  You may write to the Illinois Department of Insurance at:

    Illinois Department of Insurance
    Consumer Division
    122 S. Michigan Avenue
    19th Floor
    Chicago, Illinois  60603

    OR

    Illinois Department of Insurance
    320 West Washington Street
    Springfield, Illinois 62767

4.  **ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

PI-Illinois Complaint Notice (05-20)

IL N 175 11 11

# ILLINOIS NOTICE TO POLICYHOLDERS REGARDING THE RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT

Dear Policyholder:

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be provided coverage.

**PHILADELPHIA**
INSURANCE COMPANIES

A Member of the Tokio Marine Group

PI-FEES-NOTICE 1 (11/19)

## NOTICE
## LATE FEE
## NON-SUFFICIENT FUNDS FEE
## REINSTATEMENT FEE

**Late Fee**
Please be advised that if your payment is late (payment is not received within five days of the payment due date indicated on the invoice), you will be charged a late fee of $25* (where permitted).

**Non-Sufficient Funds Fee**
Please be advised that if your payment is returned for non-sufficient funds, you will be charged a fee of $25** (where permitted).

**Reinstatement Fee**
Please be advised that if your policy is cancelled due to non-payment of the premium and we agree to reinstate your policy, you will be charged a reinstatement fee of $50*** (where permitted).

These fees are in addition to any premium owed on the policy and each fee can apply more than once during the policy term.

*$10 in Florida, Maryland, South Carolina

**$15 in Florida and $20 in New York

***$25 in Delaware, Georgia, New Hampshire and New Mexico; and $15 in Kansas and Nebraska

PI-FEES-NOTICE 1 (11/19)

Page 1 of 1

PP 20 20 (02/20)

ALL COMMERCIAL LINES

# PRIVACY NOTICE FOR COMMERCIAL LINES

**This notice is provided on behalf of Philadelphia Indemnity Insurance Company**

<u>PURPOSE OF THIS NOTICE</u>
When you apply for or become an insured under, the insurance policies we issue, we gather certain non-public information or **"NPI"** about your business and its employees. We are committed to safeguarding the NPI you entrust to us. The purpose of this notice is, therefore, to let you know how we collect, use, share and protect the NPI you provide to us in those contexts.

That means this notice applies only to your business interactions with us involving your application for a quote or as a policy holder. NPI we may collect from you in connection with other interactions, such as when you or your employees visit one of our general interest, publicly accessible websites, is governed by the separate notices and policies we publish on those relevant sites or otherwise provide to you.

When we refer in this notice to your "NPI", we mean non-public information as that term is generally defined and applied under the New York Department of Financial Services' Cybersecurity Regulation, the Gramm-Leach-Bliley Act and the National Association of Insurance Commissioners' Data Security Model Law which includes non-public information about your business, such as financial information, account numbers, loss history, personal non-public information of your employees including social security number, address or medical information and any proprietary information we obtain about your business or your customers.

Due to a variety of factors, including certain explicit exemptions they contain, this notice and the NPI we collect from you in connection with the above-described business interactions **_is not_** governed by the EU General Data Protection Regulation, its related EU and Swiss Privacy Shield or the California Consumer Privacy Act.

<u>COLLECTING YOUR NPI</u>
In the course of, or as part of a business interaction, we collect your NPI both directly from you, or from the agents, brokers or other intermediaries acting on your or our behalf, as well as from a variety of additional sources including:

- the applications or other forms you provide to us (these forms may contain your name, address, social security number, marital status, date of birth, gender, length of employment, prior insurance information, home ownership, residency history, vehicle type, vehicle use, or driving history)
- your transactions with us, our other affiliates of the Tokio Marine Group as well as third parties (this information would include, for example, premium payment and claims history)
- consumer or independent reporting agencies (for example your motor vehicle report, property inspection report, accident report or claim report)

<u>USING YOUR NPI</u>
We use your NPI in a variety of ways such as creating and issuing a quote, underwriting or otherwise processing and servicing your insurance policy, handling claims you may have and offering you additional products and services that we think may be of interest to you as well as for related research and analytics purposes.

PP 20 20 (02/20)

© Copyright 2020 Tokio Marine Management, Inc.

PP 20 20 (02/20)

**SHARING YOUR NPI**

We do not disclose or share any NPI about our customers or former customers outside of the Tokio Marine Group, except as permitted by law. We do not sell or disclose or share your NPI for third party marketing purposes. We do, however, share your NPI with third parties that we use to service your account or process your insurance policy or your claim, or administer related transactions. These third parties may include:

- your agent, broker or producer
- independent claims adjusters, investigators, data processors or attorneys
- persons or organizations that conduct scientific research, including actuarial or underwriting studies
- an insurance support organization or another insurer, to prevent or prosecute fraud or to properly underwrite the risk
- another insurer, if you are involved in an accident with their insured
- State insurance departments or other governmental or law enforcement authorities, if required by law, to protect our legal interests or in cases of suspected fraud or illegal activities
- a court of law

We also are required to disclose your NPI if we receive a subpoena, search warrant or other court order.

**RETAINING YOUR NPI**

The NPI we collect is kept in your policy and/or claim files for as long as needed in connection with your business interactions with you and, if longer, as required by law.

**HOW WE PROTECT YOUR NPI**

We have adopted and implemented a security and privacy program that includes technical, organizational, administrative, and other measures designed to protect, as required by applicable law and in accordance with industry standards, against reasonably anticipated or actual threats to the security of your NPI. Our security program was created by reference to widely recognized standards such as those published by the International Standards Organization and National Institute of Standards and Technology. It includes, among many other things, procedures for assessing the need for, and as appropriate, either employing encryption and multi-factor authentication or using equivalent compensating controls. As part of our security program, we have specific incident response and management procedures that are activated whenever we become aware that your NPI was likely to have been compromised.

**CHANGES TO THIS NOTICE**

We may amend this notice from time to time and will inform you of these changes as required by law.

**QUESTIONS AND CONTACT INFORMATION**

If you have any questions about this notice or how we collect, use, share and protect your NPI, please contact the Chief Privacy Officer of TMNA Services, LLC, who acts as the privacy and data security administrator for most of the Tokio Marine Group in North America. The Chief Privacy Officer's contact information is:

Attn: Privacy Office
TMNA Services, LLC
3 Bala Plaza East, Suite 400
Bala Cynwyd, Pennsylvania 19004
610-227-1300

PP 20 20 (02/20)

© Copyright 2020 Tokio Marine Management, Inc.

Change Date: 11/30/2021



**PHILADELPHIA**
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

## Philadelphia Indemnity Insurance Company
## COMMON POLICY DECLARATIONS

**Policy Number:** PHPK2321444

**Named Insured and Mailing Address:**
Remedial Environmental Manpower, Inc.
7239 Roosevelt Rd
Forest Park, IL 60130-2471

**Producer:** 4369
Marsh & McLennan Agency LLC
20 N Martingale Rd  Ste 100
Schaumburg, IL 60173

(847)944-9087

**Policy Period From:** 09/01/2021  **To:** 09/01/2022

at 12:01 A.M. Standard Time at your mailing
address shown above.

**Business Description:** Temporary Staffing Agencies

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | 2,476.00 |
| Commercial General Liability Coverage Part | 36,345.00 |
| Commercial Crime Coverage Part | |
| Commercial Inland Marine Coverage Part | |
| Commercial Auto Coverage Part | 4,399.00 |
| Businessowners | |
| Workers Compensation | |
| Employee Benefits | 300.00 |
| Professional Liability | 9,587.00 |
| Sexual/Physical Abuse | 2,219.00 |
| **Total** | **$ 55,326.00** |
| Total Includes Federal Terrorism Risk Insurance Act Coverage | **947.00** |

**FORM (S) AND ENDORSEMENT (S) MADE A PART OF THIS POLICY AT THE TIME OF ISSUE**
**Refer To Forms Schedule**

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations

CPD- PIIC (06/14)

Secretary

John W. Glomb, Jr.
President & CEO

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

Philadelphia Indemnity Insurance Company

Form Schedule – Policy

**Policy Number:** PHPK2321444

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| WHY MyPHLY | 0000 | WHY MyPHLY? |
| CSNotice-1 | 0120 | Making Things Easier |
| BJP-190-1 | 1298 | Commercial Lines Policy Jacket |
| IL1204 | 1298 | Illinois Policy Changes (Part 1) |
| IL1204 | 1298 | IllinoisPolicy Changes (Part 2) |
| PI-Illinois Complaint Notice | 0520 | ILLINOIS COMPLAINT NOTICE |
| IL N 175 | 1111 | Illinois Notice To Policyholders |
| PI-FEES-NOTICE 1 | 1119 | Notice Late/Non-Sufficient Funds/Reinstatement Fee |
| PP2020 | 0220 | Privacy Notice For Commercial Lines |
| CPD-PIIC | 0614 | Common Policy Declarations |
| Location Schedule | 0100 | Location Schedule |
| Mortgagee Schedule | 0100 | Mortgagee Schedule |
| Loss Payee Schedule | 0100 | Loss Payee Schedule |
| Named Insured Sched | 0100 | Named Insured Schedule |
| PI-BELL-1 IL | 1109 | Bell Endorsement |
| PI-CME-1 | 1009 | Crisis Management Enhancement Endorsement |
| IL0017 | 1198 | Common Policy Conditions |
| IL0021 | 0908 | Nuclear Energy Liability Exclusion Endorsement |
| IL0118 | 0217 | Illinois Changes |
| IL0147 | 0911 | Illinois Changes - Civil Union |
| IL0162 | 1013 | Illinois Changes - Defense Costs |
| IL0284 | 0118 | Illinois Changes - Cancellation And Nonrenewal |
| IL0952 | 0115 | Cap On Losses From Certified Acts Of Terrorism |
| PI-ACL-001 | 1218 | Absolute Cyber Liability And Electronic Exclusion |
| PI-CANXAICH-002 P | 0511 | Canc Notice To Sched Addl Insd Or Cert Holder-Blanket |
| PI-PROF-002 IL | 0620 | Absolute Communicable Disease Exclusion - Prof Liab-IL |
| PI-SAM-018 | 0519 | Absolute Abuse or Molestation Exclusion |
| PI-TER-DN1 | 0121 | Disclosure Notice Of Terrorism Ins Coverage Rejection |

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

## Philadelphia Indemnity Insurance Company

Locations Schedule

**Policy Number:** PHPK2321444

| Prems. No. | Bldg. No. | Address |
|---|---|---|
| 0001 | 0001 | 7239 Roosevelt Rd<br>Forest Park, IL 60130-2471 |
| 0002 | 0001 | 7241 Roosevelt Rd<br>Forest Park, IL 60130-2471 |

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

Philadelphia Indemnity Insurance Company

Mortgagee Schedule

**Policy Number:** PHPK2321444

Mortgagee

Belmont Bank & Trust Company
8250 W Belmont Ave
Chicago, IL 60634-2809

IL - Loc #1 - Bld #1 - BUILDING (OFFICE)

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Page   1   of   1

Philadelphia Indemnity Insurance Company

Loss Payee Schedule

**Policy Number:** PHPK2321444

Loss Payee

Belmont Bank & Trust Company
8250 W Belmont Ave
Chicago, IL 60634-2809

IL - Loc #1 - Bld #1 - BUSINESS PERS PROPERTY (OFFICE)

Page   1   of   1

Philadelphia Indemnity Insurance Company

Named Insured Schedule

**Policy Number:** PHPK2321444

Ideal Facilities Services LLC

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

COMMERCIAL PROPERTY
CP P 003 07 06

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA
# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) shall prevail.

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsement, which applies to your new or renewal policy being issued by us:

**Exclusion Of Loss Due To Virus Or Bacteria Endorsement CP 01 40 07 06**

This endorsement makes an explicit statement regarding a risk that is not covered under your Commercial Property insurance. It points out that there is no coverage under such insurance for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. The exclusion in this endorsement applies to all coverages provided by your Commercial Property insurance, including (if any) property damage and business income coverages.

CP P 003 07 06 © ISO Properties, Inc., 2006 Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

IL N 179 05 15

# ILLINOIS NOTICE AND WAIVER OF MINE SUBSIDENCE COVERAGE

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the Policy (including its endorsements), the provisions of the Policy (including its endorsements) shall prevail.

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning mine subsidence coverage, which applies to your new or renewal policy being issued by us.

**Notice Concerning The Waiver Of Mine Subsidence Coverage In Illinois**

Illinois law requires that every insurer that issues a new or renewal policy for a residence, commercial building or living unit must provide Mine Subsidence Coverage, unless waived in writing by the insured, and the insurer must continue to charge the premium level set for that coverage by the Illinois Mine Subsidence Insurance Fund.

This form shall serve as notice that if Mine Subsidence Coverage is in force when mine subsidence damage first becomes reasonably observable as confirmed by the Illinois Mine Subsidence Insurance Fund, coverage thereafter may not be necessary and is optional, but continued coverage on the damaged residence or commercial building shall terminate only upon written waiver by you. Mine subsidence premiums paid for coverage on a damaged residence or commercial building subsequent to the established date of loss shall be refunded within 60 days after you provide the following signed waiver of Mine Subsidence Coverage to us.

**Waiver Of Mine Subsidence Coverage In Illinois**

**I confirm that I have fully read and understood the aforementioned Notice.**

**I, the first named insured/applicant, have fully read and understood the above noted information and hereby: (check the following)**

☐ **affirmatively waive this offer.**

**I understand and agree that this waiver shall be construed to be applicable to the Policy or binder of insurance described below, on all future renewals of the Policy and on all replacement policies unless I make a written request for such coverage.**

**Name Of First Named Insured/Applicant:**

**Signature Of First Named Insured/Applicant:**

**Date:**

**Policy/Binder #:** PHPK2321444

**Insurer:** Remedial Environmental Manpower, Inc.

**Producer Name:** Marsh & McLennan Agency LLC

**Producer Code:** 4369

**IL N 179 05 15**              © Insurance Services Office, Inc., 2014                     Page 1 of 1

Change Date: 11/30/2021

# Philadelphia Indemnity Insurance Company
## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Policy Number: PHPK2321444
Named Insured: Remedial Environmental Manpower, Inc.

☒ See Supplemental Schedule                         Agent # 4369

**BUSINESS DESCRIPTION:** Temporary Staffing Agencies

**DESCRIPTION OF PREMISES:**

| Prem. No. | Bldg No. | Location, Fire Protection/Construction and Occupancy |
|---|---|---|
| | | **SEE SCHEDULE ATTACHED** |

**COVERAGES PROVIDED:** Insurance at the described premises applies only for coverages for which a limit of insurance is shown or for which an entry is made.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Causes of Loss Form (1) | Coinsurance(2) | Deductible |
|---|---|---|---|---|---|---|
| | | **SEE SCHEDULE ATTACHED** | | | | |

**OPTIONAL COVERAGES:**

| Prem. No. | Bldg. No. | Coverage | Amount | Agreed Value Expiration Date | Replacement Cost Incl. Stock | Inflation Guard |
|---|---|---|---|---|---|---|
| | | **SEE SCHEDULE ATTACHED** | | | | |

**OPTIONAL COVERAGES: APPLIES TO BUSINESS INCOME ONLY**

| Prem. No. | Bldg. No. | Agreed Value Date | Agreed Value Amount | Monthly Limit of Indemnity (Fraction) | Maximum Period of Indemnity | Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|---|
| | | **SEE SCHEDULE ATTACHED** | | | | |

**DEDUCTIBLE:**
**SEE SCHEDULE ATTACHED**

**MORTGAGE HOLDERS:**
<u>Refer To Mortgagee/Loss Payee Schedule</u>

**FORM(S) AND ENDORSEMENT(S) APPLICABLE TO THIS COVERAGE PART:**
<u>Refer To Forms Schedule</u>

**TOTAL PREMIUM FOR THIS COVERAGE PART $**      2,476.00

(1) EQ (if shown) = Earthquake      (2) Coinsurance %, Extra Expense %, Limits on Loss Payment or Value Reporting Form Symbol

_____
Countersignature Date

_____
Authorized Representative

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

Philadelphia Indemnity Insurance Company

Form Schedule – Property

**Policy Number:** PHPK2321444

**Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:**

```
                                   FORMS APPLICABLE TO ALL PREMISES AND COVERAGES

        Form                              Edition   Description

        CP P 003                          0706      Excl of Loss Due to Virus or Bacteria Advisory Notice
        IL N 179                          0515      Illinois Notice And Waiver Of Mine Subsidence Coverage
        Property Dec                      0100      Property Declarations
        Property Schedule                 0100      Property Supplemental Schedule
        CP0090                            0788      Commercial Property Conditions
        CP0140                            0706      Exclusion Of Loss Due To Virus Or Bacteria
        CP0149                            0607      IL Chgs-Artificially Generated Electrical Current Excl
        CP1218                            1012      Loss Payable Provisions

                                   FORMS APPLICABLE TO SPECIFIC PREMISES AND COVERAGES

        Form                              Edition   Description

        CP0010                            1012      Building And Personal Property Coverage Form
            IL  PREMS 001 BLDG 001        BUILDING
                                          BUSINESS PERS PROPERTY
            IL  PREMS 002 BLDG 001        BUSINESS PERS PROPERTY

        CP0030                            1012      Business Income (And Extra Expense) Coverage Form
            IL  PREMS 001 BLDG 001        BUSINESS INCOME-BASIC
            IL  PREMS 002 BLDG 001        BUSINESS INCOME-BASIC

        CP1030                            0917      Causes Of Loss - Special Form
            IL  PREMS 001 BLDG 001        BUILDING
                                          BUSINESS PERS PROPERTY
                                          BUSINESS INCOME-BASIC
            IL  PREMS 002 BLDG 001        BUSINESS PERS PROPERTY
                                          BUSINESS INCOME-BASIC

        PI-EPE-TS IL                      1210      Elite Property Enhancement: Temporary Staffing

        PI-NP-007                         0401      Loss of Income Due to Workplace Violence
            IL  PREMS 001 BLDG 001        BUSINESS INCOME-BASIC
            IL  PREMS 002 BLDG 001        BUSINESS INCOME-BASIC
```

# Philadelphia Indemnity Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL SCHEDULE

Policy Number: PHPK2321444

Named Insured: Remedial Environmental Manpower, Inc.                    Agent # 4369

**DESCRIPTION OF PREMISES:**

| Prem. No. | Bldg. No. | Location, Fire Protection/Construction and Occupancy |
|---|---|---|
| 0001 | 001 | 7239 Roosevelt Rd Forest Park, IL 60130-2471 |
| | | OFFICE |
| | | PC 03      MASONRY NON-COMBUSTIBLE |
| 0002 | 001 | 7241 Roosevelt Rd Forest Park, IL 60130-2471 |
| | | OFFICE |
| | | PC 03      NON-COMBUSTIBLE |

**COVERAGES PROVIDED:** Insurance at the described premises applies only for coverages for which a limit of insurance is shown or for which an entry is made.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Causes of (1) Loss Form | Coinsurance(2) | Deductible |
|---|---|---|---|---|---|---|
| 0001 | 001 | BUILDING | 1,200,000 | SPECIAL | 100% | 5,000 |
| 0001 | 001 | BUSINESS PERS PROPERTY | 100,000 | SPECIAL | 100% | 5,000 |
| 0001 | 001 | BUSINESS INCOME-BASIC (2) | 100,000 | SPECIAL | 100% | 72 HR. |
| 0002 | 001 | BUSINESS PERS PROPERTY | 10,000 | SPECIAL | 100% | 5,000 |
| 0002 | 001 | BUSINESS INCOME-BASIC (2) | 100,000 | SPECIAL | 100% | 72 HR. |

**OPTIONAL COVERAGES:**

| Prem. No. | Bldg. No. | Coverage | Agreed Value Amount | Agreed Value Expiration Date | Replacement Cost | Incl. Stock | Inflation Guard |
|---|---|---|---|---|---|---|---|
| 0001 | 001 | BUILDING | | | (X) | | |
| 0001 | 001 | BUSINESS PERS PROPERTY | | | (X) | (X) | |
| 0002 | 001 | BUSINESS PERS PROPERTY | | | (X) | (X) | |

**OPTIONAL COVERAGES: APPLIES TO BUSINESS INCOME ONLY**

| Prem. No. | Bldg. No. | Agreed Value Date | Agreed Value Amount | Monthly Limit of Indemnity(Fraction) | Maximum Period of Indemnity | Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|---|
| | | | | | | |

**Deductible Exceptions:**

(1) EQ (if shown) = Earthquake          (2) Coinsurance %, Extra Expense %, Limits on Loss Payment or Value Reporting Form Symbol

(5) 10% or $5,000 minimum

# Philadelphia Indemnity Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL SCHEDULE

Policy Number: PHPK2321444
Named Insured: Remedial Environmental Manpower, Inc.                                     Agent # 4369

**DESCRIPTION OF PREMISES:**

| Prem. No. | Bldg. No. | Location, Fire Protection/Construction and Occupancy |
|-----------|-----------|------------------------------------------------------|
|           |           |                                                      |

**COVERAGES PROVIDED:** Insurance at the described premises applies only for coverages for which a limit of insurance is shown or for which an entry is made.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Causes of (1) Loss Form | Coinsurance(2) | Deductible |
|-----------|-----------|----------|--------------------|-------------------------|----------------|------------|
|           |           | PROPERTY ELITE |            |                         |                |            |

**OPTIONAL COVERAGES:**

| Prem. No. | Bldg. No. | Coverage | Agreed Value Amount | Expiration Date | Replacement Cost Incl. Stock | Inflation Guard |
|-----------|-----------|----------|---------------------|-----------------|------------------------------|-----------------|
|           |           |          |                     |                 |                              |                 |

**OPTIONAL COVERAGES: APPLIES TO BUSINESS INCOME ONLY**

| Prem. No. | Bldg. No. | Agreed Value Date | Agreed Value Amount | Monthly Limit of Indemnity(Fraction) | Maximum Period of Indemnity | Extended Period of Indemnity (Days) |
|-----------|-----------|-------------------|---------------------|--------------------------------------|-----------------------------|-------------------------------------|
|           |           |                   |                     |                                      |                             |                                     |

**Deductible Exceptions:**

(1) EQ (if shown) = Earthquake        (2) Coinsurance %, Extra Expense %, Limits on Loss Payment or Value Reporting Form Symbol

(5) 10% or $5,000 minimum

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Change Date: 11/30/2021

## Philadelphia Indemnity Insurance Company

### COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: PHPK2321444

Agent # 4369

☒ See Supplemental Schedule

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| $ | 5,000,000 | General Aggregate Limit (Other Than Products – Completed Operations) |
| $ | 5,000,000 | Products/Completed Operations Aggregate Limit |
| $ | 5,000,000 | Personal and Advertising Injury Limit (Any One Person or Organization) |
| $ | 5,000,000 | Each Occurrence Limit |
| $ | 100,000 | Rented To You Limit (Any One Premises) |
| $ | 5,000 | Medical Expense Limit (Any One Person) |

**FORM OF BUSINESS:** CORPORATION

Business Description: Temporary Staffing Agencies

Location of All Premises You Own, Rent or Occupy:     **SEE SCHEDULE ATTACHED**

**AUDIT PERIOD, ANNUAL, UNLESS OTHERWISE STATED:** This policy is not subject to premium audit.

| Classifications | Code No. | Premium Basis | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | Prem./ Ops. | Prod./ Comp. Ops | Prem./ Ops. | Prod./ Comp. Ops. |
| SEE SCHEDULE ATTACHED | | | | | | |
| **TOTAL PREMIUM FOR THIS COVERAGE PART:** | | | | | $  36,345.00 | $ |

**RETROACTIVE DATE (CG 00 02 ONLY)**
This insurance does not apply to "Bodily Injury", "Property Damage", or "Personal and Advertising Injury" which occurs before the retroactive date, if any, shown below.

Retroactive Date:  NONE

**FORM (S) AND ENDORSEMENT (S) APPLICABLE TO THIS COVERAGE PART:** Refer To Forms Schedule

Countersignature Date                    Authorized Representative

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Philadelphia Indemnity Insurance Company

Form Schedule – General Liability

**Policy Number:** PHPK2321444

**Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:**

| Form | Edition | Description |
|---|---|---|
| Gen Liab Dec | 1004 | Commercial General Liability Coverage Part Declaration |
| Gen Liab Schedule | 0100 | General Liability Schedule |
| CG0001 | 0413 | Commercial General Liability Coverage Form |
| CG0200 | 0118 | Illinois Changes - Cancellation And Nonrenewal |
| CG2026 P | 0413 | Addl Ins - Designated Person Or Organization-Blanket |
| CG2106 | 0514 | Excl-Access/Disclosure-With Ltd Bodily Injury Except |
| CG2147 | 1207 | Employment-Related Practices Exclusion |
| CG2167 | 1204 | Fungi or Bacteria Exclusion |
| CG2170 | 0115 | Cap On Losses From Certified Acts Of Terrorism |
| CG2402 | 1204 | Binding Arbitration |
| CG2404 P | 0509 | Waiver Of Tran Of Rights Of Rec Against Others-Blanket |
| PI-GL-001 | 0894 | Exclusion - Lead Liability |
| PI-GL-002 | 0894 | Exclusion - Asbestos Liability |
| PI-GL-037 IL | 0420 | Communicable Disease Exclusion  - Illinois |
| PI-GLD-TS | 1115 | General Liability Deluxe Endt: Temporary Staffing |
| MANUSCRIPT 441 | 0321 | Loading Or Unloading Extension Endorsement |
| PI-SAM-006 | 0117 | Abuse Or Molestation Exclusion |
| PI-TS-001 | 1210 | Property Damage Extension Endorsement |
| PI-TS-024 P | 0715 | Designated Project Limits Of Ins - Blanket $5,000,000 |
| PI-TS-029 P | 0715 | Designated Location Limits Of Ins - Blanket $5,000,000 |

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

# Philadelphia Indemnity Insurance Company
## COMMERCIAL GENERAL LIABILITY COVERAGE PART
### SUPPLEMENTAL SCHEDULE

Policy Number: PHPK2321444

Agent # 4369

| Classifications | Code No. | Premium Basis | Rates Prem./ Ops. | Rates Prod./ Comp. Ops. | Advance Premiums Prem./ Ops. | Advance Premiums Prod./ Comp. Ops. |
|---|---|---|---|---|---|---|
| IL PREM NO. 001 | | | | | | |
| SALES/SERVICE ORGANIZATION | 47367 | 18,101,500 PAYROLL | | INCL | 33,100 | INCL |
| PROD/COMP OP SUBJ TO GEN AGG LIMIT | | | | | | |
| IL | | | | | | |
| LIABILITY DELUXE TEMPORARY STAFFING | 44444 | IF ANY | | | 3,245 | |

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

Change Date: 11/30/2021

POLICY NUMBER: PHPK2321444

**COMMERCIAL AUTO**
**CA DS 03 10 13**

# BUSINESS AUTO DECLARATIONS

**ITEM ONE**

| |
|---|
| **Company Name:** Philadelphia Indemnity Insurance Company |
| **Producer Name:** Marsh & McLennan Agency LLC |
| **Named Insured And Mailing Address:**<br>Remedial Environmental Manpower, Inc.<br>7239 Roosevelt Rd<br>Forest Park, IL 60130-2471 |

| **Policy Period** | |
|---|---|
| **From:** 09/01/2021 | |
| **To:**  09/01/2022 | At 12:01 AM Standard Time at your mailing address shown above |
| **Previous Policy Number:** | |

| |
|---|
| **Form Of Business:** CORPORATION |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| |
|---|
| **Premium Shown Is Payable At Inception:**   $ |
| **Audit Period** (if applicable):   ☐ **Annually**   ☐ **Semiannually**   ☐ **Quarterly**   ☐ **Monthly** |

| **Endorsements Attached To This Policy** |
|---|
| **SEE SCHEDULE** |

| Countersignature Of Authorized Representative | |
| --- | --- |
| Name: | |
| Title: | |
| Signature: | |
| Date: | |

**Note**

Officers' facsimile signatures may be inserted here, on the policy cover or elsewhere at the company's option.

© Insurance Services Office, Inc., 2011 CA DS 03 10 13

**ITEM TWO**

**Schedule Of Coverages And Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage.**

| Coverages | Covered Autos | Limit | Premium |
|---|---|---|---|
| **Covered Autos Liability** | 08, 09 | $ 1,000,000          CSL | $          4,298.00 |
| **Personal Injury Protection (Or Equivalent No-fault Coverage)** | | **Separately Stated In Each Personal Injury Protection Endorsement Minus** $                              **Deductible** | $ |
| **Added Personal Injury Protection (Or Equivalent Added No-fault Coverage)** | | **Separately Stated In Each Added Personal Injury Protection Endorsement** | $ |
| **Property Protection Insurance (Michigan Only)** | | **Separately Stated In The Property Protection Insurance Endorsement Minus** $                              **Deductible For Each Accident** | $ |
| **Auto Medical Payments** | | $                              **Each Insured** | $ |
| **Medical Expense And Income Loss Benefits (Virginia Only)** | | **Separately Stated In The Medical Expense And Income Loss Benefits Endorsement** | $ |
| **Uninsured Motorists** | | $ | $ |
| **Underinsured Motorists (When Not Included In Uninsured Motorists Coverage)** | | $ | $ |

CA DS 03 10 13                © Insurance Services Office, Inc., 2011                Page 3 of 14

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**ITEM TWO**

**Schedule Of Coverages And Covered Autos (Cont'd)**

| Coverages | Covered Autos | Limit | | Premium |
|---|---|---|---|---|
| Physical Damage Comprehensive Coverage | 08 | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus<br><br>$　　SCHEDULE　　Deductible<br><br>For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lightning<br><br>See Item Four for Hired or Borrowed Autos. | $ | 40.00 |
| Physical Damage Specified Causes Of Loss Coverage | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus<br><br>$ 25　　　　　　　Deductible<br><br>For Each Covered Auto For Loss Caused By Mischief Or Vandalism<br><br>See Item Four for Hired or Borrowed Autos. | $ | |
| Physical Damage Collision Coverage | 08 | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus<br><br>$　　SCHEDULE　　Deductible<br><br>For Each Covered Auto<br><br>See Item Four for Hired or Borrowed Autos. | $ | 56.00 |
| Physical Damage Towing And Labor | | $　　　　　　For Each<br><br>Disablement Of A Private Passenger Auto | $ | |
| Terrorism | All | Per Coverage Endorsement | $ | 5.00 |
| | | | Premium For Endorsements | $ | |
| | | | Estimated Total Premium* | $ | 4,399.00 |
| *This policy may be subject to final audit. | | | | |

　　　© Insurance Services Office, Inc., 2011　　　CA DS 03 10 13

**ITEM THREE**

**Schedule Of Covered Autos You Own**

| Covered Auto Number: | | | | | | |
|---|---|---|---|---|---|---|
| Town And State Where The Covered Auto Will Be Principally Garaged:   SEE SCHEDULE | | | | | | |
| Covered Auto Description | | | | | | |
| Year: | Model: | | | Trade Name: | | |
| Body Type: | | | | Serial Number(s): | | |
| Vehicle Identification Number (VIN): | | | | | | |
| Classification | | | | | | |
| Original Cost New | Radius Of Operation | Business Use s=service r=retail c=commercial | Size GVW, GCW Or Vehicle Seating Capacity | Age Group | Secondary Rating Classification | Code |
| $            SEE SCHEDULE | | | | | | |
| Except For Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named Below According To Their Interests In The Auto At The Time Of The Loss: SEE SCHEDULE, IF APPLICABLE | | | | | | |

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

CA DS 03 10 13                © Insurance Services Office, Inc., 2011                Page 5 of 14

**ITEM THREE**
**Schedule Of Covered Autos You Own (Cont'd)**

| Coverages – Premiums, Limits And Deductibles (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.) | | |
|---|---|---|
| **Coverages** | **Limit** | **Premium** |
| Covered Autos Liability | $        SEE SCHEDULE | $ |
| Personal Injury Protection | Stated In Each Personal Injury Protection Endorsement Minus <br> $        Deductible | $ |
| Added Personal Injury Protection | Stated In Each Added Personal Injury Protection Endorsement | $ |
| Property Protection Insurance (Michigan Only) | Stated In The Property Protection Insurance Endorsement Minus <br> $        Deductible | $ |
| Auto Medical Payments | $        Each Insured | $ |
| Medical Expense And Income Loss Benefits (Virginia Only) | Stated In The Medical Expense And Income Loss Benefits Endorsement For Each Person | $ |
| Comprehensive | Stated In Item Two Minus <br> $        Deductible | $ |
| Specified Causes Of Loss | Stated In Item Two Minus <br> $        Deductible | $ |
| Collision | Stated In Item Two Minus <br> $        Deductible | $ |
| Towing And Labor | $        Per Disablement | $ |

| Total Premiums | SEE SCHEDULE |
|---|---|
| Covered Autos Liability | $ |
| Personal Injury Protection | $ |
| Added Personal Injury Protection | $ |
| Property Protection Insurance (Michigan Only) | $ |
| Auto Medical Payments | $ |
| Medical Expense And Income Loss Benefits (Virginia Only) | $ |
| Comprehensive | $ |
| Specified Causes Of Loss | $ |
| Collision | $ |
| Towing And Labor | $ |

    © Insurance Services Office, Inc., 2011     CA DS 03 10 13

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums**

| Covered Autos Liability Coverage – Cost Of Hire Rating Basis For Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | |
|---|---|---|
| Covered Autos Liability Coverage | Estimated Annual Cost Of Hire For All States | Premium |
| Primary Coverage | $   SEE SCHEDULE, IF APPLICABLE | $ |
| Excess Coverage | $   SEE SCHEDULE, IF APPLICABLE | $ |
| | Total Hired Auto Premium | $ |

For "autos" used in your motor carrier operations, cost of hire means:

1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers) and, if not included therein,

2. The total remunerations of all operators and drivers' helpers, of hired automobiles, whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and

3. The total dollar amount of any other costs (e.g., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles, whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| Covered Autos Liability Coverage – Cost Of Hire Rating Basis For Autos NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| Covered Autos Liability Coverage | State | Estimated Annual Cost Of Hire For Each State | Premium |
| Primary Coverage | | $   SEE SCHEDULE, IF APPLICABLE | $ |
| Excess Coverage | | $   SEE SCHEDULE, IF APPLICABLE | $ |
| | | Total Hired Auto Premium | $ |

For "autos" **NOT** used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums (Cont'd)**

| Physical Damage Coverages – Cost Of Hire Rating Basis For All Autos (Other Than Mobile Or Farm Equipment) | | | | |
|---|---|---|---|---|
| Coverage | State | Limit Of Insurance | Estimated Annual Cost Of Hire For Each State (Excluding Autos Hired With A Driver) | Premium |
| Comprehensive | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $  Deductible  For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lightning | $  SEE SCHEDULE, IF APPLICABLE | $ |
| Specified Causes Of Loss | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus  $  Deductible  For Each Covered Auto For Loss Caused By Mischief Or Vandalism | $ | $ |
| Collision | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $  Deductible  For Each Covered Auto | $ | $ |
| | | | Total Hired Auto Premium | $ |
| For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver. | | | | |

**ITEM FOUR**
Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums (Cont'd)

| Cost Of Hire Rating Basis For Mobile Or Farm Equipment – Other Than Physical Damage Coverages | | | | | |
|---|---|---|---|---|---|
| | | **Estimated Annual Cost Of Hire For Each State** | | **Premium** | |
| **Coverage** | **State** | **Mobile Equipment** | **Farm Equipment** | **Mobile Equipment** | **Farm Equipment** |
| Covered Autos Liability – Primary Coverage | | $ SEE SCHEDULE, IF APPLICABLE | $ | $ | $ |
| Covered Autos Liability – Excess Coverage | | $ | $ | $ | $ |
| Personal Injury Protection | | $ | $ | $ | $ |
| Medical Expense Benefits (Virginia Only) | VA | $ | $ | $ | $ |
| Income Loss Benefits (Virginia Only) | VA | $ | $ | $ | $ |
| Auto Medical Payments | | $ | $ | $ | $ |
| **Total Hired Auto Premiums** | | | | $ | $ |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

CA DS 03 10 13          © Insurance Services Office, Inc., 2011

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums (Cont'd)**

| Cost Of Hire Rating Basis For Mobile Or Farm Equipment – Physical Damage Coverages | | | | | | |
|---|---|---|---|---|---|---|
| | | | Estimated Annual Cost Of Hire For Each State (Excluding Autos Hired With A Driver) | | Premium | |
| Coverage | State | Limit Of Insurance | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| Compre-hensive | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $         Ded. For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lightning | $ SEE SCHEDULE, IF APPLICABLE | $ | $ | $ |
| Specified Causes Of Loss | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $         Ded. For Each Covered Auto For Loss Caused By Mischief Or Vandalism | $ | $ | $ | $ |
| Collision | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $         Ded. For Each Covered Auto | $ | $ | $ | $ |
| | | | | Total Hired Auto Premiums | $ | $ |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any auto that is leased, hired, rented or borrowed with a driver.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums (Cont'd)**

| Rental Period Rating Basis For Mobile Or Farm Equipment | | | | | |
|---|---|---|---|---|---|
| | | Estimated Number Of Days Equipment Will Be Rented | | Premium | |
| Coverage | Town And State Where The Job Site Is Located | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| Covered Autos Liability – Primary Coverage | | | | $ | $ |
| Covered Autos Liability – Excess Coverage | | | | $ | $ |
| Personal Injury Protection | | | | $ | $ |
| Medical Expense Benefits (Virginia Only) | | | | $ | $ |
| Income Loss Benefits (Virginia Only) | | | | $ | $ |
| Auto Medical Payments | | | | $ | $ |
| Total Hired Auto Premiums | | | | $ | $ |

**ITEM FIVE**

**Schedule For Non-ownership Covered Autos Liability**

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other Than Garage Service Operations And Other Than Social Service Agencies | Number Of Employees | 1946 | $ 4,147.00 |
| | Number Of Partners (Active And Inactive) | | $ |
| Garage Service Operations | Number Of Employees Whose Principal Duty Involves The Operation Of Autos | | $ |
| | Number Of Partners (Active And Inactive) | | $ |
| Social Service Agencies | Number Of Employees | | $ |
| | Number Of Volunteers Who Regularly Use Autos To Transport Clients | | $ |
| | Number Of Partners (Active And Inactive) | | $ |
| Total Non-ownership Covered Autos Liability Premium | | | $ 4,147.00 |

**ITEM SIX**

**Schedule For Gross Receipts Or Mileage Basis**

| Address Of Business Headquarters Location: | |
|---|---|
| Type Of Risk (Check one):  ☐ Public Autos   ☐ Leasing Or Rental Concerns | |
| Rating Basis (Check one):  ☐ Gross Receipts (Per $100)   ☐ Mileage (Per Mile) | |
| Estimated Yearly (Gross Receipts Or Mileage): | |
| Premiums | |
| Covered Autos Liability | $ |
| Personal Injury Protection | $ |
| Added Personal Injury Protection | $ |
| Property Protection Insurance (Michigan Only) | $ |
| Auto Medical Payments | $ |
| Medical Expense And Income Loss Benefits (Virginia Only) | $ |
| Comprehensive | $ |
| Specified Causes Of Loss | $ |
| Collision | $ |
| Towing And Labor | $ |

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

© Insurance Services Office, Inc., 2011  CA DS 03 10 13

**ITEM SIX**
**Schedule For Gross Receipts Or Mileage Basis (Cont'd)**

| Address Of Business Headquarters Location: | |
|---|---|
| **Type Of Risk** (Check one): ☐ Public Autos ☐ Leasing Or Rental Concerns | |
| **Rating Basis** (Check one): ☐ Gross Receipts (Per $100) ☐ Mileage (Per Mile) | |
| **Estimated Yearly (Gross Receipts Or Mileage):** | |
| **Premiums** | |
| Covered Autos Liability | $ |
| Personal Injury Protection | $ |
| Added Personal Injury Protection | $ |
| Property Protection Insurance (Michigan Only) | $ |
| Auto Medical Payments | $ |
| Medical Expense And Income Loss Benefits (Virginia Only) | $ |
| Comprehensive | $ |
| Specified Causes Of Loss | $ |
| Collision | $ |
| Towing And Labor | $ |

| Address Of Business Headquarters Location: | |
|---|---|
| **Type Of Risk** (Check one): ☐ Public Autos ☐ Leasing Or Rental Concerns | |
| **Rating Basis** (Check one): ☐ Gross Receipts (Per $100) ☐ Mileage (Per Mile) | |
| **Estimated Yearly (Gross Receipts Or Mileage):** | |
| **Premiums** | |
| Covered Autos Liability | $ |
| Personal Injury Protection | $ |
| Added Personal Injury Protection | $ |
| Property Protection Insurance (Michigan Only) | $ |
| Auto Medical Payments | $ |
| Medical Expense And Income Loss Benefits (Virginia Only) | $ |
| Comprehensive | $ |
| Specified Causes Of Loss | $ |
| Collision | $ |
| Towing And Labor | $ |

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

**ITEM SIX**

**Schedule For Gross Receipts Or Mileage Basis (Cont'd)**

When used as a premium basis:

**FOR PUBLIC AUTOS**

Gross receipts means the total amount earned by the named insured for transporting passengers, mail and merchandise.

Gross receipts does not include:

1. Amounts paid to air, sea or land carriers operating under their own permits.
2. Advertising revenue.
3. Taxes collected as a separate item and paid directly to the government.
4. C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing "autos" during the policy period.

**FOR RENTAL OR LEASING CONCERNS**

Gross receipts means the total amount earned by the named insured for the leasing or renting of "autos" to others without drivers.

Mileage means the total live and dead mileage of all "autos" you leased or rented to others without drivers.

© Insurance Services Office, Inc., 2011 CA DS 03 10 13

Philadelphia Indemnity Insurance Company

Form Schedule – Commercial Auto

**Policy Number:** PHPK2321444

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| CADS03 | 1013 | Business Auto Declarations |
| Hired Or Borrowed Auto Sche | 0706 | Schedule Of Hired Or Borrowed Covered Auto |
| CA0001 | 1013 | Business Auto Coverage Form |
| CA0120 | 0115 | Illinois Changes |
| CA0270 | 0118 | Illinois Changes - Cancellation And Nonrenewal |
| CA0444 P | 0310 | Waiver Of Trans Of Rights Of Rec Agst Others-Blanket |
| CA2048 P | 0299 | Designated Insured - Blanket |
| PI-AUT-001 | 0116 | Cap On Losses From Certified Acts Of Terrorism |
| MANUSCRIPT 461 | 0421 | Staffing Services Non-Owned Autos-Desc Auto Exclusion |
| PI-TS-030 | 1115 | Staffing Services Auto Endorsement |

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

Policy Number: PHPK2321444

### Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums

| Coverage | State | Cost of Hire | Deductible | Rate | Premium |
|---|---|---|---|---|---|
| Liability Coverage | IL | 5,000 | | 3.02100 | $ 151 |
| Physical Damage - Comp | IL | 5,000 | 100 | 0.80600 | $ 40 |
| Physical Damage - Collision | IL | 5,000 | 1,000 | 1.11800 | $ 56 |
| | | | | Total Premium - | $ 247 |

Page 1 of 1

Change Date: 11/30/2021                                                PI-EBL-001D (5/99)

# PHILADELPHIA INDEMNITY INSURANCE COMPANY
EMPLOYEE BENEFITS ADMINISTRATION ERRORS AND OMISSIONS INSURANCE
DECLARATIONS
## CLAIMS MADE COVERAGE

POLICY NO. PHPK2321444                          Effective date: 09/01/2021
                                                12:01 A.M. Standard Time

---

LIMIT OF LIABILITY

$    1,000,000          Each Claim

$    2,000,000          Aggregate

---

RETROACTIVE DATE

This Insurance Does Not Apply to "Damages" Resulting from an "Employee Benefits Incident" Which Occurred Before the Retroactive Date, If Any, Shown Here: 09/01/2021
(Enter Date or "None" if No Retroactive Date Applies)

---

PREMIUM COMPUTATION:

Estimated Number of Employees: 1946              Total Premium: $    300

---

RATE – EACH EMPLOYEE

000.104  First 5,000          000.077  Next 5,000          000.052  Over 10,000

---

FORMS AND ENDORSEMENTS (Other than Applicable Forms and Endorsements Shown Elsewhere in the Policy)

Forms and Endorsements Applying to this Coverage Part and Made Part of this Policy at Time of Issue:

SEE SCHEDULE ATTACHED

---

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE
POLICY PERIOD.

Includes Copyrighted Material of the Insurance Service Office, Inc Used with Its Permission

Philadelphia Indemnity Insurance Company

Form Schedule – Employee Benefits

**Policy Number:** PHPK2321444

Forms and Endorsements applying to this Coverage Part and made a part of this
policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| PI-EBL-001D | 0599 | Employee Benefits Admin Errors And Omissions Ins Dec |
| PI-ARB-1 IL | 0603 | Binding Arbitration |
| PI-EBL-001 | 0599 | Employee Benefits Administration Errors and Omissions |
| PI-EBL-IL-1 | 0899 | Illinois Amendatory Endorsement |
| PI-PPL-001 EB | 0803 | Prior/Pending Litigation And Known Circumstances Excl |

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Change Date: 11/30/2021

PI-TS-002D IL (05/12)



**PHILADELPHIA**
INSURANCE COMPANIES

*A Member of the Tokio Marine Group*

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

## Philadelphia Indemnity Insurance Company

## STAFFING SERVICE PROFESSIONAL LIABILITY DECLARATIONS

**Policy Number:** PHPK2321444

**ITEM 1:** **POLICY PERIOD**

Policy Period: From: 09/01/2021 To: 09/01/2022
(12:01 A.M. standard time at the address of the Named Insured)

**ITEM 2:** **INSURED DETAILS**

Name of Insured: Remedial Environmental Manpower, Inc.

Address: 7239 Roosevelt Rd
Forest Park, IL 60130-2471

**ITEM 3:** **PREMIUM DETAILS**

Policy Premium: $ 9,587.00

**ITEM 4:** **COVERAGE LIMITS**

| | |
|---|---|
| Each Wrongful Act Limit of Insurance: | $ 1,000,000 |
| Aggregate Limit of Insurance | $ 2,000,000 |

**ITEM 5:** **DEDUCTIBLE**

| | |
|---|---|
| $ 5,000 | Each Claim or "Suit" (including "Claim Expense") |

**ITEM 6:** **POLICY FORM AND ENDORSEMENTS**

SEE SCHEDULE

In witness whereof, the Insurer issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by the duly authorized representative of the Insurer.

John W. Glomb, Jr.
President & CEO

_____      _____
Authorized Representative      Signature Date

Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

Philadelphia Indemnity Insurance Company

Form Schedule – Professional Liability

**Policy Number:** PHPK2321444

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|---|---|---|
| PI-TS-002D IL | 0512 | Staffing Service Professional Liability Declarations |
| PI-ARB-1 IL | 0603 | Binding Arbitration |
| MANUSCRIPT 440 | 0321 | Bodily Injury Exclusion Endorsement |
| PI-TS-002 | 1211 | Staffing Service Professional Liability Coverage Form |
| PI-TS-014 | 1115 | Broad Definition Of Staffing Services |
| PI-TS-016 | 0512 | Designated Professional Services Exclusion |
| PI-TS-IL-1 | 0512 | Illinois Amendatory Endorsement |

Change Date: 11/30/2021

Philadelphia Indemnity Insurance Company

PI-SAM-008D (01/17)

# ABUSIVE CONDUCT LIABILITY COVERAGE FORM
# POLICY DECLARATIONS

**PLEASE READ THIS POLICY CAREFULLY.**

Policy Number:  PHPK2321444          Effective date:  09/01/2021
                                                    12:01 A.M. Standard Time

| LIMITS OF INSURANCE: | |
|---|---|
| AGGREGATE LIMIT | $    1,000,000 |
| EACH ABUSIVE CONDUCT LIMIT | $    1,000,000 |

| DEDUCTIBLE: | $        1,000 |
|---|---|

**BUSINESS DESCRIPTION:**

Form of Business: CORPORATION

Business Description: Temporary Staffing Agencies

**PREMIUM:** $ 2,219.00

**FORMS AND ENDORSEMENTS** (Other than Applicable Forms and Endorsements Shown Elsewhere in the Policy)
Forms and Endorsements Applying to this Coverage Part and Made Part of this Policy at Time of Issue:

**SEE SCHEDULE ATTACHED**

PI-SAM-008D (01/17)

©2017 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-SAM FORM SCH 1 (05/19)

**Philadelphia Indemnity Insurance Company**
Form Schedule – Abusive Conduct Liability

**Policy Number:** PHPK2321444

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| PI-SAM-008D | 0117 | Abusive Conduct Liability Coverage Policy Dec |
| PI-ARB-1 IL | 0603 | Binding Arbitration |
| PI-SAM-008 | 0519 | Abusive Conduct Liability Coverage Form |

Page 1 of 1

PI-SAM FORM SCH 1 (05/19)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-BELL-1 IL (11/09)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BELL ENDORSEMENT



**PHILADELPHIA**
**INSURANCE COMPANIES**

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

I.  **SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS**

The following is a summary of Limits of Liability or Limits of Insurance and/or additional coverages provided by this endorsement. This endorsement is subject to the provisions of the policy to which it is attached.

| COVERAGE | LIMITS OF INSURANCE |
|---|---|
| Business Travel Accident Expenses | $50,000 |
| Conference Cancellation | $25,000 |
| Donation Assurance | $50,000 |
| Emergency Real Estate Consulting Fee | $50,000 |
| Fundraising Event Blackout | $25,000 |
| Identity Theft Expense | $50,000 |
| Image Restoration and Counseling | $50,000 |
| Key Individual Replacement Expenses | $50,000 |
| Kidnap Expense | $50,000 |
| Political Unrest | $5,000 per employee; $25,000 policy limit |
| Temporary Meeting Space Reimbursement | $25,000 |
| Terrorism Travel Reimbursement | $50,000 |
| Travel Delay Reimbursement | $1,500 |
| Workplace Violence Counseling | $50,000 |

Page 1 of 9
© 2009 Philadelphia Indemnity Insurance Company

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-BELL-1 IL (11/09)

## II. CONDITIONS

### A. Applicability of Coverage

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.

### B. Limits of Liability or Limits of Insurance

1.  When coverage is provided by this endorsement and another coverage form or endorsement attached to this policy, the greater limits of liability or limits of insurance will apply. In no instance will multiple limits apply to coverages which may be duplicated within this policy. Additionally, if this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same occurrence, offense, wrongful act, accident or loss, the maximum limits of liability or limits of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limits of liability or limits of insurance under any one coverage part or policy.

2.  Limits of liability or limits of insurance identified in Section I. **SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS** above are not excess of, but are in addition to the applicable Limits of Liability or Limits of Insurance stated in the Declarations.

### C. Claim Expenses

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

## III. ADDITIONAL COVERAGES

### A. Business Travel Accident Expenses

We will pay any reasonable and necessary expenses an insured incurs if a director or officer suffers injury or death while traveling on a common carrier for your business during the policy period.

For the purpose of Business Travel Accident Expenses coverage, injury means:

1.  Physical damage to the body caused by violence, fracture, or an accident that results in loss of life not later than one hundred eighty (180) days after the policy expiration, the date of cancellation or the date of non-renewal;

2.  Accidental loss of limbs or multiple fingers;

3.  Total loss of sight, speech or hearing.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

Business Travel Accident Expenses shall not be payable if the cause of the injury was:

1.  An intentional act by the insured;

2.  An act of suicide or attempted suicide;

3.  An act of war; or

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

4. A disease process.

**B. Conference Cancellation**

We will reimburse the insured for any business-related conference expenses, paid by the insured and not otherwise reimbursed, for a canceled conference that an employee was scheduled to attend. The cancellation must be due directly to a "natural catastrophe" or a "communicable disease" outbreak that forces the cancellation of the conference.

With respect to a conference cancellation claim, it is further agreed as follows:

1. The insured employee must have registered for the conference at least thirty (30) days prior to the cancellation; and

2. The cancellation must be ordered by a local, state or federal Board of Health or other governmental authority having jurisdiction over the location of the conference.

The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**C. Donation Assurance**

If the insured is a 501(c)(3) status non-profit organization as defined in the United States Internal Revenue Code, we will reimburse the insured for "failed donation claim(s)."

With respect to any "failed donation claim," it is further agreed as follows:

1. The donor must not have been in bankruptcy, nor have filed for bankruptcy or reorganization in the past seven (7) years prior to the time said pledge was made to the insured;

2. For non-cash donations, our payment of a "failed donation claim" shall be based on the fair market value of said non-cash donation at the time of the "failed donation claim";

3. In the case of unemployment or incapacitation of a natural person donor and as a condition of payment of the "failed donation claim":

   a. Neither the natural person donor nor the insured shall have had reason to believe the donor would become unemployed or incapacitated subsequent to the donation date; and

   b. The donor shall be unemployed for at least sixty (60) days prior to a claim being submitted by the insured;

4. No coverage shall be afforded for a written pledge of funds or other measurable, tangible property to the insured dated prior to the policy period; and

5. A donation amount which is to be collected by the insured over more than a twelve (12) month period shall be deemed a single donation.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

© 2009 Philadelphia Indemnity Insurance Company

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-BELL-1 IL (11/09)

**D. Emergency Real Estate Consulting Fee**

We will reimburse the insured any realtor's fee or real estate consultant's fee necessitated by the insured's need to relocate due to the "unforeseeable destruction" of the insured's "principal location" listed in the Declarations during the policy period. The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**E. Fundraising Event Blackout**

We will reimburse the insured for "fundraising expenses" that are incurred due to the cancellation of a fundraising event caused by the lack of electric supply resulting in a power outage, provided the fundraising event is not re-scheduled. The fundraising event must have been planned at least thirty (30) days prior to the power outage. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**F. Identity Theft Expense**

We will reimburse any present director or officer of the named insured for "identity theft expenses" incurred as the direct result of any "identity theft" first discovered and reported during the policy period; provided that it began to occur subsequent to the effective date of the insured's first policy with us. The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**G. Image Restoration and Counseling**

We will reimburse the insured for expenses incurred for image restoration and counseling arising out of "improper acts" by any natural person.

Covered expenses are limited to:

1. The costs of rehabilitation and counseling for the accused natural person insured, provided the natural person insured is not ultimately found guilty of criminal conduct; this reimbursement to occur after acquittal of the natural person insured;

2. The costs charged by a recruiter or expended on advertising, for replacing an officer as a result of "improper acts"; and

3. The costs of restoring the named insured's reputation and consumer confidence through image consulting.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**H. Key Individual Replacement Expenses**

We will pay "key individual replacement expenses" if the Chief Executive Officer or Executive Director suffers an "injury" during the policy period which results in the loss of life during the policy period. The limit of insurance for this coverage is the lesser of $50,000 or ten (10) times the annual premium paid for this policy. No deductible applies to this coverage.

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

I.  **Kidnap Expense**

We will pay on behalf of any director or officer of the insured, reasonable fees incurred as a result of the kidnapping of them or their spouse, "domestic partner," parent or child during the policy period. Coverage will not apply to any kidnapping by or at the direction of any present or former family member of the victim.

Reasonable fees will include:

1.  Fees and costs of independent negotiators;

2.  Interest costs for any loan from a financial institution taken by you to pay a ransom demand or extortion threat;

3.  Travel costs and accommodations incurred by the named insured;

4.  Reward money paid to an informant which leads to the arrest and conviction of parties responsible for loss covered under this insurance; and

5.  Salary, commissions and other financial benefits paid by you to a director or officer. Such compensation applies at the level in effect on the date of the kidnap and ends upon the earliest of:

    a.  Up to thirty (30) days after their release, if the director or officer has not yet returned to work;

    b.  Discovery of their death;

    c.  One hundred twenty (120) days after the last credible evidence following abduction that they are still alive; or

    d.  Twelve (12) months after the date of the kidnapping.

The limit of insurance for this coverage is $50,000 each policy period for all insureds combined. No deductible applies to this coverage.

J.  **Political Unrest Coverage**

We will reimburse any present director, officer, employee or volunteer of the named insured while traveling outside the United States of America for "emergency evacuation expenses" that are incurred as a result of an incident of "political unrest." This "political unrest" must occur during the policy period. No coverage is granted for travel to countries in a state of "political unrest" at the time of departure of the travel. The limit of insurance for this coverage is $5,000 per covered person, subject to a maximum of $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

K.  **Temporary Meeting Space Reimbursement**

We will reimburse the insured for rental of meeting space which is necessitated by the temporary unavailability of the insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater during the policy period. Coverage will exist only for the renting of temporary meeting space required for meeting with parties who are not insured under this policy. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

**L. Terrorism Travel Reimbursement**

We will reimburse any present director or officer of the named insured in the event of a "certified act of terrorism" during the policy period which necessitates that he/she incurs "emergency travel expenses." The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**M. Travel Delay Reimbursement**

We will reimburse any present director or officer of the named insured for any "non-reimbursable expenses" they incur as a result of the cancellation of any regularly scheduled business travel on a common carrier. The limit of insurance for this coverage is $1,500 per policy period for all insureds combined. A seventy-two (72) hour waiting period deductible applies to this coverage.

**N. Workplace Violence Counseling**

We will reimburse the insured for emotional counseling expenses incurred directly as a result of a "workplace violence" incident at any of the insured's premises during the policy period. The emotional counseling expenses incurred must have been for:

1. Your employees who were victims of, or witnesses to the "workplace violence";

2. The spouse, "domestic partner," parents or children of your employees who were victims of, or witnesses to the "workplace violence"; and

3. Any other person or persons who directly witnessed the "workplace violence" incident.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**IV. DEFINITIONS**

For the purpose of this endorsement, the following definitions apply:

A. "Certified act of terrorism" means any act so defined under the Terrorism Risk Insurance Act, and its amendments or extensions.

B. "Communicable disease" means an illness, sickness, condition or an interruption or disorder of body functions, systems or organs that is transmissible by an infection or a contagion directly or indirectly through human contact, or contact with human fluids, waste, or similar agent, such as, but not limited to Meningitis, Measles or Legionnaire's Disease.

C. "Domestic partner" means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by the named insured.

D. "Emergency evacuation expenses" mean:

1. Additional lodging expenses;

2. Additional transportation costs;

3. The cost of obtaining replacements of lost or stolen travel documents necessary for evacuation from the area of "political unrest"; and

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

    4.   Translation services, message transmittals and other communication expenses.

provided that these expenses are not otherwise reimbursable.

E.  "Emergency travel expenses" mean:

    1.   Hotel expenses incurred which directly result from the cancellation of a scheduled transport by a commercial transportation carrier, resulting directly from and within forty-eight (48) hours of a "certified act of terrorism"; and

    2.   The increased amount incurred which may result from re-scheduling comparable transport, to replace a similarly scheduled transport canceled by a commercial transportation carrier in direct response to a "certified act of terrorism";

provided that these expenses are not otherwise reimbursable.

F.  "Failed donation claim" means written notice to the insured during the policy period of:

    1.   The bankruptcy or reorganization of any donor whereby such bankruptcy or reorganization prevents the donor from honoring a prior written pledge of funds or other measurable, tangible property to the insured; or

    2.   The unemployment or incapacitation of a natural person donor preventing him/her from honoring a prior written pledge of funds or other measurable, tangible property to the insured.

G.  "Fundraising expenses" mean deposits forfeited and other charges paid by you for catering services, property and equipment rentals and related transport, venue rentals, accommodations (including travel), and entertainment expenses less any deposits or other fees refunded or refundable to you.

H.  "Identity theft" means the act of knowingly transferring or using, without lawful authority, a means of identification of any director or officer (or spouse or "domestic partner" thereof) of the named insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

I.  "Identity theft expenses" mean:

    1.   Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

    2.   Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors; and

    3.   Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

J.  "Improper acts" means any actual or alleged act of:

    1.   Sexual abuse;

    2.   Sexual intimacy;

    3.   Sexual molestation; or

© 2009 Philadelphia Indemnity Insurance Company

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-BELL-1 IL (11/09)

4. Sexual assault;

committed by an insured against any natural person who is not an insured. Such "improper acts" must have been committed by the insured while in his or her capacity as an insured.

K. "Injury" whenever used in this endorsement, other than in Section **III. A. Business Travel Accident Expenses**, means any physical damage to the body caused by violence, fracture or an accident.

L. "Key individual replacement expenses" mean the following necessary expenses:

1. Costs of advertising the employment position opening;

2. Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

3. Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, overtime pay, costs to verify the background and references of the applicants and legal expenses incurred to draw up an employment contract.

M. "Natural catastrophe" means hurricane, tornado, earthquake or flood.

N. "Non-reimbursable expenses" means the following travel-related expenses incurred after a seventy-two (72) hour waiting period, beginning from the time documented on the proof of cancellation, and for which your director or officer produces a receipt:

1. Meals and lodging;

2. Alternative transportation;

3. Clothing and necessary toiletries; and

4. Emergency prescription and non-prescription drug expenses.

O. "Political unrest" means:

1. A short-term condition of disturbance, turmoil or agitation within a foreign country that poses imminent risks to the security of citizens of the United States;

2. A long-term condition of disturbance, turmoil or agitation that makes a foreign country dangerous or unstable for citizens of the United States; or

3. A condition of disturbance, turmoil or agitation in a foreign country that constrains the United States Government's ability to assist citizens of the United States, due to the closure or inaccessibility of an embassy or consulate or because of a reduction of its staff

for which either an alert or travel warning has been issued by the United States Department of State.

P. "Principal location" means the headquarters, home office or main location where most business is substantially conducted.

Q. "Unforeseeable destruction" means damage resulting from a "certified act of terrorism," fire, collision or collapse which renders all of the insured's "principal locations" completely unusable.

© 2009 Philadelphia Indemnity Insurance Company

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-BELL-1 IL (11/09)

**R.** "Workplace violence" means any intentional use of or threat to use deadly force by any person with intent to cause harm and that results in bodily "injury" or death of any person while on the insured's premises.

PI-CME-1 (10/09)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CRISIS MANAGEMENT ENHANCEMENT ENDORSEMENT

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

Solely for the purpose of this endorsement:  1) The words  "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  2) The words "we," "us" and "our" refer to the company providing this insurance.

**I.    SCHEDULE OF ADDITIONAL COVERAGE AND LIMITS**

The following is the Limit of Liability provided by this endorsement.  This endorsement is subject to the provisions of the policy to which it is attached.

Crisis Management Expense                                                                         $25,000

**II.   CONDITIONS**

**A.  Applicability of Coverage**

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.  All other terms and conditions of the policy or coverage part to which this endorsement is attached remain unchanged.

**B.  Limits of Liability or Limits of Insurance**

When coverage is provided by this endorsement and any other coverage form or endorsement attached to this policy, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Liability or Limit of Insurance.

**C.  Claim Expenses**

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

**III.  ADDITIONAL COVERAGES**

**A.**  We will reimburse you for "crisis management emergency response expenses" incurred because of an "incident" giving rise to a "crisis" to which this insurance applies. The amount of such reimbursement is limited as described in Section **II. CONDITIONS, B. Limits of Liability or Limits of Insurance**.  No other obligation or liability to pay sums or perform acts or services is covered.

**B.**  We will reimburse only those "crisis management emergency response expenses" which are incurred during the policy period as shown in the Declarations of the policy to which this coverage is attached and reported to us within six (6) months of the date the "crisis" was initiated.

Page 1 of 2

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-CME-1 (10/09)

IV. **DEFINITIONS**

    **A.** "Crisis" means the public announcement that an "incident" occurred on your premises or at an event sponsored by you.

    **B.** "Crisis management emergency response expenses" mean those expenses incurred for services provided by a "crisis management firm." However, "crisis management emergency response expenses" shall not include compensation, fees, benefits, overhead, charges or expenses of any insured or any of your employees, nor shall "crisis management emergency response expenses" include any expenses that are payable on your behalf or reimbursable to you under any other valid and collectible insurance.

    **C.** "Crisis management firm" means any service provider you hire that is acceptable to us. Our consent will not be unreasonably withheld.

    **D.** "Incident" means an accident or other event, including the accidental discharge of pollutants, resulting in death or serious bodily injury to three or more persons.

    **E.** "Serious bodily injury" means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98      Copyright, Insurance Services Office, Inc., 1998      Page 1 of 1    □

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

IL 00 21 09 08    □

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

IL 01 18 02 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the terms Coverage Part and Coverage Form in this endorsement are replaced by the term Policy.

**B.** The following is added to the **Legal Action Against Us** Condition:

The two year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

**C.** If this policy covers:

1. The following in **a.** and **b.,** then Paragraphs **2.** and **3.** apply:

   **a.** Real property used principally for residential purposes up to and including a four family dwelling; or

   **b.** Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

2. The second paragraph of the **Appraisal** Condition is deleted and replaced by the following:

   **a.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

   **b.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

      **(1)** You demanded the appraisal; and

      **(2)** The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

3. The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

   **Concealment, Misrepresentation Or Fraud**

   **a.** This Coverage Part or Coverage Form is void if you or any insured ("insured") commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

      **(1)** Was made with actual intent to deceive; or

      **(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

      However, this condition will not serve as a reason to void this Coverage Part or Coverage Form after the Coverage Part or Coverage Form has been in effect for one year or one policy term, whichever is less.

   **b.** We do not provide coverage under this Coverage Part or Coverage Form to you or any other insured ("insured") who, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

      **(1)** This Coverage Part or Coverage Form;

      **(2)** The Covered Property;

      **(3)** Your interest in the Covered Property; or

      **(4)** A claim under this Coverage Part or Coverage Form.

   **c.** Notwithstanding the limitations stated in **3.a.** above, we may cancel the Coverage Part or Coverage Form in accordance with the terms of the Cancellation Condition.

IL 01 18 02 17 © Insurance Services Office, Inc., 2016 Page 1 of 2

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**D.** For the Commercial Property Coverage Part and the Standard Property Policy, the following exclusion and related provisions are added to Paragraph **B.2.** Exclusions in the Causes of Loss Forms and to any Coverage Form or policy to which a Causes of Loss Form is not attached:

**1.** We will not pay for loss or damage arising out of any act an insured commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

**2.** However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

**a.** The loss arose out of a pattern of criminal domestic violence; and

**b.** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

**3.** If we pay a claim pursuant to Paragraph **D.2.**, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**E.** The **Intentional Loss Exclusion** in the Causes of Loss Form – Farm Property, Mobile Agricultural Machinery And Equipment Coverage Form and Livestock Coverage Form is replaced by the following:

**1.** We will not pay for loss ("loss") or damage arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss ("loss").

In the event of such loss ("loss"), no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss ("loss").

**2.** However, this exclusion will not apply to deny payment to an innocent co-"insured" who did not cooperate in or contribute to the creation of the loss ("loss") if:

**a.** The loss ("loss") arose out of a pattern of criminal domestic violence; and

**b.** The perpetrator of the loss ("loss") is criminally prosecuted for the act causing the loss.

**3.** If we pay a claim pursuant to Paragraph **E.2.**, our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**F.** The **Intentional Loss Exclusion** in the Capital Assets Program (Output Policy) Coverage Part, is replaced by the following:

**1.** We will not pay for loss or damage arising out of any act an insured commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

**2.** However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

**a.** The loss arose out of a pattern of criminal domestic violence; and

**b.** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

**3.** If we pay a claim pursuant to Paragraph **F.2.**, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

   © Insurance Services Office, Inc., 2016   IL 01 18 02 17

IL 01 47 09 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

1. Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

IL 01 47 09 11 © Insurance Services Office, Inc., 2011 Page 1 of 1

IL 01 62 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

A. The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Commercial General Liability, Commercial Liability Umbrella, Employment-related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

2. Section II under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

3. Section III under the Auto Dealers and Motor Carrier Coverage Forms;

4. Section **A.** Coverage under the Legal Liability Coverage Form; and

5. Coverage **C** – Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

B. If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

IL 01 62 10 13 © Insurance Services Office, Inc., 2013 Page 1 of 1

IL 02 84 01 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. If this policy has been in effect for 60 days or less, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy by mailing written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. If this policy has been in effect for more than 60 days, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** You have violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

**f.** A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of this State.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

4. We will mail our notice to you, together with our reason for cancellation, at your last mailing address known to us. Proof of mailing will be sufficient proof of notice.

5. Notification of cancellation will also be sent to your broker, if known, or agent of record, if known, and to the mortgagee or lienholder listed on the policy.

6. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

IL 02 84 01 18 © Insurance Services Office, Inc., 2017 Page 1 of 3

8. **Real Property Other Than Residential Properties Occupied By Four Families Or Less**

   The following applies only if this policy covers real property other than residential property occupied by four families or less:

   If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation, by both certified and regular mail, if:

   a. After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

   b. The building has been unoccupied 60 or more consecutive days. This does not apply to:

      (1) Seasonal unoccupancy; or

      (2) Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

   c. The building has:

      (1) An outstanding order to vacate;

      (2) An outstanding demolition order; or

      (3) Been declared unsafe in accordance with the law.

   d. Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

   The policy will terminate 10 days following receipt of the written notice by the named insured(s).

9. **Residential Properties Occupied By Four Families Or Less**

   The following applies if this policy covers residential properties occupied by four families or less:

   If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained by misrepresentation or fraud; or

   c. Any act that measurably increases the risk originally accepted.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 30 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

10. For insurance provided under the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part, the following applies:

    **Grain In Public Grain Warehouses**

    (Not applicable to grain owned by the Commodity Credit Corporation)

    The following applies only with respect to grain in public grain warehouses:

    The first Named Insured or we may cancel this policy at any time by mailing to:

    a. The other; and

    b. The Director of the Illinois Department of Agriculture (at its Springfield Office);

    60 days' written notice of cancellation.

B. The following is added:

   **Nonrenewal**

   1. If we decide not to renew or continue this policy, we will mail you written notice, stating the reason for nonrenewal. Proof of mailing will be sufficient proof of notice.

   2. Except as provided in Paragraph **6.** below, we will mail you notice of nonrenewal at least 60 days before the end of the policy period.

   3. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

   4. If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

   5. The following provision applies to policies other than those described in Paragraph **6.**:

      Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known, and the mortgagee or lienholder listed on the policy.

Page 2 of 3                    © Insurance Services Office, Inc., 2017                    IL 02 84 01 18

**6.** The following provision applies only if this policy covers residential properties occupied by four families or less:

    **a.** If this policy has been issued to you and in effect with us for five or more years, we may not fail to renew this policy unless:

        **(1)** The policy was obtained by misrepresentation or fraud and we mail you notice of nonrenewal at least 30 days before the end of the policy period as provided in **1.** above;

        **(2)** The risk originally accepted has measurably increased and we mail you notice of nonrenewal at least 30 days before the end of the policy period as provided in **1.** above; or

        **(3)** You received 60 days' notice of our intent not to renew as provided in **1.** above.

    **b.** If this policy has been issued to you and in effect with us for less than five years, we may not fail to renew this policy unless you received 30 days' notice as provided in **1.** above.

    **c.** Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known, and to the last known mortgagee or lienholder.

    **d.** The nonrenewal shall not become effective until at least 30 days from the proof of mailing date of the notice to you.

IL 02 84 01 18          © Insurance Services Office, Inc., 2017          **Page 3 of 3**

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

IL 09 52 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

IL 09 52 01 15 © Insurance Services Office, Inc., 2015 Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

PI-ACL-001 (12/18)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABSOLUTE CYBER LIABILITY AND ELECTRONIC EXCLUSION

The following exclusion applies to all coverages afforded under this policy:

This insurance does not apply to any loss, cost, expense, fine, penalty, error and omission, or damage alleging, arising out of or from, attributable to, or giving rise to:

(1) Any access to, collection or disclosure of, or failure to erase any person's or organization's confidential or personal information, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, biometrics, or any other type of nonpublic information; or

(2) Business interruption or suspension of operations as caused by any access, unauthorized access, lack of access, delay in access, damage, manipulation, loss, or impairment to **Electronic Data** or **Electronic Media**; or

(3) **Cyber Extortion**; or

(4) A **Privacy Breach**; or

(5) A **Security Breach**; or

(6) Any fraudulent communication through **Electronic Media** that impersonates any person or organization, including but not limited to phishing or other social engineering techniques or otherwise; or

(7) Any computer code, software, or programming; or

(8) Any **Security Breach** that results in any electronic thing or device or **Electronic Media** malfunctioning, improperly functioning, non-functioning, failing to perform as the intended user desired, or being electronically manipulated to perform in a way that causes harm to the insured or others; or

(9) The loss, loss of use, misuse, delay, manipulation, corruption, damage, alteration, destruction, distortion, erasure, or theft of, or inability to access or manipulate **Electronic Data** or **Electronic Media** as a result of **Cyber Extortion;** or **Privacy Breach;** or **Security Breach**

(10) Any failure of utilities based upon, arising out of, or attributable to any mechanical or electrical failure, interruption, or outage, however caused, including but not limited to any electrical power interruption or surge, brownout, blackout, short circuit, over voltage, or power fluctuation or outage to gas, water, telephone, cable, satellite, telecommunications, the internet, or any component thereof, including but not limited to hardware, software, or any other infrastructure as a result of **Cyber Extortion;** or **Privacy Breach;** or **Security Breach.**

(11) This exclusion applies even if damages are claimed for notification costs, errors or omissions, credit monitoring expenses, forensic expenses, public relations expenses, or any other loss, cost, or expense incurred by the insured or others arising out of that which is described in Paragraphs (1) through (10) above.

As used in this exclusion, the following definitions apply:

Page 1 of 3

@2018 Philadelphia Consolidated Holding Corp.

PI-ACL-001 (12/18)

PI-ACL-001 (12/18)

**Computer hardware** means the physical components of any **computer system** including CPU's, memory storage devices, storage media, and input/output devices and other peripheral devices and components including but not limited to cable, connectors, fiber optics, networking equipment, **electronic data** storage devices, input and output devices, backup facilities, wire, power supply units, keyboards, display monitors and audio speakers.

**Computer system** means an electronic, wireless, web or similar systems (including all **computer hardware**, computer programs and **electronic data**) used to process data or information in an analog, digital, electronic or wireless format, including but not limited to, associated input and output devices, data storage devices, networking equipment, wired or wireless peripherals, electronic backup facilities, and media libraries, that is owned or leased, operated and controlled by the insured or operated by an independent contractor authorized to provide Business Process Outsourcing services or outsourced Information Technology services for the insured.

**Corporate Information Breach** means the public disclosure of an organization's non-public information.

**Cyber Extortion** means any threat or connected series of threats communicated to the insured for the purpose of demanding money, securities, or property, including but not limited to threats to release, divulge, disseminate, corrupt, damage or destroy **Electronic Data** or **Electronic Media**; introduce malware or **malicious code** into the insured's computer system; electronically communicate with the insured's customers in order to fraudulently obtain personal information, money, securities or property; or restrict or hinder access to the insured's computer system, **Electronic Data** or **Electronic Media**, including but not limited to ransomware.

**Denial of service** means unauthorized or unexpected interference or malicious attack by any person(s) or entity(ies) that restricts or prevents access to a **computer system** by persons or entities authorized to gain access to the **computer system** or **electronic data**.

**Electronic Data** means information, facts, blockchain, crypto currencies, or computer programs stored as or on, created or used on, or transmitted to or from computer software, including but not limited to systems and applications software, hard or floppy disks, CD-ROMs, DVDs, external drives, USB sticks, tapes, drives, cells, microchip, data processing devices, or any other media which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of **Electronic Data**, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve, or send data.

**Electronic Media** means broadcast or storage media that take advantage of electronic technology. They include television, radio, Internet, fax, Bluetooth, GPS, audio beacons, electronic data, and any other medium that requires electricity or digital encoding of information.

.**Malicious code** means unauthorized and corrupting or harmful computer code, including but not limited to computer viruses, spyware, Trojan horses, worms, logic bombs, and mutations of any of the preceding.

Page 2 of 3

@2018 Philadelphia Consolidated Holding Corp.

PI-ACL-001 (12/18)

PI-ACL-001 (12/18)

**Privacy Breach** means a common law or statutory breach of confidence or violation of any common law or statutory rights to privacy, including but not limited to breach of a privacy policy, breach of a person's right of publicity, misappropriation of likeness, false light, intrusion upon a person's seclusion, or public disclosure of a person's or animal's private information. Privacy Breach will also include a **Corporate Information Breach**.

**Security breach** means:

1. **Unauthorized access** of the insured's **computer system** or **unauthorized use** of **computer systems** including **unauthorized access** or **unauthorized use** resulting from the theft of a password from the insured's **computer system**;

2. A **denial of service** attack against your **computer systems**; or

3. Infection of the insured's **computer system** by **malicious code** or transmission of **malicious code** from the insured's **computer systems**,

whether any of the foregoing is a specifically targeted attack or a generally distributed attack.

**Unauthorized access** means the gaining of access to a **computer system** by an unauthorized person or persons.

**Unauthorized use** means the use of a **computer system** by an unauthorized person or persons or an authorized person in an unauthorized manner.

This Endorsement is an absolute exclusion for cyber liability, **Electronic Data**, **Electronic Media** and **Security Breaches**. This Endorsement applies except if coverage is specifically and affirmatively provided in the following coverage forms or endorsements issued by us and only in respect to the coverage afforded in those coverage forms or endorsements. In no event will this Endorsement broaden any coverage afforded in any coverage form or endorsement:

- **Cyber Security Liability Coverage Form**
- **Cyber Security Liability Endorsement**
- **Building and Personal Property Coverage Form**
- **Fraudulent Inducement Insuring Agreement**
- **Fraudulent Inducement Insuring Agreement - Broad Form**
- **Fraudulent Impersonation**
- **Fraudulent Impersonation Ultimate Cover**
- **Business Income and Extra Expense Coverage Form**
- **Computer Coverage Form**

All other terms and conditions remain unchanged.

Page 3 of 3

@2018 Philadelphia Consolidated Holding Corp.

PI-ACL-001 (12/18)

PI-CANXAICH-002 (05/11)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CANCELLATION NOTICE TO SCHEDULED ADDITIONAL INSURED OR CERTIFICATE HOLDER

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**COMMERCIAL CRIME COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL AUTOMOBILE COVERAGE PART**

### SCHEDULE OF ADDITIONAL INSUREDS OR CERTIFICATE HOLDERS

| AI or CH | Additional Insured or Certificate Holder | Address |
|---|---|---|
| CH & AI | Any person or organization with whom you have agreed to provide 30 days prior written notice of cancellation as provided by your insurance broker of such person or organization and that list is provided to us prior to any such cancellation | Various |
| | | |

The following is added to **A. CANCELLATION** of the Common Policy Conditions of the above applicable coverage part:

**A.** In the event we cancel the policy in accordance with the policy's terms and conditions, we will endeavor to mail written notice of cancellation to Additional Insureds or Certificate Holders, shown in the above SCHEDULE within the time frame listed below.   However, failure to mail such notice shall impose no obligation of any kind upon us, our agents or representatives.

1.   30 days before the effective date of cancellation if we cancel for any reason other than for non - payment of premium.

As respects Additional Insureds, the above cancellation provision applies only when the Additional Insured shown in the above **SCHEDULE** is added to the policy by a separate additional insured endorsement as the **CANCELLATION NOTICE TO ADDITIONAL INSURED OR CERTIFICATE HOLDER** does not provide additional insured coverage.

Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-PROF-002 IL (06/20)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ABSOLUTE COMMUNICABLE DISEASE EXCLUSION
## PROFESSIONAL LIABILITY – ILLINOIS

I.   The following exclusion applies to all professional liability coverages afforded in any coverage form or endorsement issued by us.  When the applicable professional liability coverage:

**A.** Contains a communicable disease exclusion, it is deleted in its entirety and replaced with the following; or

**B.** Does not contain a communicable disease exclusion, the following is added:

This insurance does not apply to any loss, cost, expense, fine, penalty, act, error or omission, or damage arising out of the actual, alleged, threatened or suspected transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

1.   Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

2.   Testing for a communicable disease;

3.   Failure to prevent the spread of the disease; or

4.   Failure to report the disease to authorities.

II.   For the purposes of this endorsement, communicable disease means any infectious or contagious disease, illness or condition that can be transmitted from:

1.   Person to person;

2.   Animal (including insect) to person; or

3.   Animal to animal (including insect),

Directly or indirectly, by direct contact or indirectly by means of vector or fomites, including but not limited to the following and any variant(s) thereof:

a.   Acquired Immune Deficiency Syndrome (AIDS) or Human Immunodeficiency Virus (HIV);

b.   Human T-Cell Lymphotrophic Virus (HTLV) of any form or type;

c.   Any hepatitis virus;

d.   Severe Acute Respiratory Syndrome (SARS);

e.   Herpes virus, any venereal disease or sexually transmitted illness or condition;

f.   Zika virus;

g.   Norovirus;

PI-PROF-002 IL (06/20)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-PROF-002 IL (06/20)

    **h.** Coronavirus;

    **i.** Any of the Ebola virus species; or

    **j.** Creutzfeldt-Jakob disease or New Variant Creutzfeldt-Jakob disease.

This endorsement is an absolute exclusion for communicable disease.

All other terms and conditions remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-018 (05/19)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ABSOLUTE ABUSE OR MOLESTATION EXCLUSION
## PROFESSIONAL LIABILITY

The following exclusion applies to all professional liability coverages afforded in any coverage form or endorsement issued by us.  When the applicable professional liability coverage:

**A.** Contains an abuse or molestation exclusion, it is deleted in its entirety and replaced with the following; or

**B.** Does not contain an abuse or molestation exclusion, the following is added:

This insurance does not apply to any loss, cost, expense, fine, penalty, act, error and omission, or damage alleging, arising out of or from, attributable to, or giving rise to any injury sustained by any person caused by the alleged, actual or threatened abuse or molestation by anyone.

We shall not have any duty to defend any "suit" against any insured on account of any such injury.

This exclusion applies to all injury sustained by any person, including emotional distress, arising out of molestation or abuse whether alleged, actual or threatened including but not limited to molestation or abuse arising out of your negligence or other wrongdoing with respect to:

**1.** **a.** Hiring, placement, employment, training;

    **b.** Investigation;

    **c.** Supervision;

    **d.** Reporting any molestation or abuse to the proper authorities, or failure to so report; or

    **e.** Retention

    of a person for whom any insured is or ever was legally responsible or for whom any insured may have assumed the liability; and whose conduct would be excluded above; or

**2.** **a.** Failure to provide professional services to; or

    **b.** Neglect of the therapeutic needs of,

    any person because of the conduct which would be excluded above.

This endorsement is an absolute exclusion for abuse or molestation.

All other terms and conditions remain unchanged.

PI-SAM-018 (05/19)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-TER-DN1 (1/21)

Policy Number: __PHPK2321444__          Named Insured: __Remedial Environmental Manpower, Inc.__

 **PHILADELPHIA**
INSURANCE COMPANIES

*A Member of the Tokio Marine Group*

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

| Terrorism Premium (Certified Acts) $ | 947.00 |
|---|---|

## DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE REJECTION OPTION

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT'S FEDERAL SHARE OF TERRORISM LOSSES IS 80% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Your attached proposal (or policy) includes a charge for terrorism. We will issue (or have issued) your policy with terrorism coverage unless you decline by placing an "X" in the box below.**

**NOTE 1:** If "included" is shown on your proposal (or policy) for terrorism you WILL NOT have the option to reject the coverage.

**NOTE 2:** You will want to check with entities that have an interest in your organization as they may require that you maintain terrorism coverage (e.g. mortgagees).

**EXCEPTION:** If you have property coverage on your policy, the following Standard Fire Policy states do not permit an Insured to reject fire ensuing from terrorism: CA, CT, GA, HI, IA, IL, MA, ME, MO, NJ, NY, NC, OR, RI, VA, WA, WV, WI. Therefore, if you are domiciled in the above states and reject terrorism coverage, you will still be charged for fire ensuing from terrorism as separately designated on your proposal.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-TER-DN1 (1/21)

| | I decline to purchase terrorism coverage. I understand that I will have no coverage for losses arising from "certified" acts of terrorism, EXCEPT as noted above. |
|---|---|

**You, as the Insured, have 30 days after receipt of this notice to consider the selection/rejection of "terrorism" coverage. After this 30 day period, any request for selection or rejection of terrorism coverage WILL NOT be honored.**

**REQUIRED IN GA -- LIMITATION ON PAYMENT OF TERRORISM LOSSES** (applies to policies which cover terrorism losses insured under the federal program, including those which only cover fire losses)

The provisions of the Terrorism Risk Insurance Act, as amended, can limit our maximum liability for payment of losses from certified acts of terrorism. That determination will be based on a formula set forth in the law involving the national total of federally insured terrorism losses in an annual period and individual insurer participation in payment of such losses. If one or more certified acts of terrorism in an annual period causes the maximum liability for payment of losses from certified acts of terrorism to be reached, and we have satisfied our required level of payments under the law, then we will not pay for the portion of such losses above that maximum. However, that is subject to possible change at that time, as Congress may, under the Act, determine that payments above the cap will be made.

INSURED'S SIGNATURE_____

DATE_____

Page 2 of 2

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

CP 00 10 10 12    © Insurance Services Office, Inc., 2011    Page 1 of 16

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

b. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

c. Automobiles held for sale;

d. Bridges, roadways, walks, patios or other paved surfaces;

e. Contraband, or property in the course of illegal transportation or trade;

f. The cost of excavations, grading, backfilling or filling;

g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

h. Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

i. Personal property while airborne or waterborne;

j. Bulkheads, pilings, piers, wharves or docks;

k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

l. Retaining walls that are not part of a building;

m. Underground pipes, flues or drains;

n. Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.**, does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

o. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

p. Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the described premises.

This paragraph does not apply to:

(a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

(b) Vehicles or self-propelled machines, other than autos, you hold for sale;

(c) Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops;

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

3. **Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

4. **Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs (2), (3) and (4), we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(b) Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

(c) Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(d) Remove property of others of a type that would not be Covered Property under this Coverage Form;

(e) Remove deposits of mud or earth from the grounds of the described premises;

(f) Extract "pollutants" from land or water; or

(g) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

(4) We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example 2**

| | | |
|---|---|---|
| Limit of Insurance: | | $ 90,000 |
| Amount of Deductible: | | $ 500 |
| Amount of Loss: | | $ 80,000 |
| Amount of Loss Payable: | | $ 79,500 |
| | | ($80,000 – $500) |
| Debris Removal Expense: | | $ 40,000 |
| Debris Removal Expense Payable | | |
| | Basic Amount: | $ 10,500 |
| | Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

(a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

(b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

(c) If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**Page 6 of 16**          © Insurance Services Office, Inc., 2011          **CP 00 10 10 12**

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

 © Insurance Services Office, Inc., 2011

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011 CP 00 10 10 12

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

(a) Will end 90 days after the business personal property has been placed in the storage unit;

(b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;
2. Pollutant Clean-up And Removal;
3. Increased Cost Of Construction; and
4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---|
| Deductible: | $    250 |
| Limit of Insurance – Building 1: | $ 60,000 |
| Limit of Insurance – Building 2: | $ 80,000 |
| Loss to Building 1: | $ 60,100 |
| Loss to Building 2: | $ 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
– 250
$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---|
| Loss to Building 1: | $  70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $  90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $  60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $  80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and
   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

   a. You must see that the following are done in the event of loss or damage to Covered Property:

      (1) Notify the police if a law may have been broken.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety-glazing material if required by law.

e. Tenants' Improvements and Betterments at:

(1) Actual cash value of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | | |
|---|---|---|
| | The value of the property is: | $ 250,000 |
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step (1): $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $100,000 ÷ $200,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | | |
|---|---|---|
| | The value of the property is: | $ 250,000 |
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When: The value of the property is:

| | |
|---|---|
| Building at Location 1: | $ 75,000 |
| Building at Location 2: | $ 100,000 |
| Personal Property at Location 2: | $ 75,000 |
| | $ 250,000 |

The Coinsurance percentage for it is: 90%

The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: $ 180,000

The Deductible is: $ 1,000

The amount of loss is:

| | |
|---|---|
| Building at Location 2: | $ 30,000 |
| Personal Property at Location 2: | $ 20,000 |
| | $ 50,000 |

Step (1): $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2): $180,000 ÷ $225,000 = .80

Step (3): $50,000 x .80 = $40,000

Step (4): $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

2. **Mortgageholders**

a. The term mortgageholder includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

1. **Agreed Value**

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

© Insurance Services Office, Inc., 2011 CP 00 10 10 12

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

   **(1)** On or after the effective date of this Optional Coverage; and

   **(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

   **(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

   **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

   **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

If:

| | |
|---|---|
| The applicable Limit of Insurance is: | $ 100,000 |
| The annual percentage increase is: | 8% |
| The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $   3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

   **(1)** Personal property of others;

   **(2)** Contents of a residence;

   **(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

   **(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

   **(1)** Until the lost or damaged property is actually repaired or replaced; and

   **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

   **(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

   **(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

   **(1)** The Limit of Insurance applicable to the lost or damaged property;

   **(2)** The cost to replace the lost or damaged property with other property:

     **(a)** Of comparable material and quality; and

     **(b)** Used for the same purpose; or

   **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

    © Insurance Services Office, Inc., 2011    CP 00 10 10 12

COMMERCIAL PROPERTY
CP 00 30 10 12

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

b. Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

(1) Business Income Including "Rental Value".

(2) Business Income Other Than "Rental Value".

(3) "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

(a) The portion of the building which you rent, lease or occupy;

(b) The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

(c) Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

a. Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

(1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

CP 00 30 10 12 © Insurance Services Office, Inc., 2011 Page 1 of 9

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

© Insurance Services Office, Inc., 2011          CP 00 30 10 12

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

(1) **Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

(i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

(ii) 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(2) **"Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

(b) Ends on the earlier of:

(i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

(ii) 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

(1) Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

(2) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

(3) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

(b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

(c) If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(5) This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

a. You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

b. The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

1. Alterations And New Buildings;

2. Civil Authority;

3. Extra Expense; or

4. Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

1. **Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

2. **Duties In The Event Of Loss**

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

3. **Loss Determination**

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

   (a) Your financial records and accounting procedures;

   (b) Bills, invoices and other vouchers; and

   (c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

   (a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

   (b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

c. **Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

4. **Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

a. We have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

D. **Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

1. The Coinsurance percentage shown for Business Income in the Declarations; times

2. The sum of:

a. The Net Income (Net Profit or Loss before income taxes), and

b. Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

© Insurance Services Office, Inc., 2011 CP 00 30 10 12

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1)**; and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2)**.

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

    **(1)** Prepaid freight – outgoing;

    **(2)** Returns and allowances;

    **(3)** Discounts;

    **(4)** Bad debts;

    **(5)** Collection expenses;

    **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

    **(7)** Cost of merchandise sold (including transportation charges);

    **(8)** Cost of other supplies consumed (including transportation charges);

    **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

    **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

    **(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

    **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: $ 400,000

The Coinsurance percentage is: 50%

The Limit of Insurance is: $ 150,000

The amount of loss is: $ 80,000

Step **(1):** $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: $ 400,000

The Coinsurance percentage is: 50%

The Limit of Insurance is: $ 200,000

The amount of loss is: $ 80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

    **1. Maximum Period Of Indemnity**

        **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

**(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

**(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

**(1)** The Limit of Insurance, multiplied by

**(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| | | |
|---|---|---|
| When: | The Limit of Insurance is: | $ 120,000 |
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |
| | ($120,000 x 1/4 = $30,000) | |
| | If, in this example, the actual amount of loss is: | |
| | Days 1–30: | $ 40,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 90,000 |
| | We will pay: | |
| | Days 1–30: | $ 30,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

**a.** To activate this Optional Coverage:

**(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

**(a)** During the 12 months prior to the date of the Work Sheet; and

**(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

**(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

**(a)** The Coinsurance percentage shown in the Declarations; multiplied by

**(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

**b.** The Additional Condition, Coinsurance, is suspended until:

**(1)** 12 months after the effective date of this Optional Coverage; or

**(2)** The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example**

| | | |
|---|---|---|
| When: | The Limit of Insurance is: | $ 100,000 |
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $100,000 ÷ $200,000 = .50

Step **(2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

 © Insurance Services Office, Inc., 2011 **CP 00 30 10 12**

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**F. Definitions**

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.
2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a. Someone insured by this insurance;

    b. A business firm:

        (1) Owned or controlled by you; or

        (2) That owns or controls you; or

    c. Your tenant.

This will not restrict your insurance.

  Copyright, ISO Commercial Risk Services, Inc., 1983, 1987  CP 00 90 07 88  ☐

COMMERCIAL PROPERTY
CP 01 40 07 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

A. The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

C. With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

D. The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

1. Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

2. Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

E. The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

CP 01 40 07 06        © ISO Properties, Inc., 2006        **Page 1 of 1**    □

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

COMMERCIAL PROPERTY
CP 01 49 06 07

# ILLINOIS CHANGES – ARTIFICIALLY GENERATED ELECTRICAL CURRENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in:

1. Paragraph **B.2.a.** of the Standard Property Policy, the Causes Of Loss – Basic Form, the Causes Of Loss – Broad Form and the Causes Of Loss – Special Form; and

2. Paragraph **B.2.b.** of the Mortgageholders Errors And Omissions Coverage Form

is replaced by the following exclusion:

We will not pay for loss or damage caused by or resulting from artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

COMMERCIAL PROPERTY
CP 10 30 09 17

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of or compliance with any ordinance or law:

   **(1)** Regulating the construction, use or repair of any property; or

   **(2)** Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

   **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   **(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

   **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   **(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   **(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   **(a)** Airborne volcanic blast or airborne shock waves;

   **(b)** Ash, dust or particulate matter; or

   **(c)** Lava flow.

   With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

 © Insurance Services Office, Inc., 2016 CP 10 30 09 17

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

h. **"Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungus", wet or dry rot or bacteria result from fire or lightning; or

(2) To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(a) Electrical current, including arcing;

(b) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(c) Pulse of electromagnetic energy; or

(d) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d.(1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

e. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**CP 10 30 09 17** © Insurance Services Office, Inc., 2016 **Page 3 of 10**

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

  **(1)** You do your best to maintain heat in the building or structure; or

  **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

  **(1)** Applies whether or not an act occurs during your normal hours of operation;

  **(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

  **(1)** An abrupt falling down or caving in;

  **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

  **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.**, does not apply:

  **(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

  **(b)** To collapse caused by one or more of the following:

    **(i)** The "specified causes of loss";

    **(ii)** Breakage of building glass;

    **(iii)** Weight of rain that collects on a roof; or

    **(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.**, does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

  **(1)** Planning, zoning, development, surveying, siting;

  **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

  **(3)** Materials used in repair, construction, renovation or remodeling; or

  **(4)** Maintenance;

 © Insurance Services Office, Inc., 2016 **CP 10 30 09 17**

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

      However, this limitation does not apply to:

      (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      (2) Business Income Coverage or Extra Expense Coverage.

   e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

   g. Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

      (1) Dampness or dryness of atmosphere or of soil supporting the vegetation;

      (2) Changes in or extremes of temperature;

      (3) Disease;

      (4) Frost or hail; or

      (5) Rain, snow, ice or sleet.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Animals, and then only if they are killed or their destruction is made necessary.

   b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass; or

      (2) Containers of property held for sale.

   c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

      However, this limitation does not apply:

      (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

© Insurance Services Office, Inc., 2016    **CP 10 30 09 17**

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

(2) To Business Income Coverage or to Extra Expense Coverage.

3. The special limit shown for each category, **a.** through **d.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.**, does not apply to Business Income Coverage or to Extra Expense Coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

   However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      (1) A cause of loss listed in **2.a.** or **2.b.**;

      (2) One or more of the "specified causes of loss";

      (3) Breakage of building glass;

      (4) Weight of people or personal property; or

      (5) Weight of rain that collects on a roof.

3. This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

(1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

(2) The property is Covered Property under this Coverage Form.

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.**;

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in **4.**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

8. The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

E. **Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2016    CP 10 30 09 17

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

   If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

6. The following, **6.a.** or **6.b.**, applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

   a. If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

1. **Property In Transit**

   This Extension applies only to your personal property to which this form applies.

   a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

      (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

      (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   c. The most we will pay for loss or damage under this Extension is $5,000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

© Insurance Services Office, Inc., 2016

3. **Glass**

    **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

    **b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

    This Coverage Extension **F.3.** does not increase the Limit of Insurance.

**G. Definitions**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      **(1)** The cost of filling sinkholes; or

      **(2)** Sinking or collapse of land into man-made underground cavities.

    **b.** Falling objects does not include loss or damage to:

      **(1)** Personal property in the open; or

      **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    **c.** Water damage means:

      **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

      **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

© Insurance Services Office, Inc., 2016
**CP 10 30 09 17**

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

POLICY NUMBER: PHPK2321444

**COMMERCIAL PROPERTY**
**CP 12 18 10 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDERS' RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

## SCHEDULE

| Location Number: 00001 | Building Number: 00001 | Applicable Clause (Enter C.1., C.2., C.3. or C.4.): c.1. |
|---|---|---|
| **Description Of Property:** 7239 Roosevelt Rd Forest Park, IL 60130-2471 | | |
| **Loss Payee Name:** Belmont Bank & Trust Company 8250 W Belmont Ave | | |
| **Loss Payee Address:** Chicago, IL 60634-2809 | | |
| **Location Number:** | **Building Number:** | **Applicable Clause** (Enter C.1., C.2., C.3. or C.4.): |
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |
| **Location Number:** | **Building Number:** | **Applicable Clause** (Enter C.1., C.2., C.3. or C.4.): |
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

**C.** The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule:

**1. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear

**2. Lender's Loss Payable Clause**

**a.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**(1)** Warehouse receipts;

**(2)** A contract for deed;

**(3)** Bills of lading;

**(4)** Financing statements; or

**(5)** Mortgages, deeds of trust, or security agreements.

**b.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**(1)** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**(2)** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**(3)** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(a)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(b)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(c)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**(4)** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(a)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(b)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**c.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**d.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

3. **Contract Of Sale Clause**

   a. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered into a contract with for the sale of Covered Property.

   b. For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

      (1) Adjust losses with you; and

      (2) Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

   c. The following is added to the **Other Insurance** Condition:

      For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

4. **Building Owner Loss Payable Clause**

   a. The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building in which you are a tenant.

   b. We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

   c. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

PI-EPE-TS IL (12/10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ELITE PROPERTY ENHANCEMENT: TEMPORARY STAFFING

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM**
**CAUSES OF LOSS – SPECIAL FORM**

I.    **Schedule of Additional Elite Enhancement Endorsement Coverages and Limits**

The following is a summary of increased Limits of Insurance and/or additional coverages provided by this endorsement. This endorsement is subject to the provisions of your policy.

| Coverage Applicable | Limit of Insurance | Page # |
|---|---|---|
| Foundations | Included | 2 |
| Retaining Walls | $10,000 | 3 |
| Business Personal Property | Within 1600 feet | 3 |
| Fire Department Service Charge | $50,000 | 3 |
| Pollutant Clean Up and Removal | $50,000 | 3 |
| Emergency Vacating Expense | $25,000 | 3 |
| Lease Cancellation Moving Expenses | $5,000 | 4 |
| Joint or Disputed Loss Agreement | Included | 4 |
| Green Consultant Expense Coverage | $5,000 | 6 |
| Newly Acquired or Constructed Property | 180 Days | 6 |
| Valuable Papers and Records | $100,000 | 6 |
| Property Off-Premises, Including Stock | $500,000 | 7 |
| Property at Conventions, Fairs, Exhibitions or Special Events | $100,000 | 7 |
| Outdoor Property | $50,000 | 7 |
| Garages/Storage Sheds | $5,000 | 8 |
| Accounts Receivable | $100,000 | 8 |
| Business Income and Extra Expense | $300,000 | 9 |
| Civil Authority | Included | |
| Contingent Business Property | Included | |
| Utility Service Interruption | Included | |
| Fire Extinguisher Recharge | $25,000 | 12 |
| Lock Replacement | $10,000 | 12 |
| Reward Reimbursement | $50,000 | 12 |
| Inventory and Appraisals of Loss | $50,000 | 12 |
| Ordinance or Law - Undamaged Portion of the Building | Building Limit | 12 |
| Ordinance or Law - Demolition Cost | $500,000 | |
| Ordinance or Law - Increased Cost of Construction | $500,000 | |
| Spoilage | 1600 feet, $50,000 | 14 |
| Pair, Sets or Parts | Amended | 15 |
| Fine Arts | $50,000 | 15 |
| EDP Equipment and Media | $10,000 | 17 |
| Vacancy Clause Modification | 90 Days | 20 |
| Earthquake Sprinkler Leakage | $30,000 | 20 |
| Dampness/Extremes of Temperature | Exclusion removed | 20 |
| Furs | $10,000 | 20 |
| Precious Metals | $25,000 | 20 |

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-EPE-TS IL (12/10)

| Coverage Applicable | Limit of Insurance | Page # |
|---|---|---|
| Water Coverage | $30,000 | 20 |
| Property in Transit (Includes Common Carrier) | $100,000 ($10,000) | 21 |
| Off Premises Power Failure | $50,000 | 21 |
| Extended Business Income | 180 Days | 22 |

II. **Elite Enhancement Endorsement Conditions**

    A. **Applicability of Coverage**

        Coverage provided in forms attached to your policy is amended by this endorsement where applicable. If two or more coverages apply to the same loss or damage, the broader coverage and only the broader coverage, will apply.

    B. **Limits of Insurance**

        1. When coverage is provided by this form and another coverage form attached to this policy, the greater Limits of Insurance will apply. In no instance will multiple limits apply to coverages which may be duplicated within this policy.

        2. Limits of Insurance identified herein are not excess of, nor applicable in addition to, Limits of Insurance provided by the coverage or Cause of Loss forms applicable to this endorsement, unless otherwise stated.

        3. Coverage is considered to be on an occurrence basis (not on a per location basis).

        4. The deductible listed in the Property Declarations will apply unless specific deductible provisions are set forth under any coverage enhancement.

    C. **Adjusters' Fees**

        Coverages provided herein are not applicable to the generation of fees you may incur by retaining a public adjuster or appraiser.

    D. **Applicability of Exclusions**

        Specific exclusionary endorsements attached to the policy supersede coverage provisions contained in this coverage enhancement.

    E. **Requirement for Covered Cause of Loss**

        Except where a specific Covered Cause of Loss is identified in this coverage enhancement, coverage for the losses described herein are applicable only for Covered Causes of Loss as designated in the Causes of Loss Form attached to the policy.

III. The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** Section **A. Coverage** is amended as follows:

    A. **Foundations**

        1. **Covered Property** is amended to include the following:

            Foundations of buildings, structures, machinery or boilers if their foundations are below the lowest basement floor; or the surface of the ground, if there is no basement.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

**2. Property Not Covered**

g. is deleted.

**B. Retaining Walls**

**1. Covered Property** is amended to include the following:

Retaining walls that are not part of a building.

The most we will pay for loss or damage under this enhancement is $10,000 per location.

**2. Property Not Covered**

l. is deleted.

**C. Business Personal Property**

**1. b. Covered Property** the first paragraph is amended to:

**Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 1600 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the YOUR BUSINESS PERSONAL PROPERTY – SEPARATION OF COVERAGE form.

**IV.** The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, 4. Additional Coverages** is amended as follows:

**c. Fire Department Service Charge**

The Limit of Insurance for this Additional Coverage is increased to $50,000.

**d. Pollutant Clean Up and Removal**

The Limit of Insurance for this Additional Coverage is increased to $50,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**V.** The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, 4. Additional Coverages,** the following are added:

**A. Emergency Vacating Expense**

1. The coverage provided by this policy is extended to apply to the reasonable expenses that you incur in the "emergency" vacating of the premises of your facility described in the Declarations, provided that vacating is necessary due to an "emergency" situation resulting from a Covered Cause of Loss.

2. "Emergency" will mean imminent danger arising from an external event or a condition in the facility which would cause loss of life or harm to occupants.

3. We will not pay for any expenses under this Extension arising out of:

a. A strike, bomb threat or false fire alarm, unless vacating is ordered by a civil authority;

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

    **b.** A planned vacating drill; or

    **c.** The vacating of one or more patients or residents that is due solely to their individual medical condition.

**4.** The most we will pay for Emergency Vacating Expenses in any one occurrence under this Extension is $25,000. The deductible for Emergency Vacating Expenses is $250 per occurrence.

No other exclusions in your policy apply to this Extension. However, specific exclusionary endorsements attached to the policy supersede coverage provisions contained in this coverage enhancement.

**B. Lease Cancellation Moving Expenses**

The Company will reimburse the Insured any moving expenses necessitated by the Insured's need to relocate due to the cancellation of the lease at the insured's premises listed on the Declarations page during the policy period, provided that the lease cancellation occurs as a result of a Covered Cause of Loss. The limit for this coverage will be $5,000 per policy period for all Insureds combined. No deductible applies to this coverage.

**C. Joint or Disputed Loss Agreement**

**1.** This coverage is intended to facilitate payment of insurance proceeds when:

    **a.** Both a boiler and machinery policy and this commercial property policy are in effect;

    **b.** Damage occurs to Covered Property that is insured by the boiler and machinery policy and this commercial property policy; and

    **c.** There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

**2.** This coverage does not apply if:

    **a.** Both the boiler and machinery insurer(s) and we do not admit to any liability; and

    **b.** Neither the boiler and machinery insurer(s) nor we contend that coverage applies under the other insurer's policy.

**3.** The provisions of this coverage apply only if all of the following requirements are met:

    **a.** The boiler and machinery policy carried by the named insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this endorsement;

    **b.** The damage to the Covered Property was caused by a loss for which:

        **(1)** Both the boiler and machinery insurer(s) and we admit to some liability for payment under the respective policies; or

        **(2)** Either:

PI-EPE-TS IL (12/10)

(a) The boiler and machinery insurer(s) does not admit to any liability for payment, while we contend that:

    (i) All liability exists under the boiler and machinery policy; or

    (ii) Some liability exists under both the boiler and machinery policy and this commercial property policy;

(b) We do not admit to any liability for payment, while the boiler and machinery insurer(s) contends that:

    (i) All liability exists under this commercial property policy; or

    (ii) Some liability exists under both the boiler and machinery policy and this commercial property policy; or

(c) Both the boiler and machinery insurer(s) and we:

    (i) Do not admit to any liability for payment; and

    (ii) Contend that some or all liability exists under the other insurer's policy; and

c. The total amount of the loss is agreed to by you, the boiler and machinery insurer(s) and us.

4. If the requirements listed in Paragraph **3.** above are satisfied, we and the boiler and machinery insurer(s) will make payments to the extent, and in the manner, described as follows:

a. We will pay, after your written request, the entire amount of loss that we have agreed as being covered, if any, by this commercial property policy and one-half (1/2) the amount of the loss that is in disagreement.

b. The boiler and machinery insurer(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered, if any, by the boiler and machinery policy and one-half (1/2) the amount of loss that is in disagreement.

c. Payments by the insurers of the amounts that are in disagreement, as described in Paragraphs **a.** and **b.** above, do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable.

d. The amount in disagreement to be paid by us under this endorsement shall not exceed the amount payable under the equivalent Loss Agreement(s) of the boiler and machinery policy.

e. The amount to be paid under this endorsement shall not exceed the amount we would have paid had no boiler and machinery policy been in effect at the time of loss. In no event will we pay more than the applicable Limit of Insurance shown in the Declarations.

f. Acceptance by you of sums paid under this endorsement does not alter, waive or surrender any other rights against us.

5. Arbitration

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

a. If the circumstances described in Paragraph **3.b.(1)** exist and the boiler and machinery insurer(s) and we agree to submit our differences to arbitration, the boiler and machinery insurer(s) and we will determine the amount each will pay and will pay the insured within 90 days. Arbitration will then take place within 90 days after payment of the loss under the terms of this endorsement.

b. If any of the circumstances described in Paragraph **3.b.(2)** exist, then the boiler and machinery insurer(s) and we agree to submit our differences to arbitration within 90 days after payment of the loss under the terms of this endorsement.

c. You agree to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by us, and another will be appointed by the boiler and machinery insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

**D. Green Consultant Expense Coverage**

In the event of a total loss to a covered building due to a covered cause of loss, and the building has been replaced and rebuilt as a LEED® (Leadership in Energy and Environmental Design) Certified Green Building, the company will reimburse the Insured up to $5,000 for the service of a consultant for the design of the structure.

Prior to payment, construction of the replaced building must be completed and have a minimum of Silver Rating Level LEED® Green Building certification.

**VI.** The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, 5. Coverage Extensions** is amended as follows:

**A. Newly Acquired or Constructed Property**

**(3) Period Of Coverage** is deleted in its entirety and replaced with the following:

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 180 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**B. Valuable Papers And Records (Other Than Electronic Data)**

1. You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist.

2. Under this Extension, the most we will pay to replace or restore the lost information is $100,000 at each described premises, unless a higher limit is shown in the Declarations.

PI-EPE-TS IL (12/10)

Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**C. Property Off-Premises, Including Stock**

1. You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

   a. Temporarily at a location you do not own, lease or operate;

   b. In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

   c. At any fair, trade show or exhibition.

2. This Extension does not apply to property:

   a. In or on a vehicle; or

   b. In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

3. The most we will pay for loss or damage under this Extension is $500,000. The most we will pay for loss or damage under this extension is $100,000 for losses occurring at a convention, fair, exhibition, or special event

**D. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to the following property if located within 1600 feet of the premises described in the Declarations: your outdoor fences and netting, outdoor lighting, outdoor pools, court surfaces, radio and television antennas (including satellite dishes), trees, shrubs, plants, lawns, and playground equipment, including the cost of debris removal, caused by or resulting from any of the following Causes of Loss:

1. Fire;

2. Lightning;

3. Explosion;

4. Riot or civil commotion;

5. Aircraft or vehicles;

6. Vandalism and malicious mischief; or

7. Theft.

The most we will pay for loss or damage under this Extension is $50,000. The most we will pay for any one tree, shrub, plant or acre of lawn, including the cost of debris removal, is $1,000.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-EPE-TS IL (12/10)

Signs will be covered for all perils with no limitation.

VII. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, 5. Coverage Extensions** are amended to include the following:

A. **Garages/Storage Sheds**

Coverage for your building is extended to apply to any garages or storage sheds located at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss. Coverage for all garages or storage sheds is subject to a $5,000 Limit of Insurance per location.

B. **Accounts Receivable**

1. Coverage for Your Business Personal Property is extended to apply to your records of accounts receivable:

   a. At a described premises or in or on a vehicle in transit between described premises; or

   b. If the records must be removed from a described premises to protect them from the threat of a Covered Cause of Loss. We will pay for a loss while they are:

      (1) At a safe place away from your described premises; or

      (2) Being taken to and returned from that place.

2. Coverage for Your Business Personal Property is extended to apply to the amounts due from your customers that you are unable to collect due to a Covered Cause of Loss, including:

   a. Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

   b. Collection expenses in excess of your normal collection expenses that are made necessary by the loss; and

   c. Other reasonable expenses that you incur to reestablish your records of accounts receivable that result from direct physical loss or damage by any Covered Causes of Loss to your records of accounts receivable, including credit or charge card slips.

3. Accounts receivable loss payment will be determined as follows:

   a. Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss occurs; and

      The total above will be adjusted for any normal fluctuations in the amount of accounts receivable for the month in which the loss occurred or for any demonstrated variance from the average for that month.

   b. The following will be deducted from the total amount of accounts receivable:

      (1) The amount of the accounts for which there is no loss;

      (2) The amount of the accounts that you are able to reestablish or collect; and

      (3) An amount to allow for probable bad debts that your are normally unable to collect;

Page 8 of 22
© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

  **c.** You will pay us the amount of all recoveries you receive for a loss paid by us. But any recoveries in excess of the amount we have paid belong to you.

 **4.** Additional Exclusions

  **a.** We will not pay for a loss caused by or resulting from any of the following:

   **(1)** Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

   This exclusion applies only to the extent of the wrongful giving, taking or withholding.

   **(2)** Bookkeeping, accounting or billing errors or omissions.

  **b.** We will not pay for loss that requires any audit of records or any inventory computation to prove its factual existence.

The most we will pay under this Coverage Extension is $100,000.

**C. Business Income and Extra Expense**

 **1.** Coverage is extended to include the actual loss of Business Income you sustain, and necessary Extra Expense you incur when your covered building or business personal property listed in the Declarations is damaged by a Covered Cause of Loss.

 We pay any Extra Expense you incur:

  **a.** To continue your normal operations at the described premises;

  **b.** To continue your normal operations at replacement premises or temporary locations; including:

   **(1)** Relocation expenses; and

   **(2)** Costs to equip or operate the replacement or temporary locations; or

  **c.** To minimize the suspension of your normal operations if you cannot continue them.

 **2. Civil Authority**

 We will pay for the actual loss of Business Income you sustain, and necessary Extra Expense you incur that is caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to 4 consecutive weeks after coverage begins. The coverage for Extra Expense will begin immediately after the time of that action and will end:

  **a.** 4 consecutive weeks after the time of that action; or

  **b.** When your Business Income coverage ends; whichever comes first.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

**3. Contingent Business Property**

We will pay for the actual loss of Business Income you sustain, and necessary Extra Expense you incur when Contingent Business Property is damaged by a Covered Cause of Loss. We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume operations, in whole or in part, by using any other available:

**a.** Source of materials; or

**b.** Outlet for your products.

**4. Utility Service Interruption**

**a.** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur at the premises described in the Declarations, caused by an interruption in utility service to such premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss to the Utility Services property described below, not on a premises described in the Declarations.

**b.** Utility Services

**(1)** Water supply services means the following types of property supplying water to the described premises:

**(a)** Pumping stations; and

**(b)** Water mains.

**(2)** Communication supply services means property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**(a)** Communication transmission lines, including optic fiber transmission lines;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays except satellites.

Communication supply services does not include overhead transmission, distribution, or communication lines.

**(3)** Power supply services means the following types of property supplying electricity, steam, or gas to the described premises:

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

**(e)** Transmission lines.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

Power supply services does not include overhead transmission, distribution, or power lines.

   **c.** We will only pay for loss you sustain after the first 12 hours following loss of service caused by the direct physical loss or damage to the utility services property described above.

**5. Limit of Insurance**

The most we will pay under this section for coverage under **C.1., 2., 3.,** and **4.** is $300,000 for any one premises during any one year policy period. No coinsurance shall apply to this coverage.

**6. Definitions**

For the purpose of this extension, the following definitions apply:

   **a.** Business Income means Net Income (net profit or loss before income taxes) that would have been earned or incurred during the period of restoration and continuing normal operating expenses including payroll.

   **b.** Extra Expense means necessary expenses you incur during the period of restoration that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

   **c.** Contingent Business Property means property operated by others on whom you depend to:

      **(1)** Deliver materials or services to you or to others for your account (Contributing Locations);

      **(2)** Accept your products or services (Recipient Locations);

      **(3)** Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or

      **(4)** Attract customers to your business (Leader Locations).

   **d.** Period of Restoration means the period of time that:

      **(1)** Begins with the date of physical loss or damage caused by or resulting from any Covered Cause of Loss; and

      **(2)** Ends on the date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

Period of restoration does not include any increased period required due to the enforcement of any ordinance or law that:

      **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

      **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

The expiration date of this policy will not cut short the period of restoration.

**D. Fire Extinguisher Recharge**

Coverage is extended to cover expenses you incur to recharge portable fire extinguishers, dry chemical, carbon dioxide, or liquid automatic fire extinguishing systems and the cost of resetting automatic fuel shut-off connections, if any of the above are discharged to fight a fire or are discharged due to a mechanical malfunction.

The most we will pay for loss or damage under this extension is $25,000.

No deductible shall apply to this coverage.

**E. Lock Replacement**

Coverage is extended to cover necessary expense to repair or replace exterior or interior door locks of a covered building:

1.  If your door keys are stolen in a covered theft loss; or

2.  When your property is damaged and your door keys are stolen by the burglars.

The most we will pay under this extension is $10,000 for any one occurrence.

No deductible shall apply to this coverage.

**F. Reward Reimbursement**

Coverage is extended to provide a reward for information that leads to a criminal conviction in connection with loss or damage to Covered Property by a Covered Cause of Loss; provided that the reward is pre-approved by the Company. The most we will pay for loss or damage under this extension is $50,000 regardless of the number of persons involved providing information.

No deductible shall apply to this coverage.

**G. Inventory and Appraisals**

Coverage is extended to cover your expenses, excluding those for public adjusters and appraisers, to record information, compile inventories, or obtain appraisals we require to comply with the loss conditions of this coverage form.

The most we will pay for loss or damage under this extension is $50,000 for any one loss to Covered Property caused by a Covered Cause of Loss.

No deductible shall apply to this coverage.

**H. Ordinance or Law**

Under this Additional Coverage, we will not pay any costs due to an ordinance or law that you were required to comply with before the loss, even when the building was damaged, and with which you failed to comply.

1.  Coverage A – Coverage For Loss to the Undamaged Portion of the Building

PI-EPE-TS IL (12/10)

If a Covered Cause of Loss occurs to covered Building property shown in the Declarations, we will pay for loss of value to the undamaged portion of the building caused by enforcement of any ordinance or law that:

a. Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

b. Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

c. Is in force at the time of loss.

Coverage A is included within the Limit of Insurance applicable to the covered Building property shown in the Declarations. This is not additional insurance.

2. Coverage B – Demolition Cost Coverage

If a Covered Cause of Loss occurs to covered Building property, we will pay the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law.

The Limit of Insurance for Demolition Cost Coverage is $500,000 (in addition to the Building Limit).

3. Coverage C – Increased Cost of Construction Coverage

If a Covered Cause of Loss occurs to covered Building property, we will pay for the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law.

The Limit of Insurance for Increased Cost of Construction is $500,000 (in addition to the Building Limit).

4. Under Coverage A – Coverage for Loss to the Undamaged Portion of the Building:

a. If the Replacement Cost coverage option applies and the property is repaired or replaced, on the same or another premises, we will not pay more for loss of value to Covered Property, including loss caused by enforcement of an ordinance or law, than the lesser of:

(1) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

(2) The Limit of Insurance applicable to the covered Building property.

b. If the Replacement Cost coverage option applies and the property is not repaired or replaced, or if the Replacement Cost coverage option does not apply, we will not pay more for the loss of value to Covered Property, including loss caused by enforcement of an ordinance or law, than the lesser of:

(1) The actual cash value of the building at the time of loss; or

PI-EPE-TS IL (12/10)

(2) The Limit of Insurance applicable to the covered Building property.

5. We will not pay more under Coverage B – Demolition Cost Coverage than the lesser of the following:

    a. The amount you actually spend to demolish and clear the site of the described premises; or

    b. The applicable Demolition Cost Limit of Insurance shown in **2.** above.

6. We will not pay Under Coverage C – Increased Cost of Construction Coverage:

    a. Until the property is actually repaired or replaced, at the same or another premises; and

    b. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    c. If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage C is the lesser of:

        (1) The increased cost of construction at the same premises; or

        (2) The applicable Increased Cost of Construction Limit of Insurance shown in **3.** above.

    d. If the ordinance or law requires relocation to another premises, the most we will pay under Coverage C is the lesser of:

        (1) The increased cost of construction at the new premises (not to exceed the increased cost of construction at the same premises); or

        (2) The applicable Increased Cost of Construction Limit of Insurance shown in **3.** above.

7. We will not pay for:

    a. The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria; or

    b. Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants," "fungus," wet or dry rot or bacteria.

8. The terms of this endorsement apply separately to each building to which this endorsement applies.

**I. Spoilage**

1. We will pay for direct physical loss or damage to your perishable Business Personal

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

Property, and perishable personal property of your residents or clients while at or within 1600 feet of the described premises caused by spoilage due to changes in temperature or humidity resulting from:

a. Complete or partial interruption of electrical power to the described premises due to conditions beyond your control; or

b. Mechanical breakdown or failure of heating, cooling or humidity control equipment or apparatus at the described premises.

2. Coverage does not apply to:

a. The disconnection of any heating, cooling or humidity control equipment or apparatus from the source of power;

b. The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current; or

c. The inability of an Electric Utility Company or other power source to provide sufficient power due to:

(1) Lack of fuel; or

(2) Governmental order;

d. The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand; or

e. Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

The most we will pay for loss or damage in any one occurrence is $50,000.

J. **Pair, Sets or Parts**

1. Pair or Set:

In case of loss to any part of a pair or set we may:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between the value of the pair or set before and after the loss.

2. Parts:

In case of a loss to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

K. **Fine Arts**

1. Coverage applies to "fine arts." Covered Causes of Loss are extended to include risks of direct physical loss or damage except:

a. Any repairing, restoration or retouching process.

PI-EPE-TS IL (12/10)

    b. Breakage of fragile "fine arts" articles, including art glass windows, statuary, marbles, glassware, bric-a-brac, porcelains and similar fragile articles, unless caused by:

        (1) The "specified causes of loss";

        (2) Building glass breakage;

        (3) Earthquake; or

        (4) Flood.

    c. Dishonest or criminal acts by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose (other than a bailee for hire or carrier):

        (1) Acting alone or in collusion with others; or

        (2) Whether or not occurring during the hours of employment.

    This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

    d. Voluntary parting with any property by you or anyone else to whom you have entrusted the property, if induced to do so by any fraudulent scheme, trick, device or false pretense.

    e. Any of the following:

        (1) Wear and tear;

        (2) "Fungus" (except when "fungus" results from fire or lightning), rust, corrosion, decay, deterioration, hidden or latent defect or any quality in the property that causes it to damage or destroy itself;

        (3) Nesting or infestation, or discharge or release of waste products or secretions by insects or rodents; or

        (4) Dampness or dryness of atmosphere or changes in or extremes in temperature.

2. The most we will pay in any one occurrence for loss or damage to "fine arts" caused by or resulting from any Covered Cause of Loss is:

    a. The value of the lost or damaged "fine arts"; or

    b. $50,000; whichever is less.

3. The following, when used in this section, means:

    a. "Antique" means an object at least 100 years old.

    b. "Fine arts" means paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, "antique" furniture, "antique" jewelry, bric-a-brac, porcelains and similar property of rarity, historical value or artistic merit.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

**L. EDP Equipment and Media**

  **1. Coverage**

    **a.** Covered Property, as used in this Coverage Form means Electronic Data Processing devices operated by you at the premises listed on the Declarations. The Covered Property must be either your property or property belonging to others, which is in your care and used by you in your business or profession.

    **b.** Covered Property, as used in this section of this enhancement, means "data" and "media" owned proprietarily by you. The Covered Property must be either your property or property belonging to others, which is in your care and used by you in your business or profession.

      **(1)** "Data" means information stored electronically and includes facts, instructions, concepts and programs converted to a form useable in electronic data processing operations.

      **(2)** "Media" means devices which store information which is accessible to computers.

    **c.** Property Not Covered:

      **(1)** Accounts, records, documents and other valuable papers, except as they may be converted to "data" and stored on "media", and then only in that converted form;

      **(2)** Property of yours that you have rented, leased or loaned to someone else; or

      **(3)** Electronic alarm systems.

    **d.** Coverage Extensions

      **(1)** Provided you store duplicate "data" at a separate premises and provided such "data" is not insured elsewhere under this or any other insurance policy, we will cover that "data" at each such storage location.

      **(2)** We will also pay for loss to Covered Property while temporarily located away from your premises and while in transit within:

        **(a)** The United States of America;

        **(b)** Puerto Rico; and

        **(c)** Canada.

      The most we will pay under this Coverage Extension is $2,500 for any single occurrence.

      **(3)** We will continue to cover your Covered Property while being transferred to and while at a temporary safe storage location, whenever utilized to avoid imminent loss. You are required, however, to provide us with written notice within 10 days following such move.

      **(4)** We will also pay for expenses you incur for the removal of debris provided:

        **(a)** The debris is Covered Property;

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

      **(b)** The Cause of Loss is not excluded by any part of this policy; and

      **(c)** The debris is located at a location scheduled in this policy.

      The most we will pay under this Coverage Extension is $10,000 in any one loss, but not to exceed a total of $10,000 under this EDP coverage enhancement section.

  **(5)** We will also pay 80% of the actual rental cost for replacement electronic equipment, beginning forty-eight (48) hours after a covered loss has occurred to Covered Property under the EDP coverage listed in the preceding paragraphs, provided such equipment will assist in continuing operations at no less than 80% of normal capacity.

      This Coverage Extension will end when the covered loss has been settled or when the amount of coverage provided under this Coverage Part is exhausted, whichever occurs first.

      The most we will pay under the terms of this Coverage Extension is $2,500 in any one loss.

  **(6)** We will also pay you for the expense you incur in recharging or refilling fire protection devices which are designed specifically to protect the Covered Property under this EDP coverage section, when these devices have been used in protecting such property from a covered loss.

      The most we will pay under the terms of this Coverage Extension is $2,500 in any one loss.

**e.** Covered Causes of Loss

Covered Causes of Loss means risk of direct physical loss to Covered Property except those Causes of Loss listed in the Exclusions.

**2. Exclusions**

We will not pay for a loss caused directly or indirectly by any of Items **a.** through **i.** listed below. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a.** Governmental Action

Seizure or destruction of property by order of governmental authority. This exclusion will not apply to acts or destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire falls within a Covered Cause of Loss under the terms of this policy.

**b.** Nuclear Hazard

  **(1)** Any weapon employing atomic fission or fusion; or

  **(2)** Nuclear reaction or radiation, or radioactive contamination from any other cause.

      But we will pay for direct loss caused by resulting fire if the fire would be covered under

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

the terms of this policy.

**c.** War and Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by military forces, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**d.** Delay, loss of market, loss of income, loss of use or any other cause of consequential loss.

**e.** Wear and tear, any quality in the Covered Property that causes it to damage or destroy itself, gradual deterioration, depreciation or damage done by insects, vermin or rodents. We will pay for direct loss caused by resulting fire or explosion if the fire or explosion would be covered under the terms of this Coverage Part.

**f.** Dishonest acts committed by you, anyone else with an interest in the Covered Property, or your or their employees, whether or not such an act occurs during the hours of employment; nor will we pay for a loss caused by dishonest acts by anyone entrusted with the Covered Property, except a common carrier for hire.

**g.** Dryness, dampness, changes in temperature, corrosion or rust. But, if the air conditioning system that services the Covered Property is damaged by a Covered Cause of Loss we will pay for any direct resulting damage to Covered Property.

**h.** Breakage of tubes, bulbs, lamps or articles made of glass. But we will pay for such loss caused directly by fire, lightning, explosion, windstorm, earthquake, flood, vandalism, aircraft, rioters, strikers, theft or attempted theft, or by accident to vehicles carrying the Covered Property.

**i.** Processing or work performed upon the Covered Property. But we will pay for direct loss caused by resulting fire or explosion if the fire or explosion would be covered under this Coverage Form.

**3. Limits, Deductibles, Valuation**

**a.** Limit of Insurance

The most we will pay for any loss under the EDP section is $10,000.

**b.** Deductible

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the contents Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

**c.** Valuation

The value of the Covered Property will be determined as of the time and place of

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

loss using the actual replacement cost of property similar to the Covered Property. In no event will our liability above exceed the cost to repair or replace the property with similar property of equal value.

**VIII.** The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM,** Section **E. Loss Conditions** is amended as follows:

**6. b. Vacancy Provisions** the first paragraph is amended to:

If the building where loss or damage occurs has been vacant for more than 90 consecutive days before that loss or damage occurs:

**IX.** **CAUSES OF LOSS – SPECIAL FORM,** Section **B. Exclusions,** is amended as follows

**1. b. Earth Movement** is amended to include:

**(6)** If Earth Movement described in **b.(1)** through **(5)** above, results in sprinkler leakage, we will pay up to $30,000 for loss or damage by that sprinkler leakage.

**2. d. (7)** is amended to:

The following cause of loss to personal property:

Marring or scratching.

**X.** **CAUSES OF LOSS – SPECIAL FORM,** Section **C. Limitations** is amended as follows:

**3.a.** is amended to:

$10,000 for furs, fur garments and garments trimmed with fur.

**3.b.** is amended to:

$25,000 for trophies, medals, jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**XI.** **CAUSES OF LOSS – SPECIAL FORM, Additional Coverage – Water** is added:

"Water" is included as a Covered Cause of Loss. We will not pay more than $30,000 in any one occurrence.

**a.** "Water" means:

**(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows from a sewer, drain or sump; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-EPE-TS IL (12/10)

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

This extension applies to all claim expenses including, but not limited to building, business personal property, personal property of others, business income and extra expense and debris removal. However, this extension does not apply to roof drainage systems, gutters, or downspouts.

XII. CAUSES OF LOSS – SPECIAL FORM, Section **F. Additional Coverage Extensions** is amended as follows:

1. **Property in Transit, c.** is amended to

    (1) The most we will pay for loss or damage under this extension is $100,000.

    (2) For your Covered Property while in the care, custody or control of a common carrier an additional limit of insurance of $10,000 is added.

XIII. CAUSES OF LOSS – SPECIAL FORM, Section **F. Additional Coverage Extensions** is amended to include:

**Off-Premises Power Failure**

We will pay for loss of or damage to Covered Property, caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to "water supply services," "communication supply services," or "power supply services," not on the described premises.

a. "Water supply services" means the following types of property supplying water to the described premises:

    (1) Pumping stations; and

    (2) Water mains.

b. "Communication supply services" means property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

    (1) Communication transmission lines including optic fiber transmission lines;

    (2) Coaxial cables; and

    (3) Microwave radio relays except satellites.

    "Communication supply services" does not include overhead communication lines.

c. "Power supply services" means the following types of property supplying electricity, steam, or gas to the described premises:

    (1) Utility generating plants;

    (2) Switching stations;

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

(3) Substations;

(4) Transformers; and

(5) Transmission lines.

"Power supply services" does not include overhead transmission lines.

This coverage extension does not apply to loss of Business Income or Extra Expense. The most we will pay for loss or damage under this extension is $50,000.

XIV. **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM,** Section **A. Coverage, 5. Additional Coverages** is amended as follows:

**c. Extended Business Income (1)**(b)(ii) is amended to the following:

(ii) 180 consecutive days after the date determined in (1)(a) above.

**c. Extended Business Income (2)**(b)(ii) is amended to the following:

(ii) 180 consecutive days after the date determined in (2)(a) above.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-NP-007 (04-01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LOSS OF INCOME DUE TO WORKPLACE VIOLENCE

This endorsement modifies and is subject to the insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

The following is added to **Section A. Coverage, 3. Additional Coverages:**

e.  **Workplace Violence**

(1)  **Coverage:**

Loss of Business Income:

We will pay for the actual loss of Business Income you sustain due to the suspension of your "operations" caused by any intentional use, or threat to use, deadly force by any person.

The most we will pay under this coverage is $100,000.

Extra Expense:

Coverage is extended to include the cost of public relations consultants or other specialists to restore the insured's reputation following an incident of workplace violence. Additionally, coverage includes mental health counseling for employees.

The most we will pay under this coverage is $5,000.

(2)  **Loss Determination:**

Determination of the Business Income loss under this additional coverage will be calculated only for the location where the workplace violence occurred. Coverage will only be for the "period of restoration".

Extra expense will apply even though operations have resumed. However, they will not apply after 60 days following the incident.

All other terms and conditions remain the same.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012   CG 00 01 04 13

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

CG 00 01 04 13      © Insurance Services Office, Inc., 2012      **Page 3 of 16**

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

    © Insurance Services Office, Inc., 2012    CG 00 01 04 13

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

    © Insurance Services Office, Inc., 2012    CG 00 01 04 13

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   © Insurance Services Office, Inc., 2012   CG 00 01 04 13

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

(2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

CG 00 01 04 13 &copy; Insurance Services Office, Inc., 2012 Page 13 of 16

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

    © Insurance Services Office, Inc., 2012    CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

**CG 00 01 04 13**      © Insurance Services Office, Inc., 2012      **Page 15 of 16**

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

COMMERCIAL GENERAL LIABILITY
CG 02 00 01 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing to us advance written notice of cancellation.

2. We may cancel this Policy by mailing to you, at your last mailing address known to us, written notice stating the reason for cancellation. Proof of mailing will be sufficient proof of notice. If we cancel:

   a. For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   b. For a reason other than nonpayment of premium, we will mail the notice at least:

      (1) 30 days prior to the effective date of cancellation if the Policy has been in effect for 60 days or less.

      (2) 60 days prior to the effective date of cancellation if the Policy has been in effect for more than 60 days.

3. If this Policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The Policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the Policy;

   d. The risk originally accepted has measurably increased;

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director of Insurance that the continuation of the Policy could place us in violation of the insurance laws of this State.

4. Notification of cancellation will also be sent to your broker, if known, or agent of record, if known.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

If we decide not to renew or continue this Policy, we will mail you written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. Proof of mailing will be sufficient proof of notice. Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

POLICY NUMBER: PHPK2321444

COMMERCIAL GENERAL LIABILITY
CG 20 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| Any person or organization where required by a written contract executed prior to the occurrence of a loss. Such person or organization is an additional Insured for "bodily injury", "property damage" or "personal and advertising injury" but only for liability arising out of the negligence of the Named Insured. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 26 04 13 © Insurance Services Office, Inc., 2012 Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section I – **Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section I – **Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

CG 21 47 12 07      © ISO Properties, Inc., 2006      **Page 1 of 1**    □

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

CG 21 67 12 04  © ISO Properties, Inc., 2003  Page 1 of 1  □

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

CG 21 70 01 15               © Insurance Services Office, Inc., 2015               Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 24 02 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BINDING ARBITRATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration.

When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county or parish in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

CG 24 02 12 04 © ISO Properties, Inc., 2003 Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

POLICY NUMBER: PHPK2321444

COMMERCIAL GENERAL LIABILITY
CG 24 04 05 09

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Person Or Organization: |
| --- |
| Any person or organization who you are required to add by written contract which is executed prior to the occurrence of a loss to waive your rights of recovery, except for a loss resulting from the sole negligence from that person or organization. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 05 09 © Insurance Services Office, Inc., 2008 Page 1 of 1

PI-GL-001(8/94)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - LEAD LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) and paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

1.  "Bodily injury," "property damage," or "personal and advertising injury" arising out of or caused by the actual or alleged:

    a.  Exposure to or existence of lead, paint containing lead, or any other material or substance containing lead;

    b.  Manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material or substance containing lead;

    Whether or not the lead is or was at any time airborne as a particulate, contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever.

2.  Any legal obligation of any insured for indemnification or contribution due to damages arising out of "bodily injury," "property damage" or "personal and advertising injury" caused by lead, paint containing lead, or any other substance or material containing lead.

3.  Any loss, cost, expense or damages, whether direct or consequential, arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to, or assess the effects of lead; or

    (b) Claim or suit related to, testing for, monitoring, cleaning up, removing, abating, containing, treating or neutralizing lead, paint containing lead, or any other substance or material containing lead or in any way responding to or assessing the effects of lead.

Page 1 of 1

PI-GL-002 (8/94)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - ASBESTOS LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) and paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

"Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of:

1. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

2. The use of asbestos in constructing or manufacturing any good, product or structure;

3. The removal of asbestos from any good, product or structure; or

4. The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss or "suit," injury or damage or any cost, fine or penalty or for any expense or claim or "suit" related to any of the above.

Page 1 of 1

PI-GL-037 IL (04/20)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COMMUNICABLE DISEASE EXCLUSION – ILLINOIS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. The following exclusion is added to **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **2. Exclusions:**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

1. Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

2. Testing for a communicable disease;

3. Failure to prevent the presence of the disease; or

4. Failure to report the disease to authorities.

B. The following exclusion is added to **SECTION I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **2. Exclusions:**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

1. Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

2. Testing for a communicable disease;

3. Failure to prevent the presence of the disease; or

4. Failure to report the disease to authorities.

C. For the purposes of this endorsement, communicable disease means any infectious or contagious disease, illness or condition that can be transmitted from:

PI-GL-037 IL (04/20)

Includes copyrighted material of Insurance Services Office, Inc., with permission

PI-GL-037 IL (04/20)

1. Person to person;

2. Animal (including insect) to person; or

3. Animal to animal (including insect),

Directly or indirectly, by direct contact or indirectly by means of vector or fomites, including but not limited to the following and any variant(s) thereof:

   a. Acquired Immune Deficiency Syndrome (AIDS) or Human Immunodeficiency Virus (HIV);

   b. Human T-Cell Lymphotrophic Virus (HTVL) of any form or type;

   c. Any hepatitis virus;

   d. Severe Acute Respiratory Syndrome (SARS);

   e. Herpes virus, any venereal disease or sexually transmitted illness or condition;

   f. Zika virus;

   g. Norovirus;

   h. Coronavirus;

   i. Any of the Ebola virus species; or

   j. Creutzfeldt-Jakob disease or New Variant Creutzfeldt-Jakob disease.

PI-GL-037 IL (04/20)
Includes copyrighted material of Insurance Services Office, Inc., with permission

PI-GLD-TS (11/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## GENERAL LIABILITY DELUXE ENDORSEMENT: TEMPORARY STAFFING

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

It is understood and agreed that the following extensions only apply in the event that no other specific coverage for the indicated loss exposure is provided under this policy. If such specific coverage applies, the terms, conditions and limits of that coverage are the sole and exclusive coverage applicable under this policy, unless otherwise noted on this endorsement. The following is a summary of the Limits of Insurance and additional coverage provided by this endorsement. For complete details on specific coverages, consult the policy contract wording.

| Coverage Applicable | Limit of Insurance | Page # |
|---|---|---|
| Damage to Premises Rented to You | $1,000,000 | 2 |
| Expected or Intended Injury – Property Damage | Included | 2 |
| Limited Rental Lease Agreement Contractual Liability | $50,000 | 2 |
| Non-Owned Watercraft | Less than 58 feet | 3 |
| Damage to Property You Own, Rent or Occupy | $30,000 | 3 |
| Medical Payments | $20,000 | 3 |
| Medical Payments Reporting Period | 3 Years | 3 |
| Athletic Activities | Amended | 3 |
| Supplementary Payments – Bail Bonds | $2,500 | 4 |
| Supplementary Payments – Loss of Earnings | $500 per day | 4 |
| Employee Indemnification Defense Coverage | $25,000 | 4 |
| Who Is An Insured<br>  Additional Insured – Newly Acquired or Formed Organization<br>  Additional Insured – Broadened Named Insured<br>  Additional Insured – Blanket Additional Insureds When Required by Contract | Included | 4 |
| Duties in the Event of Occurrence, Offense, Claim or Suit | Included | 4 |
| Transfer of Rights of Recovery Against Others To Us | Clarification | 5 |
| Liberalization | Included | 5 |
| Unintentional Failure to Disclose Hazards | Included | 5 |
| Bodily Injury – Includes Mental Anguish | Included | 5 |
| Personal and Advertising Injury – Includes Abuse of Process, Discrimination | Included | 6 |
| Other Insurance – Primary Clarification | Clarification | 6 |

PI-GLD-TS (11/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-GLD-TS (11/15)

| Staffing Services Exclusions | Clarification | 7 |
|------------------------------|---------------|---|
| Staffing Services Definitions | Clarification | 8 |

**A. Damage to Premises Rented to You**

If damage by fire to premises rented to you is not otherwise excluded from this Coverage Part:

1. The Damage To Premises Rented To You Limit section of the Declarations is amended to the greater of:

   a. $1,000,000; or

   b. The amount shown in the Declarations as the Damage to Premises Rented to You Limit.

   This is the most we will pay for all damage proximately caused by the same event, whether such damage results from fire, lightning, explosion, smoke, or leaks from automatic fire protective systems or any combination thereof;

2. The word fire is changed to fire, lightning, explosion, smoke, or leakage from automatic fire protective systems where it appears in:

   a. The last paragraph of **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Subsection **2. Exclusions**;

   b. **SECTION III – LIMITS OF INSURANCE**, Paragraph **6.**; and

   c. **SECTION V – DEFINITIONS**, Paragraph **9.a.**; and

3. The words fire insurance are changed to insurance for fire, lightning, explosion, smoke, or leakage from automatic fire protective systems where it appears in **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Subsection **4. Other Insurance**, Paragraph **b. Excess Insurance**.

**B. Expected or Intended Injury – Property Damage**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, Paragraph **a. Expected Or Intended Injury** is deleted in its entirety and replaced by the following:

   a. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**C. Limited Rental Lease Agreement Contractual Liability**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, Paragraph **b. Contractual Liability** is amended by adding the following:

Based on the named insured's request at the time of claim, we agree to indemnify the named insured for their liability assumed in a contract or agreement regarding the rental or lease of a premises on behalf of their client, up to $50,000.

PI-GLD-TS (11/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-GLD-TS (11/15)

This coverage extension only applies to rental lease agreements and is excess over any renter's liability insurance of the client.

**D. Non-Owned Watercraft**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto Or Watercraft,** Paragraph (2) is amended to read as follows:

(2) A watercraft you do not own that is:

(a) Less than 58 feet long; and

(b) Not being used to carry persons or property for a charge;

This provision applies to any person, who with your consent, either uses or is responsible for the use of a watercraft. This insurance is excess over any other valid and collectible insurance available to the insured whether primary, excess or contingent.

**E. Damage to Property You Own, Rent or Occupy**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, j. Damage To Property,** Paragraph (1) is deleted in its entirety and replaced with the following:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property, unless the damage to property is caused by your client, up to a $30,000 limit. A client is defined as a person under your direct care and supervision.

**F. Medical Payments**

1. If **COVERAGE C MEDICAL PAYMENTS** is not otherwise excluded from this Coverage Part the Medical Expense Limit is changed subject to all of the terms of **SECTION III – LIMITS OF INSURANCE** to the greater of:

a. $20,000; or

b. The Medical Expense Limit shown in the Declarations of this Coverage Part.

2. Under **SECTION I – COVERAGES, COVERAGE C MEDICAL PAYMENTS,** Subsection **1. Insuring Agreement,** Paragraph **a.,** Item **(b)** is amended to read:

(b) The expenses are incurred and reported to us within three years of the date of the accident; and

**G. Athletic Activities**

**SECTION I – COVERAGES, COVERAGE C MEDICAL PAYMENTS, 2. Exclusions,** Paragraph **e. Athletics Activities** is deleted in its entirety and replaced with the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-GLD-TS (11/15)

**e. Athletics Activities**

To a person injured while taking part in athletics.

**H. Supplementary Payments**

**SECTION I – COVERAGES, SUPPLEMENTARY PAYMENTS – COVERAGES A AND B,** Items 1.b. and 1.d. are amended as follows:

b. The limit for the cost of bail bonds is changed from $250 to $2,500; and

d. The limit for loss of earnings is changed from $250 a day to $500 a day.

**I. Employee Indemnification Defense Coverage**

**SECTION I – COVERAGES, SUPPLEMENTARY PAYMENTS – COVERAGES A AND B is** amended to include the following:

We will pay, on your behalf, defense costs incurred by an "employee" in a criminal proceeding.

The most we will pay for any "employee" who is directly involved in a criminal proceeding is $25,000 regardless of the numbers of "employees," claims or "suits" brought or persons or organizations making claims or bringing "suits."

**J. Who is An Insured**

**SECTION II – WHO IS AN INSURED is** amended as follows:

**1. Newly Acquired or Formed Organization**

If coverage for newly acquired or formed organizations is not otherwise excluded from this Coverage Part, Paragraph **3.a.** is amended to read:

a. Coverage under this provision is afforded until the end of the policy period;

**2.** Each of the following is also an insured:

**a. Broadened Named Insured** – Any organization and subsidiary thereof which you control and actively manage on the effective date of this Coverage Part. However, coverage does not apply to any organization or subsidiary not named in the Declarations as Named Insured, if they are also insured under another similar policy, but for its termination or the exhaustion of its limits of insurance.

**b. Blanket Additional Insureds When Required by Contract** – Any person or organization where required by a written contract executed prior to the occurrence of a loss. Such person or organization is an additional insured for "bodily injury," "property damage" or "personal and advertising injury" but only for liability arising out of the negligence of the named insured. The limits of insurance applicable to these additional insureds are the lesser of the policy limits or those limits specified in a contract or agreement. These limits are included within and not in addition to the limits of insurance shown in the Declarations.

The Additional Insured's limits of insurance do not increase our limits of insurance, as described in **SECTION III – LIMITS OF INSURANCE.**

PI-GLD-TS (11/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-GLD-TS (11/15)

    c.  **Interns** – Your interns only while performing duties related to the conduct of your business.

    d.  **Contractors** – Any individual or organization under written contract or written agreement with you who provides "staffing services" on your behalf and at your direction for your clients.

**K.  Duties in the Event of Occurrence, Offense, Claim or Suit**

1.  **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 2.**a. the requirement that you must see to it that we are notified as soon as practicable of an "occurrence" or an offense, applies only when the "occurrence" or offense is known to:

    a.  You, if you are an individual;

    b.  A partner, if you are a partnership; or

    c.  An "executive officer" or insurance manager, if you are a corporation.

2.  **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 2.** b. the requirement that you must see to it that we receive notice of a claim or "suit" as soon as practicable will not be considered breached unless the breach occurs after such claim or "suit" is known to:

    a.  You, if you are an individual;

    b.  A partner, if you are a partnership; or

    c.  An "executive officer" or insurance manager, if you are a corporation.

**L.  Transfer of Rights of Recovery Against Others To Us**

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** includes the following clarification:

Therefore, the insured can waive the insurer's rights of recovery prior to the occurrence of a loss, provided the waiver is made in a written contract.

**M.  Liberalization**

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended to include the following additional condition:

**Liberalization**

If we revise this endorsement to provide more coverage without additional premium charge, we will automatically provide the additional coverage to all endorsement holders as of the day the revision is effective in your state.

**N.  Unintentional Failure To Disclose Hazards**

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended to include the following additional condition:

**Unintentional Failure To Disclose Hazards**

It is agreed that, based on our reliance on your representations as to existing hazards, if you should  unintentionally fail to disclose all such hazards prior to the beginning of the policy period

PI-GLD-TS (11/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-GLD-TS (11/15)

of this Coverage Part, we shall not deny coverage under this Coverage Part because of such failure.

**O. Bodily Injury – Mental Anguish**

**SECTION V – DEFINITIONS**, Paragraph **3.** is amended to read:

"Bodily injury":

a. Means bodily injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these; and

b. Except for mental anguish, includes death resulting from the foregoing (Item **a.** above) at any time.

**P. Personal and Advertising Injury – Abuse of Process, Discrimination**

If **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE** is not otherwise excluded from this Coverage Part, the definition of "personal and advertising injury" is amended as follows:

1. **SECTION V – DEFINITIONS**, Paragraph **14.**, Item **b.** is revised to read:

    b. Malicious prosecution or abuse of process;

2. **SECTION V – DEFINITIONS**, Paragraph **14.** is amended to include the following:

    "Personal and advertising injury" also means discrimination based on race, color, religion, sex, age or national origin, except when:

    a. Done intentionally by or at the direction of, or with the knowledge or consent of:

        (1) Any insured; or

        (2) Any executive officer, director, stockholder, partner or member of the insured; or

    b. Directly or indirectly related to the employment, former or prospective employment, termination of employment, or application for employment of any person or persons by an insured; or

    c. Directly or indirectly related to the sale, rental, lease or sublease or prospective sale, rental, lease or sub-lease of any room, dwelling or premises by or at the direction of any insured; or

    d. Insurance for such discrimination is prohibited by or held in violation of law, public policy, legislation, court decision or administrative ruling.

    The above does not apply to fines or penalties imposed because of discrimination.

**Q. Section IV – Commercial General Liability Conditions** is amended by the addition of the following:

The following language is added to Item **4. Other Insurance**:

Insurance under this endorsement is primary to and non-contributory with any other insurance maintained by the person or organization (Additional Insured), except for loss resulting from the sole negligence of that person or organization.

PI-GLD-TS (11/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-GLD-TS (11/15)

This condition applies even if other valid and collectible insurance is available to the Additional Insured for a loss or "occurrence" we cover for this Additional Insured.

**R. Staffing Services Exclusions**

The following exclusions are added to **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE:**

**Actions Or Activities Of PEO Worker**

"Bodily injury" or "property damage" arising from the actions or activities of any "PEO worker".

**Professional Services Exclusion**

"Bodily injury" or "property damage" due to the rendering of or failure to render any professional service. This exclusion does not apply to your liability for "bodily injury" or "property damage" arising out of your "employee's" providing or failing to provide professional health care services to another of your "employees", but no "employee" is an insured for his or her providing or failure to provide such professional health care services.

**Wrongful Acts**

"Bodily injury" or "property damage" arising from a wrongful act in the rendering or failure to render services to or for your client.

For the purposes of this exclusion, wrongful act shall mean any actual or alleged act, error, or omission, misstatement, or misleading statement in the course of providing "staffing services" to your clients by you or by any person for whose acts you are legally responsible.

**SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE** is amended as follows:

1. Exclusion **k.** does not apply.

2. Exclusions **a., b., e., f., g., h., i., l.,** and **p.** do not apply to any insured who did not personally acquiesce in or remain passive after having personal knowledge of such conduct. Our obligation to pay shall begin once the full extent of the assets of the responsible insured has been exhausted and once the Deductible as shown in the Declarations of the policy has been satisfied.

3. The following exclusions are added to Paragraph **2. Exclusions:**

**Actions Or Activities Of PEO Worker**

"Personal and advertising injury" arising from the actions or activities of any "PEO worker".

**Professional Services Exclusion**

"Personal and advertising injury" due to the rendering of or failure to render any professional service.

**Wrongful Acts**

"Personal and advertising injury" arising from a wrongful act in the rendering or failure to render services to or for your client.

PI-GLD-TS (11/15)
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-GLD-TS (11/15)

For the purposes of this exclusion, wrongful act shall mean any actual or alleged act, error, or omission, misstatement, or misleading statement in the course of providing "staffing services" to your clients by you or by any person for whose acts you are legally responsible.

**S. Staffing Services Definitions**

1. **SECTION V – DEFINITIONS**, Paragraph **5.** is revised to read:

   "Employee" includes but is not limited to a "leased worker" and a "staffing service employee". "Employee" does not include a "temporary worker" or a "PEO worker".

2. The following definitions are added to **SECTION V – DEFINITIONS**:

   a. "PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

   b. "PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

   c. "Staffing Services" means services provided by a staffing company to their clients including but not limited to:

      (1) Fulfillment of any of the administrative functions which would otherwise be normally fulfilled by an employer's human resource function;

      (2) Staffing related administrative services provided by an Administrative Services Organization (ASO);

      (3) "PEO service";

      (4) Staffing related services provided to your clients for the recruitment, selection and placement of a person for employment with a client.

      (5) Temporary, contingent or contract placement services;

      (6) Vendor Management Service (VMS), means the facilitation, purchase and management of "staffing services" for clients including the placement and fulfillment of orders for "staffing service employees";

      (7) Services performed on behalf of your client by a "staffing service employee" who is not a direct hire or permanent placement;

      (8) Services performed for a client company to supply that client company with a "staffing service employee".

   d. "Staffing service employee" means a person who is furnished by you to your client to perform the duties to which you have agreed.

PI-GLD-TS (11/15)

Page 8 of 8
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

MANUSCRIPT 441 (03/21)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**LOADING OR UNLOADING EXTENSION ENDORSEMENT**

MANUSCRIPT 441 (03/21)

This endorsement modifies and is subject to the insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

1.  **SECTION V – DEFINITIONS,** Paragraph 11. "Loading or Unloading" is deleted in its entirety and replaced with the following:

    11.  "Loading or Unloading" means the handling of property:

        a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";
        b.  While it is in or on an aircraft, watercraft or "auto"; or
        c.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

        but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that in not attached to the aircraft or watercraft.

All other terms and conditions remain unchanged

Page 1 of 1

Philadelphia Indemnity Insurance Company

PI-SAM-006 (01/17)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2. Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

This insurance does not apply to any injury sustained by any person arising out of or resulting from the alleged, actual or threatened abuse or molestation by anyone.

We shall not have any duty to defend any "suit" against any insured seeking damages on account of any such injury.

This exclusion applies to all injury sustained by any person, including emotional distress, arising out of molestation or abuse whether alleged, actual or threatened including but not limited to molestation or abuse arising out of your negligence or other wrongdoing with respect to:

1.  Hiring, placement, employment, training;

2.  Investigation;

3.  Supervision;

4.  Reporting any molestation or abuse to the proper authorities, or failure to so report; or

5.  Retention;

of a person for whom any insured is or ever was legally responsible or for whom any insured may have assumed the liability; and whose conduct would be excluded above.

PI-SAM-006 (01/17)

Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-TS-001 (12/10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PROPERTY DAMAGE EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| Per Claim Deductible: | $ 1,000 |
|---|---|

Information required to complete this **SCHEDULE**, if not shown above, will be shown in the Declarations.

1.  **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, Paragraph **j. Damage to Property** is deleted in its entirety and replaced with the following:

    **j.   Damage to Property**

    "Property damage" to:

    **(1)** Premises you sell, give away or abandon, if the "property damage" arises out of any part to those premises;

    **(2)** Property loaned to you;

    **(3)** Personal property in the care, custody or control of the insured;

    **(4)** That particular part of real property on which you or any contractors or sub-contractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    **(5)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    The following exceptions apply:

    **(a)** Paragraphs **(3)**, **(4)** and **(5)** do not apply to "property damage" arising out of your staffing agency operations.

    **(b)** Paragraphs **(2)**, **(3)**, **(4)** and **(5)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

2.  **Per Claim Deductible**

    **a.** Our obligation to pay damages on your behalf under this endorsement applies only to the amount of damages in excess of the Per Claim Deductible amount stated in the **SCHEDULE** of this endorsement. This deductible applies to all damages sustained by any one person because of "property damage" coverage provided by this endorsement as a result of any one "occurrence." A person includes an organization.

Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-TS-001 (12/10)

**b.** The terms of this insurance, including those with respect to:

   **(1)** Our right and duty to defend the insured against any "suits" seeking those damages; and

   **(2)** Your duties in the event of an "occurrence," claim or "suit";

   Apply irrespective of the application of the deductible amount.

**c.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit"; and upon notification of the action taken, you shall promptly reimburse us for each part of the deductible amount as had been paid by us.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-TS-024 (07-15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DESIGNATED PROJECT LIMITS OF INSURANCE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| Combined Total Designated Project Aggregate Limit | $ 5,000,000 |
|---|---|
| Designated Project Aggregate Limit | $ 5,000,000 |

**Designated Project(s):**

Any project for which you have agreed, pursuant to a contract, to provide a separate Designated Project Aggregate Limit for that "project", except where such contract is prohibited by law.

A.  The Combined Total Designated Project Aggregate Limit shown in the Schedule above is the most we will pay for the sum of all damages caused by "occurrences" under Section I - Coverage A, and for medical expenses caused by accidents under Section I - Coverage C, provided such "occurrences" and/or accidents can be attributed only to ongoing operations at all designated "projects" shown in the Schedule above.

B.  Subject to Paragraph **A.** above, the following applies to all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage A, and for all medical expenses caused by accidents under Section I - Coverage C, provided the "occurrences" and/or accidents can be attributed only to ongoing operations at a single designated "project" shown in the Schedule above:

1.  A separate Designated Project Aggregate Limit applies to each designated "project", and that limit is the amount shown in the Schedule as the Designated Project Aggregate Limit.

2.  The Designated Project Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage C regardless of the number of:

a.  Insureds;

PI-TS-024 (07-15)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-TS-024 (07-15)

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Project Aggregate Limit for that designated "project" and the Combined Total Designated Project Aggregate Limit. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Project Aggregate Limit for any other "project".

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Project Aggregate Limit.

**C.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** - Coverage **A**, and for all medical expenses caused by accidents under Section **I** - Coverage **C**, which cannot be attributed only to ongoing operations at a single designated "project":

    **1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit shown in the Declarations, whichever is applicable.

    **2.** Such payments shall not reduce:

        **a.** any Designated Project Aggregate Limit; or

        **b.** the Combined Total Designated Project Aggregate Limit.

**D.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit. They will not reduce:

    **1.** the General Aggregate Limit;

    **2.** the Designated Project Aggregate Limit; or

    **3.** the Combined Total Designated Project Aggregate Limit.

**E.** For the purposes of this endorsement, the **Definitions** section is amended by the addition of the following:

"Project" means the operations you perform pursuant to a contract, as shown in the Schedule. It includes collectively, all premises, other than premises owned by or rented to you, on which you are performing operations that are set forth in the applicable contract pertaining to such "project". If the applicable "project" has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same "project".

**F.** Any provisions of Section **III - Limits Of Insurance** not otherwise modified by this endorsement will still apply.

PI-TS-024 (07-15)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-TS-029 (07/15)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DESIGNATED LOCATION LIMITS OF INSURANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

| | |
|---|---|
| Combined Total Designated Location Aggregate Limit | $ 5,000,000 |
| Designated Location Aggregate Limit | $ 5,000,000 |

**Designated Location(s):**

Any location for which you have agreed, pursuant to a contract, to provide a separate Designated Location Aggregate Limit for that "location", except where such contract is prohibited by law.

A.  The Combined Total Designated Location Aggregate Limit shown in the Schedule above is the most we will pay for the sum of all damages caused by "occurrences" under Section I - Coverage **A**, and for medical expenses caused by accidents under Section I - Coverage **C**, provided such "occurrences" and/or accidents can be attributed only to ongoing operations at all designated "locations" shown in the Schedule above.

B.  Subject to Paragraph **A.** above, the following applies to all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage **A**, and for all medical expenses caused by accidents under Section I - Coverage **C**, provided the "occurrences" and/or accidents can be attributed only to ongoing operations at a single designated "location" shown in the Schedule above:

   1.  A separate Designated Location Aggregate Limit applies to each designated "location", and that limit is the amount shown in the Schedule as the Designated Location Aggregate Limit.

   2.  The Designated Location Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

      a.  Insureds;

PI-TS-029 (07/15)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-TS-029 (07/15)

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location Aggregate Limit for that designated "location" and the Combined Total Designated Location Aggregate Limit. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location Aggregate Limit for any other "location".

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location Aggregate Limit.

**C.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** - Coverage **A**, and for all medical expenses caused by accidents under Section **I** - Coverage **C**, which cannot be attributed only to ongoing operations at a single designated "location":

**1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit shown in the Declarations, whichever is applicable.

**2.** Such payments shall not reduce:

    **a.** any Designated Location Aggregate Limit; or

    **b.** the Combined Total Designated Location Aggregate Limit.

**D.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit. They will not reduce:

**1.** the General Aggregate Limit;

**2.** the Designated Location Aggregate Limit; or

**3.** the Combined Total Designated Location Aggregate Limit.

**E.** For the purposes of this endorsement, the **Definitions** section is amended by the addition of the following:

"Location" means premises owned by or rented to you, as shown in the Schedule, and comprising the same or connected lots, or premises that would be connected but for a street, roadway, waterway or railroad right-of-way.

**F.** Any provisions of Section **III - Limits Of Insurance** not otherwise modified by this endorsement will still apply.

PI-TS-029 (07/15)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

COMMERCIAL AUTO
CA 00 01 10 13

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

### A. Description Of Covered Auto Designation Symbols

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

         This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© Insurance Services Office, Inc., 2011   CA 00 01 10 13

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. **Coverage Extensions**

a. **Supplementary Payments**

We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

b. **Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

(1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. **Exclusions**

This insurance does not apply to any of the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. **Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

3. **Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed;

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

 © Insurance Services Office, Inc., 2011 CA 00 01 10 13

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

      From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. **Specified Causes Of Loss Coverage**

      Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

      Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

      We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   b. **Loss Of Use Expenses**

      For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

      (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

      (2) Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

© Insurance Services Office, Inc., 2011    CA 00 01 10 13

**(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   **(1)** The explosion of any weapon employing atomic fission or fusion; or

   **(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War Or Military Action**

   **(1)** War, including undeclared or civil war;

   **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

5. Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   **a.** Permanently installed in or upon the covered "auto";

   **b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

   **c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   **d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limits Of Insurance**

1. The most we will pay for:

   **a.** "Loss" to any one covered "auto" is the lesser of:

   **(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   **(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

   **b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

   **(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

---

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

© Insurance Services Office, Inc., 2011   CA 00 01 10 13

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

4. **Loss Payment – Physical Damage Coverages**

At our option, we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

5. **Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

B. **General Conditions**

1. **Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

2. **Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

3. **Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4. **No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

5. **Other Insurance**

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own; or

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

© Insurance Services Office, Inc., 2011    CA 00 01 10 13

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

   1. Damages because of "bodily injury" or "property damage"; or

   2. A "covered pollution cost or expense";

   to which this insurance applies, are alleged.

   "Suit" includes:

      a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

   © Insurance Services Office, Inc., 2011   CA 00 01 10 13

COMMERCIAL AUTO
CA 01 20 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

For a covered "auto" licensed or principally garaged in Illinois, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **1.b.(3)** of the **Who Is An Insured** provision does not apply.

2. The **Limit Of Insurance** provision applies except that we will apply the Covered Autos Liability Coverage limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident";

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $20,000 for "property damage" caused by any one "accident".

   This provision will not change our total Limit of Insurance for Covered Autos Liability Coverage.

**B. Changes In Physical Damage Coverage**

Paragraph **3.** of the **Limits Of Insurance** provision is replaced by the following:

3. We may deduct for betterment if:

   a. The deductions reflect a measurable decrease in market value attributable to the poorer condition of, or prior damage to, the vehicle.

   b. The deductions are for prior wear and tear, missing parts and rust damage that are reflective of the general overall condition of the vehicle considering its age. In this event, deductions may not exceed $500.

**C. Changes In Conditions**

The **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are changed by the addition of the following:

Covered Autos Liability Coverage provided by this Coverage Form for any "auto" you do not own is primary if:

1. The "auto" is owned or held for sale or lease by a new or used vehicle dealership;

2. The "auto" is operated by an "insured" with the permission of the dealership described in Paragraph **1.** while your "auto" is being repaired or evaluated; and

3. The Limit of Insurance for Covered Autos Liability Coverage under this Policy is at least:

   a. $100,000 for "bodily injury" to any one person caused by any one "accident";

   b. $300,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $50,000 for "property damage" caused by any one "accident".

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

COMMERCIAL AUTO
CA 02 70 01 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing us advance written notice of cancellation.

2. When this Policy is in effect 61 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons by mailing you written notice of cancellation, stating the reasons for cancellation.

   a. Nonpayment of premium.

   b. The Policy was obtained through a material misrepresentation.

   c. Any "insured" has violated any of the terms and conditions of the Policy.

   d. The risk originally accepted has measurably increased.

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

   f. A determination by the Director of Insurance that the continuation of the Policy could place us in violation of the Illinois insurance laws.

3. If we cancel for nonpayment of premium, we will mail you at least 10 days' written notice.

4. If this Policy is cancelled for other than nonpayment of premium and the Policy is in effect:

   a. 60 days or less, we will mail you at least 30 days' written notice.

   b. 61 days or more, we will mail you at least 60 days' written notice.

5. If this Policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. The effective date of cancellation stated in the notice shall become the end of the policy period.

7. Our notice of cancellation will state the reason for cancellation.

8. We will mail our cancellation notice to you at your last address known to us. Proof of mailing will be sufficient proof of notice.

9. Notification of cancellation will also be sent to your broker, if known, or agent of record, if known, and to the loss payee listed on the Policy.

**B.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

If we decide not to renew or continue this Policy, we will mail you written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. Proof of mailing will be sufficient proof of notice. Notification will also be sent to your broker, if known, or agent of record, if known, and to the loss payee listed on the Policy. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

CA 02 70 01 18    © Insurance Services Office, Inc., 2017    Page 1 of 2

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

© Insurance Services Office, Inc., 2017 **CA 02 70 01 18**

POLICY NUMBER:  PHPK2321444

COMMERCIAL AUTO
CA 04 44 03 10

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** Remedial Environmental Manpower, Inc. |
| **Endorsement Effective Date:** 11/30/2021 |

## SCHEDULE

| |
|---|
| **Name(s) Of Person(s) Or Organization(s):** |
| Any person or organization who you are required to add by written contract which is executed prior to the occurrence of a loss to waive your rights of recovery, except for a loss resulting from the sole negligence from that person or organization. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply to the person(s) or organization(s) shown in the Schedule, but only to the extent that subrogation is waived prior to the "accident" or the "loss" under a contract with that person or organization.

CA 04 44 03 10                © Insurance Services Office, Inc., 2009                Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

POLICY NUMBER: PHPK2321444

**COMMERCIAL AUTO**
**CA 20 48 02 99**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED INSURED

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement identifies person(s) or organization(s) who are "insureds" under the Who Is An Insured Provision of the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

---

**Named Insured:** Remedial Environmental Manpower, Inc.

**Endorsement Effective Date:** 11/30/2021

---

**SCHEDULE**

---

**Name of Person(s) or Organization(s):**

Any person or organization where required by a written contract executed prior to the occurrence of a loss. Such person or organization is an additional Insured but only for liability arising out of the negligence of the named insured.

---

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to the endorsement.)

Each person or organization shown in the Schedule is an "insured" for Liability Coverage, but only to the extent that person or organization qualifies as an "insured" under the Who Is An Insured Provision contained in **Section II** of the Coverage Form.

**CA 20 48 02 99**        Copyright, Insurance Services Office, Inc., 1998        **Page 1 of 1**

PI-AUT-001 (01/16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**COMMERCIAL AUTO COVERAGE PART**

We will pay for any injury or damage arising out of a "certified act of terrorism".

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Act for a "certified act of terrorism" includes the following":

1. The act resulted in insured losses in excess of $5 million in the aggregate,
2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage otherwise excluded under this Coverage Part.

PI-AUT-001 (01/16)

Page 1 of 1

Includes copyrighted material of the Insurance Services Office Inc., used with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Staffing Services Non-Owned Autos - Described Auto Exclusion

MANUSCRIPT 461 (04/21)

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

A. The following is added to **Section II –COVERED AUTOS LIABILITY COVERAGE, Item B. Exclusions:**

    a. This insurance does not apply to "bodily injury" or "property damage" based upon or arising out of the acts of any "staffing services employee" or "PEO worker" while such "staffing services employee" or "PEO worker" is operating or "occupying" an "auto" that you do not own, lease, hire, rent or borrow while on assignment to your client:

        (1) If that "auto" is used in your client's business for the:

            (a) Collection or transport of waste;

            (b) Transport of oil, gasoline or other hazardous materials, substances or waste;

            (c) Transport of "staffing services employees" or "PEO worker" to or from your client's job site, but only if the "auto" used for such transport has a capacity greater than 15 passengers;

        (2) If that "auto's" gross vehicle weight is greater than 26,000 pounds; or

        (3) If that "auto" is an emergency response vehicle. As used in this exclusion, emergency response vehicle includes an ambulance, police or firefighting vehicle.

    b. This insurance does not apply to "bodily injury" or "property damage" based upon or arising out of the acts of any "staffing services employee" or "PEO worker" while such "staffing services employee" or "PEO worker" is operating or "occupying" an "auto" described in the **SCHEDULE** below that you do not own, lease, hire, rent or borrow while on assignment to your client.

<div align="center">

**SCHEDULE**

</div>

| **Excluded "Auto":** |
| --- |
| |

B. The following definitions are added to **SECTION V – DEFINITIONS**:

    "Occupying" as used in this endorsement means in, upon, getting in, on, out or off.

    "PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

    "PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

    "Staffing service employee" means a person who is furnished by you to your client to perform the duties to which you have agreed.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-TS-030 (11/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## STAFFING SERVICES AUTO ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

**A.** Symbol 9, Non-owned "Autos" Only, under Description Of Covered Auto Designation Symbols, is deleted in its entirety and replaced with the following:

Symbol 9, Non-owned "Autos" only

1. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs.

2. Non-owned "Autos" includes "autos" you do not own, lease, hire, rent or borrow that are used by a "staffing service employee" or a "PEO worker" in connection with your client's business.

**B.** The following definitions are added to **SECTION V – DEFINITIONS**:

"Staffing service employee" means a person who is furnished by you to your client to perform the duties to which you have agreed.

"PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

"PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

PI-TS-030 (11/15)
Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-ARB-1 IL (6/03)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## BINDING ARBITRATION

Wherever, used in this endorsement: 1) "we", "us", "our", and "insurer' mean the insurance company which issued this policy; and 2) "you", "your", "named insured", "first named insured", and "insured" mean the Named Corporation, the Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "other insured(s)" means all other persons or entities afforded coverage under this policy.

This endorsement modifies coverage provided under the Coverage Part to which it is attached.

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then provided that it is agreed upon by both parties, the matter may be submitted for arbitration.  In lieu of arbitration, the insured may elect the option of filing a lawsuit to resolve the matter.

If both parties mutually agree to the voluntary arbitration procedure, then each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.  Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding.

All other terms of the policy remain unchanged.

PI-EBL-001 (5/99)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYEE BENEFITS ADMINISTRATION ERRORS AND OMISSIONS INSURANCE

IMPORTANT NOTE: THIS INSURANCE PROVIDES LIMITED COVERAGE FOR LIABILITY WHICH ARISES OUT OF THE ADMINISTRATION OF YOUR EMPLOYEE BENEFITS PROGRAM. IN PARTICULAR, IT DOES NOT FULLY PROTECT YOU OR ANY OTHER INSURED AGAINST LIABILITY CREATED BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, OR ITS AMENDMENTS, OR ANY SIMILAR LAW.

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations of this Coverage Form. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **Section II – Who is an Insured** of this Coverage Form.

Other words and phrases that appear in boldface have special meaning. Refer to **Section VI – Definitions**.

### Section I – Coverages

**A. Insuring Agreement**

1. We will pay those sums that you become legally obligated to pay as damages because of a negligent act, error or omission in the **administration of your employee benefits program**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this coverage Form.

   We will have the right and duty to defend any **suit** seeking those damages. But:

   a. The amount we will pay for all damages is limited as described in

   **Section III – Limits of Insurance** of this Coverage Form.

   b. We may, at our discretion, investigate and settle any claim or **suit.**

   c. Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Coverage Form.

2. This insurance applies to a negligent act, error or omission only if:

   a. the negligent act, error or omission is caused by an occurrence that takes place in the **Coverage Territory**;

   b. the negligent act, error or omission did not occur before the retroactive date, if any, shown in the Declarations or after the end of the Policy Period; and

   c. the insured had no prior knowledge or could not reasonably have foreseen any circumstances which might result in a claim or **suit**; and

   d. the claim is first made or **suit** is brought during the policy period or any Extended Reporting Period we provide under Extended Reporting Period Section V.

3. This insurance applies only to negligent acts, errors or omissions:

PI-EBL-001 (5/99)

a. which occur within the **Coverage Territory**; and

b. for which the claim is made or **suit** is brought within the **Coverage Territory**.

**B. Exclusions**

This insurance does not apply to:

1. **bodily injury**, **property damage** or **personal injury**;

2. claims for injury or damage arising out of:

   a. a dishonest, fraudulent, criminal or malicious act, error or omission done by or at the direction of any Insured;

   b. an insurer's failure to perform its contract;

   c. failure of any plan to meet its obligations due to insufficient funds;

   d. failure of any investment to perform as represented by any insured.

   e. advice given by an insured to any person on whether or not to participate in any plan included in **your employee benefits program**;

   f. your failure to meet the requirement of any law concerning Workers' Compensation, unemployment insurance, social security, disability benefits or the Fair Labor Standards Act of 1938 and its amendments, or any similar laws;

   g. any insured's liability as a fiduciary under:

      (1) EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 and its amendments, or

      (2) INTERNAL REVENUE CODE OF 1986 (including the INTERNAL REVENUE CODE OF 1954) and its amendments;

h. any claims for injury or damage to a person or organization arising from:

   (1) refusal to employ that person;

   (2) termination of that person's employment;

   (3) **employment-related discrimination** or employment-related practices, policies, acts or omissions, such as coercion, demotion, failure to promote, evaluation, criticism, reassignment, discipline, defamation, self-defamation, harassment, humiliation directed at that person or organization;

   (4) consequential injury or damage as a result of (1) through (3) above.

i. the act of terminating or altering any of **your employee benefits program**.

**C. Supplementary Payments**

We will pay, with respect to any claim we investigate or settle, or any **suit** against an insured we defend:

1. all expenses we incur.

2. the cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3. all reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or **suit**, including actual loss of earnings up to $250 a day because of time off from work.

4. all costs taxed against the insured in the **suit**.

5. prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

PI-EBL-001 (5/99)

6. all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

### Section II – Who is an Insured

1. We cover each of the following as insureds under this Coverage Form:

   a. you; and

   b. your **employees**, but only with respect to the **administration of your employee benefits program**; and

   c. any other person or organization authorized to perform the **administration of your employee benefits program**.

2. In addition, if you are designated in the Declarations as:

   a. an individual;

      i. your spouse is an insured, but only with respect to the **administration of your employee benefits program**; and

      ii. your legal representatives are insureds if you die, but only with respect to duties in the **administration of your employee benefits program**. That representative will have all your rights and duties under this endorsement.

   b. a partnership or joint venture:

      i. your partners or your members are insureds, but only with respect to the **administration of your employee benefits program**; and

      ii. the spouses of your partners or your members are also insureds, but only with respect to the **administration of your employee benefits program**.

   c. a limited liability company:

      i. your members are insureds, but only with respect to the **administration** of **your employee benefits program**; and

      ii. your managers are insureds, but only with respect to the **administration** of **your employee benefits program**.

   d. a corporation:

      i. your **executive officers** and directors are insureds, but only with respect to the **administration** of **your employee benefits program**; and

      ii. your stockholders are also insureds, but only with respect to their liability as stockholders and only with respect to the **administration** of **your employee benefits program**.

Any organization which you newly acquire or form, other than a partnership or joint venture, and over which you maintain a primary and controlling interest will be considered an insured if there is no similar insurance available to that organization. However, coverage under this provision is afforded only until the end of the policy period.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations of this Coverage Form.

### Section III – Limits of Insurance

1. The Limits of Insurance stated in the Declarations of this Coverage Form and the rules below fix the most we will pay regardless of the number of:

   a. insureds;

   b. negligent acts, errors or omissions causing injury or damage;

   c. claims made or **suits** brought;

   d. persons or organizations making claims or bringing **suits**; or

PI-EBL-001 (5/99)

e.  plans included in **your employee benefits program**.

2.  The Aggregate Limit is the most we will pay for all damages because of negligent acts, errors or omissions in the **administration** of **your employee benefits program**, covered by this policy.

3.  Subject to 2. above, the Each Employee Limit is the most we will pay for the sum of all damages incurred because of damages sustained, covered by this policy, by:

    a.  any one **employee**, and

    b.  that **employee's** dependents or stated beneficiaries.

4.  The limits of this Coverage Part apply separately to each consecutive annual policy period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations. If the policy period is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**Section IV – Conditions**

1.  Bankruptcy

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2.  Duties in the Event of a Negligent Act, Error, Omission, Claim or **Suit**:

    a.  You must see to it that we are notified as soon as practicable of an alleged negligent act, error, omission, claim or **suit** which may result in a claim. To the extent possible, notice should include:

        (1) how, when and where the alleged negligent act, error, or omission took place;

        (2) the names and addresses of the persons or their representatives

        alleging the negligent act, error or omission;

        (3) the nature of any injury or damage arising out of the negligent act, error or omission.

    b.  If a claim is made or **suit** is brought against any insured, you must:

        (1) immediately record the specifics of the claim or **suit** and the date received; and

        (2) notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or **suit** as soon as practicable.

    c.  You and any other involved insured must:

        (1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

        (2) authorize us to obtain records and other information;

        (3) cooperate with us in the investigation or settlement of the claim or defense against the **suit**; and

        (4) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

3.  Legal Action Against Us

    No person or organization has a right under this Coverage Part:

    a.  to join us as a party or otherwise bring us into a **suit** asking for damages from an insured; or

Page 4 of 8

PI-EBL-001 (5/99)

b. to sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

This insurance is excess over any other valid and collectible similar insurance or insurance expressly purchased to provide this coverage, available to the insured.

5. Representation

By accepting this policy, you agree:

a. the statements in the Declarations are accurate and complete;

b. those statements are based upon representations you made to us; and

c. we have issued this policy in reliance upon your representations.

6. Separation of Insureds

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. as if each Named Insured were the only Named Insured; and

b. separately to each insured against whom claim is made or **suit** is brought.

7. Transfer of Rights of Recovery Against Others to Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring **suit** or transfer those rights to us and help us enforce them.

8. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

9. Application of Insurance Services Office Endorsements Attached to This Coverage Part

In the event that an Insurance Services Office Endorsement is attached to this Coverage Part, it shall apply to this insurance even if the Insurance Services Office endorsement does not include Employee Benefits Administration Errors and Omissions Insurance within the introductory language of the endorsement.

**Section V – Extended Reporting Period**

1. We will provide one or more Extended Reporting Periods, as described below, if:

a. This Coverage Part is canceled or not renewed; or

b. We renew or replace this Coverage Part with insurance that:

(1) Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

(2) Does not apply to a negligent act or error and omission on a claims-made basis.

2. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for a negligent act, error or omission that occurs before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

PI-EBL-001 (5/99)

Once in effect, Extended Reporting Periods may not be canceled.

3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

a. Five years with respect to claims because of a negligent act, error or omission arising out of an occurrence reported to us, not later than 60 days after the end of the policy period, in accordance with Paragraph 2.a. of the Section IV - Condition;

b. Sixty days with respect to claims arising from occurrences not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4. The Basic Extended Reporting Period does not reinstate or increase the limits of insurance.

5. A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in Paragraph 3. above, ends.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a. The exposures insured;

b. Previous types and amounts of insurance;

c. Limits of Insurance available under this Coverage Part for future payment of damages; and

d. Other related factors.

The additional premium will not exceed 200% of the annual premium for this Coverage Part.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

6. If the Supplemental Extended Reporting Period is in effect, we will provide the supplemental aggregate limits of insurance described below, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

The supplemental aggregate limits of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period for Employees Benefits Administration Errors and Omissions Insurance.

**Section VI – Definitions**

With respect to coverage provided by this Coverage Form, the following definitions apply:

1. **Administration** means performance of the ministerial functions of **your employee benefits program** and could include:

   a. applying the program rules to determine who is eligible to participate in benefits;

   b. calculating service and compensation credits of **employees**;

   c. preparing messages to tell **employees** about their benefits.

   d. maintaining service and employment records of those employees participating in **your employee benefits program**;

PI-EBL-001 (5/99)

e. preparing reports required by government agencies;

f. calculating benefits;

g. informing new **employees** about **your employee benefit program**;

h. implementing enrollment instructions from your employees in **your employee benefits program**.

i. advising, other than legal advice, **employees** who are participating in **your employee benefits program** of their rights and options.

j. collecting contributions and applying them as called for under the rules of **your employee benefits program**.

k. preparing benefits reports for your employees participating in **your employee benefits program**.

l. processing claims.

2. **Bodily Injury** means bodily injury sickness or disease sustained by a person, including death resulting from any of these at any time.

3. **Coverage territory** means:

   a. the United States of America (including its territories and possessions), Puerto Rico and Canada; or

   b. all parts of the world if the insured's responsibility to pay damages is determined in a **suit** on the merits in the territory described in a. above or in a settlement to which we agree.

4. **Employee** means your **executive officers** or any persons who have been employed and compensated by you, whether actively employed, formerly employed, disabled or retired, and includes **leased workers** and **temporary workers** if they are subject to **your employee benefits program**.

5. **Employment-related discrimination** means the actual or alleged treatment of a person or group of persons based upon their race, color, nationality, ethnic origin, religion, gender, marital status, reproductive status, age, sexual orientation, sexual preference, physical disability, mental disability or on any basis which is prohibited by federal, state or local law.

6. **Executive officer** means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. **Leased worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. **Leased worker** does not include a **temporary worker**.

8. **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

   a. false arrest, detention or imprisonment;

   b. malicious prosecution;

   c. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   d. oral or written publication of material that slanders, or libels a person or organization, or disparages a person's or organization's goods, products or services; or

   e. oral or written publication of material that violates a person's right of privacy.

9. **Property Damage** means:

   a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. loss of use of tangible property that is not physically injured. All such loss of use

PI-EBL-001 (5/99)

shall be deemed to occur at the time of the occurrence that caused it.

10. **Suit** means a civil proceeding in which damages because of a negligent act, error or omission to which this insurance applies are alleged. Suit includes:

   a. an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent;

   b. any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

11. **Temporary worker** means a person who is furnished to you to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions. **Temporary worker** does not mean a **leased worker**.

12. **Your employee benefits program** means a type of insurance or other plan you maintain solely for the benefit of your **employees** and could include one or more of the following types:

   a. group life insurance, group accident, dismemberment, dental, health insurance, health care and dependent care spending plans, legal advice plans, or educational tuition reimbursement plans;

   b. profit sharing plans; savings plans including 401K and 403B plans; pension plans and stock subscription plans;

   c. unemployment insurance, social security benefits: workers' compensation and disability benefits insurance.

PI-EBL-IL-1 (8/99)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Employee Benefits Administration Errors & Omissions Insurance**

A.    Section IV Conditions, Paragraph 4 Other Insurance is deleted and replaced with the following:

4.  Other Insurance

This insurance is excess over any other valid and collectible similar insurance or insurance expressly purchased to provide this coverage, available to the insured.  If the insured has insurance provided by other companies against a loss covered by this coverage form, the company shall not be liable under this coverage form for a greater proportion of such loss and claims expenses than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Page 1 of 1

PI-PPL-001(8/03) EB

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PRIOR/PENDING LITIGATION AND KNOWN CIRCUMSTANCES EXCLUSION (CLAIMS MADE)

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS ADMINISTRATION ERRORS AND OMISSIONS INSURANCE
CLAIMS MADE COVERAGE.

In consideration of the premium paid for this policy, it is agreed that the Insurer shall not be liable to make any payment for "damages" in connection with any claim arising out of, based upon or attributable to:

i) any "professional incident", "bodily injury" or "property damage", committed on or before 09/01/2021 if the insured knew or could have reasonably foreseen that such "professional incident", "bodily injury" or "property damage" could give rise to a claim;

ii) any pending or prior litigation made as of 09/01/2021 or any claims alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation;

Page 1 of 1

PI-ARB-1 IL (6/03)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## BINDING ARBITRATION

Wherever, used in this endorsement: 1) "we", "us", "our", and "insurer" mean the insurance company which issued this policy; and 2) "you", "your", "named insured", "first named insured", and "insured" mean the Named Corporation, the Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "other insured(s)" means all other persons or entities afforded coverage under this policy.

This endorsement modifies coverage provided under the Coverage Part to which it is attached.

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then provided that it is agreed upon by both parties, the matter may be submitted for arbitration.  In lieu of arbitration, the insured may elect the option of filing a lawsuit to resolve the matter.

If both parties mutually agree to the voluntary arbitration procedure, then each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.  Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding.

All other terms of the policy remain unchanged.

Includes copyright material of the Insurance Services Office, Inc. used with its permission.

MANUSCRIPT 440 (03/21)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## BODILY INJURY EXCLUSION ENDORSEMENT

This endorsement modifies and is subject to the insurance provided under the following:

STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM
STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE COVERAGE FORM

    **A.  SECTION I, B. Exclusions** is amended to include the following:

        This insurance does not apply to "damages", arising out of, directly or indirectly to:
        Any actual or alleged "bodily injury".

For the purposes of this endorsement, the following item is added to the **DEFINITIONS** section:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of theses at any time.

All other terms and conditions remain unchanged

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-TS-002 (12/11)

# STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V – DEFINITIONS.**

## SECTION I – COVERAGE

**STAFFING SERVICE PROFESSIONAL LIABILITY**

**A. Insuring Agreement**

    **1.** We will pay those sums that the insured becomes legally obligated to pay as "damages" to which this insurance applies. Subject to **SECTION IV – CONDITIONS**, Paragraph **K. Settlement**, we, in your name and on your behalf, shall have the right and duty to investigate, defend, and conduct settlement negotiations, including selection of defense counsel, in any "suit" seeking those "damages." However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. But:

        **a.** The amount we will pay for "damages" is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

        **b.** Our right and duty to defend ends when we have used up our applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS** below.

    **2.** This insurance applies to "damages" only if:

        **a.** The "damages" result from a "wrongful act" that takes place in the "coverage territory";

        **b.** The "wrongful act" occurs during the policy period;

        **c.** The "wrongful act" is committed by any insured for whom the Named Insured is legally responsible;

        **d.** Prior to the policy period, no insured listed under **SECTION II – WHO IS AN INSURED**, Paragraph **A.** and no "employee" authorized by you to give or receive notice of a "wrongful act" or claim, knew that the "wrongful act" had occurred, in whole or in part. If such a listed

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

insured or authorized "employee" knew, prior to the policy period, that the "wrongful act" occurred, then any continuation, change or resumption of such "wrongful act" during or after the policy period will be deemed to have been known prior to the policy period;

e.  A "wrongful act" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under **SECTION II – WHO IS AN INSURED**, Paragraph **A.** or any "employee" authorized by you to give or receive notice of a "wrongful act" or claim, includes any continuation, change or resumption of that "wrongful act" after the end of the policy period; and

f.  A "wrongful act" will be deemed to have been known to have occurred at the earliest time when any insured listed under **SECTION II – WHO IS AN INSURED**, Paragraph **A.**, or any "employee" authorized by you to give or receive notice of a "wrongful act" or claim:

   **(1)** Reports all, or any part, of the "wrongful act" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for "damages" because of the "wrongful act"; or

   **(3)** Becomes aware by any other means that a "wrongful act" has occurred or has begun to occur.

**B.  Exclusions**

This insurance does not apply to "damages":

1.  **Criminal Acts**

   Arising out of any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which you are not legally entitled.  However, we will defend "suits" alleging the foregoing until there is a judgment, final adjudication, adverse admission, plea *nolo contendere* or no contest or finding of fact against you as to such conduct.

2.  **Non Pecuniary Relief, Fines or Penalties, and other Uninsurable Matters**

   Arising out of any costs of corrections, cost of complying with non-pecuniary relief, fines or penalties imposed by law or other matters which may be deemed uninsurable under the law pursuant to which this policy may be construed.

3.  **Disciplinary Proceedings**

   Arising out of any "disciplinary proceeding" against any insured.  However, we will defend you for said "disciplinary proceeding" up to a sublimit of insurance ("Disciplinary Proceeding Sublimit") of $10,000 so long as the alleged "wrongful act" that is the subject of the "disciplinary proceeding" occurred during the policy period. The Disciplinary Proceeding Sublimit shall be part of, not in addition to, the limit of insurance as shown in the Staffing Service Professional Liability Declarations.  Defense for "disciplinary proceedings" will still be subject to all other terms and provisions in this policy.

4.  **Insurance or Bond**

   Arising out of, directly or indirectly, any failure to effect or maintain any insurance or bond.

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

5. **Securities, Antitrust and Similar Statutes or Regulations**

Arising out of, directly or indirectly, any violation of the Securities Exchange Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any state Blue Sky or Securities Law, any state or federal antitrust, price fixing, restraint-of-trade or deceptive trade practice laws, or any rules, regulations or amendments issued in relation to such acts, or any similar state, federal or foreign statutes or regulations.

6. **Warranties or Guarantees and other Contractual Liability**

Arising out of, directly or indirectly, any express warranties or guarantees or any liability you assume under contract unless you would have been legally liable in the absence of such contract.

7. **Pollution**

Arising out of, directly or indirectly, any discharge, dispersal, release or escape of any solid, liquid, gaseous, biological, radiological, or thermal irritant or contaminant, including smoke, vapor, dust, fibers, spores, fungi, germs, soot, fumes, asbestos, acids, alkalis, chemicals and waste (including, but not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials) into or upon land, the atmosphere or any water-course or body of water or any cost or expense arising out of any direction, request or voluntary action to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any pollutants.

8. **Aircraft, Auto or Watercraft**

Arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto," or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

9. **Disputes over Fees or Failures in Collection Activities**

Arising out of any:

a. Disputes involving your fees or charges; or

b. Failure of the insured or others to collect or pay money.

10. **Data Processing Equipment**

Arising out of directly or indirectly:

a. The operation of any data processing equipment on behalf of any "client company" except for use of data processing equipment which is incidental to a "wrongful act"; or

b. Unauthorized access to, or malfunction of your electronic data processing and/or computer system.

11. **Knowledge of Wrongful Act**

Arising out of any "wrongful act" committed with the knowledge that it was a "wrongful act."

12. **Insured as Director, Officer Partner or Principal Stockholder**

Arising out of the performance or failure to perform services for any person or entity in which the

PI-TS-002 (12/11)

insured is a director, officer, partner or principal stockholder.

13. **Specific Actions of Staffing Service Employees**

Arising out of any "suit" alleging that the "staffing service employee(s)":

a. Exercised authority to sign or stamp any design, specification, drawing, plan, cost estimate, materials list, project schedule, blueprint or the like;

b. Rendered or failed to render an opinion on:

(1) The feasibility of part or all of any project;

(2) The structural soundness of part or all of any project; or

(3) The accuracy of calculations, drawings, or conclusions;

c. Rendered or failed to render:

(1) Construction management services; or

(2) Management and oversight of fulfilling client orders from a manufacturing, packing and/or delivering standpoint;

d. Rendered or failed to render services as an accountant or attorney;

e. Rendered or failed to render:

(1) "Attestation services";

(2) Actuarial services;

(3) Investment advisory services; or

(4) "Medical services"; or

f. Exercised discretionary authority to make or implement decisions on behalf of a "client company."

14. **Workers' Compensation and Similar Laws**

Arising out of any obligation of the insured under a worker's compensation, disability benefits or unemployment compensation law or any similar law.

15. **Employment-Related Practices**

Arising out of any claim by:

a. A person because of any actual or alleged:

(1) Refusal to employ that person;

(2) Termination of that person's employment; or

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

**(3)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or malicious prosecution directed at that person on any basis, including but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, sex, sexual orientation or pregnancy;

**b.** The spouse, "domestic partner," child, parent, brother or sister of the person in a. above, as a consequence of injury to that person at whom any of the employment-related practices described in Paragraphs **(1)**, **(2)**, or **(3)** above is directed.

This exclusion applies:

**(a)** Whether the injury-causing event described in Paragraphs **(1)**, **(2)**, or **(3)** above occurs before employment, during employment or after employment of that person:

**(b)** Whether the insured may be liable as an employer or in any other capacity; and

**(c)** To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

**16. Physical or Sexual Abuse or Molestation**

Arising out of the actual or threatened physical or sexual abuse or molestation by anyone or any person while in the care, custody or control of any insured.

**17. Personal and Advertising Injury**

Arising out of "personal and advertising injury."

**18. Injury to Insured Including Consequential Injury**

Arising out of injury to any insured, or any consequential injury to the spouse, child, parent, brother or sister of that insured.

This exclusion applies:

**a.** Whether the insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share "damages" with or repay someone else who must pay "damages" because of an injury.

**19. Damage to Property**

Arising out of damage to property:

**a.** Owned, occupied or used by any insured;

**b.** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured;

**c.** Which is or was in the possession of any insured or any person acting on behalf of any insured; or

**d.** That is real property on which you or any contractors or subcontractors working directly or

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

indirectly on your behalf are or were performing operations.

**20. Nuclear, Asbestos or Lead**

Arising out of any:

a. "Nuclear hazard";

b. "Asbestos hazard"; or

c. "Lead hazard."

**21. ERISA and Similar Laws**

Arising out of liability under the Employment Retirement Income Security Act of 1974, the Fair Labor Standards Act of 1938 and its amendments, the Federal Immigration and Nationality Act, (8 U.S.C. §1324a) or any other federal immigration law, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), and any amendments in relation to such acts, or any similar federal or state law.

**22. Insured versus Insured**

Arising out of any claim made or "suit" brought against an insured by another insured.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim or "suit" we defend:

**1. Expenses We Incur**

All expenses we incur including "claim expenses."

**2. Expenses Incurred by the Insured at Our Request**

All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 per insured per day for each day any such insured is required to appear at a trial, hearing or arbitration proceeding involving a claim against such insured. The most we will pay under this provision is $5,000.

Payments under **1.** and **2.** above will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

**A.** You are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.

**B.** Each of the following is also an insured:

**1.** Any current partner, member or "employee" of yours while acting within the scope of their duties as such.

**2.** Any former or retired partner, director, office, member or "employee" of yours, but only for those professional services rendered on behalf of the named insured prior to the date of separation or retirement from such entity(ies).

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

3. The lawful spouse or "domestic partner" of an insured, but only for actual or alleged "wrongful acts" of such insured for which said spouse or "domestic partner" may be liable as the spouse or "domestic partner" of such insured.

4. The heirs, executors, administrators, assignees, and legal representatives of each insured in the event of such insured's death, incapacity or bankruptcy as respects to the liability of each insured as is otherwise covered herein.

5. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured if there is no other similar insurance available to that organization.

   However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

   b. Staffing Services Professional Liability Coverage does not apply to a "wrongful act" that occurred before you acquired or formed the organization.

**SECTION III – LIMITS OF INSURANCE**

A. We shall be liable to pay that portion of "damages" and "claim expense" in excess of the applicable deductible as stated in the Staffing Service Professional Liability Declarations. A deductible shall apply to each and every claim or "suit," including "claim expenses," and such deductible shall be borne by you. The deductible shall be uninsured and at your own risk.

B. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   1. Insureds;

   2. Claims made or "suits" brought; or

   3. Persons or organizations making claims or bringing "suits."

C. The Aggregate Limit is the most we will pay for all "damages" to which this insurance applies.

D. Subject to **C.** above, the Each Wrongful Act limit is the most we will pay for the sum of all "damages" arising out of any one "wrongful act" to which this insurance applies.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – CONDITIONS**

A. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

**B. Your Authority And Duties**

The first Named Insured shown in the Declarations agrees to act on behalf of all insureds with respect to cancellation, notice of any "wrongful act" claim or "suit," payment or return of any premium, or consent to a claim settlement that we recommend. Each insured, by accepting this insurance, agrees to:

1. Have the first Named Insured act for them in such matters; and

2. Promptly notify the first Named Insured, in writing, of any "wrongful act" which may result in a claim, or any claim or "suit" brought against them.

**C. Deductible**

It is your responsibility to pay the deductible amount as stated in the Staffing Service Professional Liability Declarations as the result of each claim or "suit." We may pay part or all of the deductible amount to effect a settlement of any claim or "suit," however, upon notification of any such action taken, you shall promptly reimburse us for that part of the deductible amount that has been paid by us.

**D. Duties In The Event Of Wrongful Act, Claim Or Suit**

1. Notice hereunder shall be given by you or on your behalf in writing to us at:

   **Claims Department**
   **Philadelphia Indemnity Insurance Company**
   **P.O. Box 950**
   **Bala Cynwyd, PA 19004**

   Or:

   **Claimsreport@phlyins.com**

2. You must see to it that we are notified as soon as practicable of a "wrongful act" which may result in a claim. To the extent possible, notice should include:

   a. All available information about the circumstances concerning the "wrongful act" including:

      (1) How, when and where it took place; and

      (2) The names and addresses of any witnesses and persons seeking "damages"; and

   b. What claim you think could result.

   However, even when you notify us of a "wrongful act," this does not relieve you of your obligation to also notify us of any resulting claim or "suit."

3. If a claim is made or "suit" is brought against any insured, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us as soon as practicable.

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**4.** You and any other involved insured must:

    **a.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **b.** Authorize us to obtain records and other information;

    **c.** Cooperate with us in the investigation, settlement or defense of the claim or "suit";

    **d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply; and

    **e.** In no way jeopardize our rights after a "wrongful act."

**5.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**E. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**1.** To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

**2.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for "damages" that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**F. Other Insurance**

If there is other insurance under a separate policy covering the same loss or damage as provided for in this policy, we will pay only the amount of covered loss or damage in excess of the amount due from that other insurance, regardless of whether you are able to collect.

**G. Representations**

By accepting this policy, you agree:

**1.** The statements in the Declarations are accurate and complete;

**2.** Those statements are based upon representations you made to us; and

**3.** We have issued this policy in reliance upon your representations.

**H. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

1. As if each Named Insured were the only Named Insured; and

2. Separately to each insured against whom claim is made or "suit" is brought.

**I. Transfer of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**J. Governmental Immunity**

If you are a public institution, you may be entitled to governmental immunity. This Coverage Part does not constitute a waiver of any charitable or governmental immunity to which you are entitled.

**K. Settlement**

If the first Named Insured refuses to consent to any settlement recommended by us, and acceptable to the claimant, and elects to further contest the claim or "suit," subject to the provisions of **SECTION III – LIMITS OF INSURANCE**, our liability for such claim or "suit" shall not exceed the amount for which the claim or "suit" could have been settled, plus the cost of defense incurred by us up to the date of such refusal, plus 50% of covered "damages" and "claim expenses" in excess of such settlement amount. It being a condition of this insurance that the remaining 50% of such "damages" and "claim expenses" excess of the first settlement amount shall be borne by you at your own risk and be uninsured.

Notwithstanding the foregoing, this provision shall not apply until the settlement amount exceeds the Deductible amount stated in the Staffing Service Professional Liability Declarations.

**L. Two or More Coverage Parts Or Policies Issued By Us**

It is our stated intention that the various coverage parts or policies issued to you by us, or any company affiliated with us; do not provide any duplication or overlap of coverage for the same claim or "suit." If this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same "wrongful act," occurrence, offense, accident or loss, the maximum limit of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limit of insurance under any one coverage part or policy.

This condition does not apply to any Excess or Umbrella Policy issued by us specifically to apply as excess insurance over this policy.

**M. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

1. Notices that are published include material placed on the Internet or similar electronic means of communication; and

2. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. "Asbestos hazard" means:

1. a. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

   b. The use of asbestos in constructing or manufacturing any good, product or structure;

   c. The removal of asbestos from any good, product or structure;

   d. Any request, demand or order for the removal of asbestos from any good, product or structure; or

   e. The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

2. The investigation, settlement or defense of any claim, "suit", proceeding, "damages," loss, cost or expense excluded by 1. above.

C. "Attestation services" means an engagement or service performed in the role of an accountant or auditor in accordance with professional or regulatory standards for such engagements, and resulting n written reports that express a conclusion about the reliability of an assertion.

D. "Auto" means:

1. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment."

E. "Claim expenses" means fees charged by any lawyer designated by us and all other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a claim or "suit," if incurred by us. "Claim expenses" shall also include:

1. Premiums on bonds to release attachments and appeal bonds, limited to that portion of such bonds that does not exceed the limits of insurance of this policy, but without obligation by us to apply for or furnish such bonds;

2. Costs taxed against you in any "suit" except for any contempt citations;

3. Interest accruing after the entry of a judgment, but only for that portion of the judgment which does not exceed the applicable limits of insurance, and only until we have tendered to the court or paid to you our portion of such judgment as does not exceed our limit of insurance thereon; and

4. Reasonable expenses incurred by you at our request in assisting the investigation and defense of

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

any claim or "suit," as shown in **SUPPLEMENTARY PAYMENTS**, Paragraph **2.** above.

Claim expenses shall not include:

    **a.** Any amounts incurred in defense of any claim or "suit" for which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty;

    **b.** Salaries, wages, overhead or benefit expenses associated with any insured except as specified under **SUPPLEMENTARY PAYMENTS** above; or

    **c.** Salaries, wages, overhead or benefit expenses associated with your "employees."

**F.** "Client company" means any person or organization for which the insured provides "staffing services"; provided that the term "client company" shall not include any insured.

**G.** "Coverage territory" means:

    **1.** The United States of America (including its territories and possessions), Puerto Rico, and Canada;

    **2.** All parts of the world if:

        **a.** The injury or damage arises out of the activities of a person whose home is in the territory described in **1.** above, but is away for a short time on your business; and

        **b.** The insured's responsibility to pay "damages" is determined in a "suit" on the merits in the territory described in **1.** above, or in a settlement we agree to.

**H.** "Damages" means a monetary:

    **1.** Judgment;

    **2.** Award; or

    **3.** Settlement,

but does not include fines, sanctions, penalties, punitive or exemplary damages or the multiple portion of any damages.

**I.** "Disciplinary proceedings" means any proceeding brought against you by a state regulatory or disciplinary official or agency to investigate charges alleging professional misconduct.

**J.** "Domestic partner" means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by you.

**K.** "Employee" includes a "leased worker" and a "staffing service employee." "Employee" does not include a "temporary worker."

**L.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws, or any other similar governing document.

**M.** "Lead hazard" means:

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

1.  a.  Exposure to or existence of lead, paint containing lead, or any other material or substance containing lead; or

    b.  Manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement, or handling of lead, paint containing lead, or any other material or substance containing lead;

    whether or not the lead is or was at any time airborne as a particulate, contained in a product ingested, inhaled, transmitted in any manner, or found in any form whatsoever.

2.  a.  Any testing for, monitoring, cleaning up, removing, abating, containing, treating or neutralizing lead, paint containing lead, or any other substance or material containing lead, or in any way responding to or assessing the effects of lead; or

    b.  Any request, demand, or order to test for, monitor, clean up, remove, abate, contain, treat or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to or assess the effects of lead.

3.  The investigation, settlement, or defense of any claim, "suit," proceeding, "damages," loss, cost or expense excluded by **1.** and **2.** above.

**N.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

**O.** "Loading or unloading" means the handling of property:

1.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2.  While it is in or on an aircraft, watercraft or "auto"; or

3.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**P.** "Medical services" means the provision of health care, medical care or treatment, and any related advice or consultation, including but not limited to any of the following services:

1.  Medical, surgical, dental, chiropractic, osteopathic, homeopathic, naturopathic, psychiatric, psychological, counseling, social work, mental health, physical therapy, or nursing, including furnishing of food or beverages in connection therewith;

2.  The dispensing of pharmaceutical products;

3.  Prescription, advice, or consultation on diet and/or nutrition;

4.  The handling of, or performance of post-mortem examinations on human bodies; or

5.  Veterinary services.

**Q.** "Mobile equipment" means any of the following types of land vehicles, including any attached

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

machinery or equipment;

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraphs **1.**, **2.**, **3.** or **4.** that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in Paragraphs **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

R. "Nuclear hazard" means the existence of any nuclear reactor or device, nuclear waste storage or disposal site or any other nuclear facility, or the transportation of nuclear material, or the hazardous properties of nuclear material.

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

**S.** "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    **1.** False arrest, detention or imprisonment;

    **2.** Malicious prosecution;

    **3.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    **4.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **5.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **6.** The use of another's advertising idea in your "advertisement"; or

    **7.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

**T.** "Staffing services" means service(s) performed for a fee for a "client company" regarding the identification, appraisal and placement of personnel into employment roles; and the fulfillment of any of the administrative functions which would otherwise be normally fulfilled by an employer's human resource function. Such consultation, placement and administrative services will include either temporary or permanent appointments.

**U.** "Staffing service employee" shall mean a person placed or furnished to the "client company" by the insured for the purpose of employment.

**V.** "Suit" means a civil proceeding in which "damages" are claimed and to which this insurance applies. "Suit" also includes:

    **1.** An arbitration proceeding in which such "damages" are claimed and to which you must submit or do submit with our consent; or

    **2.** Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which you submit with our consent.

**W.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**X.** "Wrongful act" means a negligent act, error, or omission committed or alleged to have been committed by you or any person for whom you are legally responsible in the rendering of "staffing services."

Any or all "wrongful acts" arising from interrelated or series of acts, errors or omissions shall be deemed to be one "wrongful act" taking place at the time of the earliest "wrongful act."

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-014 (11/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BROAD DEFINITION OF STAFFING SERVICES

This endorsement modifies and is subject to the insurance provided under the following:

STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM
STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE COVERAGE FORM

A. Item **T.** under **DEFINITIONS**, is deleted in its entirety and replaced with the following:

"Staffing Services" means services provided by a staffing company to their clients including but not limited to:

1. Fulfillment of any of the administrative functions which would otherwise be normally fulfilled by an employer's human resource function;

2. Staffing related administrative services provided by an Administrative Services Organization (ASO);

3. "PEO service";

4. Staffing related services provided to your clients for the recruitment, selection and placement of a person for employment with a client;

5. Temporary, contingent or contract placement services;

6. Vendor Management Service (VMS), means the facilitation, purchase and management of "staffing services" for clients including the placement and fulfillment of orders for "staffing service employees";

7. Services performed on behalf of your client by a "staffing service employee" who is not a direct hire or permanent placement;

8. Services performed for a client company to supply that client company with a "staffing service employee".

B. Item **K.** under **DEFINITIONS**, is deleted in its entirety and replaced with the following:

"Employee" includes but is not limited to a "leased worker" and a "staffing service employee". "Employee" does not include a "temporary worker" or a "PEO worker".

C. Item **U.** under **DEFINITIONS**, is deleted in its entirety and replaced with the following:

"Staffing service employee" means a person who is furnished by you to your client to perform the duties to which you have agreed.

D. For the purposes of this endorsement, the following items are added to the **DEFINITIONS** section:

"PEO Worker" means a person you lease to your client under a written "PEO service" agreement or contract.

"PEO Service" means staffing related services as a Professional Employer Organization (PEO) you

PI-TS-014 (11/15)

©2012 Philadelphia Indemnity Insurance Company
Page 1 of 2

PI-TS-014 (11/15)

provide to your clients and to "PEO workers" in connection with employment of such workers.

E.  **SECTION I B. Exclusion 9. Disputes over Fees or Failures in Collection Activities** is deleted in its entirety.

F.  **SECTION I B. Exclusion 13.** Is deleted in its entirety and replaced with the following:

13. Arising out of any services performed by any:

a.  Doctor, dentist, armed security guard, pilot, person engaged in pyrotechnic activities or anyone acting as a general contractor;

b.  Engineer or architect with signoff authority; or

c.  Consultant with signoff authority on final business decisions.

G.  **SECTION I B. Exclusion 21.** is deleted in its entirety and replaced with the following:

21. **ERISA and Similar Laws**

Arising out of the administration of or failure to administer any Employee Benefit Plan. However, this exclusion shall not apply to a "PEO service" that:

a.  Does not have Employee Benefit Plan funds or benefits that are self-funded; and

b.  Does not manage or invest Employee Benefit Plan funds.

H.  **SECTION I. B. Exclusions is amended to include the following:**

This insurance does not apply to "damages" arising out of:

1.  The actions or activities of any "PEO worker". This exclusion does not affect our duty to defend, as stated in Paragraph **1.** of **SECTION I. A. Insuring Agreement**, an insured providing "PEO services".

2.  Any actual or alleged piracy, infringement of a patent, copyright, trademark, servicemark, trade dress, trade name, trade secret or any other intellectual property rights.

3.  Any actual or alleged violation of:

a.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

b.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

c.  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

d.  Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA.

PI-TS-014 (11/15)

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-TS-016 (05/12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DESIGNATED PROFESSIONAL SERVICES EXCLUSION

This endorsement modifies and is subject to the insurance provided under the following:

STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM
STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE COVERAGE FORM

### SCHEDULE

| Excluded Professional Service(s): |
|---|
| Architects and Engineers, Accountants, Attorneys, Programmers |

**Section I B. Exclusions** is amended by the addition of the following exclusion:

This insurance does not apply to any claim or "suit", arising out of the rendering or failure to render any of the professional services listed in the schedule above.

©2012 Philadelphia Indemnity Insurance Company
Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-TS-IL-1 (05/12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM**

A.  The following language is added to the **Pollution** exclusion:

Pollutants do not include heat, smoke or fumes from a hostile fire.

B.  The exclusion of **Physical or Sexual Abuse or Molestation** is deleted in its entirety and replaced with the following:

Arising out of "claims" or "suits", including defense of same, against any person who actively participates in any actual or threatened act of sexual misconduct, sexual molestation or physical or mental abuse of any person.

C.  The following language is added to Section **B** 3 of **SECTION II – WHO IS AN INSURED**:

Spouse or "domestic partner" includes a partner of the insured in a civil union.

D.  The **Other Insurance** condition is deleted in its entirety and replaced with the following:

If you have any other insurance against a loss covered by this policy, the insurance provided by this policy shall share proportionately with any other valid or collectible insurance contract.

E.  Item **3** of the definition of **Claim Expenses** is deleted in its entirety and replaced with the following:

Interest accruing after the entry of a judgment.  Post judgment interest will not be subject to any limits of insurance within this coverage form.

F.  The Policy Condition **When We Do Not Renew** is deleted in its entirety and replaced with the following:

**Cancellation or Non-Renewal**

We may cancel this policy by mailing to you, at the last mailing address known to us, written notice stating when such cancellation shall become effective.  Notice shall be given at least ten (10) days prior to the date on which such cancellation shall become effective if cancellation is for non-payment of premium or deductible.  If the policy has been in effect for sixty (60) days or less, we shall give notice at least thirty (30) days prior to the effective date of cancellation.

After this policy has been in effect for sixty (60) days, this policy may be cancelled by or on our behalf only for one of the following reasons:

1)  Nonpayment of premium;

2)  This policy was obtained through a material misrepresentation;

3)  Any insured violated any of the terms and conditions of this policy;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-TS-IL-1 (05/12)

4) The risk originally accepted has measurably increased;

5) Certification to the Director of the Department of Insurance of the loss of reinsurance by us which provided coverage to us for all or a substantial part of the underlying risk insured; or

6) A determination by the Director of the Department of Insurance that the continuance of the policy could place us in violation of the insurance laws of Illinois.

We shall mail written notice of cancellation to you, your agent or broker of record at the last address known to us and any mortgagee or lienholder, if known. Notice of cancellation shall be provided at least ten (10) days before the effective date of cancellation if cancellation is for nonpayment of premium. If cancellation is for any of the reasons listed in 2) through 6) above, and the policy has been in effect for sixty (60) days or less, then notice of cancellation shall be provided at least thirty (30) days before the effective date of cancellation. After the policy has been in effect for sixty-one (61) days or more, notice of cancellation shall be provided at least sixty (60) days before the effective date of cancellation. The mailing of such notice shall be sufficient and the effective date of cancellation shall become the end of the policy period. We shall maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service. The notice shall state the reason or reasons for cancellation.

Should we decide to nonrenew this policy, then we shall mail written notice of nonrenewal to you, your agent or broker of record at the last address known to us and any mortgagee or lienholder, if known. We shall mail such notice at least sixty (60) days before the end of the policy period. The notice shall state the reason or reasons for nonrenewal. The mailing of such notice shall be sufficient and we shall maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial delivery service.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-ARB-1 IL (6/03)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**BINDING ARBITRATION**

Wherever, used in this endorsement: 1) "we", "us", "our", and "insurer" mean the insurance company which issued this policy; and 2) "you", "your", "named insured", "first named insured", and "insured" mean the Named Corporation, the Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "other insured(s)" means all other persons or entities afforded coverage under this policy.

This endorsement modifies coverage provided under the Coverage Part to which it is attached.

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then provided that it is agreed upon by both parties, the matter may be submitted for arbitration.  In lieu of arbitration, the insured may elect the option of filing a lawsuit to resolve the matter.

If both parties mutually agree to the voluntary arbitration procedure, then each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.  Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding.

All other terms of the policy remain unchanged.

PI-SAM-008 (05/19)

# ABUSIVE CONDUCT LIABILITY COVERAGE FORM

## PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine your rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED**.

Within the context of this coverage form, "this insurance" refers to the coverage provided by this Abusive Conduct Liability Coverage Form.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION VI – DEFINITIONS**.

**SECTION I – COVERAGE**

**A. ABUSIVE CONDUCT LIABILITY COVERAGE**

   **1. Insuring Agreement**

      **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" to which this insurance applies caused by:

         **(1)** "Abusive conduct";

         **(2)** The negligent:

            **(a)** Employment;

            **(b)** Selection;

            **(c)** Investigation;

            **(d)** Supervision;

            **(e)** Reporting to the proper authorities, or failure to so report; or

            **(f)** Retention

         of any "employee," "volunteer worker" or any other person or persons for whom the

         insured is or ever was legally responsible and whose conduct would be covered by **(1)**

         above;

         **(3)** The negligent:

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

    **(a)** Placement of adoptive or foster children;

    **(b)** Selection or training of adoptive or foster parents; or

    **(c)** Supervision of adoptive or foster parents,

    that gives rise to "claims" of "abusive conduct";

**(4)** The negligent:

    **(a)** Design;

    **(b)** Control;

    **(c)** Maintenance;

    **(d)** Supervision;

    **(e)** Inspection; or

    **(f)** Investigation

    of prospective tenants of your premises; premises in your control; or premises you have

    leased to another that gives rise to "claims" of "abusive conduct"; or

**(5)** The negligent failure to provide professional services or neglect of the therapeutic needs of a client, patient or other person because of "abusive conduct."

Subject to the above provisions, we have the right and duty to defend any "suit" seeking "damages" to which this insurance applies. However, we have no duty to defend the insured

against any "suit" seeking "damages" to which this insurance does not apply. We may at our discretion, investigate and settle any "claim" of "abusive conduct" and any "suit" that may result. But:

    **(i)** The amount we will pay for "damages" is limited as described in **SECTION III –**

    **LIMITS OF INSURANCE**; and

    **(ii)** Our right and duty to defend end when we have used up our applicable limit of

    insurance in the payment of "damages."

We will pay, with respect to any "claim" we investigate or "suit" we defend, any "defense

costs" we incur. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for in **B. EMPLOYEE AND VOLUNTEER WORKER**

**DEFENSE COVERAGE** below.

**b.** This insurance applies to "damages" because of "bodily injury" only if:

    **(1)** The "bodily injury" is caused by "abusive conduct" that takes place in the "coverage

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

territory"; and

**(2)** The "abusive conduct" first occurs during the policy period.

**c.** "Damages" because of "bodily injury" include "damages" claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**2. Exclusions**

This insurance does not apply to:

**a.** Any "claim" or "suit" against any person who personally takes part in any "abusive conduct";

**b.** Any "claim" or "suit" against any person who intentionally fails to report "abusive conduct" committed by an "employee," "volunteer worker" or any other person for whom any insured is legally responsible;

**c.** Any "claim" or "suit" against any person who commits an intentional or criminal act;

**d.** Any "claim" or "suit" against any "employee," "volunteer worker" or any other person for whom any insured is or ever was legally responsible if at the time of this policy's inception any insured was aware of actual or alleged "abusive conduct" by such person;

**e.** Liability assumed by the insured under any contract or agreement;

**f.** Any obligation for which an insured, or any insurance carrier of the insured, may be held liable under a workers compensation, disability benefits or unemployment compensation law or any similar law;

**g.** Any "claim" or "suit" arising out of matters which may be deemed uninsurable;

**h.** Any "claim" made against an insured by another insured except a "claim" made by an insured who is an "employee" or "volunteer worker," subject to Exclusion i. below;

**i.** Any "claim" made by or on behalf of:

**(1)** Your "employee" or "volunteer worker";

**(2)** The spouse, child, parent, brother or sister of an "employee" or "volunteer worker" as a consequence of "abusive conduct" to that person; or

**(3)** Any applicants for employment or former "employees" or "volunteer workers."

However, this exclusion does not apply in the limited instance where your "employee" or "volunteer worker" is also your client and receiving services falling within the official scope of

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

the services which you provide and the "claim" arises out of the provision of these services;

j.  Any "defense costs" associated with a criminal trial including appeals;

k.  "Abusive conduct" that predates the inception of this policy notwithstanding that such "abusive conduct" may continue into this policy period;

l.  Any "claim" arising out of, based upon or attributable to:

    (1) Any litigation or demand against an insured pending on or before the inception of this policy, including any future litigation or demand based on the prior or pending litigation that is derived from the same or essentially the same facts as alleged in such prior litigation;

    (2) Any "abusive conduct," fact, circumstance or situation which has been the subject of any written notice given under any other policy of insurance prior to inception of this policy; or

    (3) Any "abusive conduct," fact, circumstance or situation of which, as of the inception of this policy, the insured had knowledge and from which the insured could reasonably expect a "claim" to arise; or

m.  Any "claim" or "suit" arising out of sexual discrimination and/or sexual harassment, whether asserted under any federal or state statute or the common or civil law of any jurisdiction.

**B.  EMPLOYEE AND VOLUNTEER WORKER DEFENSE COVERAGE**

We will also pay on your behalf "defense costs" for an "employee" or "volunteer worker" who is alleged to be directly involved in "abusive conduct" until such time as that individual is adjudicated to be a wrongdoer or enters a plea of no-contest.

This coverage does not apply to any "employee" or "volunteer worker" who knowingly allows the "abusive conduct."

**SECTION II – WHO IS AN INSURED**

A.  You are an insured.

B.  Each of the following is also an insured:

    1.  Your directors, but only for liability arising from their duties as your directors;

    2.  Your "employees," but only for liability arising within the scope of their employment duties for you;

    3.  Your "volunteer workers" but only for liability arising within the scope of their volunteer duties related to the conduct of your organization; and

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

4. Students in training, but only for liability arising within the scope of their duties related to the conduct of your organization.

**SECTION III – LIMITS OF INSURANCE**

A. The limit of insurance shown in the Declarations and the rules below fix the most we will pay for all "damages" regardless of the number of:

1. Insureds;

2. "Claims" made or "suits" brought; or

3. Persons or organizations making "claims" or bringing "suits."

B. The Each Abusive Conduct Limit shown in the Declarations is the most we will pay for each "abusive conduct" incident regardless of the number of incidents involved. Two or more "claims" for "damages" because of the same "abusive conduct" shall be:

1. Considered a single "claim"; and

2. Such "claims," whenever made, shall be assigned to only one policy (whether issued by us or any other insurer) and if that is this policy, only one Each Abusive Conduct limit of insurance shall apply.

C. The aggregate limit shown in the Declarations is, subject to Paragraph **B.** of this section, the total limit of our liability for all "damages" to which this insurance applies.

Multiple incidents of "abusive conduct" which take place over multiple policy periods for which this coverage is provided shall be deemed to constitute one "abusive conduct" and shall be deemed to occur only at the time of such first incident. Coverage for such "abusive conduct" shall be provided only under the policy, if any, which is in place at the time of the first such incident and shall be subject to the applicable limit of insurance in that one policy.

The aggregate limit of this Coverage Part applies separately to each consecutive annual period of this policy; and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations; unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the limit of insurance.

**SECTION IV – DEDUCTIBLE**

A. Our obligation to pay "damages" on your behalf applies only to the amount of "damages" in excess of the applicable deductible amount shown in the Declarations.

B. The Deductible applies to all "damages" that are the result of any "claim" of "abusive conduct."

C. The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those "damages"; and

2. Your duties in the event of an incident, "claim," or "suit"

apply irrespective of the application of the deductible amount.

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**SECTION V – ABUSIVE CONDUCT LIABILITY CONDITIONS**

**A. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**B. Duties In the Event of an Incident, Claim or Suit**

1. If a "claim" is made or "suit" is brought against any insured, you must provide us with written notice of the "claim" or "suit" as soon as practicable, but no later than 60 days after the "claim" is made or "suit" is brought.

2. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement or defense of the "claim" or "suit" including the release of any personnel records of the person(s) allegedly involved in the "abusive conduct"; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "abusive conduct" to which this insurance may also apply.

3. No insureds will, except at their own cost, and without recourse to this policy, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**C. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

1. To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

2. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover as a result of an "agreed settlement" or on a final judgment against an insured obtained after an actual trial, but we will not be liable for "damages"

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.

**D. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this

Coverage Part, our obligations are limited as follows:

1. **Primary Insurance**

   This insurance is primary except when **2.** below applies. If this insurance is primary, our

   obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in **3.** below.

2. **Excess Insurance**

   If any insured has other insurance providing coverage similar to this insurance, then this insurance shall be excess over and above that other insurance except where such insurance is specifically designated as excess to this policy.

   When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

   When this insurance is excess over other insurance, we will pay only our share of the amount of

   the loss, if any, that exceeds the sum of:

   a. The total amount that all such other insurance would pay for the loss in the absence of this

      insurance; and

   b. The total of all deductible and self-insured amounts under all that other insurance.

   We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision.

3. **Method of Sharing**

   If all of the other insurance permits contribution by equal shares, we will follow this method also.

   Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

   If any of the other insurance does not permit contribution by equal shares, we will contribute by

   limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limit of insurance of all insurers.

**E. Premium Audit**

1. We will compute all premiums for this Coverage Part in accordance with our rules and rates;

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

2. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured; and

3. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**F. Representations**

By accepting this policy, the insured agrees:

1. The statements in the Declarations, and in the application for insurance are accurate and complete;

2. Those statements are based upon representations made by the insureds; and

3. We have issued this policy in reliance upon those representations.

**G. Transfer of Rights of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**H. Two Or More Coverage Parts Or Policies Issued By Us**

It is our stated intention that the various coverage parts or policies issued to you by us, or any company affiliated with us, do not provide any duplication or overlap of coverage for the same "claim" or "suit." We have exercised diligence to draft our coverage parts and policies to reflect this intention, but should the circumstances of any "claim" or "suit" give rise to such duplication or overlap of coverage, then, notwithstanding any other provision of this or any other policy, if this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same "abusive conduct," professional incident, occurrence, offense, wrongful act, accident or loss, "claim" or "suit," the maximum limit of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limit of insurance under any one coverage part or policy.

This condition does not apply to any Excess or Umbrella policy issued by us specifically to apply as excess insurance over this policy.

**I. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION VI – DEFINITIONS**

A.  "Abusive conduct" means all actual, threatened or alleged acts of physical abuse, sexual abuse,

sexual molestation, sexual misconduct, sexual exploitation, or sexual injury arising out of a single act, or continuous or repeated exposure of one person or two or more people to multiple acts, of a sexual

nature committed by:

1.  One person; or

2.  Two or more people acting together or in related acts or series of acts.

Any act or multiple, continuous, related or repeated acts of "abusive conduct" by one person or two or more people acting together will be deemed one "abusive conduct" and will be deemed to occur only when the first "abusive conduct" takes place, regardless of:

   a.  The number of people injured;

   b.  The time period, including multiple policy periods, over which the "abusive conduct" took place;

   c.  The number of such acts; or

   d.  Whether, in the case of two or more people acting together, each such person participated

       in each act.

B.  "Agreed settlement" means a settlement and release of liability signed by the insured and the claimant or the claimant's legal representative, and approved by us.

C.  "Bodily injury" means bodily injury, sickness or disease sustained by a person. "Bodily injury" includes mental anguish, mental injury, shock, fright or death resulting from physical injury or "abusive conduct."

D.  "Claim" means any written demand for monetary relief.

E.  "Coverage territory" means:

1.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

2.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph 1. above; or

3.  All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in Paragraph 1. above but is away for a short period of time on your business;

provided the insured's responsibility to pay "damages" is determined in a "suit" on the merits, in the territory described in Paragraph 1. above or in a settlement to which we agree.

F.  "Damages" means a monetary:

PI-SAM-008 (05/19)

Page 9 of 10
©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

1. Judgment;

2. Award; or

3. Settlement,

but does not include fines, sanctions, penalties, punitive or exemplary damages or the multiple

portion of any damages.

G. "Defense costs" mean any costs to investigate a "claim" or defend a "suit" seeking "damages."

These costs are outside the limits of insurance.

H. "Employee" includes a "leased worker" or a "temporary worker."

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.

J. "Suit" means a civil proceeding in which "damages" because of "abusive conduct" to which this

insurance applies are alleged. "Suit" also includes:

1. An arbitration proceeding in which such "damages" are claimed and to which you must submit or do submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such "damages" are claimed and to

which you submit with our consent.

K. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

L. "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

Hearing Date: 3/23/2026 10:00 AM
Location: Richard J Daley Center
Judge: Wilson, Thaddeus L

2026CH00528

FILED
1/20/2026 8:44 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00528
Calendar, 1
36250461

# Exhibit J

FILED DATE: 1/20/2026 8:44 AM   2026CH00528



**PHILADELPHIA**
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004
610.617.7900 • Fax 610.617.7940 • PHLY.com

09/22/2022

Remedial Environmental Manpower, Inc
7239 W. Roosevelt Rd
Forest Park, IL 60130-2471

**Re: PHPK2459846**

Dear Valued Customer:

Thank you very much for choosing Philadelphia Insurance Companies (PHLY) for your insurance needs. Our A++ (Superior) AM Best financial strength rating is one reason why over 700,000 policyholders have put their trust in us. We invite you to experience The PHLY *Difference,* which includes:

- Exceptional Customer Service
- Complimentary & Tailored Risk Management
- Best in Class Claims Experience
- Industry Leading Coverage
- Team PHLY Working for You!

We realize you have a choice in insurance companies, and we truly appreciate your business.
Welcome to TeamPHLY, and please visit us at PHLY.com to learn more about The PHLY *Difference*!

Sincerely,

John W. Glomb, Jr.
President & CEO
Philadelphia Insurance Companies

JWG/sm

Philadelphia Consolidated Holding Corp. • Philadelphia Indemnity Insurance Company • Tokio Marine Specialty Insurance Co • Maguire Insurance Agency, Inc.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL L 001 02 13

# NOTICE OF AN OCCURRENCE, OFFENSE OR CLAIM

| SECTION I – TYPE OF NOTICE |
|---|

**What type of notice is this?** (Check and complete all that apply.)

| | | |
|---|---|---|
| ☐ Occurrence | Date: | Time: |
| ☐ Offense | Date: | Time: |
| ☐ Claim | Date: | |

**Was the occurrence or offense previously reported to us?** ☐ Yes ☐ No
If Yes, provide the claim or reference number if available:
**Was it previously reported to another insurer?** ☐ Yes ☐ No
If Yes, provide the name of that insurer and the claim or reference number if available:

| SECTION II – AGENT OR BROKER INFORMATION |
|---|

**Name of Agent or Broker:**
**Address:**

| | |
|---|---|
| **Daytime Phone No.:** | **Evening Phone No.:** |
| **E-Mail Address:** | **Fax No.:** |
| **Agency Code:** | **Agency Subcode:** |

| SECTION III – NAMED INSURED AND PERSON TO CONTACT INFORMATION |
|---|

**Named Insured:**
**Address:**

| | |
|---|---|
| **Daytime Phone No.:** | **Evening Phone No.:** |
| **E-Mail Address:** | **Fax No.:** |
| **Agency Customer ID:** | **Site or Location Code:** |

**Name of Contact** (if different from Named Insured):
**Address:**

| | |
|---|---|
| **Daytime Phone No.:** | **Evening Phone No.:** |
| **E-Mail Address:** | **Fax No.:** |

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

## SECTION IV – POLICY INFORMATION

**Insurance Company:**
**Policy No.:**
**Policy Effective Date:**                          **Policy Expiration Date:**
**Type of Policy:**

☐ **General Liability (GL)**      ☐ **Businessowners**                    ☐ **Farm**
☐ **Farm Umbrella**              ☐ **Commercial Liability Umbrella (CLU)**
☐ **Other** (Describe):

**Is this a claims-made policy?**                                    ☐ Yes  ☐ No
If Yes, provide the Retroactive Date (enter none, if no date is applicable):

## SECTION V – OCCURRENCE OR OFFENSE INFORMATION

**Location of occurrence or offense** (include City and State):


**Description of occurrence or offense:**


**Authorities contacted** (if applicable):


**List all involved insureds:**

## SECTION VI – PREMISES INFORMATION
### (If Occurrence or Claim is related to premises)

**The Named Insured is the:**

☐ **Owner**          ☐ **Tenant**          ☐ **Contractor**
☐ **Other** (Describe):

**Description of the premises or jobsite:**


If the Named Insured is not the owner, provide the owner's Name and Address:
**Name:**
**Address:**


**Daytime Phone No.:**                          **Evening Phone No.:**
**Is the occurrence or claim related to completed operations?**      ☐ Yes  ☐ No

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

### SECTION VII – PRODUCT INFORMATION
(If Occurrence or Claim is related to a product)

**The Named Insured is a:**

☐ **Manufacturer**          ☐ Retailer          ☐ Distributor

☐ **Other** (Describe):

**Description of Product** (include Type and Model Number if available):

**Is the product part of a batch?**                                        ☐ Yes ☐ No
**Is the product a component part of another product?**          ☐ Yes ☐ No
If Yes, please describe:

If the insured is not the manufacturer, provide the manufacturer's Name and Address:
**Name:**
**Address:**

**Daytime Phone No.:**                          **Evening Phone No.:**
**Location of product that caused the injury or damage:**

### SECTION VIII – PROPERTY DAMAGE CLAIM INFORMATION
(If applicable)

**Name of Owner of Damaged Property:**
**Address:**

**Daytime Phone No.:**                          **Evening Phone No.:**
**Description of damaged property** (include Type or Model Number if available):

**Location of damaged property:**

**Estimate amount:** $                          **Time property can be examined:**
**Describe the incident that led to the property damage:**

Attach additional sheet(s) for multiple claims.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

| SECTION IX – INJURY CLAIM INFORMATION |
| :-- |
| (If applicable) |

**Name of Injured Person:**

**Address:**

| | |
| :-- | :-- |
| **Daytime Phone No.:** | **Evening Phone No.:** |
| **Age:**          **Sex:** | **Occupation:** |

**Name of Employer:**

**Address of Employer:**

---

**Description of Injury:**

If bodily injury was involved, was the injured person seen by medical personnel at the scene of the incident? If not, when?

If bodily injury was involved, where was the injured person taken after the incident?

**Describe the incident that led to the injury, including the injured person's activities when the incident took place:**

Attach additional sheet(s) for multiple claims.

| SECTION X – WITNESSES |
| :-- |
| (If applicable) |

**Name:**

**Address:**

| | |
| :-- | :-- |
| **Daytime Phone No.:** | **Evening Phone No.:** |

**Name:**

**Address:**

| | |
| :-- | :-- |
| **Daytime Phone No.:** | **Evening Phone No.:** |

Attach additional sheet(s) if necessary.

© Insurance Services Office, Inc., 2012          IL L 001 02 13

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

## SECTION XI – INFORMATION ON OTHER INSURANCE
(Whose policy may also apply to the claim)

**Insurance Company:**

**Named Insured:**

**Policy No.:**

**Policy Effective Date:**                          **Policy Expiration Date:**

**Type of Policy:**

☐ **General Liability (GL)**   ☐ **Businessowners**   ☐ **Farm**

☐ **Farm Umbrella**   ☐ **Commercial Liability Umbrella (CLU)**

☐ **Other** (Describe):

**Is this a claims-made policy?**   ☐ Yes   ☐ No

If Yes, provide the Retroactive Date (enter none, if no date is applicable):

**Are you an additional insured on this policy?**   ☐ Yes   ☐ No

**Limits of Insurance:**
(Fill in any that apply.)

| | |
|---|---|
| $ | **Each Occurrence** (Or Liability And Medical Expense Limit) |
| $ | **Damage To Premises Rented To You** (Any one premises) |
| $ | **Medical Expense** (Any one person) |
| $ | **Personal And Advertising Injury** |
| $ | **General Aggregate** |
| $ | **Products/Completed Operations Aggregate** |
| $ | **Other** |

Attach additional sheet(s) if more than two policies apply to the claim.

## SECTION XII – ADDITIONAL COMMENTS

## SECTION XIII – NAMES AND SIGNATURE

**Name of Person Reporting the Occurrence, Offense or Claim:**

**Name of Company or Agency Person Occurrence, Offense or Claim Is Reported To:**

**Signature of Insured/Agent or Broker:**

**Date:**

**FRAUD STATEMENT**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**FRAUD STATEMENT TO ALABAMA APPLICANTS**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution, fines or confinement in prison, or any combination thereof.

## FRAUD STATEMENT TO ARIZONA APPLICANTS

For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**FRAUD STATEMENT TO ARKANSAS APPLICANTS**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**FRAUD STATEMENT TO COLORADO APPLICANTS**

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**FRAUD STATEMENT TO DISTRICT OF COLUMBIA APPLICANTS**

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**FRAUD STATEMENT TO FLORIDA APPLICANTS**

Any person who knowingly, and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

**FRAUD STATEMENT TO HAWAII APPLICANTS**

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

**FRAUD STATEMENT TO IDAHO APPLICANTS**

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**FRAUD STATEMENT TO KANSAS APPLICANTS**

Any person who commits a fraudulent insurance act is guilty of a crime and may be subject to restitution, fines and confinement in prison. A fraudulent insurance act means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer or insurance agent or broker, any written statement as part of, or in support of, an application for insurance, or the rating of an insurance policy, or a claim for payment or other benefit under an insurance policy, which such person knows to contain materially false information concerning any material fact thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

**FRAUD STATEMENT TO KENTUCKY APPLICANTS**

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

© Insurance Services Office, Inc., 2012      IL L 001 02 13

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**FRAUD STATEMENT TO LOUISIANA APPLICANTS**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**FRAUD STATEMENT TO MAINE APPLICANTS**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or a denial of insurance benefits.

**FRAUD STATEMENT TO MARYLAND APPLICANTS**

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**FRAUD STATEMENT TO MINNESOTA APPLICANTS**

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**FRAUD STATEMENT TO NEW HAMPSHIRE APPLICANTS**

Any person who, with purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**FRAUD STATEMENT TO NEW JERSEY APPLICANTS**

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**FRAUD STATEMENT TO NEW MEXICO APPLICANTS**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**FRAUD STATEMENT TO OHIO APPLICANTS**

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**FRAUD STATEMENT TO OKLAHOMA APPLICANTS**

**WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**FRAUD STATEMENT TO OREGON APPLICANTS**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

In order for us to deny a claim on the basis of misstatements, misrepresentations, omissions or concealments on your part, we must show that:

**A.** The misinformation is material to the content of the policy;

**B.** We relied upon the misinformation; and

**C.** The information was either:

    **1.** Material to the risk assumed by us; or

    **2.** Provided fraudulently.

For remedies other than the denial of a claim, misstatements, misrepresentations, omissions or concealments on your part must either be fraudulent or material to our interests.

With regard to fire insurance, in order to trigger the right to remedy, material misrepresentations must be willful or intentional.

Misstatements, misrepresentations, omissions or concealments on your part are not fraudulent unless they are made with the intent to knowingly defraud.

**FRAUD STATEMENT TO PENNSYLVANIA APPLICANTS**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**FRAUD STATEMENT TO TENNESSEE APPLICANTS**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**FRAUD STATEMENT TO VIRGINIA APPLICANTS**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**FRAUD STATEMENT TO WASHINGTON APPLICANTS**

It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

IL L 002 02 13

# PROPERTY – NOTICE OF LOSS

| SECTION I – REPORT OF LOSS | | |
|---|---|---|
| **Was the loss previously reported to us?** | ☐ Yes | ☐ No |
| If Yes, provide the claim or reference number if available: | | |
| **Was it previously reported to another insurer?** | ☐ Yes | ☐ No |
| If Yes, provide the name of that insurer and the claim or reference number if available: | | |

| SECTION II – AGENT OR BROKER INFORMATION | |
|---|---|
| **Name of Agent or Broker:** | |
| **Address:** | |
| | |
| **Daytime Phone No.:** | **Evening Phone No.:** |
| **E-Mail Address:** | **Fax No.:** |
| **Agency Code:** | **Agency Subcode:** |

| SECTION III – NAMED INSURED AND PERSON TO CONTACT INFORMATION | |
|---|---|
| **Named Insured:** | |
| **Address:** | |
| | |
| **Daytime Phone No.:** | **Evening Phone No.:** |
| **E-Mail Address:** | **Fax No.:** |
| **Agency Customer ID:** | **Site or Location Code:** |
| **Name of Contact** (if different from Named Insured): | |
| **Address:** | |
| | |
| **Daytime Phone No.:** | **Evening Phone No.:** |
| **E-Mail Address:** | **Fax No.:** |

| SECTION IV – POLICY INFORMATION | | | |
|---|---|---|---|
| **Insurance Company:** | | | |
| **Policy No.:** | | | |
| **Policy Effective Date:** | **Policy Expiration Date:** | | |
| **Type of Policy:** | | | |
| ☐ **Property** | ☐ **Businessowners** | ☐ **Flood** | ☐ **Wind** |
| ☐ **Other** (Describe): | | | |

*(left margin, vertical)* FILED DATE: 1/20/2026 8:44 AM 2026CH00528

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

## SECTION V – LOSS INFORMATION

**Date and Time of Loss:**

**Location of Loss** (Include City and State):

**Specify the Cause of Loss** (Fire, Lightning, Hail, Theft, Wind, etc.):

**Description of Loss:**

**Authorities Contacted** (if applicable):

## SECTION VI – WITNESSES
### (if applicable)

**Name:**
**Address:**

**Daytime Phone No.:**                          **Evening Phone No.:**

**Name:**
**Address:**

**Daytime Phone No.:**                          **Evening Phone No.:**

Attach additional sheet(s) if necessary.

## SECTION VII – INFORMATION ON OTHER INSURANCE
### (whose policy may also apply to the loss)

**Insurance Company:**
**Named Insured:**
**Policy No.:**
**Policy Effective Date:**                       **Policy Expiration Date:**
**Type of Policy:**

☐ **Property**          ☐ **Businessowners**          ☐ **Flood**          ☐ **Wind**
☐ **Other** (Describe):

**Are you an additional insured on this policy?**                          ☐ **Yes** ☐ **No**

Attach additional sheet(s) if more than two policies apply to the claim.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

| SECTION VIII – ADDITIONAL COMMENTS |
|---|
| |

| SECTION IX – NAMES AND SIGNATURE |
|---|
| **Name of Person Reporting the Loss:** |
| **Name of Company or Agency Person the Loss Is Reported To:** |
| **Signature of Insured/Agent or Broker:** |
| **Date:** |

## FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### FRAUD STATEMENT TO ALABAMA APPLICANTS

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution, fines or confinement in prison, or any combination thereof.

## FRAUD STATEMENT TO ARIZONA APPLICANTS

For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### FRAUD STATEMENT TO ARKANSAS APPLICANTS

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### FRAUD STATEMENT TO COLORADO APPLICANTS

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

### FRAUD STATEMENT TO DISTRICT OF COLUMBIA APPLICANTS

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

### FRAUD STATEMENT TO FLORIDA APPLICANTS

Any person who knowingly, and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

### FRAUD STATEMENT TO HAWAII APPLICANTS

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

### FRAUD STATEMENT TO IDAHO APPLICANTS

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### FRAUD STATEMENT TO KANSAS APPLICANTS

Any person who commits a fraudulent insurance act is guilty of a crime and may be subject to restitution, fines and confinement in prison. A fraudulent insurance act means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer or insurance agent or broker, any written statement as part of, or in support of, an application for insurance, or the rating of an insurance policy, or a claim for payment or other benefit under an insurance policy, which such person knows to contain materially false information concerning any material fact thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

### FRAUD STATEMENT TO KENTUCKY APPLICANTS

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

### FRAUD STATEMENT TO LOUISIANA APPLICANTS

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### FRAUD STATEMENT TO MAINE APPLICANTS

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or a denial of insurance benefits.

### FRAUD STATEMENT TO MARYLAND APPLICANTS

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### FRAUD STATEMENT TO MINNESOTA APPLICANTS

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### FRAUD STATEMENT TO NEW HAMPSHIRE APPLICANTS

Any person who, with purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### FRAUD STATEMENT TO NEW JERSEY APPLICANTS

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

### FRAUD STATEMENT TO NEW MEXICO APPLICANTS

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

### FRAUD STATEMENT TO OHIO APPLICANTS

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

### FRAUD STATEMENT TO OKLAHOMA APPLICANTS

**WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

© Insurance Services Office, Inc., 2012   IL L 002 02 13

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**FRAUD STATEMENT TO OREGON APPLICANTS**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

In order for us to deny a claim on the basis of misstatements, misrepresentations, omissions or concealments on your part, we must show that:

**A.** The misinformation is material to the content of the policy;

**B.** We relied upon the misinformation; and

**C.** The information was either:

    **1.** Material to the risk assumed by us; or

    **2.** Provided fraudulently.

For remedies other than the denial of a claim, misstatements, misrepresentations, omissions or concealments on your part must either be fraudulent or material to our interests.

With regard to fire insurance, in order to trigger the right to remedy, material misrepresentations must be willful or intentional.

Misstatements, misrepresentations, omissions or concealments on your part are not fraudulent unless they are made with the intent to knowingly defraud.

**FRAUD STATEMENT TO PENNSYLVANIA APPLICANTS**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**FRAUD STATEMENT TO TENNESSEE APPLICANTS**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**FRAUD STATEMENT TO VIRGINIA APPLICANTS**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**FRAUD STATEMENT TO WASHINGTON APPLICANTS**

It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

IL N 001 09 03

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

# PHLY Customer Service

## VISIT MyPHLY.COM TO GET STARTED



### MyPHLY ONLINE PORTAL

- Enhanced Self Service Options and Mobile Browsing
- View Payment History, Invoices, and Policy Documents
- Report and Search Claims
- Direct Deposit Commission Payments
- Edit User Profile and Contact Information



### DIRECT CUSTOMER BILLING BENEFITS

- Receive invoice direct from PHLY
- Go Paperless with e-billing
- Never forget a payment with PHLY Recurring Payments
- Flexible Payment Plans
- Automated Payment Application for faster processing



### PAYMENT OPTIONS

- Online – PHLY.com/MyPHLY
- Phone – 877.438.7459, option 1
- Mail – P.O. Box 70251, Philadelphia, PA 19176-0251



### ON DEMAND CUSTOMER SERVICE ACCESS

- Live Chat - PHLY.com
- Phone - 877.438.7459
- Email - service@phly.com
- Hours: Monday - Friday 8:30 a.m. - 8:00 p.m. ET



PHILADELPHIA INSURANCE COMPANIES
A Member of the Tokio Marine Group

The PHLY *Difference*

800.873.4552
**PHLY.com**

Philadelphia Insurance Companies is the marketing name for the insurance company subsidiaries of the Philadelphia Consolidated Holding Corp., a Member of the Tokio Marine Group. Your insurance policy, and not the information contained in this document, forms the contract between you and your insurance company. If there is a discrepancy or conflict between the information contained herein and your policy, your policy takes precedence. All coverages are not available in all states due to state insurance regulations. Certain coverage(s) may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds. | © 2007-2019 Philadelphia Consolidated Holding Corp., All Rights Reserved.



**PHILADELPHIA**
INSURANCE COMPANIES

A Member of the Tokio Marine Group

# The PHLY *Difference*



## **PHLY**CustomerService

### Exceptional Customer Service
- Net Promoter Score among the industry's best
- Voice of the Customer empowers customer feedback
- Self Service at MyPHLY.com
- Direct Bill with payment plans
- Dedicated billing representative

## **PHLY** RISK MANAGEMENT SERVICES

### Complimentary & Tailored Risk Management
- PHLYTrac GPS Program
- SmarterNow Online Learning Management System
- Abuse Prevention Systems Program
- PHLYSense Temperature/Water Monitoring Program



### Best in class Claims Experience
- 96%+ Customer Satisfaction Rating
- Industry and Type-of-Loss Claims Specialists
- In-house Recovery and Subrogation
- Claim-specific reserving practices

## **TEAMPHLY**

### TEAM**PHLY** - working for you!
- Marketing/Underwriting/Account Management team advocating on your behalf
- Account Stewardship
- Giving back to local communities

### Industry Leading coverages
- Full Suite of coverages - package, automobile, umbrella, D&O, Cyber, A&H, Environmental, Surety
- Industry specific coverage enhancements
- Admitted & Non-admitted



*Hear what our agents are saying about their experience with The PHLY Difference.*

**Learn more:** ThePHLYDifference.com

**800.873.4552 | PHLY.com**

Philadelphia Insurance Companies is the marketing name for the insurance company subsidiaries of the Philadelphia Consolidated Holding Corp., a Member of the Tokio Marine Group. Coverage(s) described may not be available in all states and are subject to underwriting and certain coverage(s) may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds. | © 2021 Philadelphia Consolidating Holding Corp., All Rights Reserved.




TOKIO MARINE GROUP
*To Be a Good Company*

![PHILADELPHIA INSURANCE COMPANIES — A Member of the Tokio Marine Group]

# Risk Management Services

## PHLY RMS RESOURCES

Welcome to Philadelphia Insurance Companies (PHLY)! As a PHLY customer, your organization now has access to tools and services that can assist in your risk management efforts. Our Risk Management Services (RMS) Consultants can provide in-person assistance, from leading employee safety meetings to providing valuable guidance regarding safety best practices.

PHLY also provides various risk management tools and resources at little or no additional cost to your organization.

To access these resources, please take a moment to **register on our website**. If you already have an account on PHLY.com, please **log in** to access Risk Management Services resources.

### Risk Management Resources

We encourage you to explore the following risk management resources:

#### **PHLY**TRAC

**PHLYTrac:** PHLY's telematics tool providing an online dashboard that tracks location, speeding, hard breaking, and other fleet statistics - PROVIDED AT NO COST TO ELIGIBLE PHLY CUSTOMERS! **PHLY**TRAC

#### **PHLY**SENSE

The **PHLY**Sense System is a property monitoring tool that uses a sensor to provide immediate alerts to hazardous property conditions, such as low temperature or the presence of moisture. Provided at no cost to our customers with property coverage. **PHLY**SENSE

#### ABUSEPREVENTIONSYSTEMS

**Abuse Prevention Resources:** Online training and policy support to help improve the safety of child-serving operations (at no cost to our customers with Abuse coverage) Abuse Prevention System

#### IntelliCorp

**IntelliCorp:** Provides a discounted background check package as well as discounted pricing for add-on services, such as Motor Vehicle Reports (MVRs). IntelliCorp

#### SMARTER**NOW!**
RMS WEB-BASED TRAINING

**SmarterNow:** PHLY's no-cost Learning Management System that provides online training, assignment, and reporting capabilities. Trainings include defensive driver, discrimination in the workplace, security awareness, and many more SMARTER**NOW!**

#### WILSON ELSER

**Wilson Elser Hotline:** Provides two hours of legal consultation per occurrence. Provided at no cost for our Management and Professional and EPLI policyholders. Wilson Elser

## CONTACT

For questions about your organization's risk management needs and information on PHLY's Risk Management Services please contact PHLY RMS:
Phone: 1.800.873.4552 #4 (Mon-Fri 8:30 a.m. - 5:00 p.m. ET)
E-mail: phlyrms@phly.com

## 800.873.4552 | **PHLY.com**          The PHLY *Difference*

Philadelphia Insurance Companies is the marketing name for the insurance company subsidiaries of the Philadelphia Consolidated Holding Corp., a Member of the Tokio Marine Group. Coverage(s) described may not be available in all states and are subject to underwriting and certain coverage(s) may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds. | © 2021 Philadelphia Consolidated Holding Corp. All Rights Reserved.

  TOKIO MARINE GROUP To Be a *Good Company*

Ed. 022021



**PHILADELPHIA**
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

# Philadelphia Indemnity Insurance Company

# Commercial Lines Policy

THIS POLICY CONSISTS OF:

— DECLARATIONS
— COMMON POLICY CONDITIONS
— ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
• ONE OR MORE COVERAGE FORMS
• APPLICABLE FORMS AND ENDORSEMENTS

BJP-190-1 (12-98)

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless signed by our authorized representative.

John W. Glomb, Jr.
President & CEO

Secretary

BJP-190-1 (12-98)

FILED DATE: 1/20/2026 8:44 AM   2026CH



# Risk Management Services

## POLICYHOLDER NOTICE (LOSS ASSISTANCE HOTLINE)

As a free service benefit to its policyholders, PHLY has partnered with nationally recognized law firm Wilson, Elser, Moskowitz, Edelman & Dicker LLP (WEMED), to offer a toll-free Loss Assistance Hotline. The telephone number is 877.742.2201 or you can contact a WEMED attorney online at: apps.wilsonelser.com/pic/. This hotline provides you with 2 free hours of legal consultation with a knowledgeable attorney on any matter that you feel could result in a Claim under your professional or management liability policy. The Loss Assistance Hotline is NOT a Claim reporting service. To report a Claim, follow the Claim reporting instructions in your policy and also notify your insurance agent. If you have any questions concerning the Loss Assistance Hotline, please contact us at 800.759.4961 x2967.



Wilson Elser Moskowitz Edelman & Dicker LLP

## 800.873.4552

Philadelphia Insurance Companies is the marketing name for the insurance company subsidiaries of the Philadelphia Consolidated Holding Corp., a Member of the Tokio Marine Group. Your insurance policy, and not the information contained in this document, forms the contract between you and your insurance company. If there is a discrepancy or conflict between the information contained herein and your policy, your policy takes precedence. All coverages are not available in all states due to state insurance regulations. Certain coverage(s) may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds. | © 2013 Philadelphia Insurance Companies. All Rights Reserved.





**ILLINOIS COMPLAINT NOTICE**

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

1.  You may call Philadelphia Indemnity Insurance Company's toll-free telephone number for information or to make a complaint at:

    **1-877-438-7459**

2.  You may also write to Philadelphia Indemnity Insurance Company at:

    One Bala Plaza, Suite 100
    Bala Cynwyd, PA 19004
    FAX # (610) 617-7940

3.  You may write to the Illinois Department of Insurance at:

    Illinois Department of Insurance
    Consumer Division
    122 S. Michigan Avenue
    19th Floor
    Chicago, Illinois 60603

    OR

    Illinois Department of Insurance
    320 West Washington Street
    Springfield, Illinois 62767

4.  **ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

PI-Illinois Complaint Notice (05-20)

IL N 175 11 11

# ILLINOIS NOTICE TO POLICYHOLDERS REGARDING THE RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT

Dear Policyholder:

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be provided coverage.

**PHILADELPHIA**
INSURANCE COMPANIES

A Member of the Tokio Marine Group

PI-FEES-NOTICE 1 (11/19)

# NOTICE
# LATE FEE
# NON-SUFFICIENT FUNDS FEE
# REINSTATEMENT FEE

**Late Fee**
Please be advised that if your payment is late (payment is not received within five days of the payment due date indicated on the invoice), you will be charged a late fee of $25* (where permitted).

**Non-Sufficient Funds Fee**
Please be advised that if your payment is returned for non-sufficient funds, you will be charged a fee of $25** (where permitted).

**Reinstatement Fee**
Please be advised that if your policy is cancelled due to non-payment of the premium and we agree to reinstate your policy, you will be charged a reinstatement fee of $50*** (where permitted).

These fees are in addition to any premium owed on the policy and each fee can apply more than once during the policy term.

*$10 in Florida, Maryland, South Carolina

**$15 in Florida and $20 in New York

***$25 in Delaware, Georgia, New Hampshire and New Mexico; and $15 in Kansas and Nebraska

PI-FEES-NOTICE 1 (11/19)

Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

# ADVISORY NOTICE TO POLICYHOLDERS
## COMMERCIAL PROPERTY COVERAGE
## COMMERCIAL GENERAL LIABILITY COVERAGE
## PROFESSIONAL LIABILITY COVERAGE
## COMMERCIAL UMBRELLA LIABILITY COVERAGE

### NOTICE OF REDUCTION IN COVERAGE

This is a summary of changes in your policy. No coverage is provided by this summary nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

The major areas within the policy that broaden or reduce coverage, and other changes, are highlighted below. This notice does not reference every editorial change made in your policy.

The material in this notice makes reference to endorsement numbers; however, not all forms are included in a particular policy. You should review your Declarations to see what form(s) apply to your policy.

Your policy is being renewed with one or more of the following endorsements:

**EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA ENDORSEMENT – CP 01 40 07 06**

**ALASKA – EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA – CP 01 81 01 08**

**MASSACHUSETTS – EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA – CP 01 76 09 06**

**NEW YORK – EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA – CP 01 78 08 08**

This endorsement makes an explicit statement regarding a risk that is not covered under your Commercial Property or Ultimate Cover insurance. It points out that there is no coverage under such insurance for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. The exclusion in this endorsement applies to all coverages provided by your Commercial Property or Ultimate Cover insurance, including (if any) property damage and business income coverage.

**COMMUNICABLE DISEASE EXCLUSION ENDORSEMENT – CG 21 32 05 09**

**COMMUNICABLE DISEASE EXCLUSION – ILLINOIS – PI-GL-037 IL (04/20)**

**COMMUNICABLE DISEASE EXCLUSION – WASHINGTON – PI-GL-037 WA (04/20)**

This endorsement excludes coverage for liability arising out of the actual or alleged transmission of a communicable disease which includes but is not limited to, COVID-19.

PI-VIRUSNOTICE 1 (06/21)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

**ABSOLUTE COMMUNICABLE DISEASE EXCLUSION – PROFESSIONAL LIABILITY – PI-PROF-002 (06/20)**

**ABSOLUTE COMMUNICABLE DISEASE EXCLUSION – PROFESSIONAL LIABILITY – GEORGIA – PI-PROF-002 GA (11/20)**

**ABSOLUTE COMMUNICABLE DISEASE EXCLUSION – PROFESSIONAL LIABILITY – ILLINOIS – PI-PROF-002 IL (06/20)**

**ABSOLUTE COMMUNICABLE DISEASE EXCLUSION – PROFESSIONAL LIABILITY – MONTANA – PI-PROF-002 MT (06/20)**

**ABSOLUTE COMMUNICABLE DISEASE EXCLUSION – PROFESSIONAL LIABILITY – PENNSYLVANIA – PI-PROF-002 PA (06/20)**

This endorsement excludes coverage for professional liability arising out of the actual or alleged transmission of a communicable disease which includes, but is not limited to, COVID-19.

If you have also purchased a Commercial Umbrella Liability Policy, the following may also apply:

**ABSOLUTE COMMUNICABLE DISEASE EXCLUSION – PI-CXL-132 (06/20)**
**ABSOLUTE COMMUNICABLE DISEASE EXCLUSION – ALASKA – PI-CXL-132 AK (06/20)**
**ABSOLUTE COMMUNICABLE DISEASE EXCLUSION – ILLINOIS – PI-CXL-132 IL (06/20)**
**ABSOLUTE COMMUNICABLE DISEASE EXCLUSION – WASHINGTON – PI-CXL-132 WA (01/21)**

This endorsement adds an exclusion to the Umbrella for claims related to the actual or alleged transmission of a communicable disease which includes, but is not limited to, COVID-19.

**GENERAL LIABILITY FOLLOW FORM ENDORSEMENT – PI-CXL-041 (05/16)**
**GENERAL LIABILITY FOLLOW FORM ENDORSEMENT – PI-CXL-041 AK (05/16)**
**GENERAL LIABILITY FOLLOW FORM ENDORSEMENT – PI-CXL-041 NY (05/16)**
**GENERAL LIABILITY FOLLOW FORM ENDORSEMENT – PI-CXL-041 VA (05/16)**

This endorsement indicates that any General Liability insurance provided in the Umbrella will follow the same provisions, exclusions and limitations as those that are contained in your underlying General Liability policy. Coverage under your Umbrella policy will not be any broader than what is provided in your underlying General Liability policy.

PI-VIRUSNOTICE 1 (06/21)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PP 20 20 (02/20)

ALL COMMERCIAL LINES

# PRIVACY NOTICE FOR COMMERCIAL LINES

**This notice is provided on behalf of Philadelphia Indemnity Insurance Company**

## PURPOSE OF THIS NOTICE

When you apply for or become an insured under, the insurance policies we issue, we gather certain non-public information or "**NPI**" about your business and its employees. We are committed to safeguarding the NPI you entrust to us. The purpose of this notice is, therefore, to let you know how we collect, use, share and protect the NPI you provide to us in those contexts.

That means this notice applies only to your business interactions with us involving your application for a quote or as a policy holder. NPI we may collect from you in connection with other interactions, such as when you or your employees visit one of our general interest, publicly accessible websites, is governed by the separate notices and policies we publish on those relevant sites or otherwise provide to you.

When we refer in this notice to your "NPI", we mean non-public information as that term is generally defined and applied under the New York Department of Financial Services' Cybersecurity Regulation, the Gramm-Leach-Bliley Act and the National Association of Insurance Commissioners' Data Security Model Law which includes non-public information about your business, such as financial information, account numbers, loss history, personal non-public information of your employees including social security number, address or medical information and any proprietary information we obtain about your business or your customers.

Due to a variety of factors, including certain explicit exemptions they contain, this notice and the NPI we collect from you in connection with the above-described business interactions **_is not_** governed by the EU General Data Protection Regulation, its related EU and Swiss Privacy Shield or the California Consumer Privacy Act.

## COLLECTING YOUR NPI

In the course of, or as part of a business interaction, we collect your NPI both directly from you, or from the agents, brokers or other intermediaries acting on your or our behalf, as well as from a variety of additional sources including:

- the applications or other forms you provide to us (these forms may contain your name, address, social security number, marital status, date of birth, gender, length of employment, prior insurance information, home ownership, residency history, vehicle type, vehicle use, or driving history)
- your transactions with us, our other affiliates of the Tokio Marine Group as well as third parties (this information would include, for example, premium payment and claims history)
- consumer or independent reporting agencies (for example your motor vehicle report, property inspection report, accident report or claim report)

## USING YOUR NPI

We use your NPI in a variety of ways such as creating and issuing a quote, underwriting or otherwise processing and servicing your insurance policy, handling claims you may have and offering you additional products and services that we think may be of interest to you as well as for related research and analytics purposes.

PP 20 20 (02/20)

© Copyright 2020 Tokio Marine Management, Inc.

PP 20 20 (02/20)

**SHARING YOUR NPI**

We do not disclose or share any NPI about our customers or former customers outside of the Tokio Marine Group, except as permitted by law. We do not sell or disclose or share your NPI for third party marketing purposes. We do, however, share your NPI with third parties that we use to service your account or process your insurance policy or your claim, or administer related transactions. These third parties may include:

- your agent, broker or producer
- independent claims adjusters, investigators, data processors or attorneys
- persons or organizations that conduct scientific research, including actuarial or underwriting studies
- an insurance support organization or another insurer, to prevent or prosecute fraud or to properly underwrite the risk
- another insurer, if you are involved in an accident with their insured
- State insurance departments or other governmental or law enforcement authorities, if required by law, to protect our legal interests or in cases of suspected fraud or illegal activities
- a court of law

We also are required to disclose your NPI if we receive a subpoena, search warrant or other court order.

**RETAINING YOUR NPI**

The NPI we collect is kept in your policy and/or claim files for as long as needed in connection with your business interactions with you and, if longer, as required by law.

**HOW WE PROTECT YOUR NPI**

We have adopted and implemented a security and privacy program that includes technical, organizational, administrative, and other measures designed to protect, as required by applicable law and in accordance with industry standards, against reasonably anticipated or actual threats to the security of your NPI. Our security program was created by reference to widely recognized standards such as those published by the International Standards Organization and National Institute of Standards and Technology. It includes, among many other things, procedures for assessing the need for, and as appropriate, either employing encryption and multi-factor authentication or using equivalent compensating controls. As part of our security program, we have specific incident response and management procedures that are activated whenever we become aware that your NPI was likely to have been compromised.

**CHANGES TO THIS NOTICE**

We may amend this notice from time to time and will inform you of these changes as required by law.

**QUESTIONS AND CONTACT INFORMATION**

If you have any questions about this notice or how we collect, use, share and protect your NPI, please contact the Chief Privacy Officer of TMNA Services, LLC, who acts as the privacy and data security administrator for most of the Tokio Marine Group in North America. The Chief Privacy Officer's contact information is:

Attn: Privacy Office
TMNA Services, LLC
3 Bala Plaza East, Suite 400
Bala Cynwyd, Pennsylvania 19004
610-227-1300

© Copyright 2020 Tokio Marine Management, Inc.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528



## PHILADELPHIA INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

### Philadelphia Indemnity Insurance Company
### COMMON POLICY DECLARATIONS

**Policy Number:** PHPK2459846

**Named Insured and Mailing Address:**
Remedial Environmental Manpower, Inc
7239 W. Roosevelt Rd
Forest Park, IL 60130-2471

**Producer:** 4369
Marsh & McLennan Agency LLC
20 N Martingale Rd  Ste 100
Schaumburg, IL 60173

(847)944-9087
at 12:01 A.M. Standard Time at your mailing
address shown above.

**Policy Period From:** 09/01/2022  **To:** 09/01/2023

**Business Description:** Temporary Staffing Agencies

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS
INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | 3,381.00 |
| Commercial General Liability Coverage Part | 64,756.00 |
| Commercial Crime Coverage Part | |
| Commercial Inland Marine Coverage Part | |
| Commercial Auto Coverage Part | 20,988.00 |
| Businessowners | |
| Workers Compensation | |
| Private Company Protection | 59,133.00 |
| Crime Protection Plus | 12,926.00 |
| Employee Benefits | 300.00 |
| Professional Liability | 13,678.00 |
| Sexual/Physical Abuse | 3,787.00 |

**Total** $ **178,949.00**

Total Includes Federal Terrorism Risk Insurance Act Coverage     **1,509.00**

---

**FORM (S) AND ENDORSEMENT (S) MADE A PART OF THIS POLICY AT THE TIME OF ISSUE**
**Refer To Forms Schedule**

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations

CPD- PIIC (06/14)

Secretary

John W. Glomb, Jr.
President & CEO

## Philadelphia Indemnity Insurance Company

### Form Schedule – Policy

**Policy Number:** PHPK2459846

**Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:**

| Form | Edition | Description |
|---|---|---|
| BJP-190-1 | 1298 | Commercial Lines Policy Jacket |
| LAH-Notice | 0813 | Policyholder Notice (Loss Assistance Hotline) |
| PI-Illinois Complaint Notice | 0520 | ILLINOIS COMPLAINT NOTICE |
| IL N 175 | 1111 | Illinois Notice To Policyholders |
| PI-FEES-NOTICE 1 | 1119 | Notice Late/Non-Sufficient Funds/Reinstatement Fee |
| PP2020 | 0220 | Privacy Notice For Commercial Lines |
| CPD-PIIC | 0614 | Common Policy Declarations |
| Location Schedule | 0100 | Location Schedule |
| Mortgagee Schedule | 0100 | Mortgagee Schedule |
| Loss Payee Schedule | 0100 | Loss Payee Schedule |
| Additional Insured Schedule | 0100 | Additional Insured Schedule |
| Named Insured Sched | 0100 | Named Insured Schedule |
| PI-BELL-1 IL | 1109 | Bell Endorsement |
| PI-CME-1 | 1009 | Crisis Management Enhancement Endorsement |
| IL0017 | 1198 | Common Policy Conditions |
| IL0021 | 0908 | Nuclear Energy Liability Exclusion Endorsement |
| IL0118 | 0217 | Illinois Changes |
| IL0147 | 0911 | Illinois Changes - Civil Union |
| IL0162 | 1013 | Illinois Changes - Defense Costs |
| IL0284 | 0118 | Illinois Changes - Cancellation And Nonrenewal |
| IL0952 | 0115 | Cap On Losses From Certified Acts Of Terrorism |
| PI-ACL-001 | 1218 | Absolute Cyber Liability And Electronic Exclusion |
| PI-CANXAICH-002 P | 0511 | Canc Notice To Sched Addl Insd Or Cert Holder-Blanket |
| PI-PROF-002 IL | 0620 | Absolute Communicable Disease Exclusion - Prof Liab-IL |
| PI-SAM-018 | 0519 | Absolute Abuse or Molestation Exclusion |
| PI-TER-DN1 | 0121 | Disclosure Notice Of Terrorism Ins Coverage Rejection |

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

Philadelphia Indemnity Insurance Company

Locations Schedule

**Policy Number:** PHPK2459846

| Prems. No. | Bldg. No. | Address |
|---|---|---|
| 0001 | 0001 | 7239 W. Roosevelt Rd<br>Forest Park, IL 60130-2471 |
| 0002 | 0001 | 7241 W. Roosevelt Rd<br>Forest Park, IL 60130-2471 |
| 0003 | 0001 | 2424 Rose St<br>Franklin Park, IL 60131-3323 |
| 0004 | 0001 | 123 E Ogden Ave<br>Hinsdale, IL 60521-3550 |

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Philadelphia Indemnity Insurance Company

Mortgagee Schedule

**Policy Number:** PHPK2459846

Mortgagee

Belmont Bank & Trust Company
8250 W Belmont Ave
Chicago, IL 60634-2809

IL - Loc #1 - Bld #1 - BUILDING (OFFICE)

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Philadelphia Indemnity Insurance Company

Loss Payee Schedule

**Policy Number:** PHPK2459846

Loss Payee

Any person or organization who you are
required under a written contract or
written agreement to add to this policy
as a loss payee, as their interest may appear

Crime Protection Plus

Loss Payee

Belmont Bank & Trust Company
8250 W Belmont Ave
Chicago, IL 60634-2809

IL - Loc #1 - Bld #1 - BUSINESS PERS PROPERTY (OFFICE)

Loss Payee

Midwest Group Realty, LLC
7239 Roosevelt Rd
Forest Park, IL 60130-2471

IL - Loc #4

Philadelphia Indemnity Insurance Company

Additional Insured  Schedule

**Policy Number:** PHPK2459846

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Additional Insured

Midwest Group Realty, LLC
7239 Roosevelt Rd
Forest Park, IL 60130-2471

CG2011 - General Liability

Additional Insured

Midwest Group Realty, LLC
7239 Roosevelt Rd
Forest Park, IL 60130-2471

CP1219 - IL - Loc #1

Philadelphia Indemnity Insurance Company

Named Insured Schedule

**Policy Number:** PHPK2459846

Midwest Group Realty, LLC

Ideal Facilities Services LLC

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

Page    1    of    1

COMMERCIAL PROPERTY
CP P 003 07 06

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA
## ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) shall prevail.

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsement, which applies to your new or renewal policy being issued by us:

**Exclusion Of Loss Due To Virus Or Bacteria Endorsement CP 01 40 07 06**

This endorsement makes an explicit statement regarding a risk that is not covered under your Commercial Property insurance. It points out that there is no coverage under such insurance for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. The exclusion in this endorsement applies to all coverages provided by your Commercial Property insurance, including (if any) property damage and business income coverages.

CP P 003 07 06 © ISO Properties, Inc., 2006 Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

IL N 179 05 15

# ILLINOIS NOTICE AND WAIVER OF MINE SUBSIDENCE COVERAGE

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the Policy (including its endorsements), the provisions of the Policy (including its endorsements) shall prevail.

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning mine subsidence coverage, which applies to your new or renewal policy being issued by us.

**Notice Concerning The Waiver Of Mine Subsidence Coverage In Illinois**

Illinois law requires that every insurer that issues a new or renewal policy for a residence, commercial building or living unit must provide Mine Subsidence Coverage, unless waived in writing by the insured, and the insurer must continue to charge the premium level set for that coverage by the Illinois Mine Subsidence Insurance Fund.

This form shall serve as notice that if Mine Subsidence Coverage is in force when mine subsidence damage first becomes reasonably observable as confirmed by the Illinois Mine Subsidence Insurance Fund, coverage thereafter may not be necessary and is optional, but continued coverage on the damaged residence or commercial building shall terminate only upon written waiver by you. Mine subsidence premiums paid for coverage on a damaged residence or commercial building subsequent to the established date of loss shall be refunded within 60 days after you provide the following signed waiver of Mine Subsidence Coverage to us.

**Waiver Of Mine Subsidence Coverage In Illinois**

**I confirm that I have fully read and understood the aforementioned Notice.**

**I, the first named insured/applicant, have fully read and understood the above noted information and hereby: (check the following)**

☐ **affirmatively waive this offer.**

**I understand and agree that this waiver shall be construed to be applicable to the Policy or binder of insurance described below, on all future renewals of the Policy and on all replacement policies unless I make a written request for such coverage.**

**Name Of First Named Insured/Applicant:**

**Signature Of First Named Insured/Applicant:**

**Date:**

**Policy/Binder #:** PHPK2459846

**Insurer:** Remedial Environmental Manpower, Inc

**Producer Name:** Marsh & McLennan Agency LLC

**Producer Code:** 4369

IL N 179 05 15       © Insurance Services Office, Inc., 2014       **Page 1 of 1**

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

# Philadelphia Indemnity Insurance Company
## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Policy Number: PHPK2459846
Named Insured: Remedial Environmental Manpower, Inc

☒ See Supplemental Schedule          Agent # 4369

**BUSINESS DESCRIPTION:** Temporary Staffing Agencies

**DESCRIPTION OF PREMISES:**

| Prem. No. | Bldg No. | Location, Fire Protection/Construction and Occupancy |
|---|---|---|
| | | **SEE SCHEDULE ATTACHED** |

**COVERAGES PROVIDED:** Insurance at the described premises applies only for coverages for which a limit of insurance is shown or for which an entry is made.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Causes of Loss Form (1) | Coinsurance(2) | Deductible |
|---|---|---|---|---|---|---|
| | | **SEE SCHEDULE ATTACHED** | | | | |

**OPTIONAL COVERAGES:**

| Prem. No. | Bldg. No. | Coverage | Amount | Agreed Value Expiration Date | Replacement Cost Incl. Stock | Inflation Guard |
|---|---|---|---|---|---|---|
| | | **SEE SCHEDULE ATTACHED** | | | | |

**OPTIONAL COVERAGES: APPLIES TO BUSINESS INCOME ONLY**

| Prem. No. | Bldg. No. | Agreed Value Date | Agreed Value Amount | Monthly Limit of Indemnity (Fraction) | Maximum Period of Indemnity | Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|---|
| | | **SEE SCHEDULE ATTACHED** | | | | |

**DEDUCTIBLE:**
       **SEE SCHEDULE ATTACHED**

**MORTGAGE HOLDERS:**
**Refer To Mortgagee/Loss Payee Schedule**

**FORM(S) AND ENDORSEMENT(S) APPLICABLE TO THIS COVERAGE PART:**
**Refer To Forms Schedule**

**TOTAL PREMIUM FOR THIS COVERAGE PART $**     3,381.00

(1) EQ (if shown) = Earthquake     (2) Coinsurance %, Extra Expense %, Limits on Loss Payment or Value Reporting Form Symbol

_____     _____
Countersignature Date             Authorized Representative

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Philadelphia Indemnity Insurance Company

Form Schedule – Property

**Policy Number:** PHPK2459846

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

```
                          FORMS APPLICABLE TO ALL PREMISES AND COVERAGES

Form                        Edition   Description

CP P 003                    0706      Excl of Loss Due to Virus or Bacteria Advisory Notice
IL N 179                    0515      Illinois Notice And Waiver Of Mine Subsidence Coverage
Property Dec                0100      Property Declarations
Property Schedule           0100      Property Supplemental Schedule
CP0090                      0788      Commercial Property Conditions
CP0140                      0706      Exclusion Of Loss Due To Virus Or Bacteria
CP0149                      0607      IL Chgs-Artificially Generated Electrical Current Excl
CP1218                      1012      Loss Payable Provisions
CP1219                      0607      Additional Insured - Building Owner

                          FORMS APPLICABLE TO SPECIFIC PREMISES AND COVERAGES

Form                        Edition   Description

Property Blanket Schedule   0119      Property Blanket Schedule
     IL  PREMS 001 BLDG 001  BUILDING
                             BUSINESS PERS PROPERTY
                             BUSINESS INCOME-BASIC
     IL  PREMS 002 BLDG 001  BUSINESS PERS PROPERTY
                             BUSINESS INCOME-BASIC
     IL  PREMS 003 BLDG 001  BUSINESS PERS PROPERTY
                             BUSINESS INCOME-BASIC
     IL  PREMS 004 BLDG 001  BUSINESS PERS PROPERTY
                             BUSINESS INCOME-BASIC

CP0010                      1012      Building And Personal Property Coverage Form
     IL  PREMS 001 BLDG 001  BUILDING
                             BUSINESS PERS PROPERTY
     IL  PREMS 002 BLDG 001  BUSINESS PERS PROPERTY
     IL  PREMS 003 BLDG 001  BUSINESS PERS PROPERTY
     IL  PREMS 004 BLDG 001  BUSINESS PERS PROPERTY

CP0030                      1012      Business Income (And Extra Expense) Coverage Form
     IL  PREMS 001 BLDG 001  BUSINESS INCOME-BASIC
     IL  PREMS 002 BLDG 001  BUSINESS INCOME-BASIC
     IL  PREMS 003 BLDG 001  BUSINESS INCOME-BASIC
     IL  PREMS 004 BLDG 001  BUSINESS INCOME-BASIC
```

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Philadelphia Indemnity Insurance Company

Form Schedule – Property

**Policy Number:** PHPK2459846

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

```
                         FORMS APPLICABLE TO SPECIFIC PREMISES AND COVERAGES

Form                          Edition  Description

CP1030                          0917      Causes Of Loss - Special Form
     IL  PREMS 001 BLDG 001  BUILDING
                             BUSINESS PERS PROPERTY
                             BUSINESS INCOME-BASIC
     IL  PREMS 002 BLDG 001  BUSINESS PERS PROPERTY
                             BUSINESS INCOME-BASIC
     IL  PREMS 003 BLDG 001  BUSINESS PERS PROPERTY
                             BUSINESS INCOME-BASIC
     IL  PREMS 004 BLDG 001  BUSINESS PERS PROPERTY
                             BUSINESS INCOME-BASIC

PI-EPE-TS IL                    1210      Elite Property Enhancement: Temporary Staffing

PI-NP-007                       0401      Loss of Income Due to Workplace Violence
     IL  PREMS 001 BLDG 001  BUSINESS INCOME-BASIC
     IL  PREMS 002 BLDG 001  BUSINESS INCOME-BASIC
     IL  PREMS 003 BLDG 001  BUSINESS INCOME-BASIC
     IL  PREMS 004 BLDG 001  BUSINESS INCOME-BASIC
```

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

# Philadelphia Indemnity Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL SCHEDULE

Policy Number: PHPK2459846

Named Insured: Remedial Environmental Manpower, Inc          Agent # 4369

**DESCRIPTION OF PREMISES:**

| Prem. No. | Bldg. No. | Location, Fire Protection/Construction and Occupancy |
|---|---|---|
| 0001 | 001 | 7239 W. Roosevelt Rd Forest Park, IL 60130-2471 |
| | | OFFICE |
| | | PC 03          MASONRY NON-COMBUSTIBLE |
| 0002 | 001 | 7241 W. Roosevelt Rd Forest Park, IL 60130-2471 |
| | | OFFICE |
| | | PC 03          NON-COMBUSTIBLE |

**COVERAGES PROVIDED:** Insurance at the described premises applies only for coverages for which a limit of insurance is shown or for which an entry is made.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Causes of (1) Loss Form | Coinsurance(2) | Deductible |
|---|---|---|---|---|---|---|
| 0001 | 001 | BUILDING | BKT #01 | SPECIAL | BKT #01 | 5,000 |
| 0001 | 001 | BUSINESS PERS PROPERTY | BKT #02 | SPECIAL | BKT #02 | 5,000 |
| 0001 | 001 | BUSINESS INCOME-BASIC (2) | BKT #03 | SPECIAL | BKT #03 | 72 HR. |
| 0002 | 001 | BUSINESS PERS PROPERTY | BKT #02 | SPECIAL | BKT #02 | 5,000 |
| 0002 | 001 | BUSINESS INCOME-BASIC (2) | BKT #03 | SPECIAL | BKT #03 | 72 HR. |

**OPTIONAL COVERAGES:**

| Prem. No. | Bldg. No. | Coverage | Agreed Value Amount | Agreed Value Expiration Date | Replacement Cost | Incl. Stock | Inflation Guard |
|---|---|---|---|---|---|---|---|
| 0001 | 001 | BUILDING | | | (X) | | |
| 0001 | 001 | BUSINESS PERS PROPERTY | | | (X) | (X) | |
| 0002 | 001 | BUSINESS PERS PROPERTY | | | (X) | (X) | |

**OPTIONAL COVERAGES: APPLIES TO BUSINESS INCOME ONLY**

| Prem. No. | Bldg. No. | Agreed Value Date | Agreed Value Amount | Monthly Limit of Indemnity(Fraction) | Maximum Period of Indemnity | Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|---|
| | | | | | | |

**Deductible Exceptions:**

(1) EQ (if shown) = Earthquake          (2) Coinsurance %, Extra Expense %, Limits on Loss Payment or Value Reporting Form Symbol

(5) 10% or $5,000 minimum

# Philadelphia Indemnity Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL SCHEDULE

Policy Number: PHPK2459846
Named Insured: Remedial Environmental Manpower, Inc          Agent # 4369

**DESCRIPTION OF PREMISES:**

| Prem. No. | Bldg. No. | Location, Fire Protection/Construction and Occupancy |
|---|---|---|
| 0003 | 001 | 2424 Rose St Franklin Park, IL 60131-3323 |
| | | OFFICE |
| | | PC 02     JOISTED MASONRY |
| 0004 | 001 | 123 E Ogden Ave Hinsdale, IL 60521-3550 |
| | | OFFICE |
| | | PC 02     JOISTED MASONRY |

**COVERAGES PROVIDED:** Insurance at the described premises applies only for coverages for which a limit of insurance is shown or for which an entry is made.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Causes of (1) Loss Form | Coinsurance(2) | Deductible |
|---|---|---|---|---|---|---|
| 0003 | 001 | BUSINESS PERS PROPERTY | BKT #02 | SPECIAL | BKT #02 | 5,000 |
| 0003 | 001 | BUSINESS INCOME-BASIC (2) | BKT #03 | SPECIAL | BKT #03 | 72 HR. |
| 0004 | 001 | BUSINESS PERS PROPERTY | BKT #02 | SPECIAL | BKT #02 | 5,000 |
| 0004 | 001 | BUSINESS INCOME-BASIC (1) | BKT #03 | SPECIAL | BKT #03 | 72 HR. |

**OPTIONAL COVERAGES:**

| Prem. No. | Bldg. No. | Coverage | Agreed Value Amount | Agreed Value Expiration Date | Replacement Cost Incl. Stock | Inflation Guard |
|---|---|---|---|---|---|---|
| 0003 | 001 | BUSINESS PERS PROPERTY | | | (X) | (X) |
| 0004 | 001 | BUSINESS PERS PROPERTY | | | (X) | (X) |

**OPTIONAL COVERAGES: APPLIES TO BUSINESS INCOME ONLY**

| Prem. No. | Bldg. No. | Agreed Value Date | Agreed Value Amount | Monthly Limit of Indemnity(Fraction) | Maximum Period of Indemnity | Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|---|
| | | | | | | |

**Deductible Exceptions:**

(1) EQ (if shown) = Earthquake          (2) Coinsurance %, Extra Expense %, Limits on Loss Payment or Value Reporting Form Symbol

(5) 10% or $5,000 minimum

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

# Philadelphia Indemnity Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL SCHEDULE

Policy Number: PHPK2459846

Named Insured: Remedial Environmental Manpower, Inc

Agent # 4369

**DESCRIPTION OF PREMISES:**

| Prem. No. | Bldg. No. | Location, Fire Protection/Construction and Occupancy |
|---|---|---|

**COVERAGES PROVIDED:** Insurance at the described premises applies only for coverages for which a limit of insurance is shown or for which an entry is made.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Causes of (1) Loss Form | Coinsurance(2) | Deductible |
|---|---|---|---|---|---|---|
| | | PROPERTY ELITE | | | | |

**OPTIONAL COVERAGES:**

| Prem. No. | Bldg. No. | Coverage | Agreed Value Amount | Expiration Date | Replacement Cost Incl. Stock | Inflation Guard |
|---|---|---|---|---|---|---|

**OPTIONAL COVERAGES: APPLIES TO BUSINESS INCOME ONLY**

| Prem. No. | Bldg. No. | Agreed Value Date | Agreed Value Amount | Monthly Limit of Indemnity(Fraction) | Maximum Period of Indemnity | Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|---|

**Deductible Exceptions:**

(1) EQ (if shown) = Earthquake        (2) Coinsurance %, Extra Expense %, Limits on Loss Payment or Value Reporting Form Symbol

(5) 10% or $5,000 minimum

# Philadelphia Indemnity Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL SCHEDULE

**Policy Number:** PHPK2459846
**Named Insured:** Remedial Environmental Manpower, Inc

**Agent #** 4369

### COMMERCIAL PROPERTY COVERAGE PART – BLANKET LIMIT OF INSURANCE

| Blanket No. | Blanket Description | Limit of Insurance | Co-Insurance |
|---|---|---|---|
| 001 | Building | $ 1,200,000 | 90% |
| 002 | Business Personal Property | $ 260,000 | 90% |
| 003 | Business Income | $ 400,000 | 90% |

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**Philadelphia Indemnity Insurance Company**

### COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: PHPK2459846

Agent # 4369

☒ See Supplemental Schedule

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| $ | 5,000,000 | General Aggregate Limit (Other Than Products – Completed Operations) |
| $ | 5,000,000 | Products/Completed Operations Aggregate Limit |
| $ | 5,000,000 | Personal and Advertising Injury Limit (Any One Person or Organization) |
| $ | 5,000,000 | Each Occurrence Limit |
| $ | 100,000 | Rented To You Limit (Any One Premises) |
| $ | 5,000 | Medical Expense Limit (Any One Person) |

**FORM OF BUSINESS:** CORPORATION

Business Description: Temporary Staffing Agencies

Location of All Premises You Own, Rent or Occupy: **SEE SCHEDULE ATTACHED**

**AUDIT PERIOD, ANNUAL, UNLESS OTHERWISE STATED:** This policy is not subject to premium audit.

| | | | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| Classifications | Code No. | Premium Basis | Prem./ Ops. | Prod./ Comp. Ops | Prem./ Ops. | Prod./ Comp. Ops. |
| **SEE SCHEDULE ATTACHED** | | | | | | |
| **TOTAL PREMIUM FOR THIS COVERAGE PART:** | | | | | $ 64,756.00 | $ |

**RETROACTIVE DATE (CG 00 02 ONLY)**
This insurance does not apply to "Bodily Injury", "Property Damage", or "Personal and Advertising Injury" which occurs before the retroactive date, if any, shown below.

Retroactive Date: __NONE__

**FORM (S) AND ENDORSEMENT (S) APPLICABLE TO THIS COVERAGE PART:** Refer To Forms Schedule

_____     _____
Countersignature Date          Authorized Representative

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Philadelphia Indemnity Insurance Company

Form Schedule – General Liability

**Policy Number:** PHPK2459846

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| Gen Liab Dec | 1004 | Commercial General Liability Coverage Part Declaration |
| Gen Liab Schedule | 0100 | General Liability Schedule |
| CG0001 | 0413 | Commercial General Liability Coverage Form |
| CG0200 | 0118 | Illinois Changes - Cancellation And Nonrenewal |
| CG2011 | 0413 | Additional Insured - Managers Or Lessors Of Premises |
| CG2026 P | 0413 | Addl Ins - Designated Person Or Organization-Blanket |
| CG2106 | 0514 | Excl-Access/Disclosure-With Ltd Bodily Injury Except |
| CG2147 | 1207 | Employment-Related Practices Exclusion |
| CG2167 | 1204 | Fungi or Bacteria Exclusion |
| CG2170 | 0115 | Cap On Losses From Certified Acts Of Terrorism |
| CG2402 | 1204 | Binding Arbitration |
| CG2404 P | 0509 | Waiver Of Tran Of Rights Of Rec Against Others-Blanket |
| PI-GL-001 | 0894 | Exclusion - Lead Liability |
| PI-GL-002 | 0894 | Exclusion - Asbestos Liability |
| PI-GL-037 IL | 0420 | Communicable Disease Exclusion  - Illinois |
| PI-GLD-TS | 1115 | General Liability Deluxe Endt: Temporary Staffing |
| PI-SAM-006 | 0117 | Abuse Or Molestation Exclusion |
| PI-TS-001 | 1210 | Property Damage Extension Endorsement |
| PI-TS-024 P | 0715 | Designated Project Limits Of Ins - Blanket $5,000,000 |
| PI-TS-029 P | 0715 | Designated Location Limits Of Ins - Blanket $5,000,000 |
| PI-TS-038 | 0821 | Loading Or Unloading Extension Endorsement |

# Philadelphia Indemnity Insurance Company
## COMMERCIAL GENERAL LIABILITY COVERAGE PART
### SUPPLEMENTAL SCHEDULE

Policy Number: PHPK2459846

Agent # 4369

| Classifications | Code No. | Premium Basis | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | Prem./ Ops. | Prod./ Comp. Ops. | Prem./ Ops. | Prod./ Comp. Ops. |
| IL      PREM NO. 001 | | | | | | |
| SALES/SERVICE ORGANIZATION | 47367 | 26,700,000 PAYROLL | | INCL | 58,974 | INCL |
| PROD/COMP OP SUBJ TO GEN AGG LIMIT | | | | | | |
| IL | | | | | | |
| LIABILITY DELUXE TEMPORARY STAFFING | 44444 | IF ANY | | | 5,782 | |

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

# ADVISORY NOTICE TO POLICYHOLDERS
## AUTO DEALERS COVERAGE
## GARAGE COVERAGE

### NOTICE OF REDUCTION IN COVERAGE

This is a summary of changes in your policy. No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

The major areas within the policy that broaden or reduce coverage, and other changes, are highlighted below. This notice does not reference every editorial change made in your policy.

Your policy is being renewed with one of the following endorsements:

---

**CA 25 57 10 13 – COMMUNICABLE DISEASE EXCLUSION FOR GENERAL LIABILITY COVERAGES**

**PI-CA-030 (12/20) – COMMUNICABLE DISEASE EXCLUSION FOR GARAGE OPERATIONS – OTHER THAN COVERED AUTOS**

**PI-CA-031 IL (12/20) – COMMUNICABLE DISEASE EXCLUSION FOR GENERAL LIABILITY COVERAGES – ILLINOIS**

**PI-CA-031 WA (01/21) – COMMUNICABLE DISEASE EXCLUSION FOR GENERAL LIABILITY COVERAGES – WASHINGTON**

---

This endorsement excludes liability arising out of the actual or alleged transmission of a communicable disease, as outlined in the endorsement.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-CA-AD-CDEX-NOTICE 1 (01/21)

POLICY NUMBER: PHPK2459846

<div align="right">

**COMMERCIAL AUTO**
CA DS 03 10 13
</div>

# BUSINESS AUTO DECLARATIONS

**ITEM ONE**

| |
|---|
| **Company Name:** Philadelphia Indemnity Insurance Company |
| **Producer Name:** Marsh & McLennan Agency LLC |
| **Named Insured And Mailing Address:**<br>Remedial Environmental Manpower, Inc<br>7239 W. Roosevelt Rd<br>Forest Park, IL 60130-2471 |

| Policy Period | |
|---|---|
| **From:** 09/01/2022 | |
| **To:** 09/01/2023 | At 12:01 AM Standard Time at your mailing address shown above |
| **Previous Policy Number:** PHPK2321444 | |

| |
|---|
| **Form Of Business:** CORPORATION |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| |
|---|
| **Premium Shown Is Payable At Inception:** $ <br> **Audit Period** (if applicable): ☐ **Annually** ☐ **Semiannually** ☐ **Quarterly** ☐ **Monthly** |

| Endorsements Attached To This Policy |
|---|
| **SEE SCHEDULE** |

| Countersignature Of Authorized Representative | |
|---|---|
| **Name:** | |
| **Title:** | |
| **Signature:** | |
| **Date:** | |

**Note**

Officers' facsimile signatures may be inserted here, on the policy cover or elsewhere at the company's option.

© Insurance Services Office, Inc., 2011 CA DS 03 10 13

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**ITEM TWO**

**Schedule Of Coverages And Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Autos | Limit | Premium |
|---|---|---|---|
| Covered Autos Liability | 07, 08, 09 | $ 1,000,000       CSL | $       14,298.00 |
| Personal Injury Protection (Or Equivalent No-fault Coverage) | | Separately Stated In Each Personal Injury Protection Endorsement Minus $                Deductible | $ |
| Added Personal Injury Protection (Or Equivalent Added No-fault Coverage) | | Separately Stated In Each Added Personal Injury Protection Endorsement | $ |
| Property Protection Insurance (Michigan Only) | | Separately Stated In The Property Protection Insurance Endorsement Minus $                Deductible For Each Accident | $ |
| Auto Medical Payments | 07 | $        5,000                 Each Insured | $       282.00 |
| Medical Expense And Income Loss Benefits (Virginia Only) | | Separately Stated In The Medical Expense And Income Loss Benefits Endorsement | $ |
| Uninsured Motorists | 06 | $ 1,000,000       CSL | $       196.00 |
| Underinsured Motorists (When Not Included In Uninsured Motorists Coverage) | 06 | $ 1,000,000       CSL | $       504.00 |

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**ITEM TWO**

**Schedule Of Coverages And Covered Autos (Cont'd)**

| Coverages | Covered Autos | Limit | Premium |
|---|---|---|---|
| Physical Damage Comprehensive Coverage | 07 | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus<br><br>$   SCHEDULE   Deductible<br><br>For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lightning<br><br>See Item Four for Hired or Borrowed Autos. | $    1,030.00 |
| Physical Damage Specified Causes Of Loss Coverage | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus<br><br>$ 25   Deductible<br><br>For Each Covered Auto For Loss Caused By Mischief Or Vandalism<br><br>See Item Four for Hired or Borrowed Autos. | $ |
| Physical Damage Collision Coverage | 07 | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus<br><br>$   SCHEDULE   Deductible<br><br>For Each Covered Auto<br><br>See Item Four for Hired or Borrowed Autos. | $    4,543.00 |
| Physical Damage Towing And Labor | 07 | $   SCHEDULE   For Each<br><br>Disablement Of A Private Passenger Auto | $    14.00 |
| Terrorism | All | Per Coverage Endorsement | $    23.00 |
| | | **Premium For Endorsements** | $    98.00 |
| | | **Estimated Total Premium*** | $   20,988.00 |

*This policy may be subject to final audit.

© Insurance Services Office, Inc., 2011 CA DS 03 10 13

**ITEM THREE**

**Schedule Of Covered Autos You Own**

| Covered Auto Number: |
|---|
| Town And State Where The Covered Auto Will Be Principally Garaged:   SEE SCHEDULE |

| Covered Auto Description | | |
|---|---|---|
| Year: | Model: | Trade Name: |
| Body Type: | | Serial Number(s): |
| Vehicle Identification Number (VIN): | | |

| Classification | | | | | | |
|---|---|---|---|---|---|---|
| Original Cost New | Radius Of Operation | Business Use s=service r=retail c=commercial | Size GVW, GCW Or Vehicle Seating Capacity | Age Group | Secondary Rating Classification | Code |
| $          SEE SCHEDULE | | | | | | |

| Except For Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named Below According To Their Interests In The Auto At The Time Of The Loss: SEE SCHEDULE, IF APPLICABLE |
|---|

CA DS 03 10 13 © Insurance Services Office, Inc., 2011 Page 5 of 14

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**ITEM THREE**
**Schedule Of Covered Autos You Own (Cont'd)**

| Coverages | Limit | Premium |
|---|---|---|
| **Coverages – Premiums, Limits And Deductibles** (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.) | | |
| Covered Autos Liability | $            SEE SCHEDULE | $ |
| Personal Injury Protection | Stated In Each Personal Injury Protection Endorsement Minus <br> $            Deductible | $ |
| Added Personal Injury Protection | Stated In Each Added Personal Injury Protection Endorsement | $ |
| Property Protection Insurance (Michigan Only) | Stated In The Property Protection Insurance Endorsement Minus <br> $            Deductible | $ |
| Auto Medical Payments | $            Each Insured | $ |
| Medical Expense And Income Loss Benefits (Virginia Only) | Stated In The Medical Expense And Income Loss Benefits Endorsement For Each Person | $ |
| Comprehensive | Stated In Item Two Minus <br> $            Deductible | $ |
| Specified Causes Of Loss | Stated In Item Two Minus <br> $            Deductible | $ |
| Collision | Stated In Item Two Minus <br> $            Deductible | $ |
| Towing And Labor | $            Per Disablement | $ |

| Total Premiums | SEE SCHEDULE |
|---|---|
| Covered Autos Liability | $ |
| Personal Injury Protection | $ |
| Added Personal Injury Protection | $ |
| Property Protection Insurance (Michigan Only) | $ |
| Auto Medical Payments | $ |
| Medical Expense And Income Loss Benefits (Virginia Only) | $ |
| Comprehensive | $ |
| Specified Causes Of Loss | $ |
| Collision | $ |
| Towing And Labor | $ |

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums**

| Covered Autos Liability Coverage – Cost Of Hire Rating Basis For Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | |
|---|---|---|
| **Covered Autos Liability Coverage** | **Estimated Annual Cost Of Hire For All States** | **Premium** |
| Primary Coverage | $   SEE SCHEDULE, IF APPLICABLE | $ |
| Excess Coverage | $   SEE SCHEDULE, IF APPLICABLE | $ |
| | Total Hired Auto Premium | $ |

For "autos" used in your motor carrier operations, cost of hire means:

1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers) and, if not included therein,
2. The total remunerations of all operators and drivers' helpers, of hired automobiles, whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and
3. The total dollar amount of any other costs (e.g., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles, whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| Covered Autos Liability Coverage – Cost Of Hire Rating Basis For Autos NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| **Covered Autos Liability Coverage** | **State** | **Estimated Annual Cost Of Hire For Each State** | **Premium** |
| Primary Coverage | | $   SEE SCHEDULE, IF APPLICABLE | $ |
| Excess Coverage | | $   SEE SCHEDULE, IF APPLICABLE | $ |
| | | Total Hired Auto Premium | $ |

For "autos" **NOT** used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums (Cont'd)**

| Physical Damage Coverages – Cost Of Hire Rating Basis For All Autos (Other Than Mobile Or Farm Equipment) | | | | |
|---|---|---|---|---|
| Coverage | State | Limit Of Insurance | Estimated Annual Cost Of Hire For Each State (Excluding Autos Hired With A Driver) | Premium |
| Comprehensive | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $      Deductible For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lightning | $ SEE SCHEDULE, IF APPLICABLE | $ |
| Specified Causes Of Loss | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $      Deductible For Each Covered Auto For Loss Caused By Mischief Or Vandalism | $ | $ |
| Collision | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $      Deductible For Each Covered Auto | $ | $ |
| | | | Total Hired Auto Premium | $ |
| For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver. | | | | |

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums (Cont'd)**

| Cost Of Hire Rating Basis For Mobile Or Farm Equipment – Other Than Physical Damage Coverages | | | | | |
|---|---|---|---|---|---|
| | | Estimated Annual Cost Of Hire For Each State | | Premium | |
| Coverage | State | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| Covered Autos Liability – Primary Coverage | | $ SEE SCHEDULE, IF APPLICABLE | $ | $ | $ |
| Covered Autos Liability – Excess Coverage | | $ | $ | $ | $ |
| Personal Injury Protection | | $ | $ | $ | $ |
| Medical Expense Benefits (Virginia Only) | VA | $ | $ | $ | $ |
| Income Loss Benefits (Virginia Only) | VA | $ | $ | $ | $ |
| Auto Medical Payments | | $ | $ | $ | $ |
| Total Hired Auto Premiums | | | | $ | $ |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums (Cont'd)**

| Cost Of Hire Rating Basis For Mobile Or Farm Equipment – Physical Damage Coverages | | | | | | |
|---|---|---|---|---|---|---|
| | | | Estimated Annual Cost Of Hire For Each State (Excluding Autos Hired With A Driver) | | Premium | |
| Coverage | State | Limit Of Insurance | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| Compre-hensive | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $ Ded. For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lightning | $ SEE SCHEDULE, IF APPLICABLE | $ | $ | $ |
| Specified Causes Of Loss | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $ Ded. For Each Covered Auto For Loss Caused By Mischief Or Vandalism | $ | $ | $ | $ |
| Collision | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $ Ded. For Each Covered Auto | $ | $ | $ | $ |
| | | | | Total Hired Auto Premiums | $ | $ |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any auto that is leased, hired, rented or borrowed with a driver.

© Insurance Services Office, Inc., 2011　　　　CA DS 03 10 13

FILED DATE: 1/20/2026 8:44 AM　2026CH00528

**ITEM FIVE**

**Schedule For Non-ownership Covered Autos Liability**

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other Than Garage Service Operations And Other Than Social Service Agencies | Number Of Employees | 756 | $ 2,776.00 |
| | Number Of Partners (Active And Inactive) | | $ |
| Garage Service Operations | Number Of Employees Whose Principal Duty Involves The Operation Of Autos | | $ |
| | Number Of Partners (Active And Inactive) | | $ |
| Social Service Agencies | Number Of Employees | | $ |
| | Number Of Volunteers Who Regularly Use Autos To Transport Clients | | $ |
| | Number Of Partners (Active And Inactive) | | $ |
| Total Non-ownership Covered Autos Liability Premium | | | $ 2,776.00 |

**ITEM SIX**

**Schedule For Gross Receipts Or Mileage Basis**

| Address Of Business Headquarters Location: | |
|---|---|
| Type Of Risk (Check one): ☐ Public Autos | ☐ Leasing Or Rental Concerns |
| Rating Basis (Check one): ☐ Gross Receipts (Per $100) | ☐ Mileage (Per Mile) |

| Estimated Yearly (Gross Receipts Or Mileage): | |
|---|---|
| **Premiums** | |
| Covered Autos Liability | $ |
| Personal Injury Protection | $ |
| Added Personal Injury Protection | $ |
| Property Protection Insurance (Michigan Only) | $ |
| Auto Medical Payments | $ |
| Medical Expense And Income Loss Benefits (Virginia Only) | $ |
| Comprehensive | $ |
| Specified Causes Of Loss | $ |
| Collision | $ |
| Towing And Labor | $ |

© Insurance Services Office, Inc., 2011  CA DS 03 10 13

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**ITEM SIX**

**Schedule For Gross Receipts Or Mileage Basis (Cont'd)**

| Address Of Business Headquarters Location: | |
|---|---|

| Type Of Risk (Check one): ☐ Public Autos | ☐ Leasing Or Rental Concerns |
|---|---|
| Rating Basis (Check one): ☐ Gross Receipts (Per $100) | ☐ Mileage (Per Mile) |

**Estimated Yearly (Gross Receipts Or Mileage):**

| Premiums | |
|---|---|
| Covered Autos Liability | $ |
| Personal Injury Protection | $ |
| Added Personal Injury Protection | $ |
| Property Protection Insurance (Michigan Only) | $ |
| Auto Medical Payments | $ |
| Medical Expense And Income Loss Benefits (Virginia Only) | $ |
| Comprehensive | $ |
| Specified Causes Of Loss | $ |
| Collision | $ |
| Towing And Labor | $ |

| Address Of Business Headquarters Location: | |
|---|---|

| Type Of Risk (Check one): ☐ Public Autos | ☐ Leasing Or Rental Concerns |
|---|---|
| Rating Basis (Check one): ☐ Gross Receipts (Per $100) | ☐ Mileage (Per Mile) |

**Estimated Yearly (Gross Receipts Or Mileage):**

| Premiums | |
|---|---|
| Covered Autos Liability | $ |
| Personal Injury Protection | $ |
| Added Personal Injury Protection | $ |
| Property Protection Insurance (Michigan Only) | $ |
| Auto Medical Payments | $ |
| Medical Expense And Income Loss Benefits (Virginia Only) | $ |
| Comprehensive | $ |
| Specified Causes Of Loss | $ |
| Collision | $ |
| Towing And Labor | $ |

**ITEM SIX**

**Schedule For Gross Receipts Or Mileage Basis (Cont'd)**

When used as a premium basis:

**FOR PUBLIC AUTOS**

Gross receipts means the total amount earned by the named insured for transporting passengers, mail and merchandise.

Gross receipts does not include:

1. Amounts paid to air, sea or land carriers operating under their own permits.
2. Advertising revenue.
3. Taxes collected as a separate item and paid directly to the government.
4. C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing "autos" during the policy period.

**FOR RENTAL OR LEASING CONCERNS**

Gross receipts means the total amount earned by the named insured for the leasing or renting of "autos" to others without drivers.

Mileage means the total live and dead mileage of all "autos" you leased or rented to others without drivers.

© Insurance Services Office, Inc., 2011 CA DS 03 10 13

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums (Cont'd)**

| | | Rental Period Rating Basis For Mobile Or Farm Equipment | | | |
|---|---|---|---|---|---|
| | | Estimated Number Of Days Equipment Will Be Rented | | Premium | |
| Coverage | Town And State Where The Job Site Is Located | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| Covered Autos Liability – Primary Coverage | | | | $ | $ |
| Covered Autos Liability – Excess Coverage | | | | $ | $ |
| Personal Injury Protection | | | | $ | $ |
| Medical Expense Benefits (Virginia Only) | | | | $ | $ |
| Income Loss Benefits (Virginia Only) | | | | $ | $ |
| Auto Medical Payments | | | | $ | $ |
| Total Hired Auto Premiums | | | | $ | $ |

Philadelphia Indemnity Insurance Company

Form Schedule – Commercial Auto

**Policy Number:** PHPK2459846

**Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:**

| Form | Edition | Description |
|---|---|---|
| PI-CA-AD-CDEX-NOTICE 1 | 0121 | Advisory Notice To Policyholders-Notice of Red in Cov |
| CADS03 | 1013 | Business Auto Declarations |
| Auto Schedule | 0100 | Business Auto Schedule |
| Hired Or Borrowed Auto Sche | 0706 | Schedule Of Hired Or Borrowed Covered Auto |
| CA0001 | 1013 | Business Auto Coverage Form |
| CA0120 | 0115 | Illinois Changes |
| CA0270 | 0118 | Illinois Changes - Cancellation And Nonrenewal |
| CA0444 P | 0310 | Waiver Of Trans Of Rights Of Rec Agst Others-Blanket |
| CA2048 P | 0299 | Designated Insured - Blanket |
| CA2130 | 0115 | Illinois Uninsured Motorists Coverage |
| CA2138 | 1013 | Illinois Underinsured Motorists Coverage |
| CA9903 | 1013 | Auto Medical Payments Coverage |
| CA9923 | 1013 | Rental Reimbursement Coverage |
| PI-AUT-001 | 0116 | Cap On Losses From Certified Acts Of Terrorism |
| PI-MANU-1 | 0100 | CA2048 10 13 Designated Insured for Covered Autos Liability Coverage |
| PI-TS-030 | 1115 | Staffing Services Auto Endorsement |
| PI-TS-039 | 0821 | Staffing Services Non-Owned Autos-Desc Auto Exclusion |

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

# BUSINESS AUTO SCHEDULE

POLICY NUMBER: PHPK2459846

## SCHEDULE OF COVERED AUTOS YOU OWN

| Covered Auto No. | DESCRIPTION — Year Model; Trade Name; Body Type — Serial Number (S); Vehicle Identification Number (VIN) | TERRITORY — Town or City & Zip where the Covered Auto will be principally garaged |
|---|---|---|
| 1 | 2018 GMC SIERRA, 3GTU2PEJ8JG499312 | 137 La Grange, IL 60525 |
| 2 | 2021 GMC YUKON XL, 1GKS2JKL6MR199643 | 137 Western Sprin, IL 60558 |
| 3 | 2022 GMC SIERRA LIMITED, 1GTR9CEK3NZ101495 | 137 Western Sprin, IL 60558 |
| 4 | 2022 GMC SIERRA LIMITED, 1GTU9FEL3NZ189582 | 137 Western Sprin, IL 60558 |
| 5 | 2017 TOYOTA SIENNA, 5TDDZ3DC3HS171248 | 137 Western Sprin, IL 60558 |
| 6 | 2016 GMC TERRAIN, 2GKALMEK7G6169953 | 115 Hinsdale, IL 60521 |

| Covered Auto No. | CLASSIFICATION Radius of Operation | Business Use s = service r = retail c = comml. | Size GVW, CGW or Vehicle Seating Capacity | Age Group | Primary Rating Factor Liab. | Phy. Dam. | Sec. Rating Factor Liab. | Phy. Dam. | PURCHASED Code | Original Cost New | Stated Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | 5 | 1.000 | 1.000 | | | 7398 | 56,000 | |
| 2 | | | | 2 | 1.000 | 1.000 | | | 7398 | 74,100 | |
| 3 | | | | 1 | 1.000 | 1.000 | | | 7398 | 38,400 | |
| 4 | | | | 1 | 1.000 | 1.000 | | | 7398 | 68,000 | |
| 5 | | | | 6 | 1.000 | 1.000 | | | 7398 | 38,520 | |
| 6 | | | | 7 | 1.000 | 1.000 | | | 7398 | 27,000 | |
| Total Premium | | | | | | | | | | | |

| Covered Auto No. | LIABILITY Limit (in thousands) | Premium | AUTO. MED. Limit | Premium | MEDICAL EXPENSE AND INCOME LOSS BENEFITS (VA ONLY) Limit Stated In Each Med. Exp. And Inc. Loss Ben. End. For Each Person | Premium |
|---|---|---|---|---|---|---|
| 1 | 1,000 | 1,640.00 | 5,000 | 41.00 | | |
| 2 | 1,000 | 1,640.00 | 5,000 | 41.00 | | |
| 3 | 1,000 | 1,640.00 | 5,000 | 41.00 | | |
| 4 | 1,000 | 1,640.00 | 5,000 | 41.00 | | |
| 5 | 1,000 | 1,640.00 | 5,000 | 41.00 | | |
| 6 | 1,000 | 1,455.00 | 5,000 | 36.00 | | |
| Total Premium | | 9,655.00 | | 241.00 | | |

| Covered Auto No. | PERSONAL INJURY PROTECTION Limit stated in each P.I.P. end. | Premium | P.P.I. (Mich, Only) Limit stated in each P.P.I. end. | Premium | UNINSURED/UNDERINSURED Limit (in thousands) | Premium | UM | UIM |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | 1,000 | 100.00 | X | X |
| 2 | | | | | 1,000 | 100.00 | X | X |
| 3 | | | | | 1,000 | 100.00 | X | X |
| 4 | | | | | 1,000 | 100.00 | X | X |
| 5 | | | | | 1,000 | 100.00 | X | X |
| 6 | | | | | 1,000 | 100.00 | X | X |
| Total Premium | | | | | | 600.00 | | |

Page 1 of 4

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

## BUSINESS AUTO SCHEDULE

POLICY NUMBER: PHPK2459846

### SCHEDULE OF COVERED AUTOS YOU OWN (Cont'd)

| Covered Auto No. | COMPREHENSIVE | | SPEC. CAUSES OF LOSS | COLLISION | |
|---|---|---|---|---|---|
| | Deductible | Premium | Premium | Deductible | Premium |
| 1 | 500 | 129.00 | | 1,000 | 529.00 |
| 2 | 500 | 199.00 | | 1,000 | 876.00 |
| 3 | 500 | 112.00 | | 1,000 | 574.00 |
| 4 | 500 | 199.00 | | 1,000 | 921.00 |
| 5 | 500 | 95.00 | | 1,000 | 431.00 |
| 6 | 500 | 81.00 | | 1,000 | 372.00 |
| Total Premium | | 815.00 | | | 3,703.00 |

| Covered Auto No. | TOWING & LABOR | | Except for towing all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of the loss. | TOTAL |
|---|---|---|---|---|
| | Limit per disablement | Premium | | Premium |
| 1 | 50 | 2.00 | | 2,441.00 |
| 2 | 50 | 2.00 | See Schedule(s) | 2,858.00 |
| 3 | 50 | 2.00 | | 2,469.00 |
| 4 | 50 | 2.00 | | 2,903.00 |
| 5 | 50 | 2.00 | | 2,309.00 |
| 6 | 50 | 2.00 | | 2,046.00 |
| Total Premium | | 12.00 | | 15,026.00 |

Page    2 of    4

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**BUSINESS AUTO SCHEDULE**

POLICY NUMBER: PHPK2459846

**SCHEDULE OF COVERED AUTOS YOU OWN**

| Covered Auto No. | DESCRIPTION — Year Model; Trade Name; Body Type / Serial Number (S); Vehicle Identification Number (VIN) | TERRITORY — Town or City & Zip where the Covered Auto will be principally garaged |
|---|---|---|
| 7 | 2019 AUDI E-TRON, WA1VAAGE9KB023580 | 137 Western Sprin, IL 60558 |

| Covered Auto No. | Radius of Operation | Business Use s = service r = retail c = comml. | Size GVW, CGW or Vehicle Seating Capacity | Age Group | Primary Rating Factor Liab. | Primary Rating Factor Phy. Dam. | Sec. Rating Factor Liab. | Sec. Rating Factor Phy. Dam. | Code | Original Cost New | Stated Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | | | | 4 | 1.000 | 1.000 | | | 7398 | 81,800 | |
| Total Premium | | | | | | | | | | | |

| Covered Auto No. | LIABILITY Limit (in thousands) | LIABILITY Premium | AUTO. MED. Limit | AUTO. MED. Premium | MEDICAL EXPENSE AND INCOME LOSS BENEFITS (VA ONLY) — Limit Stated In Each Med. Exp. And Inc. Loss Ben. End. For Each Person | Premium |
|---|---|---|---|---|---|---|
| 7 | 1,000 | 1,640.00 | 5,000 | 41.00 | | |
| Total Premium | | 11,295.00 | | 282.00 | | |

| Covered Auto No. | PERSONAL INJURY PROTECTION Limit stated in each P.I.P. end. | Premium | P.P.I. (Mich, Only) Limit stated in each P.P.I. end. | Premium | UNINSURED/UNDERINSURED Limit (in thousands) | Premium | UM | UIM |
|---|---|---|---|---|---|---|---|---|
| 7 | | | | | 1,000 | 100.00 | x | x |
| Total Premium | | | | | | 700.00 | | |

Page 3 of 4

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

## BUSINESS AUTO SCHEDULE

POLICY NUMBER: PHPK2459846

### SCHEDULE OF COVERED AUTOS YOU OWN (Cont'd)

| Covered Auto No. | COMPREHENSIVE | | SPEC. CAUSES OF LOSS | COLLISION | |
|---|---|---|---|---|---|
| | Deductible | Premium | Premium | Deductible | Premium |
| 7 | 500 | 188.00 | | 1,000 | 784.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total Premium | | 1,003.00 | | | 4,487.00 |

| Covered Auto No. | TOWING & LABOR | | Except for towing all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of the loss. | TOTAL |
|---|---|---|---|---|
| | Limit per disablement | Premium | | Premium |
| 7 | 50 | 2.00 | | 2,755.00 |
| | | | See Schedule(s) | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Total Premium | | 14.00 | | 17,781.00 |

Page 4 of 4

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Policy Number: PHPK2459846

### Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums

| Coverage | State | Cost of Hire | Deductible | Rate | Premium |
|---|---|---|---|---|---|
| Liability Coverage | IL | 5,000 | | 4.53200 | $ 227 |
| Physical Damage - Comp | IL | 5,000 | 1,000 | 0.54100 | $ 27 |
| Physical Damage - Collision | IL | 5,000 | 1,000 | 1.11800 | $ 56 |
| | | | | Total Premium - | $ 310 |

PI-PRD-1 (09/02)

 **PHILADELPHIA**
INSURANCE COMPANIES
*A Member of the Tokio Marine Group*

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

## Private Company Protection Plus

DIRECTORS AND OFFICERS & PRIVATE COMPANY LIABILITY
EMPLOYMENT PRACTICES LIABILITY INSURANCE
FIDUCIARY LIABILITY INSURANCE

## Philadelphia Indemnity Insurance Company

Policy Number: PHPK2459846

DECLARATIONS

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THIS POLICY IS WRITTEN ON A CLAIMS MADE BASIS AND COVERS ONLY THOSE CLAIMS FIRST MADE DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. THE AMOUNTS INCURRED FOR DEFENSE COST SHALL BE APPLIED AGAINST THE RETENTION.**

Item 1. Private Company Name and Address:
Remedial Environmental Manpower, Inc
7239 W. Roosevelt Rd
Forest Park, IL 60130-2471

Internet Address: www.

Item 2. Policy Period: From: 09/01/2022    To: 09/01/2023
(12:01 A.M. local time at the address shown in Item 1.)

Item 3. Limits of Liability:
(A) Part 1, D&O Liability: $            each Policy Period.
(B) Part 2, Employment Practices: $ 5,000,000 each Policy Period.
(C) Part 3, Fiduciary Liability: $            each Policy Period.
(D) Aggregate, All Parts: $ 5,000,000 each Policy Period.

Item 4. Retention:
(A) Part 1, D&O Liability: $            for each Claim under Insuring Agreement B & C.
    Private Offering: $            for each Claim under Insuring Agreement B & C.
(B) Part 2, Employment Practices: $ 25,000 for each Claim.
(C) Part 3, Fiduciary Liability: $            for each Claim.

Item 5. Prior and Pending Date: Part 1 No Date Applies   Part 2      09/01/2021  Part 3 No Date Applies

Item 6. Premium:          Part 1              Part 2 $  59,133.00      Part 3

*Total Premium*: $    59,133.00

Item 7. Endorsements: SEE SCHEDULE

PI-PRD-1 (09/02)

In witness whereof, the Insurer issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by the duly authorized representative of the Insurer.

John W. Glomb, Jr.
President & CEO

_____          _____
Countersignature                    Countersignature Date

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Philadelphia Indemnity Insurance Company

Form Schedule – Private Company Protection Plus

**Policy Number:** PHPK2459846

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| PI-PRD-1 | 0902 | Private Company Protection Plus Declarations |
| PI-BELL-1 IL | 1109 | Bell Endorsement |
| PI-CME-1 | 1009 | Crisis Management Enhancement Endorsement |
| PI-PRD-2 | 0902 | Private Company Protection Plus Policy |
| PI-PRD-22 | 0402 | Past Acts Exclusion |
| PI-PRD-58 | 1019 | Abuse Exclusion With Workplace Harassment Carveback |
| PI-PRD-75 | 1203 | Amendment of Exclusions |
| PI-PRD-77 | 0104 | Amendment of Cancellation Provision |
| PI-PRD 126 | 0419 | Private Company Enhancement Endorsement |
| PI-PRD-144 | 0120 | Biometric Information Claim Exclusion |
| PI-PRD-IL-1 | 1202 | Illinois Amendatory Endorsement |
| PI-PRD-IL 3 | 0419 | Illinois Civil Union Endorsement |
| PI-PV-113 | 0821 | Temporary Staffing Amendatory Endt Excl PEO Workers |
| PI-SLD-001 | 0115 | Cap On Losses From Certified Acts Of Terrorism |

PI-CRP-01 (06/05)

**PHILADELPHIA**
**INSURANCE COMPANIES**

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

**Philadelphia Indemnity Insurance Company**

## *CRIME PROTECTION PLUS DECLARATIONS*

Policy Number: PHPK2459846

In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance stated in this Policy.

DECLARATIONS

ITEM
1. Named Insured:  Remedial Environmental Manpower, Inc
        7239 W. Roosevelt Rd
2. Mailing Address:  Forest Park, IL 60130-2471

3. Policy Period: from 09/01/2022 to 09/01/2023
        (12:01 A.M. Standard Time at Your Mailing Address)

4. Coverages, Limits of Insurance and Deductibles:

☒    Loss Sustained Option        ☐    Discovery Option
(If no box is checked, the Loss Sustained Option shall apply)

Insuring Agreements, Limit of Insurance and Deductible Amounts shown below are subject to all of the terms of this policy that apply.

| Insuring Agreements Forming Part of This Policy | Limit of Insurance | Deductible Amount |
|---|---|---|
| A1. EMPLOYEE THEFT AND CLIENT COVERAGE | $ 1,000,000 | $ 10,000 |
| A2. ERISA FIDELITY | $ 1,000,000 | $ NIL |
| B.  FORGERY OR ALTERATION, including Credit, Debit, or Charge Card Extension ($25,000 limit) | $ 1,000,000 | $ 10,000 |
| C.  INSIDE THE PREMISES | $ 1,000,000 | $ 10,000 |
| D.  OUTSIDE THE PREMISES | $ 1,000,000 | $ 10,000 |
| E.  MONEY ORDERS AND COUNTERFEIT PAPER CURRENCY | $ 1,000,000 | $ 10,000 |
| F.  COMPUTER FRAUD AND FUNDS TRANSFER FRAUD | $ 1,000,000 | $ 10,000 |

5. Form Numbers of Endorsements Forming Part of This Policy When Issued: SEE SCHEDULE
6. Cancellation of Prior Insurance:  By acceptance of this Policy, you give us notice canceling prior policies or bonds numbered: PHSD1656807 _____
_____ the cancellations to be effective at the time this policy becomes effective.

This Policy has been signed by the Company's President and Secretary.

Page 1 of 1
Includes copyright material of the Insurance Services Office Inc., used with its permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Philadelphia Indemnity Insurance Company

Form Schedule – Crime Protection Plus

**Policy Number:** PHPK2459846

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|---|---|---|
| PI-CRP-01 | 0605 | Crime Protection Plus Declarations |
| PI-BELL-1 IL | 1109 | Bell Endorsement |
| PI-CME-1 | 1009 | Crisis Management Enhancement Endorsement |
| PI-CRP-02 | 0605 | Crime Protection Plus Policy |
| PI-CRP-03 | 0605 | Loss Of Clients Property - Blanket Form |
| PI-CRP-04 | 0605 | Loss Of Clients Property - Scheduled Form |
| PI-CRP-06 | 0605 | Convert To An Aggregate Limit Of Insurance |
| PI-CRP-09 P | 0605 | Incl Designated Persons/Classes Of Persons As Empl-IC |
| PI-CRP-23 | 1119 | Crime Protection Plus Pro-Pak |
| PI-CRP-24 | 0717 | Fraudulent Inducement Insuring Agreement |
| PI-CRP-IL-1 | 1005 | Illinois Changes |
| PI-TS-043 | 0821 | Temporary Staffing Guests Property Coverage |
| PI-TS-044 | 0821 | Temporary Staffing Agencies Trade Secret Empl Theft |

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

PI-EBL-001D (5/99)

# PHILADELPHIA INDEMNITY INSURANCE COMPANY
EMPLOYEE BENEFITS ADMINISTRATION ERRORS AND OMISSIONS INSURANCE
DECLARATIONS
## CLAIMS MADE COVERAGE

POLICY NO. PHPK2459846            Effective date: 09/01/2022
                                               12:01 A.M. Standard Time

| LIMIT OF LIABILITY |
|---|
| $    1,000,000          Each Claim |
| $    2,000,000          Aggregate |

**RETROACTIVE DATE**

This Insurance Does Not Apply to "Damages" Resulting from an "Employee Benefits Incident" Which Occurred Before the Retroactive Date, If Any, Shown Here: 09/01/2021
(Enter Date or "None" if No Retroactive Date Applies)

**PREMIUM COMPUTATION:**

Estimated Number of Employees: 756            Total Premium: $     300

**RATE – EACH EMPLOYEE**

000.111   First 5,000          000.083   Next 5,000          000.056   Over 10,000

FORMS AND ENDORSEMENTS (Other than Applicable Forms and Endorsements Shown Elsewhere in the Policy)

Forms and Endorsements Applying to this Coverage Part and Made Part of this Policy at Time of Issue:

SEE SCHEDULE ATTACHED

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE
POLICY PERIOD.

Includes Copyrighted Material of the Insurance Service Office, Inc Used with its Permission

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Philadelphia Indemnity Insurance Company

Form Schedule – Employee Benefits

**Policy Number:** PHPK2459846

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| PI-EBL-001D | 0599 | Employee Benefits Admin Errors And Omissions Ins Dec |
| PI-ARB-1 IL | 0603 | Binding Arbitration |
| PI-EBL-001 | 0599 | Employee Benefits Administration Errors and Omissions |
| PI-EBL-IL-1 | 0899 | Illinois Amendatory Endorsement |
| PI-PPL-001 EB | 0803 | Prior/Pending Litigation And Known Circumstances Excl |

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

PI-TS-002D IL (05/12)

**PHILADELPHIA**
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

## Philadelphia Indemnity Insurance Company

## STAFFING SERVICE PROFESSIONAL LIABILITY DECLARATIONS

**Policy Number:** PHPK2459846

**ITEM 1:** **POLICY PERIOD**

Policy Period: From: 09/01/2022 To: 09/01/2023
(12:01 A.M. standard time at the address of the Named Insured)

**ITEM 2:** **INSURED DETAILS**

Name of Insured: Remedial Environmental Manpower, Inc

Address: 7239 W. Roosevelt Rd
Forest Park, IL 60130-2471

**ITEM 3:** **PREMIUM DETAILS**

Policy Premium: $ 13,678.00

**ITEM 4:** **COVERAGE LIMITS**

| | |
|---|---|
| Each Wrongful Act Limit of Insurance: | $ 1,000,000 |
| Aggregate Limit of Insurance | $ 2,000,000 |

**ITEM 5:** **DEDUCTIBLE**

| |
|---|
| $ 5,000 Each Claim or "Suit" (including "Claim Expense") |

**ITEM 6:** **POLICY FORM AND ENDORSEMENTS**

SEE SCHEDULE

In witness whereof, the Insurer issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by the duly authorized representative of the Insurer.

John W. Glomb, Jr.
President & CEO

Authorized Representative        Signature Date

Page 1 of 1

Philadelphia Indemnity Insurance Company

Form Schedule – Professional Liability

**Policy Number:** PHPK2459846

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| PI-TS-002D IL | 0512 | Staffing Service Professional Liability Declarations |
| PI-ARB-1 IL | 0603 | Binding Arbitration |
| PI-TS-002 | 1211 | Staffing Service Professional Liability Coverage Form |
| PI-TS-014 | 1115 | Broad Definition Of Staffing Services |
| PI-TS-016 | 0512 | Designated Professional Services Exclusion |
| PI-TS-037 | 0821 | Bodily Injury Exclusion Endorsement |
| PI-TS-IL-1 | 0512 | Illinois Amendatory Endorsement |

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Philadelphia Indemnity Insurance Company

PI-SAM-008D (01/17)

# ABUSIVE CONDUCT LIABILITY COVERAGE FORM
# POLICY DECLARATIONS

**PLEASE READ THIS POLICY CAREFULLY.**

Policy Number:   PHPK2459846            Effective date:  09/01/2022

12:01 A.M. Standard Time

| **LIMITS OF INSURANCE:** | |
|---|---|
| AGGREGATE LIMIT | $    1,000,000 |
| EACH ABUSIVE CONDUCT LIMIT | $    1,000,000 |
| **DEDUCTIBLE:** | $    1,000 |

**BUSINESS DESCRIPTION:**

Form of Business: CORPORATION

Business Description: Temporary Staffing Agencies

**PREMIUM: $  3,787.00**

**FORMS AND ENDORSEMENTS** (Other than Applicable Forms and Endorsements Shown Elsewhere in the Policy)
Forms and Endorsements Applying to this Coverage Part and Made Part of this Policy at Time of Issue:

**SEE SCHEDULE ATTACHED**

PI-SAM FORM SCH 1 (05/19)

Philadelphia Indemnity Insurance Company
Form Schedule – Abusive Conduct Liability

**Policy Number:** PHPK2459846

Forms and Endorsements applying to this Coverage Part and made a part of this
policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| PI-SAM-008D | 0117 | Abusive Conduct Liability Coverage Policy Dec |
| PI-ARB-1 IL | 0603 | Binding Arbitration |
| PI-SAM-008 | 0519 | Abusive Conduct Liability Coverage Form |

Page 1 of 1

PI-SAM FORM SCH 1 (05/19)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-BELL-1 IL (11/09)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## BELL ENDORSEMENT



PHILADELPHIA
INSURANCE COMPANIES

*A Member of the Tokio Marine Group*

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

**I.    SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS**

The following is a summary of Limits of Liability or Limits of Insurance and/or additional coverages provided by this endorsement.  This endorsement is subject to the provisions of the policy to which it is attached.

| COVERAGE | LIMITS OF INSURANCE |
|---|---|
| Business Travel Accident Expenses | $50,000 |
| Conference Cancellation | $25,000 |
| Donation Assurance | $50,000 |
| Emergency Real Estate Consulting Fee | $50,000 |
| Fundraising Event Blackout | $25,000 |
| Identity Theft Expense | $50,000 |
| Image Restoration and Counseling | $50,000 |
| Key Individual Replacement Expenses | $50,000 |
| Kidnap Expense | $50,000 |
| Political Unrest | $5,000 per employee: $25,000 policy limit |
| Temporary Meeting Space Reimbursement | $25,000 |
| Terrorism Travel Reimbursement | $50,000 |
| Travel Delay Reimbursement | $1,500 |
| Workplace Violence Counseling | $50,000 |

PI-BELL-1 IL (11/09)

## II. CONDITIONS

### A. Applicability of Coverage

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.

### B. Limits of Liability or Limits of Insurance

1. When coverage is provided by this endorsement and another coverage form or endorsement attached to this policy, the greater limits of liability or limits of insurance will apply. In no instance will multiple limits apply to coverages which may be duplicated within this policy. Additionally, if this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same occurrence, offense, wrongful act, accident or loss, the maximum limits of liability or limits of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limits of liability or limits of insurance under any one coverage part or policy.

2. Limits of liability or limits of insurance identified in Section **I. SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS** above are not excess of, but are in addition to the applicable Limits of Liability or Limits of Insurance stated in the Declarations.

### C. Claim Expenses

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

## III. ADDITIONAL COVERAGES

### A. Business Travel Accident Expenses

We will pay any reasonable and necessary expenses an insured incurs if a director or officer suffers injury or death while traveling on a common carrier for your business during the policy period.

For the purpose of Business Travel Accident Expenses coverage, injury means:

1. Physical damage to the body caused by violence, fracture, or an accident that results in loss of life not later than one hundred eighty (180) days after the policy expiration, the date of cancellation or the date of non-renewal;

2. Accidental loss of limbs or multiple fingers;

3. Total loss of sight, speech or hearing.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

Business Travel Accident Expenses shall not be payable if the cause of the injury was:

1. An intentional act by the insured;

2. An act of suicide or attempted suicide;

3. An act of war; or

© 2009 Philadelphia Indemnity Insurance Company

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-BELL-1 IL (11/09)

4. A disease process.

**B. Conference Cancellation**

We will reimburse the insured for any business-related conference expenses, paid by the insured and not otherwise reimbursed, for a canceled conference that an employee was scheduled to attend. The cancellation must be due directly to a "natural catastrophe" or a "communicable disease" outbreak that forces the cancellation of the conference.

With respect to a conference cancellation claim, it is further agreed as follows:

1. The insured employee must have registered for the conference at least thirty (30) days prior to the cancellation; and

2. The cancellation must be ordered by a local, state or federal Board of Health or other governmental authority having jurisdiction over the location of the conference.

The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**C. Donation Assurance**

If the insured is a 501(c)(3) status non-profit organization as defined in the United States Internal Revenue Code, we will reimburse the insured for "failed donation claim(s)."

With respect to any "failed donation claim," it is further agreed as follows:

1. The donor must not have been in bankruptcy, nor have filed for bankruptcy or reorganization in the past seven (7) years prior to the time said pledge was made to the insured;

2. For non-cash donations, our payment of a "failed donation claim" shall be based on the fair market value of said non-cash donation at the time of the "failed donation claim";

3. In the case of unemployment or incapacitation of a natural person donor and as a condition of payment of the "failed donation claim":

   a. Neither the natural person donor nor the insured shall have had reason to believe the donor would become unemployed or incapacitated subsequent to the donation date; and

   b. The donor shall be unemployed for at least sixty (60) days prior to a claim being submitted by the insured;

4. No coverage shall be afforded for a written pledge of funds or other measurable, tangible property to the insured dated prior to the policy period; and

5. A donation amount which is to be collected by the insured over more than a twelve (12) month period shall be deemed a single donation.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-BELL-1 IL (11/09)

**D. Emergency Real Estate Consulting Fee**

We will reimburse the insured any realtor's fee or real estate consultant's fee necessitated by the insured's need to relocate due to the "unforeseeable destruction" of the insured's "principal location" listed in the Declarations during the policy period. The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**E. Fundraising Event Blackout**

We will reimburse the insured for "fundraising expenses" that are incurred due to the cancellation of a fundraising event caused by the lack of electric supply resulting in a power outage, provided the fundraising event is not re-scheduled. The fundraising event must have been planned at least thirty (30) days prior to the power outage. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**F. Identity Theft Expense**

We will reimburse any present director or officer of the named insured for "identity theft expenses" incurred as the direct result of any "identity theft" first discovered and reported during the policy period; provided that it began to occur subsequent to the effective date of the insured's first policy with us. The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**G. Image Restoration and Counseling**

We will reimburse the insured for expenses incurred for image restoration and counseling arising out of "improper acts" by any natural person.

Covered expenses are limited to:

1. The costs of rehabilitation and counseling for the accused natural person insured, provided the natural person insured is not ultimately found guilty of criminal conduct; this reimbursement to occur after acquittal of the natural person insured;

2. The costs charged by a recruiter or expended on advertising, for replacing an officer as a result of "improper acts"; and

3. The costs of restoring the named insured's reputation and consumer confidence through image consulting.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**H. Key Individual Replacement Expenses**

We will pay "key individual replacement expenses" if the Chief Executive Officer or Executive Director suffers an "injury" during the policy period which results in the loss of life during the policy period. The limit of insurance for this coverage is the lesser of $50,000 or ten (10) times the annual premium paid for this policy. No deductible applies to this coverage.

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

I.    **Kidnap Expense**

We will pay on behalf of any director or officer of the insured, reasonable fees incurred as a result of the kidnapping of them or their spouse, "domestic partner," parent or child during the policy period. Coverage will not apply to any kidnapping by or at the direction of any present or former family member of the victim.

Reasonable fees will include:

1.    Fees and costs of independent negotiators;

2.    Interest costs for any loan from a financial institution taken by you to pay a ransom demand or extortion threat;

3.    Travel costs and accommodations incurred by the named insured;

4.    Reward money paid to an informant which leads to the arrest and conviction of parties responsible for loss covered under this insurance; and

5.    Salary, commissions and other financial benefits paid by you to a director or officer. Such compensation applies at the level in effect on the date of the kidnap and ends upon the earliest of:

    a.    Up to thirty (30) days after their release, if the director or officer has not yet returned to work;

    b.    Discovery of their death;

    c.    One hundred twenty (120) days after the last credible evidence following abduction that they are still alive; or

    d.    Twelve (12) months after the date of the kidnapping.

The limit of insurance for this coverage is $50,000 each policy period for all insureds combined. No deductible applies to this coverage.

J.    **Political Unrest Coverage**

We will reimburse any present director, officer, employee or volunteer of the named insured while traveling outside the United States of America for "emergency evacuation expenses" that are incurred as a result of an incident of "political unrest." This "political unrest" must occur during the policy period. No coverage is granted for travel to countries in a state of "political unrest" at the time of departure of the travel. The limit of insurance for this coverage is $5,000 per covered person, subject to a maximum of $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

K.    **Temporary Meeting Space Reimbursement**

We will reimburse the insured for rental of meeting space which is necessitated by the temporary unavailability of the insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater during the policy period. Coverage will exist only for the renting of temporary meeting space required for meeting with parties who are not insured under this policy. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

**L. Terrorism Travel Reimbursement**

We will reimburse any present director or officer of the named insured in the event of a "certified act of terrorism" during the policy period which necessitates that he/she incurs "emergency travel expenses." The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**M. Travel Delay Reimbursement**

We will reimburse any present director or officer of the named insured for any "non-reimbursable expenses" they incur as a result of the cancellation of any regularly scheduled business travel on a common carrier. The limit of insurance for this coverage is $1,500 per policy period for all insureds combined. A seventy-two (72) hour waiting period deductible applies to this coverage.

**N. Workplace Violence Counseling**

We will reimburse the insured for emotional counseling expenses incurred directly as a result of a "workplace violence" incident at any of the insured's premises during the policy period. The emotional counseling expenses incurred must have been for:

1. Your employees who were victims of, or witnesses to the "workplace violence";

2. The spouse, "domestic partner," parents or children of your employees who were victims of, or witnesses to the "workplace violence"; and

3. Any other person or persons who directly witnessed the "workplace violence" incident.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**IV. DEFINITIONS**

For the purpose of this endorsement, the following definitions apply:

A. "Certified act of terrorism" means any act so defined under the Terrorism Risk Insurance Act, and its amendments or extensions.

B. "Communicable disease" means an illness, sickness, condition or an interruption or disorder of body functions, systems or organs that is transmissible by an infection or a contagion directly or indirectly through human contact, or contact with human fluids, waste, or similar agent, such as, but not limited to Meningitis, Measles or Legionnaire's Disease.

C. "Domestic partner" means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by the named insured.

D. "Emergency evacuation expenses" mean:

1. Additional lodging expenses;

2. Additional transportation costs;

3. The cost of obtaining replacements of lost or stolen travel documents necessary for evacuation from the area of "political unrest"; and

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

    4.  Translation services, message transmittals and other communication expenses.

provided that these expenses are not otherwise reimbursable.

**E.**  "Emergency travel expenses" mean:

    **1.**  Hotel expenses incurred which directly result from the cancellation of a scheduled transport by a commercial transportation carrier, resulting directly from and within forty-eight (48) hours of a "certified act of terrorism"; and

    **2.**  The increased amount incurred which may result from re-scheduling comparable transport, to replace a similarly scheduled transport canceled by a commercial transportation carrier in direct response to a "certified act of terrorism";

provided that these expenses are not otherwise reimbursable.

**F.**  "Failed donation claim" means written notice to the insured during the policy period of:

    **1.**  The bankruptcy or reorganization of any donor whereby such bankruptcy or reorganization prevents the donor from honoring a prior written pledge of funds or other measurable, tangible property to the insured; or

    **2.**  The unemployment or incapacitation of a natural person donor preventing him/her from honoring a prior written pledge of funds or other measurable, tangible property to the insured.

**G.**  "Fundraising expenses" mean deposits forfeited and other charges paid by you for catering services, property and equipment rentals and related transport, venue rentals, accommodations (including travel), and entertainment expenses less any deposits or other fees refunded or refundable to you.

**H.**  "Identity theft" means the act of knowingly transferring or using, without lawful authority, a means of identification of any director or officer (or spouse or "domestic partner" thereof) of the named insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**I.**  "Identity theft expenses" mean:

    **1.**  Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

    **2.**  Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors; and

    **3.**  Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

**J.**  "Improper acts" means any actual or alleged act of:

    **1.**  Sexual abuse;

    **2.**  Sexual intimacy;

    **3.**  Sexual molestation; or

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

4. Sexual assault;

committed by an insured against any natural person who is not an insured. Such "improper acts" must have been committed by the insured while in his or her capacity as an insured.

K. "Injury" whenever used in this endorsement, other than in Section **III. A. Business Travel Accident Expenses**, means any physical damage to the body caused by violence, fracture or an accident.

L. "Key individual replacement expenses" mean the following necessary expenses:

1. Costs of advertising the employment position opening;

2. Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

3. Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, overtime pay, costs to verify the background and references of the applicants and legal expenses incurred to draw up an employment contract.

M. "Natural catastrophe" means hurricane, tornado, earthquake or flood.

N. "Non-reimbursable expenses" means the following travel-related expenses incurred after a seventy-two (72) hour waiting period, beginning from the time documented on the proof of cancellation, and for which your director or officer produces a receipt:

1. Meals and lodging;

2. Alternative transportation;

3. Clothing and necessary toiletries; and

4. Emergency prescription and non-prescription drug expenses.

O. "Political unrest" means:

1. A short-term condition of disturbance, turmoil or agitation within a foreign country that poses imminent risks to the security of citizens of the United States;

2. A long-term condition of disturbance, turmoil or agitation that makes a foreign country dangerous or unstable for citizens of the United States; or

3. A condition of disturbance, turmoil or agitation in a foreign country that constrains the United States Government's ability to assist citizens of the United States, due to the closure or inaccessibility of an embassy or consulate or because of a reduction of its staff

for which either an alert or travel warning has been issued by the United States Department of State.

P. "Principal location" means the headquarters, home office or main location where most business is substantially conducted.

Q. "Unforeseeable destruction" means damage resulting from a "certified act of terrorism," fire, collision or collapse which renders all of the insured's "principal locations" completely unusable.

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

R. "Workplace violence" means any intentional use of or threat to use deadly force by any person with intent to cause harm and that results in bodily "injury" or death of any person while on the insured's premises.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-CME-1 (10/09)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CRISIS MANAGEMENT ENHANCEMENT ENDORSEMENT

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

Solely for the purpose of this endorsement: 1) The words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. 2) The words "we," "us" and "our" refer to the company providing this insurance.

**I. SCHEDULE OF ADDITIONAL COVERAGE AND LIMITS**

The following is the Limit of Liability provided by this endorsement. This endorsement is subject to the provisions of the policy to which it is attached.

Crisis Management Expense                                                                           $25,000

**II. CONDITIONS**

**A. Applicability of Coverage**

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable. All other terms and conditions of the policy or coverage part to which this endorsement is attached remain unchanged.

**B. Limits of Liability or Limits of Insurance**

When coverage is provided by this endorsement and any other coverage form or endorsement attached to this policy, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Liability or Limit of Insurance.

**C. Claim Expenses**

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

**III. ADDITIONAL COVERAGES**

**A.** We will reimburse you for "crisis management emergency response expenses" incurred because of an "incident" giving rise to a "crisis" to which this insurance applies. The amount of such reimbursement is limited as described in Section **II. CONDITIONS, B. Limits of Liability or Limits of Insurance**. No other obligation or liability to pay sums or perform acts or services is covered.

**B.** We will reimburse only those "crisis management emergency response expenses" which are incurred during the policy period as shown in the Declarations of the policy to which this coverage is attached and reported to us within six (6) months of the date the "crisis" was initiated.

PI-CME-1 (10/09)

## IV. DEFINITIONS

**A.** "Crisis" means the public announcement that an "incident" occurred on your premises or at an event sponsored by you.

**B.** "Crisis management emergency response expenses" mean those expenses incurred for services provided by a "crisis management firm." However, "crisis management emergency response expenses" shall not include compensation, fees, benefits, overhead, charges or expenses of any insured or any of your employees, nor shall "crisis management emergency response expenses" include any expenses that are payable on your behalf or reimbursable to you under any other valid and collectible insurance.

**C.** "Crisis management firm" means any service provider you hire that is acceptable to us. Our consent will not be unreasonably withheld.

**D.** "Incident" means an accident or other event, including the accidental discharge of pollutants, resulting in death or serious bodily injury to three or more persons.

**E.** "Serious bodily injury" means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98                    Copyright, Insurance Services Office, Inc., 1998                    Page 1 of 1    ☐

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

IL 00 21 09 08 © ISO Properties, Inc., 2007 Page 1 of 2 □

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

IL 01 18 02 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the terms Coverage Part and Coverage Form in this endorsement are replaced by the term Policy.

**B.** The following is added to the **Legal Action Against Us** Condition:

The two year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

**C.** If this policy covers:

1. The following in **a.** and **b.,** then Paragraphs **2.** and **3.** apply:

   **a.** Real property used principally for residential purposes up to and including a four family dwelling; or

   **b.** Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

2. The second paragraph of the **Appraisal** Condition is deleted and replaced by the following:

   **a.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

   **b.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

      **(1)** You demanded the appraisal; and

      **(2)** The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

3. The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

   **Concealment, Misrepresentation Or Fraud**

   **a.** This Coverage Part or Coverage Form is void if you or any insured ("insured") commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

      **(1)** Was made with actual intent to deceive; or

      **(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

      However, this condition will not serve as a reason to void this Coverage Part or Coverage Form after the Coverage Part or Coverage Form has been in effect for one year or one policy term, whichever is less.

   **b.** We do not provide coverage under this Coverage Part or Coverage Form to you or any other insured ("insured") who, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

      **(1)** This Coverage Part or Coverage Form;

      **(2)** The Covered Property;

      **(3)** Your interest in the Covered Property; or

      **(4)** A claim under this Coverage Part or Coverage Form.

   **c.** Notwithstanding the limitations stated in **3.a.** above, we may cancel the Coverage Part or Coverage Form in accordance with the terms of the Cancellation Condition.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

D. For the Commercial Property Coverage Part and the Standard Property Policy, the following exclusion and related provisions are added to Paragraph **B.2.** Exclusions in the Causes of Loss Forms and to any Coverage Form or policy to which a Causes of Loss Form is not attached:

1. We will not pay for loss or damage arising out of any act an insured commits or conspires to commit with the intent to cause a loss.

   In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

2. However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

   a. The loss arose out of a pattern of criminal domestic violence; and

   b. The perpetrator of the loss is criminally prosecuted for the act causing the loss.

3. If we pay a claim pursuant to Paragraph **D.2.,** our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

E. The **Intentional Loss Exclusion** in the Causes of Loss Form – Farm Property, Mobile Agricultural Machinery And Equipment Coverage Form and Livestock Coverage Form is replaced by the following:

1. We will not pay for loss ("loss") or damage arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss ("loss").

   In the event of such loss ("loss"), no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss ("loss").

2. However, this exclusion will not apply to deny payment to an innocent co-"insured" who did not cooperate in or contribute to the creation of the loss ("loss") if:

   a. The loss ("loss") arose out of a pattern of criminal domestic violence; and

   b. The perpetrator of the loss ("loss") is criminally prosecuted for the act causing the loss.

3. If we pay a claim pursuant to Paragraph **E.2.,** our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

F. The **Intentional Loss Exclusion** in the Capital Assets Program (Output Policy) Coverage Part, is replaced by the following:

1. We will not pay for loss or damage arising out of any act an insured commits or conspires to commit with the intent to cause a loss.

   In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

2. However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

   a. The loss arose out of a pattern of criminal domestic violence; and

   b. The perpetrator of the loss is criminally prosecuted for the act causing the loss.

3. If we pay a claim pursuant to Paragraph **F.2.,** our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

   © Insurance Services Office, Inc., 2016   IL 01 18 02 17

IL 01 47 09 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

B. Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

1. Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

C. With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

IL 01 62 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

A. The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Commercial General Liability, Commercial Liability Umbrella, Employment-related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

2. Section II under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

3. Section III under the Auto Dealers and Motor Carrier Coverage Forms;

4. Section A. Coverage under the Legal Liability Coverage Form; and

5. Coverage C – Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

B. If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

IL 01 62 10 13                    © Insurance Services Office, Inc., 2013                    Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

IL 02 84 01 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. If this policy has been in effect for 60 days or less, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy by mailing written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. If this policy has been in effect for more than 60 days, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy only for one or more of the following reasons:

    a. Nonpayment of premium;

    b. The policy was obtained through a material misrepresentation;

    c. You have violated any of the terms and conditions of the policy;

    d. The risk originally accepted has measurably increased;

    e. Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

    f. A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of this State.

    If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

4. We will mail our notice to you, together with our reason for cancellation, at your last mailing address known to us. Proof of mailing will be sufficient proof of notice.

5. Notification of cancellation will also be sent to your broker, if known, or agent of record, if known, and to the mortgagee or lienholder listed on the policy.

6. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

8. **Real Property Other Than Residential Properties Occupied By Four Families Or Less**

The following applies only if this policy covers real property other than residential property occupied by four families or less:

If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation, by both certified and regular mail, if:

a. After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

b. The building has been unoccupied 60 or more consecutive days. This does not apply to:

(1) Seasonal unoccupancy; or

(2) Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

c. The building has:

(1) An outstanding order to vacate;

(2) An outstanding demolition order; or

(3) Been declared unsafe in accordance with the law.

d. Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

The policy will terminate 10 days following receipt of the written notice by the named insured(s).

9. **Residential Properties Occupied By Four Families Or Less**

The following applies if this policy covers residential properties occupied by four families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

a. Nonpayment of premium;

b. The policy was obtained by misrepresentation or fraud; or

c. Any act that measurably increases the risk originally accepted.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 30 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

10. For insurance provided under the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part, the following applies:

**Grain In Public Grain Warehouses**

(Not applicable to grain owned by the Commodity Credit Corporation)

The following applies only with respect to grain in public grain warehouses:

The first Named Insured or we may cancel this policy at any time by mailing to:

a. The other; and

b. The Director of the Illinois Department of Agriculture (at its Springfield Office);

60 days' written notice of cancellation.

B. The following is added:

**Nonrenewal**

1. If we decide not to renew or continue this policy, we will mail you written notice, stating the reason for nonrenewal. Proof of mailing will be sufficient proof of notice.

2. Except as provided in Paragraph 6. below, we will mail you notice of nonrenewal at least 60 days before the end of the policy period.

3. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

4. If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

5. The following provision applies to policies other than those described in Paragraph 6.:

Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known, and the mortgagee or lienholder listed on the policy.

© Insurance Services Office, Inc., 2017     IL 02 84 01 18

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

6. The following provision applies only if this policy covers residential properties occupied by four families or less:

a. If this policy has been issued to you and in effect with us for five or more years, we may not fail to renew this policy unless:

(1) The policy was obtained by misrepresentation or fraud and we mail you notice of nonrenewal at least 30 days before the end of the policy period as provided in **1.** above;

(2) The risk originally accepted has measurably increased and we mail you notice of nonrenewal at least 30 days before the end of the policy period as provided in **1.** above; or

(3) You received 60 days' notice of our intent not to renew as provided in **1.** above.

b. If this policy has been issued to you and in effect with us for less than five years, we may not fail to renew this policy unless you received 30 days' notice as provided in **1.** above.

c. Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known, and to the last known mortgagee or lienholder.

d. The nonrenewal shall not become effective until at least 30 days from the proof of mailing date of the notice to you.

**IL 02 84 01 18**                © Insurance Services Office, Inc., 2017                **Page 3 of 3**

IL 09 52 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

IL 09 52 01 15 © Insurance Services Office, Inc., 2015 Page 1 of 1

PI-ACL-001 (12/18)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABSOLUTE CYBER LIABILITY AND ELECTRONIC EXCLUSION

The following exclusion applies to all coverages afforded under this policy:

This insurance does not apply to any loss, cost, expense, fine, penalty, error and omission, or damage alleging, arising out of or from, attributable to, or giving rise to:

**(1)** Any access to, collection or disclosure of, or failure to erase any person's or organization's confidential or personal information, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, biometrics, or any other type of nonpublic information; or

**(2)** Business interruption or suspension of operations as caused by any access, unauthorized access, lack of access, delay in access, damage, manipulation, loss, or impairment to **Electronic Data** or **Electronic Media**; or

**(3)** **Cyber Extortion**; or

**(4)** A **Privacy Breach**; or

**(5)** A **Security Breach**; or

**(6)** Any fraudulent communication through **Electronic Media** that impersonates any person or organization, including but not limited to phishing or other social engineering techniques or otherwise; or

**(7)** Any computer code, software, or programming; or

**(8)** Any **Security Breach** that results in any electronic thing or device or **Electronic Media** malfunctioning, improperly functioning, non-functioning, failing to perform as the intended user desired, or being electronically manipulated to perform in a way that causes harm to the insured or others; or

**(9)** The loss, loss of use, misuse, delay, manipulation, corruption, damage, alteration, destruction, distortion, erasure, or theft of, or inability to access or manipulate **Electronic Data** or **Electronic Media** as a result of **Cyber Extortion;** or **Privacy Breach;** or **Security Breach**

**(10)** Any failure of utilities based upon, arising out of, or attributable to any mechanical or electrical failure, interruption, or outage, however caused, including but not limited to any electrical power interruption or surge, brownout, blackout, short circuit, over voltage, or power fluctuation or outage to gas, water, telephone, cable, satellite, telecommunications, the internet, or any component thereof, including but not limited to hardware, software, or any other infrastructure as a result of **Cyber Extortion;** or **Privacy Breach;** or **Security Breach.**

**(11)** This exclusion applies even if damages are claimed for notification costs, errors or omissions, credit monitoring expenses, forensic expenses, public relations expenses, or any other loss, cost, or expense incurred by the insured or others arising out of that which is described in Paragraphs (1) through (10) above.

As used in this exclusion, the following definitions apply:

Page 1 of 3

@2018 Philadelphia Consolidated Holding Corp.

PI-ACL-001 (12/18)

PI-ACL-001 (12/18)

**Computer hardware** means the physical components of any **computer system** including CPU's, memory storage devices, storage media, and input/output devices and other peripheral devices and components including but not limited to cable, connectors, fiber optics, networking equipment, **electronic data** storage devices, input and output devices, backup facilities, wire, power supply units, keyboards, display monitors and audio speakers.

**Computer system** means an electronic, wireless, web or similar systems (including all **computer hardware**, computer programs and **electronic data**) used to process data or information in an analog, digital, electronic or wireless format, including but not limited to, associated input and output devices, data storage devices, networking equipment, wired or wireless peripherals, electronic backup facilities, and media libraries, that is owned or leased, operated and controlled by the insured or operated by an independent contractor authorized to provide Business Process Outsourcing services or outsourced Information Technology services for the insured.

**Corporate Information Breach** means the public disclosure of an organization's non-public information.

**Cyber Extortion** means any threat or connected series of threats communicated to the insured for the purpose of demanding money, securities, or property, including but not limited to threats to release, divulge, disseminate, corrupt, damage or destroy **Electronic Data** or **Electronic Media**; introduce malware or **malicious code** into the insured's computer system; electronically communicate with the insured's customers in order to fraudulently obtain personal information, money, securities or property; or restrict or hinder access to the insured's computer system, **Electronic Data** or **Electronic Media**, including but not limited to ransomware.

**Denial of service** means unauthorized or unexpected interference or malicious attack by any person(s) or entity(ies) that restricts or prevents access to a **computer system** by persons or entities authorized to gain access to the **computer system** or **electronic data**.

**Electronic Data** means information, facts, blockchain, crypto currencies, or computer programs stored as or on, created or used on, or transmitted to or from computer software, including but not limited to systems and applications software, hard or floppy disks, CD-ROMs, DVDs, external drives, USB sticks, tapes, drives, cells, microchip, data processing devices, or any other media which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of **Electronic Data**, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve, or send data.

**Electronic Media** means broadcast or storage media that take advantage of electronic technology. They include television, radio, Internet, fax, Bluetooth, GPS, audio beacons, electronic data, and any other medium that requires electricity or digital encoding of information.

.**Malicious code** means unauthorized and corrupting or harmful computer code, including but not limited to computer viruses, spyware, Trojan horses, worms, logic bombs, and mutations of any of the preceding.

@2018 Philadelphia Consolidated Holding Corp.

PI-ACL-001 (12/18)

PI-ACL-001 (12/18)

**Privacy Breach** means a common law or statutory breach of confidence or violation of any common law or statutory rights to privacy, including but not limited to breach of a privacy policy, breach of a person's right of publicity, misappropriation of likeness, false light, intrusion upon a person's seclusion, or public disclosure of a person's or animal's private information. Privacy Breach will also include a **Corporate Information Breach**.

**Security breach** means:

1. **Unauthorized access** of the insured's **computer system** or **unauthorized use** of **computer systems** including **unauthorized access** or **unauthorized use** resulting from the theft of a password from the insured's **computer system**;

2. A **denial of service** attack against your **computer systems**; or

3. Infection of the insured's **computer system** by **malicious code** or transmission of **malicious code** from the insured's **computer systems**,

whether any of the foregoing is a specifically targeted attack or a generally distributed attack.

**Unauthorized access** means the gaining of access to a **computer system** by an unauthorized person or persons.

**Unauthorized use** means the use of a **computer system** by an unauthorized person or persons or an authorized person in an unauthorized manner.

This Endorsement is an absolute exclusion for cyber liability, **Electronic Data**, **Electronic Media** and **Security Breaches**. This Endorsement applies except if coverage is specifically and affirmatively provided in the following coverage forms or endorsements issued by us and only in respect to the coverage afforded in those coverage forms or endorsements. In no event will this Endorsement broaden any coverage afforded in any coverage form or endorsement:

- **Cyber Security Liability Coverage Form**
- **Cyber Security Liability Endorsement**
- **Building and Personal Property Coverage Form**
- **Fraudulent Inducement Insuring Agreement**
- **Fraudulent Inducement Insuring Agreement - Broad Form**
- **Fraudulent Impersonation**
- **Fraudulent Impersonation Ultimate Cover**
- **Business Income and Extra Expense Coverage Form**
- **Computer Coverage Form**

All other terms and conditions remain unchanged.

Page 3 of 3

@2018 Philadelphia Consolidated Holding Corp.

PI-ACL-001 (12/18)

PI-CANXAICH-002 (05/11)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CANCELLATION NOTICE TO SCHEDULED ADDITIONAL INSURED OR CERTIFICATE HOLDER

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**COMMERCIAL CRIME COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL AUTOMOBILE COVERAGE PART**

### SCHEDULE OF ADDITIONAL INSUREDS OR CERTIFICATE HOLDERS

| AI or CH | Additional Insured or Certificate Holder | Address |
|---|---|---|
| CH & AI | Any person or organization with whom you have agreed to provide 30 days prior written notice of cancellation as provided by your insurance broker of such person or organization and that list is provided to us prior to any such cancellation | Various |
| | | |

The following is added to **A. CANCELLATION** of the Common Policy Conditions of the above applicable coverage part:

    **A.** In the event we cancel the policy in accordance with the policy's terms and conditions, we will endeavor to mail written notice of cancellation to Additional Insureds or Certificate Holders, shown in the above SCHEDULE within the time frame listed below. However, failure to mail such notice shall impose no obligation of any kind upon us, our agents or representatives.

        1. __30_ days before the effective date of cancellation if we cancel for any reason other than for non - payment of premium.

        As respects Additional Insureds, the above cancellation provision applies only when the Additional Insured shown in the above **SCHEDULE** is added to the policy by a separate additional insured endorsement as the **CANCELLATION NOTICE TO ADDITIONAL INSURED OR CERTIFICATE HOLDER** does not provide additional insured coverage.

Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-PROF-002 IL (06/20)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ABSOLUTE COMMUNICABLE DISEASE EXCLUSION
## PROFESSIONAL LIABILITY – ILLINOIS

I.  The following exclusion applies to all professional liability coverages afforded in any coverage form or endorsement issued by us.  When the applicable professional liability coverage:

A.  Contains a communicable disease exclusion, it is deleted in its entirety and replaced with the following; or

B.  Does not contain a communicable disease exclusion, the following is added:

This insurance does not apply to any loss, cost, expense, fine, penalty, act, error or omission, or damage arising out of the actual, alleged, threatened or suspected transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

1.  Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

2.  Testing for a communicable disease;

3.  Failure to prevent the spread of the disease; or

4.  Failure to report the disease to authorities.

II.  For the purposes of this endorsement, communicable disease means any infectious or contagious disease, illness or condition that can be transmitted from:

1.  Person to person;

2.  Animal (including insect) to person; or

3.  Animal to animal (including insect),

Directly or indirectly, by direct contact or indirectly by means of vector or fomites, including but not limited to the following and any variant(s) thereof:

a.  Acquired Immune Deficiency Syndrome (AIDS) or Human Immunodeficiency Virus (HIV);

b.  Human T-Cell Lymphotrophic Virus (HTLV) of any form or type;

c.  Any hepatitis virus;

d.  Severe Acute Respiratory Syndrome (SARS);

e.  Herpes virus, any venereal disease or sexually transmitted illness or condition;

f.  Zika virus;

g.  Norovirus;

PI-PROF-002 IL (06/20)
Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-PROF-002 IL (06/20)

    **h.** Coronavirus;

    **i.** Any of the Ebola virus species; or

    **j.** Creutzfeldt-Jakob disease or New Variant Creutzfeldt-Jakob disease.

This endorsement is an absolute exclusion for communicable disease.

All other terms and conditions remain unchanged.

PI-PROF-002 IL (06/20)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-018 (05/19)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ABSOLUTE ABUSE OR MOLESTATION EXCLUSION
## PROFESSIONAL LIABILITY

The following exclusion applies to all professional liability coverages afforded in any coverage form or endorsement issued by us.  When the applicable professional liability coverage:

**A.** Contains an abuse or molestation exclusion, it is deleted in its entirety and replaced with the following; or

**B.** Does not contain an abuse or molestation exclusion, the following is added:

This insurance does not apply to any loss, cost, expense, fine, penalty, act, error and omission, or damage alleging, arising out of or from, attributable to, or giving rise to any injury sustained by any person caused by the alleged, actual or threatened abuse or molestation by anyone.

We shall not have any duty to defend any "suit" against any insured on account of any such injury.

This exclusion applies to all injury sustained by any person, including emotional distress, arising out of molestation or abuse whether alleged, actual or threatened including but not limited to molestation or abuse arising out of your negligence or other wrongdoing with respect to:

   **1.  a.** Hiring, placement, employment, training;

   **b.** Investigation;

   **c.** Supervision;

   **d.** Reporting any molestation or abuse to the proper authorities, or failure to so report; or

   **e.** Retention

   of a person for whom any insured is or ever was legally responsible or for whom any insured may have assumed the liability; and whose conduct would be excluded above; or

   **2.  a.** Failure to provide professional services to; or

   **b.** Neglect of the therapeutic needs of,

   any person because of the conduct which would be excluded above.

This endorsement is an absolute exclusion for abuse or molestation.

All other terms and conditions remain unchanged.

PI-SAM-018 (05/19)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-TER-DN1 (1/21)

Policy Number: PHPK2459846          Named Insured: Remedial Environmental Manpower, Inc

 **PHILADELPHIA**
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

Terrorism Premium (Certified Acts) $_____1,509.00_____

## DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE REJECTION OPTION

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT'S FEDERAL SHARE OF TERRORISM LOSSES IS 80% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Your attached proposal (or policy) includes a charge for terrorism. We will issue (or have issued) your policy with terrorism coverage unless you decline by placing an "X" in the box below.**

**NOTE 1:** If "included" is shown on your proposal (or policy) for terrorism you WILL NOT have the option to reject the coverage.

**NOTE 2:** You will want to check with entities that have an interest in your organization as they may require that you maintain terrorism coverage (e.g. mortgagees).

**EXCEPTION:** If you have property coverage on your policy, the following Standard Fire Policy states do not permit an Insured to reject fire ensuing from terrorism: CA, CT, GA, HI, IA, IL, MA, ME, MO, NJ, NY, NC, OR, RI, VA, WA, WV, WI. Therefore, if you are domiciled in the above states and reject terrorism coverage, you will still be charged for fire ensuing from terrorism as separately designated on your proposal.

Page 1 of 2

PI-TER-DN1 (1/21)

| | I decline to purchase terrorism coverage. I understand that I will have no coverage for losses arising from "certified" acts of terrorism, EXCEPT as noted above. |
| --- | --- |

**You, as the Insured, have 30 days after receipt of this notice to consider the selection/rejection of "terrorism" coverage. After this 30 day period, any request for selection or rejection of terrorism coverage WILL NOT be honored.**

**REQUIRED IN GA – LIMITATION ON PAYMENT OF TERRORISM LOSSES** (applies to policies which cover terrorism losses insured under the federal program, including those which only cover fire losses)
The provisions of the Terrorism Risk Insurance Act, as amended, can limit our maximum liability for payment of losses from certified acts of terrorism. That determination will be based on a formula set forth in the law involving the national total of federally insured terrorism losses in an annual period and individual insurer participation in payment of such losses. If one or more certified acts of terrorism in an annual period causes the maximum liability for payment of losses from certified acts of terrorism to be reached, and we have satisfied our required level of payments under the law, then we will not pay for the portion of such losses above that maximum. However, that is subject to possible change at that time, as Congress may, under the Act, determine that payments above the cap will be made.

INSURED'S SIGNATURE_____
DATE_____

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY
# COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

---

**CP 00 10 10 12**      © Insurance Services Office, Inc., 2011      **Page 1 of 16**

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

b. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

c. Automobiles held for sale;

d. Bridges, roadways, walks, patios or other paved surfaces;

e. Contraband, or property in the course of illegal transportation or trade;

f. The cost of excavations, grading, backfilling or filling;

g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

   (1) The lowest basement floor; or

   (2) The surface of the ground, if there is no basement;

h. Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

i. Personal property while airborne or waterborne;

j. Bulkheads, pilings, piers, wharves or docks;

k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

l. Retaining walls that are not part of a building;

m. Underground pipes, flues or drains;

n. Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.**, does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

o. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

p. Vehicles or self-propelled machines (including aircraft or watercraft) that:

   (1) Are licensed for use on public roads; or

   (2) Are operated principally away from the described premises.

   This paragraph does not apply to:

   (a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

© Insurance Services Office, Inc., 2011    CP 00 10 10 12

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

© Insurance Services Office, Inc., 2011

CP 00 10 10 12

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

© Insurance Services Office, Inc., 2011 CP 00 10 10 12

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

b. **Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

(1) Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

(2) Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

c. **Valuable Papers And Records (Other Than Electronic Data)**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

(2) If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

(3) If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

(4) Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

d. **Property Off-premises**

(1) You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

(a) Temporarily at a location you do not own, lease or operate;

(b) In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

(c) At any fair, trade show or exhibition.

(2) This Extension does not apply to property:

(a) In or on a vehicle; or

(b) In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

(3) The most we will pay for loss or damage under this Extension is $10,000.

e. **Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

    (a) The trailer is used in your business;

    (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

    (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

    (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

    (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

    (a) Will end 90 days after the business personal property has been placed in the storage unit;

    (b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;

2. Pollutant Clean-up And Removal;

3. Increased Cost Of Construction; and

4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Building 1: | $ | 60,000 |
| Limit of Insurance – Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100

–     250

$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable – Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable – Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | $ | 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

1. **Abandonment**

There can be no abandonment of any property to us.

2. **Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

© Insurance Services Office, Inc., 2011

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Loss Payment**

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

**Step (1):** $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

**Step (2):** $100,000 ÷ $200,000 = .50

**Step (3):** $40,000 x .50 = $20,000

**Step (4):** $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When: The value of the property is:

| | |
|---|---|
| Building at Location 1: | $ 75,000 |
| Building at Location 2: | $100,000 |
| Personal Property at Location 2: | $ 75,000 |
| | $250,000 |

| | |
|---|---|
| The Coinsurance percentage for it is: | 90% |

| | |
|---|---|
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $180,000 |
| The Deductible is: | $ 1,000 |

The amount of loss is:

| | |
|---|---|
| Building at Location 2: | $ 30,000 |
| Personal Property at Location 2: | $ 20,000 |
| | $ 50,000 |

Step (1): $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2): $180,000 ÷ $225,000 = .80

Step (3): $50,000 x .80 = $40,000

Step (4): $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

© Insurance Services Office, Inc., 2011

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| | | |
|---|---|---|
| If: | The applicable Limit of Insurance is: | $ 100,000 |
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

a. If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

b. With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

3. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011 CP 00 10 10 12

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

COMMERCIAL PROPERTY
CP 00 30 10 12

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

 © Insurance Services Office, Inc., 2011 CP 00 30 10 12

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

  (a) Used in the construction, alterations or additions; or

  (b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

(1) **Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

  (a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

  (b) Ends on the earlier of:

    (i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

    (ii) 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(2) **"Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

  (a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

  (b) Ends on the earlier of:

    (i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

    (ii) 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

(1) Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

   **(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

   **(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

   **(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

   **(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

   **(1)** This policy expires;

© Insurance Services Office, Inc., 2011 CP 00 30 10 12

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Appraisal

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 2. Duties In The Event Of Loss

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**3. Loss Determination**

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

c. **Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

a. We have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

1. The Coinsurance percentage shown for Business Income in the Declarations; times

2. The sum of:

a. The Net Income (Net Profit or Loss before income taxes), and

b. Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

© Insurance Services Office, Inc., 2011   CP 00 30 10 12

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1)**; and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2)**.

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

(1) Prepaid freight – outgoing;

(2) Returns and allowances;

(3) Discounts;

(4) Bad debts;

(5) Collection expenses;

(6) Cost of raw stock and factory supplies consumed (including transportation charges);

(7) Cost of merchandise sold (including transportation charges);

(8) Cost of other supplies consumed (including transportation charges);

(9) Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

(10) Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

(11) All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

(12) Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: $ 400,000

The Coinsurance percentage is: 50%

The Limit of Insurance is: $ 150,000

The amount of loss is: $ 80,000

Step **(1):** $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: $ 400,000

The Coinsurance percentage is: 50%

The Limit of Insurance is: $ 200,000

The amount of loss is: $ 80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1. Maximum Period Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**CP 00 30 10 12** © Insurance Services Office, Inc., 2011 **Page 7 of 9**

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

    **(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

    **(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

  **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

  **b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

    **(1)** The Limit of Insurance, multiplied by

    **(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |
| | ($120,000 x 1/4 = $30,000) | |
| | If, in this example, the actual amount of loss is: | |
| | Days 1–30: | $ 40,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 90,000 |
| | We will pay: | |
| | Days 1–30: | $ 30,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

  **a.** To activate this Optional Coverage:

    **(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

      **(a)** During the 12 months prior to the date of the Work Sheet; and

      **(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

    **(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

      **(a)** The Coinsurance percentage shown in the Declarations; multiplied by

      **(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

  **b.** The Additional Condition, Coinsurance, is suspended until:

    **(1)** 12 months after the effective date of this Optional Coverage; or

    **(2)** The expiration date of this policy;

    whichever occurs first.

  **c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

    **(1)** Within 12 months of the effective date of this Optional Coverage; or

    **(2)** When you request a change in your Business Income Limit of Insurance.

  **d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

    **(1)** The Business Income Limit of Insurance; divided by

    **(2)** The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

**Step (1):** $100,000 ÷ $200,000 = .50

**Step (2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

  Under Paragraph **A.5.c., Extended Business Income**, the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

 © Insurance Services Office, Inc., 2011 CP 00 30 10 12

**F. Definitions**

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.

2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987        CP 00 90 07 88      □

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

   **1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

   **2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

CP 01 40 07 06 © ISO Properties, Inc., 2006 Page 1 of 1 □

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

COMMERCIAL PROPERTY
CP 01 49 06 07

# ILLINOIS CHANGES – ARTIFICIALLY GENERATED ELECTRICAL CURRENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in:

1. Paragraph **B.2.a.** of the Standard Property Policy, the Causes Of Loss – Basic Form, the Causes Of Loss – Broad Form and the Causes Of Loss – Special Form; and

2. Paragraph **B.2.b.** of the Mortgageholders Errors And Omissions Coverage Form

is replaced by the following exclusion:

We will not pay for loss or damage caused by or resulting from artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

CP 01 49 06 07                © Insurance Services Office, Inc., 2008                Page 1 of 1    ☐

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

COMMERCIAL PROPERTY
CP 10 30 09 17

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of or compliance with any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   (a) An ordinance or law that is enforced even if the property has not been damaged; or

   (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   (1) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust or particulate matter; or

   (c) Lava flow.

   With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

    **(a)** Foundations, walls, floors or paved surfaces;

    **(b)** Basements, whether paved or not; or

    **(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

 © Insurance Services Office, Inc., 2016 CP 10 30 09 17

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

g. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

   (1) You do your best to maintain heat in the building or structure; or

   (2) You drain the equipment and shut off the supply if the heat is not maintained.

h. Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

   This exclusion:

   (1) Applies whether or not an act occurs during your normal hours of operation;

   (2) Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j. Rain, snow, ice or sleet to personal property in the open.

k. Collapse, including any of the following conditions of property or any part of the property:

   (1) An abrupt falling down or caving in;

   (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

   (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above.

   But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.**, does not apply:

   (a) To the extent that coverage is provided under the Additional Coverage, Collapse; or

   (b) To collapse caused by one or more of the following:

      (i) The "specified causes of loss";

      (ii) Breakage of building glass;

      (iii) Weight of rain that collects on a roof; or

      (iv) Weight of people or personal property.

l. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

   This exclusion, **l.**, does not apply to damage to glass caused by chemicals applied to the glass.

m. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

   (1) Planning, zoning, development, surveying, siting;

   (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   (3) Materials used in repair, construction, renovation or remodeling; or

   (4) Maintenance;

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused by or resulting from:

    (a) Damage or destruction of "finished stock"; or

    (b) The time required to reproduce "finished stock".

    This exclusion does not apply to Extra Expense.

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

    (a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

    (b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(5) Any other consequential loss.

**b. Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.**, Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

    (a) Your cancelling the lease;

    (b) The suspension, lapse or cancellation of any license; or

    (c) Any other consequential loss.

**c. Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

    (a) Paragraph **B.1.a.** Ordinance Or Law;

    (b) Paragraph **B.1.c.** Governmental Action;

    (c) Paragraph **B.1.d.** Nuclear Hazard;

    (d) Paragraph **B.1.e.** Utility Services; and

    (e) Paragraph **B.1.f.** War And Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

    (a) **Contractual Liability**

    We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

    (i) Your assumption of liability was executed prior to the accident; and

    (ii) The building is Covered Property under this Coverage Form.

    (b) **Nuclear Hazard**

    We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

      However, this limitation does not apply to:

      (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      (2) Business Income Coverage or Extra Expense Coverage.

   e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

   g. Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

      (1) Dampness or dryness of atmosphere or of soil supporting the vegetation;

      (2) Changes in or extremes of temperature;

      (3) Disease;

      (4) Frost or hail; or

      (5) Rain, snow, ice or sleet.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Animals, and then only if they are killed or their destruction is made necessary.

   b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass; or

      (2) Containers of property held for sale.

   c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

      However, this limitation does not apply:

      (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

Page 6 of 10 © Insurance Services Office, Inc., 2016 CP 10 30 09 17

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.**, does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.**;

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

(1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

(2) The property is Covered Property under this Coverage Form.

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.**;

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in **4.**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

8. The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

E. **Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2016

**CP 10 30 09 17**

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

6. The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

   a. If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

1. **Property In Transit**

   This Extension applies only to your personal property to which this form applies.

   a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

      (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

      (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   c. The most we will pay for loss or damage under this Extension is $5,000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

   **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

   **b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

**G. Definitions**

   **1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

   **2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

     **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      **(1)** The cost of filling sinkholes; or

      **(2)** Sinking or collapse of land into man-made underground cavities.

     **b.** Falling objects does not include loss or damage to:

      **(1)** Personal property in the open; or

      **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

     **c.** Water damage means:

      **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

      **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

POLICY NUMBER: PHPK2459846

COMMERCIAL PROPERTY
CP 12 18 10 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDERS' RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

## SCHEDULE

| Location Number: 00001 | Building Number: 00001 | Applicable Clause<br>(Enter C.1., C.2., C.3. or C.4.): C.1. |
|---|---|---|
| **Description Of Property:** 7239 W. Roosevelt Rd<br>Forest Park, IL 60130-2471 | | |
| **Loss Payee Name:** | Belmont Bank & Trust Company<br>8250 W Belmont Ave | |
| **Loss Payee Address:** | Chicago, IL 60634-2809 | |

| Location Number: 00004 | Building Number: 00001 | Applicable Clause<br>(Enter C.1., C.2., C.3. or C.4.): C.1. |
|---|---|---|
| **Description Of Property:** 123 E Ogden Ave<br>Hinsdale, IL 60521-3550 | | |
| **Loss Payee Name:** | Midwest Group Realty, LLC<br>7239 Roosevelt Rd | |
| **Loss Payee Address:** | Forest Park, IL 60130-2471 | |

| Location Number: | Building Number: | Applicable Clause<br>(Enter C.1., C.2., C.3. or C.4.): |
|---|---|---|
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

CP 12 18 10 12       © Insurance Services Office, Inc., 2011       Page 1 of 3

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

**C.** The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule:

**1. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear

**2. Lender's Loss Payable Clause**

**a.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**(1)** Warehouse receipts;

**(2)** A contract for deed;

**(3)** Bills of lading;

**(4)** Financing statements; or

**(5)** Mortgages, deeds of trust, or security agreements.

**b.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**(1)** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**(2)** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**(3)** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(a)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(b)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(c)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**(4)** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(a)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(b)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**c.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**d.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

© Insurance Services Office, Inc., 2011   CP 12 18 10 12

**3. Contract Of Sale Clause**

a. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered into a contract with for the sale of Covered Property.

b. For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

(1) Adjust losses with you; and

(2) Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

c. The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**4. Building Owner Loss Payable Clause**

a. The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building in which you are a tenant.

b. We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

c. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

CP 12 18 10 12 © Insurance Services Office, Inc., 2011 Page 3 of 3

POLICY NUMBER: PHPK2459846

<div align="right">

**COMMERCIAL PROPERTY**
CP 12 19 06 07

</div>

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – BUILDING OWNER

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

<div align="center">

**SCHEDULE**

</div>

| Premises Number: | 00001 | Building Number: | 00001 |
|---|---|---|---|
| **Building Description:** | | | |
| **Building Owner Name:** | Midwest Group Realty, LLC | | |
| **Building Owner Address:** | 7239 Roosevelt Rd<br>Forest Park, IL 60130-2471 | | |
| **Premises Number:** | | **Building Number:** | |
| **Building Description:** | | | |
| **Building Owner Name:** | | | |
| **Building Owner Address:** | | | |
| **Premises Number:** | | **Building Number:** | |
| **Building Description:** | | | |
| **Building Owner Name:** | | | |
| **Building Owner Address:** | | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The building owner identified in this endorsement is a Named Insured, but only with respect to the coverage provided under this Coverage Part or Policy for direct physical loss or damage to the building(s) described in the Schedule.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

PI-EPE-TS IL (12/10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### ELITE PROPERTY ENHANCEMENT: TEMPORARY STAFFING

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM**
**CAUSES OF LOSS – SPECIAL FORM**

I.  **Schedule of Additional Elite Enhancement Endorsement Coverages and Limits**

The following is a summary of increased Limits of Insurance and/or additional coverages provided by this endorsement. This endorsement is subject to the provisions of your policy.

| Coverage Applicable | Limit of Insurance | Page # |
|---|---|---|
| Foundations | Included | 2 |
| Retaining Walls | $10,000 | 3 |
| Business Personal Property | Within 1600 feet | 3 |
| Fire Department Service Charge | $50,000 | 3 |
| Pollutant Clean Up and Removal | $50,000 | 3 |
| Emergency Vacating Expense | $25,000 | 3 |
| Lease Cancellation Moving Expenses | $5,000 | 4 |
| Joint or Disputed Loss Agreement | Included | 4 |
| Green Consultant Expense Coverage | $5,000 | 6 |
| Newly Acquired or Constructed Property | 180 Days | 6 |
| Valuable Papers and Records | $100,000 | 6 |
| Property Off-Premises, Including Stock | $500,000 | 7 |
| Property at Conventions, Fairs, Exhibitions or Special Events | $100,000 | 7 |
| Outdoor Property | $50,000 | 7 |
| Garages/Storage Sheds | $5,000 | 8 |
| Accounts Receivable | $100,000 | 8 |
| Business Income and Extra Expense | $300,000 | 9 |
|   Civil Authority | Included | |
|   Contingent Business Property | Included | |
|   Utility Service Interruption | Included | |
| Fire Extinguisher Recharge | $25,000 | 12 |
| Lock Replacement | $10,000 | 12 |
| Reward Reimbursement | $50,000 | 12 |
| Inventory and Appraisals of Loss | $50,000 | 12 |
| Ordinance or Law - Undamaged Portion of the Building | Building Limit | 12 |
| Ordinance or Law - Demolition Cost | $500,000 | |
| Ordinance or Law - Increased Cost of Construction | $500,000 | |
| Spoilage | 1600 feet, $50,000 | 14 |
| Pair, Sets or Parts | Amended | 15 |
| Fine Arts | $50,000 | 15 |
| EDP Equipment and Media | $10,000 | 17 |
| Vacancy Clause Modification | 90 Days | 20 |
| Earthquake Sprinkler Leakage | $30,000 | 20 |
| Dampness/Extremes of Temperature | Exclusion removed | 20 |
| Furs | $10,000 | 20 |
| Precious Metals | $25,000 | 20 |

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

| Coverage Applicable | Limit of Insurance | Page # |
|---|---|---|
| Water Coverage | $30,000 | 20 |
| Property in Transit (Includes Common Carrier) | $100,000 ($10,000) | 21 |
| Off Premises Power Failure | $50,000 | 21 |
| Extended Business Income | 180 Days | 22 |

II.    **Elite Enhancement Endorsement Conditions**

A.    **Applicability of Coverage**

Coverage provided in forms attached to your policy is amended by this endorsement where applicable. If two or more coverages apply to the same loss or damage, the broader coverage and only the broader coverage, will apply.

B.    **Limits of Insurance**

1.    When coverage is provided by this form and another coverage form attached to this policy, the greater Limits of Insurance will apply. In no instance will multiple limits apply to coverages which may be duplicated within this policy.

2.    Limits of Insurance identified herein are not excess of, nor applicable in addition to, Limits of Insurance provided by the coverage or Cause of Loss forms applicable to this endorsement, unless otherwise stated.

3.    Coverage is considered to be on an occurrence basis (not on a per location basis).

4.    The deductible listed in the Property Declarations will apply unless specific deductible provisions are set forth under any coverage enhancement.

C.    **Adjusters' Fees**

Coverages provided herein are not applicable to the generation of fees you may incur by retaining a public adjuster or appraiser.

D.    **Applicability of Exclusions**

Specific exclusionary endorsements attached to the policy supersede coverage provisions contained in this coverage enhancement.

E.    **Requirement for Covered Cause of Loss**

Except where a specific Covered Cause of Loss is identified in this coverage enhancement, coverage for the losses described herein are applicable only for Covered Causes of Loss as designated in the Causes of Loss Form attached to the policy.

III.   The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** Section **A. Coverage** is amended as follows:

A.    **Foundations**

1.    **Covered Property** is amended to include the following:

Foundations of buildings, structures, machinery or boilers if their foundations are below the lowest basement floor; or the surface of the ground, if there is no basement.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-EPE-TS IL (12/10)

**2. Property Not Covered**

g. is deleted.

**B. Retaining Walls**

**1. Covered Property** is amended to include the following:

Retaining walls that are not part of a building.

The most we will pay for loss or damage under this enhancement is $10,000 per location.

**2. Property Not Covered**

l. is deleted.

**C. Business Personal Property**

**1. b. Covered Property** the first paragraph is amended to:

**Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 1600 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the YOUR BUSINESS PERSONAL PROPERTY – SEPARATION OF COVERAGE form.

IV. The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, 4. Additional Coverages** is amended as follows:

c. **Fire Department Service Charge**

The Limit of Insurance for this Additional Coverage is increased to $50,000.

d. **Pollutant Clean Up and Removal**

The Limit of Insurance for this Additional Coverage is increased to $50,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

V. The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, 4. Additional Coverages**, the following are added:

A. **Emergency Vacating Expense**

1. The coverage provided by this policy is extended to apply to the reasonable expenses that you incur in the "emergency" vacating of the premises of your facility described in the Declarations, provided that vacating is necessary due to an "emergency" situation resulting from a Covered Cause of Loss.

2. "Emergency" will mean imminent danger arising from an external event or a condition in the facility which would cause loss of life or harm to occupants.

3. We will not pay for any expenses under this Extension arising out of:

a. A strike, bomb threat or false fire alarm, unless vacating is ordered by a civil authority;

PI-EPE-TS IL (12/10)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

    **b.** A planned vacating drill; or

    **c.** The vacating of one or more patients or residents that is due solely to their individual medical condition.

**4.** The most we will pay for Emergency Vacating Expenses in any one occurrence under this Extension is $25,000. The deductible for Emergency Vacating Expenses is $250 per occurrence.

No other exclusions in your policy apply to this Extension. However, specific exclusionary endorsements attached to the policy supersede coverage provisions contained in this coverage enhancement.

**B. Lease Cancellation Moving Expenses**

The Company will reimburse the Insured any moving expenses necessitated by the Insured's need to relocate due to the cancellation of the lease at the insured's premises listed on the Declarations page during the policy period, provided that the lease cancellation occurs as a result of a Covered Cause of Loss. The limit for this coverage will be $5,000 per policy period for all Insureds combined. No deductible applies to this coverage.

**C. Joint or Disputed Loss Agreement**

**1.** This coverage is intended to facilitate payment of insurance proceeds when:

    **a.** Both a boiler and machinery policy and this commercial property policy are in effect;

    **b.** Damage occurs to Covered Property that is insured by the boiler and machinery policy and this commercial property policy; and

    **c.** There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

**2.** This coverage does not apply if:

    **a.** Both the boiler and machinery insurer(s) and we do not admit to any liability; and

    **b.** Neither the boiler and machinery insurer(s) nor we contend that coverage applies under the other insurer's policy.

**3.** The provisions of this coverage apply only if all of the following requirements are met:

    **a.** The boiler and machinery policy carried by the named insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this endorsement;

    **b.** The damage to the Covered Property was caused by a loss for which:

        **(1)** Both the boiler and machinery insurer(s) and we admit to some liability for payment under the respective policies; or

        **(2)** Either:

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

(a) The boiler and machinery insurer(s) does not admit to any liability for payment, while we contend that:

(i) All liability exists under the boiler and machinery policy; or

(ii) Some liability exists under both the boiler and machinery policy and this commercial property policy;

(b) We do not admit to any liability for payment, while the boiler and machinery insurer(s) contends that:

(i) All liability exists under this commercial property policy; or

(ii) Some liability exists under both the boiler and machinery policy and this commercial property policy; or

(c) Both the boiler and machinery insurer(s) and we:

(i) Do not admit to any liability for payment; and

(ii) Contend that some or all liability exists under the other insurer's policy; and

c. The total amount of the loss is agreed to by you, the boiler and machinery insurer(s) and us.

4. If the requirements listed in Paragraph 3. above are satisfied, we and the boiler and machinery insurer(s) will make payments to the extent, and in the manner, described as follows:

a. We will pay, after your written request, the entire amount of loss that we have agreed as being covered, if any, by this commercial property policy and one-half (1/2) the amount of the loss that is in disagreement.

b. The boiler and machinery insurer(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered, if any, by the boiler and machinery policy and one-half (1/2) the amount of loss that is in disagreement.

c. Payments by the insurers of the amounts that are in disagreement, as described in Paragraphs a. and b. above, do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable.

d. The amount in disagreement to be paid by us under this endorsement shall not exceed the amount payable under the equivalent Loss Agreement(s) of the boiler and machinery policy.

e. The amount to be paid under this endorsement shall not exceed the amount we would have paid had no boiler and machinery policy been in effect at the time of loss. In no event will we pay more than the applicable Limit of Insurance shown in the Declarations.

f. Acceptance by you of sums paid under this endorsement does not alter, waive or surrender any other rights against us.

5. Arbitration

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

a. If the circumstances described in Paragraph **3.b.(1)** exist and the boiler and machinery insurer(s) and we agree to submit our differences to arbitration, the boiler and machinery insurer(s) and we will determine the amount each will pay and will pay the insured within 90 days. Arbitration will then take place within 90 days after payment of the loss under the terms of this endorsement.

b. If any of the circumstances described in Paragraph **3.b.(2)** exist, then the boiler and machinery insurer(s) and we agree to submit our differences to arbitration within 90 days after payment of the loss under the terms of this endorsement.

c. You agree to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by us, and another will be appointed by the boiler and machinery insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

**D. Green Consultant Expense Coverage**

In the event of a total loss to a covered building due to a covered cause of loss, and the building has been replaced and rebuilt as a LEED® (Leadership in Energy and Environmental Design) Certified Green Building, the company will reimburse the Insured up to $5,000 for the service of a consultant for the design of the structure.

Prior to payment, construction of the replaced building must be completed and have a minimum of Silver Rating Level LEED® Green Building certification.

**VI.** The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, 5. Coverage Extensions** is amended as follows:

**A. Newly Acquired or Constructed Property**

**(3) Period Of Coverage** is deleted in its entirety and replaced with the following:

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 180 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**B. Valuable Papers And Records (Other Than Electronic Data)**

1. You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist.

2. Under this Extension, the most we will pay to replace or restore the lost information is $100,000 at each described premises, unless a higher limit is shown in the Declarations.

Page 6 of 22
© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**C. Property Off-Premises, Including Stock**

1. You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

   a. Temporarily at a location you do not own, lease or operate;

   b. In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

   c. At any fair, trade show or exhibition.

2. This Extension does not apply to property:

   a. In or on a vehicle; or

   b. In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

3. The most we will pay for loss or damage under this Extension is $500,000. The most we will pay for loss or damage under this extension is $100,000 for losses occurring at a convention, fair, exhibition, or special event

**D. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to the following property if located within 1600 feet of the premises described in the Declarations: your outdoor fences and netting, outdoor lighting, outdoor pools, court surfaces, radio and television antennas (including satellite dishes), trees, shrubs, plants, lawns, and playground equipment, including the cost of debris removal, caused by or resulting from any of the following Causes of Loss:

1. Fire;

2. Lightning;

3. Explosion;

4. Riot or civil commotion;

5. Aircraft or vehicles;

6. Vandalism and malicious mischief; or

7. Theft.

The most we will pay for loss or damage under this Extension is $50,000. The most we will pay for any one tree, shrub, plant or acre of lawn, including the cost of debris removal, is $1,000.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-EPE-TS IL (12/10)

Signs will be covered for all perils with no limitation.

**VII.** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, 5. Coverage Extensions** are amended to include the following:

**A. Garages/Storage Sheds**

Coverage for your building is extended to apply to any garages or storage sheds located at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss. Coverage for all garages or storage sheds is subject to a $5,000 Limit of Insurance per location.

**B. Accounts Receivable**

1. Coverage for Your Business Personal Property is extended to apply to your records of accounts receivable:

    a. At a described premises or in or on a vehicle in transit between described premises; or

    b. If the records must be removed from a described premises to protect them from the threat of a Covered Cause of Loss. We will pay for a loss while they are:

       (1) At a safe place away from your described premises; or

       (2) Being taken to and returned from that place.

2. Coverage for Your Business Personal Property is extended to apply to the amounts due from your customers that you are unable to collect due to a Covered Cause of Loss, including:

    a. Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

    b. Collection expenses in excess of your normal collection expenses that are made necessary by the loss; and

    c. Other reasonable expenses that you incur to reestablish your records of accounts receivable that result from direct physical loss or damage by any Covered Causes of Loss to your records of accounts receivable, including credit or charge card slips.

3. Accounts receivable loss payment will be determined as follows:

    a. Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss occurs; and

       The total above will be adjusted for any normal fluctuations in the amount of accounts receivable for the month in which the loss occurred or for any demonstrated variance from the average for that month.

    b. The following will be deducted from the total amount of accounts receivable:

       (1) The amount of the accounts for which there is no loss;

       (2) The amount of the accounts that you are able to reestablish or collect; and

       (3) An amount to allow for probable bad debts that your are normally unable to collect;

PI-EPE-TS IL (12/10)

   c.  You will pay us the amount of all recoveries you receive for a loss paid by us. But any recoveries in excess of the amount we have paid belong to you.

4.  Additional Exclusions

   a.  We will not pay for a loss caused by or resulting from any of the following:

      (1) Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

         This exclusion applies only to the extent of the wrongful giving, taking or withholding.

      (2) Bookkeeping, accounting or billing errors or omissions.

   b.  We will not pay for loss that requires any audit of records or any inventory computation to prove its factual existence.

   The most we will pay under this Coverage Extension is $100,000.

C.  **Business Income and Extra Expense**

   1.  Coverage is extended to include the actual loss of Business Income you sustain, and necessary Extra Expense you incur when your covered building or business personal property listed in the Declarations is damaged by a Covered Cause of Loss.

      We pay any Extra Expense you incur:

      a.  To continue your normal operations at the described premises;

      b.  To continue your normal operations at replacement premises or temporary locations; including:

         (1) Relocation expenses; and

         (2) Costs to equip or operate the replacement or temporary locations; or

      c.  To minimize the suspension of your normal operations if you cannot continue them.

   2.  **Civil Authority**

      We will pay for the actual loss of Business Income you sustain, and necessary Extra Expense you incur that is caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. The coverage for Business Income will begin 72 hours after the time of that action and will apply for a

      period of up to 4 consecutive weeks after coverage begins. The coverage for Extra Expense will begin immediately after the time of that action and will end:

      a.  4 consecutive weeks after the time of that action; or

      b.  When your Business Income coverage ends; whichever comes first.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

3. **Contingent Business Property**

   We will pay for the actual loss of Business Income you sustain, and necessary Extra Expense you incur when Contingent Business Property is damaged by a Covered Cause of Loss. We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume operations, in whole or in part, by using any other available:

   a. Source of materials; or

   b. Outlet for your products.

4. **Utility Service Interruption**

   a. We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur at the premises described in the Declarations, caused by an interruption in utility service to such premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss to the Utility Services property described below, not on a premises described in the Declarations.

   b. Utility Services

      (1) Water supply services means the following types of property supplying water to the described premises:

         (a) Pumping stations; and

         (b) Water mains.

      (2) Communication supply services means property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

         (a) Communication transmission lines, including optic fiber transmission lines;

         (b) Coaxial cables; and

         (c) Microwave radio relays except satellites.

         Communication supply services does not include overhead transmission, distribution, or communication lines.

      (3) Power supply services means the following types of property supplying electricity, steam, or gas to the described premises:

         (a) Utility generating plants;

         (b) Switching stations;

         (c) Substations;

         (d) Transformers; and

         (e) Transmission lines.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-EPE-TS IL (12/10)

Power supply services does not include overhead transmission, distribution, or power lines.

c.   We will only pay for loss you sustain after the first 12 hours following loss of service caused by the direct physical loss or damage to the utility services property described above.

5.   **Limit of Insurance**

The most we will pay under this section for coverage under **C.1., 2., 3.,** and **4.** is $300,000 for any one premises during any one year policy period. No coinsurance shall apply to this coverage.

6.   **Definitions**

For the purpose of this extension, the following definitions apply:

a.   Business Income means Net Income (net profit or loss before income taxes) that would have been earned or incurred during the period of restoration and continuing normal operating expenses including payroll.

b.   Extra Expense means necessary expenses you incur during the period of restoration that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

c.   Contingent Business Property means property operated by others on whom you depend to:

(1)   Deliver materials or services to you or to others for your account (Contributing Locations);

(2)   Accept your products or services (Recipient Locations);

(3)   Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or

(4)   Attract customers to your business (Leader Locations).

d.   Period of Restoration means the period of time that:

(1)   Begins with the date of physical loss or damage caused by or resulting from any Covered Cause of Loss; and

(2)   Ends on the date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

Period of restoration does not include any increased period required due to the enforcement of any ordinance or law that:

(1)   Regulates the construction, use or repair, or requires the tearing down of any property; or

(2)   Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

The expiration date of this policy will not cut short the period of restoration.

**D. Fire Extinguisher Recharge**

Coverage is extended to cover expenses you incur to recharge portable fire extinguishers, dry chemical, carbon dioxide, or liquid automatic fire extinguishing systems and the cost of resetting automatic fuel shut-off connections, if any of the above are discharged to fight a fire or are discharged due to a mechanical malfunction.

The most we will pay for loss or damage under this extension is $25,000.

No deductible shall apply to this coverage.

**E. Lock Replacement**

Coverage is extended to cover necessary expense to repair or replace exterior or interior door locks of a covered building:

1. If your door keys are stolen in a covered theft loss; or

2. When your property is damaged and your door keys are stolen by the burglars.

The most we will pay under this extension is $10,000 for any one occurrence.

No deductible shall apply to this coverage.

**F. Reward Reimbursement**

Coverage is extended to provide a reward for information that leads to a criminal conviction in connection with loss or damage to Covered Property by a Covered Cause of Loss; provided that the reward is pre-approved by the Company. The most we will pay for loss or damage under this extension is $50,000 regardless of the number of persons involved providing information.

No deductible shall apply to this coverage.

**G. Inventory and Appraisals**

Coverage is extended to cover your expenses, excluding those for public adjusters and appraisers, to record information, compile inventories, or obtain appraisals we require to comply with the loss conditions of this coverage form.

The most we will pay for loss or damage under this extension is $50,000 for any one loss to Covered Property caused by a Covered Cause of Loss.

No deductible shall apply to this coverage.

**H. Ordinance or Law**

Under this Additional Coverage, we will not pay any costs due to an ordinance or law that you were required to comply with before the loss, even when the building was damaged, and with which you failed to comply.

1. Coverage A – Coverage For Loss to the Undamaged Portion of the Building

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

If a Covered Cause of Loss occurs to covered Building property shown in the Declarations, we will pay for loss of value to the undamaged portion of the building caused by enforcement of any ordinance or law that:

a. Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

b. Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

c. Is in force at the time of loss.

Coverage A is included within the Limit of Insurance applicable to the covered Building property shown in the Declarations. This is not additional insurance.

2. Coverage B – Demolition Cost Coverage

If a Covered Cause of Loss occurs to covered Building property, we will pay the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law.

The Limit of Insurance for Demolition Cost Coverage is $500,000 (in addition to the Building Limit).

3. Coverage C – Increased Cost of Construction Coverage

If a Covered Cause of Loss occurs to covered Building property, we will pay for the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law.

The Limit of Insurance for Increased Cost of Construction is $500,000 (in addition to the Building Limit).

4. Under Coverage A – Coverage for Loss to the Undamaged Portion of the Building:

a. If the Replacement Cost coverage option applies and the property is repaired or replaced, on the same or another premises, we will not pay more for loss of value to Covered Property, including loss caused by enforcement of an ordinance or law, than the lesser of:

(1) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

(2) The Limit of Insurance applicable to the covered Building property.

b. If the Replacement Cost coverage option applies and the property is not repaired or replaced, or if the Replacement Cost coverage option does not apply, we will not pay more for the loss of value to Covered Property, including loss caused by enforcement of an ordinance or law, than the lesser of:

(1) The actual cash value of the building at the time of loss; or

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-EPE-TS IL (12/10)

(2) The Limit of Insurance applicable to the covered Building property.

5. We will not pay more under Coverage B – Demolition Cost Coverage than the lesser of the following:

   a. The amount you actually spend to demolish and clear the site of the described premises; or

   b. The applicable Demolition Cost Limit of Insurance shown in **2.** above.

6. We will not pay Under Coverage C – Increased Cost of Construction Coverage:

   a. Until the property is actually repaired or replaced, at the same or another premises; and

   b. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   c. If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage C is the lesser of:

     (1) The increased cost of construction at the same premises; or

     (2) The applicable Increased Cost of Construction Limit of Insurance shown in **3.** above.

   d. If the ordinance or law requires relocation to another premises, the most we will pay under Coverage C is the lesser of:

     (1) The increased cost of construction at the new premises (not to exceed the increased cost of construction at the same premises); or

     (2) The applicable Increased Cost of Construction Limit of Insurance shown in **3.** above.

7. We will not pay for:

   a. The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria; or

   b. Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants," "fungus," wet or dry rot or bacteria.

8. The terms of this endorsement apply separately to each building to which this endorsement applies.

**I.  Spoilage**

1. We will pay for direct physical loss or damage to your perishable Business Personal

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

Property, and perishable personal property of your residents or clients while at or within 1600 feet of the described premises caused by spoilage due to changes in temperature or humidity resulting from:

    a.   Complete or partial interruption of electrical power to the described premises due to conditions beyond your control; or

    b.   Mechanical breakdown or failure of heating, cooling or humidity control equipment or apparatus at the described premises.

2.  Coverage does not apply to:

    a.   The disconnection of any heating, cooling or humidity control equipment or apparatus from the source of power;

    b.   The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current; or

    c.   The inability of an Electric Utility Company or other power source to provide sufficient power due to:

        (1)  Lack of fuel; or

        (2)  Governmental order;

    d.   The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand; or

    e.   Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

The most we will pay for loss or damage in any one occurrence is $50,000.

**J.  Pair, Sets or Parts**

1.  Pair or Set:

In case of loss to any part of a pair or set we may:

    a.   Repair or replace any part to restore the pair or set to its value before the loss; or

    b.   Pay the difference between the value of the pair or set before and after the loss.

2.  Parts:

In case of a loss to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**K.  Fine Arts**

1.  Coverage applies to "fine arts." Covered Causes of Loss are extended to include risks of direct physical loss or damage except:

    a.   Any repairing, restoration or retouching process.

PI-EPE-TS IL (12/10)

    **b.**  Breakage of fragile "fine arts" articles, including art glass windows, statuary, marbles, glassware, bric-a-brac, porcelains and similar fragile articles, unless caused by:

        **(1)**  The "specified causes of loss";

        **(2)**  Building glass breakage;

        **(3)**  Earthquake; or

        **(4)**  Flood.

    **c.**  Dishonest or criminal acts by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose (other than a bailee for hire or carrier):

        **(1)**  Acting alone or in collusion with others; or

        **(2)**  Whether or not occurring during the hours of employment.

      This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

    **d.**  Voluntary parting with any property by you or anyone else to whom you have entrusted the property, if induced to do so by any fraudulent scheme, trick, device or false pretense.

    **e.**  Any of the following:

        **(1)**  Wear and tear;

        **(2)**  "Fungus" (except when "fungus" results from fire or lightning), rust, corrosion, decay, deterioration, hidden or latent defect or any quality in the property that causes it to damage or destroy itself;

        **(3)**  Nesting or infestation, or discharge or release of waste products or secretions by insects or rodents; or

        **(4)**  Dampness or dryness of atmosphere or changes in or extremes in temperature.

**2.**  The most we will pay in any one occurrence for loss or damage to "fine arts" caused by or resulting from any Covered Cause of Loss is:

    **a.**  The value of the lost or damaged "fine arts"; or

    **b.**  $50,000; whichever is less.

**3.**  The following, when used in this section, means:

    **a.**  "Antique" means an object at least 100 years old.

    **b.**  "Fine arts" means paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, "antique" furniture, "antique" jewelry, bric-a-brac, porcelains and similar property of rarity, historical value or artistic merit.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

**L. EDP Equipment and Media**

**1. Coverage**

a. Covered Property, as used in this Coverage Form means Electronic Data Processing devices operated by you at the premises listed on the Declarations. The Covered Property must be either your property or property belonging to others, which is in your care and used by you in your business or profession.

b. Covered Property, as used in this section of this enhancement, means "data" and "media" owned proprietarily by you. The Covered Property must be either your property or property belonging to others, which is in your care and used by you in your business or profession.

   (1) "Data" means information stored electronically and includes facts, instructions, concepts and programs converted to a form useable in electronic data processing operations.

   (2) "Media" means devices which store information which is accessible to computers.

c. Property Not Covered:

   (1) Accounts, records, documents and other valuable papers, except as they may be converted to "data" and stored on "media", and then only in that converted form;

   (2) Property of yours that you have rented, leased or loaned to someone else; or

   (3) Electronic alarm systems.

d. Coverage Extensions

   (1) Provided you store duplicate "data" at a separate premises and provided such "data" is not insured elsewhere under this or any other insurance policy, we will cover that "data" at each such storage location.

   (2) We will also pay for loss to Covered Property while temporarily located away from your premises and while in transit within:

      (a) The United States of America;

      (b) Puerto Rico; and

      (c) Canada.

   The most we will pay under this Coverage Extension is $2,500 for any single occurrence.

   (3) We will continue to cover your Covered Property while being transferred to and while at a temporary safe storage location, whenever utilized to avoid imminent loss. You are required, however, to provide us with written notice within 10 days following such move.

   (4) We will also pay for expenses you incur for the removal of debris provided:

      (a) The debris is Covered Property;

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-EPE-TS IL (12/10)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

(b) The Cause of Loss is not excluded by any part of this policy; and

(c) The debris is located at a location scheduled in this policy.

The most we will pay under this Coverage Extension is $10,000 in any one loss, but not to exceed a total of $10,000 under this EDP coverage enhancement section.

(5) We will also pay 80% of the actual rental cost for replacement electronic equipment, beginning forty-eight (48) hours after a covered loss has occurred to Covered Property under the EDP coverage listed in the preceding paragraphs, provided such equipment will assist in continuing operations at no less than 80% of normal capacity.

This Coverage Extension will end when the covered loss has been settled or when the amount of coverage provided under this Coverage Part is exhausted, whichever occurs first.

The most we will pay under the terms of this Coverage Extension is $2,500 in any one loss.

(6) We will also pay you for the expense you incur in recharging or refilling fire protection devices which are designed specifically to protect the Covered Property under this EDP coverage section, when these devices have been used in protecting such property from a covered loss.

The most we will pay under the terms of this Coverage Extension is $2,500 in any one loss.

e. Covered Causes of Loss

Covered Causes of Loss means risk of direct physical loss to Covered Property except those Causes of Loss listed in the Exclusions.

2. **Exclusions**

We will not pay for a loss caused directly or indirectly by any of Items **a.** through **i.** listed below. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

a. Governmental Action

Seizure or destruction of property by order of governmental authority. This exclusion will not apply to acts or destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire falls within a Covered Cause of Loss under the terms of this policy.

b. Nuclear Hazard

(1) Any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination from any other cause.

But we will pay for direct loss caused by resulting fire if the fire would be covered under

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

the terms of this policy.

c. War and Military Action

    (1) War, including undeclared or civil war;

    (2) Warlike action by military forces, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

d. Delay, loss of market, loss of income, loss of use or any other cause of consequential loss.

e. Wear and tear, any quality in the Covered Property that causes it to damage or destroy itself, gradual deterioration, depreciation or damage done by insects, vermin or rodents. We will pay for direct loss caused by resulting fire or explosion if the fire or explosion would be covered under the terms of this Coverage Part.

f. Dishonest acts committed by you, anyone else with an interest in the Covered Property, or your or their employees, whether or not such an act occurs during the hours of employment; nor will we pay for a loss caused by dishonest acts by anyone entrusted with the Covered Property, except a common carrier for hire.

g. Dryness, dampness, changes in temperature, corrosion or rust. But, if the air conditioning system that services the Covered Property is damaged by a Covered Cause of Loss we will pay for any direct resulting damage to Covered Property.

h. Breakage of tubes, bulbs, lamps or articles made of glass. But we will pay for such loss caused directly by fire, lightning, explosion, windstorm, earthquake, flood, vandalism, aircraft, rioters, strikers, theft or attempted theft, or by accident to vehicles carrying the Covered Property.

i. Processing or work performed upon the Covered Property. But we will pay for direct loss caused by resulting fire or explosion if the fire or explosion would be covered under this Coverage Form.

3. **Limits, Deductibles, Valuation**

a. Limit of Insurance

The most we will pay for any loss under the EDP section is $10,000.

b. Deductible

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the contents Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

c. Valuation

The value of the Covered Property will be determined as of the time and place of

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

loss using the actual replacement cost of property similar to the Covered Property. In no event will our liability above exceed the cost to repair or replace the property with similar property of equal value.

**VIII.** The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM,** Section **E. Loss Conditions** is amended as follows:

**6. b. Vacancy Provisions** the first paragraph is amended to:

If the building where loss or damage occurs has been vacant for more than 90 consecutive days before that loss or damage occurs:

**IX.** **CAUSES OF LOSS – SPECIAL FORM,** Section **B. Exclusions,** is amended as follows

**1. b. Earth Movement** is amended to include:

**(6)** If Earth Movement described in **b.(1)** through **(5)** above, results in sprinkler leakage, we will pay up to $30,000 for loss or damage by that sprinkler leakage.

**2. d. (7)** is amended to:

The following cause of loss to personal property:

Marring or scratching.

**X.** **CAUSES OF LOSS – SPECIAL FORM,** Section **C. Limitations** is amended as follows:

**3.a.** is amended to:

$10,000 for furs, fur garments and garments trimmed with fur.

**3.b.** is amended to:

$25,000 for trophies, medals, jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**XI.** **CAUSES OF LOSS – SPECIAL FORM, Additional Coverage – Water** is added:

"Water" is included as a Covered Cause of Loss. We will not pay more than $30,000 in any one occurrence.

**a.** "Water" means:

**(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows from a sewer, drain or sump; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

Page 20 of 22
© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-EPE-TS IL (12/10)

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

This extension applies to all claim expenses including, but not limited to building, business personal property, personal property of others, business income and extra expense and debris removal. However, this extension does not apply to roof drainage systems, gutters, or downspouts.

**XII.** **CAUSES OF LOSS – SPECIAL FORM**, Section **F. Additional Coverage Extensions** is amended as follows:

**1.** **Property in Transit, c.** is amended to

**(1)** The most we will pay for loss or damage under this extension is $100,000.

**(2)** For your Covered Property while in the care, custody or control of a common carrier an additional limit of insurance of $10,000 is added.

**XIII.** **CAUSES OF LOSS – SPECIAL FORM**, Section **F. Additional Coverage Extensions** is amended to include:

**Off-Premises Power Failure**

We will pay for loss of or damage to Covered Property, caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to "water supply services," "communication supply services," or "power supply services," not on the described premises.

**a.** "Water supply services" means the following types of property supplying water to the described premises:

**(1)** Pumping stations; and

**(2)** Water mains.

**b.** "Communication supply services" means property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**(1)** Communication transmission lines including optic fiber transmission lines;

**(2)** Coaxial cables; and

**(3)** Microwave radio relays except satellites.

"Communication supply services" does not include overhead communication lines.

**c.** "Power supply services" means the following types of property supplying electricity, steam, or gas to the described premises:

**(1)** Utility generating plants;

**(2)** Switching stations;

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-EPE-TS IL (12/10)

    **(3)** Substations;

    **(4)** Transformers; and

    **(5)** Transmission lines.

    "Power supply services" does not include overhead transmission lines.

This coverage extension does not apply to loss of Business Income or Extra Expense. The most we will pay for loss or damage under this extension is $50,000.

**XIV.** **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM,** Section **A. Coverage, 5. Additional Coverages** is amended as follows:

**c. Extended Business Income (1)**(b)(ii) is amended to the following:

    **(ii)** 180 consecutive days after the date determined in (1)(a) above.

**c. Extended Business Income (2)**(b)(ii) is amended to the following:

    **(ii)** 180 consecutive days after the date determined in (2)(a) above.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-NP-007 (04-01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

## LOSS OF INCOME DUE TO WORKPLACE VIOLENCE

This endorsement modifies and is subject to the insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

The following is added to **Section A. Coverage, 3. Additional Coverages:**

e. **Workplace Violence**

  (1) **Coverage:**

  Loss of Business Income:

  We will pay for the actual loss of Business Income you sustain due to the suspension of your "operations" caused by any intentional use, or threat to use, deadly force by any person.

  The most we will pay under this coverage is $100,000.

  Extra Expense:

  Coverage is extended to include the cost of public relations consultants or other specialists to restore the insured's reputation following an incident of workplace violence. Additionally, coverage includes mental health counseling for employees.

  The most we will pay under this coverage is $5,000.

  (2) **Loss Determination:**

  Determination of the Business Income loss under this additional coverage will be calculated only for the location where the workplace violence occurred. Coverage will only be for the "period of restoration".

  Extra expense will apply even though operations have resumed. However, they will not apply after 60 days following the incident.

All other terms and conditions remain the same.

Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

  **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

   © Insurance Services Office, Inc., 2012   CG 00 01 04 13

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

CG 00 01 04 13 © Insurance Services Office, Inc., 2012 Page 5 of 16

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

   © Insurance Services Office, Inc., 2012   CG 00 01 04 13

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" or offense took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

      **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      **(2)** Authorize us to obtain records and other information;

      **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

COMMERCIAL GENERAL LIABILITY
CG 02 00 01 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing to us advance written notice of cancellation.

2. We may cancel this Policy by mailing to you, at your last mailing address known to us, written notice stating the reason for cancellation. Proof of mailing will be sufficient proof of notice. If we cancel:

   a. For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   b. For a reason other than nonpayment of premium, we will mail the notice at least:

      (1) 30 days prior to the effective date of cancellation if the Policy has been in effect for 60 days or less.

      (2) 60 days prior to the effective date of cancellation if the Policy has been in effect for more than 60 days.

3. If this Policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The Policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the Policy;

   d. The risk originally accepted has measurably increased;

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director of Insurance that the continuation of the Policy could place us in violation of the insurance laws of this State.

4. Notification of cancellation will also be sent to your broker, if known, or agent of record, if known.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

CG 02 00 01 18        © Insurance Services Office, Inc., 2017        Page 1 of 2

**B.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

If we decide not to renew or continue this Policy, we will mail you written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. Proof of mailing will be sufficient proof of notice. Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

© Insurance Services Office, Inc., 2017   CG 02 00 01 18

POLICY NUMBER: PHPK2459846

**COMMERCIAL GENERAL LIABILITY**
CG 20 11 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designation Of Premises (Part Leased To You):** <br> 7239 W. Roosevelt Rd <br> Forest Park, IL 60130-2471 |
| **Name Of Person(s) Or Organization(s) (Additional Insured):** <br> Midwest Group Realty, LLC |
| **Additional Premium:** $ Included |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 11 04 13 © Insurance Services Office, Inc., 2012 **Page 1 of 1**

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

POLICY NUMBER: PHPK2459846

COMMERCIAL GENERAL LIABILITY
CG 20 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| Any person or organization where required by a written contract executed prior to the occurrence of a loss. Such person or organization is an additional Insured for 'bodily injury", "property damage" or "personal and advertising injury" but only for liability arising out of the negligence of the Named Insured. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

CG 21 06 05 14 © Insurance Services Office, Inc., 2013 Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

  **2. Exclusions**

    This insurance does not apply to:

    **Fungi Or Bacteria**

    **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

    This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

    This insurance does not apply to:

    **Fungi Or Bacteria**

    **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

    **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

  "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 15

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

CG 21 70 01 15                    © Insurance Services Office, Inc., 2015                    Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

COMMERCIAL GENERAL LIABILITY
CG 24 02 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BINDING ARBITRATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration.

When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

    **1.** Pay the expenses it incurs; and

    **2.** Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county or parish in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

POLICY NUMBER: PHPK2459846

**COMMERCIAL GENERAL LIABILITY**
CG 24 04 05 09

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Person Or Organization: |
| --- |
| Any person or organization who you are required to add by written contract which is executed prior to the occurrence of a loss to waive your rights of recovery, except for a loss resulting from the sole negligence from that person or organization. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 05 09 © Insurance Services Office, Inc., 2008 Page 1 of 1

PI-GL-001(8/94)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

## EXCLUSION - LEAD LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) and paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

1.  "Bodily injury," "property damage," or "personal and advertising injury" arising out of or caused by the actual or alleged:

    a.  Exposure to or existence of lead, paint containing lead, or any other material or substance containing lead;

    b.  Manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material or substance containing lead;

    Whether or not the lead is or was at any time airborne as a particulate, contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever.

2.  Any legal obligation of any insured for indemnification or contribution due to damages arising out of "bodily injury," "property damage" or "personal and advertising injury" caused by lead, paint containing lead, or any other substance or material containing lead.

3.  Any loss, cost, expense or damages, whether direct or consequential, arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to, or assess the effects of lead; or

    (b) Claim or suit related to, testing for, monitoring, cleaning up, removing, abating, containing, treating or neutralizing lead, paint containing lead, or any other substance or material containing lead or in any way responding to or assessing the effects of lead.

Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-GL-002 (8/94)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - ASBESTOS LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) and paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

"Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of:

1.  Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

2.  The use of asbestos in constructing or manufacturing any good, product or structure;

3.  The removal of asbestos from any good, product or structure; or

4.  The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss or "suit," injury or damage or any cost, fine or penalty or for any expense or claim or "suit" related to any of the above.

PI-GL-037 IL (04/20)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COMMUNICABLE DISEASE EXCLUSION – ILLINOIS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. The following exclusion is added to **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **2. Exclusions:**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

1. Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

2. Testing for a communicable disease;

3. Failure to prevent the presence of the disease; or

4. Failure to report the disease to authorities.

B. The following exclusion is added to **SECTION I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **2. Exclusions:**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

1. Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

2. Testing for a communicable disease;

3. Failure to prevent the presence of the disease; or

4. Failure to report the disease to authorities.

C. For the purposes of this endorsement, communicable disease means any infectious or contagious disease, illness or condition that can be transmitted from:

PI-GL-037 IL (04/20)

Page 1 of 2

Includes copyrighted material of Insurance Services Office, Inc., with permission

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-GL-037 IL (04/20)

**1.** Person to person;

**2.** Animal (including insect) to person; or

**3.** Animal to animal (including insect),

Directly or indirectly, by direct contact or indirectly by means of vector or fomites, including but not limited to the following and any variant(s) thereof:

    **a.** Acquired Immune Deficiency Syndrome (AIDS) or Human Immunodeficiency Virus (HIV);

    **b.** Human T-Cell Lymphotrophic Virus (HTVL) of any form or type;

    **c.** Any hepatitis virus;

    **d.** Severe Acute Respiratory Syndrome (SARS);

    **e.** Herpes virus, any venereal disease or sexually transmitted illness or condition;

    **f.** Zika virus;

    **g.** Norovirus;

    **h.** Coronavirus;

    **i.** Any of the Ebola virus species; or

    **j.** Creutzfeldt-Jakob disease or New Variant Creutzfeldt-Jakob disease.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

PI-GL-037 IL (04/20)

Includes copyrighted material of Insurance Services Office, Inc., with permission

PI-GLD-TS (11/15)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## GENERAL LIABILITY DELUXE ENDORSEMENT: TEMPORARY STAFFING

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

It is understood and agreed that the following extensions only apply in the event that no other specific coverage for the indicated loss exposure is provided under this policy.  If such specific coverage applies, the terms, conditions and limits of that coverage are the sole and exclusive coverage applicable under this policy, unless otherwise noted on this endorsement.   The following is a summary of the Limits of Insurance and additional coverage provided by this endorsement.  For complete details on specific coverages, consult the policy contract wording.

| Coverage Applicable | Limit of Insurance | Page # |
|---|---|---|
| Damage to Premises Rented to You | $1,000,000 | 2 |
| Expected or Intended Injury – Property Damage | Included | 2 |
| Limited Rental Lease Agreement Contractual Liability | $50,000 | 2 |
| Non-Owned Watercraft | Less than 58 feet | 3 |
| Damage to Property You Own, Rent or Occupy | $30,000 | 3 |
| Medical Payments | $20,000 | 3 |
| Medical Payments Reporting Period | 3 Years | 3 |
| Athletic Activities | Amended | 3 |
| Supplementary Payments – Bail Bonds | $2,500 | 4 |
| Supplementary Payments – Loss of Earnings | $500 per day | 4 |
| Employee Indemnification Defense Coverage | $25,000 | 4 |
| Who Is An Insured<br>  Additional Insured – Newly Acquired or Formed Organization<br>  Additional Insured – Broadened Named Insured<br>  Additional Insured – Blanket Additional Insureds When Required by<br>    Contract | Included | 4 |
| Duties in the Event of Occurrence, Offense, Claim or Suit | Included | 4 |
| Transfer of Rights of Recovery Against Others To Us | Clarification | 5 |
| Liberalization | Included | 5 |
| Unintentional Failure to Disclose Hazards | Included | 5 |
| Bodily Injury – Includes Mental Anguish | Included | 5 |
| Personal and Advertising Injury – Includes Abuse of Process, Discrimination | Included | 6 |
| Other Insurance – Primary Clarification | Clarification | 6 |

PI-GLD-TS (11/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-GLD-TS (11/15)

| Staffing Services Exclusions | Clarification | 7 |
|---|---|---|
| Staffing Services Definitions | Clarification | 8 |

**A. Damage to Premises Rented to You**

If damage by fire to premises rented to you is not otherwise excluded from this Coverage Part:

1. The Damage To Premises Rented To You Limit section of the Declarations is amended to the greater of:

   a. $1,000,000; or

   b. The amount shown in the Declarations as the Damage to Premises Rented to You Limit.

   This is the most we will pay for all damage proximately caused by the same event, whether such damage results from fire, lightning, explosion, smoke, or leaks from automatic fire protective systems or any combination thereof;

2. The word fire is changed to fire, lightning, explosion, smoke, or leakage from automatic fire protective systems where it appears in:

   a. The last paragraph of **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Subsection **2. Exclusions**;

   b. **SECTION III – LIMITS OF INSURANCE**, Paragraph **6.**; and

   c. **SECTION V – DEFINITIONS**, Paragraph **9.a.**; and

3. The words fire insurance are changed to insurance for fire, lightning, explosion, smoke, or leakage from automatic fire protective systems where it appears in **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Subsection **4. Other Insurance**, Paragraph **b. Excess Insurance**.

**B. Expected or Intended Injury – Property Damage**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, Paragraph **a. Expected Or Intended Injury** is deleted in its entirety and replaced by the following:

   a. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**C. Limited Rental Lease Agreement Contractual Liability**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, Paragraph **b. Contractual Liability** is amended by adding the following:

   Based on the named insured's request at the time of claim, we agree to indemnify the named insured for their liability assumed in a contract or agreement regarding the rental or lease of a premises on behalf of their client, up to $50,000.

PI-GLD-TS (11/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-GLD-TS (11/15)

This coverage extension only applies to rental lease agreements and is excess over any renter's liability insurance of the client.

**D. Non-Owned Watercraft**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto Or Watercraft,** Paragraph (2) is amended to read as follows:

(2) A watercraft you do not own that is:

(a) Less than 58 feet long; and

(b) Not being used to carry persons or property for a charge;

This provision applies to any person, who with your consent, either uses or is responsible for the use of a watercraft. This insurance is excess over any other valid and collectible insurance available to the insured whether primary, excess or contingent.

**E. Damage to Property You Own, Rent or Occupy**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, j. Damage To Property,** Paragraph (1) is deleted in its entirety and replaced with the following:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property, unless the damage to property is caused by your client, up to a $30,000 limit. A client is defined as a person under your direct care and supervision.

**F. Medical Payments**

1. If **COVERAGE C MEDICAL PAYMENTS** is not otherwise excluded from this Coverage Part the Medical Expense Limit is changed subject to all of the terms of **SECTION III – LIMITS OF INSURANCE** to the greater of:

a. $20,000; or

b. The Medical Expense Limit shown in the Declarations of this Coverage Part.

2. Under **SECTION I – COVERAGES, COVERAGE C MEDICAL PAYMENTS,** Subsection **1. Insuring Agreement,** Paragraph **a.,** Item **(b)** is amended to read:

(b) The expenses are incurred and reported to us within three years of the date of the accident; and

**G. Athletic Activities**

**SECTION I – COVERAGES, COVERAGE C MEDICAL PAYMENTS, 2. Exclusions,** Paragraph **e. Athletics Activities** is deleted in its entirety and replaced with the following:

PI-GLD-TS (11/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-GLD-TS (11/15)

   e.  **Athletics Activities**

      To a person injured while taking part in athletics.

**H. Supplementary Payments**

   **SECTION I – COVERAGES, SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**, Items 1.b. and 1.d. are amended as follows:

     b.  The limit for the cost of bail bonds is changed from $250 to $2,500; and

     d.  The limit for loss of earnings is changed from $250 a day to $500 a day.

**I.  Employee Indemnification Defense Coverage**

   **SECTION I – COVERAGES, SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** is amended to include the following:

   We will pay, on your behalf, defense costs incurred by an "employee" in a criminal proceeding.

   The most we will pay for any "employee" who is directly involved in a criminal proceeding is $25,000 regardless of the numbers of "employees," claims or "suits" brought or persons or organizations making claims or bringing "suits."

**J.  Who is An Insured**

   **SECTION II – WHO IS AN INSURED** is amended as follows:

   **1.  Newly Acquired or Formed Organization**

      If coverage for newly acquired or formed organizations is not otherwise excluded from this Coverage Part, Paragraph **3.a.** is amended to read:

      a.  Coverage under this provision is afforded until the end of the policy period;

   **2.**  Each of the following is also an insured:

      a.  **Broadened Named Insured** – Any organization and subsidiary thereof which you control and actively manage on the effective date of this Coverage Part. However, coverage does not apply to any organization or subsidiary not named in the Declarations as Named Insured, if they are also insured under another similar policy, but for its termination or the exhaustion of its limits of insurance.

      b.  **Blanket Additional Insureds When Required by Contract** – Any person or organization where required by a written contract executed prior to the occurrence of a loss. Such person or organization is an additional insured for "bodily injury," "property damage" or "personal and advertising injury" but only for liability arising out of the negligence of the named insured. The limits of insurance applicable to these additional insureds are the lesser of the policy limits or those limits specified in a contract or agreement. These limits are included within and not in addition to the limits of insurance shown in the Declarations.

        The Additional Insured's limits of insurance do not increase our limits of insurance, as described in **SECTION III – LIMITS OF INSURANCE.**

PI-GLD-TS (11/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-GLD-TS (11/15)

    c.  **Interns** – Your interns only while performing duties related to the conduct of your business.

    d.  **Contractors** – Any individual or organization under written contract or written agreement with you who provides "staffing services" on your behalf and at your direction for your clients.

**K.  Duties in the Event of Occurrence, Offense, Claim or Suit**

    1.  **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 2.**a. the requirement that you must see to it that we are notified as soon as practicable of an "occurrence" or an offense, applies only when the "occurrence" or offense is known to:

        a.  You, if you are an individual;

        b.  A partner, if you are a partnership; or

        c.  An "executive officer" or insurance manager, if you are a corporation.

    2.  **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 2.** b. the requirement that you must see to it that we receive notice of a claim or "suit" as soon as practicable will not be considered breached unless the breach occurs after such claim or "suit" is known to:

        a.  You, if you are an individual;

        b.  A partner, if you are a partnership; or

        c.  An "executive officer" or insurance manager, if you are a corporation.

**L.  Transfer of Rights of Recovery Against Others To Us**

    **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS,** Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** includes the following clarification:

        Therefore, the insured can waive the insurer's rights of recovery prior to the occurrence of a loss, provided the waiver is made in a written contract.

**M.  Liberalization**

    **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended to include the following additional condition:

        **Liberalization**

        If we revise this endorsement to provide more coverage without additional premium charge, we will automatically provide the additional coverage to all endorsement holders as of the day the revision is effective in your state.

**N.  Unintentional Failure To Disclose Hazards**

    **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended to include the following additional condition:

        **Unintentional Failure To Disclose Hazards**

        It is agreed that, based on our reliance on your representations as to existing hazards, if you should unintentionally fail to disclose all such hazards prior to the beginning of the policy period

PI-GLD-TS (11/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-GLD-TS (11/15)

of this Coverage Part, we shall not deny coverage under this Coverage Part because of such failure.

**O. Bodily Injury – Mental Anguish**

SECTION V – DEFINITIONS, Paragraph **3.** is amended to read:

"Bodily injury":

**a.** Means bodily injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these; and

**b.** Except for mental anguish, includes death resulting from the foregoing (Item **a.** above) at any time.

**P. Personal and Advertising Injury – Abuse of Process, Discrimination**

If **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE** is not otherwise excluded from this Coverage Part, the definition of "personal and advertising injury" is amended as follows:

**1.** SECTION V – DEFINITIONS, Paragraph **14.**, Item **b.** is revised to read:

**b.** Malicious prosecution or abuse of process;

**2.** SECTION V – DEFINITIONS, Paragraph **14.** is amended to include the following:

"Personal and advertising injury" also means discrimination based on race, color, religion, sex, age or national origin, except when:

**a.** Done intentionally by or at the direction of, or with the knowledge or consent of:

**(1)** Any insured; or

**(2)** Any executive officer, director, stockholder, partner or member of the insured; or

**b.** Directly or indirectly related to the employment, former or prospective employment, termination of employment, or application for employment of any person or persons by an insured; or

**c.** Directly or indirectly related to the sale, rental, lease or sublease or prospective sale, rental, lease or sub-lease of any room, dwelling or premises by or at the direction of any insured; or

**d.** Insurance for such discrimination is prohibited by or held in violation of law, public policy, legislation, court decision or administrative ruling.

The above does not apply to fines or penalties imposed because of discrimination.

**Q. Section IV – Commercial General Liability Conditions** is amended by the addition of the following:

The following language is added to Item **4. Other Insurance:**

Insurance under this endorsement is primary to and non-contributory with any other insurance maintained by the person or organization (Additional Insured), except for loss resulting from the sole negligence of that person or organization.

PI-GLD-TS (11/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-GLD-TS (11/15)

This condition applies even if other valid and collectible insurance is available to the Additional Insured for a loss or "occurrence" we cover for this Additional Insured.

R.  **Staffing Services Exclusions**

The following exclusions are added to **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE:**

**Actions Or Activities Of PEO Worker**

"Bodily injury" or "property damage" arising from the actions or activities of any "PEO worker".

**Professional Services Exclusion**

"Bodily injury" or "property damage" due to the rendering of or failure to render any professional service. This exclusion does not apply to your liability for "bodily injury" or "property damage" arising out of your "employee's" providing or failing to provide professional health care services to another of your "employees", but no "employee" is an insured for his or her providing or failure to provide such professional health care services.

**Wrongful Acts**

"Bodily injury" or "property damage" arising from a wrongful act in the rendering or failure to render services to or for your client.

For the purposes of this exclusion, wrongful act shall mean any actual or alleged act, error, or omission, misstatement, or misleading statement in the course of providing "staffing services" to your clients by you or by any person for whose acts you are legally responsible.

**SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE** is amended as follows:

1.  Exclusion **k.** does not apply.

2.  Exclusions **a., b., e., f., g., h., i., l.,** and **p.** do not apply to any insured who did not personally acquiesce in or remain passive after having personal knowledge of such conduct. Our obligation to pay shall begin once the full extent of the assets of the responsible insured has been exhausted and once the Deductible as shown in the Declarations of the policy has been satisfied.

3.  The following exclusions are added to Paragraph **2. Exclusions:**

**Actions Or Activities Of PEO Worker**

"Personal and advertising injury" arising from the actions or activities of any "PEO worker".

**Professional Services Exclusion**

"Personal and advertising injury" due to the rendering of or failure to render any professional service.

**Wrongful Acts**

"Personal and advertising injury" arising from a wrongful act in the rendering or failure to render services to or for your client.

PI-GLD-TS (11/15)
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-GLD-TS (11/15)

For the purposes of this exclusion, wrongful act shall mean any actual or alleged act, error, or omission, misstatement, or misleading statement in the course of providing "staffing services" to your clients by you or by any person for whose acts you are legally responsible.

**S. Staffing Services Definitions**

1. **SECTION V – DEFINITIONS**, Paragraph **5.** is revised to read:

   "Employee" includes but is not limited to a "leased worker" and a "staffing service employee". "Employee" does not include a "temporary worker" or a "PEO worker".

2. The following definitions are added to **SECTION V – DEFINITIONS**:

   a. "PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

   b. "PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

   c. "Staffing Services" means services provided by a staffing company to their clients including but not limited to:

      (1) Fulfillment of any of the administrative functions which would otherwise be normally fulfilled by an employer's human resource function;

      (2) Staffing related administrative services provided by an Administrative Services Organization (ASO);

      (3) "PEO service";

      (4) Staffing related services provided to your clients for the recruitment, selection and placement of a person for employment with a client.

      (5) Temporary, contingent or contract placement services;

      (6) Vendor Management Service (VMS), means the facilitation, purchase and management of "staffing services" for clients including the placement and fulfillment of orders for "staffing service employees";

      (7) Services performed on behalf of your client by a "staffing service employee" who is not a direct hire or permanent placement;

      (8) Services performed for a client company to supply that client company with a "staffing service employee".

   d. "Staffing service employee" means a person who is furnished by you to your client to perform the duties to which you have agreed.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

Philadelphia Indemnity Insurance Company

PI-SAM-006 (01/17)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2. Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

This insurance does not apply to any injury sustained by any person arising out of or resulting from the alleged, actual or threatened abuse or molestation by anyone.

We shall not have any duty to defend any "suit" against any insured seeking damages on account of any such injury.

This exclusion applies to all injury sustained by any person, including emotional distress, arising out of molestation or abuse whether alleged, actual or threatened including but not limited to molestation or abuse arising out of your negligence or other wrongdoing with respect to:

1.  Hiring, placement, employment, training;

2.  Investigation;

3.  Supervision;

4.  Reporting any molestation or abuse to the proper authorities, or failure to so report; or

5.  Retention;

of a person for whom any insured is or ever was legally responsible or for whom any insured may have assumed the liability; and whose conduct would be excluded above.

PI-SAM-006 (01/17)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-TS-001 (12/10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PROPERTY DAMAGE EXTENSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| Per Claim Deductible: | $ 1,000 |
|---|---|

Information required to complete this **SCHEDULE**, if not shown above, will be shown in the Declarations.

1. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, Paragraph **j. Damage to Property** is deleted in its entirety and replaced with the following:

   j. **Damage to Property**

   "Property damage" to:

   (1) Premises you sell, give away or abandon, if the "property damage" arises out of any part to those premises;

   (2) Property loaned to you;

   (3) Personal property in the care, custody or control of the insured;

   (4) That particular part of real property on which you or any contractors or sub-contractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

   (5) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

   The following exceptions apply:

   (a) Paragraphs (3), (4) and (5) do not apply to "property damage" arising out of your staffing agency operations.

   (b) Paragraphs (2), (3), (4) and (5) of this exclusion do not apply to liability assumed under a sidetrack agreement.

2. **Per Claim Deductible**

   a. Our obligation to pay damages on your behalf under this endorsement applies only to the amount of damages in excess of the Per Claim Deductible amount stated in the **SCHEDULE** of this endorsement. This deductible applies to all damages sustained by any one person because of "property damage" coverage provided by this endorsement as a result of any one "occurrence." A person includes an organization.

Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-TS-001 (12/10)

**b.** The terms of this insurance, including those with respect to:

    **(1)** Our right and duty to defend the insured against any "suits" seeking those damages; and

    **(2)** Your duties in the event of an "occurrence," claim or "suit";

    Apply irrespective of the application of the deductible amount.

**c.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit"; and upon notification of the action taken, you shall promptly reimburse us for each part of the deductible amount as had been paid by us.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-TS-024 (07-15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DESIGNATED PROJECT LIMITS OF INSURANCE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| | |
|---|---|
| Combined Total Designated Project Aggregate Limit | $ 5,000,000 |
| Designated Project Aggregate Limit | $ 5,000,000 |

**Designated Project(s):**

Any project for which you have agreed, pursuant to a contract, to provide a separate Designated Project Aggregate Limit for that "project", except where such contract is prohibited by law.

A. The Combined Total Designated Project Aggregate Limit shown in the Schedule above is the most we will pay for the sum of all damages caused by "occurrences" under Section I - Coverage A, and for medical expenses caused by accidents under Section I - Coverage C, provided such "occurrences" and/or accidents can be attributed only to ongoing operations at all designated "projects" shown in the Schedule above.

B. Subject to Paragraph A. above, the following applies to all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage A, and for all medical expenses caused by accidents under Section I - Coverage C, provided the "occurrences" and/or accidents can be attributed only to ongoing operations at a single designated "project" shown in the Schedule above:

   1. A separate Designated Project Aggregate Limit applies to each designated "project", and that limit is the amount shown in the Schedule as the Designated Project Aggregate Limit.

   2. The Designated Project Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage C regardless of the number of:

      a. Insureds;

PI-TS-024 (07-15)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-TS-024 (07-15)

   b.   Claims made or "suits" brought; or

   c.   Persons or organizations making claims or bringing "suits".

3.   Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Project Aggregate Limit for that designated "project" and the Combined Total Designated Project Aggregate Limit. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Project Aggregate Limit for any other "project".

4.   The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Project Aggregate Limit.

**C.**   For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage **A**, and for all medical expenses caused by accidents under Section I - Coverage **C**, which cannot be attributed only to ongoing operations at a single designated "project":

1.   Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit shown in the Declarations, whichever is applicable.

2.   Such payments shall not reduce:

   a.   any Designated Project Aggregate Limit; or

   b.   the Combined Total Designated Project Aggregate Limit.

**D.**   When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit. They will not reduce:

1.   the General Aggregate Limit;

2.   the Designated Project Aggregate Limit; or

3.   the Combined Total Designated Project Aggregate Limit.

**E.**   For the purposes of this endorsement, the **Definitions** section is amended by the addition of the following:

"Project" means the operations you perform pursuant to a contract, as shown in the Schedule. It includes collectively, all premises, other than premises owned by or rented to you, on which you are performing operations that are set forth in the applicable contract pertaining to such "project". If the applicable "project" has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same "project".

**F.**   Any provisions of Section III - **Limits Of Insurance** not otherwise modified by this endorsement will still apply.

PI-TS-024 (07-15)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-TS-029 (07/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DESIGNATED LOCATION LIMITS OF INSURANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

| | |
|---|---|
| Combined Total Designated Location Aggregate Limit | $ 5,000,000 |
| Designated Location Aggregate Limit | $ 5,000,000 |

**Designated Location(s):**

Any location for which you have agreed, pursuant to a contract, to provide a separate Designated Location Aggregate Limit for that "location", except where such contract is prohibited by law.

A. The Combined Total Designated Location Aggregate Limit shown in the Schedule above is the most we will pay for the sum of all damages caused by "occurrences" under Section I - Coverage **A**, and for medical expenses caused by accidents under Section I - Coverage **C**, provided such "occurrences" and/or accidents can be attributed only to ongoing operations at all designated "locations" shown in the Schedule above.

B. Subject to Paragraph **A.** above, the following applies to all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage **A**, and for all medical expenses caused by accidents under Section I - Coverage **C**, provided the "occurrences" and/or accidents can be attributed only to ongoing operations at a single designated "location" shown in the Schedule above:

   1. A separate Designated Location Aggregate Limit applies to each designated "location", and that limit is the amount shown in the Schedule as the Designated Location Aggregate Limit.

   2. The Designated Location Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

      a. Insureds;

PI-TS-029 (07/15)

Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

PI-TS-029 (07/15)

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

  **3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location Aggregate Limit for that designated "location" and the Combined Total Designated Location Aggregate Limit. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location Aggregate Limit for any other "location".

  **4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location Aggregate Limit.

**C.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage **A**, and for all medical expenses caused by accidents under Section I - Coverage **C**, which cannot be attributed only to ongoing operations at a single designated "location":

  **1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit shown in the Declarations, whichever is applicable.

  **2.** Such payments shall not reduce:

    **a.** any Designated Location Aggregate Limit; or

    **b.** the Combined Total Designated Location Aggregate Limit.

**D.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit. They will not reduce:

  **1.** the General Aggregate Limit;

  **2.** the Designated Location Aggregate Limit; or

  **3.** the Combined Total Designated Location Aggregate Limit.

**E.** For the purposes of this endorsement, the **Definitions** section is amended by the addition of the following:

"Location" means premises owned by or rented to you, as shown in the Schedule, and comprising the same or connected lots, or premises that would be connected but for a street, roadway, waterway or railroad right-of-way.

**F.** Any provisions of Section **III - Limits Of Insurance** not otherwise modified by this endorsement will still apply.

PI-TS-029 (07/15)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-TS-038 (08/21)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## LOADING OR UNLOADING EXTENSION ENDORSEMENT

This endorsement modifies and is subject to the insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

1. **SECTION V – DEFINITIONS,** Paragraph 11. "Loading or Unloading" is deleted in its entirety and replaced with the following:

   11. "Loading or Unloading" means the handling of property:

       a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

       b. While it is in or on an aircraft, watercraft or "auto"; or

       c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

       but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft or watercraft.

All other terms and conditions remain unchanged

PI-TS-038 (08/21)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

COMMERCIAL AUTO
CA 00 01 10 13

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

CA 00 01 10 13 © Insurance Services Office, Inc., 2011 Page 1 of 12

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© Insurance Services Office, Inc., 2011  CA 00 01 10 13

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4. **Employee Indemnification And Employer's Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

   (1) Employment by the "insured"; or

   (2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

   (1) Whether the "insured" may be liable as an employer or in any other capacity; and

   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. **Fellow Employee**

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

6. **Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. **Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. **Operations**

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

10. **Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

   (1) When all of the work called for in your contract has been completed;

   (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

   (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

© Insurance Services Office, Inc., 2011 CA 00 01 10 13

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. **Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

12. **War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

13. **Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

   We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   b. **Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

   (2) Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

© Insurance Services Office, Inc., 2011

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   **(1)** The explosion of any weapon employing atomic fission or fusion; or

   **(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War Or Military Action**

   **(1)** War, including undeclared or civil war;

   **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

5. Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   **a.** Permanently installed in or upon the covered "auto";

   **b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

   **c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   **d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limits Of Insurance**

1. The most we will pay for:

   **a.** "Loss" to any one covered "auto" is the lesser of:

   **(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   **(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

   **b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

   **(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own; or

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph a. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

7. **Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico;

(4) Canada; and

(5) Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V – DEFINITIONS**

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

    © Insurance Services Office, Inc., 2011    CA 00 01 10 13

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

2. A "covered pollution cost or expense";

to which this insurance applies, are alleged.

"Suit" includes:

   a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

 © Insurance Services Office, Inc., 2011 **CA 00 01 10 13**

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

COMMERCIAL AUTO
CA 01 20 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

For a covered "auto" licensed or principally garaged in Illinois, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **1.b.(3)** of the **Who Is An Insured** provision does not apply.

2. The **Limit Of Insurance** provision applies except that we will apply the Covered Autos Liability Coverage limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   **a.** $25,000 for "bodily injury" to any one person caused by any one "accident";

   **b.** $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   **c.** $20,000 for "property damage" caused by any one "accident".

   This provision will not change our total Limit of Insurance for Covered Autos Liability Coverage.

**B. Changes In Physical Damage Coverage**

Paragraph **3.** of the **Limits Of Insurance** provision is replaced by the following:

3. We may deduct for betterment if:

   **a.** The deductions reflect a measurable decrease in market value attributable to the poorer condition of, or prior damage to, the vehicle.

   **b.** The deductions are for prior wear and tear, missing parts and rust damage that are reflective of the general overall condition of the vehicle considering its age. In this event, deductions may not exceed $500.

**C. Changes In Conditions**

The **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are changed by the addition of the following:

Covered Autos Liability Coverage provided by this Coverage Form for any "auto" you do not own is primary if:

1. The "auto" is owned or held for sale or lease by a new or used vehicle dealership;

2. The "auto" is operated by an "insured" with the permission of the dealership described in Paragraph **1.** while your "auto" is being repaired or evaluated; and

3. The Limit of Insurance for Covered Autos Liability Coverage under this Policy is at least:

   **a.** $100,000 for "bodily injury" to any one person caused by any one "accident";

   **b.** $300,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   **c.** $50,000 for "property damage" caused by any one "accident".

CA 01 20 01 15 © Insurance Services Office, Inc., 2014 Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

COMMERCIAL AUTO
CA 02 70 01 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing us advance written notice of cancellation.

2. When this Policy is in effect 61 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons by mailing you written notice of cancellation, stating the reasons for cancellation.

   a. Nonpayment of premium.

   b. The Policy was obtained through a material misrepresentation.

   c. Any "insured" has violated any of the terms and conditions of the Policy.

   d. The risk originally accepted has measurably increased.

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

   f. A determination by the Director of Insurance that the continuation of the Policy could place us in violation of the Illinois insurance laws.

3. If we cancel for nonpayment of premium, we will mail you at least 10 days' written notice.

4. If this Policy is cancelled for other than nonpayment of premium and the Policy is in effect:

   a. 60 days or less, we will mail you at least 30 days' written notice.

   b. 61 days or more, we will mail you at least 60 days' written notice.

5. If this Policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. The effective date of cancellation stated in the notice shall become the end of the policy period.

7. Our notice of cancellation will state the reason for cancellation.

8. We will mail our cancellation notice to you at your last address known to us. Proof of mailing will be sufficient proof of notice.

9. Notification of cancellation will also be sent to your broker, if known, or agent of record, if known, and to the loss payee listed on the Policy.

**B.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

If we decide not to renew or continue this Policy, we will mail you written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. Proof of mailing will be sufficient proof of notice. Notification will also be sent to your broker, if known, or agent of record, if known, and to the loss payee listed on the Policy. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

CA 02 70 01 18     © Insurance Services Office, Inc., 2017     Page 1 of 2

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

© Insurance Services Office, Inc., 2017

**CA 02 70 01 18**

POLICY NUMBER: PHPK2459846

COMMERCIAL AUTO
CA 04 44 03 10

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** Remedial Environmental Manpower, Inc |
| **Endorsement Effective Date:** 09/01/2022 |

### SCHEDULE

| |
|---|
| **Name(s) Of Person(s) Or Organization(s):** |
| Any person or organization who you are required to add by written contract which is executed prior to the occurrence of a loss to waive your rights of recovery, except for a loss resulting from the sole negligence from that person or organization. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply to the person(s) or organization(s) shown in the Schedule, but only to the extent that subrogation is waived prior to the "accident" or the "loss" under a contract with that person or organization.

CA 04 44 03 10        © Insurance Services Office, Inc., 2009        **Page 1 of 1**

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

POLICY NUMBER: PHPK2459846

COMMERCIAL AUTO
CA 20 48 02 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED INSURED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement identifies person(s) or organization(s) who are "insureds" under the Who Is An Insured Provision of the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Named Insured: Remedial Environmental Manpower, Inc

Endorsement Effective Date: 09/01/2022

SCHEDULE

Name of Person(s) or Organization(s):

Any person or organization where required by a written contract executed prior to the occurrence of a loss. Such person or organization is an additional Insured but only for liability arising out of the negligence of the named insured.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to the endorsement.)

Each person or organization shown in the Schedule is an "insured" for Liability Coverage, but only to the extent that person or organization qualifies as an "insured" under the Who Is An Insured Provision contained in **Section II** of the Coverage Form.

CA 20 48 02 99          Copyright, Insurance Services Office, Inc., 1998          Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

POLICY NUMBER: PHPK2459846

**COMMERCIAL AUTO**
**CA 21 30 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| **Named Insured:** Remedial Environmental Manpower, Inc |
| **Endorsement Effective Date:** 09/01/2022 |

**SCHEDULE**

| |
|---|
| **Limit Of Insurance: $** 1,000,000            **Each "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

   d. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

CA 21 30 01 15          © Insurance Services Office, Inc., 2014          **Page 1 of 4**

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

b. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

   We will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident"; and

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident".

   This provision will not change our total limit of liability.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

## E. Changes In Conditions

The **Conditions** are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this Coverage Form is provided:

(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved; and

b. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Legal Action Against Us** is replaced by the following:

**Legal Action Against Us**

a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

b. Any legal action against us must be brought within two years after the date of the "accident". However, this Paragraph **3.b.** does not apply to an "insured" if, within two years after the date of the "accident", arbitration proceedings have commenced in accordance with the provisions of this Coverage Form.

4. **Transfer Of Rights Of Recovery Against Others To Us** does not apply.

5. The following conditions are added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages, then the disagreement will be arbitrated. If the "insured" requests, we and the "insured" will each select an arbitrator. The two arbitrators will select a third. If the arbitrators are not selected within 45 days of the "insured's" request, either party may request that arbitration be submitted to the American Arbitration Association. We will bear all the expenses of the arbitration except when the "insured's" recovery exceeds the minimum limit specified in the Illinois Safety Responsibility Law.

If this occurs, the "insured" will be responsible for payment of his or her expenses and an equal share of the expenses of the third arbitrator up to the amount by which the "insured's" recovery exceeds the statutory minimum.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives.

c. If arbitration is submitted to the American Arbitration Association, then the American Arbitration Association rules shall apply to all matters except medical opinions. As to medical opinions, if the amount of damages being sought:

(1) Is equal to or less than the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then the American Arbitration Association rules shall apply.

(2) Exceeds the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then rules of evidence that apply in the circuit court for placing medical opinions into evidence shall apply.

**CA 21 30 01 15**                    © Insurance Services Office, Inc., 2014                    **Page 3 of 4**

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

In all other arbitration proceedings, local rules of law as to arbitration procedure and evidence will apply.

d. If the arbitration involves three arbitrators, a decision agreed to by two of the arbitrators will be binding for the amount of damages not exceeding the lesser of either:

(1) $75,000 for "bodily injury" to any one person/$150,000 for "bodily injury" to two or more persons caused by any one "accident"; or

(2) The Limit Of Uninsured Motorists Insurance shown in the Schedule or Declarations.

### F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto" or a vehicle an "insured" is "occupying". If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

POLICY NUMBER: PHPK2459846

**COMMERCIAL AUTO**
**CA 21 38 10 13**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** Remedial Environmental Manpower, Inc |
| **Endorsement Effective Date:** 09/01/2022 |

## SCHEDULE

| |
|---|
| **Limit Of Insurance:  $**     1,000,000            Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle".

2. We will pay only after all liability bonds or policies have been exhausted by payment of judgments or settlements, unless:

   a. We have been given prompt written notice of a "tentative settlement" and decide to advance payment to the "insured" in an amount equal to that "tentative settlement" within 30 days after receipt of notification; or

   b. We and an "insured" have reached a "settlement agreement".

3. Any judgment for damages arising out of a "suit" brought without written notice to us is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

CA 21 38 10 13           © Insurance Services Office, Inc., 2012           **Page 1 of 4**

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

c. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability Coverage under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability Coverage under the Coverage Form.

d. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability Coverage under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability Coverage under the Coverage Form.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

C. Exclusions

This insurance does not apply to any of the following:

1. The direct or indirect benefit of any insurer under any workers' compensation, disability benefits or similar law.

2. "Bodily injury" sustained by:

a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form;

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

4. Punitive or exemplary damages.

5. "Bodily injury" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Underinsured Motorists Coverage shown in this endorsement.

2. Except in the event of a "settlement agreement", the Limit of Insurance for this coverage shall be reduced by all sums paid or payable:

a. By or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

b. Under any workers' compensation, disability benefits or similar law. However, the Limit of Insurance for this coverage shall not be reduced by any sums paid or payable under Social Security disability benefits.

c. Under any automobile medical payments coverage.

3. In the event of a "settlement agreement", the maximum Limit of Insurance for this coverage shall be the amount by which the Limit of Insurance for this coverage exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

4. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form.

  © Insurance Services Office, Inc., 2012  CA 21 38 10 13

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**E. Changes In Conditions**

The Conditions are changed for Underinsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible underinsured motorists insurance providing coverage on a primary basis.

   c. If the coverage under this Coverage Form is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   a. Give us written notice of a "tentative settlement" and allow us to advance payment in an amount equal to that settlement within 30 days after receipt of notification to preserve our rights against the owner or operator of the "underinsured motor vehicle".

   b. File "suit" against the owner or operator of the "underinsured motor vehicle" prior to the conclusion of a "settlement agreement". Such "suit" cannot be abandoned or settled without giving us written notice of a "tentative settlement" and allowing us 30 days to advance payment in an amount equal to that settlement to preserve our rights against the owner or operator of the "underinsured motor vehicle".

   c. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Legal Action Against Us** is replaced by the following:

   **Legal Action Against Us**

   a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

   b. Any legal action against us under this Coverage Form must be brought within two years after the date of the "accident". However, this Paragraph **3.b.** does not apply if, within two years after the date of the "accident":

      (1) Arbitration proceedings have commenced in accordance with the provisions of this Coverage Form; or

      (2) The "insured" has filed an action for "bodily injury" against the owner or operator of an "underinsured motor vehicle", and such action is:

         (a) Filed in a court of competent jurisdiction; and

         (b) Not barred by the applicable state statute of limitations.

   In the event that the two-year time limitation identified in this condition does not apply, the applicable state statute of limitations will govern legal action against us under this Coverage Form.

4. The following is added to **Transfer Of Rights Of Recovery Against Others To Us:**

   Transfer Of Rights Of Recovery Against Others To Us does not apply to damages caused by an "accident" with an "underinsured motor vehicle" if we:

   a. Have been given written notice of a "tentative settlement" between an "insured" and the insurer of an "underinsured motor vehicle"; and

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**b.** Fail to advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of the notice.

If we advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of notice:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

**b.** We will also have a right to recover the advanced payment.

However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

**5.** The following conditions are added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Settlement agreement" means we and an "insured" agree that the "insured" is legally entitled to recover, from the owner or operator of the "underinsured motor vehicle", damages for "bodily injury" and, without arbitration, agree also as to the amount of damages. Such agreement is final and binding regardless of any subsequent judgment or settlement reached by the "insured" with the owner or operator of the "underinsured motor vehicle".

**4.** "Tentative settlement" means an offer from the owner or operator of the "underinsured motor vehicle" to compensate an "insured" for damages incurred because of "bodily injury" sustained in an accident involving an "underinsured motor vehicle".

**5.** "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged, but that sum is either less than the Limit of Insurance of this coverage or reduced by payments to other persons resulting from the same "accident" to an amount less than the Limit of Insurance of this coverage. However, "underinsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by any self-insurer under any applicable motor vehicle law.

**b.** Owned by a governmental unit or agency.

**c.** Designed for use mainly off public roads while not on public roads.

**d.** Which is an "uninsured motor vehicle".

© Insurance Services Office, Inc., 2012    CA 21 38 10 13

COMMERCIAL AUTO
CA 99 03 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

CA 99 03 10 13 © Insurance Services Office, Inc., 2011 Page 1 of 2

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

## D. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

## E. Changes In Conditions

The **Conditions** are changed for **Auto Medical Payments Coverage** as follows:

1. The **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply.

2. The reference in **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

   © Insurance Services Office, Inc., 2011   CA 99 03 10 13

POLICY NUMBER: PHPK2459846

COMMERCIAL AUTO
CA 99 23 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RENTAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** Remedial Environmental Manpower, Inc | |
| **Endorsement Effective Date:** 09/01/2022 | |

**SCHEDULE**

| Coverage | Designation Or Description Of Covered "Autos" To Which This Insurance Applies | Maximum Payment Each Covered "Auto" | | | Premium |
|---|---|---|---|---|---|
| | | Any One Day | No. Of Days | Any One Period | |
| Comprehensive | 2018 GMC SIERRA | $       15 | 30 | $       450 | $       5 |
| Collision | 2018 GMC SIERRA | $       15 | 30 | $       450 | $       9 |
| Specified Causes Of Loss | | $ | | $ | $ |
| | | | | Total Premium | $       98 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

**A.** This endorsement provides only those coverages where a premium is shown in the Schedule. It applies only to a covered "auto" described or designated in the Schedule.

**B.** We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductibles apply to this coverage.

**C.** We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

**1.** The number of days reasonably required to repair or replace the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

**2.** The number of days shown in the Schedule.

**D.** Our payment is limited to the lesser of the following amounts:

   **1.** Necessary and actual expenses incurred.

   **2.** The maximum payment stated in the Schedule applicable to "any one day" or "any one period".

**E.** This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

**F.** If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the Physical Damage Coverage Extension.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

© Insurance Services Office, Inc., 2011  **CA 99 23 10 13**

POLICY NUMBER: PHPK2459846

COMMERCIAL AUTO
CA 99 23 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# RENTAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**Named Insured:** Remedial Environmental Manpower, Inc

**Endorsement Effective Date:** 09/01/2022

### SCHEDULE

| Coverage | Designation Or Description Of Covered "Autos" To Which This Insurance Applies | Maximum Payment Each Covered "Auto" | | | Premium |
|---|---|---|---|---|---|
| | | Any One Day | No. Of Days | Any One Period | |
| Comprehensive | 2021 GMC YUKON XL | $ 15 | 30 | $ 450 | $ 5 |
| Collision | 2021 GMC YUKON XL | $ 15 | 30 | $ 450 | $ 9 |
| Specified Causes Of Loss | | $ | | $ | $ |
| | | | | Total Premium | $ INCL |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. This endorsement provides only those coverages where a premium is shown in the Schedule. It applies only to a covered "auto" described or designated in the Schedule.

B. We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductibles apply to this coverage.

C. We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

1. The number of days reasonably required to repair or replace the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you.

CA 99 23 10 13 © Insurance Services Office, Inc., 2011 Page 1 of 2

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

2.  The number of days shown in the Schedule.

D.  Our payment is limited to the lesser of the following amounts:

1.  Necessary and actual expenses incurred.

2.  The maximum payment stated in the Schedule applicable to "any one day" or "any one period".

E.  This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

F.  If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the Physical Damage Coverage Extension.

POLICY NUMBER: PHPK2459846

COMMERCIAL AUTO
CA 99 23 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RENTAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** Remedial Environmental Manpower, Inc |
| **Endorsement Effective Date:** 09/01/2022 |

**SCHEDULE**

| Coverage | Designation Or Description Of Covered "Autos" To Which This Insurance Applies | Maximum Payment Each Covered "Auto" | | | Premium |
|---|---|---|---|---|---|
| | | Any One Day | No. Of Days | Any One Period | |
| Comprehensive | 2022 GMC SIERRA LIMITED | $ 15 | 30 | $ 450 | $ 5 |
| Collision | 2022 GMC SIERRA LIMITED | $ 15 | 30 | $ 450 | $ 9 |
| Specified Causes Of Loss | | $ | | $ | $ |
| | | | | Total Premium | $ INCL |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

**A.** This endorsement provides only those coverages where a premium is shown in the Schedule. It applies only to a covered "auto" described or designated in the Schedule.

**B.** We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductibles apply to this coverage.

**C.** We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

**1.** The number of days reasonably required to repair or replace the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you.

© Insurance Services Office, Inc., 2011

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**2.** The number of days shown in the Schedule.

**D.** Our payment is limited to the lesser of the following amounts:

**1.** Necessary and actual expenses incurred.

**2.** The maximum payment stated in the Schedule applicable to "any one day" or "any one period".

**E.** This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

**F.** If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the Physical Damage Coverage Extension.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

POLICY NUMBER: PHPK2459846

COMMERCIAL AUTO
CA 99 23 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RENTAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**Named Insured:** Remedial Environmental Manpower, Inc

**Endorsement Effective Date:** 09/01/2022

## SCHEDULE

| Coverage | Designation Or Description Of Covered "Autos" To Which This Insurance Applies | Maximum Payment Each Covered "Auto" | | | Premium |
| | | Any One Day | No. Of Days | Any One Period | |
|---|---|---|---|---|---|
| Comprehensive | 2022 GMC SIERRA LIMITED | $ 15 | 30 | $ 450 | $ 5 |
| Collision | 2022 GMC SIERRA LIMITED | $ 15 | 30 | $ 450 | $ 9 |
| Specified Causes Of Loss | | $ | | $ | $ |
| | | | | Total Premium | $ INCL |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** This endorsement provides only those coverages where a premium is shown in the Schedule. It applies only to a covered "auto" described or designated in the Schedule.

**B.** We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductibles apply to this coverage.

**C.** We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

**1.** The number of days reasonably required to repair or replace the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you.

**2.** The number of days shown in the Schedule.

**D.** Our payment is limited to the lesser of the following amounts:

**1.** Necessary and actual expenses incurred.

**2.** The maximum payment stated in the Schedule applicable to "any one day" or "any one period".

**E.** This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

**F.** If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the Physical Damage Coverage Extension.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

© Insurance Services Office, Inc., 2011     **CA 99 23 10 13**

POLICY NUMBER: PHPK2459846

**COMMERCIAL AUTO**
**CA 99 23 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RENTAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Named Insured: Remedial Environmental Manpower, Inc

Endorsement Effective Date: 09/01/2022

**SCHEDULE**

| Coverage | Designation Or Description Of Covered "Autos" To Which This Insurance Applies | Maximum Payment Each Covered "Auto" | | | Premium |
| --- | --- | --- | --- | --- | --- |
| | | Any One Day | No. Of Days | Any One Period | |
| Comprehensive | 2017 TOYOTA SIENNA | $ 15 | 30 | $ 450 | $ 5 |
| Collision | 2017 TOYOTA SIENNA | $ 15 | 30 | $ 450 | $ 9 |
| Specified Causes Of Loss | | $ | | $ | $ |
| | | | | Total Premium | $ INCL |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** This endorsement provides only those coverages where a premium is shown in the Schedule. It applies only to a covered "auto" described or designated in the Schedule.

**B.** We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductibles apply to this coverage.

**C.** We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

**1.** The number of days reasonably required to repair or replace the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you.

CA 99 23 10 13 © Insurance Services Office, Inc., 2011 Page 1 of 2

2. The number of days shown in the Schedule.

D. Our payment is limited to the lesser of the following amounts:

1. Necessary and actual expenses incurred.

2. The maximum payment stated in the Schedule applicable to "any one day" or "any one period".

E. This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

F. If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the Physical Damage Coverage Extension.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

    © Insurance Services Office, Inc., 2011    CA 99 23 10 13

POLICY NUMBER: PHPK2459846

COMMERCIAL AUTO
CA 99 23 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RENTAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Named Insured: Remedial Environmental Manpower, Inc

Endorsement Effective Date: 09/01/2022

## SCHEDULE

| Coverage | Designation Or Description Of Covered "Autos" To Which This Insurance Applies | Maximum Payment Each Covered "Auto" | | | Premium |
| --- | --- | --- | --- | --- | --- |
| | | Any One Day | No. Of Days | Any One Period | |
| Comprehensive | 2016 GMC TERRAIN | $ 15 | 30 | $ 450 | $ 5 |
| Collision | 2016 GMC TERRAIN | $ 15 | 30 | $ 450 | $ 9 |
| Specified Causes Of Loss | | $ | | $ | $ |
| | | | | Total Premium | $ INCL |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** This endorsement provides only those coverages where a premium is shown in the Schedule. It applies only to a covered "auto" described or designated in the Schedule.

**B.** We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductibles apply to this coverage.

**C.** We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

1. The number of days reasonably required to repair or replace the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you.

CA 99 23 10 13          © Insurance Services Office, Inc., 2011          Page 1 of 2

2. The number of days shown in the Schedule.

D. Our payment is limited to the lesser of the following amounts:

1. Necessary and actual expenses incurred.

2. The maximum payment stated in the Schedule applicable to "any one day" or "any one period".

E. This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

F. If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the Physical Damage Coverage Extension.

 © Insurance Services Office, Inc., 2011 CA 99 23 10 13

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

POLICY NUMBER: PHPK2459846

COMMERCIAL AUTO
CA 99 23 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RENTAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** Remedial Environmental Manpower, Inc | |
| **Endorsement Effective Date:** 09/01/2022 | |

**SCHEDULE**

| Coverage | Designation Or Description Of Covered "Autos" To Which This Insurance Applies | Maximum Payment Each Covered "Auto" | | | Premium |
|---|---|---|---|---|---|
| | | Any One Day | No. Of Days | Any One Period | |
| Comprehensive | 2019 AUDI E-TRON | $ 15 | 30 | $ 450 | $ 5 |
| Collision | 2019 AUDI E-TRON | $ 15 | 30 | $ 450 | $ 9 |
| Specified Causes Of Loss | | $ | | $ | $ |
| | | | | Total Premium | $ INCL |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

A. This endorsement provides only those coverages where a premium is shown in the Schedule. It applies only to a covered "auto" described or designated in the Schedule.

B. We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductibles apply to this coverage.

C. We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

1. The number of days reasonably required to repair or replace the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you.

CA 99 23 10 13    © Insurance Services Office, Inc., 2011    Page 1 of 2

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

2. The number of days shown in the Schedule.

D. Our payment is limited to the lesser of the following amounts:

1. Necessary and actual expenses incurred.

2. The maximum payment stated in the Schedule applicable to "any one day" or "any one period".

E. This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

F. If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the Physical Damage Coverage Extension.

© Insurance Services Office, Inc., 2011   CA 99 23 10 13

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-AUT-001 (01/16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**COMMERCIAL AUTO COVERAGE PART**

We will pay for any injury or damage arising out of a "certified act of terrorism".

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Act for a "certified act of terrorism" includes the following":

1. The act resulted in insured losses in excess of $5 million in the aggregate,
2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage otherwise excluded under this Coverage Part.

PI-AUT-001 (01/16)
Page 1 of 1
Includes copyrighted material of the Insurance Services Office Inc., used with its permission.

PI-MANU-1 (01/00)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

CA2048 10 13 Designated Insured for Covered Autos Liability Coverage

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

DESIGNATED INSURED FOR COVERED AUTOS LIABILITY COVERAGE
This endorsement modifies insurance under the:
BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the
Coverage Form apply unless modified by this endorsement.
This endorsement identifies person(s) or organization(s) who are "insureds"
for Covered Autos Liability Coverage under the Who Is An Insured provision
of the Coverage Form. This endorsement does not alter coverage provided in
the Coverage Form.
This endorsement changes the policy effective on the inception date of the
policy unless another date is indicated below.

Named Insured: Remedial Environmental Manpower, Inc.

Endorsement Effective Date: 09/01/2022

Name Of Person(s) Or Organization(s):

Any person or organization who you are required by a written contract,
executed prior to the occurrence of a loss, to add as an additional insured
on a primary, non-contributory basis but only for liability arising out of
the negligence of the named insured.

Information required to complete this Schedule, if not shown above, will be
shown in the Declarations.

Each person or organization shown in the Schedule is an "insured" for
Covered Autos Liability Coverage, but only to the extent that person or
organization qualifies as an "insured" under the Who Is An Insured provision
contained in Paragraph A.1. of Section II - Covered Autos Liability Coverage
in the Business Auto and Motor Carrier Coverage Forms and Paragraph D.2. of
Section I - Covered Autos Coverages of the Auto Dealers Coverage Form.

All other terms and conditions of this Policy remain unchanged.

Page 1 of 1

PI-TS-030 (11/15)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## STAFFING SERVICES AUTO ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

**A.** Symbol 9, Non-owned "Autos" Only, under Description Of Covered Auto Designation Symbols, is deleted in its entirety and replaced with the following:

Symbol 9, Non-owned "Autos" only

1. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs.

2. Non-owned "Autos" includes "autos" you do not own, lease, hire, rent or borrow that are used by a "staffing service employee" or a "PEO worker" in connection with your client's business.

**B.** The following definitions are added to **SECTION V – DEFINITIONS**:

"Staffing service employee" means a person who is furnished by you to your client to perform the duties to which you have agreed.

"PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

"PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

PI-TS-030 (11/15)
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-TS-039 (08/21)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Staffing Services Non-Owned Autos - Described Auto Exclusion

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

A. The following is added to **Section II –COVERED AUTOS LIABILITY COVERAGE, Item B. Exclusions:**

    a.   This insurance does not apply to "bodily injury" or "property damage" based upon or arising out of the acts of any "staffing services employee" or "PEO worker" while such "staffing services employee" or "PEO worker" is operating or "occupying" an "auto" that you do not own, lease, hire, rent or borrow while on assignment to your client:

        (1)  If that "auto" is used in your client's business for the:

            (a) Collection or transport of waste;

            (b) Transport of oil, gasoline or other hazardous materials, substances or waste;

            (c) Transport of "staffing services employees" or "PEO worker" to or from your client's job site, but only if the "auto" used for such transport has a capacity greater than 15 passengers;

        (2)  If that "auto's" gross vehicle weight is greater than 26,000 pounds; or

        (3)  If that "auto" is an emergency response vehicle. As used in this exclusion, emergency response vehicle includes an ambulance, police or firefighting vehicle.

    b.   This insurance does not apply to "bodily injury" or "property damage" based upon or arising out of the acts of any "staffing services employee" or "PEO worker" while such "staffing services employee" or "PEO worker" is operating or "occupying" an "auto" described in the **SCHEDULE** below that you do not own, lease, hire, rent or borrow while on assignment to your client.

**SCHEDULE**

| Excluded "Auto": |
|---|
|  |

B. The following definitions are added to **SECTION V – DEFINITIONS:**

"Occupying" as used in this endorsement means in, upon, getting in, on, out or off.

"PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

"PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

PI-TS-039 (08/21)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-TS-039 (08/21)

"Staffing service employee" means a person who is furnished by you to your client to perform the duties to which you have agreed.

All other terms, conditions, provisions and exclusions of this policy remain the same.

PI-TS-039 (08/21)

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-BELL-1 IL (11/09)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BELL ENDORSEMENT

 **PHILADELPHIA**
**INSURANCE COMPANIES**

*A Member of the Tokio Marine Group*

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

**I.    SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS**

The following is a summary of Limits of Liability or Limits of Insurance and/or additional coverages provided by this endorsement.  This endorsement is subject to the provisions of the policy to which it is attached.

| COVERAGE | LIMITS OF INSURANCE |
|---|---|
| Business Travel Accident Expenses | $50,000 |
| Conference Cancellation | $25,000 |
| Donation Assurance | $50,000 |
| Emergency Real Estate Consulting Fee | $50,000 |
| Fundraising Event Blackout | $25,000 |
| Identity Theft Expense | $50,000 |
| Image Restoration and Counseling | $50,000 |
| Key Individual Replacement Expenses | $50,000 |
| Kidnap Expense | $50,000 |
| Political Unrest | $5,000 per employee: $25,000 policy limit |
| Temporary Meeting Space Reimbursement | $25,000 |
| Terrorism Travel Reimbursement | $50,000 |
| Travel Delay Reimbursement | $1,500 |
| Workplace Violence Counseling | $50,000 |

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

**II. CONDITIONS**

**A. Applicability of Coverage**

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.

**B. Limits of Liability or Limits of Insurance**

1. When coverage is provided by this endorsement and another coverage form or endorsement attached to this policy, the greater limits of liability or limits of insurance will apply. In no instance will multiple limits apply to coverages which may be duplicated within this policy. Additionally, if this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same occurrence, offense, wrongful act, accident or loss, the maximum limits of liability or limits of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limits of liability or limits of insurance under any one coverage part or policy.

2. Limits of liability or limits of insurance identified in Section **I. SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS** above are not excess of, but are in addition to the applicable Limits of Liability or Limits of Insurance stated in the Declarations.

**C. Claim Expenses**

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

**III. ADDITIONAL COVERAGES**

**A. Business Travel Accident Expenses**

We will pay any reasonable and necessary expenses an insured incurs if a director or officer suffers injury or death while traveling on a common carrier for your business during the policy period.

For the purpose of Business Travel Accident Expenses coverage, injury means:

1. Physical damage to the body caused by violence, fracture, or an accident that results in loss of life not later than one hundred eighty (180) days after the policy expiration, the date of cancellation or the date of non-renewal;

2. Accidental loss of limbs or multiple fingers;

3. Total loss of sight, speech or hearing.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

Business Travel Accident Expenses shall not be payable if the cause of the injury was:

1. An intentional act by the insured;

2. An act of suicide or attempted suicide;

3. An act of war; or

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

4. A disease process.

**B. Conference Cancellation**

We will reimburse the insured for any business-related conference expenses, paid by the insured and not otherwise reimbursed, for a canceled conference that an employee was scheduled to attend. The cancellation must be due directly to a "natural catastrophe" or a "communicable disease" outbreak that forces the cancellation of the conference.

With respect to a conference cancellation claim, it is further agreed as follows:

1. The insured employee must have registered for the conference at least thirty (30) days prior to the cancellation; and

2. The cancellation must be ordered by a local, state or federal Board of Health or other governmental authority having jurisdiction over the location of the conference.

The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**C. Donation Assurance**

If the insured is a 501(c)(3) status non-profit organization as defined in the United States Internal Revenue Code, we will reimburse the insured for "failed donation claim(s)."

With respect to any "failed donation claim," it is further agreed as follows:

1. The donor must not have been in bankruptcy, nor have filed for bankruptcy or reorganization in the past seven (7) years prior to the time said pledge was made to the insured;

2. For non-cash donations, our payment of a "failed donation claim" shall be based on the fair market value of said non-cash donation at the time of the "failed donation claim";

3. In the case of unemployment or incapacitation of a natural person donor and as a condition of payment of the "failed donation claim":

   a. Neither the natural person donor nor the insured shall have had reason to believe the donor would become unemployed or incapacitated subsequent to the donation date; and

   b. The donor shall be unemployed for at least sixty (60) days prior to a claim being submitted by the insured;

4. No coverage shall be afforded for a written pledge of funds or other measurable, tangible property to the insured dated prior to the policy period; and

5. A donation amount which is to be collected by the insured over more than a twelve (12) month period shall be deemed a single donation.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

**D. Emergency Real Estate Consulting Fee**

We will reimburse the insured any realtor's fee or real estate consultant's fee necessitated by the insured's need to relocate due to the "unforeseeable destruction" of the insured's "principal location" listed in the Declarations during the policy period. The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**E. Fundraising Event Blackout**

We will reimburse the insured for "fundraising expenses" that are incurred due to the cancellation of a fundraising event caused by the lack of electric supply resulting in a power outage, provided the fundraising event is not re-scheduled. The fundraising event must have been planned at least thirty (30) days prior to the power outage. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**F. Identity Theft Expense**

We will reimburse any present director or officer of the named insured for "identity theft expenses" incurred as the direct result of any "identity theft" first discovered and reported during the policy period; provided that it began to occur subsequent to the effective date of the insured's first policy with us. The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**G. Image Restoration and Counseling**

We will reimburse the insured for expenses incurred for image restoration and counseling arising out of "improper acts" by any natural person.

Covered expenses are limited to:

1.  The costs of rehabilitation and counseling for the accused natural person insured, provided the natural person insured is not ultimately found guilty of criminal conduct; this reimbursement to occur after acquittal of the natural person insured;

2.  The costs charged by a recruiter or expended on advertising, for replacing an officer as a result of "improper acts"; and

3.  The costs of restoring the named insured's reputation and consumer confidence through image consulting.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**H. Key Individual Replacement Expenses**

We will pay "key individual replacement expenses" if the Chief Executive Officer or Executive Director suffers an "injury" during the policy period which results in the loss of life during the policy period. The limit of insurance for this coverage is the lesser of $50,000 or ten (10) times the annual premium paid for this policy. No deductible applies to this coverage.

PI-BELL-1 IL (11/09)

### I. Kidnap Expense

We will pay on behalf of any director or officer of the insured, reasonable fees incurred as a result of the kidnapping of them or their spouse, "domestic partner," parent or child during the policy period. Coverage will not apply to any kidnapping by or at the direction of any present or former family member of the victim.

Reasonable fees will include:

1. Fees and costs of independent negotiators;

2. Interest costs for any loan from a financial institution taken by you to pay a ransom demand or extortion threat;

3. Travel costs and accommodations incurred by the named insured;

4. Reward money paid to an informant which leads to the arrest and conviction of parties responsible for loss covered under this insurance; and

5. Salary, commissions and other financial benefits paid by you to a director or officer. Such compensation applies at the level in effect on the date of the kidnap and ends upon the earliest of:

    a. Up to thirty (30) days after their release, if the director or officer has not yet returned to work;

    b. Discovery of their death;

    c. One hundred twenty (120) days after the last credible evidence following abduction that they are still alive; or

    d. Twelve (12) months after the date of the kidnapping.

The limit of insurance for this coverage is $50,000 each policy period for all insureds combined. No deductible applies to this coverage.

### J. Political Unrest Coverage

We will reimburse any present director, officer, employee or volunteer of the named insured while traveling outside the United States of America for "emergency evacuation expenses" that are incurred as a result of an incident of "political unrest." This "political unrest" must occur during the policy period. No coverage is granted for travel to countries in a state of "political unrest" at the time of departure of the travel. The limit of insurance for this coverage is $5,000 per covered person, subject to a maximum of $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

### K. Temporary Meeting Space Reimbursement

We will reimburse the insured for rental of meeting space which is necessitated by the temporary unavailability of the insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater during the policy period. Coverage will exist only for the renting of temporary meeting space required for meeting with parties who are not insured under this policy. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

**L. Terrorism Travel Reimbursement**

We will reimburse any present director or officer of the named insured in the event of a "certified act of terrorism" during the policy period which necessitates that he/she incurs "emergency travel expenses." The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**M. Travel Delay Reimbursement**

We will reimburse any present director or officer of the named insured for any "non-reimbursable expenses" they incur as a result of the cancellation of any regularly scheduled business travel on a common carrier. The limit of insurance for this coverage is $1,500 per policy period for all insureds combined. A seventy-two (72) hour waiting period deductible applies to this coverage.

**N. Workplace Violence Counseling**

We will reimburse the insured for emotional counseling expenses incurred directly as a result of a "workplace violence" incident at any of the insured's premises during the policy period. The emotional counseling expenses incurred must have been for:

1.  Your employees who were victims of, or witnesses to the "workplace violence";

2.  The spouse, "domestic partner," parents or children of your employees who were victims of, or witnesses to the "workplace violence"; and

3.  Any other person or persons who directly witnessed the "workplace violence" incident.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**IV. DEFINITIONS**

For the purpose of this endorsement, the following definitions apply:

A.  "Certified act of terrorism" means any act so defined under the Terrorism Risk Insurance Act, and its amendments or extensions.

B.  "Communicable disease" means an illness, sickness, condition or an interruption or disorder of body functions, systems or organs that is transmissible by an infection or a contagion directly or indirectly through human contact, or contact with human fluids, waste, or similar agent, such as, but not limited to Meningitis, Measles or Legionnaire's Disease.

C.  "Domestic partner" means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by the named insured.

D.  "Emergency evacuation expenses" mean:

1.  Additional lodging expenses;

2.  Additional transportation costs;

3.  The cost of obtaining replacements of lost or stolen travel documents necessary for evacuation from the area of "political unrest"; and

PI-BELL-1 IL (11/09)

4. Translation services, message transmittals and other communication expenses.

provided that these expenses are not otherwise reimbursable.

E. "Emergency travel expenses" mean:

1. Hotel expenses incurred which directly result from the cancellation of a scheduled transport by a commercial transportation carrier, resulting directly from and within forty-eight (48) hours of a "certified act of terrorism"; and

2. The increased amount incurred which may result from re-scheduling comparable transport, to replace a similarly scheduled transport canceled by a commercial transportation carrier in direct response to a "certified act of terrorism";

provided that these expenses are not otherwise reimbursable.

F. "Failed donation claim" means written notice to the insured during the policy period of:

1. The bankruptcy or reorganization of any donor whereby such bankruptcy or reorganization prevents the donor from honoring a prior written pledge of funds or other measurable, tangible property to the insured; or

2. The unemployment or incapacitation of a natural person donor preventing him/her from honoring a prior written pledge of funds or other measurable, tangible property to the insured.

G. "Fundraising expenses" mean deposits forfeited and other charges paid by you for catering services, property and equipment rentals and related transport, venue rentals, accommodations (including travel), and entertainment expenses less any deposits or other fees refunded or refundable to you.

H. "Identity theft" means the act of knowingly transferring or using, without lawful authority, a means of identification of any director or officer (or spouse or "domestic partner" thereof) of the named insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

I. "Identity theft expenses" mean:

1. Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

2. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors; and

3. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

J. "Improper acts" means any actual or alleged act of:

1. Sexual abuse;

2. Sexual intimacy;

3. Sexual molestation; or

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

4. Sexual assault;

committed by an insured against any natural person who is not an insured. Such "improper acts" must have been committed by the insured while in his or her capacity as an insured.

K. "Injury" whenever used in this endorsement, other than in Section **III. A. Business Travel Accident Expenses**, means any physical damage to the body caused by violence, fracture or an accident.

L. "Key individual replacement expenses" mean the following necessary expenses:

1. Costs of advertising the employment position opening;

2. Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

3. Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, overtime pay, costs to verify the background and references of the applicants and legal expenses incurred to draw up an employment contract.

M. "Natural catastrophe" means hurricane, tornado, earthquake or flood.

N. "Non-reimbursable expenses" means the following travel-related expenses incurred after a seventy-two (72) hour waiting period, beginning from the time documented on the proof of cancellation, and for which your director or officer produces a receipt:

1. Meals and lodging;

2. Alternative transportation;

3. Clothing and necessary toiletries; and

4. Emergency prescription and non-prescription drug expenses.

O. "Political unrest" means:

1. A short-term condition of disturbance, turmoil or agitation within a foreign country that poses imminent risks to the security of citizens of the United States;

2. A long-term condition of disturbance, turmoil or agitation that makes a foreign country dangerous or unstable for citizens of the United States; or

3. A condition of disturbance, turmoil or agitation in a foreign country that constrains the United States Government's ability to assist citizens of the United States, due to the closure or inaccessibility of an embassy or consulate or because of a reduction of its staff

for which either an alert or travel warning has been issued by the United States Department of State.

P. "Principal location" means the headquarters, home office or main location where most business is substantially conducted.

Q. "Unforeseeable destruction" means damage resulting from a "certified act of terrorism," fire, collision or collapse which renders all of the insured's "principal locations" completely unusable.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-BELL-1 IL (11/09)

R.  "Workplace violence" means any intentional use of or threat to use deadly force by any person with intent to cause harm and that results in bodily "injury" or death of any person while on the insured's premises.

Page 9 of 9
© 2009 Philadelphia Indemnity Insurance Company

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-CME-1 (10/09)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CRISIS MANAGEMENT ENHANCEMENT ENDORSEMENT

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

Solely for the purpose of this endorsement: 1) The words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. 2) The words "we," "us" and "our" refer to the company providing this insurance.

**I. SCHEDULE OF ADDITIONAL COVERAGE AND LIMITS**

The following is the Limit of Liability provided by this endorsement. This endorsement is subject to the provisions of the policy to which it is attached.

Crisis Management Expense $25,000

**II. CONDITIONS**

**A. Applicability of Coverage**

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable. All other terms and conditions of the policy or coverage part to which this endorsement is attached remain unchanged.

**B. Limits of Liability or Limits of Insurance**

When coverage is provided by this endorsement and any other coverage form or endorsement attached to this policy, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Liability or Limit of Insurance.

**C. Claim Expenses**

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

**III. ADDITIONAL COVERAGES**

A. We will reimburse you for "crisis management emergency response expenses" incurred because of an "incident" giving rise to a "crisis" to which this insurance applies. The amount of such reimbursement is limited as described in Section **II. CONDITIONS, B. Limits of Liability or Limits of Insurance.** No other obligation or liability to pay sums or perform acts or services is covered.

B. We will reimburse only those "crisis management emergency response expenses" which are incurred during the policy period as shown in the Declarations of the policy to which this coverage is attached and reported to us within six (6) months of the date the "crisis" was initiated.

PI-CME-1 (10/09)

IV. **DEFINITIONS**

    **A.** "Crisis" means the public announcement that an "incident" occurred on your premises or at an event sponsored by you.

    **B.** "Crisis management emergency response expenses" mean those expenses incurred for services provided by a "crisis management firm." However, "crisis management emergency response expenses" shall not include compensation, fees, benefits, overhead, charges or expenses of any insured or any of your employees, nor shall "crisis management emergency response expenses" include any expenses that are payable on your behalf or reimbursable to you under any other valid and collectible insurance.

    **C.** "Crisis management firm" means any service provider you hire that is acceptable to us. Our consent will not be unreasonably withheld.

    **D.** "Incident" means an accident or other event, including the accidental discharge of pollutants, resulting in death or serious bodily injury to three or more persons.

    **E.** "Serious bodily injury" means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-PRD-2 (09/02)

# PRIVATE COMPANY PROTECTION PLUS
Directors and Officers & Private Company Liability Insurance
Employment Practices Liability Insurance
Fiduciary Liability Insurance

In consideration of the premium paid and in reliance upon all statements made and information furnished to the **Underwriter**, including all statements made in the **Application**, the **Underwriter** agrees to provide coverage as shown in the Declarations and described as follows:

## PART 1
## DIRECTORS & OFFICERS LIABILITY INSURANCE

(To be read in conjunction with the Common Policy Definitions, Exclusions and Conditions Sections, Part 4, 5, 6 below)

I.      INSURING AGREEMENTS

      A.      INDIVIDUAL LIABILITY COVERAGE

          The **Underwriter** shall pay on behalf of the **Individual Insured**, **Loss** from **Claims** made against **Individual Insureds** during the **Policy Period** (or, if applicable, during the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for **D&O Wrongful Acts**, except to the extent the **Private Company** has indemnified the **Individual Insured** for such **Loss**.

      B.      PRIVATE COMPANY INDEMNITY COVERAGE

          The **Underwriter** shall pay on behalf of the **Private Company**, **Loss** from **Claims** made against **Individual Insureds** during the **Policy Period** (or, if applicable, during the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for **D&O Wrongful Acts**, if the **Private Company** has indemnified such **Individual Insureds** for such **Loss**.

      C.      PRIVATE COMPANY LIABILITY COVERAGE

          The **Underwriter** shall pay on behalf of the **Private Company**, **Loss** from **Claims** made against the **Private Company** during the **Policy Period** (or, if applicable, during the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for a **D&O Wrongful Act**.

II.     DEFINITIONS

      A.      **D&O Wrongful Act** means any actual or alleged:

          1.  act, error, omission, misstatement, misleading statement, neglect, or breach of duty committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured**; or

          2.  act, error, omission, misstatement, misleading statement, neglect, or breach of duty committed or attempted by the **Private Company**; or

          3.  act, error, omission, misstatement, misleading statement, neglect, or breach of duty committed or attempted by an **Individual Insured** arising out of serving in his/her capacity as a director, officer, governor or trustee of an **Outside Entity**, but only:

PI-PRD-2 (09/02)

    a.  if such service is at the written request or direction of the **Private Company**; and

    b.  if, at the time such service began, the **Individual Insured** did not know or could not have reasonably foreseen that such act, error, omission, misstatement, misleading statement, neglect, or breach of duty could lead to a **Claim** under this Policy.

B.    **Outside Entity** means:

    1.  any not-for-profit entity described in section 501(c)(3) of the Internal Revenue Code of 1986 (as amended); or

    2.  any other entity listed as an **Outside Entity** in an endorsement to this Policy.

III.    EXCLUSIONS

The **Underwriter** shall not be liable under this Part 1 to make any payment for **Loss** in connection with any **Claim** made against the **Private Company** under Insuring Agreement C:

A.  arising out of, based upon or attributable to any actual or alleged plagiarism, infringement of copyright, patent, trademark, trade name, trade dress, service mark, title or slogan, piracy or misappropriation of ideas or trade secrets;

B.  arising out of, based upon or attributable to any actual or alleged price fixing, restraint of trade, monopolization, unfair competition, or violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman Act, the Hart-Scott-Rodino Anti-Trust Improvement Act or any other similar federal, state, or local statutory provision or common law anywhere in the world;

C.  for any actual or alleged liability under any written or oral contract or agreement; however, this exclusion does not apply to any of the following:

    1.  liability of the **Private Company** which would have attached even in the absence of such contract or agreement; or

    2.  **Defense Costs.**

D.  arising out of, based upon or attributable to any failure to comply with any law concerning workers compensation, unemployment insurance, social security, disability benefits or any similar laws;

E.  for any actual or alleged violation of any of the responsibilities, obligations, or duties imposed by ERISA, the National Labor Relations Act (including the Labor Management Relations Act of 1947), Fair Labor Standards Act, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, Worker Adjustment and Retraining Notification Act; or any amendments to or rules, regulations or orders promulgated pursuant to these laws, or similar provisions of any federal, state or local statutory or common law;

F.  for any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture;

G.  arising out of, based upon or attributable to an **Employment Practices Act** or a **Fiduciary Liability Act**.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-PRD-2 (09/02)

IV. PRESUMPTIVE INDEMNIFICATION

If the **Private Company** is permitted or required by common or statutory law, but fails to indemnify the **Individual Insured** for **Loss** (except by reason of its financial insolvency), any payment by the **Underwriter** of such **Loss** shall be subject to the Insuring Agreement C Retention Amount set forth in Item 4.(A) of the Declarations. The charter, by-laws, shareholder and board of director's resolutions of the **Private Company** shall be deemed to provide indemnification for such **Loss** to the fullest extent permitted by law.

## PART 2
## EMPLOYMENT PRACTICES LIABILITY INSURANCE

(To be read in conjunction with the Common Policy Definitions, Exclusions and Conditions Sections, Part 4, 5, 6 below)

I. INSURING AGREEMENT

The **Underwriter** shall pay on behalf of the **Insured**, **Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for an **Employment Practice Act**.

II. DEFINITIONS

A. **Employment Practice Act** means any actual or alleged:

1. wrongful dismissal, discharge or termination of employment;

2. breach of a written or oral employment contract or implied employment contract;

3. employment related misrepresentation;

4. wrongful failure to promote;

5. violation of employment discrimination laws (including harassment);

6. wrongful deprivation of a career opportunity;

7. employment related wrongful discipline;

8. negligent employee evaluation;

9. employment related invasion of privacy;

10. employment related defamation (including libel and slander);

11. sexual or workplace harassment of any kind;

12. constructive discharge of employment;

13. employment related **Retaliation**;

14. employment related humiliation;

15. wrongful demotion;

16. negligent reassignment;

17. violation of any federal, state or local civil rights laws;

and committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured** or by the **Private Company**.

Solely with respect to any **Claim** brought by or on behalf of any **Third Party**, **Employment Practice Act** means any actual or alleged wrongful failure to employ, discrimination, sexual

PI-PRD-2 (09/02)

harassment or violation of such **Third Party's** civil rights in relation to such wrongful failure to employ, discrimination or sexual harassment, whether direct, indirect, or unintentional, committed by an **Individual Insured** in his/her capacity as an **Individual Insured** or by the **Private Company**.

B. **Retaliation** means retaliatory treatment against an **Individual Insured** on account of such individual:

    1. exercising his or her rights under law, including but not limited to rights under any workers compensation laws, the Family and Medical Leave Act, or the Americans with Disabilities Act;

    2. refusing to violate any law;

    3. having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law by the **Insured**;

    4. disclosing in writing to a superior or to any governmental agency any alleged violations of law;

    5. filing any claim against the **Insured** under the Federal False Claims Act or any other similar "whistle blower" federal, state, or local law.

C. **Third Party** means any natural person who is an active or current customer, supplier, vendor, applicant, business invitee or other client of the **Private Company**.

III. EXCLUSIONS

The **Underwriter** shall not be liable under this Part 2 to make any payment for **Loss** in connection with any **Claim** made against the **Insured**:

A. arising out of, based upon or attributable to any failure to comply with any law concerning workers compensation, unemployment insurance, social security, disability benefits or any similar laws; however, this exclusion shall not apply to any **Claim** for **Retaliation**;

B. for any actual or alleged violation of any of the responsibilities, obligations, or duties imposed by ERISA, the National Labor Relations Act (including the Labor Management Relations Act of 1947), Fair Labor Standards Act (except the Equal Pay Act ), Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, Worker Adjustment and Retraining Notification Act; or any amendments to or rules, regulations or orders promulgated pursuant to these laws, or similar provisions of any federal, state or local statutory or common law; however, this exclusion shall not apply to any **Claim** for **Retaliation**;

C. arising out of, based upon or attributable to a lockout, strike, picket line, replacement or other similar action resulting from labor disputes, labor negotiations, or collective bargaining agreements; provided that this exclusion will not apply to any **Claim** for **Retaliation**;

D. arising out of, based upon or attributable to obligations or payments owed under (i) an express (written or verbal) contract of employment, (ii) an agreement to make payments in the event of the termination of employment, or (iii) an agreement to assume another's liability; however, this exclusion does not apply to any of the following:

    1. liability of the **Private Company** which would have attached even in the absence of such contract or agreement; or

Page 4 of 19

PI-PRD-2 (09/02)

2.    **Defense Costs**;

E.   to the extent such **Loss**, other than **Defense Costs**, constitutes employment-related benefits, stock options, perquisites, deferred compensation, payment of insurance, or any other type of compensation earned by the claimant in the course of employment or the equivalent value thereof; however, this exclusion shall not apply to front pay or back pay;

F.   arising out of, based upon or attributable to a **D&O Wrongful Act** or a **Fiduciary Liability Act.**

<div align="center">

**PART 3**
**FIDUCIARY LIABILITY INSURANCE**

</div>

(To be read in conjunction with the Common Policy Definitions, Exclusions and Conditions Sections, Part 4, 5, 6 below)

I.    INSURING AGREEMENT

The **Underwriter** shall pay on behalf of the **Insured**, **Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for a **Fiduciary Liability Act.**

II.   DEFINITIONS

A.   **Administration** means: (i) giving counsel to **Employees**, beneficiaries or participants regarding any **Benefit Plan**, (ii) providing interpretations and handling records in connection with any **Benefit Plan**, or (iii) effecting enrollment, termination or cancellation of **Employees** or participants under any **Benefit Plan**.

B.   **Benefit Plan** means:

1.   any **Welfare Benefit Plan** which was, is now or becomes sponsored by the **Private Company** solely for the benefit of the **Employees** of the **Private Company**;

2.   any **Pension Benefit Plan** which was, on or prior to the effective date of this Policy, sponsored by the **Private Company** solely for the benefit of the **Employees** of the **Private Company**, provided that coverage was available in respect of such **Pension Benefit Plan** under any policy of which this Policy is a renewal or replacement and such **Pension Benefit Plan** has been reported in writing to the **Underwriter** as part of the **Application**;

3.   any **Pension Benefit Plan** created or acquired (through merger, consolidation or otherwise) during the **Policy Period** by the **Insured** solely for the benefit of the **Employees** of the **Private Company**, but only upon the condition that within 90 days after such creation or acquisition, the **Insured** shall have (i) provided written notice to the **Underwriter** of such newly created **Pension Benefit Plan**, and (ii) agreed to any additional terms and paid any additional premium required by the **Underwriter** in its sole discretion;

4.   any government-mandated benefit program for workers compensation, unemployment, social security or disability benefit for **Employees** of the **Private Company**.

However, **Benefit Plan** does not include any multi-employer plan.

Coverage for **Benefit Plans** which are sold, terminated or spun-off during or prior to the **Policy Period** shall apply only with respect to any **Fiduciary Liability Act** occurring prior to the date

PI-PRD-2 (09/02)

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

of such sale or spin-off, or in the case of termination, prior to the final date of asset distribution of such **Benefit Plan**.

C. **Fiduciary Liability Act** means any actual or alleged:

1. breach by an **Insured** of the responsibilities, obligations or duties imposed upon fiduciaries of any **Benefit Plan** by **ERISA**; or

2. negligent act, error or omission by an **Insured** solely in the **Administration** of any **Benefit Plans**.

D. **Pension Benefit Plan** means any employee pension benefit plan, as defined in **ERISA**.

E. **Welfare Benefit Plan** means any employee welfare benefit plan, as defined in **ERISA**.

III. EXCLUSIONS

The **Underwriter** shall not be liable under this Part 3 to make any payment for **Loss** in connection with any **Claim** made against the **Insured**:

A. arising out of, based upon or attributable to the actual or alleged failure to collect or fund contributions owed to any **Benefit Plan**; or for the return or reversion to any employer of any contribution to or asset of a **Benefit Plan**;

B. to the extent such **Loss** constitutes benefits due or to become due under a **Benefit Plan** or benefits which would be due under a **Benefit Plan** if its terms complied with all applicable law; however, this exclusion shall not apply to **Defense Costs**;

C. arising out of, based upon or attributable to any failure or omission to effect and maintain insurance or bonding for the property or assets of any **Benefit Plan**;

D. arising out of, based upon or attributable to any liability of others assumed by the **Insured** under any contract or agreement, other than any contract or agreement establishing a **Benefit Plan**.

E. arising out of, based upon or attributable to any failure to comply with any law concerning workers compensation, unemployment insurance, social security, disability benefits or any similar laws;

F. arising out of, based upon or attributable to an **Employment Practices Act** or a **D&O Wrongful Act**.

PI-PRD-2 (09/02)

## PART 4
## COMMON POLICY DEFINITIONS

A. **Application** means:

    1. the **Application** for this Policy, including any material submitted therewith; and

    2. the **Application**(s), including any material submitted therewith, for all previous policies issued by the **Underwriter** of which this Policy is a direct or indirect renewal or replacement,

    all of which shall be deemed a part of this Policy as if physically attached hereto.

B. **Claim** means:

    1.    a written demand for monetary or non-monetary relief;

    2.    a judicial or civil proceeding commenced by the service of a complaint or similar pleading;

    3.    a criminal proceeding commenced by a return of an indictment;

    4.    a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigation order or similar document, including, but not limited to, proceedings before the Equal Employment Opportunity Commission or any similar governmental agency;

    5.    an arbitration or mediation or other alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the **Underwriter's** written consent, such consent not to be unreasonably withheld;

    6.    solely with respect to Part 3 (Fiduciary Liability Insurance), a written notice of commencement of an investigation by the Department of Labor or the Pension Benefit Guaranty Corporation;

        against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

    7.    a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Claim** as described above.

    However, **Claim** shall not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

    A **claim** shall be considered made when an **Insured** first receives notice of the **Claim**.

C. **Damages** means any monetary judgment (including any pre- and post- judgment Interest thereon) or monetary settlement, including the punitive, exemplary or multiple portion of any judgment (to the extent such damage is insurable under law of any jurisdiction which has a substantial relationship to the **Insured** or to the **Claim** seeking such damage and which is most favorable to the insurability of such damage).

D. **Defense Costs** means:

PI-PRD-2 (09/02)

1. any reasonable and necessary legal fees and expenses incurred in the defense of a **Claim,** whether by the **Insured** with the **Underwriter's** consent or directly by the **Underwriter,** in the investigation, adjustment, defense and appeal of a **Claim,** except that **Defense Costs** shall not include:

    a. any amounts incurred in defense of any **Claim** for which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty; or

    b. salaries, wages, overhead or benefit expenses associated with any **Insured** except as specified in subparagraph 2. below; or

    c. salaries, wages, overhead or benefit expenses associated with employees of the **Underwriter;** and

2. a $250 per day per **Individual Insured** supplemental payment for the attendance at the request or with the consent of the **Underwriter** by such **Individual Insured** at hearings, trials or depositions. Such payment shall not exceed $5000 in the aggregate for all **Individual Insureds** in each **Claim.**

E. **Employee** means any natural person whose labor or service is engaged by and directed by the **Private Company,** including part-time, seasonal, leased and temporary employees as well as volunteers, but only while that natural person is acting in his or her capacity as such. **Employee** shall not include any independent contractors, unless specifically scheduled by endorsement.

F. **ERISA** means the Employee Retirement Income Security Act of 1974, as amended, any similar federal, state, local or common law, and any rules and regulations promulgated thereunder.

G. **Individual Insured** means:

1. any individual who has been, now is or shall become a director, officer, governor, trustee, **Employee,** volunteer, management committee member, or member of the Board of Managers of the **Private Company** or, solely with respect to Part 3 (Fiduciary Liability Insurance), a director, officer, governor, trustee or **Employee** of any **Benefit Plan;**

2. the lawful spouse of a director, officer, governor, trustee, or equivalent executive of the **Private Company,** but only for actual or alleged **Wrongful Acts** of such person for which such spouse may be liable as the spouse of such person;

3. the estate, heirs, legal representatives or assigns of a deceased director or officer, or the legal representatives or assigns of such a person who is incompetent, but only for **Wrongful Acts** of the person described in G. (1) or (4) which, in the absence of such death or incompetence, would have been covered by this Policy;

4. with respect to a **Private Company** chartered outside the United States of America, any individual who has been, now is or shall become a person serving in a position with such **Private Company** that is equivalent to any position described in (1) above.

H. **Insured** means the **Private Company** and **Individual Insured.**

PI-PRD-2 (09/02)

I. **Interrelated Wrongful Act** means: any causally connected **Wrongful Act** or any series of the same, similar or related **Wrongful Acts**.

J. **Loss** means:

    1.    **Damages**;

    2.    **Defense Costs**;

but **Loss** does not include:

    1.    criminal or civil fines or penalties imposed by law except that solely with respect to Part 3 (Fiduciary Liability Insurance) **Loss** includes fines or penalties imposed under Section 502 (i) and (l) of **ERISA**; or

    2.    taxes; or

    3.    matters deemed uninsurable under the law to which this Policy shall be construed; or

    4.    any amounts other than **Defense Costs**, which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress in any form other than monetary damages; or

    5.    any costs other than **Defense Costs** associated with any accommodation required pursuant to the American With Disabilities Act (removed Civil Rights Act of 1964) and the rules or regulations promulgated thereunder, amendments thereto, or similar provisions of any federal, state or local law or common law.

K. **Named Corporation** means the first entity named in Item 1 of the Declarations Page.

L. **Private Company** means:

    1. the **Named Corporation**, and

    2. any **Subsidiary**, and

    3. any entity or person as a debtor in possession within the meaning of the United States Bankruptcy Code or similar legal status under foreign law, and

    4. solely with respect to Part 3 (Fiduciary Liability Insurance), any **Benefit Plan**.

M. **Policy Period** means the period of time specified in Item 2 of the Declarations Page.

N. **Private Offering** means securities offered or issued by the **Private Company** which are exempt from registration with the United States Securities and Exchange Commission pursuant to Section 3 (b) of the Securities Act of 1933.

O. **Public Offering** means securities issued by the **Private Company** for initial public offering, public sale, public solicitation or public distribution to the general public and which is subject to full registration with the United States Securities & Exchange Commission (SEC). **Public Offering** does not include a **Private Offering**.

P. **Run-Off Policy** means a new policy of insurance offered by the **Underwriter** at the request of the **Named Corporation** in the event of a **Transaction**. The **Run-Off Policy** shall apply to

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

PI-PRD-2 (09/02)

Claims made and reported to the **Underwriter** during the term of the **Run-Off Policy**, but only for **Wrongful Acts** occurring prior to the effective date of said **Transaction**.

Q. **Subsidiary** means:

1. a corporation of which the **Named Corporation** owns on or before the inception of the **Policy Period** more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its **Subsidiaries** or the right to elect, appoint or designate more than 50% of such entity's **board** of directors, trustees, or managers and which is set forth in the **Application**;

2. a corporation which becomes a **Subsidiary** during the **Policy Period** and whose assets total less than 25% of the total consolidated assets of the **Named Corporation** as of the inception date of this **Policy Period**. The **Named Corporation** shall provide the **Underwriter** with full particulars of the new **Subsidiary** before the end of the **Policy Period**;

3. a corporation, which becomes a **Subsidiary** during the **Policy Period** other than a corporation described in paragraph 2. above, but only upon the condition that within 90 days of its becoming a **Subsidiary**, the **Named Corporation** shall have provided the **Underwriter** with full particulars of the new **Subsidiary** and agreed to any additional premium and/or amendment of the provisions of this Policy required by the **Underwriter** relating to such new **Subsidiary**. Further, coverage as shall be afforded to the new **Subsidiary** is conditioned upon the **Named Corporation** paying when due any additional premium required by the **Underwriter** relating to such new **Subsidiary**.

A corporation becomes a **Subsidiary** when the **Named Corporation** owns more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its **Subsidiaries**. A corporation ceases to be a **Subsidiary** when the **Named Corporation** ceases to own more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its **Subsidiaries**. Coverage for **Claims** made against any **Subsidiary** or the **Individual Insureds** of any **Subsidiary** shall only apply to **Wrongful Acts** of such **Subsidiary** or the **Individual Insureds** of such **Subsidiary** occurring after the effective time that such **Subsidiary** became a **Subsidiary** and prior to the time that such **Subsidiary** ceased to be a **Subsidiary**.

R. **Transaction** shall mean:

1. the **Private Company** merging into or consolidating with another entity such that the other entity is the surviving entity; or

2. another entity, or person or group of entities and/or persons acting in concert acquiring securities or voting rights which result in ownership or voting control by the other entity(ies) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Private Company**; or

3. **Public Offering**.

S. **Underwriter** means the stock insurance company check marked on the Declarations Page of this Policy.

T. **Wrongful Act** means:

PI-PRD-2 (09/02)

1.   with respect to Part 1, any **D&O Wrongful Act**,
2.   with respect to Part 2, any **Employment Practice Act**,
3.   with respect to Part 3, any **Fiduciary Liability Act**.

### PART 5
### COMMON POLICY EXCLUSIONS

The **Underwriter** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Insured**:

A.   arising out of, based upon or attributable to such **Insured** gaining any profit, remuneration or advantage to which they were not legally entitled; however, this exclusion shall only apply if a final and non-appealable judgment or adjudication establishes the **Insured** committed such act or omission;

B.   arising out of, based upon or attributable to any dishonest or fraudulent act or omission or any criminal act or omission by such **Insured**; however, this exclusion shall only apply if a final and non-appealable judgment or adjudication establishes the **Insured** committed such act or omission;

No **Wrongful Act** of any **Insured** shall be imputed to any other **Individual Insured** for purpose of determining the applicability of Exclusions A and B above.

C.   arising out of, based upon or attributable to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, or any cost or expense arising out of any governmental direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any pollutants;

D.   arising out of, based upon or attributable to any bodily injury or property damage in connection with tobacco smoke, asbestos or mold including, without limitation, the use, exposure, presence, existence, detection, removal, elimination or avoidance of tobacco smoke, asbestos or mold to any persons and in any environment, building or structure;

E.   arising out of, based upon or attributable to the radioactive, toxic, or explosive properties of nuclear material which includes, but is not limited to, Source Material, Special Nuclear Material and Byproduct Material as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto and any similar provisions of any federal, state or local statutory or common law;

F.   arising out of, based upon or attributable to:

   1.   any litigation or demand against an **Insured** pending on or before the respective Prior and Pending Date set forth in Item 5 of the Declarations Page, or the same or essentially the same facts as alleged in such prior litigation; or

   2.   any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy of insurance prior to inception of this Policy; or

   3.   any **Wrongful Act**, fact, circumstance or situation of which, as of the respective Prior and Pending Date set forth in Item 5 of the Declarations Page, the **Insured** had knowledge and from which the **Insured** could reasonably expect a **Claim** to arise.

PI-PRD-2 (09/02)

G. arising out of, based upon or attributable to the insolvency, conservatorship, receivership, bankruptcy or liquidation of any bank, banking firm, broker, dealer, investment company, investment banker, insurance company, or other entity of a similar nature; or the failure to pay or suspension of payment by any such entity;

H. to the extent such **Loss** constitutes **Defense Costs** in a **Claim** directly or indirectly by, on behalf of, or for the benefit of any insurance carrier or bond carrier of the **Insured** or any affiliate of the **Insured**, regardless of in whose name such **Claim** is actually made;

I. for any actual or alleged bodily injury, mental anguish, emotional distress, sickness, disease or death of any person, or damage to or destruction of any tangible property including **Loss** of use thereof; however, this exclusion shall not apply to mental anguish or emotional distress under Part 2 (Employment Practices Liability Insurance);

J. brought or maintained by or on behalf of, or in the right of, the **Private Company** except a derivative action **Claim** by any person who is not a past or present director, officer, governor, trustee, equivalent executive, management committee member, or member of the Board of Managers of the **Private Company** and who brings or maintains the **Claim** without the solicitation, assistance or participation of such persons; provided, however that this exclusion shall not apply to a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator or rehabilitator for the **Private Company**, or any assignee of such receiver, trustee, examiner, conservator, liquidator or rehabilitator;

K. brought or maintained by any **Individual Insured** except:

   1. any **Claim** in the form of a cross claim, third party claim or other claim for contribution or indemnity by an **Individual Insured** which is part of or results directly from a **Claim** which is not otherwise excluded by this Policy;

   2. a **Claim** for an **Employment Practice Act** or a **Fiduciary Liability Act**;

   3. a **Claim** for a **D&O Wrongful Act** brought or maintained by an **Employee**(s) who is not a past or present director, officer, governor, trustee, equivalent executive, management committee member, or member of the Board of Managers of the **Private Company** if such **Claim** for a **D&O Wrongful Act** is brought and maintained by such **Employee** without the assistance, participation or solicitation of any such persons.

L. for a **Wrongful Act** committed or attempted by a **Subsidiary**, **Benefit Plan** or an **Individual Insured** of a **Subsidiary** or **Benefit Plan** before such entity or plan became an **Insured** or after the entity or plan ceased to be an **Insured**;

M. for service by the **Individual Insured** in any position or capacity in any entity other than the **Private Company**, a **Benefit Plan** or an **Outside Entity**, even if the **Private Company** directed or requested the **Individual Insured** to serve in such other position or capacity;

N. arising out of, based upon or attributable to a **Public Offering** or any violation of the Securities and Exchange Act of 1933, Securities and Exchange Act of 1934, Investment Act of 1940, any state "Blue Sky" securities law, or any other federal, state or local securities law or any amendments thereto or any rules or regulations promulgated thereunder or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase, or the actual sale or purchase of securities; provided, however that this exclusion shall not apply:

   1. to any **Private Offering**, subject to terms and conditions of Part 6, Section XVII;

Page 12 of 19

PI-PRD-2 (09/02)

2.  to any **Claim** made by any securityholder of the **Private Company** for the failure of the **Insured** to undertake or complete a **Public Offering**.

<div align="center">

**PART 6**
**COMMON POLICY CONDITIONS**

</div>

I.  LIMITS OF LIABILITY

Regardless of the number of **Insureds** involved, **Claims** made, the **Underwriter's** liability under the Policy is limited as follows:

A.  With respect to coverage under Part 1 of this Policy, the **Underwriter's** maximum aggregate liability under Part 1 for all **Loss** on account of all **Claims** made during the **Policy Period**, whether covered under Insuring Agreement A, B or C, shall be the Limit of Liability for each **Policy Period** as set forth in Item 3.(A) of the Declarations.

B.  With respect to coverage under Part 2 and Part 3 of this Policy, the **Underwriter's** maximum aggregate liability for all **Loss** on account of all **Claims** made during the **Policy Period** shall be the Limit of Liability for each **Policy Period** as set forth in Item 3.(B) and 3.(C), respectively, of the Declarations.

C.  The **Underwriter's** maximum aggregate liability for all **Loss** on account of all **Claims** first made during the **Policy Period** under all purchased Parts, combined, shall be the Aggregate Limit of Liability set forth in Item 3.(D) of the Declarations. The Limits of Liability set forth in Item 3.(A), 3.(B), and 3.(C), are sub-limits that do not increase the **Underwriter's** maximum liability as set forth in Item 3.(D).

D.  **Defense Costs** are part of the Limit of Liability specified in Item 3. of the Declarations. Payment by the **Underwriter** of **Defense Costs** incurred on account of any **Claim** shall serve to reduce the Limit of Liability stated in Item 3. of the Declarations. The **Underwriter** is not obligated to pay any **Loss** after the applicable Limit of Liability has been exhausted.

E.  The Limit of Liability for any Extension Period, if applicable, shall be a part of and not in addition to the respective Limit of Liability applicable to the **Policy Period**.

II. RETENTION CLAUSE

The **Underwriter** shall only be liable for that portion of **Loss** arising from each **Claim** which is in excess of the respective Retention stated in Item 4. of the Declarations Page. Such Retention shall be borne by the **Insured**, uninsured and at their own risk, provided no Retention shall apply to **Loss** incurred by **Individual Insureds** for which the **Private Company** is not permitted or required to indemnify the **Individual Insured** or is financially unable to do so. A single Retention shall apply to **Loss** arising from all **Claims** alleging **Interrelated Wrongful Acts**.

III. DEFENSE AND SETTLEMENT

A.  The **Insured** and not the Underwriter shall have the responsibility to defend any **Claim**. However, the **Insured** shall have the right, as soon as practicable after a **Claim** is first made, to tender the defense of such **Claim** to the **Underwriter**. Upon written notice to the **Underwriter** of such election by the **Insured** and subject to all of the provisions of this Section III. DEFENSE AND SETTLEMENT, the **Underwriter** shall undertake and manage the defense of such **Claim**, even if such **Claim** is groundless, false or fraudulent.

<div align="center">

Page 13 of 19

</div>

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-PRD-2 (09/02)

B.    If the **Insured** is defending a **Claim** pursuant to A. above, the **Underwriter** shall advance **Defense Costs** prior to the final disposition of a **Claim**. The **Insured** shall elect counsel of its choice subject to approval by the **Underwriter**, such approval shall not be unreasonably withheld. The **Underwriter** shall not be liable for **Loss** admitted by the **Insured** without the **Underwriter's** prior written consent, which shall not be unreasonably withheld. The **Underwriter** reserves the right, but not the duty, at any time to take over control of the defense of any **Claim** and with the consent of the **Insured**, settle any **Claim** as the **Underwriter** deems expedient.

C.    The **Underwriter** is not obligated to pay any **Loss** after the Limit of Liability has been exhausted.

D.    In the event that a **Claim** is made against the **Insured**, the **Insured** shall take reasonable measures to protect their interests.

E.    If more than one **Insured** is involved in a **Claim,** the **Underwriter** may, in its sole discretion, appoint separate counsel for one or more of such **Insureds** if there is a material (actual or potential) conflict of interest among any such **Insureds.**

F.    The **Insured** agrees to provide the **Underwriter** with all information, assistance and cooperation which the **Underwriter** reasonably requests and agree that in the event of a **Claim** the **Insured** will do nothing that may prejudice the **Underwriter's** position or its potential rights of recovery.

G.    If with respect to any **Claim** the **Insured** refuses to consent to the first settlement acceptable to the claimant which the **Underwriter** recommends to the **Insured** in writing, and elects to further contest the **Claim**, then the **Underwriter's** liability for such **Claim** shall not exceed the amount for which the **Claim** could have been settled, including **Defense Costs** incurred, up to the date of such refusal, plus 50% of covered **Loss** in excess of such first settlement amount, it being a condition of this insurance that the remaining 50% of such **Loss** excess of the first settlement amount shall be borne by the **Insured** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the settlement amount exceeds the Retention amount stated in Item 4. of the Declarations Page.

In addition, if the **Underwriter** recommends a first settlement of a **Claim** within the Policy's applicable Limit of Liability that is acceptable to the claimant, and the **Insured** consents to such settlement, then the **Insured's** applicable Retention for such **Claim** shall be retroactively reduced by ten percent (10%). It shall be a condition to such reduction that the **Insured** must consent to the first settlement amount within thirty (30) days after the date the **Underwriter** recommends to the **Insured** such first settlement amount, or in the case of a first settlement amount which arises from a first settlement offer by the claimant, then within the time permitted by the claimant to accept such first settlement offer, but in all events no later than thirty (30) days after the **Underwriter** recommends to the **Insured** such first settlement offer. If the **Insured** does not consent to the first settlement within the time prescribed above, the applicable Retention amount shall remain the respective amount set forth in Item 4. of the Declarations Page, even if consent is given to a subsequent settlement.

H.    ORDER OF PAYMENTS

In the event of **Loss** arising from one or more **Claims** for which payment is otherwise due under Part 1 (Directors and Officers Liability Insurance) but which **Loss** in the aggregate exceeds the remaining available Limit of Liability for Part 1(Directors and Officers Liability Insurance), the **Underwriter** shall:

Page 14 of 19

PI-PRD-2 (09/02)

1. first pay such **Loss** for which coverage is provided under Insuring Agreement A (INDIVIDUAL LIABILITY COVERAGE); then

2. with respect to whatever remaining amount of the Limit of Liability after payment of 1. above, pay such **Loss** for which coverage is provided under any other Insuring Agreement of Part 1 (Directors and Officers Liability Insurance).

IV.   NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the **Underwriter** at the following address:

Philadelphia Insurance Companies
One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
Attention: Claims Department

The date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. Any notice to the **Underwriter** shall specify the Part(s) of this Policy under which the notice is being given and shall be treated as notice only under such specified Part(s).

A.   In the event that a **Claim** is made against the **Insured**, the **Insured** shall, as a condition precedent to the obligations of the **Underwriter** under this Policy, give written notice to the **Underwriter** as soon as practicable after any of the directors, officers, governors, trustees, management committee members, or members of the Board of Members first become aware of such **Claim**, but, not later than 60 days after the expiration date of this Policy, Extension Period, or **Run-Off Policy**, if applicable.

B.   If during this **Policy Period** an **Insured** first becomes aware of any circumstances which may subsequently give rise to a **Claim** being made against any **Insured** for a specific alleged **Wrongful Act**, and as soon as practicable thereafter, but before the expiration or cancellation of this Policy, gives written notice to the **Underwriter** of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to the **Wrongful Act**, dates and persons involved, then any **Claim** which is subsequently made against the **Insured** arising out of such **Wrongful Act** will be considered made during this **Policy Period**.

C.   All **Loss** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed one **Loss** on account of a one **Claim**. Such **Claim** shall be deemed to be first made when the earliest of such **Claims** was first made or first deemed made pursuant to Clause B. hereinabove.

V.   CANCELLATION AND NON-RENEWAL

A.   The **Underwriter** may not cancel this Policy except for failure to pay the premium when due, in which case the **Underwriter** shall mail written notice of cancellation to the **Private Company** at least ten (10) days prior to the effective date of cancellation.

B.   The **Private Company** may cancel this Policy for itself and all other **Insureds** by surrender of this Policy to the **Underwriter** or any of its authorized agents or by mailing to the **Underwriter** written notice stating when thereafter the cancellation shall be effective. If the **Private Company** cancels, earned premium shall be computed in accordance with the customary short rate table procedure.

Page 15 of 19

PI-PRD-2 (09/02)

C.  The **Underwriter** shall not be required to renew this Policy; however, written notice of the **Underwriter's** intent to non-renew this Policy shall be mailed to the **Private Company** at least sixty (60) days prior to expiration of the **Policy Period**.

VI.  REPRESENTATIONS AND SEVERABILITY

A.  The **Insured** represent that the particulars and statements contained in the **Application** are true and agree that (1) those particulars and statements are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy; (2) those particulars and statements are material to the acceptance of the risk assumed by the **Underwriter** under this Policy; and (3) this Policy is issued in reliance upon the truth of such representations.

B.  Except for material facts or circumstances known to the **Individual Insured** signing the **Application,** no statement in the **Application** or knowledge or information possessed by any **Insured** shall be imputed to any other **Individual Insured** for the purpose of determining the availability of coverage.

VII.  SUBROGATION

In the event of any payment under this Policy, the **Underwriter** shall be subrogated to the extent of such payment to all of the **Insured's** rights of recovery.  The **Insured** shall execute and deliver such instruments and papers and do whatever else is necessary to secure such rights and shall do nothing to prejudice or compromise such rights without the **Underwriter's** express written consent.

VIII.  EXTENSION PERIOD

A.  If the **Underwriter** refuses to renew this Policy the following will apply:

For no additional premium, the **Underwriter** will provide a 60 day extension of the coverage granted under Part 1, 2, and 3 of this Policy for any **Claim** first made against the **Insured** during the 60 days after the non-renewal date, but only with respect to any **Wrongful Act** committed before such non-renewal date and otherwise covered by this Policy (the "Automatic Extension").  This Automatic Extension shall not apply if the **Insured** has purchased similar insurance from the **Underwriter** or any other insurer covering such **Claim.**

Upon expiration of the Automatic Extension, the **Private Company** shall have the right, upon payment of an additional 50%, 100%, 150% of this Policy's annual premium to an extension of the coverage granted by this Policy for any **Claim** first made against the **Insured** during the twelve (12) months, twenty-four (24) months, or thirty-six (36) months, respectively, after the expiration of the Automatic Extension, but only with respect to **Wrongful Acts** committed before the non-renewal date and otherwise covered by this

Policy (the "Extension Period"); provided however, that the request for this Extension Period must be made to the **Underwriter** in writing and payment of the additional premium must be made prior to the expiration of the Automatic Extension. In the event similar insurance is in force covering any **Claims** first made during this Extension Period, coverage provided by this Policy shall be excess over any such other insurance.

B.  If the **Private Company** cancels or does not renew this Policy or the **Underwriter** cancels for nonpayment of premium the following will apply:

PI-PRD-2 (09/02)

The **Private Company** shall have the right, upon payment of an additional 50%, 100%, or 150% of this Policy's annual premium, to an extension of the cover granted under Parts 1, 2, and 3 of this Policy for any **Claim** first made against the **Insured** during the twelve (12) months, twenty-four (24) months, or thirty-six (36) months, respectively, after the date of such cancellation or non-renewal, but only with respect to any **Wrongful Acts** committed before the date of such cancellation or non-renewal and otherwise covered by this Policy (the "Extension Period"); provided however, that the request for this Extension Period must be made to the **Underwriter** in writing and payment of the additional premium must be made within 60 days following the date of such cancellation or non-renewal. In the event similar insurance is in force covering any **Claims** first made during this Extension Period, coverage provided by this Policy shall be excess over any such other insurance.

If the **Underwriter** cancels for the non-payment of premium, the **Parent Organization** may purchase the Extension Period only after any earned premium due to the **Underwriter** is paid within 10 days after the date of cancellation or Policy expiration, whichever comes first.

C.   All premium paid with respect to an Extension Period shall be deemed fully earned as of the first day of the Extension Period. For the purpose of this Section VIII, any change in premium or terms on renewal shall not constitute a refusal to renew.

IX.   CHANGES

Except by written endorsement issued to the **Insured** forming a part of this Policy, nothing shall effect a change in or addition to the provisions of this Policy. Furthermore, under no circumstances shall the **Underwriter** be deemed to have waived or be estopped from asserting any right under this Policy, at law, or in equity respecting any **Claim** except as stated in writing by the **Underwriter's** authorized Claims Department representative.

X.   ASSIGNMENT

Assignment of interest in this Policy shall not bind the **Underwriter** until the **Underwriter's** consent is endorsed hereon.

XI.   AUTHORIZATION CLAUSE AND NOTICES

By acceptance of this Policy, the **Insured** agrees that the **Private Company** shall act on behalf of any **Insured** with respect to the giving and receiving of any return premiums and notices that may become due under this Policy. Notice to the **Private Company** shall be directed to the individual named in the **Application**, or such other person as shall be designated by the **Private Company** in writing. Such notice shall be deemed to be notice to any **Insured**. The **Private Company** shall be the agent of any **Insured** to effect changes in this Policy.

XII.   OTHER INSURANCE

If the **Insured** has any other insurance for **Claims** covered hereunder, the insurance provided by this Policy shall be excess over such other insurance, regardless of whether such other insurance is collectible or designated as primary or excess.

In event of a **Claim** against the **Insured** arising out of serving in his/her capacity as a director, officer, governor or trustee of an **Outside Entity** or an **Employment Practices Act** against or committed by a leased **Employee**, coverage as is afforded by this policy shall be specifically excess of indemnification provided by such **Outside Entity** or such leasing company and any insurance provided to such **Outside Entity** or such leasing company.

PI-PRD-2 (09/02)

XIII.   ACCEPTANCE

This Policy embodies all agreements existing between the parties hereunder or any of their agents relating to this insurance

XIV.   ACTION AGAINST THE UNDERWRITER; ARBITRATION

A.   No person or entity shall have any right under this Policy to join the **Underwriter** as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the **Underwriter** be impleaded by the **Insured** or their legal representatives. Bankruptcy or insolvency of the **Insured** or their successors in interest shall not relieve the **Underwriter** of its obligations hereunder.

B.   Any dispute relating to this Policy or the alleged breach, termination or invalidity thereof, which cannot be resolved through negotiations between any **Insured** and the **Underwriter**, shall be submitted to binding arbitration. The rules of the American Arbitration Association shall apply except with the respect to the selection of the arbitration panel. The panel shall consist of one arbitrator selected by such **Insured**, one arbitrator selected by the **Underwriter** and a third independent arbitrator selected by the first two arbitrators.

XV.   CHANGE IN OWNERSHIP OR CONTROL

A.   If after the inception of the **Policy Period** a **Transaction** occurs then coverage under Parts 1, 2, and 3 of this Policy shall remain in force, but only for **Claims** made during the **Policy Period** for **Wrongful Acts** committed prior to the effective date of the **Transaction** and only if the following conditions are met:

1.   the **Insured** provides written notice of the **Transaction** (other than **Public Offering**) to the **Underwriter** as soon as practicable but no later than 45 days of the effective date of such **Transaction**; and

2.   the **Insured** provides the **Underwriter** with such information as the **Underwriter** deems necessary; and

3.   in the case of a **Public Offering**, the **Insured** provides written notice of the **Public Offering** to the **Underwriter** no later than 30 days prior to the filing of any registration statement with the United States Securities and Exchange Commission.  The **Underwriter** shall provide a quotation for the **Public Offering**.

If **Insured** fails to meet conditions 1., 2., & 3. above, coverage under this Policy shall cease as of the effective date of the **Transaction** and the **Underwriter** shall return any unearned premium on a pro-rata basis.

The **Insured** shall have the right, within 45 days after the **Transaction** (or such date the **Underwriter** may agree by endorsement), to request an offer from the **Underwriter** for a **Run-Off Policy** for a term up to 6 years.  If elected, such **Run-Off Policy** shall be conditioned upon payment during the **Policy Period** by the **Insured** of any additional premium, which shall be fully earned at inception, and shall be subject to any additional terms and conditions required by the **Underwriter**.

XVI.   TERRITORY AND VALUATION

This Policy shall extend to any **Wrongful Act** committed anywhere in the world.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-PRD-2 (09/02)

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

XVII.   COVERAGE FOR A PRIVATE OFFERING

The **Insured** shall give the **Underwriter** written notice of a **Private Offering**, together with full details and as soon as practicable, but not later than 60 days after the effective date of such **Private Offering**. However, any **Claim** arising out of, based upon or attributable to a **Private Offering** shall be subject to the Private Offering Retention stated in Item 4. of the Declarations Page. Such Private Offering Retention shall be borne by the **Insureds**, uninsured and at their own risk, except that a Private Offering Retention shall not apply to **Loss** incurred by **Individual Insureds** for which the **Private Company** is not permitted or required to indemnify the **Individual Insured** or is financially unable to do so.

XVIII.   TWO OR MORE COVERAGE PARTS OR POLICIES ISSUED BY THE UNDERWRITER.

It is the **Underwriter's** stated intention that the various coverage parts or policies issued to the **Private Company** by the **Underwriter**, or any affiliated company, do not provide any duplication or overlap of coverage for the same **Claim**. Notwithstanding the foregoing, if more than one coverage part applies to the same **Wrongful Act** or **Interrelated Wrongful Acts**, then the maximum Limit of Liability under all such coverage parts combined shall not exceed the highest applicable Limit of Liability under any one coverage part. Notwithstanding the other insurance provision, if this Policy and any other policy issued to the **Private Company** by the **Underwriter**, or any affiliated company, apply to the same **Wrongful Act**, professional incident, occurrence, offense, accident or **Loss**, then the maximum Limit of Liability under all such policies combined shall not exceed the highest applicable Limit of Liability under any one policy.

XIX.   ALLOCATION

If both **Loss** covered by this Policy and **Loss** not covered by this Policy are incurred either because a **Claim** includes both covered and uncovered matters, or because a **Claim** is made against both the **Individual Insured** and/or the **Private Company**, and others, the **Insured** and the **Underwriter** shall use their best efforts to agree upon a fair and proper allocation of such amount between covered **Loss** and uncovered loss. Any such allocation shall be based upon the relative legal exposures of the parties to covered and uncovered matters.

PI-PRD-22 (04/02)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PAST ACTS EXCLUSION

This endorsement modifies and is subject to the insurance provided under the following:

PRIVATE COMPANY PROTECTION PLUS

This Policy is amended as follows:

With respect to coverage under Part(s)          2          , the **Underwriter** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of, based upon or attributable to any **Wrongful Act** committed on or before 06/12/2012 .

All other terms and conditions of this Policy remain unchanged

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-PRD-58 (10/19)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ABUSE EXCLUSION WITH WORKPLACE HARASSMENT CARVEBACK

This endorsement modifies insurance provided under the following:

PRIVATE COMPANY PROTECTION PLUS

The Policy is amended as follows:

1. The Underwriter shall not be liable to make any payment for **Loss** in connection with any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the actual or alleged **Abusive Acts** of any person(s).

2. The Underwriter shall not be liable to make any payment for **Loss** in connection with any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the actual and/or alleged negligent hiring, retention, employment, assignment, placement, training, supervision, oversight, evaluation, assessment, discipline and/or investigation of any person(s) who actually or allegedly committed **Abusive Acts.**

For purposes of this Exclusion, **Abusive Acts** means any actual or alleged:

   a) Sexual abuse;
   b) Sexual harassment ;
   c) Sexual assault;
   d) Sexual molestation;
   e) Sexual exploitation;
   f) Physical abuse, harm, assault or battery; or
   g) Psychological or mental abuse or neglect

However, paragraphs 1. and 2. above of this Exclusion shall not apply to the following:

1. **Claims** involving actual and/or alleged acts of harassment committed against an **Individual Insured** occurring in the workplace or in the course of employment or service with the **Private Company.**

2. **Claims** involving an **Insured's** actual and/or alleged acts of harassment against a non-**Insured** person(s) in the course, scope or process of their application or interview for employment or service with the **Private Company.**

All other terms and conditions remain the same.

PI-PRD-58 (10/19)

PHILADELPHIA INDEMNITY INSURANCE COMPANY
Page 1 of 1

PI-PRD-75 (12/03)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF EXCLUSIONS

This endorsement modifies insurance provided under the following:

PRIVATE COMPANY PROTECTION PLUS

Part 1 (**DIRECTORS & OFFICERS LIABILITY INSURANCE**), section III (EXCLUSIONS), item E. is replaced by:

E. for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation**; provided, further, however, there is no coverage provided under this policy for any **Claim** related to, arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured(s)** to pay **Earned Wages** (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**, including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay **Earned Wages**, or (ii) any **Claim** seeking **Earned Wages** because any **Employee(s)** or purported **Employee(s)** were improperly classified or mislabeled as "exempt."

Part 2 (**EMPLOYMENT PRACTICES LIABILITY INSURANCE**), section III (EXCLUSIONS), item B. is replaced by:

B. for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation**; provided, further, however, there is no coverage provided under this policy for any **Claim** related to, arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured(s)** to pay **Earned Wages** (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**, including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay **Earned Wages**, or (ii) any **Claim** seeking **Earned Wages** because any **Employee(s)** or purported **Employee(s)** were improperly classified or mislabeled as "exempt."

Part 4 (**COMMON POLICY DEFINITIONS**), is supplemented by:

**Earned Wages** means wages or overtime pay for services rendered.

Page 1 of 1

PI-PRD-77 (01/04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF CANCELLATION PROVISION

This endorsement modifies insurance provided under the following:

PRIVATE COMPANY PROTECTION PLUS

Part 6 Common Policy Conditions, section V. Cancellation and Non-Renewal, item B. is amended to include the following:

If, during the policy period, the **Underwriter's** *A.M. Best* rating is downgraded, and the **Private Company** elects to cancel the policy, then the earned premium will be calculated on a pro-rata basis.

All other terms and conditions of this Policy remain unchanged.

Page 1 of 1

PI-PRD 126 (04/19)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PRIVATE COMPANY ENHANCEMENT ENDORSEMENT

This endorsement modifies and is subject to the insurance provided under the following:

PRIVATE COMPANY PROTECTION PLUS

### 1. AMENDMENTS TO PART 1-DIRECTORS & OFFICERS LIABILITY INSURANCE

THE FOLLOWING AMENDS THE COVERAGE PROVIDED BY YOUR POLICY UNDER PART 1 DIRECTORS & OFFICERS LIABILITY INSURANCE. THIS SECTION ONLY APPLIES IF A LIMIT OF LIABILITY IS SCHEDULED ON THE DECLARATIONS PAGE FOR DIRECTORS & OFFICERS LIABILITY.

#### A. SECURITYHOLDER DERIVATIVE DEMAND EVALUATION COVERAGE

**PART 1. Directors & Officers Liability Insurance, I. Insuring Agreements** is amended to include:

D.    SECURITYHOLDER DERIVATIVE DEMAND EVALUATION COVERAGE

The **Underwriter** will pay on behalf of the **Private Company, Securityholder Derivative Demand Evaluation Costs** incurred with the **Underwriter's** prior written consent which the **Private Company** becomes legally obligated to pay on account of any securityholder derivative demand that is first made during the **Policy Period**, (or if applicable, during the Extended Reporting Period), for **D&O Wrongful Act** by an **Executive** before or during the **Policy Period** in an aggregate amount not to exceed $500,000 per **Policy Period** which amount is in addition to, and not part of, the Aggregate Limit of Liability set forth in Item 3. (D) of the Declarations and no Retention will apply to such amount.

#### B. ADDITIONAL LIMIT OF LIABILITY FOR EXECUTIVES

1.    The **Underwriter** shall provide an additional Limit of Liability under **Part 1** Insuring Agreement **A. INDIVIDUAL LIABILITY COVERAGE** in an amount not to exceed $1,000,000, which amount is in addition to and not part of the Limit of Liability set forth in ITEM 2. (A) of the Declarations. This additional Limit of Liability applies solely to **Loss** resulting from any **Claim** against any **Executive** and arising from a **D&O Wrongful Act** to which Insuring Agreement A. is applicable

For A & B above, the following is added to **Part 1, II. Definitions**

C.    **Executive** means any natural person who is or will be:

1. a duly elected or appointed director, officer, member of the Advisory Board or in-house general counsel of any **Private Company** incorporated in the United States of America.

Page 1 of 14
@2019 Philadelphia Consolidated Holding Corp.

PI-PRD-126 (04/19)

PI-PRD 126 (04/19)

2. a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; (2) member of the Advisory Board; or (3) in-house counsel, of any **Private Company** incorporated as a limited liability company in the United States of America; or

3. a holder of an equivalent position to those described in A. and B. above in any **Private Company** incorporated, formed or organized anywhere in the world.

D. **Securityholder Derivative Demand Evaluation Costs** means reasonable costs, fees and expenses (other than regular or overtime wages, salaries, fees, or benefits of the directors, officers or employees of a **Private Company**) incurred by a **Private Company** (including its Board of Directors or any committee of its Board of Directors) solely with respect to an evaluation required to determine whether it is in the best interest of the **Private Company** to prosecute the claims alleged in a securityholder derivative demand and prior to any **Claim** first made in connection with such securityholder derivative demand. In no event shall **Securityholder Derivative Demand Evaluation Costs** include any costs, fees or expenses incurred in a **Claim**.

## C. AMENDMENT TO THE DEFINITION OF WRONGFUL ACT

**SECTION II, DEFINITIONS- A. D&O Wrongful Act,** paragraphs 1. and 3.a. are amended as follows:

3. act, error, omission, misstatement, misleading statement, neglect, or breach of duty committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured** or any other matter claimed against any **Individual Insured** solely by reason of his or her status as an **Individual Insured** ; or

3. a.  if such service is at the request or direction of the **Private Company**; and

## D. AMENDMENT OF THE DEFINITION OF OUTSIDE ENTITY

**SECTION II, DEFINITIONS B. Outside Entity,** Item 1. is deleted in its entirety and replaced by the following:

1. any not-for-profit entity, community chest, fund or foundation that is exempt from federal income tax as an entity described in Section 501(c)(3), 501(c)(4), 501(c)(7) or 501(c)(10) of the Internal Revenue Code of 1986, as amended, or any other entity organized for religious or charitable purpose under any non-profit organization act or statute; or

## E. AMENDMENT TO EXCLUSIONS A. AND F. CARVEBACK COVERAGE FOR ANY SECURITY HOLDER OF THE PRIVATE COMPANY

**SECTION III, EXCLUSIONS-** A. and F. are amended to include the following:

A. Exclusion A. shall not apply to any **Claim** brought by any security holder of the **Private Company** whether directly or derivatively.

F. Exclusion F. shall not apply to any **Claim** brought by any security holder of the **Private Company** whether directly or derivatively.

## F. SECTION IV, PRESUMPTIVE INDEMNIFICATION. is deleted in its entirety.

@2019 Philadelphia Consolidated Holding Corp.

PI-PRD-126 (04/19)

PI-PRD 126 (04/19)

## 2. <u>AMENDMENT TO PART 2- EMPLOYMENT PRACTICES LIABILITY INSURANCE</u>

THE FOLLOWING AMENDS THE COVERAGE PROVIDED BY YOUR POLICY UNDER PART 2-EMPLOYMENT PRACTICES LIABILITY INSURANCE. THIS SECTION ONLY APPLIES IF A LIMIT OF LIABILITY IS SCHEDULED ON THE DECLARATIONS PAGE FOR EMPLOYMENT PRACTICES LIABILITY.

### A. AMENDED DEFINITION OF EMPLOYMENT PRACTICE ACT

SECTION II. DEFINITIONS, A. **Employment Practices Act** is deleted in its entirety and replaced with the following:

**Employment Practice Act** means any actual or alleged:

1. wrongful dismissal, discharge or termination of employment;
2. breach of a written or oral employment contract or implied employment contract;
3. employment related misrepresentation;
4. wrongful failure to promote;
5. violation of employment discrimination laws (including harassment);
6. wrongful deprivation of a career opportunity;
7. employment related wrongful discipline;
8. negligent employee evaluation, training or supervision;
9. employment related invasion of privacy;
10. employment related defamation (including libel and slander);
11. workplace harassment of any kind, including sexual;
12. hostile work environment;
13. constructive discharge of employment;
14. employment related **Retaliation**
15. employment related humiliation;
16. wrongful demotion;
17. negligent reassignment;
18. negligent hiring or retention;
19. failure to grant tenure;
20. failure to provide or enforce consistent employment policies and procedures;
21. failure to employ;
22. workplace bullying;
23. violation of any federal, state or local civil rights laws;
24. acts described in 1. through 23. above, arising from the use of the **Private Company's** internet, e-mail, telecommunications or similar systems, including communications on social media networks and committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured** or by the **Private Company**.

Solely with respect to any **Claim** brought by or on behalf of any **Third Party**, **Employment Practice Act** means any actual or alleged wrongful failure to employ, discrimination, harassment or violation of such **Third Party's** civil rights in relation to such wrongful failure to employ, discrimination or harassment, whether direct, indirect, or unintentional, committed by an **Individual Insured** in his/her capacity as an **Individual Insured** or by the **Private Company**.

PI-PRD-126 (04/19)

PI-PRD 126 (04/19)

**B. AMENDED DEFINITION OF THIRD PARTY**

SECTION II. DEFINITIONS, **C. Third Party** is deleted in its entirety and replaced with the following:

C.  **Third Party** means any natural person who is not an **Employee** of the **Private Company**.

### 3. AMENDMENT TO PART 3- FIDUCIARY LIABILITY INSURANCE

**THE FOLLOWING AMENDS THE COVERAGE PROVIDED BY YOUR POLICY UNDER PART 3-FIDUCIARY LIABILITY INSURANCE. THIS SECTION ONLY APPLIES IF A LIMIT OF LIABILITY IS SCHEDULED ON THE DECLARATIONS PAGE FOR FIDCUIARY LIABILITY.**

**A. BROADENED FIDUCIARY LIABILITY INSURING AGREEMENT**

SECTION, I. INSURING AGREEMENT is deleted and replaced with the following:

a.  The **Underwriter** will pay on behalf of the **Insured**, **Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period), for a **Fiduciary Liability Act**. This coverage will not apply any **Claims** arising out of any alleged violation of Title II of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and amendments to such law or regulations promulgated under such law concerning privacy of health information or arising out of **Managed Care** liability.

In the event of the **Insured** enters into a voluntary settlement program with the Internal Revenue Service (or any similar state or federal agency), the **Private Company,** following prior notice provided by the **Private Company** to the **Underwriter,** during the **Policy Period** (or any applicable Extended Reporting Period), of the **Private Company's** intent to enter into said settlement program, will pay on behalf of the **Insureds** any fees, penalties or sanctions imposed by law under said settlement program for which **Insured** is legally liable as a result of a **Fiduciary Liability Act** in an amount not to exceed $250,000. Such amount will be part of and not in addition to the Limit of Liability, as set forth in Item 3(A) of the Declarations. In no case, however, will the **Underwriter** pay for any costs of corrections.

b.  The **Underwriter** will pay on behalf of the **Insured**, **Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period), for a **Fiduciary Liability Act** arising from any alleged violation of Title II of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and amendments to such law or regulations promulgated under such law concerning privacy of health information. Coverage under this paragraph is subject to a sublimit of liability of $250,000. Said sublimit will be part of and not in addition to the Limit of Liability, as set forth in Item 3(A) of the Declarations.

c.  The **Underwriter** will pay on behalf of the **Insured**, **Defense Costs** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period) for a **Fiduciary Liability Act** in connection with **Managed Care** liability solely as regards any **Managed Care** plans sponsored solely by the **Private Company** and insured and administered by an outside insurance carrier. Coverage under this paragraph is subject to a sublimit of liability of $250,000. Said sublimit will be part of and not in addition to the Limit of Liability, as set forth in Item 3(A) of the Declarations.

PI-PRD 126 (04/19)

For the purposes of this coverage, **Managed Care** will mean any plan providing comprehensive medical care to plan members on the basis of a prepaid contract and which by virtue thereof limits the choices of medical care and service providers available to plan members.

**B. AMENDMENT OF THE DEFINITION OF BENEFIT PLAN**

SECTION, II. DEFINITIONS, B. **BENEFIT PLAN**, is deleted in its entirety and replaced by the following:

B. **Benefit Plan** means:

1. any **Welfare Benefit Plan** which was, is now or becomes sponsored by the **Private Company** solely for the benefit of the **Employees** of the **Private Company**;

2. any **Pension Benefit Plan** which was, on or prior to the effective date of this Policy, sponsored by the **Private Company** solely for the benefit of the **Employees** of the **Private Company**, provided that coverage was available in respect of such **Pension Benefit Plan** under any policy of which this Policy is a renewal or replacement and such **Pension Benefit Plan** has been reported in writing to the **Underwriter** as part of the **Application**;

3. any **Pension Benefit Plan** created or acquired (through merger, consolidation or otherwise) during the **Policy Period** by the **Insured** solely for the benefit of the **Employees** of the **Private Company**;

4. any government-mandated benefit program for workers compensation, unemployment, social security or disability benefits for **Employees** of the **Private Company**.

However, **Benefit Plan** does not include any multi-employer plan or any employee stock ownership plan unless said plan is added by specific written endorsement to this policy.

Coverage for **Benefit Plans** which are sold, terminated or spun-off during or prior to the **Policy Period** shall apply only with respect to any **Fiduciary Liability Act** occurring prior to the date of such sale or spin-off, or in the case of termination, prior to the final date of asset distribution of such **Benefit Plan**.

**C. AMENDMENT OF THE DEFINITION OF FIDUCIARY LIABILITY INSURANCE TO INCLUDE STATUS PROVISION AND SETTLOR EXTENSION**

SECTION, II. DEFINITIONS, C. **Fiduciary Liability Act** is deleted and replaced by the following:

1. breach by an **Insured** of the responsibilities, obligations or duties imposed upon fiduciaries of any **Benefit Plan** by **ERISA** or any matter claimed against any **Individual Insured** solely by reason of his or her status as an **Individual Insured.**; or

2. negligent act, error or omission by an **Insured** solely in the **Administration** of any **Benefit Plan**.

3. any actual or alleged act, error or omission by an **Insured** in a settlor capacity as respects a **Benefit Plan**.

@2019 Philadelphia Consolidated Holding Corp.

PI-PRD-126 (04/19)

PI-PRD 126 (04/19)

### D. AMENDMENT TO BENEFITS DUE EXCLUSION

SECTION, III. EXCLUSIONS, B. is deleted in its entirety and replaced by the following:

B.   to the extent such **Loss** constitutes benefits due or to become due under a **Benefit Plan** or benefits which would be due under a **Benefit Plan** if its terms complied with all applicable law; however, this exclusion shall not apply to **Defense Costs** or to coverage for settlement and judgment costs for investment loss;

### E. DELETION OF FAILURE TO MAINTAIN INSURANCE EXCLUSION

SECTION, III. EXCLUSIONS C. is deleted in its entirety.

## 4. AMENDMENT TO PART 4 COMMON POLICY DEFINITIONS

### A. AMENDED OF DEFINITION OF APPLICATION

A. **Application,** Items 1 and 2 are deleted in entirety and replaced by the following:

**Application** means the **Application** for this Policy, including any material submitted therewith; and any representation provided to the **Underwriter** in the **Application**(s) within the past 12 months of the effective date of this Policy for which this Policy is a direct or indirect renewal or replacement, all of which will be deemed a part of this Policy as if physically attached hereto.

### B. DEFINITION OF CLAIM BROADENED TO INCLUDE EXTRADITION AND SUBPOENA

C. **Claim** is amended to include the following:

8.   an official request for **Extradition;**

9.   solely when used in reference to the coverage provided by **INSURING AGREEMENT A., INDIVIDUAL LIABILITY COVERAGE,** any service of a subpoena or similar written request upon an **Individual Insured** compelling witness testimony or document production in connection with the matters described Paragraphs B 1. through  B. 8 above or with any equivalent action against a **Private Company** or **Outside Entity,** in which case, the **Underwriter** will pay the **Defense Costs** incurred solely by such **Individual Insured** in responding to such subpoena or written request.

For 8. above, the following is added to **Part 1, II. Definitions**

**Extradition** means means any formal process by which an **Individual Insured** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation, or the execution of a warrant for the arrest of an **Individual Insured** where such execution is an element of **Extradition.**

### C. EXPANDED THE DEFINITION OF EMPLOYEE TO INCLUDE INDEPENDENT CONTRACTORS

@2019 Philadelphia Consolidated Holding Corp.

PI-PRD-126 (04/19)

PI-PRD 126 (04/19)

E. **Employee** is deleted in its entirety and replaced with the following:

**Employee** means any natural person whose labor or service is engaged by and directed by the **Private Company**, including part-time, seasonal, leased and temporary employed persons as well as volunteers, but only while that natural person is acting in his or her capacity as such. **Employee** shall include **Independent Contractor** as defined below.

**Independent Contractor** means an individual who is contracted to perform services for the **Private Company**; provided that such individual shall be deemed an **Employee** only if and to the extent that the **Private Company** provides indemnification to such individual for services rendered as if they were rendered by an actual **Employee** of the **Private Company**, and provided further that such individual(s) have been identified by the **Private Company** to the **Underwriter**. This Policy does not cover any **Loss** which any **Insured** is obligated to pay an **Independent Contractor** for overtime pay, vacation pay, employee benefit, or any compensation for services rendered.

The status of an **Employee** will be determined at the time of the **Wrongful Act.**

D. **DEFINITION OF INDIVIDUAL INSURED BROADENED TO INCLUDE ADVISORY BOARD MEMBERS AND FOREIGN EQUIVALENT**

G. **Individual Insured.** 1. is deleted in its entirety and replaced with the following:

1. any individual who has been, now is or will become a director, officer, governor, trustee, **Employee**, volunteer, management committee member, risk manager, in-house counselor member of the Board of Managers of the **Private Company,** including foreign equivalents, or, solely with respect to **Part 3 (Fiduciary Liability Insurance)**, a director, officer, governor, trustee or **Employee** of any **Benefit Plan** and solely in regard to **Parts 1** and **3, Individual Insured** includes member of an Advisory Board; any past **Employees,** director, officer, governor, trustee, volunteer, management committee member, risk manager, in-house counsel, member of the Board of Managers of the **Private Company** retained as a fiduciary or plan consultant to the **Benefit Plan;** provided that for the purpose of determining the **Private Company's** indemnification obligation to any such consultants, each consultant shall be deemed a director or officer of the **Private Company.** Accordingly, the **Private Company** shall be deemed to have granted indemnification to each consultant to the fullest extent permitted by statutory or common law to the same extent as any director or officer of the **Private Company.**

E. **MODIFICATION OF SPOUSAL EXTENSION**

G. **Individual Insured** 2, is deleted and replaced with the following:

2. the lawful spouse or **Domestic Partner** of a director, officer, governor, trustee, or equivalent executive of the **Private Company**, but only for actual or alleged **Wrongful Acts** of such person for which such spouse may be liable as the spouse of such person. **Domestic Partner** means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by the **Private Company;**

F. **AMENDED DEFINITION OF LOSS**

PI-PRD 126 (04/19)

**J. Loss** is deleted in its entirety and replaced by the following:

**J. Loss** means:

1.      **Damages**;

2.      **Defense Costs**;

However, **Loss** does not include:

1. fines or penalties imposed by law except fines and penalties assessed against an **Insured** pursuant to 15 U.S.C. 78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act); provided that such violation is neither intentional or willful and such fines and penalties are insurable under the law of jurisdiction in which such fines or penalties are assessed; and solely with respect to Part 3 (Fiduciary Liability Insurance) **Loss** includes:

   a. fines or penalties imposed under Section 502 (i) and (l) of ERISA;
   b. civil money penalties imposed upon an **Insured** for such **Insured's** violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended;
   c. civil fines and penalties imposed upon an **Insured** for violations of the Pension Protection Act of 2006 ("PPA ");
   d. civil fines and penalties imposed upon an **Insured** as a fiduciary under Section 502(c) of ERISA, as amended (including, any amendments pursuant to Section 507 of Title V of the Pension Protection Act of 2006);
   e. civil fines and penalties imposed upon an **Insured** for violation of the Patient Protection and Affordable Care Act ("PPACA") and the Health and Education Reconciliation Act of 2010, as amended, and any rules or regulations promulgated thereunder;
   f. with respect to covered judgments, the fifteen percent (15%) or less tax penalty imposed upon an **Insured** under Section 4975 of the Internal Revenue Code of 1986;
   g. Provided that with regards to the above items b. through f., the **Underwriter's** maximum aggregate limit of liability for all such fines and penalties on account of all **Claims** first made during the **Policy Period** shall be $250,000, which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 3(C) of the Declarations; solely with respect to the fines and penalties described in items b. through f., no Retention shall apply.

2. taxes; or

3. matters deemed uninsurable under the law to which this Policy will be construed; or

4. any amounts other than **Defense Costs**, which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress in any form other than monetary damages; or

5. any costs other than **Defense Costs** associated with any accommodation required pursuant to the American With Disabilities Act (removed Civil Rights Act of 1964) and the rules or regulations promulgated thereunder, amendments thereto, or similar provisions of any federal, state or local law or common law.

@2019 Philadelphia Consolidated Holding Corp.
PI-PRD-126 (04/19)

PI-PRD 126 (04/19)

### G. AMENDED DEFINITION OF PRIVATE OFFERING

**N. Private Offering** is deleted in its entirety and replaced with the following:

**Private Offering** means securities offered or issued by the **Private Company** which are exempt from registration with the United States Securities and Exchange Commission pursuant to the Securities Act of 1933.

### H. AMENDED DEFINITION OF SUBSIDIARY

**Q. Subsidiary** is deleted in its entirety and replaced with the following:

**Subsidiary** means:

1. any entity other than a partnership or joint venture of which the **Named Corporation** owns on or before the inception of the **Policy Period** more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its **Subsidiaries** or the right to elect, appoint or designate more than 50% of such entity's **board** of directors, trustees, or managers and which is set forth in the **Application**;

2. any entity other than a partnership or joint venture which becomes a **Subsidiary** during the **Policy Period** and whose assets total less than 40% of the total consolidated assets of the **Named Corporation** as of the inception date of this **Policy Period**;

3. any entity other than a partnership or joint venture which becomes a **Subsidiary** during the **Policy Period** other than a corporation described in paragraph 2. above, but only upon the condition that within 90 days of its becoming a **Subsidiary**, the **Named Corporation** shall have provided the **Underwriter** with full particulars of the new **Subsidiary** and agreed to any additional premium and/or amendment of the provisions of this Policy required by the **Underwriter** relating to such new **Subsidiary**. Further, coverage as shall be afforded to the new **Subsidiary** is conditioned upon the **Named Corporation** paying when due any additional premium required by the **Underwriter** relating to such new **Subsidiary**.

Any entity other than a partnership or joint venture becomes a **Subsidiary** when the **Named Corporation** owns more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its **Subsidiaries**. An entity ceases to be a **Subsidiary** when the **Named Corporation** ceases to own more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its **Subsidiaries**. Coverage for **Claims** made against any **Subsidiary** or the **Individual Insureds** of any **Subsidiary** shall only apply to **Wrongful Acts** of such **Subsidiary** or the **Individual Insureds** of such **Subsidiary** occurring after the effective time that such **Subsidiary** became a **Subsidiary**. If before or during the **Policy Period** an entity ceases to be a **Subsidiary**, then coverage for such **Subsidiary** shall remain in force, but only for **Claims** made during the **Policy Period** for **Wrongful Acts** occurring prior to the time that such **Subsidiary** ceased to be a **Subsidiary**.

### 5. AMENDMENT TO PART 5-COMMON POLICY EXCLUSIONS

PI-PRD 126 (04/19)

**A. SEVERABILTY OF EXCLUSIONS FOR INDIVIDUAL INSUREDS**

The following wording is included under the **COMMON POLICY EXCLUSIONS:**

In determining whether any of the following Exclusions apply, the **Wrongful Act** of any **Individual Insured** shall not be imputed to any other **Insured.**

**B. COMMON POLICY ENHANCEMENTS**

**EXCLUSION A.** is deleted in its entirety and replaced with the following:

A. arising out of, based upon or attributable to such **Insured** gaining any profit, remuneration or advantage to which they were not legally entitled; however, this exclusion shall only apply if a final and non-appealable judgment or adjudication in the underlying action establishes the **Insured** committed such act or omission;

**EXCLUSION B.** is deleted in its entirety and replaced with the following:

B. arising out of, based upon or attributable to any deliberate dishonest or fraudulent act or omission or any criminal act or omission by such **Insured**; however, this exclusion shall only apply if a final and non-appealable judgment or adjudication in the underlying action establishes the **Insured** committed such act or omission;

**EXCLUSION C.** is amended to include the following:

**This exclusion** shall not apply to any **Claim** brought under **INSURING AGREEMENT A. INDIVIDUAL LIABILITY COVERAGE** or by any security holder of the **Private Company** whether directly or derivatively.

**EXCLUSION D.** is deleted in its entirety.

**EXCLUSION F.** is deleted in its entirety and replaced by the following:

F. arising out of, based upon or attributable to:

1.  any litigation or written demand against an **Insured** pending on or before the respective Prior and Pending Date set forth in Item 5 of the Declarations Page, or the same facts as alleged in such prior litigation; or

2.  any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other similar policy in which this Policy is a renewal or replacement.

**EXCLUSION G.** is deleted in its entirety.

**EXCLUSION H.** is deleted in its entirety.

**EXCLUSION J.** is deleted in its entirety and replaced by the following:

J. brought or maintained by or on behalf of, or in the right of, the **Private Company** except a derivative action **Claim** by any person who is not a past or present director, officer, governor, trustee, equivalent executive,      management committee member, or member of

Page 10 of 14
@2019 Philadelphia Consolidated Holding Corp.

PI-PRD-126 (04/19)

PI-PRD 126 (04/19)

the Board of Managers of the **Private Company** and who brings or maintains the **Claim** without the solicitation, assistance or participation of such persons; provided, however that this exclusion shall not apply to a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator or rehabilitator, creditor committee, foreign jurisdiction, debtor-in-possession for the **Private Company**, or any assignee of such receiver, trustee, examiner, conservator, liquidator or rehabilitator;

**EXCLUSION K** is deleted in its entirety and replaced by the following:

K. brought or maintained by any **Individual Insured** except:

1. any **Claim** in the form of a cross claim, third party claim or other claim for contribution or indemnity by an **Individual Insured** which is part of or results directly from a **Claim** which is not otherwise excluded by this Policy;

2. a **Claim** for an **Employment Practice Act** or a **Fiduciary Liability Act**;

3. a **Claim** for a **D&O Wrongful Act** brought or maintained by an **Employee**(s) who is not a past or present director, officer, governor, trustee, equivalent executive, management committee member, or member of the Board of Managers of the **Private Company** if such **Claim** for a **D&O Wrongful Act** is brought and maintained by such **Employee** without the assistance, participation or solicitation of any such persons.

   **Exclusion K**. will not apply to any **Claim**:

   1. in which the party bringing the **Claim** has not served as a director, trustee, manager, Officer or equivalent executive of the **Private Company** within one (1) year immediately preceding the date the **Claim** is first made;
   2. in which the party bringing the **Claim** has not brought the **Claim** in concert or cooperation with, at the suggestion of, or with the participation, active assistance, or intervention of any other **Insured** not described in line 1 above; or
   3. based upon, arising from, or attributable to any **Public Offering**;
   4. brought by a whistleblower pursuant to any federal, state, local or foreign law against an **Individual Insured.**

**EXCLUSION N.** is deleted in its entirety and replaced by the following:

N. arising out of, based upon or attributable to a **Public Offering** or any violation of the Securities and Exchange Act of 1933, Securities and Exchange Act of 1934, Investment Act of 1940, any state "Blue Sky" securities law, or any other federal, state or local securities law or any amendments thereto or any rules or regulations promulgated thereunder or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase, or the actual sale or purchase of securities; provided, however that this exclusion shall not apply:

1. to any **Private Offering**, subject to terms and conditions of **Part 6, Section XVII;**

2. to any **Claim** made by any securityholder of the **Private Company** for the failure of the **Insured** to undertake or complete a **Public Offering**.

PI-PRD 126 (04/19)

3.  to any **Claim** arising out of the **Insured's** preparations to commence a **Public Offering**, including any **Claim** for **Loss** alleging a **Wrongful Act** occurring during any presentation to potential investors (a "road show"), if such **Public Offering** does not occur.

## 6. <u>AMENDMENTS TO PART 6- COMMON POLICY CONDITIONS</u>

**A. SECTION III. DEFENSE AND SETTLEMENT, G.** are deleted in its entirety and replaced by the following:

G.  If with respect to any **Claim** the **Insured** refuses to consent to the first settlement acceptable to the claimant which the **Underwriter** recommends to the **Insured** in writing, and elects to further contest the **Claim**, then the **Underwriter's** liability for such **Claim** shall not exceed the amount for which the **Claim** could have been settled, including **Defense Costs** incurred, up to the date of such refusal, plus eighty-five (85%) of covered **Loss** in excess of such first settlement amount, it being a condition of this insurance that the remaining fifteen percent (15%) of such **Loss** excess of the first settlement amount shall be borne by the **Insured** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the settlement amount exceeds the Retention amount stated in Item 4. of the Declarations Page.

In addition, if the **Underwriter** recommends a first settlement of a **Claim** within the Policy's applicable Limit of Liability that is acceptable to the claimant, and the **Insured** consents to such settlement, then the **Insured's** applicable Retention for such **Claim** shall be retroactively reduced by ten percent (10%). It shall be a condition to such reduction that the **Insured** must consent to the first settlement amount within thirty (30) days after the date the **Underwriter** recommends to the **Insured** such first settlement amount, or in the case of a first settlement amount which arises from a first settlement offer by the claimant, then within the time permitted by the claimant to accept such first settlement offer, but in all events no later than thirty (30) days after the **Underwriter** recommends to the **Insured** such first settlement offer. If the **Insured** does not consent to the first settlement within the time prescribed above, the applicable Retention amount shall remain the respective amount set forth in Item 4. of the Declarations Page, even if consent is given to a subsequent settlement.

**B. REPORTING ENHANCEMENTS**

**SECTION IV. NOTICE/CLAIM REPORTING PROVISIONS,** paragraphs A. and B. are deleted and replaced by the following:

A.  In the event that a **Claim** is made against the **Insured**, the **Insured** shall, as a condition precedent to the obligations of the **Underwriter** under this Policy, give written notice to the **Underwriter** as soon as practicable after any of the directors, officers, governors, trustees, management committee members, or members of the Board of Members first become aware of such **Claim**, but, not later than 90 days after the expiration date of this Policy, Extension Period, or **Run-Off Policy**, if applicable.

B.  If during this **Policy Period** the CEO, Chairperson of the Board, CFO, or General Counsel first becomes aware of any circumstances which may subsequently give rise to a **Claim** being made against any **Insured** for a specific alleged **Wrongful Act**, and as soon as practicable thereafter, but before the expiration or cancellation of this Policy, gives written notice to the **Underwriter** of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to the **Wrongful Act**, dates and persons involved, then any **Claim** which is subsequently made against the **Insured** arising out of such **Wrongful Act** will be considered made during this Policy Period.

Page 12 of 14
@2019 Philadelphia Consolidated Holding Corp.

PI-PRD-126 (04/19)

PI-PRD 126 (04/19)

### C. REPRESENTATIONS AND SEVERABILITY ENHANCEMENTS

**SECTION VI. REPRESENTATIONS AND SEVERABILITY,** is deleted in its entirety and replaced by the following:

A. In granting coverage to the **Insureds** under this Policy, the **Underwriter** has relied upon the declarations and statements in the written application(s) for this Policy. Such declarations and statements are the basis of the coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy.

B. Any written application(s) shall be construed as a separate application(s) for coverage by each **Insured**. With respect to the declarations and statements in such application(s):

(1) no fact pertaining to or knowledge possessed by any **Individual Insured** shall be imputed to any other **Individual Insured** for the purpose of determining if coverage is available; and

(2) only facts pertaining to and knowledge possessed by the Chief Financial Officer, General Counsel, Chief Executive Officer, or Chairperson of the Board shall be imputed to the **Private Company** for the purpose of determining if coverage is available.

### D. OTHER INSURANCE ENHANCEMENT

**SECTION XII. OTHER INSURANCE,** is deleted in its entirety and replaced by the following:

If the **Insured** has any other insurance for **Claims** covered under **Part 1 Directors & Officers** and **Part 3 Fiduciary Liability**, the insurance provided by this Policy shall be excess over such other valid and collectible insurance, regardless of whether such other insurance is designated as primary or excess.

In event of a **Claim** against the **Insured** arising out of serving in his/her capacity as a director, officer, governor or trustee of an **Outside Entity**, coverage as is afforded by this policy shall be specifically excess of indemnification provided by such **Outside Entity** and any insurance provided to such **Outside Entity**.

With respect to coverage afforded under **Part 2 Employment Practices Liability, Claims** arising out of an **Employment Practices Act** shall be primary. However, in the event of a **Claim** against the **Insured** arising out of an **Employment Practices Act** against or committed by a leased **Employee**, temporary employee, **Independent Contractor,** or **Third Party,** coverage as is afforded by this policy shall be specifically excess of other valid and collectible insurance, regardless of whether such other insurance is designated as primary or excess.

### E. MODIFIED CHANGE IN OWNERSHIP OR CONTROL

**SECTION XV. CHANGE IN OWNERSHIP OR CONTROL,** is deleted in its entirety and replaced by the following:

If after the inception of the **Policy Period** a **Transaction** occurs then this Policy will remain in force, but only for **Claims** made during the **Policy Period** for **Wrongful Acts** committed prior to the effective date of the **Transaction** and the premium will immediately be considered fully earned.

@2019 Philadelphia Consolidated Holding Corp.

PI-PRD-126 (04/19)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-PRD 126 (04/19)

However, in the case of a **Public Offering**, the **Insured** will provide written notice of the **Public Offering** to the **Underwriter** no later than 30 days prior to the filing of any registration statement with the United States Securities and Exchange Commission.

The **Insured** will have the right, within 45 days after the **Transaction** (or such date the **Underwriter** may agree by endorsement), to request an offer from the **Underwriter** for a **Run-Off Policy** for a term up to 6 years. If elected, such **Run-Off Policy** will be conditioned upon payment during the **Policy Period** of any additional premium, which will be fully earned at inception, and will be subject to any additional terms and conditions required by the **Underwriter.**

PI-PRD-126 (04/19)

PI-PRD-144 (01/20)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## BIOMETRIC INFORMATION CLAIM EXCLUSION

This endorsement modifies insurance provided under the following:

**PRIVATE COMPANY PROTECTION PLUS**

This endorsement modifies Part 1 and Part 2 of your Policy.

I.   The following DEFINITIONS are added to **Part 1**, II. DEFINITIONS and **Part 2**, II. DEFINITIONS as follows:

**Biometric Information** means any information used to identify a natural person based on an anatomical scan or any record of biological pattern or characteristic, including but not limited to such natural person's retina or iris scan, fingerprint, voiceprint or any record of hand or face geometry. **Biometric Information** does not include any information that is protected or regulated pursuant to the Health Insurance Portability and Accountability Act of 1996.

**Biometric Information Claim** means a **Claim** brought or maintained against an **Insured** for a violation of any federal, state or local law that regulates or restricts the collection, storage, use and/or disposal of **Biometric Information,** including violations of any required notifications, disclosures or authorizations related to such **Biometric Information.**

II.   Part 1, III. EXCLUSIONS and Part 2, III. EXCLUSIONS are amended to include the following:

Based upon, arising from, or in any way related to **Biometric Information** and/or any **Biometric Information Claim.**

All other terms of the policy remain unchanged.

PI-PRD-144 (01/20)

Page 1 of 1

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-PRD-IL-1 (12/02)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ILLINOIS AMENDATORY ENDORSEMENT**

In consideration for the premium paid it is hereby understood and agreed that the policy is modified as follows:

A.  The following provisions are added to the policy and supersede anything to the contrary:

    I.  If the Named Corporation terminates this Policy, The Insurer will provide, with no additional premium required, a 60-day extension of coverage granted by this Policy to any **Claim** which may be first made during the automatic Extended Reporting Period, but only with respect to any **Wrongful Act** committed during this **Policy Period** and before the date of such termination. This 60-day automatic Extended Reporting Period will not go into effect if the **Company** has purchased similar insurance from this or any other company covering **Claims** first made during the automatic Extended Reporting Period.

    Upon expiration of the automatic Extended Reporting Period, the **Company** will have the right to purchase an Extended Reporting Period as cited in Part 6, Clause J. of this Policy.

    If the Insurer terminates this Policy for nonpayment of premium, the Extended Reporting Period will not go into effect unless any earned premium due is paid within 60-days after the effective date of termination. The Insurer will notify the Named Corporation of the earned premium due with the termination notice.

    II.  Bankruptcy or insolvency of the insured or the insured's estate shall not relieve the insurer of its obligations hereunder.

    III.  **Defense Cost**, as defined separately in each coverage part of this policy, does not include wages, salaries or fees of the directors, officers, employees of the **Company** or the insurer.

    IV.  If the insured has insurance provided by another company or companies against a loss covered by this policy, the insurer shall not be liable under this policy for a greater proportion of such loss and claims expenses than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability to all valid and collectible insurance against such loss.

B.  Paragraph B. of the ACTION AGAINST THE UNDERWRITER; ARBITRATION common policy condition is deleted and replaced with the following:

    B.  Any coverage dispute which cannot be resolved through negotiations between any **Insured** and the Insurer shall be submitted to arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel. The panel shall consist of one arbitrator selected by such **Insured**, one arbitrator selected by the Insurer and a third independent arbitrator selected by the first two arbitrators.

    C.  The following common policy condition is added:

    XX. FALSE OR FRAUDULENT CLAIMS
        If an **Insured** and/or the **Company** shall proffer any **Claim** knowing the same to be false or fraudulent as regards amount or otherwise, this insurance shall be canceled and the claim denied in accordance with Illinois Insurance Code.

PI-PRD-IL 3 (04/19)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ILLINOIS CIVIL UNION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PRIVATE COMPANY PROTECTION PLUS**

In consideration of the premium paid, this Policy is amended as follows:

I.   CIVIL UNION

1.   The term "spouse" or any other term descriptive of a spousal relationship is amended to include a party to a civil union as required by Illinois law.

All other terms and conditions remain the same.

PI-PV-113 (8/21)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TEMPORARY STAFFING AMENDATORY ENDORSEMENT EXCLUDING PEO WORKERS

This endorsement modifies and is subject to the insurance provided under the following:

PRIVATE COMPANY PROTECTION PLUS

Solely with respect to coverage provided by Part 2, Employment Practice Liability Insurance the PRIVATE COMPANY PROTECTION PLUS policy is amended as follows:

Your **Client Company** is an **Insured** under this policy only for the following **Claim(s)**:

1. **Claims** against the **Client Company** arising from **Employment Practices Acts** committed by your **Employee** and/or;

2. **Claims** against the **Client Company** arising from **Employment Practices Acts** committed against your **Employee.**

This coverage extension applies only if the following conditions are met:

1. There is a written agreement in place between you and the **Client Company** wherein you expressly agree to defend and/or indemnify the **Client Company** and

2. The aforementioned written agreement existed prior to the date of the **Employment Practices Acts** which are the subject of the **Claim.**

It is agreed that **PART 4, COMMON POLICY DEFINITIONS** is amended as follows:

A. Item E. **Employee** is amended to include **Staffing Service Employee.** The term **Employee** shall not include Client Company employees who are not also **Staffing Service Employees.** Employee does not include any individual who is a **PEO Worker.**

B. Item G. **Individual Insured** is amended to include employees of a **Client Company**

C. Item H. **Insured** is amended to include **Client Company.**

For the purpose of this endorsement, the following definitions are added to **PART 4, COMMON POLICY DEFINITIONS:**

A. **Client Company** means any person or organization for which the **Insured** provides **Staffing Services. Client Company** does not mean a person or organization for which the **Insured** provides **PEO Services.**

B. **PEO Service** means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to **PEO Workers** in connection with employment of such workers.

PI-PV-113 (8/21)

PI-PV-113 (8/21)

**C. PEO Worker** means a person you lease to your client under a **PEO Service** agreement or contract.

**D. Staffing Service Employee** means a person who is furnished by you to a **Client Company** to perform the duties to which you have agreed. **Staffing Service Employee** does not include and does not mean **PEO Worker**.

**E. Staffing Services** means services provided by a staffing company to their clients including but not limited to:

1. Staffing related administrative services provided by an Administrative Services Organization (ASO);

2. Staffing related services provided to your clients for the recruitment, selection and placement of a person for employment with a client.

3. Temporary, contingent or contract placement services;

4. Vendor Management Service (VMS), means the facilitation, purchase and management of **Staffing Services** for clients including the placement and fulfillment of orders for **Staffing Service Employees**;

5. Services performed on behalf of your client by a **Staffing Service Employee** who is not a direct hire or permanent placement;

6. Services performed for a **Client Company** to supply that **Client Company** with a **Staffing Service Employee.**

It is further agreed, Part 2, III. EXCLUSIONS is amended to include the following:

The **Underwriter** shall not be liable to make any payment for **Loss** in connection with any **Claim** brought by, on behalf of, or arising out of the actions or activities of any **PEO Worker.**

All other terms of the policy remain unchanged.

PI-SLD-001 (01/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS LIABILITY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism subject to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy.

Includes copyrighted material of the Insurance Services Office Inc., used with its permission.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-BELL-1 IL (11/09)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## BELL ENDORSEMENT



PHILADELPHIA
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

I.  **SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS**

The following is a summary of Limits of Liability or Limits of Insurance and/or additional coverages provided by this endorsement.  This endorsement is subject to the provisions of the policy to which it is attached.

| COVERAGE | LIMITS OF INSURANCE |
|---|---|
| Business Travel Accident Expenses | $50,000 |
| Conference Cancellation | $25,000 |
| Donation Assurance | $50,000 |
| Emergency Real Estate Consulting Fee | $50,000 |
| Fundraising Event Blackout | $25,000 |
| Identity Theft Expense | $50,000 |
| Image Restoration and Counseling | $50,000 |
| Key Individual Replacement Expenses | $50,000 |
| Kidnap Expense | $50,000 |
| Political Unrest | $5,000 per employee: $25,000 policy limit |
| Temporary Meeting Space Reimbursement | $25,000 |
| Terrorism Travel Reimbursement | $50,000 |
| Travel Delay Reimbursement | $1,500 |
| Workplace Violence Counseling | $50,000 |

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

**II. CONDITIONS**

**A. Applicability of Coverage**

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.

**B. Limits of Liability or Limits of Insurance**

1. When coverage is provided by this endorsement and another coverage form or endorsement attached to this policy, the greater limits of liability or limits of insurance will apply. In no instance will multiple limits apply to coverages which may be duplicated within this policy. Additionally, if this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same occurrence, offense, wrongful act, accident or loss, the maximum limits of liability or limits of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limits of liability or limits of insurance under any one coverage part or policy.

2. Limits of liability or limits of insurance identified in Section **I. SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS** above are not excess of, but are in addition to the applicable Limits of Liability or Limits of Insurance stated in the Declarations.

**C. Claim Expenses**

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

**III. ADDITIONAL COVERAGES**

**A. Business Travel Accident Expenses**

We will pay any reasonable and necessary expenses an insured incurs if a director or officer suffers injury or death while traveling on a common carrier for your business during the policy period.

For the purpose of Business Travel Accident Expenses coverage, injury means:

1. Physical damage to the body caused by violence, fracture, or an accident that results in loss of life not later than one hundred eighty (180) days after the policy expiration, the date of cancellation or the date of non-renewal;

2. Accidental loss of limbs or multiple fingers;

3. Total loss of sight, speech or hearing.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

Business Travel Accident Expenses shall not be payable if the cause of the injury was:

1. An intentional act by the insured;

2. An act of suicide or attempted suicide;

3. An act of war; or

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

**4.** A disease process.

**B. Conference Cancellation**

We will reimburse the insured for any business-related conference expenses, paid by the insured and not otherwise reimbursed, for a canceled conference that an employee was scheduled to attend. The cancellation must be due directly to a "natural catastrophe" or a "communicable disease" outbreak that forces the cancellation of the conference.

With respect to a conference cancellation claim, it is further agreed as follows:

**1.** The insured employee must have registered for the conference at least thirty (30) days prior to the cancellation; and

**2.** The cancellation must be ordered by a local, state or federal Board of Health or other governmental authority having jurisdiction over the location of the conference.

The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**C. Donation Assurance**

If the insured is a 501(c)(3) status non-profit organization as defined in the United States Internal Revenue Code, we will reimburse the insured for "failed donation claim(s)."

With respect to any "failed donation claim," it is further agreed as follows:

**1.** The donor must not have been in bankruptcy, nor have filed for bankruptcy or reorganization in the past seven (7) years prior to the time said pledge was made to the insured;

**2.** For non-cash donations, our payment of a "failed donation claim" shall be based on the fair market value of said non-cash donation at the time of the "failed donation claim";

**3.** In the case of unemployment or incapacitation of a natural person donor and as a condition of payment of the "failed donation claim":

    **a.** Neither the natural person donor nor the insured shall have had reason to believe the donor would become unemployed or incapacitated subsequent to the donation date; and

    **b.** The donor shall be unemployed for at least sixty (60) days prior to a claim being submitted by the insured;

**4.** No coverage shall be afforded for a written pledge of funds or other measurable, tangible property to the insured dated prior to the policy period; and

**5.** A donation amount which is to be collected by the insured over more than a twelve (12) month period shall be deemed a single donation.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

PI-BELL-1 IL (11/09)

**D. Emergency Real Estate Consulting Fee**

We will reimburse the insured any realtor's fee or real estate consultant's fee necessitated by the insured's need to relocate due to the "unforeseeable destruction" of the insured's "principal location" listed in the Declarations during the policy period. The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**E. Fundraising Event Blackout**

We will reimburse the insured for "fundraising expenses" that are incurred due to the cancellation of a fundraising event caused by the lack of electric supply resulting in a power outage, provided the fundraising event is not re-scheduled. The fundraising event must have been planned at least thirty (30) days prior to the power outage. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**F. Identity Theft Expense**

We will reimburse any present director or officer of the named insured for "identity theft expenses" incurred as the direct result of any "identity theft" first discovered and reported during the policy period; provided that it began to occur subsequent to the effective date of the insured's first policy with us. The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**G. Image Restoration and Counseling**

We will reimburse the insured for expenses incurred for image restoration and counseling arising out of "improper acts" by any natural person.

Covered expenses are limited to:

1. The costs of rehabilitation and counseling for the accused natural person insured, provided the natural person insured is not ultimately found guilty of criminal conduct; this reimbursement to occur after acquittal of the natural person insured;

2. The costs charged by a recruiter or expended on advertising, for replacing an officer as a result of "improper acts"; and

3. The costs of restoring the named insured's reputation and consumer confidence through image consulting.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**H. Key Individual Replacement Expenses**

We will pay "key individual replacement expenses" if the Chief Executive Officer or Executive Director suffers an "injury" during the policy period which results in the loss of life during the policy period. The limit of insurance for this coverage is the lesser of $50,000 or ten (10) times the annual premium paid for this policy. No deductible applies to this coverage.

PI-BELL-1 IL (11/09)

**I.  Kidnap Expense**

We will pay on behalf of any director or officer of the insured, reasonable fees incurred as a result of the kidnapping of them or their spouse, "domestic partner," parent or child during the policy period. Coverage will not apply to any kidnapping by or at the direction of any present or former family member of the victim.

Reasonable fees will include:

1.  Fees and costs of independent negotiators;

2.  Interest costs for any loan from a financial institution taken by you to pay a ransom demand or extortion threat;

3.  Travel costs and accommodations incurred by the named insured;

4.  Reward money paid to an informant which leads to the arrest and conviction of parties responsible for loss covered under this insurance; and

5.  Salary, commissions and other financial benefits paid by you to a director or officer. Such compensation applies at the level in effect on the date of the kidnap and ends upon the earliest of:

    a.  Up to thirty (30) days after their release, if the director or officer has not yet returned to work;

    b.  Discovery of their death;

    c.  One hundred twenty (120) days after the last credible evidence following abduction that they are still alive; or

    d.  Twelve (12) months after the date of the kidnapping.

The limit of insurance for this coverage is $50,000 each policy period for all insureds combined. No deductible applies to this coverage.

**J.  Political Unrest Coverage**

We will reimburse any present director, officer, employee or volunteer of the named insured while traveling outside the United States of America for "emergency evacuation expenses" that are incurred as a result of an incident of "political unrest." This "political unrest" must occur during the policy period. No coverage is granted for travel to countries in a state of "political unrest" at the time of departure of the travel. The limit of insurance for this coverage is $5,000 per covered person, subject to a maximum of $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**K.  Temporary Meeting Space Reimbursement**

We will reimburse the insured for rental of meeting space which is necessitated by the temporary unavailability of the insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater during the policy period. Coverage will exist only for the renting of temporary meeting space required for meeting with parties who are not insured under this policy. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

**L. Terrorism Travel Reimbursement**

We will reimburse any present director or officer of the named insured in the event of a "certified act of terrorism" during the policy period which necessitates that he/she incurs "emergency travel expenses." The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**M. Travel Delay Reimbursement**

We will reimburse any present director or officer of the named insured for any "non-reimbursable expenses" they incur as a result of the cancellation of any regularly scheduled business travel on a common carrier. The limit of insurance for this coverage is $1,500 per policy period for all insureds combined. A seventy-two (72) hour waiting period deductible applies to this coverage.

**N. Workplace Violence Counseling**

We will reimburse the insured for emotional counseling expenses incurred directly as a result of a "workplace violence" incident at any of the insured's premises during the policy period. The emotional counseling expenses incurred must have been for:

1. Your employees who were victims of, or witnesses to the "workplace violence";

2. The spouse, "domestic partner," parents or children of your employees who were victims of, or witnesses to the "workplace violence"; and

3. Any other person or persons who directly witnessed the "workplace violence" incident.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**IV. DEFINITIONS**

For the purpose of this endorsement, the following definitions apply:

**A.** "Certified act of terrorism" means any act so defined under the Terrorism Risk Insurance Act, and its amendments or extensions.

**B.** "Communicable disease" means an illness, sickness, condition or an interruption or disorder of body functions, systems or organs that is transmissible by an infection or a contagion directly or indirectly through human contact, or contact with human fluids, waste, or similar agent, such as, but not limited to Meningitis, Measles or Legionnaire's Disease.

**C.** "Domestic partner" means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by the named insured.

**D.** "Emergency evacuation expenses" mean:

1. Additional lodging expenses;

2. Additional transportation costs;

3. The cost of obtaining replacements of lost or stolen travel documents necessary for evacuation from the area of "political unrest"; and

PI-BELL-1 IL (11/09)

4. Translation services, message transmittals and other communication expenses.

provided that these expenses are not otherwise reimbursable.

E. "Emergency travel expenses" mean:

1. Hotel expenses incurred which directly result from the cancellation of a scheduled transport by a commercial transportation carrier, resulting directly from and within forty-eight (48) hours of a "certified act of terrorism"; and

2. The increased amount incurred which may result from re-scheduling comparable transport, to replace a similarly scheduled transport canceled by a commercial transportation carrier in direct response to a "certified act of terrorism";

provided that these expenses are not otherwise reimbursable.

F. "Failed donation claim" means written notice to the insured during the policy period of:

1. The bankruptcy or reorganization of any donor whereby such bankruptcy or reorganization prevents the donor from honoring a prior written pledge of funds or other measurable, tangible property to the insured; or

2. The unemployment or incapacitation of a natural person donor preventing him/her from honoring a prior written pledge of funds or other measurable, tangible property to the insured.

G. "Fundraising expenses" mean deposits forfeited and other charges paid by you for catering services, property and equipment rentals and related transport, venue rentals, accommodations (including travel), and entertainment expenses less any deposits or other fees refunded or refundable to you.

H. "Identity theft" means the act of knowingly transferring or using, without lawful authority, a means of identification of any director or officer (or spouse or "domestic partner" thereof) of the named insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

I. "Identity theft expenses" mean:

1. Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

2. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors; and

3. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

J. "Improper acts" means any actual or alleged act of:

1. Sexual abuse;

2. Sexual intimacy;

3. Sexual molestation; or

PI-BELL-1 IL (11/09)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

   4.  Sexual assault;

committed by an insured against any natural person who is not an insured.  Such "improper acts" must have been committed by the insured while in his or her capacity as an insured.

K.  "Injury" whenever used in this endorsement, other than in Section **III. A. Business Travel Accident Expenses**, means any physical damage to the body caused by violence, fracture or an accident.

L.  "Key individual replacement expenses" mean the following necessary expenses:

   1.  Costs of advertising the employment position opening;

   2.  Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

   3.  Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, overtime pay, costs to verify the background and references of the applicants and legal expenses incurred to draw up an employment contract.

M.  "Natural catastrophe" means hurricane, tornado, earthquake or flood.

N.  "Non-reimbursable expenses" means the following travel-related expenses incurred after a seventy-two (72) hour waiting period, beginning from the time documented on the proof of cancellation, and for which your director or officer produces a receipt:

   1.  Meals and lodging;

   2.  Alternative transportation;

   3.  Clothing and necessary toiletries; and

   4.  Emergency prescription and non-prescription drug expenses.

O.  "Political unrest" means:

   1.  A short-term condition of disturbance, turmoil or agitation within a foreign country that poses imminent risks to the security of citizens of the United States;

   2.  A long-term condition of disturbance, turmoil or agitation that makes a foreign country dangerous or unstable for citizens of the United States; or

   3.  A condition of disturbance, turmoil or agitation in a foreign country that constrains the United States Government's ability to assist citizens of the United States, due to the closure or inaccessibility of an embassy or consulate or because of a reduction of its staff

for which either an alert or travel warning has been issued by the United States Department of State.

P.  "Principal location" means the headquarters, home office or main location where most business is substantially conducted.

Q.  "Unforeseeable destruction" means damage resulting from a "certified act of terrorism," fire, collision or collapse which renders all of the insured's "principal locations" completely unusable.

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

R. "Workplace violence" means any intentional use of or threat to use deadly force by any person with intent to cause harm and that results in bodily "injury" or death of any person while on the insured's premises.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-CME-1 (10/09)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CRISIS MANAGEMENT ENHANCEMENT ENDORSEMENT

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

Solely for the purpose of this endorsement:  1) The words  "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  2) The words "we," "us" and "our" refer to the company providing this insurance.

I.   **SCHEDULE OF ADDITIONAL COVERAGE AND LIMITS**

The following is the Limit of Liability provided by this endorsement.  This endorsement is subject to the provisions of the policy to which it is attached.

Crisis Management Expense                                               $25,000

II.  **CONDITIONS**

**A.  Applicability of Coverage**

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.  All other terms and conditions of the policy or coverage part to which this endorsement is attached remain unchanged.

**B.  Limits of Liability or Limits of Insurance**

When coverage is provided by this endorsement and any other coverage form or endorsement attached to this policy, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Liability or Limit of Insurance.

**C.  Claim Expenses**

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

III. **ADDITIONAL COVERAGES**

A.  We will reimburse you for "crisis management emergency response expenses" incurred because of an "incident" giving rise to a "crisis" to which this insurance applies.  The amount of such reimbursement is limited as described in Section **II. CONDITIONS, B. Limits of Liability or Limits of Insurance**.  No other obligation or liability to pay sums or perform acts or services is covered.

B.  We will reimburse only those "crisis management emergency response expenses" which are incurred during the policy period as shown in the Declarations of the policy to which this coverage is attached and reported to us within six (6) months of the date the "crisis" was initiated.

Page 1 of 2

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-CME-1 (10/09)

IV.   **DEFINITIONS**

**A.**   "Crisis" means the public announcement that an "incident" occurred on your premises or at an event sponsored by you.

**B.**   "Crisis management emergency response expenses" mean those expenses incurred for services provided by a "crisis management firm." However, "crisis management emergency response expenses" shall not include compensation, fees, benefits, overhead, charges or expenses of any insured or any of your employees, nor shall "crisis management emergency response expenses" include any expenses that are payable on your behalf or reimbursable to you under any other valid and collectible insurance.

**C.**   "Crisis management firm" means any service provider you hire that is acceptable to us. Our consent will not be unreasonably withheld.

**D.**   "Incident" means an accident or other event, including the accidental discharge of pollutants, resulting in death or serious bodily injury to three or more persons.

**E.**   "Serious bodily injury" means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

PI-CRP-02 (06/05)

## *Crime Protection Plus*

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is or is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in **BOLD** have special meaning. Refer to the Definitions Section.

I. INSURING AGREEMENTS

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations:

A1. EMPLOYEE THEFT AND CLIENT PROPERTY

1. We will pay for loss of or damage to **MONEY**, **SECURITIES** and **OTHER PROPERTY** resulting directly from **THEFT** committed by an **EMPLOYEE**, whether identified or not, acting alone or in collusion with other persons.

2. We will pay for loss of or damage to **MONEY**, **SECURITIES** and **OTHER PROPERTY** sustained by your **CLIENT** resulting directly from **THEFT** committed by an identified **EMPLOYEE**, acting alone or in collusion with other persons.

A2. ERISA FIDELITY

We will pay for direct loss of and direct loss from damage to, **MONEY**, **SECURITIES** and **OTHER PROPERTY** of any **EMPLOYEE BENEFIT PLAN(S)** sponsored exclusively by the **INSURED** resulting from **THEFT** by an **EMPLOYEE**.

B. FORGERY OR ALTERATION

1. We will pay for loss resulting directly from **FORGERY** or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in **MONEY** that are:

a. Made or drawn by or drawn upon you; or

b. Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

2. If you are sued for refusing to pay any instrument covered in Paragraph a. above, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

3. Credit, Debit, or Charge Card Extension.

a. Covered Instruments in 1. above, checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in **MONEY** includes written instruments required in conjunction with any credit, debit or charge card issued to you or any **EMPLOYEE** for business purposes.

Page 1 of 16

PI-CRP-02 (06/05)

  b. The most we will pay in any one **OCCURRENCE** is $25,000. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

C. INSIDE THE PREMISES

  1. We will pay for loss of **MONEY** and **SECURITIES** inside the **PREMISES** or **BANKING PREMISES** resulting directly from **THEFT**, disappearance or destruction.

  2. We will pay for loss of or damage to **OTHER PROPERTY**

    a. inside the **PREMISES** resulting directly from an actual or attempted **ROBBERY** of a **CUSTODIAN**; or

    b. inside the **PREMISES** in a safe or vault resulting directly from an actual or attempted **SAFE BURGLARY**.

    c. We will pay for loss from damage to the **PREMISES** or its exterior resulting from an actual or attempted

      i. **THEFT** of **MONEY** or **SECURITIES**; or

      ii. **ROBBERY** or **SAFE BURGLARY** of **OTHER PROPERTY** if the **INSURED** is the owner of the **PREMISES** or is liable for damage to it.

    d. We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the **PREMISES** resulting directly from an actual or attempted **THEFT** or unlawful entry into those containers.

D. OUTSIDE THE PREMISES

  1. We will pay for loss of **MONEY** and **SECURITIES** outside the **PREMISES** in the care and custody of a **MESSENGER** or an armored motor vehicle company resulting directly from **THEFT**, disappearance or destruction.

  2. We will pay for loss of or damage to **OTHER PROPERTY** outside the **PREMISES** in the care and custody of a **MESSENGER** or an armored motor vehicle company resulting directly from an actual or attempted **ROBBERY**.

E. MONEY ORDERS AND COUNTERFEIT PAPER CURRENCY

  We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, **MONEY** or services:

  1. Money orders issued by any post office, express company or bank that are not paid upon presentation; and

  2. **COUNTERFEIT** paper currency that is acquired during the regular course of business from any country in which you maintain a physical premises.

F. COMPUTER FRAUD AND FUNDS TRANSFER FRAUD

  We will pay for loss of or loss from damage to:

  1 **MONEY, SECURITIES** and other property resulting directly from **COMPUTER FRAUD**, and

  2 **MONEY** and **SECURITIES** contained in a **TRANSFER ACCOUNT** on deposit at a **FINANCIAL INSTITUTION** resulting directly from **FUNDS TRANSFER FRAUD.**

  We will pay for loss of **FUNDS** resulting directly from a **FRAUDULENT INSTRUCTION** directing a financial institution to transfer, pay, or deliver **FUNDS** from your **TRANSFER ACCOUNT.**

PI-CRP-02 (06/05)

## II. LIMIT OF INSURANCE

The most we will pay for loss in any one **OCCURRENCE** is the applicable Limit of Insurance shown in the Declarations.

## III. DEDUCTIBLE

We will not pay for loss in any one **OCCURRENCE** unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. In the event that more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount may be applied.

## IV. EXCLUSIONS

This Policy Does Not Apply To:

A. Loss resulting from **THEFT** or any other dishonest act committed by:

    1. You; or

    2. Any of your partners or **MEMBERS**; or

    3. Any officer or employee who has a 25% interest or greater ownership interest in any one or more of those entities named as **INSUREDS**

whether acting alone or in collusion with other persons.

B. Loss resulting from **THEFT** or any other dishonest act committed by any of your **EMPLOYEES**, **MANAGERS**, directors, trustees or authorized representatives:

    1. Whether acting alone or in collusion with other persons; or

    2. While performing services for you or otherwise;

except when covered under Insuring Agreement A1 or A2.

C. Loss resulting from seizure or destruction of property by order of governmental authority.

D. Loss that is an indirect result of any act or **OCCURRENCE** covered by this policy including, but not limited to, loss resulting from:

    1. Your inability to realize income that you would have realized had there been no loss of or damage to **MONEY**, **SECURITIES** or **OTHER PROPERTY**.

    2. Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this policy.

    3. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this policy.

E. Expenses related to any legal action, except when covered under Insuring Agreement B.

F. Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

G. Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

H. Loss sustained by one **INSURED** to the advantage of any other **INSURED**.

Page 3 of 16

PI-CRP-02 (06/05)

I.   Loss resulting directly or indirectly from contractual or extra contractual liability sustained by the **INSURED** in connection with the issuance of contracts or purported contracts of insurance, indemnity or suretyship.

J.   Loss of trade secrets, confidential processing methods, confidential information or intangible property of any kind.

K.   Insuring Agreement A1 and A2 does not apply to:

1.   Loss caused by any **EMPLOYEE** of yours, or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation unless the amount of such loss is $1,000 or less.

2.   Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

a.   An inventory computation; or

b.   A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and an actual physical count of inventory in support of the amount of loss claimed.

3.   Loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

4.   Loss resulting from the fraudulent or dishonest signing, issuing, canceling, or failing to cancel, a warehouse receipt or any papers connected with it.

L.   Insuring Agreement B does not apply to:

1.   Loss arising from any credit, debit or charge card if you have not complied fully with the provisions, conditions or other terms under which the card was issued.

M.   Insuring Agreements C and D do not apply to:

1.   Loss resulting from accounting or arithmetical errors or omissions.

2.   Loss resulting from the giving or surrendering of property in any exchange or purchase.

3.   Loss resulting from fire, however caused, except:

a.   Loss of or damage to **MONEY** and **SECURITIES**; and

b.   Loss from damage to a safe or vault.

4.   Loss of property contained in any money operated device unless the amount of **MONEY** deposited in it is recorded by a continuous recording instrument in the device.

5.   Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

6.   Transfer or Surrender of Property

a.   Loss of or damage to property after it has been transferred or surrendered to a person or place outside the **PREMISES** or **BANKING PREMISES**:

i.   On the basis of unauthorized instructions;

ii.   As a result of a threat to do bodily harm to any person; or

PI-CRP-02 (06/05)

iii.   As a result of a threat to do damage to any property.

b.   But, this Exclusion does not apply under Insuring Agreement D to loss of **MONEY, SECURITIES** or **OTHER PROPERTY** while outside the **PREMISES** in the care and custody of a **MESSENGER** if you:

i.   Had no knowledge of any threat at the time the conveyance began; or

ii.   Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

7.   Loss from damage to the **PREMISES** or its exterior, or to any safe, vault, cash register, cash box, cash drawer or **OTHER PROPERTY** by vandalism or malicious mischief.

8.   Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

N.   Insuring Agreement F. does not apply to:

1.   Loss resulting from the giving or surrendering of property in any exchange or purchase.

2.   Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

a.   An inventory computation; or

b.   A profit and loss computation.

3.   Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

V.   CONDITIONS

A.   Cancellation as to any **EMPLOYEE**

1.   This policy is cancelled as to any **EMPLOYEE**:

a.   Immediately upon discovery by:

i.   You; or

ii.   Any of your partners, **MEMBERS, MANAGERS**, officers, directors or trustees not in collusion with the **EMPLOYEE**:

of **THEFT** or any other dishonest act committed by the **EMPLOYEE** whether before or after becoming employed by you unless, the amount of such loss is $1,000 or less.

2.   On the date specified in a notice mailed to the first Named Insured. That date will be at least 60 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

B.   Cancellation of Policy

1.   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

PI-CRP-02 (06/05)

      a)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      b)  60 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

C. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

D. Concealment, Misrepresentation or Fraud

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other **INSURED**, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The property covered under this policy;

3. Your interest in the property covered under this policy; or

4. A claim under this policy.

E. Consolidation – Merger

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity, any additional persons become **EMPLOYEES**, or you acquire the use and control of any additional **PREMISES**:

1. You must give us written notice and obtain our written consent to extend this insurance to such additional **EMPLOYEES** or **PREMISES**. We may condition our consent upon payment of an additional premium;

2. For the first 90 days after the effective date of such consolidation, merger, or purchase or acquisition of assets or liabilities, any insurance afforded for **EMPLOYEES** or **PREMISES** also applies to these additional **EMPLOYEES** or **PREMISES** for acts committed or events occurring within this 90-day period.

However, we agree to automatically extend such coverage, without the payment of an additional premium for the remainder of the Policy Period, as is afforded under this Policy to any consolidation or merger with, or purchase of assets of, some other entity which has less than 15% of your annual revenues, and a three year, loss free Employee Theft claims history.

F. Discovery Option

If the Discovery option in ITEM 4. of the Declarations page is executed, this general condition shall apply.

Page 6 of 16

PI-CRP-02 (06/05)

1. We will pay for loss that you sustain through acts committed or events occurring at any time and discovered by you:

   a. During the policy period shown in the Declarations; or

   b. During the period of time provided in V. CONDITION K. Extended Period To Discover Loss.

2. Discovery of loss occurs when you first become aware of facts, which would cause a reasonable person to assume that a loss covered by this policy has been or will be incurred, even though the exact amount or details of loss may not then be known.

Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts that if true would constitute a covered loss under this policy.

G. Loss Sustained Option

If the Loss Sustained option in ITEM 4. of the Declarations page is executed, this general condition shall apply.

We will pay for loss sustained by You during the policy period stated in Item 3. of the Declarations Page.

1. If you, or a predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

   a. This insurance became effective at the time of cancellation or termination of the prior insurance; and
   b. The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

2. The insurance under this agreement is part of, and not in addition to, the Limits of Insurance applicable to this Insurance and is limited to the lesser of the amount recoverable under:

   a. This insurance as of its effective date; or

   b. The prior insurance had it remained in effect.

In the event that a loss is covered by this Policy and a preceding Policy, it is agreed that the Insuring Agreement deductible for this Policy shall be reduced by the applicable deductible of the preceding Policy.

If any loss is covered partly by this insurance and partly by any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest, the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

H. Duties In The Event Of Loss

After you discover a loss or a situation that may result in loss of or damage to MONEY, SECURITIES or OTHER PROPERTY you must:

1. Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreements A1, A2 or B.) involves a violation of law, you must also notify the local law enforcement authorities.

2. Submit to examination under oath at our request and give us a signed statement of your answers.

3. Give us a detailed, sworn proof of loss within 120 days.

4. Cooperate with us in the investigation and settlement of any claim.

I. Employee Benefit Plan(s)

PI-CRP-02 (06/05)

1. If any one or more **EMPLOYEE BENEFIT PLANS** are insured jointly with any other entity under this Policy, you or the plan administrator must select a Limit of Insurance for Insuring Agreement A2. that is sufficient to provide a Limit of Insurance for each Plan, which is at least equal to that required if each Plan were separately insured.

2. If the first named Insured is an entity other than a Plan, any payments we make to the Insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.

3. If two or more Plans are insured under this Policy, any payment which we make for loss sustained by two or more Plans, or of commingled **FUNDS** or **OTHER PROPERTY** of two or more Plans, which arises out of one **OCCURRENCE**, is to be shared by each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total of those limits.

4. This Policy insures those Plans, which are named as additional Insureds in the Declarations or on any attached Schedule for loss through fraud or dishonesty as defined in Section 2580.412-9 of the Employee Retirement Income Security Act (ERISA) as amended. For any Plans not specifically named as Insureds, this Policy is deemed to be in compliance with, and satisfy the bonding requirements of Section 2580.412-11 of the Act. This insurance provides a Limit of Insurance which is equal to 10% of the amount of the funds handled or $500,000., whichever is less, for each Plan bonded and the minimum Limit of Insurance for any Plan shall be $1,000. The Limit of Insurance available for any Plan loss will be determined by the amount of funds handled on the date when any covered loss occurs subject to the foregoing limitations.

5. The Deductible provision which applies to Insuring Agreement A2. ERISA FIDELITY, shall not apply to loss which is sustained by any Plan subject to ERISA and which Plan is covered under this insurance.

J. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to 3 years afterward or until any claim made under this policy has been settled, whichever is later.

K. Extended Period to Discover Loss

1. We will pay for loss that you sustained prior to the effective date of termination or cancellation of this policy, which is discovered by you:

    a. No later than 120 days following termination or cancellation of the Insuring Agreement or termination of this policy as to an Insured; and

    b. As respects, any **EMPLOYEE BENEFIT PLAN(S)**, no later than twelve months from the date of that termination or cancellation.

2. However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded by this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

L. Inspections and Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

Page 8 of 16

PI-CRP-02 (06/05)

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections nor do we undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs (1) and (2) above apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

M. Joint Insured

1. If more than one **INSURED** is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this policy. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

2. If any **INSURED**, or partner, **MEMBER** or officer of that **INSURED** has knowledge of any information relevant to this policy, that knowledge is considered knowledge of every **INSURED**.

3. An **EMPLOYEE** of any **INSURED** is considered to be an **EMPLOYEE** of every **INSURED**.

4. If this policy or any of its coverages is cancelled or terminated as to any **INSURED**, loss sustained by that **INSURED** is covered only if discovered by you during the period of time provided in V. CONDITION K. Extended Period To Discover Loss.

    However, this extended period to discover loss terminates as to that **INSURED** immediately upon the effective date of any other insurance obtained by that **INSURED** replacing in whole or in part the insurance afforded by this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

5. We will not pay more for loss sustained by more than one **INSURED** than the amount we would pay if all the loss had been sustained by one **INSURED**.

N. Legal Action against Us

You may not bring any legal action against us involving loss:

1. Unless you have complied with all the terms of this policy;

2. Until 90 days after you have filed proof of loss with us; and

3. Unless brought within 2 years from the date you discover the loss.

If any limitation is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

O. Liberalization

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

P. Loss Covered Under More Than One Coverage of This Policy

If two or more coverages of this policy apply to the same loss, we will pay the lesser of:

1. The actual amount of loss; or

Page 9 of 16

PI-CRP-02 (06/05)

2. The sum of the Limits of Insurance applicable to those coverages.

Q. Non-Cumulation of Limit of Insurance

Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or policy period to policy period.

R. Other Insurance

This policy does not apply to loss recoverable or recovered under other insurance or indemnity. If the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this policy will apply to that part of the loss, other than that falling within any Deductible Amount, not recoverable or recovered under the other insurance or indemnity.

However, this policy will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the Declarations.

S. Ownership of Property; Interests Covered

The property covered under this policy is limited to property:

1. That you own or lease;

2. That you hold for others; or,

3. For which you are legally liable, except for property inside the premises of a **CLIENT** of yours.

However, this policy is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this policy must be presented by you.

T. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

U. Records

You must keep records of all property covered under this policy so we can verify the amount of any loss.

V. Recoveries

1. Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this policy will be distributed as follows:

   a. To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

   b. Then to us, until we are reimbursed for the settlement made; and

   c. Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

2. Recoveries do not include any recovery:

   a. From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

   b. Of original **SECURITIES** after duplicates of them have been issued.

PI-CRP-02 (06/05)

W. Territory

This Policy applies to loss occurring anywhere in the world.

X. Transfer of Your Rights and Duties under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Y. Transfer of Your Rights of Recovery against Others to Us

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

Z. Valuation – Settlement

1. Subject to Section II. Limit Of Insurance, we will pay for:

a. Loss of **MONEY** but only up to and including its face value. We may, at our option, pay for loss of **MONEY** issued by any country other than the United States of America:

i. Its face value in the **MONEY** issued by that country; or

ii. In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was discovered.

b. Loss of **SECURITIES** but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

i. Pay the value of such **SECURITIES** or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those **SECURITIES**; or

ii. Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **SECURITIES**. However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

a) Value of the **SECURITIES** at the close of business on the day the loss was discovered; or

b) Limit of Insurance.

c. Loss of or damage to **OTHER PROPERTY** or loss from damage to the **PREMISES** or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

i. The Limit of Insurance applicable to the lost or damaged property;

ii. The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

iii. The amount you actually spend that is necessary to repair or replace the lost or damaged property.

PI-CRP-02 (06/05)

We will not pay on a replacement cost basis for any loss or damage:

    i.    Until the lost or damaged property is actually repaired or replaced; and

    ii.    Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

2. We may, at our option, pay for loss of or damage to property other than **MONEY**:

    a.    In the **MONEY** of the country in which the loss occurred; or

    b.    In the United States of America dollar equivalent of the **MONEY** of the country in which the loss occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was discovered.

3. Any property that we pay for or replace becomes our property.

AA. Conditions Applicable To Insuring Agreement B.

1. Deductible

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement B.

2. Electronic and Mechanical Signatures

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

BB. Conditions Applicable To Insuring Agreement D.

1. Armored Motor Vehicle Companies

Under Insuring Agreement D, we will only pay for the amount of loss you cannot recover:

    a.    Under your contract with the armored motor vehicle company; and

    b.    From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

    c.    Special Limit of Insurance for Specified Property

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

    a.    Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

    b.    Manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

CC. Conditions Applicable To Insuring Agreement F.

1. Special Limit of Insurance for Specified Property

We will only pay up to $5,000 for any one **OCCURRENCE** of loss of or damage to manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

PI-CRP-02 (06/05)

## VI. DEFINITIONS

A. **BANKING PREMISES** means the interior of that portion of any building occupied by a banking institution or similar safe depository.

B. **CLIENT** means any entity or individual for whom you perform services under a written agreement.

C. **COMPUTER FRAUD** means **THEFT** of property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the **PREMISES** or **BANKING PREMISES** to a person (other than a **MESSENGER**) outside those **PREMISES** or to a place outside those **PREMISES**.

D. **COUNTERFEIT** means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

E. **CUSTODIAN** means you, or any of your partners or **MEMBERS**, or any **EMPLOYEE** while having care and custody of property inside the **PREMISES**, excluding any person while acting as a **WATCHPERSON** or janitor.

F. **EMPLOYEE:**

1 Any natural person:

    a. While in your service or for 60 days after termination of service;

    b. Whom you compensate directly by salary, wages or commissions; and

    c. Whom you have the right to direct and control while performing services for you;

2 Any natural person who is furnished temporarily to you:

    a. To substitute for a permanent **EMPLOYEE** as defined in Paragraph (1) above, who is on leave; or

    b. To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the **PREMISES**.

3 Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph (2) above;

4 Any natural person who is:

    a. A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any **EMPLOYEE BENEFIT PLAN(S)** insured under this policy; and

    b. Your director or trustee while that person is handling **FUNDS** or **OTHER PROPERTY** of any **EMPLOYEE BENEFIT PLAN(S)** insured under this policy.

5 Any natural person who is a former **EMPLOYEE**, director, partner, **MEMBER**, **MANAGER**, representative or trustee retained as a consultant while performing services for you; or

6 Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the **PREMISES**.

7 Any natural person who is a **VOLUNTEER** who is not compensated, other than one who is a fund solicitor, while performing services for you that are usual to the duties of an **EMPLOYEE**; or

Page 13 of 16

PI-CRP-02 (06/05)

8    Any natural person who is performing services for you as the chairman, or a member of any committee and whether compensated or not; or

9    Any natural person who is a director or trustee while acting as a member of any of your elected or appointed committees to perform on your behalf, specific, as distinguished from general directorial acts; or

10   Any natural person who is a non-compensated officer.

G.  **EMPLOYEE** does not mean:

1    Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

2    Any **MANAGER**, director, or trustee except while performing acts coming within the scope of the usual duties of an **EMPLOYEE.**

H.  **EMPLOYEE BENEFIT PLAN(S)** means, any welfare, or pension Plan listed in the Declarations, on an attached schedule or for which automatic coverage is afforded, that is subject to the Employee Retirement Income Security Act (ERISA) of 1974, as amended.

I.  **FINANCIAL INSTITUTION** means:

1    a banking, savings, or thrift institution, or

2    a stock brokerage firm, mutual fund, liquid assets fund or similar investment institution where the **INSURED** maintains a **TRANSFER ACCOUNT.**

J.  **FORGERY** means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

K.  **FRAUDULENT INSTRUCTION** means:

1    An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

2    A written instruction (other than those described in Insuring Agreement B.) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

3    An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an **EMPLOYEE** but which was in fact fraudulently transmitted by someone else without your or the **EMPLOYEE'S** knowledge or consent.

L.  **FUNDS** means **MONEY** and **SECURITIES**

M.  **FUNDS TRANSFER FRAUD** means:

1    electronic, telegraphic, cable, teletype or telephone instructions fraudulently transmitted to a **FINANCIAL INSTITUTION** directing such institution to debit a **TRANSFER ACCOUNT** and to transfer, pay or deliver **MONEY** or **SECURITIES** from such **TRANSFER ACCOUNT** which instructions purport to have been transmitted by the **INSURED** but were in fact fraudulently transmitted by someone other than the **INSURED** without its knowledge or consent; or

2    fraudulent written instructions (other than those covered under Insuring Agreement B) issued to a **FINANCIAL INSTITUTION** directing such institution to debit a **TRANSFER ACCOUNT** and to transfer, pay or deliver **MONEY** or **SECURITIES** from such **TRANSFER ACCOUNT** by use of an

Page 14 of 16

PI-CRP-02 (06/05)

electronic funds transfer system at specified intervals or under specified conditions which instructions purport to have been issued by the **INSURED** but were in fact fraudulently issued, forged or altered by someone other than the **INSURED** without its knowledge or consent.

N. **INSURED** means the Named Insured as stated in the Declarations page and, with respect to Insuring Agreement A2 only, any Welfare Plan or Pension Plan sponsored exclusively by the Named Insured.

O. **MANAGER** means a person serving in a directorial capacity for a limited liability company.

P. **MEMBER** means an owner of a limited liability company represented by its membership interest, who also may serve as a **MANAGER.**

Q. **MESSENGER** means you, or a relative of yours, or any of your partners or **MEMBERS**, or any **EMPLOYEE** while having care and custody of property outside the **PREMISES.**

R. **MONEY** means:

   1   Currency, coins and bank notes in current use and having a face value; and

   2   Travelers checks, register checks and money orders held for sale to the public.

S. **OCCURRENCE** means

   1   as respects the Employee Theft Insuring Agreement, all loss caused by, or involving, one or more **EMPLOYEES**, whether the result of a single act or a series of acts.

   2   as respects the Forgery or Alteration Insuring Agreement, all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

   3   as respects all other Insuring Agreements, an act or series of related acts involving one or more persons; or an act or event or a series of related acts or events not involving any person.

T. **OTHER PROPERTY** means any tangible property other than **MONEY** and **SECURITIES** that has intrinsic value but does not include any property excluded under this policy.

U. **PREMISES** means the interior of that portion of any building you occupy in conducting your business.

V. **ROBBERY** means the unlawful taking of property from the care and custody of a person by one who has:

   1   Caused or threatened to cause that person bodily harm; or

   2   Committed an obviously unlawful act witnessed by that person.

W. **SAFE BURGLARY** means the unlawful taking of:

   1   Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

   2   A safe or vault from inside the **PREMISES.**

X. **SECURITIES** means negotiable and nonnegotiable instruments or contracts representing either **MONEY** or property and includes:

   1   Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   2   Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include **MONEY.**

PI-CRP-02 (06/05)

Y.  **THEFT** means the unlawful taking of **MONEY**, **SECURITIES** or **OTHER PROPERTY** to the deprivation of the **INSURED**.

Z.  **TRANSFER ACCOUNT** means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of **FUNDS**:

   1   By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

   2   By means of written instructions (other than those described in Insuring Agreement B.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

AA. **WATCHPERSON** means any person you retain specifically to have care and custody of property inside the **PREMISES** and who has no other duties.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-CRP-03 (06/05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LOSS OF CLIENT'S PROPERTY – BLANKET FORM**

This endorsement modifies the insurance provided under the following:

CRIME PROTECTION PLUS

Part 2. of Insuring Agreement A1 EMPLOYEE THEFT AND CLIENT PROPERTY is deleted from the Crime Protection Plus Policy and the following Insuring Agreement is added to the Crime Protection Plus Policy:

G. LOSS OF CLIENT'S PROPERTY - EMPLOYEE THEFT

> We will pay for direct loss of **MONEY**, **SECURITIES** and other property sustained by a **CLIENT** of yours, resulting from **EMPLOYEE THEFT** and committed by an identified **EMPLOYEE**.

0. LIMIT OF INSURANCE

> The maximum Limit of Insurance we will pay for loss in any one **OCCURRENCE** shall not exceed the following amount: $    1,000,000    .

0. DEDUCTIBLE

> We will not pay for loss in any one **OCCURRENCE** unless the amount of loss exceeds the following Deductible amount: $    10,000   . We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

0. ADDITIONAL EXCLUSION, DEFINITIONS AND CONDITIONS

> In addition to the provisions in the Crime Protection Plus Policy, this Insuring Agreement is subject to the following:

0. Additional Exclusion

> Insuring Agreement G does not apply to loss caused by your **EMPLOYEE** or an **EMPLOYEE** of a predecessor in interest of yours, for whom similar prior insurance has been canceled and not reinstated since the last such cancellation unless the amount of such loss is $1,000 or less.

0. Additional Definitions

> **CLIENT** as used in this Insuring Agreement means an entity for which you perform services as specified in a written agreement, but only while the written agreement is in effect.

> **CLIENT'S PREMISES** as used in this Insuring Agreement means the interior of that portion of any building your **CLIENT** occupies in conducting its business.

> **OCCURRENCE** as used in this Insuring Agreement means all loss caused by, or involving, one or more identified **EMPLOYEES**, whether the result of a single act or series of acts.

Includes copyright material of the Insurance Services Office Inc., used with its permission

PI-CRP-03 (06/05)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

**EMPLOYEE THEFT**: For purposes of this Insuring Agreement **EMPLOYEE THEFT** means the unlawful taking of **MONEY, SECURITIES** and other property to the deprivation of a **CLIENT** of the Insured by an identified **EMPLOYEE** of the Insured acting alone or in collusion with others.

0.   Additional Conditions

.    CONDITIONS P Loss Covered Under More Than One Coverage of This Policy: For purposes of this Insuring Agreement only, is deleted and replaced with the following:

P. Loss Covered Under More Than One Coverage of This Policy:

If two or more Insuring Agreements of this insurance policy apply to the same loss, we will pay the lesser of

0.   The actual amount of the loss; or

0.   The larger of the Limits of Insurance applicable to those Insuring Agreements.

.    V. CONDITIONS S. Ownership of Property, Interests Covered: For purposes of this Insuring Agreement only, V. CONDITIONS S. Ownership of Property, Interests Covered is deleted and replaced with the following:

S.  Ownership of Property; Interests Covered: The property covered under this Insuring Agreement is limited to property:

0.   That your **CLIENT** owns or leases;

0.   That your **CLIENT** holds for others; or

0.   For which your **CLIENT** is legally liable;

while the property is inside your **CLIENT'S PREMISES.**

However, this insurance is for your benefit only it provides no direct rights or benefits to any other person or organization, including your **CLIENT**. Any claim for loss sustained by your **CLIENT** that is covered under this Insuring Agreement must be presented by you.

Includes copyright material of the Insurance Services Office Inc., used with its permission

PI-CRP-04 (06/05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LOSS OF CLIENT'S PROPERTY – SCHEDULED FORM

This endorsement modifies the insurance provided under the following:

CRIME PROTECTION PLUS

Part 2. of Insuring Agreement A1 EMPLOYEE THEFT AND CLIENT PROPERTY is deleted from the Crime Protection Plus Policy and the following Insuring Agreement is added to the Crime Protection Plus Policy:

G. LOSS OF CLIENT'S PROPERTY - EMPLOYEE THEFT

We will pay for direct loss of **MONEY**, **SECURITIES** and other property sustained by a **CLIENT** of yours, resulting from **EMPLOYEE THEFT** and committed by an identified **EMPLOYEE**.

1. LIMIT OF INSURANCE

The maximum Limit of Insurance we will pay for loss in any one **OCCURRENCE** shall not exceed the dollar amount set forth in 4. CLIENT SCHEDULE, below.

2. DEDUCTIBLE

We will not pay for loss in any one **OCCURRENCE** unless the amount of loss exceeds the Deductible shown in 4. CLIENT SCHEDULE, below. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

3. ADDITIONAL EXCLUSION, DEFINITIONS AND CONDITIONS

In addition to the provisions in the Crime Protection Plus Policy, this Insuring Agreement is subject to the following:

1. Additional Exclusion

Insuring Agreement G does not apply to loss caused by your **EMPLOYEE** or an **EMPLOYEE** of a predecessor in interest of yours, for whom similar prior insurance has been canceled and not reinstated since the last such cancellation unless the amount of such loss is $1,000 or less.

2. Additional Definitions

**CLIENT** as used in this Insuring Agreement means an entity as shown in 4. CLIENT SCHEDULE for which you perform services as specified in a written agreement as shown in 4. CLIENT SCHEDULE, but only while the written agreement is in effect.

**CLIENT'S PREMISES** as used in this Insuring Agreement means the interior of that portion of any building your **CLIENT** occupies in conducting its business.

Includes copyright material of the Insurance Services Office Inc., used with its permission

PI-CRP-04 (06/05)

**OCCURRENCE** as used in this Insuring Agreement means all loss caused by, or involving, one or more identified **EMPLOYEES**, whether the result of a single act or series of acts.

**EMPLOYEE THEFT**: For purposes of this Insuring Agreement **EMPLOYEE THEFT** means the unlawful taking of **MONEY, SECURITIES** and other property to the deprivation of a **CLIENT** of the Insured by an identified **EMPLOYEE** of the Insured acting alone or in collusion with others.

3.  Additional Conditions

    a.  CONDITIONS P Loss Covered Under More Than One Coverage of This Policy: For purposes of this Insuring Agreement only, is deleted and replaced with the following:

        P   Loss Covered Under More Than One Coverage of This Policy:

            If two or more Insuring Agreements of this insurance policy apply to the same loss, we will pay the lesser of:

            1.  The actual amount of the loss; or

            2.  The larger of the Limits of Insurance applicable to those Insuring Agreements.

    b.  V. CONDITIONS S. Ownership of Property, Interests Covered: For purposes of this Insuring Agreement only, V. CONDITIONS S. Ownership of Property, Interests Covered is deleted and replaced with the following:

        S.  Ownership of Property; Interests Covered: The property covered under this Insuring Agreement is limited to property:

            1.  That your **CLIENT** owns or leases;

            2.  That your **CLIENT** holds for others; or

            3.  For which your **CLIENT** is legally liable;

                while the property is inside your **CLIENT'S PREMISES.**

                However, this insurance is for your benefit only it provides no direct rights or benefits to any other person or organization, including your **CLIENT**. Any claim for loss sustained by your **CLIENT** that is covered under this Insuring Agreement must be presented by you.

Includes copyright material of the Insurance Services Office Inc., used with its permission

PI-CRP-04 (06/05)

| 4.  CLIENT SCHEDULE | | | |
|---|---|---|---|
| Client | Written Agreement Identification | Limit of Liability | Deductible |
| Ferrara Candy Company | 8/25/2021 on file | 3,000,000 | 10,000 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Includes copyright material of the Insurance Services Office Inc., used with its permission

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-CRP-06 (06/05)

**fcTHIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONVERT TO AN AGGREGATE LIMIT OF INSURANCE

This endorsement modifies the insurance provided under the following:

CRIME PROTECTION PLUS

PROVISIONS

II. LIMIT OF LNSURANCE is replaced by the following:

II. AGGREGATE LIMIT OF INSURANCE

A.  The most we will pay for loss in any one **OCCURRENCE** is the applicable Limit of Insurance shown in the Declarations.

B.  The most we will pay in the aggregate for all loss discovered during the policy period, regardless of the number **OCCURRENCE,** is the Limit of Insurance shown in the Declarations.

C.  The Limit of Insurance shall be reduced by the amount of any payment made by us under the terms of this insurance. If the Limit of Insurance is exhausted, we will have no further liability to pay for loss which may be discovered during the remainder of the policy period.

D.  Any recovery made by us after settlement of a loss covered by this insurance shall not be used to increase or reinstate the Limit of Insurance.

A.  In the event a loss of covered property is settled by us through the use of a Lost Securities Bond, such loss shall not reduce the Limit of Insurance.

Includes copyright material of the Insurance Services Office Inc., used with its permission

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-CRP-09 (06/05)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INCLUDE DESIGNATED PERSONS OR CLASSES OF PERSONS AS EMPLOYEES

This endorsement modifies the insurance provided under the following:

**CRIME PROTECTION PLUS**

**A. Schedule***

| Persons Or Classes Of Persons |
|---|
| Independent contractor who is a person or organization under written contract or written agreement that provides **staffing services** on your behalf and at the direction of your **client**.<br><br>For purposes of this endorsement **staffing services** means service(s) provided by your staffing company to your **clients** including but not limited to:<br>    1.  Staffing related administrative services provided by an Administrative Services Organization (ASO);<br>    2.  Staffing related services as Professional Employer Organization (PEO) you provide to your **clients** but not coverage is provided to any person you lease to your **client** under a written PEO service agreement or contract;<br>    3.  Staffing related services provided to your **clients** for the recruitment, selection and placement of a person for employment with a **client**;<br>    4.  Temporary, contingent or contract placement services;<br>    5.  Services performed on behalf of your **client** by your **employee** for a temporary period of time to perform the duties to which you have agreed;<br>    6.  Services performed for a **client** to supply that **client** with your **employee** for a temporary period of time to perform the duties to which you have agreed. |

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**B. Provisions**

The Definition of **EMPLOYEE** is amended to include any natural person or group of persons named or described in the Schedule.

Includes copyright material of the Insurance Services Office, Inc., used with its permission.

PI-CRP-023 (11/19)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## CRIME PROTECTION PLUS PRO-PAK

This endorsement modifies the insurance provided under the following:

**CRIME PROTECTION PLUS**

I.   **Schedule of Additional Coverages and Condition Amendments:**

The following is a summary of additional coverages and condition amendments provided by this endorsement.  This endorsement is subject to the provisions of your policy.  Specific  exclusionary endorsements attached to the policy supersede coverage provisions contained in this endorsement.

| Additional Coverages | Limit of Insurance | Page # |
|---|---|---|
| Include Expenses Incurred To Establish Amount of Covered Loss | The Lesser of $100,000 or 25% of the Covered Loss | 1 |
| Computer Violation and Data Reconstruction Expense | The Lesser of $50,000 or 25% of the Covered Loss | 2 |
| **Condition Amendments** | **Revision** | **Page #** |
| Insuring Agreement A.D. ERISA Fidelity Amendments | Amending Exclusions A, H, J and K to comply with ERISA requirements | 3 |
| Cancellation As To Any Employee | $25,000 | 3 |
| Consolidation – Merger | 30% of your total assets | 3 |
| Loss Notice Threshold | Exceeds 25% of the applicable Deductible Amount | 4 |
| Definition Amendment | Amends definition of Employee to include terminated employees for 90 days | 4 |

II.  **Additional Coverages**

A.  **Include Expenses Incurred to Establish Amount of Covered Loss**

The following is added to I. INSURING AGREEMENTS, A1. EMPLOYEE THEFT AND CLIENT PROPERTY:

3.   Include Expenses Incurred to Establish Amount of Covered Loss

a.  We will pay for reasonable costs, fees or other expenses that you incur and pay to an independent accounting, auditing, or other similar service used to determine the amount of loss covered under this insurance.

PI-CRP-023 (11/19)                          Page 1 of 6

© 2019 Philadelphia Consolidated Holding Corp.

PI-CRP-023 (11/19)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

b.  We will pay for reasonable costs, fees or other expenses after settlement of covered loss.

c.  Section IV. EXCLUSIONS, D.3., is deleted in its entirety and replaced with the following:

"Payment of costs, fees or other expenses you incur in establishing the existence of loss under this policy."

d.  We will have no liability to pay any such costs, fees or other expenses if the amount of the covered loss does not exceed the Deductible Amount of the applicable Insuring Agreement. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance, shown in **e.** below.

e.  The most that we will pay for reasonable costs, fees or other expenses is limited to the lesser of the Limit of Insurance of $100,000 or 25% of the Covered Loss. The amount that we will pay is part of, not in addition to, the Limit of Insurance for the EMPLOYEE THEFT AND CLIENT PROPERTY Insuring Agreement shown in the DECLARATIONS.

**B.  Computer Violation and Data Reconstruction Expense Coverage**

The following is added to I. INSURING AGREEMENTS, F.  COMPUTER FRAUD AND FUNDS TRANSFER FRAUD:

3.  Computer Violation and Data Reconstruction Expense Coverage

a.  We will pay for reasonable costs, fees or other expenses, other than your internal costs (such as **EMPLOYEE** salary or costs associated with restoring **DATA** from backup), incurred by you, with our prior written consent, to reproduce or duplicate **DATA** or computer programs damaged or destroyed by a **COMPUTER ATTACK**.  If such **DATA** or computer programs cannot be duplicated from other **DATA** or computer programs, then we will also pay reasonable costs incurred for computer time, computer programmers, technical experts or consultants to restore such **DATA** or computer programs to substantially the same level or operational capability existing immediately before the covered loss.  However, we will not pay for any expenses incurred by a **CLIENT**.

b.  We will pay for reasonable costs, fees or other expenses after restoration of **DATA** is completed.

c.  The following, when used in this section, are defined as follows:

1.  **COMPUTER ATTACK** means **UNAUTHORIZED ACCESS OR USE** or transmission or receipt of a **CYBERTOXIN** that alters, corrupts, destroys, disrupts, deletes, or damages **DATA**, provided any of the foregoing is intentional, and specifically targeted at you.  Recurrence of the same **CYBERTOXIN** after the insured **COMPUTER NETWORK** has been restored shall be considered a separate **OCCURRENCE**.

2.  **COMPUTER NETWORK** means computer hardware, software, firmware, storage media, and components thereof, including electronic **DATA** stored thereon, which are linked together through a network of two or more computers, including such networks accessible through the **INTERNET** and any extranets, intranets, or virtual private networks. **COMPUTER NETWORK** shall also include off-line media libraries.

3.  **CYBERTOXIN** means an unauthorized corrupting or harmful piece of code. **CYBERTOXIN** includes, but is not limited to, computer viruses, adware, spyware, Trojan horses, worms, nematodes and time or logic bombs.

© 2019 Philadelphia Consolidated Holding Corp.

PI-CRP-023 (11/19)

4. **DATA** means information electronically stored or processed in a **COMPUTER NETWORK**.

5. **INTERNET** means a worldwide network of computer networks that facilitate data transmission and exchange, including any future form the **INTERNET** might take.

6. **UNAUTHORIZED ACCESS OR USE** means the gaining of access to a **COMPUTER NETWORK** by an unauthorized person or persons or the use of a **COMPUTER NETWORK** by an unauthorized person or persons or an authorized person or persons in an unauthorized manner.

d. We will have no liability to pay any such costs, fees or other expenses if the amount of the covered loss does not exceed the Deductible Amount of the applicable Insuring Agreement. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance, shown in **e.** below.

e. The most that we will pay for reasonable costs, fees or other expenses is limited to the lesser of the Limit of Insurance of $50,000 or 25% of the Covered Loss. The amount that we will pay is part of, not in addition to, the Limit of Insurance for the **COMPUTER FRAUD AND FUNDS TRANSFER FRAUD** Insuring Agreement shown in the **DECLARATIONS.**

**III. Insuring Agreement A2. ERISA Fidelity Amendments**

The following amendments apply solely as respects coverage afforded under Insuring Agreement A.2. ERISA FIDELITY:

A. Exclusion A. is deleted and replaced by the following:
   A. Loss resulting from **THEFT** or any other dishonest or fraudulent act committed by:

   1. You; or
   2. Any of your partners or **MEMBERS**; or
   3. Any officer or employee who has a 25% interest or greater ownership interest in any one or more of those entities named as **INSUREDS**

   Whether acting alone or in collusion with other persons, except while handling **MONEY, SECURITIES,** or **OTHER PROPERTY** of an **EMPLOYEE BENEFIT PLAN(S).**

B. Exclusion H is deleted in its entirety.

C. Exclusion J. is deleted and replaced with the following:

   J. 1. The disclosure or use of another person's or organization's confidential or personal information, except as provided in Paragraph 2

   2. The disclosure of your or an **EMPLOYEE BENEFIT PLAN** participant's confidential or personal information. However, this Paragraph (2) does not apply to loss otherwise covered under Insuring Agreement A.1. that results directly from the use of your or an **EMPLOYEE BENEFIT PLAN** participant's confidential or personal information.

   For the purposes of this exclusion, confidential or personal information includes, but is not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, retirement or health savings account information or any other type of nonpublic information.

PI-CRP-023 (11/19)                    Page 3 of 6

© 2019 Philadelphia Consolidated Holding Corp.

PI-CRP-023 (11/19)

D. Exclusion K. 3 and K.4. are deleted in their entirety.

IV. **Section V. Conditions Amendments**

A. **Amended Cancellation As To Any Employee**

Section V. CONDITIONS, Paragraph A., is deleted in its entirety and replaced with the following:

A. Cancellation as to any **EMPLOYEE**

1. This policy is cancelled as to any **EMPLOYEE**:

a. Immediately upon discovery by:

(i) You; or

(ii) Any of your partners, **MEMBERS**, **MANAGERS**, officers, directors or trustees not in collusion with the **EMPLOYEE**;

of **THEFT** or any other dishonest act committed by the **EMPLOYEE** whether before or after becoming employed by you, unless the amount of such loss is $25,000 or less.

2. On the date specified in a notice mailed to the first Named Insured. That date will be at least 60 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. **Amended Consolidation – Merger Condition**

Section V. CONDITIONS, Paragraph E., is deleted in its entirety and replaced with the following:

E. Consolidation – Merger

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity, any additional persons become **EMPLOYEES**, or you acquire the use and control of any additional **PREMISES**:

1. You must give us written notice and obtain our written consent to extend this insurance to such additional **EMPLOYEES** or **PREMISES**. We may condition our consent upon payment of an additional premium;

2. For the first 90 days after the effective date of such consolidation, merger, or purchase or acquisition of assets or liabilities, any insurance afforded for **EMPLOYEES** or **PREMISES** also applies to these additional **EMPLOYEES** or **PREMISES** for acts committed or events occurring within this 90-day period, or prior to the end of the policy period, whichever occurs first.

If the consolidation or merger with, or purchase of assets of some other entity exceeds 30% of your assets, we require the insured to notify us within 90 days and provide any

PI-CRP-023 (11/19)                    Page 4 of 6

© 2019 Philadelphia Consolidated Holding Corp.

PI-CRP-023 (11/19)

underwriting information the underwriter requires, at which time the underwriter will determine whether coverage will be extended for this transaction and whether an additional premium will apply.

However, we agree to automatically extend such coverage, without the payment of an additional premium for the remainder of the Policy Period, as is afforded under this policy to any consolidation or merger with, or purchase of assets of, some other entity which has less than 30% of your total assets as reflected on your most recent fiscal year-end financial statement.

**C. Amended Loss Notice Threshold**

Section V. CONDITIONS, Paragraph H., is deleted in its entirety and replaced with the following:

**H.** Duties In The Event Of Loss

After you discover a loss or a situation that may result in loss of or damage to **MONEY**, **SECURITIES**, or **OTHER PROPERTY** that exceeds 25% of the applicable Deductible Amount, you must:

1. Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreements A1., A2. or B.) involves a violation of law, you must also notify the local law enforcement authorities.

2. Submit to examination under oath at our request and give us a signed statement of your answers.

3. Give us a detailed, sworn proof of loss within 120 days.

4. Cooperate with us in the investigation and settlement of any claim.

**V. Definition Amendment**

Section VI. DEFINITIONS, Paragraph F. 1 and 2 are deleted in their entirety and replaced with the following:

**F. EMPLOYEE:**

1. Any natural person:

    a. While in your service or for 90 days after termination of service;

    b. Whom you compensate directly by salary, wages or commissions; and

    c. Whom you have the right to direct and control while performing services for you;

2. Any natural person who is furnished temporarily to you:

    d. To substitute for a permanent **EMPLOYEE** as defined in Paragraph 1. above, who is on leave; or

    e. To meet seasonal or short-term work load conditions;

PI-CRP-023 (11/19)                              Page 5 of 6

© 2019 Philadelphia Consolidated Holding Corp.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-CRP-023 (11/19)

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the **PREMISES**.

All other terms and conditions remain unchanged.

© 2019 Philadelphia Consolidated Holding Corp.

Philadelphia Indemnity Insurance Company

PI-CRP-24 (07/17)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FRAUDULENT INDUCEMENT INSURING AGREEMENT**

This endorsement modifies the insurance provided under the following:

**CRIME PROTECTION PLUS**

I.    The following is added to I. INSURING AGREEMENTS:

**H. FRAUDULENT INDUCEMENT**

We will pay for the direct loss of **MONEY** and **SECURITIES** resulting from your transfer, payment, or delivery of **MONEY** and **SECURITIES** that is the direct result of **FRAUDULENT INDUCEMENT**.

II.   DECLARATIONS, ITEM 4. Coverages, Limits of Insurance and Deductibles is amended by the addition of the following to the Schedule:

| Insuring Agreement Forming Part of the Policy | Limit of Insurance | Deductible Amount |
|---|---|---|
| H. FRAUDULENT INDUCEMENT | $  100,000 | $   10,000 |

III.  Section IV. EXCLUSIONS is amended to include the following:

This Policy Does Not Apply To:

1. Loss of **MONEY** and **SECURITIES** resulting from your transfer, payment, or delivery of **MONEY** and **SECURITIES** that is the direct result of **FRAUDULENT INDUCEMENT**, unless covered under the **FRAUDULENT INDUCEMENT** Insuring Agreement H.

2. Loss resulting directly or indirectly from the input of **ELECTRONIC DATA** by a natural person having the authority to enter the **COMPUTER SYSTEM**, unless covered under Insuring Agreements A1., A2., F. or the **FRAUDULENT INDUCEMENT** Insuring Agreement H.

3. Loss resulting directly or indirectly from forged, altered or fraudulent documents or written instruments used as source documentation in the preparation of **ELECTRONIC DATA**, unless covered under Insuring Agreements A1., A2. or the **FRAUDULENT INDUCEMENT** Insuring Agreement H..

4. Loss resulting directly or indirectly from:

   a. the giving or surrendering of **MONEY, SECURITIES** or **OTHER PROPERTY** in any exchange or purchase, whether genuine or fictitious; or

   b. any other giving or surrendering of, or voluntary parting with, **MONEY, SECURITIES** or **OTHER PROPERTY**,

2017 Philadelphia Consolidated Holding Corp.

PI-CRP-24 (07/17)

Philadelphia Indemnity Insurance Company

PI-CRP-24 (07/17)

whether or not induced by any dishonest or fraudulent act, except when covered under:

    i. Insuring Agreement A1.;

    ii. Insuring Agreement E.; or

    iii. the FRAUDULENT INDUCEMENT Insuring Agreement H.

IV.    Section IV. EXCLUSION N. is amended to read:

N. Insuring Agreement F. does not apply to:

1.    Loss resulting from the giving or surrendering of **MONEY, SECURITIES** or **OTHER PROPERTY,** or property of any kind including, but not limited to intangible property.

2.    Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

    a.   An inventory computation; or

    b.   A profit or loss computation.

3.    Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any **MONEY, SECURITIES** or **OTHER PROPERTY,** or property of any kind including, but not limited to intangible property.

V.    Solely with respect to the FRAUDULENT INDUCEMENT Insuring Agreement H., the following are added to Section IV.EXCLUSIONS:

This Policy Does Not Apply To:

1.    Loss of **MONEY, SECURITIES** or **OTHER PROPERTY**:

    a.   while in the mail; or

    b.   while in the custody of any messenger, carrier for hire, or armored motor vehicle company.

2.    Loss or damage due to **THEFT** by an **EMPLOYEE, FORGERY, COMPUTER FRAUD, FUNDS TRANSFER FRAUD,** or acceptance of money orders or **COUNTERFEIT** paper currency;

3.    Loss due to any investment in **SECURITIES**, or ownership in any corporation, partnership, real property, or similar instrument, whether or not such investment is genuine;

4.    Loss due to the failure, malfunction, illegitimacy, inappropriateness, or inadequacy of any product or service;

5.    Loss resulting directly or indirectly from the failure of any party to perform in whole or in part under any contract;

2017 Philadelphia Consolidated Holding Corp.

PI-CRP-24 (07/17)

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

Philadelphia Indemnity Insurance Company

PI-CRP-24 (07/17)

6. Loss due to any non-payment of or default upon any loan, extension of credit, or similar promise to pay;

7. Loss due to any party's use of or acceptance of any credit, debit or charge card or any access, convenience, identification, stored value or other similar card or instrument, including the information contained on such cards, whether or not genuine; or

8. Loss due to items of deposit which are not finally paid for any reason, including forgery or any other fraud; however, this exclusion does not apply to United States Government checks or drafts that are returned by the United States Government for any reason after the funds for said checks or drafts have been credited to the **INSURED's** account at a **FINANCIAL INSTITUTION.**

VI.     Section VI. DEFINITIONS is amended to include the following:

**AUTHORIZED PERSON** means any officer or employee who has a 25% interest or greater ownership in any one or more of those entities named as INSUREDS, sole proprietor, director, trustee, natural person partner, LLC Manager or LLC Member who is authorized by the **Insured** to transfer, pay, or deliver **MONEY** or **SECURITIES** or to instruct **EMPLOYEES** to transfer, pay or deliver **MONEY** or **SECURITIES.**

**COMMUNICATION** means an electronic, telegraphic, cable, teletype, telephonic voice, telefacsimile, or written instruction received by an **EMPLOYEE** that:

1. directs the **EMPLOYEE** to transfer, pay, or deliver **MONEY** or **SECURITIES**;

2. contains a misrepresentation of a material fact; and

3. is relied upon by the **EMPLOYEE**, believing the material fact to be true.

**COMPUTER PROGRAM** means a set of related electronic instructions that direct the operations and functions of a **COMPUTER SYSTEM** or devices connected to it that enable the **COMPUTER SYSTEM** or devices to receive, process, store, retrieve, send, create or otherwise act upon **ELECTRONIC DATA.**

**COMPUTER SYSTEM** means:

1. any computer; and

2. any input, output, processing, storage or communication device, or any related network, cloud service, operating system, or application, that is connected to, or used in connection with such computer, that is rented by, owned by, leased by, licensed to, or under the direct operational control of, the **INSURED.**

**ELECTRONIC DATA** means facts or information converted to a form:

1. usable in a **COMPUTER SYSTEM;**

2. that does not provide instructions or directions to a **COMPUTER SYSTEM;** or

3. that is stored on electronic processing media for use by a **COMPUTER PROGRAM.**

2017 Philadelphia Consolidated Holding Corp.

Philadelphia Indemnity Insurance Company

PI-CRP-24 (07/17)

**FRAUDULENT INDUCEMENT** means the intentional misleading of an **EMPLOYEE** by a person purporting to be:

1. a **VENDOR**

2. a **CLIENT**;

3. an **EMPLOYEE**; or

4. an **AUTHORIZED PERSON**,

through the use of a **COMMUNICATION**.

**FRAUDULENT INDUCEMENT** does not include **COMPUTER FRAUD** or **FUNDS TRANSFER FRAUD**.

**VENDOR** means an entity or natural person that has provided goods or services to the **Insured** under a genuine, preexisting:

1. written agreement; or

2. other agreed upon arrangement.

**VENDOR** does not include any **FINANCIAL INSTITUTION**, asset manager, armored motor vehicle company or similar entity.

VII.     The following replaces section VI. DEFINITIONS, B. CLIENT:

B. **CLIENT** means any entity or individual for whom you provide goods or services under a written agreement or other agreed upon arrangement.

VIII.    The following replaces section VI. DEFINITIONS, C. COMPUTER FRAUD:

C. **COMPUTER FRAUD** means **THEFT** of property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the **PREMISES** or **BANKING PREMISES** to a person (other than a **MESSENGER**) outside those **PREMISES** or to a place outside those **PREMISES**.

**COMPUTER FRAUD** does not include **FRAUDULENT INDUCEMENT** or **FUNDS TRANSFER FRAUD**.

IX.      The following replaces section VI. DEFINITIONS, M. FUNDS TRANSFER FRAUD:

M. **FUNDS TRANFER FRAUD** means:

1.   an electronic, telegraphic, cable, teletype or telephone instruction fraudulently transmitted to a **FINANCIAL INSTITUTION** directing such institution to debit a **TRANSFER ACCOUNT** and to transfer, pay or deliver **MONEY** or **SECURITIES** from the **TRANSFER ACCOUNT** which instruction purports to have been transmitted by the **INSURED**, but was in fact fraudulently transmitted by someone other than the **INSURED** without the **INSURED's** knowledge or consent; or

2017 Philadelphia Consolidated Holding Corp.

PI-CRP-24 (07/17)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

Philadelphia Indemnity Insurance Company

PI-CRP-24 (07/17)

2. a fraudulent written instruction, other than one covered under Insuring Agreement B., issued to a **FINANCIAL INSTITUTION** directing such **FINANCIAL INSTITUTION** to debit a **TRANSFER ACCOUNT** and to transfer, pay or deliver **MONEY** or **SECURITIES** from such **TRANSFER ACCOUNT** by use of an electronic funds transfer system at specified intervals or under specified conditions, which written instruction purports to have been issued by the **INSURED** but was in fact fraudulently issued, the result of **FORGERY**, or altered by someone other than the **INSURED** without the **INSURED's** knowledge or consent.

**FUNDS TRANFER FRAUD** does not include **FRAUDULENT INDUCEMENT** or **COMPUTER FRAUD**.

2017 Philadelphia Consolidated Holding Corp.

PI-CRP-24 (07/17)

PI-CRP-IL-1 (10/05)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ILLINOIS CHANGES**

This endorsement modifies insurance provided under the following:

**CRIME PROTECTION PLUS**

A. Condition B. Cancellation of Policy is replaced by the following:

 1.  The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

 2. Cancellation Of Policies In Effect 60 Days Or Less

   a.  We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   b.  If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   c.  If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

     (1)  30 days prior to the effective date of cancellation if the policy has been in effect for less than 60 days.

     (2)  60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

 3. 60 Days Or More

   If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   a.  Nonpayment of premium;

   b.  The policy was obtained through a material misrepresentation;

   c.  Any insured has violated any of the terms and conditions of the policy;

   d.  The risk originally accepted has measurably increased;

   e.  Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f.  A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

Page 1 of 2
Includes copyright material of the Insurance Services Office, Inc. used with its permission.

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-CRP-IL-1 (10/05)

    4.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    5.  If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

B. The following is added and supersedes any other provision to the contrary:

   NONRENEWAL

   If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

   If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

C. Mailing Of Notices

   We will mail cancellation and nonrenewal notices to the last addresses known to us. Proof of mailing will be sufficient proof of notice.

D. Condition N. Legal Action Against Us is replaced by the following:

   **Legal Action Against Us**

   You may not bring any legal action against us involving loss:

    1.  Unless you have complied with all the terms of this insurance; and

    2.  Until 90 days after you have filed proof of loss with us; and

    3.  Unless brought within 2 years from the date you discover the loss. But we will extend this 2- year period by the number of days between the date proof of loss is filed and the date the claim is denied in whole or in part.

E. Condition R. Other Insurance is replaced by the following:

   **OTHER INSURANCE**

   You may have other insurance subject to the same plan, terms, conditions and provisions as this insurance. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance bears to the Limits of Insurance of all insurance covering on the same basis.

   If there is other insurance covering the same loss or damage, other than that described above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

Page 2 of 2
Includes copyright material of the Insurance Services Office, Inc. used with its permission.

PI-TS-043 (08/21)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ  IT
CAREFULLY.**

## TEMPORARY STAFFING GUESTS' PROPERTY COVERAGE

This endorsement modifies insurance provided under the following:

**CRIME PROTECTION  PLUS**

**SCHEDULE**

| [x] Guests' Property – In Safe Deposit Boxes | | |
|---|---|---|
| **Address Of Premises** | **Limit Of Insurance Per Occurrence** | **Deductible Amount Per Occurrence** |
| Any CLIENT'S PREMISES | $ 100,000 | $ 1,000 |

| [x] Guests' Property – Inside The Premises | | | |
|---|---|---|---|
| **Address Of Premises** | **Limit Of Insurance** | | **Deductible Amount Per Occurrence** |
| | **Per Guest** | **Per Occurrence** | |
| Any CLIENT'S PREMISES | $ 100,000 | $ 100,000 | $ 1,000 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

1. The following section(s) of this Insuring Agreement, for which a Limit of Insurance is shown in the Schedule, is added to Section I. Insuring Agreements:

 J. GUESTS' PROPERTY

 1. We will pay for loss of or damage to **GUESTS' PROPERTY** for which you are legally liable while the property is in a safe deposit box inside the "premises".

 2. We will pay for loss of or damage to **GUESTS' PROPERTY** for which you are legally liable while the property is inside the **PREMISES** or in your possession.

 If you are sued for refusing to pay for loss of or damage to **GUESTS' PROPERTY**, and you have our written consent to defend against the suit, we will pay for any reasonable

PI-TS-043 (08/21)

Page 1 of 3
Includes copyright material of the Insurance Services Office, Inc., used with its
permission.

FILED DATE: 1/20/2026 8:44 AM  2026CH00528

PI-TS-043 (08/21)

legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the applicable Limit of Insurance shown in the Schedule.

2. Solely as respects coverage provided under this endorsement, Section II. Limit of Insurance is replaced by the following:

    a. Under Paragraph J.1.above, the most we will pay for all loss resulting directly from an **OCCURRENCE** is the Per Occurrence Limit of Insurance shown in the Schedule.

    b. Under Paragraph J.2above:

        (1) The most we will pay in the aggregate for all loss resulting directly from an **OCCURRENCE** is the Per Occurrence Limit of Insurance shown in the Schedule.

        (2) Subject to Paragraph J.2.above, the most we will pay for all loss resulting directly from an **OCCURRENCE** for any one guest, is the Per Guest Limit of Insurance shown in the Schedule.

3. Section III. DEDUCTIBLE is replaced by the following:

    We will not pay for loss resulting directly from an **OCCURRENCE** unless the amount of loss exceeds the Deductible Amount shown in the Schedule. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. In the event that more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount may be applied.

4. Section IV. Exclusions is amended as follows:

    A. Exclusion B is deleted and replaced with the following:

        B. Loss resulting from **THEFT** or any other dishonest act committed by any of your **EMPLOYEES**, **MANAGERS**, directors, trustees or authorized representatives:

            1.   Whether acting alone or in collusion with other persons; or

            2.   While performing services for you or otherwise;

        Except when covered under Insuring Agreements A1, A2 or J.

    B. The following exclusions are added:

        Insuring Agreement J does not cover:

            (1) Loss of or damage to property resulting from fire, however caused.

            (2) Loss of or damage to property resulting from the spilling, upsetting or leaking of any food or liquid.

            (3) Loss of or damage to property resulting from insects, animals, wear and tear, gradual deterioration or inherent vice.

            (5) Under Paragraph J.2., loss of or damage to property while in your care and custody for laundering or cleaning.

            (6) Loss resulting from your release of any other person or organization from legal liability.

            (7) Under Paragraph J.2., loss of or damage to samples or articles carried or held for sale or delivery after sale.

            (8) Under Paragraph J.2.., loss of or damage to any vehicle including:

            (a) Its equipment and accessories; and

PI-TS-043 (08/21)

Includes copyright material of the Insurance Services Office, Inc., used with its permission.

PI-TS-043 (08/21)

       (b) Any property contained in or on a vehicle.

5. Under Section V. Conditions:

    a. The Records Condition does not apply to this Insuring Agreement.

    b. The following condition is added:

        Bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Insuring Agreement.

    c. The Ownership Of Property; Interests Covered Condition is replaced by the following:

        The property covered under this Insuring Agreement is limited to property belonging to your guests while the property is in a safe deposit box, inside the "premises" or in your possession.

        However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization, including your **CLIENT** or your **CLIENT**'s guest. Any claim for loss that is covered under this Insuring Agreement must be presented by you.

6. Under Section VI. Definitions:

    a. The following definition is added:

        " **GUESTS' PROPERTY** " means **"MONEY"**, **"SECURITIES"** and **"OTHER PROPERTY"** belonging to your **CLIENT**'s guest.

    b. The definition of **"PREMISES"** is replaced by the following:

        **"PREMISES"** means the interior of that portion of any building at the address shown in the Schedule that you occupy in conducting your business.

All other terms and conditions remain unchanged.

PI-TS-043 (08/21)

Includes copyright material of the Insurance Services Office, Inc., used with its permission.

PI-TS-044 (08/21)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TEMPORARY STAFFING AGENCIES TRADE SECRET EMPLOYEE THEFT COVERAGE

This endorsement modifies the insurance provided under the following:

**CRIME PROTECTION PLUS**

I.  Section I. INSURING AGREEMENTS, is amended by adding the following:

| Insuring Agreement |
| --- |
| **A4. TRADE SECRET EMPLOYEE THEFT** |

| Limit Of Insurance | Deductible Amount |
| --- | --- |
| $ 250,000 | $ 25,000 |
| *Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. | |

### A4. TRADE SECRET EMPLOYEE THEFT

We will indemnify the **INSURED** for loss of earnings sustained by the **INSURED** as the direct result of theft of the **INSURED**'s customer list or applicant/employee list, as defined in this policy to be a **TRADE SECRET** by any **EMPLOYEE**, acting alone or in collusion with others, subject to the Valuation – Settlement section of this policy as stated within this endorsement.

2. Section VI. DEFINITIONS is amended as follows:

The following Definition is added:

AD.  **TRADE SECRET** means the customer list, including the names, addresses and identity of all **EMPLOYEE** customers who have listed job orders with a Personnel Consultant and/or Temporary Staffing agency within a period of 180 days prior to the separation of any **EMPLOYEE** from the agency and shall also include the names, addresses and identity of all applicant/employees of the Personnel Consultant or Temporary Staffing agency shall constitute a **TRADE SECRET** and confidential information of, and shall belong to, the Personnel Consultant or Temporary Staffing agency.

Notwithstanding the provisions of the paragraph above, no liability shall attach to, and no cause of action shall arise from the use of a customer list of any Personnel Consultant or Temporary Staffing agency by a former **EMPLOYEE** who enters into business as a Personnel Consultant or Temporary Staffing agency more than one year after the termination of his/her employment.

3. Section V. CONDITIONS is amended as follows:

Condition Z. Valuation – Settlement is deleted in its entirety and replaced with the following.

Z.  Valuation – Settlement

1.  Subject to Section II. Limit of Insurance, we will pay for:

PI-TS-044 (08/21)

PI-TS-044 (08/21)

a. Loss of **MONEY** but only up to and including its face value. We may, at our option, pay for loss of **MONEY** issued by any country other than the United States of America:

   (i) Its face value in the **MONEY** issued by that country; or

   (ii) In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was discovered.

b. Loss of **SECURITIES** but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

   (i) Pay the value of such **SECURITIES** or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those **SECURITIES**; or

   (ii) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **SECURITIES**. However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

   I. Value of the **SECURITIES** at the close of business on the day the loss was discovered; or

   II. **Limit of Insurance.**

c. Loss of or damage to **OTHER PROPERTY** or loss from damage to the **PREMISES** or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

   (i) The Limit of Insurance applicable to the lost or damaged property;

   (ii) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

   (iii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

We will not pay on a replacement cost basis for any loss or damage:

   (i) Until the lost or damaged property is actually repaired or replaced; and

   (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

2. We may, at our option, pay for loss of or damage to property other than **MONEY**:

   a. In the **MONEY** of the country in which the loss occurred; or

PI-TS-044 (08/21)

PI-TS-044 (08/21)

  b. In the United States of America dollar equivalent of the **MONEY** of the country in which the loss occurred determined by the rate of exchange published in The Wall Street Journal on the day the loss was discovered.

3. Any property that we pay for or replace becomes our property.

4. The Company shall not be liable under Insuring Agreement A4 as respects **TRADE SECRETS** until the **INSURED** shall determine the amount of the loss. This shall be done by the **INSURED** submitting the total net income for the three (3) months immediately following the discovery of the loss and comparing this figure with the total net income for the same three (3) months of the prior calendar year.

If the total net income for the three (3) months immediately following the discovery of loss is less than the total net income for the same three (3) months of the prior calendar year, that difference shall constitute a loss to which the deductible shall then be applied; subject to the limits of liability as respects Insuring Agreement A4.

The Company will not be liable under Insuring Agreement A4 as respects **TRADE SECRETS**;

  if the total revenue for the three (3) months immediately following the discovery of the loss shall exceed the total revenue for the same three (3) months of the prior calendar year.

Section IV. EXCLUSIONS is amended as follows:

Exclusion J is deleted in its entirety and replaced with the following:

J. Loss of trade secrets, confidential processing methods, confidential information or intangible property of any kind, except for **EMPLOYEE THEFT OF TRADE SECRETS** as specifically granted by Insuring Agreement **A4. TRADE SECRET EMPLOYEE THEFT COVERAGE**, if purchased.

All other terms and conditions remain unchanged.

PI-TS-044 (08/21)

PI-ARB-1 IL (6/03)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BINDING ARBITRATION

Wherever, used in this endorsement: 1) "we", "us", "our", and "insurer" mean the insurance company which issued this policy; and 2) "you", "your", "named insured", "first named insured", and "insured" mean the Named Corporation, the Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "other insured(s)" means all other persons or entities afforded coverage under this policy.

This endorsement modifies coverage provided under the Coverage Part to which it is attached.

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then provided that it is agreed upon by both parties, the matter may be submitted for arbitration. In lieu of arbitration, the insured may elect the option of filing a lawsuit to resolve the matter.

If both parties mutually agree to the voluntary arbitration procedure, then each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

1.  Pay the expenses it incurs; and

2.  Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

All other terms of the policy remain unchanged.

Includes copyright material of the Insurance Services Office, Inc. used with its permission.
Page 1 of 1

PI-EBL-001 (5/99)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EMPLOYEE BENEFITS ADMINISTRATION ERRORS AND OMISSIONS INSURANCE

IMPORTANT NOTE:  THIS INSURANCE PROVIDES LIMITED COVERAGE FOR LIABILITY WHICH ARISES OUT OF THE ADMINISTRATION OF YOUR EMPLOYEE BENEFITS PROGRAM.  IN PARTICULAR, IT DOES NOT FULLY PROTECT YOU OR ANY OTHER INSURED AGAINST LIABILITY CREATED BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, OR ITS AMENDMENTS, OR ANY SIMILAR LAW.

Various provisions in this Coverage Form restrict coverage.  Read the entire Coverage Form carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations of this Coverage Form.  The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **Section II – Who is an Insured** of this Coverage Form.

Other words and phrases that appear in boldface have special meaning.  Refer to **Section VI – Definitions.**

**Section I – Coverages**

**A.  Insuring Agreement**

1.  We will pay those sums that you become legally obligated to pay as damages because of a negligent act, error or omission in the **administration of your employee benefits program.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this coverage Form.

We will have the right and duty to defend any **suit** seeking those damages.  But:

a.  The amount we will pay for all damages is limited as described in **Section III – Limits of Insurance** of this Coverage Form.

b.  We may, at our discretion, investigate and settle any claim or **suit**.

c.  Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Coverage Form.

2.  This insurance applies to a negligent act, error or omission only if:

a.  the negligent act, error or omission is caused by an occurrence that takes place in the **Coverage Territory;**

b.  the negligent act, error or omission did not occur before the retroactive date, if any, shown in the Declarations or after the end of the Policy Period; and

c.  the insured had no prior knowledge or could not reasonably have foreseen any circumstances which might result in a claim or **suit**; and

d.  the claim is first made or **suit** is brought during the policy period or any Extended Reporting Period we provide under Extended Reporting Period Section V.

3.  This insurance applies only to negligent acts, errors or omissions:

PI-EBL-001 (5/99)

a. which occur within the **Coverage Territory**; and

b. for which the claim is made or **suit** is brought within the **Coverage Territory**.

**B. Exclusions**

This insurance does not apply to:

1. **bodily injury**, **property damage** or **personal injury**;

2. claims for injury or damage arising out of:

   a. a dishonest, fraudulent, criminal or malicious act, error or omission done by or at the direction of any Insured;

   b. an insurer's failure to perform its contract;

   c. failure of any plan to meet its obligations due to insufficient funds;

   d. failure of any investment to perform as represented by any insured.

   e. advice given by an insured to any person on whether or not to participate in any plan included in **your employee benefits program**;

   f. your failure to meet the requirement of any law concerning Workers' Compensation, unemployment insurance, social security, disability benefits or the Fair Labor Standards Act of 1938 and its amendments, or any similar laws;

   g. any insured's liability as a fiduciary under:

      (1) EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 and its amendments, or

      (2) INTERNAL REVENUE CODE OF 1986 (including the INTERNAL REVENUE CODE OF 1954) and its amendments;

   h. any claims for injury or damage to a person or organization arising from:

      (1) refusal to employ that person;

      (2) termination of that person's employment;

      (3) **employment-related discrimination** or employment-related practices, policies, acts or omissions, such as coercion, demotion, failure to promote, evaluation, criticism, reassignment, discipline, defamation, self-defamation, harassment, humiliation directed at that person or organization;

      (4) consequential injury or damage as a result of (1) through (3) above.

   i. the act of terminating or altering any of **your employee benefits program**.

**C. Supplementary Payments**

We will pay, with respect to any claim we investigate or settle, or any **suit** against an insured we defend:

1. all expenses we incur.

2. the cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3. all reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or **suit**, including actual loss of earnings up to $250 a day because of time off from work.

4. all costs taxed against the insured in the **suit**.

5. prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

PI-EBL-001 (5/99)

6. all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**Section II – Who is an Insured**

1. We cover each of the following as insureds under this Coverage Form:

   a. you; and

   b. your **employees**, but only with respect to the **administration** of **your employee benefits program**; and

   c. any other person or organization authorized to perform the **administration** of **your employee benefits program**.

2. In addition, if you are designated in the Declarations as:

   a. an individual;

      i. your spouse is an insured, but only with respect to the **administration of your employee benefits program**; and

      ii. your legal representatives are insureds if you die, but only with respect to duties in the **administration of your employee benefits program**. That representative will have all your rights and duties under this endorsement.

   b. a partnership or joint venture:

      i. your partners or your members are insureds, but only with respect to the **administration of your employee benefits program**; and

      ii. the spouses of your partners or your members are also insureds, but only with respect to the **administration of your employee benefits program**.

   c. a limited liability company:

      i. your members are insureds, but only with respect to the **administration** of **your employee benefits program**; and

      ii. your managers are insureds, but only with respect to the **administration** of **your employee benefits program**.

   d. a corporation:

      i. your **executive officers** and directors are insureds, but only with respect to the **administration** of **your employee benefits program**; and

      ii. your stockholders are also insureds, but only with respect to their liability as stockholders and only with respect to the **administration** of **your employee benefits program**.

Any organization which you newly acquire or form, other than a partnership or joint venture, and over which you maintain a primary and controlling interest will be considered an insured if there is no similar insurance available to that organization. However, coverage under this provision is afforded only until the end of the policy period.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations of this Coverage Form.

**Section III – Limits of Insurance**

1. The Limits of Insurance stated in the Declarations of this Coverage Form and the rules below fix the most we will pay regardless of the number of:

   a. insureds;

   b. negligent acts, errors or omissions causing injury or damage;

   c. claims made or **suits** brought;

   d. persons or organizations making claims or bringing **suits**; or

PI-EBL-001 (5/99)

e. plans included in **your employee benefits program**.

2. The Aggregate Limit is the most we will pay for all damages because of negligent acts, errors or omissions in the **administration** of **your employee benefits program**, covered by this policy.

3. Subject to 2. above, the Each Employee Limit is the most we will pay for the sum of all damages incurred because of damages sustained, covered by this policy, by:

   a. any one **employee**, and

   b. that **employee's** dependents or stated beneficiaries.

4. The limits of this Coverage Part apply separately to each consecutive annual policy period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations. If the policy period is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**Section IV – Conditions**

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties in the Event of a Negligent Act, Error, Omission, Claim or **Suit**:

   a. You must see to it that we are notified as soon as practicable of an alleged negligent act, error, omission, claim or **suit** which may result in a claim. To the extent possible, notice should include:

      (1) how, when and where the alleged negligent act, error, or omission took place;

      (2) the names and addresses of the persons or their representatives

alleging the negligent act, error or omission;

      (3) the nature of any injury or damage arising out of the negligent act, error or omission.

   b. If a claim is made or **suit** is brought against any insured, you must:

      (1) immediately record the specifics of the claim or **suit** and the date received; and

      (2) notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or **suit** as soon as practicable.

   c. You and any other involved insured must:

      (1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

      (2) authorize us to obtain records and other information;

      (3) cooperate with us in the investigation or settlement of the claim or defense against the **suit**; and

      (4) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

3. Legal Action Against Us

   No person or organization has a right under this Coverage Part:

   a. to join us as a party or otherwise bring us into a **suit** asking for damages from an insured; or

Page 4 of 8

PI-EBL-001 (5/99)

b. to sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

This insurance is excess over any other valid and collectible similar insurance or insurance expressly purchased to provide this coverage, available to the insured.

5. Representation

By accepting this policy, you agree:

a. the statements in the Declarations are accurate and complete;

b. those statements are based upon representations you made to us; and

c. we have issued this policy in reliance upon your representations.

6. Separation of Insureds

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. as if each Named Insured were the only Named Insured; and

b. separately to each insured against whom claim is made or **suit** is brought.

7. Transfer of Rights of Recovery Against Others to Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring **suit** or transfer those rights to us and help us enforce them.

8. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

9. Application of Insurance Services Office Endorsements Attached to This Coverage Part

In the event that an Insurance Services Office Endorsement is attached to this Coverage Part, it shall apply to this insurance even if the Insurance Services Office endorsement does not include Employee Benefits Administration Errors and Omissions Insurance within the introductory language of the endorsement.

**Section V – Extended Reporting Period**

1. We will provide one or more Extended Reporting Periods, as described below, if:

a. This Coverage Part is canceled or not renewed; or

b. We renew or replace this Coverage Part with insurance that:

(1) Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

(2) Does not apply to a negligent act or error and omission on a claims-made basis.

2. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for a negligent act, error or omission that occurs before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

PI-EBL-001 (5/99)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

Once in effect, Extended Reporting Periods may not
be canceled.

3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

a. Five years with respect to claims because of a negligent act, error or omission arising out of an occurrence reported to us, not later than 60 days after the end of the policy period, in accordance with Paragraph 2.a. of the Section IV - Condition;

b. Sixty days with respect to claims arising from occurrences not previously reported to us.

The Basic Extended Reporting Period does not apply to
claims that are covered under any subsequent insurance you purchase, or that would be covered but
for exhaustion of the amount of insurance applicable to
such claims.

4. The Basic Extended Reporting Period does not reinstate or increase the limits of insurance.

5. A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in Paragraph 3. above, ends.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting
Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a. The exposures insured;

b. Previous types and amounts of insurance;

c. Limits of Insurance available under this Coverage
Part for future payment of damages; and

d. Other related factors.

The additional premium will not exceed 200% of the annual premium for this Coverage Part.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

6. If the Supplemental Extended Reporting Period is in effect, we will provide the supplemental aggregate limits of insurance described below, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

The supplemental aggregate limits of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period for Employees Benefits Administration Errors and Omissions Insurance.

**Section VI – Definitions**

With respect to coverage provided by this Coverage Form, the following definitions apply:

1. **Administration** means performance of the ministerial functions of **your employee benefits program** and could include:

   a. applying the program rules to determine who is eligible to participate in benefits;

   b. calculating service and compensation credits of **employees**;

   c. preparing messages to tell **employees** about their benefits.

   d. maintaining service and employment records of those employees participating in **your employee benefits program**;

PI-EBL-001 (5/99)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

e.  preparing reports required by government agencies;

f.  calculating benefits;

g.  informing new **employees** about **your employee benefit program**;

h.  implementing enrollment instructions from your employees in **your employee benefits program**.

i.  advising, other than legal advice, **employees** who are participating in **your employee benefits program** of their rights and options.

j.  collecting contributions and applying them as called for under the rules of **your employee benefits program**.

k.  preparing benefits reports for your employees participating in **your employee benefits program**.

l.  processing claims.

2.  **Bodily Injury** means bodily injury sickness or disease sustained by a person, including death resulting from any of these at any time.

3.  **Coverage territory** means:

    a.  the United States of America (including its territories and possessions), Puerto Rico and Canada; or

    b.  all parts of the world if the insured's responsibility to pay damages is determined in a **suit** on the merits in the territory described in a. above or in a settlement to which we agree.

4.  **Employee** means your **executive officers** or any persons who have been employed and compensated by you, whether actively employed, formerly employed, disabled or retired, and includes **leased workers** and **temporary workers** if they are subject to **your employee benefits program**.

5.  **Employment-related discrimination** means the actual or alleged treatment of a person or group of persons based upon their race, color, nationality, ethnic origin, religion, gender, marital status, reproductive status, age, sexual orientation, sexual preference, physical disability, mental disability or on any basis which is prohibited by federal, state or local law.

6.  **Executive officer** means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7.  **Leased worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. **Leased worker** does not include a **temporary worker**.

8.  **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

    a.  false arrest, detention or imprisonment;

    b.  malicious prosecution;

    c.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    d.  oral or written publication of material that slanders, or libels a person or organization, or disparages a person's or organization's goods, products or services; or

    e.  oral or written publication of material that violates a person's right of privacy.

9.  **Property Damage** means:

    a.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  loss of use of tangible property that is not physically injured. All such loss of use

PI-EBL-001 (5/99)

shall be deemed to occur at the time of the occurrence that caused it.

10. **Suit** means a civil proceeding in which damages because of a negligent act, error or omission to which this insurance applies are alleged. Suit includes:

    a.  an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent;

    b.  any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

11. **Temporary worker** means a person who is furnished to you to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions. **Temporary worker** does not mean a **leased worker**.

12. **Your employee benefits program** means a type of insurance or other plan you maintain solely for the benefit of your **employees** and could include one or more of the following types:

    a.  group life insurance, group accident, dismemberment, dental, health insurance, health care and dependent care spending plans, legal advice plans, or educational tuition reimbursement plans;

    b.  profit sharing plans; savings plans including 401K and 403B plans; pension plans and stock subscription plans;

    c.  unemployment insurance, social security benefits: workers' compensation and disability benefits insurance.

PI-EBL-IL-1 (8/99)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Employee Benefits Administration Errors & Omissions Insurance**

A.    Section IV Conditions, Paragraph 4 Other Insurance is deleted and replaced with the following:

4.  Other Insurance

This insurance is excess over any other valid and collectible similar insurance or insurance expressly purchased to provide this coverage, available to the insured. If the insured has insurance provided by other companies against a loss covered by this coverage form, the company shall not be liable under this coverage form for a greater proportion of such loss and claims expenses than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

PI-PPL-001(8/03) EB

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PRIOR/PENDING LITIGATION AND KNOWN CIRCUMSTANCES EXCLUSION (CLAIMS MADE)

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS ADMINISTRATION ERRORS AND OMISSIONS INSURANCE
CLAIMS MADE COVERAGE.

In consideration of the premium paid for this policy, it is agreed that the Insurer shall not be liable to make any payment for "damages" in connection with any claim arising out of, based upon or attributable to:

i)  any "professional incident", "bodily injury" or "property damage", committed on or before 09/01/2021 if the insured knew or could have reasonably foreseen that such "professional incident", "bodily injury" or "property damage" could give rise to a claim;

ii) any pending or prior litigation made as of 09/01/2021 or any claims alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation;

Page 1 of 1

PI-ARB-1 IL (6/03)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**BINDING ARBITRATION**

Wherever, used in this endorsement: 1) "we", "us", "our", and "insurer' mean the insurance company which issued this policy; and 2) "you", "your", "named insured", "first named insured", and "insured" mean the Named Corporation, the Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "other insured(s)" means all other persons or entities afforded coverage under this policy.

This endorsement modifies coverage provided under the Coverage Part to which it is attached.

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then provided that it is agreed upon by both parties, the matter may be submitted for arbitration.  In lieu of arbitration, the insured may elect the option of filing a lawsuit to resolve the matter.

If both parties mutually agree to the voluntary arbitration procedure, then each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.  Each party will:

    1. Pay the expenses it incurs; and

    2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding.

All other terms of the policy remain unchanged.

Includes copyright material of the Insurance Services Office, Inc. used with its permission.
Page 1 of 1

PI-TS-002 (12/11)

# STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V – DEFINITIONS**.

## SECTION I – COVERAGE

## STAFFING SERVICE PROFESSIONAL LIABILITY

**A. Insuring Agreement**

1.  We will pay those sums that the insured becomes legally obligated to pay as "damages" to which this insurance applies. Subject to **SECTION IV – CONDITIONS**, Paragraph **K. Settlement**, we, in your name and on your behalf, shall have the right and duty to investigate, defend, and conduct settlement negotiations, including selection of defense counsel, in any "suit" seeking those "damages." However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. But

    a.  The amount we will pay for "damages" is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

    b.  Our right and duty to defend ends when we have used up our applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS** below.

2.  This insurance applies to "damages" only if:

    a.  The "damages" result from a "wrongful act" that takes place in the "coverage territory";

    b.  The "wrongful act" occurs during the policy period;

    c.  The "wrongful act" is committed by any insured for whom the Named Insured is legally responsible;

    d.  Prior to the policy period, no insured listed under **SECTION II – WHO IS AN INSURED**, Paragraph **A.** and no "employee" authorized by you to give or receive notice of a "wrongful act" or claim, knew that the "wrongful act" had occurred, in whole or in part. If such a listed

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

insured or authorized "employee" knew, prior to the policy period, that the "wrongful act" occurred, then any continuation, change or resumption of such "wrongful act" during or after the policy period will be deemed to have been known prior to the policy period;

e. A "wrongful act" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under **SECTION II – WHO IS AN INSURED**, Paragraph **A.** or any "employee" authorized by you to give or receive notice of a "wrongful act" or claim, includes any continuation, change or resumption of that "wrongful act" after the end of the policy period; and

f. A "wrongful act" will be deemed to have been known to have occurred at the earliest time when any insured listed under **SECTION II – WHO IS AN INSURED**, Paragraph **A.**, or any "employee" authorized by you to give or receive notice of a "wrongful act" or claim:

   **(1)** Reports all, or any part, of the "wrongful act" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for "damages" because of the "wrongful act"; or

   **(3)** Becomes aware by any other means that a "wrongful act" has occurred or has begun to occur.

**B. Exclusions**

This insurance does not apply to "damages":

**1. Criminal Acts**

Arising out of any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which you are not legally entitled. However, we will defend "suits" alleging the foregoing until there is a judgment, final adjudication, adverse admission, plea *nolo contendere* or no contest or finding of fact against you as to such conduct.

**2. Non Pecuniary Relief, Fines or Penalties, and other Uninsurable Matters**

Arising out of any costs of corrections, cost of complying with non-pecuniary relief, fines or penalties imposed by law or other matters which may be deemed uninsurable under the law pursuant to which this policy may be construed.

**3. Disciplinary Proceedings**

Arising out of any "disciplinary proceeding" against any insured. However, we will defend you for said "disciplinary proceeding" up to a sublimit of insurance ("Disciplinary Proceeding Sublimit") of $10,000 so long as the alleged "wrongful act" that is the subject of the "disciplinary proceeding" occurred during the policy period. The Disciplinary Proceeding Sublimit shall be part of, not in addition to, the limit of insurance as shown in the Staffing Service Professional Liability Declarations. Defense for "disciplinary proceedings" will still be subject to all other terms and provisions in this policy.

**4. Insurance or Bond**

Arising out of, directly or indirectly, any failure to effect or maintain any insurance or bond.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-TS-002 (12/11)

5. **Securities, Antitrust and Similar Statutes or Regulations**

Arising out of, directly or indirectly, any violation of the Securities Exchange Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any state Blue Sky or Securities Law, any state or federal antitrust, price fixing, restraint-of-trade or deceptive trade practice laws, or any rules, regulations or amendments issued in relation to such acts, or any similar state, federal or foreign statutes or regulations.

6. **Warranties or Guarantees and other Contractual Liability**

Arising out of, directly or indirectly, any express warranties or guarantees or any liability you assume under contract unless you would have been legally liable in the absence of such contract.

7. **Pollution**

Arising out of, directly or indirectly, any discharge, dispersal, release or escape of any solid, liquid, gaseous, biological, radiological, or thermal irritant or contaminant, including smoke, vapor, dust, fibers, spores, fungi, germs, soot, fumes, asbestos, acids, alkalis, chemicals and waste (including, but not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials) into or upon land, the atmosphere or any water-course or body of water or any cost or expense arising out of any direction, request or voluntary action to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any pollutants.

8. **Aircraft, Auto or Watercraft**

Arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto," or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

9. **Disputes over Fees or Failures in Collection Activities**

Arising out of any:

a. Disputes involving your fees or charges; or

b. Failure of the insured or others to collect or pay money.

10. **Data Processing Equipment**

Arising out of directly or indirectly:

a. The operation of any data processing equipment on behalf of any "client company" except for use of data processing equipment which is incidental to a "wrongful act"; or

b. Unauthorized access to, or malfunction of your electronic data processing and/or computer system.

11. **Knowledge of Wrongful Act**

Arising out of any "wrongful act" committed with the knowledge that it was a "wrongful act."

12. **Insured as Director, Officer Partner or Principal Stockholder**

Arising out of the performance or failure to perform services for any person or entity in which the

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

insured is a director, officer, partner or principal stockholder.

13. **Specific Actions of Staffing Service Employees**

Arising out of any "suit" alleging that the "staffing service employee(s)":

a. Exercised authority to sign or stamp any design, specification, drawing, plan, cost estimate, materials list, project schedule, blueprint or the like;

b. Rendered or failed to render an opinion on:

   (1) The feasibility of part or all of any project;

   (2) The structural soundness of part or all of any project; or

   (3) The accuracy of calculations, drawings, or conclusions;

c. Rendered or failed to render:

   (1) Construction management services; or

   (2) Management and oversight of fulfilling client orders from a manufacturing, packing and/or delivering standpoint;

d. Rendered or failed to render services as an accountant or attorney;

e. Rendered or failed to render:

   (1) "Attestation services";

   (2) Actuarial services;

   (3) Investment advisory services; or

   (4) "Medical services"; or

f. Exercised discretionary authority to make or implement decisions on behalf of a "client company."

14. **Workers' Compensation and Similar Laws**

Arising out of any obligation of the insured under a worker's compensation, disability benefits or unemployment compensation law or any similar law.

15. **Employment-Related Practices**

Arising out of any claim by:

a. A person because of any actual or alleged:

   (1) Refusal to employ that person;

   (2) Termination of that person's employment; or

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

  (3) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or malicious prosecution directed at that person on any basis, including but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, sex, sexual orientation or pregnancy;

 **b.** The spouse, "domestic partner," child, parent, brother or sister of the person in **a.** above, as a consequence of injury to that person at whom any of the employment-related practices described in Paragraphs **(1)**, **(2)**, or **(3)** above is directed.

This exclusion applies:

  (a) Whether the injury-causing event described in Paragraphs **(1)**, **(2)**, or **(3)** above occurs before employment, during employment or after employment of that person:

  (b) Whether the insured may be liable as an employer or in any other capacity; and

  (c) To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

**16. Physical or Sexual Abuse or Molestation**

Arising out of the actual or threatened physical or sexual abuse or molestation by anyone or any person while in the care, custody or control of any insured.

**17. Personal and Advertising Injury**

Arising out of "personal and advertising injury."

**18. Injury to Insured Including Consequential Injury**

Arising out of injury to any insured, or any consequential injury to the spouse, child, parent, brother or sister of that insured.

This exclusion applies:

**a.** Whether the insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share "damages" with or repay someone else who must pay "damages" because of an injury.

**19. Damage to Property**

Arising out of damage to property:

**a.** Owned, occupied or used by any insured;

**b.** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured;

**c.** Which is or was in the possession of any insured or any person acting on behalf of any insured; or

**d.** That is real property on which you or any contractors or subcontractors working directly or

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

indirectly on your behalf are or were performing operations.

**20. Nuclear, Asbestos or Lead**

Arising out of any:

**a.** "Nuclear hazard";

**b.** "Asbestos hazard"; or

**c.** "Lead hazard."

**21. ERISA and Similar Laws**

Arising out of liability under the Employment Retirement Income Security Act of 1974, the Fair Labor Standards Act of 1938 and its amendments, the Federal Immigration and Nationality Act, (8 U.S.C. §1324a) or any other federal immigration law, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), and any amendments in relation to such acts, or any similar federal or state law.

**22. Insured versus Insured**

Arising out of any claim made or "suit" brought against an insured by another insured.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim or "suit" we defend:

**1. Expenses We Incur**

All expenses we incur including "claim expenses."

**2. Expenses Incurred by the Insured at Our Request**

All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 per insured per day for each day any such insured is required to appear at a trial, hearing or arbitration proceeding involving a claim against such insured. The most we will pay under this provision is $5,000.

Payments under **1.** and **2.** above will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

**A.** You are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.

**B.** Each of the following is also an insured:

**1.** Any current partner, member or "employee" of yours while acting within the scope of their duties as such.

**2.** Any former or retired partner, director, office, member or "employee" of yours, but only for those professional services rendered on behalf of the named insured prior to the date of separation or retirement from such entity(ies).

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

3. The lawful spouse or "domestic partner" of an insured, but only for actual or alleged "wrongful acts" of such insured for which said spouse or "domestic partner" may be liable as the spouse or "domestic partner" of such insured.

4. The heirs, executors, administrators, assignees, and legal representatives of each insured in the event of such insured's death, incapacity or bankruptcy as respects to the liability of each insured as is otherwise covered herein.

5. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured if there is no other similar insurance available to that organization.

However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

   b. Staffing Services Professional Liability Coverage does not apply to a "wrongful act" that occurred before you acquired or formed the organization.

## SECTION III – LIMITS OF INSURANCE

A. We shall be liable to pay that portion of "damages" and "claim expense" in excess of the applicable deductible as stated in the Staffing Service Professional Liability Declarations. A deductible shall apply to each and every claim or "suit," including "claim expenses," and such deductible shall be borne by you. The deductible shall be uninsured and at your own risk.

B. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   1. Insureds;

   2. Claims made or "suits" brought; or

   3. Persons or organizations making claims or bringing "suits."

C. The Aggregate Limit is the most we will pay for all "damages" to which this insurance applies.

D. Subject to C. above, the Each Wrongful Act limit is the most we will pay for the sum of all "damages" arising out of any one "wrongful act" to which this insurance applies.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – CONDITIONS

A. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

**B. Your Authority And Duties**

The first Named Insured shown in the Declarations agrees to act on behalf of all insureds with respect to cancellation, notice of any "wrongful act" claim or "suit," payment or return of any premium, or consent to a claim settlement that we recommend. Each insured, by accepting this insurance, agrees to:

1. Have the first Named Insured act for them in such matters; and

2. Promptly notify the first Named Insured, in writing, of any "wrongful act" which may result in a claim, or any claim or "suit" brought against them.

**C. Deductible**

It is your responsibility to pay the deductible amount as stated in the Staffing Service Professional Liability Declarations as the result of each claim or "suit." We may pay part or all of the deductible amount to effect a settlement of any claim or "suit," however, upon notification of any such action taken, you shall promptly reimburse us for that part of the deductible amount that has been paid by us.

**D. Duties In The Event Of Wrongful Act, Claim Or Suit**

1. Notice hereunder shall be given by you or on your behalf in writing to us at:

   **Claims Department**
   **Philadelphia Indemnity Insurance Company**
   **P.O. Box 950**
   **Bala Cynwyd, PA 19004**

   Or:

   **Claimsreport@phlyins.com**

2. You must see to it that we are notified as soon as practicable of a "wrongful act" which may result in a claim. To the extent possible, notice should include:

   a. All available information about the circumstances concerning the "wrongful act" including:

      (1) How, when and where it took place; and

      (2) The names and addresses of any witnesses and persons seeking "damages"; and

   b. What claim you think could result.

   However, even when you notify us of a "wrongful act," this does not relieve you of your obligation to also notify us of any resulting claim or "suit."

3. If a claim is made or "suit" is brought against any insured, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us as soon as practicable.

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

4. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement or defense of the claim or "suit";

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply; and

   e. In no way jeopardize our rights after a "wrongful act."

5. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**E. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

1. To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

2. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for "damages" that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**F. Other Insurance**

If there is other insurance under a separate policy covering the same loss or damage as provided for in this policy, we will pay only the amount of covered loss or damage in excess of the amount due from that other insurance, regardless of whether you are able to collect.

**G. Representations**

By accepting this policy, you agree:

1. The statements in the Declarations are accurate and complete;

2. Those statements are based upon representations you made to us; and

3. We have issued this policy in reliance upon your representations.

**H. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

1.  As if each Named Insured were the only Named Insured; and

2.  Separately to each insured against whom claim is made or "suit" is brought.

**I.   Transfer of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**J.   Governmental Immunity**

If you are a public institution, you may be entitled to governmental immunity.  This Coverage Part does not constitute a waiver of any charitable or governmental immunity to which you are entitled.

**K.   Settlement**

If the first Named Insured refuses to consent to any settlement recommended by us, and acceptable to the claimant, and elects to further contest the claim or "suit," subject to the provisions of **SECTION III – LIMITS OF INSURANCE**, our liability for such claim or "suit" shall not exceed the amount for which the claim or "suit" could have been settled, plus the cost of defense incurred by us up to the date of such refusal, plus 50% of covered "damages" and "claim expenses" in excess of such settlement amount.  It being a condition of this insurance that the remaining 50% of such "damages" and "claim expenses" excess of the first settlement amount shall be borne by you at your own risk and be uninsured.

Notwithstanding the foregoing, this provision shall not apply until the settlement amount exceeds the Deductible amount stated in the Staffing Service Professional Liability Declarations.

**L.   Two or More Coverage Parts Or Policies Issued By Us**

It is our stated intention that the various coverage parts or policies issued to you by us, or any company affiliated with us; do not provide any duplication or overlap of coverage for the same claim or "suit."  If this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same "wrongful act," occurrence, offense, accident or loss, the maximum limit of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limit of insurance under any one coverage part or policy.

This condition does not apply to any Excess or Umbrella Policy issued by us specifically to apply as excess insurance over this policy.

**M.   When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**A.**  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

1. Notices that are published include material placed on the Internet or similar electronic means of communication; and

2. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. "Asbestos hazard" means:

1. a. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

   b. The use of asbestos in constructing or manufacturing any good, product or structure;

   c. The removal of asbestos from any good, product or structure;

   d. Any request, demand or order for the removal of asbestos from any good, product or structure; or

   e. The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

2. The investigation, settlement or defense of any claim, "suit", proceeding, "damages," loss, cost or expense excluded by 1. above.

C. "Attestation services" means an engagement or service performed in the role of an accountant or auditor in accordance with professional or regulatory standards for such engagements, and resulting n written reports that express a conclusion about the reliability of an assertion.

D. "Auto" means:

1. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment."

E. "Claim expenses" means fees charged by any lawyer designated by us and all other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a claim or "suit," if incurred by us. "Claim expenses" shall also include:

1. Premiums on bonds to release attachments and appeal bonds, limited to that portion of such bonds that does not exceed the limits of insurance of this policy, but without obligation by us to apply for or furnish such bonds;

2. Costs taxed against you in any "suit" except for any contempt citations;

3. Interest accruing after the entry of a judgment, but only for that portion of the judgment which does not exceed the applicable limits of insurance, and only until we have tendered to the court or paid to you our portion of such judgment as does not exceed our limit of insurance thereon; and

4. Reasonable expenses incurred by you at our request in assisting the investigation and defense of

Page 11 of 15
Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

any claim or "suit," as shown in **SUPPLEMENTARY PAYMENTS**, Paragraph **2.** above.

Claim expenses shall not include:

    **a.** Any amounts incurred in defense of any claim or "suit" for which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty;

    **b.** Salaries, wages, overhead or benefit expenses associated with any insured except as specified under **SUPPLEMENTARY PAYMENTS** above; or

    **c.** Salaries, wages, overhead or benefit expenses associated with your "employees."

**F.** "Client company" means any person or organization for which the insured provides "staffing services"; provided that the term "client company" shall not include any insured.

**G.** "Coverage territory" means:

    **1.** The United States of America (including its territories and possessions), Puerto Rico, and Canada;

    **2.** All parts of the world if:

        **a.** The injury or damage arises out of the activities of a person whose home is in the territory described in **1.** above, but is away for a short time on your business; and

        **b.** The insured's responsibility to pay "damages" is determined in a "suit" on the merits in the territory described in **1.** above, or in a settlement we agree to.

**H.** "Damages" means a monetary:

    **1.** Judgment;

    **2.** Award; or

    **3.** Settlement,

but does not include fines, sanctions, penalties, punitive or exemplary damages or the multiple portion of any damages.

**I.** "Disciplinary proceedings" means any proceeding brought against you by a state regulatory or disciplinary official or agency to investigate charges alleging professional misconduct.

**J.** "Domestic partner" means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by you.

**K.** "Employee" includes a "leased worker" and a "staffing service employee." "Employee" does not include a "temporary worker."

**L.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws, or any other similar governing document.

**M.** "Lead hazard" means:

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

1. a. Exposure to or existence of lead, paint containing lead, or any other material or substance containing lead; or

   b. Manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement, or handling of lead, paint containing lead, or any other material or substance containing lead;

   whether or not the lead is or was at any time airborne as a particulate, contained in a product ingested, inhaled, transmitted in any manner, or found in any form whatsoever.

2. a. Any testing for, monitoring, cleaning up, removing, abating, containing, treating or neutralizing lead, paint containing lead, or any other substance or material containing lead, or in any way responding to or assessing the effects of lead; or

   b. Any request, demand, or order to test for, monitor, clean up, remove, abate, contain, treat or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to or assess the effects of lead.

3. The investigation, settlement, or defense of any claim, "suit," proceeding, "damages," loss, cost or expense excluded by 1. and 2. above.

N. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

O. "Loading or unloading" means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. While it is in or on an aircraft, watercraft or "auto"; or

3. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

P. "Medical services" means the provision of health care, medical care or treatment, and any related advice or consultation, including but not limited to any of the following services:

1. Medical, surgical, dental, chiropractic, osteopathic, homeopathic, naturopathic, psychiatric, psychological, counseling, social work, mental health, physical therapy, or nursing, including furnishing of food or beverages in connection therewith;

2. The dispensing of pharmaceutical products;

3. Prescription, advice, or consultation on diet and/or nutrition;

4. The handling of, or performance of post-mortem examinations on human bodies; or

5. Veterinary services.

Q. "Mobile equipment" means any of the following types of land vehicles, including any attached

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

machinery or equipment;

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraphs 1., 2., 3. or 4. that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in Paragraphs 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

       (a) Snow removal;

       (b) Road maintenance, but not construction or resurfacing; or

       (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

R. "Nuclear hazard" means the existence of any nuclear reactor or device, nuclear waste storage or disposal site or any other nuclear facility, or the transportation of nuclear material, or the hazardous properties of nuclear material.

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-002 (12/11)

S. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

  1. False arrest, detention or imprisonment;

  2. Malicious prosecution;

  3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

  4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

  6. The use of another's advertising idea in your "advertisement"; or

  7. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

T. "Staffing services" means service(s) performed for a fee for a "client company" regarding the identification, appraisal and placement of personnel into employment roles; and the fulfillment of any of the administrative functions which would otherwise be normally fulfilled by an employer's human resource function. Such consultation, placement and administrative services will include either temporary or permanent appointments.

U. "Staffing service employee" shall mean a person placed or furnished to the "client company" by the insured for the purpose of employment.

V. "Suit" means a civil proceeding in which "damages" are claimed and to which this insurance applies. "Suit" also includes:

  1. An arbitration proceeding in which such "damages" are claimed and to which you must submit or do submit with our consent; or

  2. Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which you submit with our consent.

W. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

X. "Wrongful act" means a negligent act, error, or omission committed or alleged to have been committed by you or any person for whom you are legally responsible in the rendering of "staffing services."

Any or all "wrongful acts" arising from interrelated or series of acts, errors or omissions shall be deemed to be one "wrongful act" taking place at the time of the earliest "wrongful act."

Includes copyrighted material of Insurance Services Office, Inc., with permission
©2011 Philadelphia Indemnity Insurance Company

PI-TS-014 (11/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BROAD DEFINITION OF STAFFING SERVICES

This endorsement modifies and is subject to the insurance provided under the following:

STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM
STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE COVERAGE FORM

A. Item **T.** under **DEFINITIONS**, is deleted in its entirety and replaced with the following:

"Staffing Services" means services provided by a staffing company to their clients including but not limited to:

1. Fulfillment of any of the administrative functions which would otherwise be normally fulfilled by an employer's human resource function;

2. Staffing related administrative services provided by an Administrative Services Organization (ASO);

3. "PEO service";

4. Staffing related services provided to your clients for the recruitment, selection and placement of a person for employment with a client;

5. Temporary, contingent or contract placement services;

6. Vendor Management Service (VMS), means the facilitation, purchase and management of "staffing services" for clients including the placement and fulfillment of orders for "staffing service employees";

7. Services performed on behalf of your client by a "staffing service employee" who is not a direct hire or permanent placement;

8. Services performed for a client company to supply that client company with a "staffing service employee".

B. Item **K.** under **DEFINITIONS**, is deleted in its entirety and replaced with the following:

"Employee" includes but is not limited to a "leased worker" and a "staffing service employee". "Employee" does not include a "temporary worker" or a "PEO worker".

C. Item **U.** under **DEFINITIONS**, is deleted in its entirety and replaced with the following:

"Staffing service employee" means a person who is furnished by you to your client to perform the duties to which you have agreed.

D. For the purposes of this endorsement, the following items are added to the **DEFINITIONS** section:

"PEO Worker" means a person you lease to your client under a written "PEO service" agreement or contract.

"PEO Service" means staffing related services as a Professional Employer Organization (PEO) you

PI-TS-014 (11/15)

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-TS-014 (11/15)

provide to your clients and to "PEO workers" in connection with employment of such workers.

E.  **SECTION I B. Exclusion 9. Disputes over Fees or Failures in Collection Activities** is deleted in its entirety.

F.  **SECTION I B. Exclusion 13.** Is deleted in its entirety and replaced with the following:

13. Arising out of any services performed by any:

a. Doctor, dentist, armed security guard, pilot, person engaged in pyrotechnic activities or anyone acting as a general contractor;

b. Engineer or architect with signoff authority; or

c. Consultant with signoff authority on final business decisions.

G.  **SECTION I B. Exclusion 21.** is deleted in its entirety and replaced with the following:

21. **ERISA and Similar Laws**

Arising out of the administration of or failure to administer any Employee Benefit Plan. However, this exclusion shall not apply to a "PEO service" that:

a. Does not have Employee Benefit Plan funds or benefits that are self-funded; and

b. Does not manage or invest Employee Benefit Plan funds.

H.  **SECTION I. B. Exclusions is amended to include the following:**

This insurance does not apply to "damages" arising out of:

1. The actions or activities of any "PEO worker". This exclusion does not affect our duty to defend, as stated in Paragraph **1.** of **SECTION I. A. Insuring Agreement**, an insured providing "PEO services".

2. Any actual or alleged piracy, infringement of a patent, copyright, trademark, servicemark, trade dress, trade name, trade secret or any other intellectual property rights.

3. Any actual or alleged violation of:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

c. The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

d. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA.

PI-TS-014 (11/15)

©2012 Philadelphia Indemnity Insurance Company
Page 2 of 2

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-TS-016 (05/12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DESIGNATED PROFESSIONAL SERVICES EXCLUSION

This endorsement modifies and is subject to the insurance provided under the following:

STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM
STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE COVERAGE FORM

**SCHEDULE**

| Excluded Professional Service(s): |
|---|
| Architects and Engineers, Accountants, Attorneys, Programmers, Healthcare |

**Section I B. Exclusions** is amended by the addition of the following exclusion:

This insurance does not apply to any claim or "suit", arising out of the rendering or failure to render any of the professional services listed in the schedule above.

.

©2012 Philadelphia Indemnity Insurance Company

PI-TS-037 (08/21)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BODILY INJURY EXCLUSION ENDORSEMENT**

This endorsement modifies and is subject to the insurance provided under the following:

STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM
STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE COVERAGE FORM

**A. SECTION I, B. Exclusions** is amended to include the following:

This insurance does not apply to "damages", arising out of, directly or indirectly to:
Any actual or alleged "bodily injury".

For the purposes of this endorsement, the following item is added to the **DEFINITIONS** section:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

All other terms and conditions remain unchanged

PI-TS-037 (08/21)

Page 1 of 1

PI-TS-IL-1 (05/12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**STAFFING SERVICE PROFESSIONAL LIABILITY COVERAGE FORM**

A. The following language is added to the **Pollution** exclusion:

Pollutants do not include heat, smoke or fumes from a hostile fire.

B. The exclusion of **Physical or Sexual Abuse or Molestation** is deleted in its entirety and replaced with the following:

Arising out of "claims" or "suits", including defense of same, against any person who actively participates in any actual or threatened act of sexual misconduct, sexual molestation or physical or mental abuse of any person.

C. The following language is added to Section B 3 of **SECTION II – WHO IS AN INSURED**:

Spouse or "domestic partner" includes a partner of the insured in a civil union.

D. The **Other Insurance** condition is deleted in its entirety and replaced with the following:

If you have any other insurance against a loss covered by this policy, the insurance provided by this policy shall share proportionately with any other valid or collectible insurance contract.

E. Item **3** of the definition of **Claim Expenses** is deleted in its entirety and replaced with the following:

Interest accruing after the entry of a judgment. Post judgment interest will not be subject to any limits of insurance within this coverage form.

F. The Policy Condition **When We Do Not Renew** is deleted in its entirety and replaced with the following:

**Cancellation or Non-Renewal**

We may cancel this policy by mailing to you, at the last mailing address known to us, written notice stating when such cancellation shall become effective. Notice shall be given at least ten (10) days prior to the date on which such cancellation shall become effective if cancellation is for non-payment of premium or deductible. If the policy has been in effect for sixty (60) days or less, we shall give notice at least thirty (30) days prior to the effective date of cancellation.

After this policy has been in effect for sixty (60) days, this policy may be cancelled by or on our behalf only for one of the following reasons:

1) Nonpayment of premium;

2) This policy was obtained through a material misrepresentation;

3) Any insured violated any of the terms and conditions of this policy;

Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FILED DATE: 1/20/2026 8:44 AM 2026CH00528

PI-TS-IL-1 (05/12)

4) The risk originally accepted has measurably increased;

5) Certification to the Director of the Department of Insurance of the loss of reinsurance by us which provided coverage to us for all or a substantial part of the underlying risk insured; or

6) A determination by the Director of the Department of Insurance that the continuance of the policy could place us in violation of the insurance laws of Illinois.

We shall mail written notice of cancellation to you, your agent or broker of record at the last address known to us and any mortgagee or lienholder, if known. Notice of cancellation shall be provided at least ten (10) days before the effective date of cancellation if cancellation is for nonpayment of premium. If cancellation is for any of the reasons listed in 2) through 6) above, and the policy has been in effect for sixty (60) days or less, then notice of cancellation shall be provided at least thirty (30) days before the effective date of cancellation. After the policy has been in effect for sixty-one (61) days or more, notice of cancellation shall be provided at least sixty (60) days before the effective date of cancellation. The mailing of such notice shall be sufficient and the effective date of cancellation shall become the end of the policy period. We shall maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service. The notice shall state the reason or reasons for cancellation.

Should we decide to nonrenew this policy, then we shall mail written notice of nonrenewal to you, your agent or broker of record at the last address known to us and any mortgagee or lienholder, if known. We shall mail such notice at least sixty (60) days before the end of the policy period. The notice shall state the reason or reasons for nonrenewal. The mailing of such notice shall be sufficient and we shall maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial delivery service.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PI-ARB-1 IL (6/03)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**BINDING ARBITRATION**

Wherever, used in this endorsement: 1) "we", "us", "our", and "insurer" mean the insurance company which issued this policy; and 2) "you", "your", "named insured", "first named insured", and "insured" mean the Named Corporation, the Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "other insured(s)" means all other persons or entities afforded coverage under this policy.

This endorsement modifies coverage provided under the Coverage Part to which it is attached.

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then provided that it is agreed upon by both parties, the matter may be submitted for arbitration.  In lieu of arbitration, the insured may elect the option of filing a lawsuit to resolve the matter.

If both parties mutually agree to the voluntary arbitration procedure, then each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.  Each party will:

    1.  Pay the expenses it incurs; and

    2.  Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding.

All other terms of the policy remain unchanged.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-SAM-008 (05/19)

# ABUSIVE CONDUCT LIABILITY COVERAGE FORM

## PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine your rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED**.

Within the context of this coverage form, "this insurance" refers to the coverage provided by this Abusive Conduct Liability Coverage Form.

Other words and phrases that appear in quotation marks have special meaning.  Refer to **SECTION VI – DEFINITIONS**.

**SECTION I – COVERAGE**

**A. ABUSIVE CONDUCT LIABILITY COVERAGE**

    **1. Insuring Agreement**

        **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" to which this insurance applies caused by:

           **(1)** "Abusive conduct";

           **(2)** The negligent:

                **(a)** Employment;

                **(b)** Selection;

                **(c)** Investigation;

                **(d)** Supervision;

                **(e)** Reporting to the proper authorities, or failure to so report; or

                **(f)** Retention

           of any "employee," "volunteer worker" or any other person or persons for whom the insured is or ever was legally responsible and whose conduct would be covered by **(1)** above;

           **(3)** The negligent:

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

       **(a)** Placement of adoptive or foster children;

       **(b)** Selection or training of adoptive or foster parents; or

       **(c)** Supervision of adoptive or foster parents,

     that gives rise to "claims" of "abusive conduct";

**(4)** The negligent:

       **(a)** Design;

       **(b)** Control;

       **(c)** Maintenance;

       **(d)** Supervision;

       **(e)** Inspection; or

       **(f)** Investigation

     of prospective tenants of your premises; premises in your control; or premises you have

     leased to another that gives rise to "claims" of "abusive conduct"; or

**(5)** The negligent failure to provide professional services or neglect of the therapeutic needs of a client, patient or other person because of "abusive conduct."

Subject to the above provisions, we have the right and duty to defend any "suit" seeking "damages" to which this insurance applies. However, we have no duty to defend the insured

against any "suit" seeking "damages" to which this insurance does not apply. We may at our discretion, investigate and settle any "claim" of "abusive conduct" and any "suit" that may result. But:

      **(i)** The amount we will pay for "damages" is limited as described in **SECTION III –**

        **LIMITS OF INSURANCE**; and

      **(ii)** Our right and duty to defend end when we have used up our applicable limit of

        insurance in the payment of "damages."

We will pay, with respect to any "claim" we investigate or "suit" we defend, any "defense

costs" we incur. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for in **B. EMPLOYEE AND VOLUNTEER WORKER**

**DEFENSE COVERAGE** below.

  **b.** This insurance applies to "damages" because of "bodily injury" only if:

    **(1)** The "bodily injury" is caused by "abusive conduct" that takes place in the "coverage

PI-SAM-008 (05/19)

FILED DATE: 1/20/2026 8:44 AM   2026CH00528

PI-SAM-008 (05/19)

territory"; and

  **(2)** The "abusive conduct" first occurs during the policy period.

 **c.** "Damages" because of "bodily injury" include "damages" claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**2. Exclusions**

 This insurance does not apply to:

 **a.** Any "claim" or "suit" against any person who personally takes part in any "abusive conduct";

 **b.** Any "claim" or "suit" against any person who intentionally fails to report "abusive conduct" committed by an "employee," "volunteer worker" or any other person for whom any insured is legally responsible;

 **c.** Any "claim" or "suit" against any person who commits an intentional or criminal act;

 **d.** Any "claim" or "suit" against any "employee," "volunteer worker" or any other person for whom any insured is or ever was legally responsible if at the time of this policy's inception any insured was aware of actual or alleged "abusive conduct" by such person;

 **e.** Liability assumed by the insured under any contract or agreement;

 **f.** Any obligation for which an insured, or any insurance carrier of the insured, may be held liable under a workers compensation, disability benefits or unemployment compensation law or any similar law;

 **g.** Any "claim" or "suit" arising out of matters which may be deemed uninsurable;

 **h.** Any "claim" made against an insured by another insured except a "claim" made by an insured who is an "employee" or "volunteer worker," subject to Exclusion **i.** below;

 **i.** Any "claim" made by or on behalf of:

  **(1)** Your "employee" or "volunteer worker";

  **(2)** The spouse, child, parent, brother or sister of an "employee" or "volunteer worker" as a consequence of "abusive conduct" to that person; or

  **(3)** Any applicants for employment or former "employees" or "volunteer workers."

 However, this exclusion does not apply in the limited instance where your "employee" or "volunteer worker" is also your client and receiving services falling within the official scope of

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

4. Students in training, but only for liability arising within the scope of their duties related to the conduct of your organization.

**SECTION III – LIMITS OF INSURANCE**

A. The limit of insurance shown in the Declarations and the rules below fix the most we will pay for all "damages" regardless of the number of:

1. Insureds;

2. "Claims" made or "suits" brought; or

3. Persons or organizations making "claims" or bringing "suits."

B. The Each Abusive Conduct Limit shown in the Declarations is the most we will pay for each "abusive conduct" incident regardless of the number of incidents involved. Two or more "claims" for "damages" because of the same "abusive conduct" shall be:

1. Considered a single "claim"; and

2. Such "claims," whenever made, shall be assigned to only one policy (whether issued by us or any other insurer) and if that is this policy, only one Each Abusive Conduct limit of insurance shall apply.

C. The aggregate limit shown in the Declarations is, subject to Paragraph **B.** of this section, the total limit of our liability for all "damages" to which this insurance applies.

Multiple incidents of "abusive conduct" which take place over multiple policy periods for which this coverage is provided shall be deemed to constitute one "abusive conduct" and shall be deemed to occur only at the time of such first incident. Coverage for such "abusive conduct" shall be provided only under the policy, if any, which is in place at the time of the first such incident and shall be subject to the applicable limit of insurance in that one policy.

The aggregate limit of this Coverage Part applies separately to each consecutive annual period of this policy; and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations; unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the limit of insurance.

**SECTION IV – DEDUCTIBLE**

A. Our obligation to pay "damages" on your behalf applies only to the amount of "damages" in excess of the applicable deductible amount shown in the Declarations.

B. The Deductible applies to all "damages" that are the result of any "claim" of "abusive conduct."

C. The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those "damages"; and

2. Your duties in the event of an incident, "claim," or "suit"

apply irrespective of the application of the deductible amount.

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**SECTION V – ABUSIVE CONDUCT LIABILITY CONDITIONS**

**A. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**B. Duties In the Event of an Incident, Claim or Suit**

1. If a "claim" is made or "suit" is brought against any insured, you must provide us with written notice of the "claim" or "suit" as soon as practicable, but no later than 60 days after the "claim" is made or "suit" is brought.

2. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement or defense of the "claim" or "suit" including the release of any personnel records of the person(s) allegedly involved in the "abusive conduct"; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "abusive conduct" to which this insurance may also apply.

3. No insureds will, except at their own cost, and without recourse to this policy, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**C. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

1. To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

2. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover as a result of an "agreed settlement" or on a final judgment against an insured obtained after an actual trial, but we will not be liable for "damages"

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-SAM-008 (05/19)

that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.

**D.  Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this

Coverage Part, our obligations are limited as follows:

**1.  Primary Insurance**

This insurance is primary except when **2.** below applies.  If this insurance is primary, our

obligations are not affected unless any of the other insurance is also primary.  Then we will share with all that other insurance by the method described in **3.** below.

**2.  Excess Insurance**

If any insured has other insurance providing coverage similar to this insurance, then this insurance shall be excess over and above that other insurance except where such insurance is specifically designated as excess to this policy.

When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend.  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of

the loss, if any, that exceeds the sum of:

**a.**   The total amount that all such other insurance would pay for the loss in the absence of this

insurance; and

**b.**   The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision.

**3.  Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.

Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by

limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limit of insurance of all insurers.

**E.  Premium Audit**

**1.**   We will compute all premiums for this Coverage Part in accordance with our rules and rates;

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

2. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums

   are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured; and

3. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**F. Representations**

By accepting this policy, the insured agrees:

1. The statements in the Declarations, and in the application for insurance are accurate and

   complete;

2. Those statements are based upon representations made by the insureds; and

3. We have issued this policy in reliance upon those representations.

**G. Transfer of Rights of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage

Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**H. Two Or More Coverage Parts Or Policies Issued By Us**

It is our stated intention that the various coverage parts or policies issued to you by us, or any

company affiliated with us, do not provide any duplication or overlap of coverage for the same "claim"

or "suit." We have exercised diligence to draft our coverage parts and policies to reflect this intention, but should the circumstances of any "claim" or "suit" give rise to such duplication or overlap of

coverage, then, notwithstanding any other provision of this or any other policy, if this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the

same "abusive conduct," professional incident, occurrence, offense, wrongful act, accident or loss, "claim" or "suit," the maximum limit of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limit of insurance under any one coverage part or policy.

This condition does not apply to any Excess or Umbrella policy issued by us specifically to apply as excess insurance over this policy.

**I. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION VI – DEFINITIONS**

**A.** "Abusive conduct" means all actual, threatened or alleged acts of physical abuse, sexual abuse,

sexual molestation, sexual misconduct, sexual exploitation, or sexual injury arising out of a single act, or continuous or repeated exposure of one person or two or more people to multiple acts, of a sexual

nature committed by:

**1.** One person; or

**2.** Two or more people acting together or in related acts or series of acts.

Any act or multiple, continuous, related or repeated acts of "abusive conduct" by one person or two or more people acting together will be deemed one "abusive conduct" and will be deemed to occur only when the first "abusive conduct" takes place, regardless of:

    **a.** The number of people injured;

    **b.** The time period, including multiple policy periods, over which the "abusive conduct" took place;

    **c.** The number of such acts; or

    **d.** Whether, in the case of two or more people acting together, each such person participated

       in each act.

**B.** "Agreed settlement" means a settlement and release of liability signed by the insured and the claimant or the claimant's legal representative, and approved by us.

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person. "Bodily injury" includes mental anguish, mental injury, shock, fright or death resulting from physical injury or "abusive conduct."

**D.** "Claim" means any written demand for monetary relief.

**E.** "Coverage territory" means:

**1.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**2.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **1.** above; or

**3.** All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in Paragraph **1.** above but is away for a short period of time on your business;

provided the insured's responsibility to pay "damages" is determined in a "suit" on the merits, in the territory described in Paragraph **1.** above or in a settlement to which we agree.

**F.** "Damages" means a monetary:

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

FILED DATE: 1/20/2026 8:44 AM    2026CH00528

PI-SAM-008 (05/19)

1. Judgment;

2. Award; or

3. Settlement,

but does not include fines, sanctions, penalties, punitive or exemplary damages or the multiple portion of any damages.

G. "Defense costs" mean any costs to investigate a "claim" or defend a "suit" seeking "damages."

These costs are outside the limits of insurance.

H. "Employee" includes a "leased worker" or a "temporary worker."

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.

J. "Suit" means a civil proceeding in which "damages" because of "abusive conduct" to which this insurance applies are alleged. "Suit" also includes:

1. An arbitration proceeding in which such "damages" are claimed and to which you must submit or do submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which you submit with our consent.

K. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

L. "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

PI-SAM-008 (05/19)

©2019 Philadelphia Consolidated Holding Corp.
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-SAM-008 (05/19)

the services which you provide and the "claim" arises out of the provision of these services;

j. Any "defense costs" associated with a criminal trial including appeals;

k. "Abusive conduct" that predates the inception of this policy notwithstanding that such "abusive conduct" may continue into this policy period;

l. Any "claim" arising out of, based upon or attributable to:

(1) Any litigation or demand against an insured pending on or before the inception of this policy, including any future litigation or demand based on the prior or pending litigation that is derived from the same or essentially the same facts as alleged in such prior litigation;

(2) Any "abusive conduct," fact, circumstance or situation which has been the subject of any written notice given under any other policy of insurance prior to inception of this policy; or

(3) Any "abusive conduct," fact, circumstance or situation of which, as of the inception of this policy, the insured had knowledge and from which the insured could reasonably expect a "claim" to arise; or

m. Any "claim" or "suit" arising out of sexual discrimination and/or sexual harassment, whether asserted under any federal or state statute or the common or civil law of any jurisdiction.

**B. EMPLOYEE AND VOLUNTEER WORKER DEFENSE COVERAGE**

We will also pay on your behalf "defense costs" for an "employee" or "volunteer worker" who is alleged to be directly involved in "abusive conduct" until such time as that individual is adjudicated to be a wrongdoer or enters a plea of no-contest.

This coverage does not apply to any "employee" or "volunteer worker" who knowingly allows the "abusive conduct."

**SECTION II – WHO IS AN INSURED**

A. You are an insured.

B. Each of the following is also an insured:

1. Your directors, but only for liability arising from their duties as your directors;

2. Your "employees," but only for liability arising within the scope of their employment duties for you;

3. Your "volunteer workers" but only for liability arising within the scope of their volunteer duties related to the conduct of your organization; and