**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| REMEDIAL ENVIRONMENTAL MANPOWER, INC., | |
| Plaintiff, | Case No. 26 cv 2194 |
| v. | Honorable Sunil R. Harjani |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | |
| Defendants. | |

# MEMORANDUM OPINION AND ORDER

After employees sued Plaintiff Remedial Environmental Manpower, Inc., Remedial turned to its insurer, Philadelphia Indemnity Insurance Company, to fulfill its duty to indemnify and defend Remedial under its insurance policy. Philadelphia Indemnity, however, denied Remedial coverage three separate times. Remedial has now filed its own action against Philadelphia Indemnity, seeking a declaration that Philadelphia Indemnity has a duty to defend and indemnify Remedial. [1-1]. In turn, Philadelphia Indemnity has moved to dismiss Remedial's claims, asserting that certain exclusions under the policy preclude coverage in the underlying suit. [9]. For the reasons stated below, the Court finds that an exclusion applies and grants Philadelphia Indemnity's motion to dismiss.

## Background

Remedial is a defendant in an underlying lawsuit, *Ruffin v. JCG Industries, Inc.*, No. 1:25-cv-07257 in the Northern District of Illinois.[1] [1-1] at 9, ¶¶ 3–4. According to the *Ruffin* suit, Remedial is an industrial staffing agency that supplies temporary and permanent staffing to warehouses and manufacturing facilities, including to its co-defendant JCG Industries, Inc., a poultry processor and distributor. *Id.* ¶¶ 6–7. The *Ruffin* plaintiffs filed a class action against both Remedial and JCG, asserting that they failed to pay overtime and improperly deducted the cost of necessary protective and sanitary gear from employees' pay. *Id.* ¶¶ 8–9. That complaint includes three counts against Remedial for violations of the Illinois

[1] The case was originally filed in the Circuit Court of Cook County, Case No. 2025CH03287, but defendants removed the case to federal court. [1-1] at 9, ¶¶ 3–4.

Minimum Wage Law (IMWL), the Illinois Wage Payment and Collection Act (IWPCA), and the Fair Labor Standards Act (FLSA). [9-1] ¶¶ 1–5.

On May 12, 2025, Remedial, through its broker Marsh McLennan Agency, tendered the *Ruffin* complaint to Philadelphia Indemnity under its Commercial Lines Policy, but Philadelphia Indemnity denied the claim under Remedial's Employment Practices Liability coverage on June 20, 2025. [1-1] at 9–10, ¶¶ 10–11. Marsh again tendered the complaint to Philadelphia Indemnity on September 16, 2025, specifically requesting Philadelphia Indemnity evaluate the complaint under the general and professional liability portions of the policy, but Philadelphia Indemnity again denied coverage on October 1, 2025. *Id.* at 10, ¶¶ 14–16. On October 9, 2025, Remedial asked Philadelphia Indemnity to reconsider its coverage decision under all potentially applicable forms of coverage, including the Staffing Service Professional Liability Coverage Form. *Id.* ¶ 17. On December 15, 2025, Philadelphia Indemnity denied the request for a third time. *Id.* at 12, ¶ 28. According to Remedial, Philadelphia Indemnity's third coverage review failed to evaluate coverage under its Staffing Service Professional Liability Coverage Form, as Remedial requested. *Id.* ¶ 30. It is that specific provision that is at issue in Remedial's current suit.

## The Insurance Policy

Starting September 1, 2021, Remedial held a Commercial Lines Policy with Philadelphia Indemnity, which Remedial renewed annually. *Id.* ¶ 31. All policy periods included a Staffing Service Professional Liability Coverage Form with limits of $1,000,000 per wrongful act. *Id.* ¶ 32. The Staffing Service provision states:

> **A. Insuring Agreement**
>
> 1. We will pay those sums that the insured becomes legally obligated to pay as "damages" to which this insurance applies. Subject to **SECTION IV – CONDITIONS**, Paragraph K. **Settlement**, we, in your name and on your behalf, shall have the right and duty to investigate, defend, and conduct settlement negotiations, including selection of defense counsel, in any "suit" seeking those "damages." However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply.
>
> . . .
>
> 2. This insurance applies to "damages" only if:
>
> a. The "damages" result from a "wrongful act" that takes place in the "coverage territory";
>
> b. The "wrongful act" occurs during the policy period;

c. The "wrongful act" is committed by any insured for whom the Named Insured is legally responsible[.]

[9-2] at 364.

Also relevant to the Court's analysis are various definitions in the policy:

- A "wrongful act" is a "negligent act, error, or omission committed or alleged to have been committed by you or any person for whom you are legally responsible in the rendering of 'staffing services.'" *Id.* at 378.
- "Staffing services" are "services provided by a staffing company to their clients" including administrative functions typically performed by human resources; services provided to clients for recruitment, selection, and placement of persons for employment; vendor management services; and services performed on behalf of clients by a "staffing service employee." *Id.* at 380.[2]
- "Staffing service employee" means a "person who is furnished by you to your client to perform the duties to which you have agreed." *Id.*
- Who an "insured" is under the policy includes Remedial, executive officers, and any current "partner, member or 'employee' of yours while acting within the scope of their duties as such" and "any former or retired partner, director, office, member or 'employee' of yours, but only for those professional services rendered on behalf of the named insured prior to the date of separation or retirement[.]" *Id.* at 369.
- An "employee" "includes but is not limited to a 'leased worker' and a 'staffing service employee.'" *Id.* at 380. The definition does not include a "temporary worker" or a "PEO worker." *Id.*

Two exclusions are important here: the insured v. insured exclusion and the exclusion barring violations of local, state, or federal statutes from coverage. Specifically, the insured v. insured exclusion eliminates any coverage for damages "arising out of any claim made or 'suit' brought against an insured by another insured."[3] *Id.* at 365, 369. The policy also excludes any actual or alleged violation of the Telephone Consumer Protection Act (TCPA), the CAN-SPAM Act of 2003, the Fair Credit Reporting Act (FCRA), and any other "federal, state or local statute,

[2] The "Broad Definition of Staffing Services" endorsement deletes and replaces the policy's definitions of "staffing services," "staffing services employee," and "employee." [9-2] at 380.

[3] "Suit" is defined as "a civil proceeding in which 'damages' are claimed and to which this insurance applies." *Id.* at 378. "Damages" means a monetary judgment, award, or settlement but "does not include fines, sanctions, penalties, punitive or exemplary damages or the multiple portion of any damages." *Id.* at 375.

ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA." *Id.* at 381.[4]

## Legal Standard

To survive a motion to dismiss, a plaintiff must state a claim for relief that is plausible on the face of the complaint. *Sabo v. Erickson*, 128 F.4th 836, 842 (7th Cir. 2025) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a complaint, the court construes it in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws inferences in the plaintiff's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). Even accepting all well-pleaded facts as true, a plaintiff must still allege enough facts to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. In an insurance dispute, both the complaint and the insurance policy are construed in favor of the insured, with all doubts resolved in the insured's favor. *Am. Alt. Ins. Corp. v. Metro Paramedic Servs. Inc.*, 829 F.3d 509, 514 (7th Cir. 2016).

Under Illinois law, an insurance policy is a contract, and the general rules of contract interpretation also govern the interpretation of insurance policies. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). The court must "ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* (quoting *Thounsavath v. State Farm Mut. Auto. Ins. Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018)). If the policy is unambiguous, its terms must be applied as written. *Id.* Ambiguity exists if the language of the policy is subject to more than one reasonable interpretation. *Id.* However, disagreement between the parties does not make the policy ambiguous, and the court "will not strain to find an ambiguity where none exists." *Id.* (quoting *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010)). To ascertain the meaning of the policy's language and the parties' intent, the court must construe the policy as a whole and "take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Windridge of Naperville Condo. Ass'n v. Phil. Indem. Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019) (quoting *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 491 (Ill. 2001)).

A duty to defend arises if the allegations in the complaint fall within or potentially within the coverage of the policy. *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 55 (Ill. 2021). The Illinois Supreme Court "has long held that an insurer's duty to defend an action brought against the insured is 'determined solely by reference to the allegations of the complaint.'" *Am. Alt. Ins.*, 829 F.3d at 513 (quoting *Pekin Ins. Co. v. Precision Dose, Inc.*, 968 N.E.2d 664, 674 (Ill. 2012)). An insurer may not refuse to defend an action against its insured unless it's

[4] The policy's "Broad Definition of Staffing Services" endorsement adds this exclusion to Section B's list of exclusions. *Id.* at 381.

clear from the underlying complaint that the facts alleged do not fall within, or potentially within, the policy's coverage. *Id.* at 514.

To establish a duty to defend, the insured must first show that the policy covers a claim; if it does, the burden shifts to the insurer to prove that an exclusion applies. *Bradley Hotel*, 19 F.4th at 1006 (citing *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (2009)). The court compares the underlying complaint with the insurance policy to determine whether the facts of the complaint fall within the coverage. *Am. Alt. Ins. Corp.*, 829 F.3d at 513–14. Courts read policy exclusions narrowly, and their application must be "clear and free from doubt." *Bradley Hotel*, 19 F.4th at 1006–07 (quoting *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 927 F.3d 915, 919 (7th Cir. 2020)).

Under Illinois law, the duty to defend and the duty to indemnify are separate and distinct, and the duty to defend is broader than the duty to indemnify. *Conway v. Country Cas. Ins. Co.*, 442 N.E.2d 245, 247 (Ill. 1982). While the mere potential for liability triggers an insurer's duty to defend, the duty to indemnify is determined only when the insured has incurred liability in the underlying claim. *See Outboard Marine Corp. v. Liberty Mut Ins. Co.*, 607 N.E.2d 1204, 1221 (Ill. 1992). Because of this, the duty to indemnify is not ripe for adjudication until that point. *Id.*

## Discussion

Remedial asserts that its policy with Philadelphia Indemnity covers the *Ruffin* complaint, and therefore, Philadelphia Indemnity has a duty to defend and indemnify Remedial under the policy. Remedial also argues that because Philadelphia Indemnity has failed to provide coverage in a timely manner, Philadelphia Indemnity has run afoul of Section 155 of Illinois's insurance code and is barred from asserting further coverage defenses. Philadelphia Indemnity counters that because both the insured v. insured and statutory violation exclusions prohibit coverage, it does not owe Remedial a defense or indemnification in the underlying *Ruffin* case. And, if Philadelphia Indemnity has no duty to defend or indemnify in the first place, it has not violated Section 155, nor is it barred from asserting future coverage defenses.

### I. Duty to Defend

The first question is whether Philadelphia Indemnity owes Remedial a defense under the policy's terms. Remedial must show that the alleged wrongful conduct would be covered under the policy's language. The burden then shifts to Philadelphia Indemnity to show that an exclusion applies. To determine whether the policy provides coverage, the Court reviews both the policy and the allegations in the *Ruffin* complaint.

The policy covers damages and the defense for "wrongful acts," which are negligent acts, errors, or omissions committed by an insured while performing "staffing services." [9-2] at 364, 378. "Staffing services" include administrative and

human resources related functions, recruitment and placement of individuals for employment with a client, and other duties to which a client like JCG may agree. *Id.* at 380.

The *Ruffin* complaint alleges that Remedial is a third-party staffing agency that supplied JCG with workers for its poultry processing plants. [9-1] ¶¶ 43–44, 48–50. According to the *Ruffin* plaintiffs, Remedial acted as a joint employer with JCG. *Id.* ¶ 68. For example, JCG and Remedial exercised joint control over the terms and conditions of employment, jointly hired and fired workers, supervised and controlled, set pay, determined hours, and approved hours worked for the employees supplied through Remedial to JCG. *Id.* ¶¶ 66–68, 71. At times, Remedial also paid the plaintiffs for their work at JCG, and JCG in turn paid Remedial for the plaintiffs' work. *Id.* ¶¶ 53, 58, 64–65.

The *Ruffin* plaintiffs further allege that, as a joint employer, Remedial failed to pay overtime for pre- and post-shift requirements, like donning and doffing protective personal equipment or waiting to be scanned into the warehouse or onto the shift floor. *Id.* ¶¶ 84–90. In JCG's poultry plants, employees cannot enter the production floor without protective equipment, and they must remove it when they exit. *Id.* ¶¶ 81, 89, 101. As a necessary part of their work, the *Ruffin* plaintiffs allege that the time workers have to take to put on and take off required safety gear should be compensated under state law. *Id.* ¶¶ 93–98. The *Ruffin* plaintiffs also allege that Remedial and JCG failed to pay for adequate mealtimes—plaintiffs were either released late for mealtimes, but their mealtimes were not properly extended to account for the late start, or they had to return to the production floor early to avoid spoliation of the poultry products. *Id.* ¶¶ 99–102. This violates federal requirements, according to the *Ruffin* plaintiffs. *Id.* ¶ 103.

The *Ruffin* plaintiffs' allegations satisfy the coverage definitions under the policy. Failing to pay for overtime and proper mealtimes are ostensibly negligent acts, errors, or omissions and therefore qualify as a "wrongful act" under the policy's language. Also, Remedial's role in paying the plaintiffs and directing their work schedules is a human resources and administrative function that meets the criteria of "staffing services." As a result, Remedial's alleged wrongful conduct falls within the policy.

Now that the Court has determined the policy covers the underlying suit's claims, Philadelphia Indemnity must show an exclusion applies. Philadelphia Indemnity alleges that both the insured v. insured exclusion and the statutory violation exclusion independently preclude coverage. Remedial disagrees. The Court turns first to the insured v. insured exclusion.

The insured v. insured exclusion bars coverage for any claim brought against an insured by another insured. [9-2] at 369. The policy provides that Remedial and its current and former "employees" qualify as insureds. *Id.* "Employee" includes, but

is not limited to, a "leased worker" and a "staffing service employee." *Id.* at 380. Under the policy, Philadelphia Indemnity says a "staffing service employee" includes a person Remedial provides to JCG to perform agreed-upon duties. Philadelphia Indemnity argues that the plaintiffs fit the definition of a "staffing service employee" and that, therefore, the plain language of this exclusion bars coverage in the *Ruffin* lawsuit.

Philadelphia Indemnity is correct. The *Ruffin* plaintiffs repeatedly allege that they are "current and former hourly employees" of Remedial, that Remedial was responsible for the acts outlined in the complaint, that Remedial was an "employer" within the meaning of the FLSA and IWPCA, and that plaintiffs were "employees" within the meaning of the IWPCA, IMWL, and FLSA. *Id.* ¶¶ 12, 20, 21–25, 31–32. The *Ruffin* plaintiffs also allege that the putative classes only encompass "current and former hourly employees of REM and/or JCG" and that Remedial and JCG were joint employers. *Id.* ¶¶ 68, 115, 138. Moreover, the causes of action are available only to employees; to obtain relief under the three statutes, the Ruffin plaintiffs must show they are Remedial's employees. *See* 820 ILL. COMP. STAT. §§ 105/4a(1), 105/12 (providing for right of action to employees to sue employers who fail to pay overtime under IMWL); 820 ILL. COMP. STAT. §§ 115/9, 115/14 (same but for IWCPA); 29 U.S.C. §§ 207, 216(b) (same but for FLSA). To be a member of the proposed class and recover under the suit, an individual must therefore be an employee of Remedial. Taking these allegations together—the multiple references to plaintiffs as Remedial's current and former employees, the allegations that Remedial and JCG were joint employers, and the necessity that plaintiffs qualify as Remedial's employees to bring their specific causes of action under Illinois and federal law—all show that the *Ruffin* plaintiffs (and the putative class) satisfy the definition of "employee" and qualify as "insureds" under the policy. Because Remedial is also an "insured" under the policy, the insured v. insured exclusion applies, and Philadelphia Indemnity has no duty to defend the underlying suit.

Remedial makes several counterarguments against the exclusion, all of which fail. First, Remedial argues that the insured v. insured exclusion only applies to employees "acting within the scope of their duties as such," and the *Ruffin* allegations do not fall within the scope of their employment. According to Remedial, allegations of unpaid overtime, incomplete meal periods, and unlawful deductions for necessary protective gear are not within the scope of plaintiffs' employment with Remedial.

This argument is nonsensical and strains the policy's clear language and the underlying complaint. Contrary to Remedial's claims, the *Ruffin* plaintiffs make clear in their complaint that they assert claims only on behalf of Remedial employees injured while acting within the scope of their employment. For example, the *Ruffin* complaint alleges that putative class members had to wear protective gear before entering the production floor of the poultry processing plants, but they weren't properly paid for the time it took to put the gear on and to take it off before they could leave. [9-1] ¶¶ 80–81, 89–90. The complaint further claims that this time spent on

protective gear qualifies as "hours worked" under the IMWL. *Id.* ¶¶ 94–96. The point of these factual allegations is that the employees were harmed *while working*. Remedial and JCG's alleged failure to pay the *Ruffin* class for required work purportedly violates Illinois and federal law, and the lawsuit seeks to remedy that injury, plain and simple. Remedial's convoluted reading is simply unsupported by the language of both the insurance policy and the *Ruffin* complaint.

Second, Remedial focuses on case law that applies insured v. insured exclusions in the Directors & Officers (D&O) context. Remedial takes this to mean that insured v. insured exclusions are properly applied in that context only, not in a situation where an employee is asserting statutory claims against an employer. Again, this argument is misguided. While much of the case law discusses insured v. insured exclusions in the D&O realm, nothing in the principles of contract interpretation suggests that insured v. insured exclusions apply only in the corporate governance sphere. Nor does the policy language permit that reading. In fact, the policy language is clear and plain on its face—it covers any insured v. insured dispute, so long as the party is an insured as defined under its terms. Under Illinois law, that is enough for the exclusion to apply. *See Bradley Hotel*, 19 F.4th at 1006 (stating that insurance policies are contracts and unambiguous language should be read as written).

Third, Remedial argues that another provision, the Employment-Related Practices Exclusion (ERP Exclusion), creates an ambiguity when read together with the insured v. insured exclusion that renders the ERP language superfluous. The ERP Exclusion bars coverage for damages that arise out of Remedial's refusal to employ an individual, termination of someone's employment, or employment-related practices, policies, acts, or omissions directed at a particular person. [9-2] at 367–68. Remedial argues that the insured v. insured provision, read as Philadelphia Indemnity asserts it should be read, makes the ERP Exclusion redundant. Not so. Overlapping provisions do not automatically render them conflicting. *Thornton v. Ill. Founders Ins. Co.*, 418 N.E.2d 744, 747 (Ill. 1981). The "belt and suspenders" approach is common in insurance law so that insurers may be doubly sure that an exclusion covers all bases. *Nationwide Mut. Ins. Co. v. Ill. Extreme Athletics, Inc.*, 2014 WL 1017664, at *9 (N.D. Ill. Mar. 17, 2014). While some redundancy in insurance contracts is normal, construing a provision to be completely superfluous is not. *Crescent Plaza Hotel Owner, L.P., v. Zurich Am. Ins. Co.*, 20 F.4th 303, 311 (7th Cir. 2021). The ERP Provision and insured v. insured provisions overlap, but do not render the other unnecessary. For example, the insured v. insured exclusion would not apply where a third party brings a claim for Remedial's refusal to hire an individual or for engaging in discriminatory hiring practices, but the ERP provision would permit coverage in that scenario. This signifies that although the provisions overlap, they can be harmonized, and the overlap does not create ambiguity.

Fourth, Remedial next asserts that Philadelphia Indemnity's reading of the exclusion creates a "structural absurdity" that renders the coverage illusory.

Specifically, Remedial claims that the definition of "staffing services" is broad and covers a variety of "administrative functions" performed for the "client company," but the exclusion renders the definition meaningless. Remedial concludes that employees are the only parties that could bring claims under the policy against Remedial. The Court disagrees. The policy would cover claims brought by Remedial's clients, such as JCG, to whom Remedial supplies workers. If JCG brought a claim against Remedial for Remedial's negligence in its selection and placement of workers at JCG's facilities, that would qualify under the policy's language as "services performed for [JCG] to supply [JCG] with a staffing service employee." [9-2] at 380. This sort of carveout is how insurance policies are supposed to work. Indeed, exclusions operate with the purpose of "taking out persons or events otherwise included within the defined scope of coverage." *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1094 (Ill. 2007) (quoting *Gen. Ins. Co. of Am. v. Robert B. McManus, Inc.*, 650 N.E.2d 1080, 1083 (1995)). "A policy need not provide coverage against all possible liabilities; if it provides coverage against some, the policy is not illusory." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324 (7th Cir. 2021) (cleaned up). Here, because the policy covers some claims while excluding others, it is not illusory, and Remedial's argument fails.

Overall, Remedial's counterarguments cannot succeed.[5] The insured v. insured exclusion applies to the *Ruffin* suit "clear and free from doubt," *see Bradley Hotel*, 19 F.4th 1002 at 1006–07, and Philadelphia Indemnity, therefore, owes no duty to Remedial to defend it in the underlying litigation.[6] The Court grants Philadelphia Indemnity's motion to dismiss.

## II. Duty to Indemnify

In addition to a duty to defend, Remedial claims Philadelphia Indemnity has a duty to indemnify it in the Ruffin suit and asks this Court for a declaration to that effect. This, however, is premature. The duty to indemnify is determined only when the insured becomes liable in the underlying suit. *Outboard Marine Corp.*, 607 N.E.2d at 1221. Moreover, because the legal theory in the underlying suit may change, this Court's finding that Philadelphia Indemnity has no duty to defend does not necessarily imply that it also has no duty to indemnify. *See Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995). A change in the *Ruffin* suit may not change Philadelphia Indemnity's indemnity obligation, but it would still be

[5] While the Court addresses several of Remedial's counterarguments, it does not address them all. For the sake of judicial economy, courts may "pass[] over in silence" arguments that are without merit. *See United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007) (citing *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005)).

[6] Besides the insured v. insured exclusion, Philadelphia Indemnity asserts that a second exclusion—which precludes coverage for violations of local, state, and federal statutes—bars coverage in the *Ruffin* suit. However, since the Court finds the first exclusion is dispositive, it need not address Philadelphia Indemnity's second basis.

premature for this Court to resolve the issue before it has crystallized. *Id.* Final resolution of any duty to indemnify is dependent on the final resolution of the underlying case, and the Court dismisses the claim as premature.

## III. Remaining Claims

Turning to Remedial's remaining claims, Remedial alleges Philadelphia Indemnity violated Section 155 of the Illinois Insurance Code, that Philadelphia Indemnity is estopped from asserting further coverage defenses, and that it has otherwise waived coverage defenses.

The Illinois legislature designed Section 155 to provide a remedy for insureds where their insurance carrier engaged in unreasonable and vexatious conduct in discharging its contractual obligations. *See* 215 ILL. COMP. STAT. § 5/155. Section 155 claims are viable only if the insurer owed the insured benefits under the policy. *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002); *see also Martin v. Ill. Farmers Ins.*, 747 N.E.2d 848, 857 (Ill. App. Ct. 2000) (an insurer "cannot be liable for section 155 relief where no benefits are owed"). Here, the Court concluded that the policy's language excludes any duty to defend. Because Philadelphia Indemnity has no duty to defend Remedial in the *Ruffin* suit, Section 155 fees are improper.

Similar reasoning applies to Remedial's arguments for estoppel and waiver. Estoppel only applies when an insurer has breached its duty to defend. *Emps. Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999). When a court has determined that there is no coverage, estoppel does not apply. *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1012 (7th Cir. 2019). Likewise, waiver cannot be used to "create or extend coverage where none exists." *Id.* at 1015 (quoting *Lytle v. Country Mut. Ins. Co.*, 41 N.E.3d 657, 663 (Ill. App. Ct. 2015)). Since the Court has determined Philadelphia Indemnity owes no duty to defend, Philadelphia Indemnity is neither estopped from asserting further coverage defenses, nor has it waived those defenses, and the Court dismisses these claims.

## Conclusion

For the reasons explained above, Defendant's motion to dismiss [9] is granted. The Court dismisses Count I as to Philadelphia Indemnity's duty to defend with prejudice and dismisses Philadelphia Indemnity's duty to indemnify without prejudice. The Court dismisses the remaining claims with prejudice.

**SO ORDERED.**

Dated: November 9, 2026

Sunil R. Harjani
United States District Judge